IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, | ) | |
| PIONEER HI-BRED INTERNATIONAL, | ) | |
| INC. and AGRIGENETICS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-1059 (RGA) |
| | ) | |
| INARI AGRICULTURE, INC. and | ) | |
| INARI AGRICULTURE NV, | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

OF COUNSEL:

Dimitrios T. Drivas
Raj S. Gandesha
John P. Scheibeler
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10010
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One Barker Avenue
White Plains, NY 10601
(914) 288-0022

*Attorneys for Defendants*

November 6, 2023

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................1

II. NATURE AND STAGE OF THE PROCEEDINGS ...........................................1

III. SUMMARY OF THE ARGUMENT .............................................................1

IV. STATEMENT OF FACTS .........................................................................3

V. ARGUMENT .........................................................................................6

   A.   Legal Standards..............................................................................6

   B.   Count I (Infringement of U.S. PVP Certificates) Should Be Dismissed ................7

      1.   The Supreme Court Has Addressed the More Stringent Disclosure Requirements of Utility Patents as Compared to PVP Certificates and the Availability of Patent Deposits to the Public ................................8

      2.   Corteva Assured the PTO and the Public That Its Patent Deposits Would Be Available to the Public on Patent Issuance................................9

      3.   The Patent and Trademark Office Rejected the Restrictions on Patent Deposits that Corteva Seeks to Impose...........................................10

      4.   The Operative MTA Does Not Trump Applicable Law and Regulations ................................................................................10

   C.   Count II (Infringement of the '434 Patent Under 35 U.S.C. § 271(f)(2)) Should Be Dismissed ................................................................................11

      1.   Corteva's Incorrect Application of Section 271(f)(2) Amounts to a Prohibited Extraterritorial Application of U.S. Patent Law......................11

   D.   Count III (Induced Infringement of the '434 patent) Should Be Dismissed..........14

      1.   Because the ATCC Did Not Directly Infringe the '434 Patent, There Can Be No Inducement of Infringement .........................................14

   E.   Count IV (Breach of Material Transfer Agreements) Should Be Dismissed ........15

      1.   Inari US Did Not Enter into an MTA with the ATCC..............................15

      2.   Inari Belgium Did Not Breach the MTA ..................................................15

F.      Count V (Violation of Massachusetts General Law Chapter 93A) Should
        Be Dismissed ........................................................................................................16

        1.      Massachusetts Law Does Not Apply ........................................................16

G.      Count VI (Conversion) Should be Dismissed........................................................17

VI.    CONCLUSION.................................................................................................................19

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ajinomoto Co. Inc. v. Archer-Daniels-Midland Co.*,
  228 F. 3d 1338 (Fed. Cir. 2000)..................................................................................8

*Amgen Inc. v. Coherus Biosciences Inc.*,
  No. 17-cv-546-LPS-CJB, 2017 U.S. Dist. LEXIS 219791 (D. Del. Dec. 7, 2017)...................7

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003)..................................................................................13

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  365 U.S. 336 (1961)..................................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................6

*BASF Agrochemical Prods. v. Unkel*,
  2006 WL 3533133 (W.D. La. Dec. 7, 2006) ...............................................................18

*Deepsouth Packing Co. v. Laitram Corp.*,
  406 U.S. 518 (1972)..................................................................................................11

*Duplessis v. Wells Fargo Bank, Nat'l Ass'n*,
  91 Mass. App. Ct. 1125, 86 N.E.3d 250 (2017) ..........................................................17

*Evergreen Marine Corp. v. Six Consignment of Frozen Scallops*,
  4 F.3d 90 (1st Cir. 1993)...........................................................................................17

*Ex parte Hildebrand*,
  15 U.S.P.Q.2d 1662 (B.P.A.I. Apr. 23, 1990) ...........................................................1, 8

*Feldman v. Aunstrup*,
  517 F.2d. 1351 (CCPA 1975) *cert. denied*, 424 U.S. 912 (1976).......................1, 8, 15

*Gould Elecs. Inc. v. United States*,
  220 F.3d, 220 F.3d 169 (3d Cir. 2010) ........................................................................7

*Home Gambling Network, Inc. v. Piche*,
  2007 WL 9734421 (D. Nev. Mar. 30, 2007) ...............................................................19

*Howard Hess Dental Lab'ys. Inc. v. Dentsply Int'l., Inc.*,
  602 F.3d 237 (3d Cir. 2010).......................................................................................6

*In re Lundak,*
    773 F.2d 1216 (Fed. Cir. 1985)................................................................................8, 15

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l. Inc.,*
    534 U.S. 124 (2001)........................................................................................8, 9

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,*
    458 F.3d. 244 (3d Cir. 2006)...................................................................................7

*Lenahan v. Johnson,*
    No. 15-cv-00763, 2016 U.S. Dist. LEXIS 11992 (E.D. Pa. Feb. 1, 2016) ..............................7

*Life Techs. Corp. v. Promega Corp.,*
    580 U.S. 140 (2017)..........................................................................................12

*Limelight Networks, Inc. v. Akamai Techs.,*
    572 U.S. 915 (2014)..........................................................................................14

*Malik v. Lynk, Inc.,*
    1999 WL 760217 (D. Kan. Aug. 18, 1999) ..............................................................18

*Manning v. Zuckerman,*
    444 N.E.2d 1262 (Mass. 1983) ..........................................................................17

*Microsoft Corp. v. AT&T Corp.,*
    550 U.S. 437 (2007)..........................................................................................12

*Monahan Prod. LLC v. Sam's E., Inc.,*
    463 F. Supp. 3d 128 (D. Mass. 2020) ..................................................................16

*New York ex rel. Schneiderman v. Intel Corp.,*
    827 F. Supp. 369 (D. Del. 2011)..........................................................................7

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993)...............................................................................7

*Sourcing Unlimited, Inc. v. Elektrotecks, LLC,*
    C.A. No. 20-cv-11955-ADB, 2021 U.S. Dist. LEXIS 127532 (D. Mass. July 8, 2021) .........18

*United States v. Peabody Const. Co., Inc.,*
    392 F.Supp.2d 36 (D. Mass. 2005) ......................................................................18

*WesternGeco LLC v. Ion Geophysical Corp.,*
    138 S. Ct. 2129 (2018)..............................................................................13, 14

*White v. Dunbar,*
    119 U.S. 47 (1886)..........................................................................................13

*Wood v. Moss*,
  572 U.S. 744 (2014) ...........................................................................................6

## STATUTES

7 U.S.C. § 2321 et seq...........................................................................................11

7 U.S.C. § 2341(a)(1) ........................................................................................7, 10

7 U.S.C. § 2341(a)(2) ........................................................................................7, 10

7 U.S.C. § 2426 ......................................................................................................5

35 U.S.C. § 101 ......................................................................................................8

35 U.S.C. § 112 ..............................................................................................*passim*

35 U.S.C. § 271 .................................................................................................10, 13

35 U.S.C. § 271(b) ...............................................................................................14

35 U.S.C. § 271(f) ...............................................................................................12

35 U.S.C. § 271(f)(2) ..............................................................................2, 11, 12, 13

Mass. Gen. Laws Chapter 93A ........................................................................16, 17

Mass. Gen. Laws Chapter 93A, § 11 ...............................................................16, 17

Plant Variety Protection Act ...............................................................................2, 8

## RULES

Federal Rule of Civil Procedure 12(b)(6) ..............................................................1, 6

## REGULATIONS

7 C.F.R. § 97.7(h)(1)...............................................................................................5

37 C.F.R. §§ 1.801-1.809................................................................................10, 11, 14

37 C.F.R. § 1.808 ...............................................................................................5, 9

37 C.F.R. § 1.808(a)(2) ....................................................................................*passim*

54 Fed. Reg. 34864-34883.....................................................................................10

## I.      INTRODUCTION

Plaintiffs, Corteva Agriscience LLC, Pioneer Hi-Bred International, Inc., and Agrigenetics, Inc. (collectively "Corteva") made patent deposits of seeds to comply with the requirements of 35 U.S.C. § 112 in order to obtain patents.  Those patent deposits are an integral part of the written description of the patents Corteva obtained and are available to the public without restriction as a matter of law.  Corteva now seeks to deprive the public of this unrestricted availability and renege on the promise it made to obtain its patents.  Every cause of action in Corteva's Complaint is based on this improper attempt to restrict availability and should be dismissed.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

Corteva filed the Complaint against Defendants Inari Agriculture, Inc. ("Inari US") and Inari Agriculture NV ("Inari Belgium") (collectively "Inari") on September 27, 2023.  The Complaint was served on Inari US on September 29, 2023.  Inari now moves to dismiss all Counts I-VI in the Complaint under Federal Rule of Civil Procedure 12(b)(6).

## III.      SUMMARY OF THE ARGUMENT

The seeds Corteva accuses Inari of misappropriating from the American Type Culture Collection ("ATCC") were from patent deposits made by Corteva to meet the patentability requirements under 35 U.S.C. § 112 to obtain U.S. patents.  These patent deposits are an integral part of the written description of the patents in which the deposits were made.  Section 112 requires a patent applicant to assure access to the deposited biological material by the public upon issuance of the patent so "the public, will in fact receive something in return for the patent grant." *Feldman v. Aunstrup*, 517 F.2d. 1351, 1354-55 (CCPA 1975) *cert. denied*, 424 U.S. 912 (1976) (quoting *In re Argoudelis*, 434 F.2d 1390 at 1394 (CCPA 1970) (Baldwin, J. concurring)); *Ex parte Hildebrand*, 15 U.S.P.Q.2d 1662 (B.P.A.I. Apr. 23, 1990).  In exchange for the grant of these

patents, Corteva assured the public that the deposits would be available to the public without restriction when the patents issued.  Corteva now reneges on that promise.

Corteva's allegations are premised on the incorrect position that the lawful act of exporting seeds from ATCC patent deposits to Belgium is:  an infringement under the Plant Variety Protection Act ("PVPA"), an infringement of U.S. Patent No. 8,575,434 ("the '434 patent") under 35 U.S.C. § 271(f)(2); an inducement of the ATCC to infringe these rights; a breach of Inari's material transfer agreements with the ATCC; and a violation of state unfair competition and conversion laws.  In fact, by depositing seeds to meet the requirements for obtaining utility patents, Corteva authorized the unrestricted availability to the public of those seeds and their transportation in commerce, the very acts it now alleges are unlawful.  To the extent Corteva retained PVP or patent rights in the deposited seeds purchased by Inari Belgium, Corteva cannot restrict their use outside of the United States by an attempted extraterritorial application of U.S. intellectual property laws.

The unrestricted public availability is the bargain Corteva made to obtain its patents.  *See* 37 C.F.R. § 1.808(a)(2).  The Complaint never refers to Corteva's promise of unrestricted public availability of the deposits that Corteva made to satisfy the statutory requirements for patentability under 35 U.S.C. § 112.  Inari Belgium, just as any member of the public, has the unfettered right to buy the deposited, patented seeds from the ATCC without restrictions.  All counts of the Complaint suffer from this incurable defect.

Given this deficiency, and because any amendment would be futile, the Court should dismiss with prejudice the Complaint against Inari.

## IV.    STATEMENT OF FACTS

Plaintiff Corteva is one of two giant agribusiness companies that sell roughly 70% of the corn seeds in the United States.  Defendant Inari is a small venture-funded company formed in 2016 to develop a pioneering technology to selectively edit plant genes to enhance agronomic traits and increase crop yields.  As alleged in the Complaint, Inari is partnering with small, independent seed companies to develop improved seeds made with Inari's technology.  (D.I. 1 at ¶ 17).  Even though seeds developed with Inari technology have not yet been introduced to the market, Inari has the potential to transform agriculture and create strong competition in the farm seed business.

Corteva has been in business for nearly one hundred years.  (D.I. 1 at ¶ 2).  It is the biggest seed company in the world and has amassed thousands of patents and Plant Variety Protection Certificates.  Corteva has used time-consuming traditional breeding techniques to develop its plants (D.I. 1 at ¶. 42, 100) and uses genetic engineering technology to introduce foreign genes into plants.  Corteva sells its seeds to customers subject to Technology Use Agreements that restrict the sale and use of Corteva seeds.  (D.I. 1 at ¶ 45).

Inari US was formed to use artificial intelligence and gene editing technology to accelerate crop improvements.  Inari Belgium is a wholly-owned subsidiary of Inari US.  (D.I. 1 at ¶ 14-16).  Inari's technology analyzes data to determine which genes in a plant to edit to improve agronomic traits such as yield and drought resistance.  Inari's technology works with the natural DNA of plants so that the resulting genetic modifications are like those from traditional plant breeding but are achieved far more quickly.  Inari plans to develop seeds modified using its technology with seed companies that will produce and market the modified seeds with improved agronomic traits for greater productivity and sustainability.

The ATCC is an independent organization located in Virginia that is qualified to act as a depository of biological materials for patent purposes.  (D.I. 1 at ¶¶ 60-61).  A member of the

public in Europe cannot obtain seeds directly from the ATCC but, instead, must go through LGC Standards (hereafter "LGC"), ATCC's exclusive European distribution partner.  (D.I. 1 at ¶ 61). Inari Belgium opened an account with LGC in 2019 and LGC placed orders with the ATCC on behalf of Inari Belgium in 2020.  (D.I. 1 at ¶ 73).  Inari Belgium purchased the seeds of the varieties listed in Exhibit A to the Complaint from the ATCC through LGC.  (D.I. 1 at ¶ 79).  Infinite-Eversole Strategic Crop Services ("IE-SCS") acted as Inari Belgium's agent to process the seeds for the required USDA phytosanitary certificate, package and ship the seeds to Inari Belgium. (D.I. 1 at ¶ 79).  Inari Belgium entered a Material Transfer Agreement ("MTA") with the ATCC on July 14, 2019.  (Exhibit A to the Declaration of John Scheibeler in support of Defendants' Motion to Dismiss (hereafter, "Scheibeler Decl. Ex. A")).  The MTA provides that disputes are to be tried exclusively in the U.S. District Court for the Eastern District of Virginia.  (Scheibeler Decl. Ex. A at 3-4).

Every PVP Certificate listed in Exhibit A to the Complaint is also the subject of an ATCC patent deposit for a granted U.S. utility patent.  (D.I. 1 at ¶ 60)[1]  Each deposit in Exhibit A was made to obtain a utility patent.  Separate distinct deposits with the United States Department of Agriculture ("USDA") may also have been made to obtain PVP certificates.  The Complaint provides one example, ATCC-PTA-11340, PVP certificate 200900369, as exemplary of all the Exhibit A varieties obtained by Inari.  (D.I. 1 at ¶ 111; Scheibeler Decl. Ex. C).  ATCC-PTA-11340 was deposited to meet the enablement requirements in at least ten Corteva patents. (Scheibeler Decl. Ex. D).  One of these patents – U.S. Patent No. 7,847,167 ("the '167 patent")

---

[1] An ATCC "PTA" designation indicates it was made for U.S. utility patent purposes.  The last entry in Exhibit A, PVP certificate 9700229 identifies PH79A, which has a corresponding patent deposit identified as ATCC 209913 without a "PTA" prefix.  The product sheet for the ATCC deposit states that the deposit was made for the international patent requirements and identifies U.S. Pat. No. 5,866,767 as the relevant patent.  (*See* Scheibeler Decl. Ex. B).

which issued on December 7, 2010 – states that "[u]pon allowance of any claims in the application, the Applicant will make the deposit available to the public pursuant to 37 C.F.R. § 1.808 … [and that the] Applicant has no authority to waive any restrictions imposed by law on the transfer of the biological material or its transportation in commerce."  (Scheibeler Decl. Ex. D '167 patent at 43:49-63).  In making the deposits to obtain patents, Corteva promised that the deposits would be available to the public without restriction.  (D.I. 1 at ¶ 78).

Deposits made for a PVP certificate application for a new plant variety are treated differently than patent deposits made to satisfy the requirements for a utility patent to satisfy 35 U.S.C. § 112.  PVP deposits are made with the USDA and are not available until the relevant PVP certificate expires.  *See* 7 U.S.C. § 2426; 7 C.F.R. § 97.7(h)(1).  Inari Belgium did not and could not access any PVP deposits during the term of any of the PVP certificates and Corteva does not allege that it did.

Through LGC, Inari Belgium purchased seeds of ATCC accession number PTA-11506, deposited by Corteva to obtain the asserted '434 patent.  (D.I. 1 at ¶ 74).  In the '434 patent, Corteva stated that the deposit would be available to the public pursuant to 37 C.F.R. § 1.808 upon patent grant and that it has no authority to waive any restrictions imposed by law on the transfer of the biological material or its transportation in commerce.  (D.I. 1 Ex. B '434 patent at 6:64-7:6) (quoting 37 C.F.R. § 1.808(a)(2) that all restrictions would be irrevocably removed on grant).

The deposits obtained by Inari Belgium were all patent deposits for issued utility patents and available to the public without restriction under 37 C.F.R. § 1.808(a)(2).  Inari Belgium used the purchased seeds in research and development experiments outside the U.S. without violating Corteva's U.S. patent or PVP rights.  (D.I. 1 at ¶ 88, 91).

In September 2021, Inari contacted Corteva to initiate discussions on a possible collaboration.  (D.I. 1 at ¶ 86).  During those discussions and correspondence, which continued until April 2022, Inari informed Corteva that Inari Belgium had obtained from the ATCC seed from corn plant event DP-004114-3, ATCC number PTA-11506, and had used it in research and development in Belgium.  (D.I. 1 at ¶¶ 88, 91).  Inari further informed Corteva that it had filed a patent application on this research and resulting modifications made to the transgenic locus in DP-004114-3.  (D.I. 1 at ¶ 91).  Inari's patent, U.S. Pat. No. 11,214,811, issued on January 4, 2022, during the parties' discussions.  The Inari patent states that corn plant event DP-004114-3 is the subject of the '434 patent and that representative seed has been deposited with the ATCC under Accession No. PTA-11506.  (D.I. 1 at ¶ 134; Scheibeler Decl. Ex. E at 5:22-29).

## V.   ARGUMENT

### A.   Legal Standards

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim for failing to state a claim upon which relief can be granted.  To withstand dismissal, a party must allege facts sufficient to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged" and "permit the court to infer more than mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In ruling on a motion to dismiss, courts "must take all of the factual allegations in the complaint as true," but "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Wood v. Moss*, 572 U.S. 744, 755 (2014) (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "merely saying so does not make it so for pleading-sufficiency purposes."  *Howard Hess Dental Lab'ys. Inc. v. Dentsply Int'l., Inc.*, 602 F.3d 237, 258 (3d Cir. 2010).

In certain circumstances, a court may consider facts outside of the pleadings when deciding a motion to dismiss.  As public records referenced by, and therefore incorporated into, the complaint, the Court may consider patents and prosecution histories without converting a motion to dismiss into one for summary judgment.  *See*, *e.g.*, *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d. 244, 256 n.5 (3d Cir. 2006); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *Amgen Inc. v. Coherus Biosciences Inc.*, No. 17-cv-546-LPS-CJB, 2017 U.S. Dist. LEXIS 219791, at *6 n.6 (D. Del. Dec. 7, 2017).  A court may also look beyond the complaint to "court files, records, and letters of official actions or decisions of government agencies and administrative bodies."  *Lenahan v. Johnson*, No. 15-cv-00763, 2016 U.S. Dist. LEXIS 11992, at *3 n.1 (E.D. Pa. Feb. 1, 2016).

In addition to exhibits attached to the complaint, a court also may consider documents that are referred to or incorporated by reference in the complaint and documents that form the basis of a claim – *i.e.*, documents that are integral or explicitly relied upon – so that a plaintiff with a legally deficient claim cannot escape dismissal by failing to attach documents relied upon to the complaint.  *New York ex rel. Schneiderman v. Intel Corp.*, 827 F. Supp. 369, 375 (D. Del. 2011); *see also Gould Elecs. Inc. v. United States*, 220 F.3d, 220 F.3d 169, 176 (3d Cir. 2010).

### B.    Count I (Infringement of U.S. PVP Certificates) Should Be Dismissed

Corteva alleges Inari violated Corteva's rights under 7 U.S.C. §§ 2341(a)(1) and (2) of hundreds of PVP certificates listed in the 77 pages of Exhibit A, by exporting from the United States seeds protected by the listed certificates.  (D.I. 1 at ¶ 109).

Corteva alleges that Inari Belgium ordered the seeds from Europe through ATCC's exclusive European distributor, LGC (D.I. 1 at ¶ 73).  Inari US was not a party to the transaction. Inari Belgium did not have access to the PVP deposits made with the USDA.  The seeds Inari Belgium purchased from the ATCC were deposits made by Corteva to obtain patents that meet the

requirements of 35 U.S.C. § 112 and thus are subject to 37 C.F.R. § 1.808(a)(2). Corteva authorized the ATCC to make the deposits available to the public upon patent issuance, without restriction. *Ajinomoto Co. Inc. v. Archer-Daniels-Midland Co.*, 228 F. 3d 1338, 1345-1346 (Fed. Cir. 2000).

The allegations of Count I suggest that the Exhibit A seed deposits are only subject to PVP certificates and were not made to comply with 35 U.S.C. § 112 to obtain patents. Yet each deposit of a seed strain in Exhibit A was made for U.S. utility patent purposes. Deposits made with the ATCC for patent purposes to comply with 35 U.S.C. § 112 must be made available to the public without restriction by the depositor upon the issuance of the patent under 37 C.F.R. § 1.808(a)(2). Under Section 112, assurance of access to the deposit by the public is required in exchange for the patent grant. *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l. Inc.*, 534 U.S. 124, 141 (2001); *In re Lundak*, 773 F.2d 1216, 1221 (Fed. Cir. 1985); *Feldman*, 517 F.2d. at 1354; *Ex parte Hildebrand*, 15 U.S.P.Q.2d 1662.

      1.    **The Supreme Court Has Addressed the More Stringent Disclosure Requirements of Utility Patents as Compared to PVP Certificates and the Availability of Patent Deposits to the Public**

In *J.E.M. Ag Supply*, the Supreme Court considered whether utility patents could be issued for plants that also benefited from protection under the PVPA. 534 U.S. at 127. The Court concluded that plants were proper subject matter for utility patents under 35 U.S.C. § 101 and discussed the differences between the PVPA and the utility patent statute. *Id.* The Court noted that it is harder to qualify for a utility patent than for a PVP certificate given that utility patents would confer a greater scope of protection. *Id.* at 142. The greater scope of protection comes at the cost of a more detailed disclosure. The Court pointed out that a key distinction is that a utility patent must describe the plant with sufficient specificity to enable others to make and use the invention and that description requirement includes a deposit of biological material such as seeds

and mandates that such material be accessible to the public, citing 37 C.F.R. §§ 1.801-1.809. *Id.* In contrast, the PVP disclosure is far less extensive than that required by the patent statute and the regulations do not require that the PVP deposit be accessible to the public. *Id.* at 142-143.

      2.    **Corteva Assured the PTO and the Public That Its Patent Deposits Would Be Available to the Public on Patent Issuance**

The only example provided in Count I as exemplary of all the listed varieties in Exhibit A, is PVP certificate 200900369, ATCC-PTA-11340. That certificate serves to illustrate the distinction of disclosure requirements between utility patents and PVP certificates. ATCC-PTA-11340 was deposited with the ATCC to meet the enablement requirements in at least ten Corteva patents claiming PTA-11340 (Scheibeler Decl. Ex. D), the earliest of which, the '167 patent, issued on December 7, 2010. Having obtained and benefitted from the broader protection of utility patents for each of the varieties in Exhibit A, Corteva cannot undo the *quid pro quo* disclosure requirement for that protection by asserting PVP rights.

Once the first of these patents issued in 2010, all restrictions on the availability of the ATCC deposit were irrevocably removed. 37 C.F.R. § 1.808(a)(2). The '167 patent indeed states that "upon allowance of any claims in the application, the Applicant will make the deposit available to the public pursuant to 37 C.F.R. § 1.808." (Scheibeler Decl. Ex. D at 43:49-51). On grant of the '167 patent, any member of the public had the right to obtain and export the patented seeds without restriction. Further, the '167 patent, referring to deposit PTA-11340, states that Applicant has no authority to waive any restrictions imposed by law on the transfer of biological material or its transportation in commerce. (Scheibeler Decl. Ex. D '167 patent, 43:61-63). Nevertheless, Corteva now alleges that this transportation in commerce is an act of infringement. But Corteva specifically waived any right to assert infringement of a PVP certificate resulting from the purchase and transport of seeds from the ATCC patent deposit. That is also true for every PVP

9

certificate covering a patented seed, i.e., all of those in Exhibit A.  A claim of infringement under 7 U.S.C. § 2341(a)(1) and (2) cannot be sustained.

### 3. The Patent and Trademark Office Rejected the Restrictions on Patent Deposits that Corteva Seeks to Impose

When the regulations of the Patent and Trademark Office (PTO) governing the deposit of biological materials for patent purposes were amended effective January 1, 1990, various proposals were rejected.  They are informative in evaluating Corteva's allegations.  The notice of final rulemaking for the amendments is found at 54 Fed. Reg. 34864-34883 (August 22, 1989).  (Scheibeler Decl. Ex. F).  It describes the process followed for the proposed rulemaking and compiles the comments received, the PTO responses, and the changes made in arriving at the final rules 37 C.F.R. §§ 1.801-1.809.  Several comments proposed implementing preconditions before making the deposit available including:  that the requester agree to use the biological material only for experimental purposes; that the material could not be exported to a country where no relevant patent was granted; that the requester could not make the material or a derivative available to another party; or that the requester agree to comply with the provisions of 35 U.S.C. § 271.  The PTO declined to adopt each of these proposals for several practical reasons, principally because no greater restriction on access to the deposit should be permitted than is permitted on access to the written description itself upon issuance of the patent.  *See* 54 Fed. Reg. 34872-34873.  Corteva, by asserting infringement of PVP certificates, attempts to invoke the very restrictions on the availability of patent deposits that the PTO considered and rejected.

### 4. The Operative MTA Does Not Trump Applicable Law and Regulations

Nor can Corteva circumvent the conditions of 37 C.F.R. § 1.808(a)(2) by relying on the terms of a hypothetical MTA downloaded from the current ATCC website.  The July 14, 2019 MTA between the ATCC and Inari Belgium differs critically from the hypothetical MTA on which

Corteva relies.  The Inari Belgium MTA specifically acknowledges that Budapest Treaty[2] patent deposits are made in compliance with the Treaty and related 37 C.F.R. provisions (i.e., 37 C.F.R. §§ 1.801-1.809), and that in the event of a conflict between the MTA terms and any applicable law or regulation, the terms of the applicable law and the Treaty shall govern (Scheibeler Decl. Ex. A at 3).  Thus, by the terms of the MTA, the 37 C.F.R. provisions trump and void the restrictive use clauses of Inari Belgium's MTA.

Inari Belgium had a legal right to obtain the deposits listed in Exhibit A from the ATCC without restriction.  Exporting such a sample of biological material deposited to satisfy 35 U.S.C. § 112 to obtain a patent is not a violation of PVP rights under 7 U.S.C. § 2321 et seq.

Corteva has not plausibly pled violation of 7 U.S.C. § 2321 et seq. because the ATCC deposits for all the varieties listed in Exhibit A were made to meet the enablement requirements for a U.S. patent under 35 U.S.C. § 112.  Inari Belgium obtained the deposits legally without restrictions.

C.     **Count II (Infringement of the '434 Patent Under 35 U.S.C. § 271(f)(2)) Should Be Dismissed**

1.     **Corteva's Incorrect Application of Section 271(f)(2) Amounts to a Prohibited Extraterritorial Application of U.S. Patent Law**

Corteva alleges that Inari infringed claim 9 of the '434 patent under 35 U.S.C. § 271(f)(2) by shipping a component (seeds) of a multicomponent patented invention for assembly outside of the United States.  Section 271(f)(2) was enacted in response to the decision in *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972), to protect against the export of an unpatented

---

[2] The United States is a signatory to the Budapest Treaty, which sets forth the conditions for recognition of deposits for patent purposes and the recognition of deposits at a depositary approved by the World Intellectual Property Organization.  The ATCC is an approved patent depository.  A deposit for purposes of a U.S. utility patent in addition to complying with the Budapest Treaty requirements must also meet the separate requirements of 37 C.F.R. §§ 1.801-1.809.

component of a patented invention with the intention of combining that component with other components in a manner that would infringe the patent if such combination occurred in the U.S. *See Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 152 (2017). Section 271(f) is an exception to the rule that U.S. patent law does not apply extraterritorially and should not be given an expansive interpretation. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 442 (2007). Section 271(f)(2) is directed to supplying a component of a multicomponent invention with the intent to assemble the multicomponent invention outside the United States. *Life Techs. Corp.*, 580 U.S. at 152.

Count II alleges direct infringement of '434 patent, claim 9, in violation of 35 U.S.C. § 271(f)(2). Claim 9 provides:

> 9. A corn plant, or part thereof, grown from the seed of claim 8.

Claim 9 is simply not a multicomponent claim. It defines a plant and its inherent parts (which includes seed) grown from the seed deposited with the ATCC Accession No. PTA-11506.

As set forth above, ATCC PTA-11506 is a deposit made to comply with 35 U.S.C. § 112. ATCC PTA-11506 is an integral part of the written description of the '434 patent. This is especially so given that ATCC PTA-11506 is the specific subject of claims 5, 6, 8, and 9 of the '434 patent. It is the claimed invention of the '434 patent, not an unpatented component of a multicomponent invention. It is available to the public without restriction as part of the '434 patent written description and its exportation is not an act of infringement.

The ATCC PTA-11506 seed sent to Belgium is not a component of a multicomponent patented invention. Claim 9 does not define any combination of components; it claims a corn plant and its parts, including seed. Corteva's claim construction (D.I. 1 at ¶ 129) improperly seeks to import water, nutrients, light, air, and physical support as components of the claim. (D.I. 1 at

12

¶ 132).   However, this cannot transform claim 9 into a multicomponent claim since there is no logical or textual context in the claim to support the inclusion of those limitations.  Limitations, especially those not described in the specification, cannot be imported into the claim to preserve validity or to find infringement.  *See White v. Dunbar*, 119 U.S. 47, 51-52 (1886) (claims not "a nose of wax which may be turned and twisted in any direction"); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1325, (Fed. Cir. 2003) ("danger of improperly importing a limitation is even greater when the purported limitation is based upon a term not appearing in the claim").  Count II is an improper attempt at extraterritorial application of U.S. patent law to activities that occurred in Belgium.

In addition, the act that Corteva alleges as infringement is the supplying of seeds from Patent deposit ATCC PTA-11506 by export to Inari Belgium.  (D.I. 1 at ¶¶ 123-128).  But, in the '434 patent, Corteva stated it has no authority to waive any restrictions imposed by law on the transfer of the ATCC PTA-11506 biological material or its transportation in commerce (D.I. 1 Ex. B '434 patent at 6:67-7:2).  Corteva cannot now allege that the export of that patent deposit seed is an infringement by conjuring it up as a component in an allegation of infringement under 35 U.S.C. § 271(f)(2).

Conduct relevant to the statute's focus on infringement must occur in the United States.  35 U.S.C. § 271; *WesternGeco LLC v. Ion Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018).  The only activity alleged in the Complaint that occurred in the United States was packaging and shipping the legitimately obtained patent deposit to Inari Belgium.  That activity is permitted as Corteva acknowledged in the '434 patent.  Count II does not allege that Inari made, used, sold or offered to sell the alleged invention of the '434 patent in the United States.  Because the alleged

wrongful conduct occurred in another country, this count involves an impermissible extraterritorial application of U.S. patent law.  *Id.* at 2137-38.

### D.   Count III (Induced Infringement of the '434 patent) Should Be Dismissed

#### 1.   Because the ATCC Did Not Directly Infringe the '434 Patent, There Can Be No Inducement of Infringement

Corteva alleges that Inari induced infringement of claim 8 of the '434 patent under 35 U.S.C. § 271(b) by inducing the ATCC to provide DP-004114-3 seeds to it without authorization. (D.I. 1 at ¶ 149).

Liability for inducement of infringement may arise only if there is a direct infringement, *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341(1961); *Limelight Networks, Inc. v. Akamai Techs.*, 572 U.S. 915, 923 (2014).

Corteva made its deposit ATCC PTA-11506 to comply with 35 U.S.C. § 112 to obtain the '434 patent.  (D.I. 1 at ¶ 59; D.I. 1 Ex. B '434 patent at 6:34-41).  When the patent issued on November 5, 2013, the ATCC was required to provide the deposited ATCC PTA-11506 seed to the public under 37 C.F.R. § 1.808(a)(2) without restriction.  ATCC was authorized by Corteva to do exactly what it did – sell seed through LGC to Inari Belgium subject to the actual MTA, consistent with Corteva's expectations.  (D.I. 1 at ¶ 59-61).  Corteva ratified this arrangement by stating in the '434 patent that the deposit would be available without restriction when the patent was granted (D.I. 1 Ex. B '434 patent at 6:64-7:6).  Furthermore, the MTA between Inari Belgium and the ATCC states that the distribution of patent deposits by the ATCC is governed by the provisions of 37 C.F.R. (i.e., 37 C.F.R. §§ 1.801-1.809) and thus those deposits are distributed without restriction after patent issuance.  The ATCC was expressly authorized by Corteva to make the deposited seed available to the public in furtherance of Corteva's obligations and promises to obtain the '434 patent.  There was no act of direct infringement.

Because ATCC was authorized to distribute the deposited seed, Corteva cannot plausibly plead induced infringement by Inari. Under the Section 112 written description and enablement requirements, assurance of access to the deposit by the public is required in exchange for the patent grant. *In re Lundak*, 773 F.2d at 1221; *Feldman*, 517 F.2d at 1354.

### E. Count IV (Breach of Material Transfer Agreements) Should Be Dismissed

#### 1. Inari US Did Not Enter into an MTA with the ATCC

Corteva has asserted Count IV for Breach of ATCC Material Transfer Agreements (each a "Template MTA") solely against Inari US upon information and belief. Corteva assumes that Inari US entered a Template MTA with the ATCC identical to the sample currently on ATCC's website. But Corteva admitted in the Complaint that prior versions of the ATCC MTA differed in form and content from the version relied upon for its allegations. (D.I. 1 at ¶ 70). The MTA at issue here was entered into by Inari Belgium and not Inari US. (Scheibeler Decl. Ex. A). Not only was Inari US not a party to a Template MTA, but the terms of Inari Belgium's MTA critically differ from the website form on which Corteva bases its allegations in important ways.

#### 2. Inari Belgium Did Not Breach the MTA

The MTA with Inari Belgium provides that all disputes must be raised in the Eastern District of Virginia. (Scheibeler Decl. Ex. A at 3-4). Corteva has not plausibly pled that this court has jurisdiction of the breach of contract claim arising from Inari Belgium's MTA with the ATCC.

In any event, the crux of Corteva's breach of contract claim is that Inari US used the samples it obtained from the ATCC in ways that violated the restrictions in the ATCC MTA. However, Inari Belgium purchased the seeds under an MTA that expressly provides that in the event of any conflict between the terms of the MTA and the provisions of any statute or regulation or the terms of the Budapest Treaty, the latter provisions shall govern. (Scheibeler Decl. Ex. A at 3). And as explained above, under 37 C.F.R. § 1.808(a)(2), once a patent is granted for which an

15

ATCC deposit was made, the patent deposit must be made available to the public without restrictions. Moreover, Corteva acknowledged in the '434 patent that upon patent grant it has no authority to waive any restrictions imposed by law on the transfer of the biological material or its transportation in commerce. (D.I. 1 Ex. B '434 patent at 6:64-7:6). The restrictions on patent deposits that Corteva seeks to impose through its reliance on a Template MTA from the ATCC website were expressly rejected by the PTO in promulgating 37 C.F.R. § 1.808(a)(2). Corteva cannot plausibly plead that Inari obtained the samples at issue before issuance of any relevant patents. The purported restrictions in the MTAs that Corteva claims Inari US breached are, therefore, of no effect and Corteva's claim for breach of contract cannot be cured and should be dismissed with prejudice.

### F.   Count V (Violation of Massachusetts General Law Chapter 93A) Should Be Dismissed

#### 1.   Massachusetts Law Does Not Apply

Corteva also alleges Count V violation of Chapter 93A of the Massachusetts General Laws only against Inari US. This Count too is wrongly premised on Inari US violating its contractual obligations under the Template ATCC MTA and allegedly engaging in unfair and deceptive acts.

As set forth above for Count IV, Inari US did not enter into an MTA with the ATCC and Inari Belgium did not violate any term of its MTA with ATCC. Corteva cannot plausibly plead that Inari Belgium ordering seeds through LGC in Europe is an act occurring in Massachusetts leading to a claim under Mass Gen. Laws ch. 93A. *Monahan Prod. LLC v. Sam's E., Inc.*, 463 F. Supp. 3d 128, 151 (D. Mass. 2020) ("Section 11 of chapter 93A expressly provides that no action may be brought under the statute unless the complained-of conduct occurred primarily and substantially within the Commonwealth."). Moreover, after issuance of the relevant patents, the public, including Inari, was free to obtain the patent deposit seeds without restriction by operation

of 37 C.F.R. § 1.808(a)(2), and the MTA at issue here expressly provided that in the event of a conflict between the MTA and any treaty, statute or regulation, the latter govern the parties' relationship.  A critical premise of Corteva's Chapter 93A claim, therefore, fails.

To state a claim under Mass. Gen. Laws ch. 93A, Section 11 Corteva must also plausibly plead *actual* damages resulting from the unfair act.  G.L. c. 93A § 11; *Manning v. Zuckerman*, 444 N.E.2d 1262, 1264 (Mass. 1983).  Corteva has not pled any actual injury or loss arising from the allegedly unfair conduct.  At best, Corteva pleads only that Inari US obtained samples deposited for patent purposes by Corteva that were available to the public without restriction after issuance of the associated patents.  Failure to plead actual injury independently warrants dismissal of Corteva's Chapter 93A claim.  *Duplessis v. Wells Fargo Bank, Nat'l Ass'n*, 91 Mass. App. Ct. 1125, 86 N.E.3d 250 (2017) (dismissing Ch. 93A claim for failure to plead actual loss).

Corteva has also not plausibly pled that Inari US's conduct was unfair or deceptive.  In fact, the allegations in the Complaint demonstrate that Inari US was far from unfair or deceptive.  (D.I. 1 at ¶¶ 84-91).  Inari US approached Corteva to consider collaborating and was upfront about the research and development activities in Belgium using seed Inari Belgium had obtained legitimately (D.I. 1 at ¶¶ 84-88, 134).  Corteva has not plausibly pled a violation of Mass Gen. Laws ch. 93A, Section 11.

### G.    Count VI (Conversion) Should be Dismissed

Corteva also asserts Count VI for conversion only against Inari US.

Conversion is a matter of state law and Corteva has not pled which state law applies.  By reference to the allegations in Count V, if Corteva's conversion claim is based on Massachusetts law, which does not apply here, the claim is subject to dismissal because, to state a claim for conversion under Massachusetts law, a plaintiff must plausibly plead that it had an ownership or possessory interest in the property at the time of the alleged conversion.  *Evergreen Marine Corp.*

*v. Six Consignment of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993); *United States v. Peabody Const. Co., Inc.*, 392 F.Supp.2d 36, 37 (D. Mass. 2005).  Here, once the patents for which Corteva deposited the samples with ATCC issued, they were available to the public without restriction.

Corteva's conversion claim is premised on the assumption that Inari US's possession and use of the sample were wrongful because it supposably violated the restrictions under the MTA. However, there was no MTA between Inari US and the ATCC and any restrictions in the Inari Belgium MTA would have no effect once the relevant patents issued.  At that point, Corteva lost any proprietary or possessory right in the physical seed samples it deposited with the ATCC. Although Corteva may have retained U.S. intellectual property rights in the seeds, that is an issue of U.S. patent or PVP law, and it is not a basis for a conversion claim under state law.  *Sourcing Unlimited, Inc. v. Elektrotecks, LLC*, C.A. No. 20-cv-11955-ADB, 2021 U.S. Dist. LEXIS 127532, * 31-32 (D. Mass. July 8, 2021) (Massachusetts law does not recognize a claim for conversion of intangible property) (citing *Blake v. Pro Coin Grading Serv.*, 898 F. Supp. 2d 365, 386 (D. Mass. 2012) ("This Court has consistently held that a plaintiff is not entitled to recover for conversion of intellectual property.")).  Corteva's claim under the MTA for conversion fails as a matter of law.

To the extent Corteva claims that it has a proprietary interest in the samples because it owns patent rights covering those samples, Corteva's conversion claim is preempted by federal patent law.  *See*, *e.g.*, *BASF Agrochemical Prods. v. Unkel*, 2006 WL 3533133, *6-7 (W.D. La. Dec. 7, 2006) (conversion claim preempted by federal patent law where tort claim is based on conduct governed by federal patent law); *Malik v. Lynk, Inc.*, 1999 WL 760217, at *3 (D. Kan. Aug. 18, 1999) (conversion claim based on misuse of intangible property preempted by federal patent law: "Plaintiff does not seek the return of his lost property or damages to compensate him for the loss of his tangible property.  Plaintiff instead seeks damages based on lost profits and harm

18

to his business because defendant profited from use of plaintiff's idea."); *Home Gambling Network, Inc. v. Piche*, 2007 WL 9734421, at \*10 (D. Nev. Mar. 30, 2007) (conversion claim preempted by federal patent law where patent infringement claim and conversion claim sought to prevent same alleged misuse of plaintiffs' patent rights).

Corteva has not plausibly pled a claim for conversion against Inari US and cannot plead one against Inari Belgium.

## VI.    CONCLUSION

Inari respectfully requests an order dismissing with prejudice each claim against it.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Megan E. Dellinger*

Dimitrios T. Drivas
Raj S. Gandesha
John P. Scheibeler
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10010
(212) 819-8200

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One Barker Avenue
White Plains, NY 10601
(914) 288-0022

*Attorneys for Defendants*

November 6, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 6, 2023, upon the following in the manner indicated:

Chad S.C. Stover, Esquire                                    *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
*Attorneys for Plaintiffs*

Peter Bicks, Esquire                                          *VIA ELECTRONIC MAIL*
Brian Raphel, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
*Attorneys for Plaintiffs*

David Gindler, Esquire                                       *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA 90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire                                     *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA 90401
*Attorneys for Plaintiffs*

Todd Vare, Esquire                                           *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
11 Sout Meridian Street
Indianapolis, IN 46204
*Attorneys for Plaintiffs*

Ronald Cahill, Esquire                                 *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA  02210
*Attorneys for Plaintiffs*

Lauren Baker, Esquire                                  *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA  30326
*Attorneys for Plaintiffs*

*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)