IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, | ) | |
| PIONEER HI-BRED INTERNATIONAL, | ) | |
| INC. and AGRIGENETICS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 23-1059 (JFM) |
| v. | ) | |
| | ) | |
| INARI AGRICULTURE, INC. and | ) | |
| INARI AGRICULTURE NV, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND
AFFIRMATIVE DEFENSES TO FIRST
AMENDED COMPLAINT AND COUNTERCLAIMS**

Defendants Inari Agriculture, Inc. ("Inari USA") and Inari Agriculture NV ("Inari Belgium") (collectively, "Inari") answer Plaintiffs Corteva Agriscience LLC, Pioneer Hi-Bred International, Inc. and Agrigenetics, Inc.'s (collectively, "Corteva") First Amended Complaint ("FAC") as follows.

**ANSWER TO FIRST AMENDED COMPLAINT**

Each of the paragraphs below correspond to the same-numbered paragraphs (each a "Paragraph") in the FAC. Inari denies all allegations in the FAC, whether express or implied, except those admitted specifically below. Any factual allegation below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that Corteva may argue follow from the admitted facts. To the extent that any of Corteva's allegations are vague and/or ambiguous, Inari denies those allegations. To the extent the subheadings in the FAC contain any allegations, Inari denies those allegations.

1.      Paragraph 1 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has infringed Corteva's intellectual property rights, engaged in deceptive and unlawful conduct or breached contractual obligations.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

2.      Paragraph 2 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has infringed Corteva's intellectual property or other rights.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

3.      Paragraph 3 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it "purloin[ed]" seeds that were deposited by Corteva to meet the requirements of patenting and are available to the public without restriction once the patents issued.  Inari admits that Inari USA has offices in Massachusetts, that its employees include at least one former executive of another agricultural seed company, that it applies its proprietary gene-editing technology to plant germplasm material, that it has obtained patents on certain inventions including seeds, and that it has announced publicly that it plans to sell commercial seeds in the United States in the future.  To the extent the allegations in Paragraph 3 purport to describe or characterize a publicly available video recording, Inari denies such characterization or description and states that the video recording speaks for itself.  Inari denies the remaining allegations in this paragraph.

4.      Paragraph 4 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has violated Corteva's intellectual property rights. To the extent Paragraph 4 purports to characterize or describe a publicly available document, Inari

denies such characterization or description and states that the document speaks for itself. Except as otherwise expressly admitted, Inari denies all remaining allegations in this paragraph.

5.     Paragraph 5 contains conclusions of law to which no response is required. To the extent a response is required, Inari denies that it has misappropriated or otherwise violated intellectual property rights in seeds that it purchased from the American Type Culture Collection ("ATCC") or breached any enforceable contractual restriction in any agreement with the ATCC. Inari admits that Corteva deposited samples of its seeds with ATCC, including each of the seeds identified in Exhibit A of the FAC, to comply with legal requirements for patent protection, including 35 U.S.C. § 112. Inari further admits that ATCC is a nonprofit organization that collects, stores and distributes to the public, pursuant to the requirements of the Budapest Treaty and US law, seeds and other biological materials deposited with ATCC to satisfy 35 U.S.C. § 112. To the extent Paragraph 5 purports to characterize or describe written terms of use binding on members of the public, Inari denies such characterization or description and states that the written terms are embodied in a document that speaks for itself. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

6.     Paragraph 6 contains conclusions of law to which no response is required. To the extent a response is required, Inari admits that Inari Belgium purchased seeds deposited at ATCC and identified in Exhibit A to the FAC from ATCC, through purchase orders submitted to ATCC's European agent LGC Standards and had them shipped to Belgium. Inari denies the remaining allegations.

7.     Paragraph 7 contains conclusions of law to which no response is required. To the extent a response is required, Inari denies them.

8.      Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

9.      Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

10.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

11.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

12.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

13.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

14.     Inari admits that the quoted words appear in the cited documents.  Inari states that the cited documents speak for themselves.  Inari admits that its employees include previous employees of Syngenta and Bayer CropScience, that it has been valued in excess of $1 billion and that it employs more than 270 people in three facilities in Cambridge, Massachusetts, West Lafayette, Indiana, and Ghent, Belgium.  Except as otherwise expressly admitted, Inari denies all remaining allegations in this paragraph.

15.     Admitted.

16.     Admitted.

17.     Paragraph 17 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it does not have a seed breeding program of its own and denies that its access and use of Corteva's patent deposited seeds was unlawful.  Inari admits

that it applies its proprietary gene-editing technology to plant germplasm but denies that any such technologies have been applied to the seeds in Exhibit A of the FAC. To the extent Paragraph 17 purports to characterize or describe a publicly available document, Inari denies such characterization or description and states that the document speaks for itself. Inari denies that it does not have authorization to use the seeds Corteva deposited with ATCC, including each of the seeds identified in Exhibit A of the FAC, to comply with legal requirements for patent protection, including 35 U.S.C. § 112. Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

18.     Paragraph 18 contains conclusions of law to which no response is required. To the extent a response is required, and for the purposes of this case only, Inari does not contest subject matter jurisdiction in this matter as to Counts I-IV and denies that this Court has subject matter jurisdiction over Counts V-VII.

19.     Paragraph 19 contains conclusions of law to which no response is required. To the extent a response is required, Inari USA admits that it is incorporated in Delaware, and for the purposes of this case only, does not contest personal jurisdiction in this matter.

20.     Paragraph 20 contains conclusions of law to which no response is required. To the extent a response is required, Inari USA admits that it is incorporated in Delaware. For the purposes of this case only, Inari USA does not contest that venue is proper in this Court.

21.     Paragraph 21 contains conclusions of law to which no response is required. To the extent a response is required, and for purposes of this case only, Inari Belgium does not contest personal jurisdiction in this matter.

22.     Paragraph 22 contains conclusions of law to which no response is required.  To the extent a response is required, Inari Belgium admits that it is not a resident of the United States.  For the purposes of this case only, Inari Belgium does not contest that venue is proper in this Court.

23.     Inari admits that plant breeding involves manipulation of the characteristics, structure, and composition of plants.  Inari admits that plant breeding can include use of both traditional breeding techniques as well as genetic engineering techniques.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

24.     Admitted.

25.     Inari admits that sexually reproducing plants produce seeds carrying genes from each of the parent plants.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

26.     Denied as to plant genes conferring different traits in people, and otherwise admitted.

27.     Admitted.

28.     Admitted.

29.     Admitted.

30.     Inari admits that traditional plant breeding can involve a variety of different methods.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

31.     Admitted.

32.     Inari admits that the inbred development process involves self-pollination or laboratory techniques.   Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

33.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

34.     Admitted.

35.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

36.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

37.     Admitted.

38.     Admitted.

39.     Admitted.

40.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

41.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

42.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

43.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

44.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

45.     To the extent this paragraph purports to characterize or describe a publicly available Technology Use Agreement ("TUA"), Inari denies any such characterization or description and states that the TUA speaks for itself.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

46.     To the extent this paragraph purports to characterize or describe a Syngenta Stewardship Agreement, Inari denies such characterization or description and states that the agreement speaks for itself.  To the extent this paragraph purports to characterize or describe a Bayer Technology Stewardship Agreement, Inari denies such characterization or description and states that the agreement speaks for itself.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

47.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

48.     To the extent this paragraph purports to characterize or describe certain provisions of the Plant Variety Protection Act ("PVPA"), Inari denies such characterization or description and states that the provisions of the PVPA speak for themselves.  To the extent a response is required, Inari admits that § 2483 of the PVPA provides intellectual property protection to a breeder (or the successor in interest of the breeder) of certain novel plant varieties that otherwise fulfill the protectability requirements of the PVPA, subject to certain limitations and exemptions. Inari also admits that § 2401(a)(10) provides that a "variety" may be represented by seed.  Except as otherwise expressly admitted, Inari denies all remaining allegations in this paragraph.

49.    Inari admits that the Plant Variety Protection Office ("PVPO") of the United States Department of Agriculture ("USDA") implements the PVPA.  To the extent the paragraph purports to characterize or describe a publicly available USDA document, Inari denies such characterization or description and states that the document speaks for itself.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

50.    To the extent this paragraph purports to characterize or describe Section 2541 of the PVPA, Inari denies such characterization or description and states that Section 2541 of the PVPA speaks for itself.  Inari denies all remaining allegations in this paragraph.

51.    To the extent this paragraph purports to characterize or describe Section 2561 of the PVPA, Inari denies such characterization or description and states that Section 2561 of the PVPA speaks for itself.  Inari denies all remaining allegations in this paragraph.

52.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

53.    Inari admits that the face of US Patent No. 8,575,434 (the "'434 Patent") identifies Pioneer and du Pont as the assignees of the '434 Patent.  Inari further admits that the '434 Patent is entitled "Maize Event DP-004114-3 and Methods for Detection Thereof" and that the U.S. Patent and Trademark Office issued the '434 Patent on November 5, 2013.  Inari further admits that the face of the '434 Patent, which speaks for itself, identifies U.S. Patent Application No. 12/970,052 as the application for the '434 Patent, which claims priority to U.S. Provisional Application Nos. 61/413,536 and 61/287,462, filed on November 15, 2010, and 61/287,462, filed December 17, 2009, respectively, but denies that the priority claim is valid.  Inari admits that what purports to be a true and correct copy of the '434 Patent is attached as Exhibit B.  Except as

otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

54.     To the extent this paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description and states that the '434 Patent speaks for itself and no response is required.

55.     Inari admits that the words quoted in this paragraph appear in the '434 Patent and states that the '434 Patent speaks for itself.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

56.     To the extent this paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description and states that the '434 Patent speaks for itself. Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

57.     To the extent the paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description and states that the '434 Patent speaks for itself. Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

58.     To the extent the paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description and states that the '434 Patent speaks for itself. Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

59.     Inari admits that in order to meet the requirements to obtain the '434 Patent, Pioneer Hi-Bred International, Inc. deposited samples of seeds containing the DP-004114-3 ("DP4114")[1]

---

[1] While Corteva refers to the event as "DP-004114-3" in its First Amended Complaint, "DP4114"

event with ATCC and that such deposits were given ATCC accession number PTA-11506.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

60.     Inari admits that ATCC is a depository into which patent applicants may deposit biological samples covered by a patent's claims in order to meet the requirements for patenting and that Corteva has made such patent deposits of seeds claimed by its patents.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

61.     To the extent this paragraph purports to characterize or describe a publicly available document on the ATCC website, Inari denies such characterization or description and states that the document speaks for itself.  Inari admits that samples of seeds deposited for patent purposes with ATCC should be made available to the public freely without restriction upon issuance of the patents and that persons in Europe or Africa who request seeds deposited with ATCC must make their purchase requests through LGC Standards, ATCC's exclusive distributor for Europe.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

62.     To the extent this paragraph purports to characterize or describe a publicly available document on the ATCC website, Inari denies such characterization or description and states that the document speaks for itself.  Inari admits that samples of seeds deposited for patent purposes with ATCC should be available to the public freely upon issuance of the patents and denies that ATCC may legally impose restrictions on samples of patented seeds after issuance of the patents. Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegation that

---

is the name usually used in commerce for the event and the name used hereafter.

Corteva has never authorized ATCC to provide a commercial use license to anyone. Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

63. Inari admits that one version of a sample material transfer agreement ("MTA") is available on ATCC's website. To the extent this paragraph purports to characterize or describe the terms of the MTA, Inari denies such characterization or description and states that the MTA speaks for itself. Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

64. To the extent this paragraph purports to characterize or describe the terms of the MTA, Inari denies such characterization or description and states that the MTA speaks for itself. Inari denies the allegations in this paragraph.

65. To the extent this paragraph purports to characterize or describe the terms of the MTA or documents on the ATCC website, Inari denies such characterization or description and states that the MTA and ATCC documents speak for themselves. Inari denies the allegations in this paragraph.

66. Admitted.

67. Admitted.

68. This paragraph contains conclusions of law to which no response is required. To the extent a response is required, Inari denies the allegations. To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

69. This paragraph contains conclusions of law to which no response is required. To the extent a response is required, Inari denies the allegations. To the extent this paragraph purports

to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

70.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

71.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

72.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

73.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

74.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

75.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

76.     To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.  Inari admits that it executed an MTA with ATCC in 2022 (the "2022 MTA") but lacks sufficient knowledge or information to form a belief as to the allegation that ATCC possesses a copy of the 2022 MTA.  Inari denies the remaining allegations in this paragraph.

77.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

78.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

79.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

80.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports

to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

81.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

82.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

83.    Inari admits that the quoted language appears in the 2022 MTA.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself, and no response is required.

84.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA and 2022 MTA, Inari denies such characterization or description and states that the 2019 MTA and 2022 MTA speak for themselves.

85.    Paragraph 85 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.

86.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it agreed to any restrictions on the samples it acquired from ATCC under the 2019 MTA.  To the extent this paragraph purports to characterize

or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself. Inari admits that it ordered through LGC Standards seeds deposited by Corteva for patent purposes with ATCC and that the requested seeds were delivered to Infinite-Eversole Specialty Crop Services LLC ("IE-SCS"), which is a consulting firm with an office in Arlington, Massachusetts. Inari lacks sufficient knowledge or information to form a belief as to the truth of the allegation that ATCC fulfilled the orders for Corteva seed without informing Corteva. Inari denies the remaining allegations in this paragraph.

87. Denied.

88. Inari admits the words quoted in this paragraph appeared on the IE-SCS website as of November 27, 2023, and states that the cited website speaks for itself and no response is required. To the extent a response is required, Inari lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph.

89. Denied.

90. Paragraph 90 contains conclusions of law to which no response is required. To the extent a response is required, Inari denies them. Inari admits that its employees include at least one former employee of Syngenta or Bayer CropScience. To the extent the paragraph purports to characterize or describe an October 12, 2021 letter from Inari to Corteva and a 2022 Bank of America Global Research Report, Inari denies such characterization or description of the documents and states that the documents speak for themselves. Except as otherwise expressly admitted, Inari denies the allegations in this paragraph.

91. Inari admits that the Corteva seeds Inari acquired from ATCC were deposited with ATCC by Corteva to obtain patents that had issued before the dates Inari acquired the seeds. Inari

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

92.    Paragraph 92 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that ATCC knowingly shipped the seeds to IE-SCS, IE-SCS received seeds from ATCC, arranged for a USDA phytosanitary certificate and had the seeds together with the phytosanitary certificate shipped to Belgium.  Inari denies the remaining allegations in this paragraph.

93.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

94.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph and specifically denies that it was required to obtain a license to purchase seeds deposited at ATCC by Corteva to meet the requirements for patenting.

95.    Inari denies it misappropriated Corteva's seeds.  Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

96.    Inari admits that a videoconference involving representatives of Inari and Corteva occurred on September 14, 2021 during which Inari shared information with Corteva.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph and  denies that it required a "business relationship" with Corteva to access seeds containing the DP4114 and TC-1507 ("TC1507")[2] events or that it engaged in an "elaborate scheme."

---

[2] While Corteva refers to the event as "TC-1507" in its First Amended Complaint, "TC1507" is the conventional name for the event and the name used hereafter.

97.     Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them and specifically denies that it was under any obligation to disclose to Corteva that it had obtained patent deposit seeds from ATCC.

98.     Inari admits that Inari and Corteva did not enter into a business agreement during the September 14, 2021 videoconference.  Inari denies the remaining allegations in this paragraph and specifically denies that it proposed a "quid pro quo" or made a "demand" to Corteva during the September 14, 2021 videoconference.

99.     Inari admits that Corteva sent to Inari USA a letter dated October 1, 2021.  To the extent the paragraph purports to characterize or describe the October 1, 2021 letter, Inari denies such characterization or description and states that the letter speaks for itself.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

100.     Paragraph 100 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has misappropriated Corteva's inbred seeds.  Inari admits that Inari USA sent to Corteva a letter dated October 12, 2021.  To the extent the paragraph purports to characterize or describe the October 12, 2021 letter, Inari denies such characterization or description and states that the letter speaks for itself.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

101.     Inari admits that Inari USA sent to Corteva a letter dated October 12, 2021.  To the extent this paragraph contains characterizations or descriptions of the October 12, 2021 letter, Inari denies such characterizations or descriptions and states that the letter speaks for itself.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph and

specifically denies that it was under any obligation to explain the basis for its statement that the grain containing TC1507 was not subject to contractual restrictions.

102.    Inari admits that Corteva sent to Inari USA a letter dated December 16, 2021.  To the extent this paragraph purports to characterize or describe the December 16, 2021 letter, Inari denies such characterization or description and states that the letter speaks for itself.  Inari denies the remaining allegations in this paragraph and specifically denies that Inari USA did not respond to Corteva's December 16, 2021 letter.

103.    Inari admits that Inari USA issued a press release dated February 9, 2022.  To the extent this paragraph purports to characterize or describe the February 9, 2022 press release, Inari denies such characterization or description and states that the press release speaks for itself.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph and therefore denies them.

104.    Inari admits that Inari's Chief Legal Officer had a conversation with one or more representatives of Corteva on April 1, 2022 during which he identified U.S. Patent No. 11,214,811 issued to Inari.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

105.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

106.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

107.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

108.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

109.    To the extent this paragraph purports to characterize or describe certain documents containing quotations from LGC Standards, Inari denies such characterizations or descriptions and states that the documents speak for themselves.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

110.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

111.    Inari admits that the Managing Director of Inari Belgium signed certain Inari purchase orders dated on or about May 20, 2020, September 8, 2020 and October 20, 2021.  To the extent this paragraph purports to characterize or describe those Inari purchase orders, Inari denies such characterization or description and states that the documents speak for themselves.

112.    Paragraph 112 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it "induced" ATCC to sell seeds deposited with ATCC for patent purposes or that it violated Corteva's patent and PVP rights or the ATCC MTA. Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

113.    Paragraph 113 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it acted improperly in obtaining Corteva's patent deposit seeds from ATCC.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

114.    Paragraph 114 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.

115.    To the extent this paragraph purports to characterize or describe publicly available documents, Inari denies such characterization or description and states that the documents speak for themselves.  Inari admits that it obtained from ATCC seeds deposited for patent purposes that contain the DP4114 event and denies the remainder of the allegations in this paragraph.

116.    Inari admits that the fact sheet from Inari's website cited in this paragraph contains the quoted passages.  To the extent this paragraph purports to selectively characterize or describe a publicly available fact sheet from Inari's website, Inari denies such characterization or description and states that the document speaks for itself and no response is required.

117.    Paragraph 117 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has misappropriated Corteva's seeds.  To the extent the paragraph purports to characterize or describe publicly available articles, Inari denies such characterization or description and states that the articles speak for themselves.  Inari denies the remaining allegations in this paragraph.

118.    Paragraph 118 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

119.    Inari admits that the '811 patent is entitled "INIR6 Transgenic Maize," was issued on January 4, 2022, that U.S. Patent Application No. 17/249,640 filed March 8, 2021 is the application from which it issued, and that it lists U.S. provisional applications dated as early as July 31, 2020.  Inari admits that the '648 patent was issued on September 12, 2023, that U.S. Patent Application No. 17/680,647 filed on February 25, 2022 was the application from which it issued, and that it lists U.S. provisional applications dated as early as July 31, 2020.  To the extent this

paragraph purports to characterize or describe the '811 patent or the '648 patent, Inari denies such characterization or description and states that the '811 patent and the '648 patent speak for themselves.  Except as otherwise expressly admitted, Inari denies the remaining allegations.

120.    Paragraph 120 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has infringed Corteva's intellectual property rights or caused damages or irreparable injury to Corteva.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

## COUNT I

### Infringement of U.S. Plant Variety Protection Certificates

### (Asserted Against All Defendants)

121.    Inari incorporates herein by reference its responses to paragraphs 1 through 120 above as if fully set forth herein.

122.    Paragraph 122 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

123.    Paragraph 123 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that the identified seeds were purchased via purchase orders submitted to ATCC's European agent LGC Standards but otherwise denies the allegations in this paragraph.

124.    Paragraph 124 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that PVP Certificate No. 200900369 lists on its face PH128Z as its subject and Pioneer as its owner.  Inari states that the PVP Certificate No. 200900369 speaks for itself and to the extent this paragraph purports to characterize or

describe the PVP Certificate denies such characterization or description.  Except as otherwise expressly admitted, Inari denies the allegations in this paragraph.

125.    Paragraph 125 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that the identified seeds were purchased through purchase orders submitted to LGC Standards but otherwise denies the allegations in this paragraph.

126.    Paragraph 126 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

127.    Paragraph 127 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that its employees include at least one former employee of Syngenta or Bayer CropScience.  To the extent the paragraph purports to characterize or describe a publicly available document, Inari denies such characterization or description and states that the document speaks for itself.  Except as otherwise expressly admitted, denied.

128.    Paragraph 128 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has misappropriated seeds or otherwise infringed Corteva's intellectual property rights.  To the extent this paragraph purports to characterize or describe a publicly available Bank of America Report, Inari denies such characterization or description and states that the document speaks for itself.  Inari denies all remaining allegations in this paragraph.

129.    Paragraph 129 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

130.    Paragraph 130 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

131.    Paragraph 131 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

132.    Paragraph 132 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

133.    Paragraph 133 contains conclusions of law to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

## COUNT II

### Infringement of U.S. Patent No. 8,575,434 Under 35 U.S.C. § 271(a)

### (Asserted Against All Defendants)

134.    Inari incorporates herein by reference its responses to paragraphs 1 through 133 above as if fully set forth herein.

135.    Paragraph 135 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the DP4114 event with ATCC as a requirement to obtain the '434 Patent and that such deposit was given ATCC accession number PTA-11506.  Inari states that the'434 Patent speaks for itself and to the extent this paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description.

136.    Paragraph 136 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

137.    Inari admits that a phytosanitary certificate provides phytosanitary certification of various U.S. agricultural seeds, crops, or plant products.  Inari also admits that a country may require a phytosanitary certificate for seeds, crops, or plant products entering said country and that

seeds purchased were subject to phytosanitary testing as a requirement for shipment to Belgium. Inari denies the remaining allegations.

138.     Paragraph 138 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that, now and during the time relevant to this action, Belgium required a phytosanitary certificate for corn seeds entering the country and that the seeds purchased were subject to phytosanitary testing.  Inari denies that IE-SCS exported the corn event DP4114 seeds, that IE-SCS was an agent of Inari Belgium, or that IE-SCS used the seeds in any manner.

139.     Paragraph 139 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

## COUNT III

### Infringement of U.S. Patent No. 8,575,434 Under 35 U.S.C. § 271(f)(2)

### (Asserted Against All Defendants)

140.     Inari repeats and incorporates by reference its responses to paragraphs 1 through 139 above as if fully set forth herein.

141.     Paragraph 141 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the DP4114 event with ATCC as a requirement to obtain the '434 Patent and that such deposit was given ATCC accession number PTA-11506.  Inari states that the '434 Patent speaks for itself and to the extent this paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description.

142.     Paragraph 142 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

143.    Denied.

144.    Paragraph 144 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

145.    Paragraph 145 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph and specifically denies that it required a license to the '434 Patent in order to access seeds deposited by Corteva with ATCC to obtain the '434 Patent.

146.    Paragraph 146 contains conclusions of law to which no response is required.  To the extent a response is required, denied.  Inari states that each of the 2019 MTA and the Budapest Treaty speaks for itself and to the extent this paragraph purports to characterize or describe the 2019 MTA and the Budapest Treaty, Inari denies such characterization or description.

147.    Paragraph 147 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

148.    Paragraph 148 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

149.    Paragraph 149 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

150.    Denied.

151.    Paragraph 151 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

152.    Paragraph 152 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

153.    Inari admits that the quoted words appear in the '811 patent and the '648 patent. Inari states that the '811 patent and the '648 patent speak for themselves and to the extent this paragraph purports to characterize or describe the '811 patent or the '648 patent, denies such characterization or description.   Except as otherwise expressly admitted, Inari denies the allegations in this paragraph.

154.    Inari admits that a videoconference involving Inari and Corteva occurred on September 14, 2021 and that Inari informed Corteva during that videoconference that Inari Belgium had genome edited the DP4114 event.  Except as otherwise expressly admitted, Inari denies the allegations in this paragraph.

155.    Inari admits that Ponsi Trivisvavet sent to Corteva a letter dated October 12, 2021. To the extent this paragraph purports to characterize or describe the October 12, 2021 letter, Inari denies such characterization or description and states that the letter dated speaks for itself.  Except as otherwise expressly admitted, Inari denies all allegations in this paragraph.

156.    Inari admits that on or around April 1, 2022, a representative of Inari informed Corteva of the patent application filing for the '811 patent and the '648 patent.  Inari denies the remaining allegations in this paragraph.

157.    Paragraph 157 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

158.    Paragraph 158 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

159.    Paragraph 159 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

## COUNT IV

**Induced Infringement of U.S. Patent No. 8,575,434 Under 35 U.S.C. § 271(b)**

**(Asserted Against All Defendants)**

160.    Inari incorporates herein by reference paragraphs 1 through 159 above as if fully set forth herein.

161.    Inari admits that Corteva deposited with ATCC a sample of seeds containing the DP4114 event in order to obtain the '434 Patent and that such sample was given ATCC accession number PTA-11506.  To the extent this paragraph purports to characterize or describe ATCC's policies, terms of use or agreements, Inari denies such characterization or description and states that the documents speak for themselves.  Inari denies the remaining allegations in this paragraph.

162.    Paragraph 162 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

163.    Paragraph 163 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

164.    Inari admits that Inari USA has sent to Corteva a letter dated October 12, 2021. Inari states that the letter dated October 12, 2021 and Corteva's Trait Stewardship website speak for themselves and to the extent this paragraph purports to characterize or describe such materials, Inari denies such characterization or description.  Except as otherwise expressly admitted, Inari denies the allegations in this paragraph.

165.    Paragraph 165 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

166.    Paragraph 166 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

167.    Inari states that the cited document speaks for itself and to the extent the paragraph purports to characterize or describe a fact sheet on the Inari website, Inari denies such characterization or description.

168.    Paragraph 168 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

169.    Paragraph 169 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

170.    Paragraph 170 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

## COUNT V

### Breach of Material Transfer Agreements

### (Asserted Against Inari Belgium)

171.    Inari incorporates herein by reference its responses to paragraphs 1 through 170 above as if fully set forth herein.

172.    Paragraph 172 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the 2019 MTA and 2022 MTA speak for themselves and denies all remaining allegations in this paragraph.

173.    Paragraph 173 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the 2019 MTA and 2022 MTA speak for themselves and denies all remaining allegations in this paragraph.

174.    Inari admits that the quoted words appear in the cited sample MTA.  Inari states that the sample MTA, the 2019 MTA, and the 2022 MTA speak for themselves.  To the extent a response is required, denied.

175.    Paragraph 175 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the 2019 MTA and the 2022 MTA speak for themselves and denies all remaining allegations in this paragraph.

176.    Inari states that the 2019 MTA and the 2022 MTA speak for themselves and to the extent this paragraph purports to characterize or describe the terms of the 2019 MTA or the 2022 MTA, Inari denies such characterization or description.  Inari denies the remaining allegations in this paragraph and specifically denies that Inari Belgium was required to obtain a license from Corteva.

177.    To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA and 2022 MTA, Inari denies such characterization or description and states that the 2019 MTA and the 2022 MTA speak for themselves.

178.    To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA and 2022 MTA, Inari denies such characterization or description and states that the 2019 MTA and the 2022 MTA speak for themselves. Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegation as to what is "common in commercial contracts where such an exclusion is intended" and therefore denies the allegation.

179.    Paragraph 179 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has "disregard[ed]" or otherwise violated any MTA with ATCC.  Inari admits that it released a press release dated February 9, 2022.  To the extent the paragraph purports to characterize or describe the February 9, 2022 press release, Inari denies such characterization or description and Inari states that the press release speaks for itself. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies them.

180.     Paragraph 180 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the press release dated February 9, 2022 speaks for itself and denies all remaining allegations in this paragraph.

181.     Paragraph 181 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the 2019 MTA and the 2022 MTA speak for themselves and denies all remaining allegations in this paragraph.

182.     Paragraph 182 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

183.     Paragraph 183 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

## Count VI

### Violation of Massachusetts General Law Chapter 93A

### (Asserted Against Inari USA)

184.     Inari incorporates herein by reference its responses to paragraphs 1 through 182 above as if fully set forth herein.

185.     Paragraph 185 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that Inari USA maintains its principal place of business in Massachusetts.  Inari states that Chapter 93A speaks for itself and denies all remaining allegations in this paragraph.

186.     Paragraph 186 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

187.     Paragraph 187 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

188.     Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

189.     Inari states that its press releases speak for themselves.  To the extent a response is required, denied.

190.     Paragraph 190 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

191.     Paragraph 191 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

192.     Paragraph 192 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that Inari USA maintains its principal place of business in Massachusetts.  Inari denies the remaining allegations in this paragraph.  Inari lacks knowledge or information sufficient to form a belief as to the truth of whether IE-SCS maintains its principal place of business in Massachusetts and therefore denies them.

193.     Paragraph 193 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

<u>**COUNT VII**</u>

**Conversion**

**(Asserted Against All Defendants)**

194.     Inari incorporates herein by reference its responses to paragraphs 1 through 47 and 60 through 120 above as if fully set forth herein.

195.     Paragraph 195 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the cited documents speak for themselves and denies all remaining allegations in this paragraph.

196.    Paragraph 196 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

197.    Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies them.

198.    Paragraph 198 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

199.    Paragraph 199 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

## PRAYER FOR RELIEF

The remainder of the FAC recites a prayer for relief to which no response is required.  To the extent any response is required, Inari denies that Corteva is entitled to any remedy or relief sought in the FAC or any other remedy or relief, and denies any allegations therein.

## AFFIRMATIVE DEFENSES

The Inari Defendants rely upon the following defenses to each claim asserted against them:

### First Affirmative Defense:
### Failure to State a Claim

The FAC fails to state a claim upon which relief may be granted.

### Second Affirmative Defense:
### Invalidity of the '434 Patent

The claims of the '434 Patent are invalid for failure to meet the requirements of patentability under 35 U.S.C. §§ 101 *et seq*., including without limitation §§ 101, 102, 103, 112 and/or any judicially-created doctrine of invalidity including obviousness-type double patenting.

### Third Affirmative Defense:
### Noninfringement of the '434 Patent

The Inari Defendants have not infringed any valid and enforceable claim of the '434 Patent directly or indirectly, by inducement, contributorily, literally or under the doctrine of equivalence, or in any other manner.

### Fourth Affirmative Defense:
### Unenforceability of the '434 Patent

The '434 Patent is unenforceable. By bringing a suit for patent infringement against Inari to impede Inari's access to the written description of the '434 Patent of which patent deposit ATCC PTA-11506, is an integral part, Corteva has breached it promise to the public that it would make available to the public without restriction upon issuance of the patent pursuant to 37 C.F.R. § 1.808 samples of patent deposit ATCC PTA-11506. As a result of Corteva's breach of its representation as to the unrestricted availability of the patent deposit to the U.S. Patent and Trademark Office and the public the '434 Patent is unenforceable.

### Fifth Affirmative Defense:
### Failure to Mark

Corteva failed to mark or give notice in the ATCC catalogue and documentation as required by 7 U.S.C. § 2567 that the patent deposits made by Corteva with the ATCC pursuant to 35 U.S.C. § 112 to obtain utility patents were subject to PVP Certificates and therefore may not recover damages.

### Sixth Affirmative Defense:
### Invalidity of the Plant Variety Protection Certificates

Each of the Plant Variety Protection ("PVP") Certificates identified in Exhibit A of the FAC is invalid for failure to meet the requirements of protectability under 7 U.S.C. §§ 2401 *et seq.*, including without limitation those set forth in § 2402.

**Seventh Affirmative Defense:**
**Plant Variety Protection Act Research Exemption**
**(7 U.S.C. § 2544)**

The acts of the Inari Defendants do not infringe the PVP Certificates identified in Exhibit A of the FAC because the use of the patent deposit seeds was for breeding and/or bona fide research or for breeding under 7 U.S.C. § 2544.

**Eighth Affirmative Defense:**
**Noninfringement of Plant Variety Protection Certificates**
**(7 U.S.C. § 2541(d))**

The Inari Defendants have not infringed any valid and enforceable PVP Certificate identified in Exhibit A of the FAC, including but not limited to because the plant varieties identified in Exhibit A of the FAC were sold or otherwise marketed with the consent of the owner in the United States, and the export of the patent deposit seeds was into Belgium, a country that provides plant variety protection for varieties of maize. The acts of the Inari Defendants alleged in the FAC, therefore, are not infringing under 7 U.S.C. § 2541(d).

**Ninth Affirmative Defense:**
**No Damages Under Plant Variety Protection Act**
**(7 U.S.C. § 2566)**

Corteva knew about the acts by the Inari Defendants that it alleges infringe the PVP Certificates identified in Exhibit A of the FAC more than one year before commencing this suit. Corteva's claims for damages as to those acts are therefore barred as untimely under 7 U.S.C. § 2566.

**Tenth Affirmative Defense:**
**Estoppel**

Corteva is legally estopped and has waived its right under 7 U.S.C. § 2541(a)(2) to assert infringement of the PVP Certificates in Exhibit A of the FAC based on conduct of obtaining seeds from patent deposits made by Corteva pursuant to 35 U.S.C. § 112 to obtain utility patents claiming

the same varieties as claimed in the PVP Certificates. Corteva is estopped from asserting the PVPA or the Patent Laws against Inari for obtaining and exporting samples from the ATCC patent deposits. Corteva represented in the patents for which it made patent deposits, including the patents corresponding to the PVP Certificates in Exhibit A of the FAC (see Exhibit 1 attached) and the '434 Patent, that the patent deposits would be available to the public without restriction in compliance with 37 C.F.R. § 1.808, Inari justifiably relied on Corteva's representations and promises in the patents in obtaining samples from the patent deposits.

### Eleventh Affirmative Defense:
### Patent Misuse

Corteva by asserting infringement of the PVP Certificates in Exhibit A of the FAC under 7 U.S.C. § 2541(a)(2) after the utility patents claiming the same varieties as in the PVP Certificates have expired is unlawfully seeking to extend the term of the utility patents claiming the varieties and is engaging in patent misuse.

### Twelfth Affirmative Defense:
### Misuse of Plant Variety Protection Certificates

Corteva has engaged in misuse of the PVP Certificates in Exhibit A of the FAC by bringing legal action for infringement under 7 U.S.C. § 2541(a)(2), where there has been no sale, marketing, importation, stocking, dispensing or propagation of the varieties claimed in the PVP Certificates in the United States by the Inari Defendants, where Inari Belgium's acts are not considered infringement under 7 U.S.C. § 2541(d), and where the use by Inari Belgium of the varieties claimed in the PVP Certificates was for plant breeding or other bona fide research exempt from infringement under 7 U.S.C. § 2544.

36

**Thirteenth Affirmative Defense:**
**No Infringement of Plant Variety Protection Certificates**
**(7 U.S.C. § 2541(d))**

The export to Belgium of seeds accessed from an ATCC patent deposit made by Corteva, wherein Corteva authorized the sale of the seeds by the ATCC in compliance with 37 C.F.R. § 1.808, is not an act of infringement. 7 U.S.C. § 2541(d).

**Fourteenth Affirmative Defense:**
**No Infringement of Patents or Plant Variety Protection Certificates By Obtaining or**
**Exporting Samples of Seeds Deposited for Patent Purposes**
**(37 C.F.R. § 1.808)**

Patent deposits are freely accessible to the public without restriction on patent grant and obtaining and exporting seeds from a public depository wherein such patent deposits are stored is not an infringement of a PVP Certificate or of a patent under 35 U.S.C. § 271.  37 C.F.R. § 1.808.

**Fifteenth Affirmative Defense:**
**Waiver of Plant Variety Protection Rights**
**(7 USC 2483(a)(3))**

By making an ATCC patent deposit in compliance with 35 U.S.C. § 112 and 37 C.F.R. § 1.808 to obtain a utility patent claiming a plant variety, for each of the plant varieties claimed in the PVP Certificates in FAC Exhibit A, Corteva has waived it rights under 7 U.S.C. § 2483(a)(3) to exclude others from obtaining and exporting seeds from such ATCC patent deposit.

**Sixteenth Affirmative Defense:**
**Lack of Third-Party Beneficiary Standing**

Corteva lacks standing as a third-party beneficiary to enforce the terms of the material transfer agreements ("MTAs") between ATCC and Inari Belgium.

**Seventeenth Affirmative Defense:**
**No Breach of the 2019 MTA**

Inari Belgium did not breach the 2019 MTA with ATCC because any restriction in the 2019 MTA allegedly breached by Inari Belgium is unenforceable by operation of the "Compliance

With Laws" provision of the MTA, which expressly provides that (i) "[d]istribution by ATCC of Budapest Treaty patent deposits are made pursuant to, and in compliance with, all applicable laws and regulations, including the Budapest Treat and related 37 C.F.R. provisions" and (ii) in the event of any conflict between "the terms of [the] MTA and any applicable law or regulation with respect to ATCC Material that is supplied hereunder by ATCC from the stock of a Budapest Treaty deposit, then the terms of the applicable law or regulation shall govern."

### Eighteenth Affirmative Defense:
### No Breach of the 2022 MTA

Inari Belgium did not breach the 2022 MTA because all the seed samples obtained by Inari Belgium at issue were obtained from ATCC pursuant to purchase orders placed under the 2019 MTA and before the execution of the 2022 MTA.

### Nineteenth Affirmative Defense:
### Lack of Unfair or Deceptive Acts or Practices
### (Mass. Gen. Laws Ch. 93A, Section 2)

The Inari Defendants did not engage in unfair or deceptive acts or practices but were transparent and upfront with Corteva as to the conduct alleged in the FAC.

### Twentieth Affirmative Defense:
### Acts Not Occurring Primarily or Substantially in Massachusetts
### (Mass. Gen. Laws Ch. 93A, Section 11)

The allegedly unfair or deceptive conduct identified in the FAC did not occur primarily or substantially in Massachusetts.

### Twenty-First Affirmative Defense:
### No Misappropriation of Seeds Containing TC1507 Event

Corteva's TC1507 event was not protected by or claimed in a valid enforceable utility patent or PVP Certificate and was not misappropriated by the Inari Defendants.

### Twenty-Second Affirmative Defense:
### No Proprietary or Possessory Interest

At the time Inari Belgium obtained samples of the seeds at issue from ATCC, Corteva did not have a proprietary or possessory interest in the samples, which it deposited with ATCC under the Budapest Treaty for patenting purposes and which as a matter of law were freely available to the public without restriction upon issuance of the patents.

### Twenty-Third Affirmative Defense:
### Unclean Hands

Corteva is not entitled to the relief requested because it comes to this Court with unclean hands including but not limited to because it engages in its own business in the same activities with third party patent deposits it alleges that when performed by Inari are infringing and seeks relief based on legal positions that are contrary to those it has asserted to obtain relief in other contemporaneous legal proceedings.

### Twenty-Fourth Affirmative Defense
### No Injunctive Relief

Corteva is not entitled to permanent equitable relief including at least because Corteva's alleged damages are not irreparable, Corteva has an adequate remedy at law and Corteva has unclean hands.

### Twenty-Fifth Affirmative Defense
### No Exceptional Case

The Inari Defendants' actions in defending this case do not rise to an exceptional case under 35 U.S.C. § 285.

### Twenty-Sixth Affirmative Defense
### No Willful Infringement

The Inari Defendants have not willfully infringed any claim of the '434 Patent or the PVP Certificates identified in Exhibit A of the FAC.

**Twenty-Seventh Affirmative Defense**
**No Conversion**

The Inari Defendants did not convert any of the patent deposit seeds or Corteva property because they legally purchased and made full payment for the patent deposit seeds obtained from the ATCC, who was legally and contractually obligated and expressly authorized by Corteva to sell the patent deposit seeds to the public.

**Twenty-Eighth Affirmative Defense**
**Additional Defenses**

Any additional defenses that discovery may reveal.

**Reservation of Affirmative Defenses**

The Inari Defendants' investigation of their defenses is continuing and the Inari Defendants reserve the right to allege and assert any additional defenses.

## INARI'S COUNTERCLAIMS

For its counterclaims, Defendants-Counterclaim Plaintiffs Inari US and Inari Belgium allege against Plaintiffs-Counterclaim Defendants Corteva Agriscience, Pioneer, and Agrigenetics (collectively, "Corteva") as follows:

## INTRODUCTION

1.      Inari, an emerging company, is a pioneer in the novel application of two cutting-edge technologies to plants:  CRISPR genome-editing technology and artificial intelligence-based predictive design.  CRISPR, an acronym for "Clustered Regularly Interspaced Short Palindromic Repeats," is a Nobel Prize-winning technology that selectively and precisely modifies the DNA of living organisms through genome editing.  Predictive design enables Inari quickly and accurately to identify novel genes and genome regions to edit and create novel variations to improve crops.  Inari's second-to-none technology platform is capable of rapidly generating plants that require fewer inputs to produce significantly higher yield than plants developed using conventional breeding or traditional genetic engineering.  Inari's platform also allows it to genome-edit plants and develop varieties and traits without infringing third parties' intellectual property rights.

2.      Corteva is one of the largest agribusiness companies in the world, with annual revenues of over $17 billion a year, and the dominant supplier of hybrid corn and genetically-modified corn in the U.S.  Corteva is one of two agribusiness giants that together control more than 70% of the market for corn seed sold in the U.S.

3.      Corteva has been in business for nearly one hundred years.  It is the biggest seed company in the world.  Corteva has used time-consuming, traditional, and conventional breeding techniques to develop its plants and uses genetic engineering technology to introduce foreign genes

into plants.  To maintain its control over these plants and techniques, Corteva sells its seeds to farmers subject to Technology Use Agreements that restrict the sale and use of Corteva seeds.

4.      Corteva maintains a dominant position in the market by acquiring intellectual property on plant varieties.  Corteva owns more than 50% of all utility patents issued for varieties of corn in the United States since 1976 amounting to thousands of patents.  Corteva also obtains plant variety protection ("PVP") certificates claiming the identical corn varieties that it claims in its utility patents.  Corteva owns 53% of all PVP certificates issued in recent decades for corn varieties.

5.      Corteva has invested in CRISPR genome editing but is several years behind Inari and knows it.

6.      Inari represents a powerful future competitive threat to Corteva's dominant market position in corn despite its lack of substantial sales of corn products in the United States or anywhere.  Among Inari's limited corn product sales, none involve any corn products derived from the Corteva seeds or that infringe a Corteva patent or PVP certificate.

7.      Unable to identify an Inari product in the U.S. that infringes a valid and enforceable US intellectual property right, Corteva instead has sued Inari claiming that Inari's legal acts of *buying seeds* from the American Type Culture Collection ("ATCC"), *which Corteva deposited to obtain its US patents and promised would be available to the public without restriction after patent grant,* and then exporting those seeds to Belgium infringes Corteva's intellectual property rights and its purported rights under an ATCC Material Transfer Agreement.  Corteva's claims against Inari are objectively baseless and were brought to tarnish Inari and frustrate its entry into the market.

8.      Corteva itself buys patent deposit seeds from the ATCC covered by patents of its competitors, grows plants from the seeds and sequences their DNA in ways that would infringe competitors' patents under the legal theories Corteva asserts against Inari. Corteva's "Germplasm Surveillance Unit" has routinely obtained competitors' patented seeds purchasing from ATCC *thousands* of samples of competitor patent deposit seeds in the past decade and has used them to understand and analyze the DNA of the competitors' seeds.

9.      Corteva's germplasm surveillance and its allegations against Inari in this litigation expose its hypocrisy and unclean hands before this Court.

### THE PARTIES

10.      Inari Agriculture, Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business located at One Kendall Square, Cambridge, Massachusetts.

11.      Inari Agriculture NV is a public limited company organized and existing under the laws of Belgium with a principal place of business located in Ghent, Belgium. Inari Agriculture NV is a wholly owned subsidiary of Inari Agriculture, Inc.

12.      Corteva Agriscience LLC is a limited liability company organized and existing under the laws of Delaware with a principal place of business located at 9330 Zionsville Road, Indianapolis, Indiana 46268.

13.      Pioneer Hi-Bred International, Inc. is a corporation organized and existing under the laws of Iowa with a principal place of business at 7100 NW 62nd Avenue, Johnston, Iowa 50131.

14.      Agrigenetics, Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business at 9330 Zionsville Road, Indianapolis, Indiana 46268.

15.    Corteva Agriscience, Pioneer, and Agrigenetics are each wholly-owned subsidiaries of Corteva Inc., which is organized and existing under the laws of Delaware and maintains its principal place of business at 9330 Zionsville Road, Indianapolis, Indiana 46268. Corteva Inc. is the legacy agribusiness of predecessor companies Dow Chemical Company and DuPont de Nemours, Inc.

<u>**JURISDICTION AND VENUE**</u>

16.    Inari asserts Counterclaims for declaratory judgment of invalidity, unenforceability and noninfringement under the patent laws of the United States, 35 U.S.C. § 100, et seq., pursuant to 28 U.S.C. §§ 2201 and 2202 (the "Patent Law Counterclaims").  This Court has subject matter jurisdiction over the Patent Law Counterclaims pursuant to 28 U.S.C. § 1331.

17.    Inari asserts Counterclaims for declaratory judgment of noninfringement and unenforceability under the Plant Variety Protection Act, 7 U.S.C. § 2321 et seq., pursuant to 28 U.S.C. §§ 2201 and 2202 (the "PVPA Counterclaims").  This Court has subject matter jurisdiction over the PVPA Counterclaims pursuant to 28 U.S.C. § 1331.

18.    Inari asserts a Counterclaim under 15 U.S.C. § 1125 for unfair competition (the "Federal Unfair Competition Counterclaim").  This Court has subject matter jurisdiction over the Federal Unfair Competition Counterclaim pursuant to 28 U.S.C. § 1331.

19.    Inari asserts state law counterclaims for unfair competition and abuse of process (the "State Law Counterclaims").  This Court has supplemental jurisdiction over the State Law Counterclaims under 28 U.S.C. § 1367 because, *inter alia*, they form part of the same case or controversy as Inari's other counterclaims.

20.    This Court has personal jurisdiction over Plaintiffs-Counterclaim Defendants by virtue of their presence in Delaware, having conducted business in Delaware, and having availed

themselves of the rights and benefits of Delaware law such that they should reasonably anticipate being haled into court in this judicial district.

21.    Plaintiffs-Counterclaim Defendants have filed this action for patent infringement and other claims in this Court and have thus submitted to this Court's personal jurisdiction.

22.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## NATURE OF THE ACTION

23.    Inari asserts these counterclaims to redress Corteva's misuse of the intellectual property laws to stifle innovation in crop seeds and delay competition from new innovative seed technologies.

24.    Corteva seeks to restrict the public's legal access to samples of corn seeds and plants that are subject to Corteva's US patents.

25.    In 2013, Corteva was granted the '434 Patent for corn containing a particular DNA sequence known as DP4114.  To get the patent, Corteva assured the PTO that, when the patent is granted, it would make seeds of the plant available to the public without restriction, as it was required to do.  The PTO relied on that representation in issuing the patent.

26.    After the '434 Patent issued, Inari Belgium purchased and acquired a sample of the patented DP4114 corn from the American Type Culture Collection ("ATCC") public depository. Inari Belgium, outside the United States, sequenced the DNA of the '434 Patent deposit to learn from it and improved upon it.  Though not required to do so, Inari told Corteva about its research with the sample in Belgium.  Corteva, in response, brought this action seeking to enforce alleged restrictions that would deny the public access to its patented plants.  Corteva contends that Inari's access and export of DP4114 corn seed to Belgium violates purported restrictions under US patent law, the Plant Variety Protection Act, contract, and state unfair competition and conversion law.

27.     Corteva's position in this lawsuit assumes that after the PTO grants a patent to Corteva, Corteva gets to decide *who* may access the disclosure of its patented invention and *for what purpose*.  That is not the law.

28.     Corteva's attempt to restrict Inari from lawfully accessing Corteva's patent deposits is part of a scheme to stifle innovation in crop seeds, deter emerging competitors like Inari from challenging Corteva's market dominance, and delay lawful competition from new seed technologies and new market entrants.

29.     Corteva wants it both ways.  It wants the benefit of US patent protection on its corn so it can earn the substantial profits that flow from patent exclusivity and payments tied to its patent rights, but it also wants to improperly limit the promise it made to obtain its limited monopoly, which is to fully disclose its patented invention to the public without restriction, by shielding its inventions from members of the public, like Inari, who would innovate on those inventions.  Having elected to obtain utility patents on its plants, Corteva's attempt to restrict public access, and access by Inari in particular, to the disclosure of its patented plants after the patents have issued gives rise to the counterclaims below.

30.     Corteva's dominant position in corn is the result of its use of intellectual property to prevent competition.  As part of the quid pro quo inherent in the patent grant, Corteva was required to promise, and did promise, to make samples of the seeds of the patented varieties freely available to the public without restriction once its patents issued.  In exchange for that promise, relied on by the PTO, for the benefit of the public, Corteva received the benefit of years of valuable market exclusivity for its varieties.  This is the bargain inherent in the patent grant, which is intended to "promote the progress of science and useful arts," as articulated in Article I of the United States Constitution.  Awarding inventors a limited period of exclusivity incentivizes them

to disclose their inventions to the public so that those disclosures can contribute to public knowledge and enable further innovation.

31.     Corteva's conduct in this lawsuit reveals that Corteva never intended to make good on its end of the patent bargain.  Corteva has engaged in a scheme to restrict the public's access to its patented varieties in violation of its promises and US law.  Corteva's conduct stifles innovation, deprives farmers and others in agricultural markets of new and superior varieties of corn that would compete with Corteva's products. Corteva's conduct gives rise to counterclaims for patent and PVP Certificate invalidity, noninfringement and unenforceability; patent misuse; unfair competition under state and federal law; and abuse of process.  Inari has been and continues to be injured by Corteva's conduct in this lawsuit and in the marketplace.  The ultimate victims of Corteva's scheme, however, are American farmers and independent seed companies who are denied access to more and better choices because of Corteva's exclusionary and anticompetitive conduct, which in turn harms American consumers.

## FACTS RELEVANT TO THE COUNTERCLAIMS

## I.     INTELLECTUAL PROPERTY PROTECTION FOR PLANTS.

### A.     Utility Patents on Plants

32.     In the United States, a plant breeder of a new plant variety may be able to obtain a utility patent on that variety if it meets the requirements of patentability under the Patent Act, that it be new, useful and non-obvious.  The description of the invention in the patent must also satisfy the written description and enablement requirements of the Patent Act.

33.     To meet the written description and enablement requirements, the patent must describe the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use" the invention.  35 U.S.C. § 112.  As the Supreme Court has stated, the requirement that the inventor provide an enabling written description of the

invention is fundamental to the quid-pro-quo that comprises the patent bargain, in which inventors obtain a limited period of exclusivity in exchange for public disclosure of their inventions. *Universal Oil Prods. Co. v. Globe Oil & Ref. Co.*, 322 U.S. 471, 484 (1944).

34.    To meet the written description and enablement requirement of Section 112, an applicant for a patent claiming biological materials like a plant must make samples of the biological materials available to the public in a depository unless the biological materials are otherwise known and readily available to those skilled in the art.  37 C.F.R. § 1.802; *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l. Inc.*, 534 U.S. 124, 142 (2001).  Typically, plant varieties are not known and readily available to those skilled in the art and cannot be reproduced by a skilled person based on the written text of the patent alone.  Therefore, a deposit is required under Section 112.

35.    Deposits of biological materials made to satisfy Section 112 of the Patent Act may be made subject to the requirements of the Budapest Treaty on the International Recognition of the Deposit of Microorganisms for the Purpose of Patent Procedure (the "Budapest Treaty"), to which the United States is a signatory.  Under the Budapest Treaty, a deposit of biological materials with an "international depository authority" satisfies the deposit requirements under Section 112 of the Patent Act and under the patent laws of other signatory countries.  In the United States, the ATCC is recognized to be an international depository authority under the Budapest Treaty.

36.    Deposits of biological materials made to satisfy Section 112 must also meet the requirements of 37 C.F.R. §§ 1.801-1.809.  Under 37. C.F.R. § 1.808, a deposit of biological materials "must be made under conditions that *assure* that . . . all restrictions imposed by the depositor on the availability to the public of the deposited material will be *irrevocably removed* upon the granting of the patent" (emphasis added).  The irrevocable removal of all restrictions is

unqualified under the regulation. As the PTO itself notes, the absence of restrictions on the availability of the deposit to the public ensures that the patented materials are readily available to the public as required under 35 U.S.C. § 112. *See* PTO, Manual for Patent Examination Procedure § 2404.01. Once a patent on biological materials issues the inventor must assure that samples of the patented biological material necessary for the written description and enablement will be available to the public without restriction.

37. Upon issuance, a patent is entitled to a term of twenty years from the earliest filing date of the patent. During the term, a patent owner may lawfully exclude others from making, using, offering to sell or selling the patented invention in the United States.

**B.    Plant Variety Protection**

38. Plant varieties may also qualify for protection under a Plant Variety Protection ("PVP") Certificate. Unlike utility patents, PVP Certificates are issued by the U.S. Department of Agriculture ("USDA"). To qualify for protection under a PVP Certificate, a plant variety must meet the statutory requirements of the Plant Variety Protection Act ("PVPA"), which require, *inter alia*, that the variety be new, distinct, uniform and stable. 7 U.S.C. § 2402. An applicant for a PVP Certificate is also required to deposit a sample of seed or plant tissue of the variety with the USDA within three months of filing the application. Unlike samples of biological materials deposited to meet the requirements to obtain a utility patent, which are available to the public without restriction upon issuance of the patent, samples of deposited seed for a PVP Certificate are not available to the public until after the PVP Certificate expires.

39. The term of a PVP Certificate for a corn variety is twenty years from the date on which the PVP Certificate *issues*. During the term, the owner of a PVP Certificate may exclude others from certain activities relating to the protected variety, including selling the variety, offering

it for sale, reproducing it, importing it, exporting it, or using it in producing (as distinguished from developing) a hybrid or different variety.  7 U.S.C. § 2541(a).

40.    The rights conferred by the grant of a PVP Certificate are subject to certain exemptions and limitations that do not exist for utility patents.  Under the PVPA's research exemption, the use and reproduction of a protected variety for plant breeding or other bona fide research does not constitute an infringement of a PVP Certificate.  7 U.S.C. § 2544.  This exemption is not restricted by any rights granted to the breeder under the PVPA, including any rights in relation to the export of seeds.

41.    In addition to the research exemption of 7 U.S.C. § 2544, the PVPA also provides that it shall not be an infringement of a PVP Certificate to export a protected variety that is sold or otherwise marketed with the consent of the owner in the United States unless the act involves export for further propagation of the variety into a country that does not protect varieties of the plant genus or species to which the variety belongs.  7 U.S.C. § 2541(d).

42.    The PVPA provides that the owner of a PVP Certificate may waive any or all of its rights under the Certificate to exclude others from selling the variety, offering it for sale, reproducing it, importing it, exporting it, or using it in producing a hybrid or different variety.  7 U.S.C. § 2483(a)(3).

### C.    Contractual Protection

43.    Corteva also uses contracts, which it refers to as technology use agreements ("TUAs"), to restrict the use of its plant varieties by Corteva's customers.

44.    Corteva's TUAs prohibit its customers who purchase seed from Corteva from saving and using for further planting seed produced by crops grown from purchased seed or using purchased seed for crop breeding or research.  Corteva's template TUA expressly, and without exception, provides that a grower who purchases seed from Corteva "may not conduct research on

Grower's crop produced from [the] Seed."[3]  TUA provisions such as these eliminate the exemptions provided for by Congress under the PVPA.

## II.    CORTEVA'S SCHEME TO DEPRIVE THE PUBLIC OF ACCESS TO ITS PATENTED SEEDS AND STIFLE FOLLOW-ON INNOVATION.

45.    Corteva uses intellectual property protection and contractual provisions to restrict public access to its corn varieties after patent issuance and impermissibly extend exclusivity for its commercial products.  Corteva's conduct violates its statutory obligation to disclose its claimed inventions to the public and improperly extends its monopoly in corn products.

46.    To meet the written description and enablement requirements and obtain patents on corn varieties, Corteva represented to the PTO that on the granting of the patents it would make available to the public without restriction, pursuant to 37 C.F.R. § 1.808, seeds comprising the claimed invention by depositing samples of the seeds with the ATCC.  The PTO relied upon Corteva's representations and promises in granting Corteva's utility patents on corn.

47.    Corteva has taken steps to systematically interfere with the public's ability to access the inventions claimed by its utility patents, rendering those patents invalid and unenforceable as a matter of law.  It has done so in several ways.

48.    In this lawsuit, Corteva seeks to enforce, as a third-party beneficiary, provisions in MTAs between ATCC and members of the public.  Corteva argues that the MTAs purportedly limit the purposes for which the public may access samples of Corteva's deposited seeds after the related seed patents issue.  The ATCC MTAs do not, and cannot, restrict access in the way Corteva claims, which only underscores the unreasonableness of Corteva's position in this litigation.

---

[3] Corteva Technology Use Agreement Aug 2022, https://www.corteva.us/content/dam/dpagco/ corteva/na/us/en/files/trait-stewardship/DOC-Corteva-Technology-Use-Agreement-WATERMARK-NONEXECUTABLE-COPY.pdf.

49.    Corteva also seeks to improperly restrict access by members of the public located outside of the United States, like Inari Belgium, to samples of corn seeds and plants for which Corteva has obtained US patents.  In this lawsuit, Corteva seeks to enforce 235 PVP Certificates that cover the very same varieties for which Corteva has obtained utility patents and made deposits with ATCC under Section 112 of the Patent Act and 37 C.F.R. § 1.808.  Corteva contends that the mere act of any export of samples of its patented seeds from ATCC to a member of the public outside the United States is an infringement of the rights conferred by the PVP Certificates covering the plants.

50.    Corteva also contends that any member of the public located outside of the United States who seeks to export a sample of a patent deposit seed plant will infringe the related patent by conducting pathogenic testing required by the recipient country's government  prior to export.  Such testing is not required of the U.S.-based public to access the seed deposits.  Corteva further contends that if the patent claims a plant, exportation of a patent deposit seed of the plant is the export of a component of the claimed invention that will be combined with water, sun, soil and air outside the U.S. to grow the plant abroad, and that such growing activities by foreign members of the public are infringing uses of the patented inventions.

51.    Corteva's attempts to restrict access to its patented plants by foreign members of the public under its PVP Certificates or utility patents are a breach of its promise to the public in exchange for the patent grant that the patent deposit would be available without restriction..  Neither testing for pathogens in the United States for export nor growing the patented plants abroad are "uses" of the invention that infringe a US patent under the Patent Act.  Corteva's claims erroneously imply that access to Corteva's patented plants may lawfully be denied to foreign members of the public.

52.    Upon information and belief, Corteva has taken steps to frustrate the public's ability to access samples of its patented plants by depleting and not replenishing deposits of samples of its patented seeds at ATCC, contrary to its representations and obligations to the US Patent Office and the ATCC.

53.    As to certain of its utility patents on corn, including US Patent No. 8,901,378 (the "'378 Patent") covering the TC1507 event, Corteva has not enabled the claimed invention by failing to make a deposit of the patented biological material altogether even while publicly acknowledging in at least the European Patent Office that the claimed TC1507 event could not be reproduced without access to seed of the event.  The lack of a patent seed deposit renders the '378 Patent invalid *ab initio*.  With knowledge of the invalidity of the '378 Patent and with no other valid intellectual property covering the TC1507 event, Corteva has alleged that Inari misappropriated samples of TC1507 even though Corteva had no valid intellectual property covering the event.  On information and belief Corteva's allegations against Inari are based on the assumption that Inari obtained samples of TC1507 from a source that was a party to a Corteva TUA on TC1507. On information and belief, Corteva included the '378 Patent in the TC1507 TUA as the means for prohibiting access to the TC1507 event.  By including the '378 Patent in its TUA, Corteva has improperly restricted use of and extracted royalties under the '378 Patent, from patent issuance on December 2, 2014 until its expiration, from farmers and seed companies even though the patent was invalid and on information and belief Corteva knew it.

54.    Corteva also restricts public access to its patented seeds by including in its TUAs prohibitions on any research whatsoever using its commercially sold patented seeds, which would preclude, among other things, growers and others from sequencing the DNA in the seed to understand the purported invention claimed in its patents.  Corteva's conduct in restricting public

access to its plant varieties protected by PVP certificates through the use of TUAs forecloses continued innovation during the life of its PVP certificates and after the certificates expire contrary to the purposes of the certificate grant.

55.    The USDA has raised concerns about the effect on continued innovation in seed technology of the intellectual property practices of Corteva and other dominant agribusiness companies.

56.    For example, the USDA has noted that:

> To create a new variety or incorporate a new trait into a breeding program, it is necessary to have access to germplasm, i.e., seeds or other propagation material, which contain the source of the genetic material. New varieties can be created from non-IP protected germplasm, but *follow-on innovations on patented material are constrained by restrictions which limit access to that germplasm*. In other industries, innovators may be able to look at descriptions of inventions described in patent applications, then design around the claimed invention. In contrast, plant varieties and the genetic traits they contain are the product of evolutionary history, domestication, and breeding. *Withholding access to IP-protected seed or other propagation material prevents access not only to the trait of variety in question, but also to the prior innovation that leads to its development. This limits the ability of other innovators to make follow-on improvements.*[4]

57.    The USDA has further noted that:

> PVP and utility patents often require seed deposits of the protected plant. These deposits serve as part of the disclosure *and are intended to be available for continued innovation*. For PVP varieties, the assumption is that one could procure seed on the commercial market and make use of the research and breeding exemption to continue innovation. . . . [T]hese varieties are increasingly often only available with licenses that restrict research and breeding.[5]

58.    As these observations indicate, Corteva's conduct in restricting public access to its patented plants forecloses continued innovation during the life of its patents and after the patents expire contrary to the purposes of the patent grant.

---

[4] U.S. Dept. of Agriculture Agricultural Marketing Services, *More and Better Choices for Farmers*, March 2023, at 29 (emphasis added).
[5] *Id.*

59.    Corteva's efforts to deter innovation and discourage competition do not stop there. Corteva takes steps to obtain an improper timewise extension of its monopoly on its patented corn. While the term of a US utility patent is 20 years from the date the inventor filed the application for the patent, the term of a PVP certificate is 20 years from when the PVP certificate is granted.  Upon information and belief, Corteva intentionally files applications for PVP certificates later than its applications for utility patents claiming the same plants to extend the duration of its exclusionary rights.  For nearly all the varieties identified in Exhibit A of the FAC, Corteva's  staging of its patent and PVP application filings results in additional years of PVP patent-like protection beyond the term of the patent in a time-wise extension of the patent monopoly.  In some instances, Corteva has asserted infringement of a PVP certificate even after the patent on the same variety has expired.

60.    Taken together, Corteva's conduct harms public access to inventions for which Corteva obtained valuable exclusivity, improperly extends the duration of its exclusivity on its corn varieties and traits, and stifles follow-on innovation and competition in the market for corn.

## III.    CORTEVA'S EFFORTS TO FORECLOSE INARI FROM THE MARKET IN FURTHERANCE OF THE SCHEME.

61.    Corteva's conduct towards Inari, both through this litigation and in the market, exhibit Corteva's public-access-restricting scheme in action.  Inari represents a powerful future competitive threat to Corteva's dominant market position in corn.  Corteva has every motive to keep Inari out of the market.  But Inari does not sell commercial corn products in the United States derived from the Corteva seeds identified in the FAC, let alone corn that infringes a Corteva patent or PVP Certificate.  Unable to identify an Inari commercial product that infringes any of its intellectual property rights, Corteva instead has sued Inari claiming that Inari's *mere access to samples of seeds Corteva had deposited at ATCC to obtain US patents* infringes Corteva's intellectual property rights and its purported rights under an ATCC MTA.

55

62.    On information and belief, Corteva's claims against Inari were brought without regard to their merits.  For example, discovery has revealed that Corteva itself buys from ATCC seeds patented by its competitors, grows them and sequences their DNA in ways that would infringe the corresponding patents under the *legal* theories Corteva asserts against Inari.  If Corteva were to prevail on its infringement allegations, Corteva's business practices with its competitors' patented seeds would certainly violate the law.  Corteva's claims against Inari were brought not for their merit but to harass Inari, cause Inari economic injury, and harm Inari's relationships with investors and potential commercial partners, and forestall additional follow-on innovations by Inari.

63.    Inari simply did what any member of the public is entitled to do as a result of a patent grant: access samples of seeds Corteva promised would be made available to the public in order for Corteva to obtain patents on those seeds.  Inari did so to learn from the patents and improve upon the inventions.  And yet Corteva has leveraged its claims against Inari in this lawsuit to spin a narrative through the media and in market-facing communications that falsely disparages Inari as a "thief" who has "stolen" Corteva's intellectual property.  Inari's activities are not only sanctioned and permissible, but activities Corteva routinely does as to its competitors' patented seeds.

### A.    Inari's Competitive Threat to Corteva.

64.    Inari is a pioneer in the novel and still-emerging application of CRISPR genome-editing technology and artificial intelligence-based predictive design to plants.  CRISPR is a technology that allows scientists to modify the DNA of living organisms selectively and precisely through genome editing.  Inari's second-to-none technology platform is capable of rapidly generating plants that require fewer inputs yet produce significantly higher yield than plants developed using conventional breeding.  Inari's platform also allows it to genome-edit plants and

develop varieties and traits without infringing third parties' intellectual property rights, including those of Corteva.

65.     Inari's innovative platform, eight years in development, poses a significant competitive threat to Corteva's dominant position in the market for corn.  To deter Inari's advances in this critical area and protect its dominant market position, Corteva has attempted to foreclose Inari from entering the market in ways that violate federal and state unfair competition laws and involve a misuse of Corteva's intellectual property.

**B.**      **Inari's Pre-suit Disclosure to Corteva of Its Activities with Publicly Available Seeds.**

66.     The circumstances leading up to Corteva's institution of litigation and disparaging market-facing statements about Inari include the following.

67.     In May 2020, Inari Belgium requested and later purchased ATCC patent deposit seeds containing the DP4114 event that Corteva deposited with ATCC to meet the requirements of Section 112 as to the '434 Patent and that were freely available to the public without restriction upon issuance of the '434 Patent in 2013.

68.     In September 2020, Inari Belgium requested and later purchased ATCC patent deposit seeds of the varieties identified in Exhibit A of the FAC.  The same seeds that Corteva deposited with ATCC to meet the requirements of Section 112 as to patents claiming those seed varieties, and which samples were freely available to the public without restriction upon issuance of those related patents.  The patents for which Corteva deposited with ATCC seeds of the varieties identified in Exhibit A of the FAC to meet the requirements of Section 112 of the Patent Act are identified in Exhibit 1 hereto ("Exhibit 1").

69.     In 2020, Inari obtained publicly available corn comprising the TC1507 event.  The patents covering the TC1507 event, including the '378 Patent, are invalid under Section 112 of the Patent Act because Corteva never made a deposit of seeds of the TC1507 event.

70.     Inari's research and development activities with respect to the DP4114 patent deposit seeds and the patent deposit seeds of the varieties identified in Exhibit A of the FAC occurred outside the United States.  Inari does not commercialize products in the US that comprise or contain the genetic events, traits or varieties claimed in Corteva's patents covering the DP4114 event or the TC1507 event, or the varieties identified in Exhibit A of the FAC.

71.     In a series of communications with Corteva, including videoconferences and correspondence, between September 2021 and December 2022, Inari explained to Corteva that (i) Inari had obtained seeds containing the DP4114 event from ATCC; (ii) Inari had obtained publicly available grain not subject to any contractual restrictions containing the TC1507 event; (iii) Inari believed the patents covering TC1507 were invalid for failure to make a patent deposit; (iv) genetic materials containing TC1507 were used by Inari Belgium in Chile for trait development work and ingression into Inari's germplasm; (v) genetic materials containing the DP4114 event were used by Inari Belgium in Ghent, Belgium for genome editing under experimental use exemptions under Belgian law; (vi) Inari had applied for one or more US patents relating to its genome-edited modification of DP4114; and (vi) Inari had not partnered with any third party to commercialize seed products containing TC1507 or Inari's modified DP4114 event.[6]

72.     Discovery to date confirms the veracity of Inari's pre-suit disclosures to Corteva and the lack of infringement of any intellectual property rights asserted by Corteva in this action. It confirms that Inari Belgium sequenced the DNA of the seeds identified in Exhibit A of the FAC

---

[6] *See, e.g.*, P. Trivisvavet Letter to Corteva dated Oct. 12, 2021.

in Belgium for research purposes and to inform the design of a plant breeding program, which are activities exempt from infringement under the PVPA, and that its genome editing activities with respect to the DP4114 event were conducted entirely outside the United States under experimental use exceptions under Belgian law.

### C.    Corteva's Campaign to Harm Inari's Reputation in the Market.

73.    Upon information and belief, Corteva has embarked on a campaign to disparage Inari in the marketplace by asserting, including in press releases published in national and industry publications, that Inari is a "thief" who "stole" Corteva's intellectual property and does not have the necessary freedom to operate to support its public announcements about future commercialization.    Corteva is aware that these statements are false, including because Inari disclosed to Corteva that it had lawfully acquired samples of Corteva's patented seed from publicly available sources and the nature of its activities with those samples.

74.    Early in the morning it filed its complaint against Inari on September 27, 2023, before Inari was even served with process, Corteva caused to be issued press releases via PR Newswire[7] and articles in global and industry publications, including the Wall Street Journal[8] and the Progressive Farmer,[9] each of which included a prepared statement by Corteva's Chief Technology Officer, Sam Eathington, in which Corteva disparaged Inari as having committed a "theft" of Corteva's intellectual property.    None of these articles and press statements was reasonably incidental to the prosecution of the lawsuit.    Nor did any acknowledge that, as Inari had previously disclosed to Corteva, Inari Belgium had accessed Corteva's seeds by purchasing

---

[7] "Corteva Acts to Stop Theft of Intellectual Property, Protect American Farming," PRNewswire, September 27, 2023.

[8] "Top Agriculture Company Corteva Accuses Startup of Stealing Seeds," Wall Street Journal, September 27, 2023.

[9] "Corteva Sues Over Patent Infringement:  Inari Agriculture Accused of Purloining Corteva Agriculture Patent-Protected Seeds," Progressive Farmer, September 27, 2023.

them from publicly available ATCC patent deposits that Corteva had promised to make available to the public without restriction after patent grant.  Nor did any of the articles or statements acknowledge that Corteva, too, routinely buys from ATCC samples of patented seeds deposited by others and uses them for commercial purposes.  Upon information and belief, Corteva's intent in issuing and/or causing these media statements to issue was to tarnish Inari's reputation and to harm its existing and prospective relationships with investors and commercial partners.

75.    Before it filed its complaint against Inari, Corteva, upon information and belief, proactively contacted several of Inari's prospective commercial partners to alert them to the forthcoming filing of the lawsuit.  Upon information and belief, Corteva has also represented to financial analysts who monitor and issue market-facing commentary on agriculture markets that Inari lacks freedom to operate in the United States sufficient to support its financial projections and valuations.

**D.    Corteva's Litigation Against Inari Is not Supported by the Facts or Law.**

76.    On September 27, 2023, Corteva commenced litigation against Inari in which it asserts, without regard to the merits, claims of infringement or inducing infringement of the '434 Patent, claims for infringement of 235 PVP certificates, a claim for breach of Inari's MTA with ATCC, and claims for violations of state unfair competition and conversion law that are objectively meritless.

77.    Corteva's allegations of breach of MTA, unfair competition and conversion by Inari, and Corteva's allegation that Inari induced ATCC to infringe the '434 Patent, are predicated on the assumption that ATCC was not permitted to sell Inari the patent deposit seeds due to purported restrictions in Inari's MTA with ATCC that allegedly prohibit certain commercial uses of the seeds.  This assumption is in error because the MTA expressly provides that Budapest Treaty patent deposits, such as those at issue in this case, are governed by the terms of the Budapest Treaty

and US patent law, and if any MTA restrictions conflict with the treaty or law, the treaty or law govern.  Under the governing law of the MTA, ATCC was both permitted and required to furnish the patented seeds to Inari without restriction. Corteva expressly agreed in its deposit agreements with ATCC, including its November 17, 2010 deposit agreement relating to DP4114, that, upon issuance of the patents, ATCC was authorized by Corteva to furnish to the public, without restriction, samples of its patented seeds.  Based on these facts and applicable law, no reasonable litigant would expect to succeed on the merits of the claims asserted by Corteva.

78.    Corteva's claims that Inari's purchase and use outside the United States of material containing the TC1507 event violates Massachusetts unfair competition law and comprises conversion are predicated on the assumption that the TC1507 event is protected by valid patents and that Corteva thus possesses a proprietary interest in biological material containing the TC1507 event.  However, Corteva knows that the TC1507 patents, including the '378 Patent, are invalid under Section 112 because it failed to make a patent deposit of seeds containing the event even while representing publicly to the European Patent Office that *"[r]eproducing the event of the invention in the absence of any physical sample would be almost impossible*."[10]  The '378 Patent is now subject to a pending inter partes review petition before the USPTO as to its validity.[11]

79.    Corteva's claim that Inari directly infringes the '434 Patent because Inari Belgium or its agent performed phytosanitary testing of the DP4114 seeds in the United States is not supported by the facts.  Upon information and belief, Corteva is aware of how phytosanitary testing is conducted.  Under governing U.S. patent law, phytosanitary testing, which was conducted not by Inari but by Iowa State University at the direction of USDA, does not comprise a "use" of the

---

[10] August 7, 2014 Written Submission in Preparation to/during Oral Proceedings, EP 04751097.9, at 3 (emphasis added).
[11] IPR2024-01014.

patented invention under 35 U.S.C. § 271(a), particularly as seed is destroyed in such testing. The allegation of infringement under 35 U.S.C. § 271(f)(2) that Inari Belgium combines seeds containing the DP4114 event with water, soil and air in Belgium amounts to a prohibited extraterritorial application of U.S. patent law and expands § 271(f)(2) beyond the scope contemplated by Congress. The seeds comprising DP4114 are not a "component" of a patented invention subject to the extra-territorial reach of 35 U.S.C. § 271(f)(2).

80. In connection with Counterclaim Count I below, the '434 Patent is also invalid and unenforceable for, among other things, Corteva's attempt to prevent members of the public from accessing samples of patent deposit ATCC PTA-11506 and using the deposit to review the written description of the alleged invention of the '434 Patent as mandated by 35 U.S.C. § 112 upon issuance of the patent.[12]

81. Corteva knows its claims of infringement of the '434 Patent are meritless because, upon information and belief, it engages in the very same conduct that it claims is infringing when conducted by Inari, including obtaining from ATCC competitors' patented seeds from ATCC and sequencing their DNA. Discovery in this action has revealed that Corteva's "Germplasm Surveillance Unit" has routinely obtained competitors' patented seeds since 1926. Corteva has purchased from ATCC *thousands* of samples of competitor patent deposit seeds in the past decade alone and has used them to understand and analyze the DNA of the seeds. Corteva did not disclose these facts in the FAC but has now admitted that it buys competitors' patented seeds from ATCC,

---

[12] Indeed, in its original complaint in this action, Corteva admitted that when it made a deposit of the DP4114 seed with ATCC to obtain the '434 Patent, it did so with the *expectation* that ATCC would *restrict public access* to the seed deposit despite its promise to the PTO to the contrary. *See* Complaint, September 27, 2023 (D.I. 1) at ¶ 62 ("When depositing seeds with ATCC for patent purposes, Corteva had every expectation that ATCC would only allow the public to access those seeds *exclusively for research purposes*.") (emphasis in original).

grows them, observes and measures the resulting plants to understand agronomic factors and yields, and performs genetic testing to obtain genetic markers to assess whether they infringe a Corteva patent. Under the legal theory advanced by Corteva against Inari in this action, this conduct would be an infringing "use" of the inventions claimed in the patents for which Corteva's competitors deposited the seeds with ATCC. This is the same conduct that, when conducted by Inari, Corteva has disparaged as "theft" in the media.

82. If Corteva were to succeed on its legal theory as against Inari, Corteva's own conduct would violate the Patent Act, which shows that Corteva's assertion of infringement claims against Inari is without regard to the merits of the claims and for an ulterior purpose. Corteva knows this because in a recent response to a pending post grant review ("PGR") petition Inari filed with the PTO challenging the validity of a Corteva patent on a plant, Corteva criticized Inari for failing to grow the prior art and patented Corteva plant varieties at issue in the PGR proceedings and conduct side-by-side phenotypic and genetic sequence comparisons, *which are activities that would comprise infringement under the theory Corteva advances against Inari in this action*.[13]

83. Corteva also claims that Inari induced ATCC to infringe Corteva's DP4114 patent by furnishing ATCC PTA-11506 DP4114 seeds to Inari without authorization by Corteva. The facts and evidence show that Corteva's claim is in error. In its deposit agreement with ATCC and in subsequent correspondence with ATCC after the patent issued, Corteva expressly authorized

---

[13] *See*, *e.g.,* Patent Owner's Preliminary Response, June 26, 2024, PGR2024-00019, at 2 ("Petitioner did not grow up a seed of the claimed invention side by side with its asserted prior art under the same growing conditions in order to conduct a true phenotypic analysis . . . . Inari presents no genetic analysis of the deposited seeds to demonstrate any similarity or lack thereof of the genotype of the claimed maize variety from the asserted prior art. Inari failed to do this despite admitting that POSAs regularly assess the genetics of inbred seeds as basic tools in the plant breeding art.").

ATCC, on issuance of the '434 Patent, to furnish the DP4114 seeds without restriction to the public, which includes Inari.

84.     Corteva's Budapest Treaty patent deposit of DP4114 seeds was made to support not only the US '434 Patent but also European Patent EP 251226B1, the European counterpart to the '434 Patent.[14]  Allowing an owner of a U.S. patent who has made patent deposits under Section 112 of the Patent Act and 37 C.F.R. § 1.808 and also to support foreign patents to restrict access to a Budapest Treaty patent deposit by alleging infringement under 35 U.S.C. §§ 271(a), (b) and (f)(2) would violate the Budapest Treaty's prohibition on export restrictions of biological materials deposited for patenting.  The Treaty prohibits export restrictions on patent deposits except for national security, health or environmental purposes.[15]  Such a restriction would also violate the national treatment provisions of the TRIPs Agreement, which require that member states accord to the nationals of all other member states no less favorable treatment than it accords its own nationals with regard to intellectual property, and applies particularly when the Budapest Treaty patent deposit with ATCC is made to support foreign patents.[16]

85.     Corteva's claim that Inari infringed 235 PVP certificates by exporting to Belgium patent deposit seeds of the protected varieties are objectively meritless.  Corteva sought and obtained utility patents on the same varieties covered by the 235 PVP Certificates and made patent deposits for each patent and agreed to make samples of its protected varieties available to the

---

[14] *See* EP 2512226B1 at 8.5:8.8 ("Upon allowance of any claims in the application, the Applicant(s) will make available to the public, pursuant to 37 C.F.R. § 1.808, sample(s) of the deposit of at least 2500 seeds of hybrid maize with the American Culture Type Collection . . . .").
[15] *See* Budapest Treaty, Article 5 ("[I]f and to the extent to which the export from or import into its territory of certain kinds of microorganisms is restricted, such restriction should apply to microorganisms deposited; or destined for deposit, under this Treaty only where the restriction is necessary in view of national security or the dangers for health or the environment.").
[16] *See* Agreement on Trade-Related Aspects of Intellectual Property Rights, Article 3.1.

public without restriction on patent grant. In promising unrestricted access to the patent deposits, Corteva is legally estopped and waived its right, pursuant to 7 U.S.C. § 2483(a)(3), to assert that the export of a sample from the patent deposit is an infringement under 7 U.S.C. § 2541(a)(2).

86.    Indeed, the very legal position advanced by Corteva in this action was expressly *rejected* by the PTO when it promulgated and adopted 37 C.F.R. § 1.801-809. For example, the PTO expressly rejected the proposal to restrict exports of patent deposits under the regulations relating to deposits of biological materials, stating that "the Budapest Treaty (Article 5) provides that restrictions on exports and imports of microorganisms should apply *only where the restriction is necessary in view of national security or the dangers to health or the environment*." 53 Fed. Reg. 39,420 (emphasis added). The PTO also concluded that "[a] restriction against exports could be considered to be violative of 35 U.S.C. § 112 *since foreign requesters would be denied access to deposits* where a patentee had never sought foreign patent protection." 54 Fed. Reg. 34,864 (emphasis added).

87.    After a patent expires the public has the unfettered right to practice the invention claimed in the expired patent. In the FAC, Corteva has asserted infringement of numerous PVP Certificates under 7 U.S.C. § 2541(a)(2) after the utility patents claiming the same varieties as the PVP Certificates have expired. In doing so Corteva is unlawfully seeking to effect a time-wise extension of the utility patents' monopoly claiming the varieties and is engaging in patent misuse. In obtaining PVP Certificates and utility patents claiming the same varieties, Corteva is legally estopped from asserting and waived its right, pursuant to 7 U.S.C. § 2483(a)(3), to assert infringement under the PVPA after expiration of the term of the corresponding utility patent.

88.    Upon information and belief, Corteva's purpose in pursuing this action against Inari is for the ulterior and anticompetitive purposes of inflicting economic harm on Inari and tarnishing

Inari's reputation in the market, interfering with commercial plans and timeliness for launches of products that would compete with Corteva, and sending a message to deter others who might desire to enter the market with superior competitive alternatives to Corteva's corn.

## COUNT I

### Declaration of Invalidity and/or Unenforceability of the '434 Patent

89.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the First Amended Complaint and Paragraphs 1 to 88 of the Counterclaims above.

90.    The claims of the '434 Patent are invalid for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 100 *et seq.*, including but not limited to §§ 102, 103 and 112.

91.    The claims of the '434 Patent are invalid as anticipated under 35 U.S.C. § 102. The '434 Patent was filed December 16, 2010, claiming priority to U.S. Application No. 61/287,462 filed December 17, 2009 and U.S. Application No. 61/413,536, filed November 15, 2010. ATCC patent deposit PTA-11506 of DP4114 maize event seeds was made November 24, 2010. The patent deposit is necessary for enablement of the claims of the '434 Patent under 35 U.S.C. § 112 and, as a result, the earliest effective filing date for the '434 Patent is November 24, 2010.

92.    Beginning at least as early as 2006, more than three years before the earliest filing date and four years before the effective filing date of the '434 Patent, interstate movements and field trials of Pioneer 4114 Maize, the claimed invention of the '434 Patent, were conducted in publicly accessible growing regions within the United States, including Arkansas, California, Colorado, Delaware, Georgia, Hawaii, Iowa, Illinois, Indiana, Kansas, Michigan, Minnesota, Missouri, Nebraska, Oklahoma, Pennsylvania, Puerto Rico, South Dakota, Tennessee, Texas, and Wisconsin. Corteva did not disclose this material information on the extensive public field trials to the USPTO during prosecution. The invention as defined in each of claims 1-28 of the '434

Patent was in widespread public use in this country more than one year prior to the date of the application for the '434 Patent. Corteva did not disclose the field trials to the Patent Office and the Examiner did not consider the field trials during the examination of the patent application. Event DP4114, the claimed invention of the '434 Patent, was complete and reduced to practice and ready for patenting before the field trials of Pioneer 4114 Maize commenced in 2006. The field trials, even for regulatory purposes, of an invention that has been reduced to practice and is ready for patenting do not qualify as an experimental use exception to negate the public use bar.

93.  The claims of the '434 Patent are invalid as obvious under 35 U.S.C. § 103 in view of *Summary of the Application for the Authorisation of Genetically Modified 59122x1507xNK603 Maize and Derived Food and Feed in Accordance with Regulation (EC) 1829/2003* (2008); *Scientific Opinion - Application (Reference EFSA-GMO-NL-2005-15) for the Placing on the Market of the Insect-Resistant and Herbicide-Tolerant Genetically Modified Maize 1507 x 59122, for Food and Feed Uses, Import and Processing under Regulation (EC) No 1829/2003 from Mycogen Seeds, c/o Dow AgroSciences LLC and Pioneer Hi-Bred International, Inc. as Represented by Pioneer Overseas Corporation* (April 21, 2009); *Gene Stacking in Transgenic Plants – the Challenge for 21st Century Plant Biotechnology,* 3 PLANT BIOTECHNOL. J. 141 (2005); Linda Castle et al., *Agricultural Input Traits: Past, Present and Future,* 17(2) CURRENT OPINIONS BIOTECH 105 (2006); United States Patent Application Publication No. 2008/0178357A1; International Publication No. WO 2004/099447A2; Gang Hua et al., *Binding Analyses of Bacillus thuringiensis Cry d-Endotoxins Using Brush Border Membrane Vesicles of Ostrinia Nubilalis,* 67(2) APPLIED ENV'T MICROBIOL. 872 (2001); Renate Kaiser-Alexnat et al., *Studies on the proteolytic processing and binding of Bt toxins Cry3Bb1 and Cry34Ab1/Cry35Ab1 in the midgut of Western corn rootworm (Diabrotica virgifera virgifera LeConte)*, 45 IOBC/WPRS BULLETIN

235 (2009); Laura Appenzeller et al., *Subchronic Feeding Study with Genetically Modified Stacked Trait Lepidopteran and Coleopteran Resistant (DAS-Ø15Ø7-1xDAS-59122-7) Maize Grain in Sprague-Dawley Rats*, 47 FOOD CHEM. TOXICOL. 1512 (2009); and APHIS Plant Pest Risk Assessment for Pioneer 4114 Maize.

94.    The claims of the '434 Patent are invalid for failure to satisfy the requirements of 35 U.S.C. § 112 because a person of skill in the art would not, without undue experimentation, be able to make or isolate a maize plant comprising DP4114 without access to patent deposit PTA-11506 and Corteva seeks to restrict public access to its patented corn plant patent deposits in violation of 37 C.F.R. § 1.808.

95.    The only distinguishing characteristic in independent claim 1 from the prior art cited by the Examiner was the inclusion of the flanking sequences SEQ. ID NOS: 27 and 28.  A person of skill in the art would not, without undue experimentation, be able to make or isolate the DP4114 event with the claimed flanking sequences SEQ ID NOS: 27 and 28 based solely on the published specification of the '434 Patent.

96.    During prosecution, the Examiner rejected all pending claims under 35 U.S.C. § 112 for failing to meet the deposit requirement for biological material.  The Examiner explained that "[t]he claims are directed to specific seed" and that a deposit of corn seed comprising event DP4114 is required if the claimed seed "were not obtainable by a repeatable method set forth in the specification or otherwise readily available to the public."  02-04-2013 Non-Final Rejection at 5.  While the specification disclosed that Corteva had made a deposit with ATCC of corn seed comprising the DP4114 event, the Examiner explained that "no statement has been provided stating that the instant invention will be irrevocably and without restriction released to the public upon issuance of the patent."  *Id.* (citing 37 C.F.R. § 1.801-809) (emphasis added).

97.     In response to the non-final rejection, Corteva neither traversed the rejection nor contended that a deposit was not required to satisfy Section 112.  Rather, it argued that it was in compliance with 37 C.F.R. § 1.801-809 because the specification represented that, "[u]pon allowance of any claims in the application, the Applicant(s) will make available to the public, pursuant to 37 C.F.R. § 1.808, samples of the deposit of at least 2,500 seeds of hybrid maize . . . ." Corteva further explained that 37 C.F.R. § 1.808 requires that "all restrictions imposed by the depositor on the availability to the public of the deposited material *will be irrevocably removed upon the granting of the patent*."  05-02-2013 Response to Non-Final Rejection at 13 (emphasis added).  The Examiner relied upon this statement to withdraw the invalidity rejection under 35 U.S.C. § 112 and issue the '434 Patent.

98.     In this lawsuit, Corteva seeks to enforce, after issuance of the '434 Patent, restrictions on the availability to the public of samples of corn seed comprising the DP4114 event deposited with ATCC.

99.     Corteva seeks, as a purported third-party beneficiary, to enforce alleged restrictions on the alleged commercial use or transfer of samples of patented deposited seed contained in ATCC's Material Transfer Agreement ("MTA") with Inari.  Under Corteva's interpretation of the MTA, ATCC is not authorized to furnish samples of patent deposited seed comprising the DP4114 event to any member of the public for any purpose other than non-commercial research.  Corteva's position is that a commercial entity cannot qualify as conducting non-commercial research. Corteva's actions effectively prohibit public access to the entirety of the '434 Patent's written description, which includes the patent seed deposit.

100.     Corteva also contends that any attempt by a member of the public outside the United States to access samples of the patented seeds, for any purposes, infringes the '434 Patent

where phytosanitary testing of the seeds is required by the recipient country's government to export the seeds outside the United States, because such phytosanitary testing constitutes an infringing use of the invention claimed by the '434 Patent.  Corteva also asserts that because the '434 Patent claims a plant grown from a seed, export of the patented deposited seed is the export of a component of the '434 Patent invention and thus patent infringement under 35 U.S.C. § 271(f)(2).  Corteva's assertion of patent infringement effectively bars any member of the public, especially those located outside the United States, from accessing the written description of the invention claimed in the '434 Patent.  Failure by Corteva to make the patented corn seed comprising the DP4114 event available to the public without restriction after issuance of the '434 Patent, including without restriction based on the geographical location of the public, renders the '434 Patent invalid under 35 U.S.C. § 112 and unenforceable as a result of Corteva's breach of its promise to make the patent deposit ATCC PTA-11506 available to the public without restriction on patent grant.

101.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to the validity and enforceability of the claims of the '434 Patent, based on Corteva's allegations in the FAC that Inari has infringed or will infringe the '434 Patent.

102.    Inari is entitled to a declaratory judgment that the claims of the '434 Patent are invalid pursuant to 28 U.S.C. §§ 2201 and 2202.

103.    A declaration is necessary and appropriate to establish that the claims of the '434 Patent are invalid.

## COUNT II

### Declaration of Noninfringement of the '434 Patent

104.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's
Answer and Affirmative Defenses to the First Amended Complaint and Paragraphs 1 to 103 of the
Counterclaims above.

105.    An actual, substantial, continuing, and justiciable controversy exists between Inari
and Corteva as to whether Inari has infringed any valid or enforceable claim of the '434 Patent
either directly or indirectly, and either literally or under the doctrine of equivalents.

106.    Inari does not make, use, sell or offer to sell the DP4114 event claimed by the '434
Patent in the United States and therefore does not infringe any valid or enforceable claim(s) of the
'434 Patent directly or indirectly, literally or under the doctrine of equivalents.

107.    Corteva contends that Inari infringed the '434 Patent by testing patent deposit seeds
comprising the patented DP4114 event for pathogens because phytosanitary testing comprises an
infringing use of the invention under 35 U.S.C. § 271(a).  It is not.  The phytosanitary testing of
the DP4114 seeds at issue here involved grinding the seeds, soaking them in a sample extraction
buffer, and applying an antibody specific for a target pathogen to a subsample of the seed extract
to detect pathogen presence.  Such testing does not involve an infringing use of the patented
invention because it does not put the claimed invention into action or service or convey to the
alleged user any benefit from the invention.  To the contrary, phytosanitary testing entailed the
*destruction* of the patented invention and in any event does not test the invention but rather tests
for pathogens on the seeds.  The particular seeds that were subject to phytosanitary testing were
destroyed; the remaining seeds that were exported were not subjected to phytosanitary testing, and
the mere exportation of a patented invention is not a use of it under 35 U.S.C. § 271(a).  Nor did

Inari itself perform, directly or indirectly, any allegedly infringing phytosanitary testing of the DP4114 patent deposit seeds. The allegedly infringing testing was performed by Iowa State University at the direction of the USDA.

108.    Corteva contends that Inari Belgium's export of the DP4114 patent deposit seeds to Belgium infringes the '434 Patent under 35 U.S.C. § 271(f)(2). It does not. It is an infringement of Section 271(f)(2) to supply or cause to supply a "*component*" of a patented invention from the United States knowing that the component will be combined outside of the United States in a way that would infringe a US patent if such combination occurred in the United States. The exported patent deposit seeds containing DP4114 are not a "component" of the invention claimed by the '434 Patent. They are the patented invention itself. Water, soil, air and sun are not components of any claim of the '434 Patent. Nor, as Corteva contends, is combining the DP4114 seeds with water, soil, air and sun abroad to grow the plant of the variety so its DNA can be sequenced a "combination" that would infringe the '434 Patent if it were to occur in the United States because growing the plant to sequence its DNA from the seeds deposited to satisfy 35 U.S.C. § 112 is akin to reading the written disclosure of the '434 Patent and not an act of infringement, as Corteva has admitted in these proceedings.[17]

109.    Corteva is estopped from alleging infringement by Inari in obtaining and exporting seeds from the patent deposit for the '434 Patent. Inari reasonably relied upon Corteva's representations in the '434 Patent and its prosecution history that the patent deposit of seeds of ATCC PTA-11506 would be available to the public without restriction upon patent grant.

---

[17] *See* Corteva's Responses and Objections to Defendants' First Requests for Admission (1-3), August 5, 2024, at 7 ("Corteva admits that it regards its review of genetic marker information as akin to reading the specification of a patent and that the patent infringement allegations made by Corteva in this case against Inari are not premised on Defendants' review of genetic marker profile information.").

110.    Inari did not induce ATCC to infringe the '434 Patent under 35 U.S.C. § 271(b). ATCC did not directly infringe the '434 Patent.  The 2019 MTA expressly provides that Budapest Treaty patent deposits are governed by the terms of the Budapest Treaty and US patent law, and if any MTA restrictions conflict with the treaty or law, the treaty or law govern.  Under the governing law of the MTA, ATCC was both permitted and required to furnish patented seeds to Inari without restriction.  Corteva expressly agreed in its deposit agreements with ATCC, including its deposit agreement for PTA-11506 relating to DP4114, that, upon issuance of the patent, ATCC was authorized by Corteva to furnish to the public without restriction samples of its patent deposit seeds.

111.    Inari is entitled to a declaratory judgment that Inari has not infringed any valid and enforceable claim(s) of the '434 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

112.    A declaration of non-infringement is necessary and appropriate to establish the rights and obligations of each party.

## COUNT III

### Declaration of Invalidity of the '378 Patent

113.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the First Amended Complaint and Paragraphs 1 to 112 of the Counterclaims above.

114.    The '378 Patent, which claims the TC1507 event, is invalid under 35 U.S.C. § 112 for lack of written description and enablement.  During prosecution of the European counterpart to the '378 Patent, Corteva admitted to the European Patent Office that:

[A] skilled person would need physical access to TC1507 germplasm, or other suitable genetic material derived from the plant, to reproduce the event.  This is because even if the juncture sequences of the event were known (which they are not) the same event could not

routinely be obtained again by transformation.  Reproducing the event in the absence of any physical sample would be almost impossible.[18]

115.    Despite this admission, Corteva never made a patent deposit of samples of seed containing the TC1507 event to comply with 35 U.S.C. § 112.  The '378 Patent is, therefore, invalid under Section 112.

116.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to the validity and enforceability of the claims of the '378 Patent, based on Corteva's allegations in the FAC that Inari has violated Massachusetts General Laws Chapter 93A and common law conversion by acquiring seeds containing TC1507 and exporting them to Belgium for alleged commercial purposes, which are predicated on the allegation that the '378 Patent is valid and enforceable and provides Corteva with a proprietary interest in seeds containing the TC1507 event.  Inari is under a reasonable apprehension of suit that Corteva may or will assert against Inari claims of infringement under the '378 Patent for alleged past damages.

117.    Inari is entitled to a declaratory judgment that the claims of the '378 Patent is invalid pursuant to 28 U.S.C. §§ 2201 and 2202.

118.    A declaration is necessary and appropriate to establish that the claims of the '378 Patent is invalid.

## COUNT IV

### Declaration of Invalidity and Unenforceability of Utility Patents Claiming the Plant Varieties Identified in Exhibit A of the FAC

119.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the First Amended Complaint and Paragraphs 1 to 118 of the Counterclaims above.

---

[18]August 7, 2014 Written Submission in Preparation to/during Oral Proceedings, EP 04751097.9, at 3.

120.    Corteva's utility patents that claim the plant varieties identified in Exhibit A of the FAC are invalid under 35 U.S.C. § 112 for lack of written description and enablement because Corteva seeks to impose restrictions upon the availability to the public of samples of the claimed varieties, including by enforcing export restrictions under the PVP Certificates that claim the same varieties.  Exhibit 1 to Inari's Answer, Affirmative Defenses and Counterclaims identifies the utility patents (the "Exhibit 1 Utility Patents") that claim the same plant varieties as the 235 PVP Certificates that Corteva asserts in this action (the "Asserted PVP Certificates").  For each of the Exhibit 1 Utility Patents, Corteva deposited with ATCC seed samples of the variety and represented to the public and the PTO that samples of the claimed varieties would be available to the public without restriction upon issuance of the patent to satisfy the requirements of 35 U.S.C. § 112.  Exhibit 1 identifies the ATCC accession number of the patent deposit Corteva made for each of the Exhibit 1 Utility Patents to satisfy 35 U.S.C. § 112.  Under *J.E.M. Ag Supply*, 534 U.S. at 142, patent deposits of seeds of the varieties are required to satisfy the written description and enablement requirements of 35 U.S.C. § 112 as further evidenced by the requirement of a deposit to obtain PVP Certificates for the varieties.  The patented inventions were not available to a person of ordinary skill in the art without undue experimentation as evidenced by Corteva's deposit of samples to satisfy the requirements of 35 U.S.C. § 112.

121.    In this lawsuit, Corteva contends that Inari Belgium's access to the patent deposits identified in Exhibit 1 infringes Corteva's export rights under the Asserted PVP Certificates.  By seeking to restrict access to the patent deposits for the Exhibit 1 Utility Patents by foreign members of the public such as Inari Belgium, Corteva has violated 35 U.S.C. § 112, 37 C.F.R. § 1.808 and its own promises to the PTO and the public that samples of the varieties would be made available

to the public without restriction upon issuance of the Exhibit 1 Utility Patents.  This renders those patents invalid and unenforceable under 35 U.S.C. § 112.

122.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to the validity and enforceability of the Exhibit 1 Utility Patents based on Corteva's allegations in the FAC that Inari has infringed or will infringe the Asserted PVP Certificates, which claim the same plant varieties as the Exhibit 1 Utility Patents.  Corteva's assertion of infringement claims against Inari under the Asserted PVP Certificates as to the seeds Inari obtained from patent deposits, and its assertion of the '434 Patent in respect of seeds Inari obtained from patent deposits that are not subject to a PVP Certificate, create a reasonable apprehension that if Inari prevails on its defense that it does not infringe the Asserted PVP Certificates, as Inari expects to do, Corteva will assert claims against Inari for infringement of the Exhibit 1 Utility Patents covering the same varieties.  Inari's counterclaim of invalidity as to the Exhibit 1 Utility Patents arises out of the same transaction and events that are at issue in Corteva's claim that Inari infringes the Asserted PVP Certificates, which makes Count IV a compulsory counterclaim.

123.    Inari is entitled to a declaratory judgment that the Exhibit 1 Utility Patents are invalid pursuant to 28 U.S.C. §§ 2201 and 2202.

124.    A declaration is necessary and appropriate to establish that the Exhibit 1 Utility Patents are invalid.

## COUNT V

### Declaration of Noninfringement of the Asserted PVP Certificates

125.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the First Amended Complaint and Paragraphs 1 to 124 of the Counterclaims above.

126. An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to whether Inari has infringed the Asserted PVP Certificates.

127. The activities of Inari with seeds of the varieties claimed by the Asserted PVP Certificates qualify for the research exemption from PVP infringement under 7 U.S.C. § 2544 because use or reproduction of the protected varieties to obtain DNA sequence information of the varieties was for the purpose of breeding, i.e., to inform the design of a plant breeding program, and the sequencing was for the purpose of obtaining information for research and breeding, which qualifies as bona fide research, and to evaluate the written description of the patents for which the seeds were deposited, which is also bona fide research. Breeding and bona fide research are exempt from infringement under 7 U.S.C. § 2544. This exception is not restricted by any rights granted to the breeder, including any rights in respect of the export of propagating material like seeds.

128. Inari obtained the seeds of the varieties covered by the Asserted PVP Certificates by acquiring them from ATCC patent seed deposits, with Corteva's consent for ATCC to furnish the seeds to members of the public without restriction after the patent grants, and exported the seeds to Belgium, which is a member of the UPOV 1991 Convention and provides statutory protection to the plant genus (i.e., maize) to which the varieties belong. Inari's export of the seeds to Belgium is not an infringement under 7 U.S.C. § 2541(d).

129. Inari is entitled to a declaratory judgment that Inari has not infringed any valid and enforceable Asserted PVP Certificate pursuant to 28 U.S.C. §§ 2201 and 2202.

130. A declaration of non-infringement is necessary and appropriate to establish the rights and obligations of each party.

## COUNT VI

**Declaration that Corteva Is Legally Estopped from Asserting PVP Certificates
to Bar the Export of Patent Deposit Seeds Under 7 U.S.C. § 2541(2)
and Has Waived Its Right to Do So Under 7 U.S.C. § 2483(a)(3)**

131.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's

Answer and Affirmative Defenses to the First Amended Complaint and Paragraphs 1 to 130 of the

Counterclaims above.

132.    An actual, substantial, continuing, and justiciable controversy exists between Inari

and Corteva as to whether Inari has infringed the Asserted PVP Certificates.

133.    In electing to obtain utility patents and PVP Certificates covering the very same

plant varieties and making deposits of seeds of the patented varieties to satisfy 35 U.S.C. § 112,

37 C.F.R. § 1.808, Corteva is legally estopped from asserting infringement under PVP Certificates

to bar foreign members of the public from accessing seeds of the patented varieties from patent

deposits after the utility patents claiming the varieties issued.

134.    During prosecution of the Exhibit 1 Utility Patents, Corteva represented that

samples of the varieties claimed by the Exhibit 1 Utility Patents would be available to the public

without restriction upon patent grant and deposited samples of the claimed varieties to satisfy the

requirements of 35 U.S.C. § 112.  The PTO relied upon Corteva's representations to issue the

patents.  Inari relied upon Corteva's representations of public availability without restriction to its

detriment.  Corteva's representations to the PTO and the public, upon which the PTO and the

public relied, legally estop Corteva from enforcing its PVP Certificates to prevent public access

after patent issuance to seeds of the patented varieties that Corteva deposited to obtain the Exhibit 1

Utility Patents.

135.    In electing to obtain utility patents and PVP Certificates covering the very same

plant varieties and making deposits of seeds of the patented varieties to satisfy 35 U.S.C. § 112,

37 C.F.R. § 1.808, Corteva has waived, pursuant to 7 U.S.C. § 2483(a)(3), its right to assert infringement of PVP Certificates to bar the exportation by foreign members of the public, after issuance of the utility patents, of seeds of the protected varieties that were deposited to obtain utility patents.  Any statement by Corteva to the contrary is of no legal effect in view of Corteva's conduct in obtaining utility patents that cover the same varieties as the PVP Certificates.

136.    Inari is entitled to a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that Corteva is legally estopped from asserting and has waived its right to assert infringement of PVP Certificates to bar the exportation by foreign members of the public, after patent issuance, of seeds of the protected varieties that were deposited to obtain utility patents.

## COUNT VII

### Declaration of Unenforceability for Patent Misuse

137.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the First Amended Complaint and Paragraphs 1 to 136 of the Counterclaims above.

138.    Corteva has engaged in patent misuse by asserting infringement under PVP Certificates after patents claiming the very same varieties have expired.  Exhibit 2 to Inari's Answer, Affirmative Defenses and Counterclaims identifies 26 utility patents (the "Expired Utility Patents") that had expired at the time Corteva commenced this action asserting infringement under PVP Certificates covering the exact same plant varieties claimed by the Expired Utility Patents. For example, Corteva asserts that Inari infringes PVP Certificate 200100025.  Corteva obtained a utility patent on the same variety, US Patent No. 6,476,298 (the '298 Patent").  That patent expired on October 30, 2020, nearly three years before Corteva commenced this action against Inari.  In this action, Corteva asserts that Inari infringes PVP Certificate 200100025 by accessing and

exporting from ATCC samples of the variety Corteva deposited to obtain the '298 Patent, which expired in 2020.

139.    Corteva obtained and enjoyed the benefit under the Patent Act of all available exclusivity under the Expired Utility Patents as to the plant varieties claimed by those patents.  The exclusivity to which Corteva is entitled is a limited one.  Once Corteva's patents expire, the public is free to use the inventions claimed in Corteva's patents.  This is fundamental to the quid pro quo at the heart of the patent bargain.  In obtaining PVP Certificates and utility patents claiming the same varieties, Corteva is legally estopped from asserting and waived its right, pursuant to 7 U.S.C. § 2483(a)(3), to assert infringement under the PVPA after expiration of the term of the corresponding utility patent.

140.    The PVP Certificates covering the varieties claimed by the Expired Utility Patents (the "Unenforceable PVP Certificates") do not claim different aspects of the plant varieties than those claimed by the Expired Utility Patents.  Each Unenforceable PVP Certificate and corresponding Expired Utility Patent claims the same plants and the same aspects of the plants. Corteva's efforts to enforce PVP Certificates after expiry of utility patents that claim the same plant varieties effects an improper time-wise extension of Corteva's monopoly on the plant varieties of the Expired Utility Patents and constitutes patent misuse.  Upon information and belief, Corteva intentionally delays filing its applications for PVP Certificates until months or more after filing applications for utility patents on the same plant varieties to improperly extend the period of exclusivity on those plant varieties.

141.    Corteva has also engaged in patent misuse by attempting to enforce the '378 Patent and/or license terms under the '378 Patent in this action, which, upon information and belief, Corteva knows is invalid because it failed to make an enabling deposit of seed containing the

TC1507 while admitting to the European Patent Office that such a deposit is required to enable persons of skill in the art to understand and practice the invention claimed in the patent, as explained in connection with Counterclaim Count III.

142.    Inari is entitled to a declaratory judgment that the Unenforceable PVP Certificates and the '378 Patent are unenforceable pursuant to 28 U.S.C. §§ 2201 and 2202.

143.    A declaration is necessary and appropriate to establish that the Unenforceable PVP Certificates are unenforceable.

<u>**COUNT VIII**</u>

**Federal Unfair Competition Under Section 43(a) of the Lanham Act**

144.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the First Amended Complaint and Paragraphs 1 to 143 of the Counterclaims above.

145.    Corteva has, in commercial communications directed at financial analysts, the investment community and other market participants, made misrepresentations regarding the nature, characteristics and qualities of Inari's prospective commercial corn products, including by representing that those products will infringe Corteva's US patents and that they involve the "theft" of Corteva's intellectual property rights in its patent deposited seeds.  Such statements constitute "commercial advertising or promotion" under Section 43A of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), because they comprise commercial speech by an entity that is in commercial competition with Inari for the purpose of influencing market participants not to buy Inari's products or to invest in or partner with Inari.

146.    Corteva's statements to the market are in bad faith because, upon information and belief, Corteva knows or should know that its claims that Inari infringes Corteva's intellectual

property are without merit and yet Corteva nonetheless has represented to the market that Inari lacks freedom to operate in view of Corteva's intellectual property rights.

147.    Inari has been and is likely to be further damaged by Corteva's conduct including by losing prospective investment opportunities and commercial partnerships as a result of Corteva's conduct.

## COUNT IX

**Unfair Competition Under Mass. Gen. Laws Ch. 93A, Section 11**

148.    Inari hereby incorporates by reference all of the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the First Amended Complaint and Paragraphs 1 to 147 of the Counterclaims above.

149.    Corteva has engaged unfair methods of competition directed at Inari by, among other things, commencing objectively meritless litigation against Inari for the purpose of causing economic injury to Inari and hampering Inari's ability to enter the commercial corn seed market, and tarnishing Inari's reputation with actual and potential investors and commercial partners by falsely depicting Inari as a thief who stole Corteva's patented seeds in press releases, news articles and other communications directed at the market.  Corteva has also engaged in deceptive trade practices by representing to the PTO and the public to obtain patents on its corn varieties that seeds of the patented varieties would be available to the public without restriction in order to obtain patents and then enforcing purported restrictions on public access to its patented seeds after patent issuance to exclude lawful competition from the market.  Inari has been injured by Corteva's unfair and deceptive practices by, among other things, losing prospective investment opportunities and commercial partnerships as a result of Corteva's conduct and by incurring costs and expenses to defend against Corteva's objectively meritless claims against Inari.

150.    Corteva's unfair conduct occurred primarily and substantially in the Commonwealth of Massachusetts because Inari USA is based in Cambridge, Massachusetts and experienced injury in Massachusetts as a result of Corteva's unfair conduct, including economic injuries in the form of attorney's fees and costs to defend against Corteva's claims in the lawsuit and lost investment and other commercial opportunities as a result of Corteva's conduct.

## COUNT X

### Delaware Common Law Abuse of Process

151.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the First Amended Complaint and Paragraphs 1 to 150 of the Counterclaims above.

152.    Corteva has instituted against Inari litigation without regard to its merits and has committed overt acts in addition to the filing of the lawsuit, including but not limited to issuing or causing to be issued press releases and media statements that depict Inari in false and misleading ways as a thief who has stolen Corteva's patent deposit seeds and by leveraging the fact of the lawsuit to chill market acceptance of Inari's technology and offerings.  Upon information and belief, Corteva instituted this lawsuit against Inari in bad faith and for the purpose of causing economic injury to Inari by harming its relationships with investors and commercial partners and driving it out of the market.

153.    Inari has been and will be injured as a result of Corteva's abuse of process including through the incurrence of attorney's fees and costs to defend this action and through the loss of economic opportunities and investments as a result of Corteva's overt acts.

## PRAYER FOR RELIEF

WHEREFORE, Inari respectfully prays that this Court enter judgment in its favor against Corteva as follows:

A.      Adjudging and decreeing that Corteva be denied all relief requested under the FAC and take nothing by its action;

B.      Declaring that the '434 Patent is invalid and/or unenforceable;

C.      Declaring that Inari has not infringed any valid and enforceable claim of the '434 Patent;

D.      Declaring that Corteva is estopped from asserting that the export of patent deposit seeds is an infringement of the '434 Patent;

E.      Declaring that Inari does not infringe the PVP Certificates asserted by Corteva in the FAC;

F.      Declaring that Corteva is legally estopped from asserting and has waived its right to assert infringement under PVP certificates to prevent foreign members of the public from accessing, after patent issuance, seeds of the varieties that were deposited to obtain utility patents on the same varieties;

G.      Declaring that the '378 Patent is invalid and/or unenforceable;

H.      Declaring that the utility patents claiming the plant varieties identified in Exhibit A of the FAC are invalid and/or unenforceable;

I.      Declaring that Corteva is legally estopped from asserting and has waived its right to assert infringement under PVP certificates after the expiration of the corresponding patents claiming the same varieties;

J.      Declaring that Corteva has engaged in patent and/or PVP misuse;

K.      Awarding damages for violations of the Lanham Act, Mass. Gen. Laws Ch. 93A, and Delaware abuse of process;

L.      Declaring the case exceptional under 35 U.S.C. § 285;

M.    Awarding Inari's costs and reasonable attorney's fees; and

N.    Awarding any other such relief as it is just and proper.


                                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                                */s/ Megan E. Dellinger*

OF COUNSEL:
                                                _____
Dimitrios Drivas                                Jack B. Blumenfeld (#1014)
Raj S. Gandesha                                 Megan E. Dellinger (#5739)
John P. Scheibeler                              1201 North Market Street
Jongtae Jason Lee                               P.O. Box 1347
WHITE & CASE LLP                                Wilmington, DE  19899
1221 Avenue of the Americas                     (302) 658-9200
New York, NY  10020-1095                        jblumenfeld@morrisnichols.com
                                                mdellinger@morrisnichols.com
Robert M. Isackson
Henry A. Gabathuler                             *Attorneys for Defendants*
Emily A. Rice
LEASON ELLIS
One Barker Avenue
White Plains, NY  10601
(914) 288-0022

August 19, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 19, 2024, upon the following in the manner indicated:

Chad S.C. Stover, Esquire                              *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Peter Bicks, Esquire                                   *VIA ELECTRONIC MAIL*
Brian Raphel, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
*Attorneys for Plaintiffs*

David Gindler, Esquire                                 *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
Christopher Lynch, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire                               *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA  90401
*Attorneys for Plaintiffs*

Carly Romanowicz, Esquire                              *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
*Attorneys for Plaintiffs*

Todd Vare, Esquire                                    *VIA ELECTRONIC MAIL*
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN  46204
*Attorneys for Plaintiffs*

Ronald Cahill, Esquire                                *VIA ELECTRONIC MAIL*
Barnes & Thornburg LLP
One Marina Park Drive, Suite 1530
Boston, MA  02210
*Attorneys for Plaintiffs*

Lauren Baker, Esquire                                 *VIA ELECTRONIC MAIL*
Barnes & Thornburg LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA  30326
*Attorneys for Plaintiffs*


                                        */s/ Megan E. Dellinger*
                                        _____
                                        Megan E. Dellinger (#5739)