IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, | ) | |
| PIONEER HI-BRED INTERNATIONAL, | ) | |
| INC. and AGRIGENETICS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 23-1059 (JFM) |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| INARI AGRICULTURE, INC. and | ) | Confidential Version Filed: November 14, 2024 |
| INARI AGRICULTURE NV, | ) | Public Version Filed: December 3, 2024 |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS

Defendants Inari Agriculture, Inc. ("Inari USA") and Inari Agriculture NV ("Inari Belgium") (collectively, "Inari") answer Plaintiffs Corteva Agriscience LLC, Pioneer Hi-Bred International, Inc. and Agrigenetics, Inc.'s (collectively, "Corteva") Second Amended Complaint ("SAC") as follows.

## ANSWER TO SECOND AMENDED COMPLAINT

Each of the paragraphs below correspond to the same-numbered paragraphs (each a "Paragraph") in the SAC. Inari denies all allegations in the SAC, whether express or implied, except those admitted specifically below. Any factual allegation below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that Corteva may argue follow from the admitted facts. To the extent that any of Corteva's allegations are vague and/or ambiguous, Inari denies those allegations. To the extent the subheadings in the SAC contain any allegations, Inari denies those allegations.

1.      Paragraph 1 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has infringed Corteva's intellectual property rights, engaged in deceptive and unlawful conduct or breached contractual obligations.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

2.      Paragraph 2 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has infringed Corteva's intellectual property or other rights.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

3.      Paragraph 3 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it "purloin[ed]" seeds that were deposited by Corteva to meet the requirements of patenting and are available to the public without restriction once the patents issued.  Inari admits that Inari USA has offices in Massachusetts, that its employees include at least one former executive of another agricultural seed company, that it applies its proprietary gene-editing technology to plant germplasm material, that it has obtained patents on certain inventions including seeds, and that it has announced publicly that it plans to sell commercial seeds in the United States in the future.  To the extent the allegations in Paragraph 3 purport to describe or characterize a publicly available video recording, Inari denies such characterization or description and states that the video recording speaks for itself.  Inari denies the remaining allegations in this paragraph.

4.      Paragraph 4 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has violated Corteva's intellectual property rights. To the extent Paragraph 4 purports to characterize or describe a publicly available document, Inari

denies such characterization or description and states that the document speaks for itself.  Inari denies all remaining allegations in this paragraph.

5.    Paragraph 5 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has misappropriated or otherwise violated intellectual property rights in seeds that it purchased from the American Type Culture Collection ("ATCC") or breached any enforceable contractual restriction in any agreement with the ATCC. Inari admits that Corteva deposited samples of its seeds with ATCC, including each of the seeds identified in Exhibits A and B of the SAC, to comply with legal requirements for patent protection, including 35 U.S.C. § 112.  Inari further admits that ATCC is a nonprofit organization that collects, stores and distributes to the public, pursuant to the requirements of the Budapest Treaty and U.S. law, seeds and other biological materials deposited with ATCC to satisfy 35 U.S.C. § 112.  To the extent Paragraph 5 purports to characterize or describe written terms of use binding on members of the public, Inari denies such characterization or description and states that the written terms are embodied in a document that speaks for itself.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

6.    Paragraph 6 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that Inari Belgium purchased seeds deposited at ATCC and identified in Exhibit A to the SAC from ATCC, through purchase orders submitted to ATCC's European agent, LGC Standards, and had them shipped to Belgium.  Inari also admits that Inari USA purchased from ATCC the patent deposit seeds identified in Exhibit B to the SAC and that Inari shipped seeds of certain varieties to Chile.  Inari denies the remaining allegations.

7.    Paragraph 7 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies them.

8.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

9.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

10.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

11.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

12.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

13.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

14.    Inari admits that the quoted words appear in the cited documents.  Inari states that the cited documents speak for themselves.  Inari admits that its employees include previous employees of Syngenta and Bayer CropScience, that it has been valued in excess of $1 billion and that it employs more than 270 people in three facilities in Cambridge, Massachusetts, West Lafayette, Indiana, and Ghent, Belgium.  Except as otherwise expressly admitted, Inari denies all remaining allegations in this paragraph.

15.    Admitted.

16.    Admitted.

17.     Paragraph 17 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it does not have a seed breeding program of its own.  Inari also denies that its access and use of Corteva's patent deposit seeds was unlawful.  Inari admits that it applies its proprietary gene-editing technology to plant germplasm but denies that any such technologies have been applied to the seeds in Exhibits A and B of the SAC.  To the extent Paragraph 17 purports to characterize or describe a publicly available document, Inari denies such characterization or description and states that the document speaks for itself.  Inari denies that it does not have authorization to use the seeds Corteva deposited with ATCC, including each of the seeds identified in Exhibits A and B of the SAC, to comply with legal requirements for patent protection, including 35 U.S.C. § 112.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

18.     Paragraph 18 contains conclusions of law to which no response is required.  To the extent a response is required, and for the purposes of this case only, Inari does not contest subject matter jurisdiction in this matter as to Counts I-XVII and denies that this Court has subject matter jurisdiction over Counts XVIII-XXI.

19.     Paragraph 19 contains conclusions of law to which no response is required.  To the extent a response is required, Inari USA admits that it is incorporated in Delaware, and for the purposes of this case only, does not contest personal jurisdiction in this matter.

20.     Paragraph 20 contains conclusions of law to which no response is required.  To the extent a response is required, Inari USA admits that it is incorporated in Delaware.  For the purposes of this case only, Inari USA does not contest that venue is proper in this Court.

21.    Paragraph 21 contains conclusions of law to which no response is required.  To the extent a response is required, and for purposes of this case only, Inari Belgium does not contest personal jurisdiction in this matter.  Inari denies that it violates Corteva's patent and PVP rights.

22.    Paragraph 22 contains conclusions of law to which no response is required.  To the extent a response is required, Inari Belgium admits that it is not a resident of the United States. For the purposes of this case only, Inari Belgium does not contest that venue is proper in this Court.

23.    Inari admits that plant breeding involves manipulation of the characteristics, structure, and composition of plants.  Inari admits that plant breeding can include use of both traditional breeding techniques as well as genetic engineering techniques.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

24.    Admitted.

25.    Inari admits that sexually reproducing plants produce seeds carrying genes from each of the parent plants.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

26.    Denied as to plant genes conferring different traits in people, and otherwise admitted.

27.    Admitted.

28.    Admitted.

29.    Admitted to the extent the term "germplasm" as used in Paragraph 29 is untethered to any technical disclosure or utility patent.

30.    Inari admits that traditional plant breeding can involve a variety of different methods including inbreeding and hybridization.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

31.    Admitted.

32.    Inari admits that the inbred development process involves self-pollination or laboratory techniques.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

33.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

34.    Admitted.

35.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

36.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

37.    Admitted.

38.    Admitted.

39.    Admitted.

40.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

41.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

42.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

43.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

44.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

45.     To the extent this paragraph purports to characterize or describe a publicly available Technology Use Agreement ("TUA"), Inari denies any such characterization or description and states that the TUA speaks for itself.  Inari denies that it is subject to any Corteva TUA in connection with any Corteva seeds Inari has acquired that are at issue in this litigation.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

46.     To the extent this paragraph purports to characterize or describe a Syngenta Stewardship Agreement, Inari denies such characterization or description and states that the agreement speaks for itself.  To the extent this paragraph purports to characterize or describe a Bayer Technology Stewardship Agreement, Inari denies such characterization or description and states that the agreement speaks for itself.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

47.     Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

48.     To the extent this paragraph purports to characterize or describe certain provisions of the Plant Variety Protection Act ("PVPA"), Inari denies such characterization or description and states that the provisions of the PVPA speak for themselves.  To the extent a response is

required, Inari admits that § 2483 of the PVPA provides intellectual property protection to a breeder (or the successor in interest of the breeder) of certain novel plant varieties that otherwise fulfill the protectability requirements of the PVPA, subject to certain limitations and exemptions. Inari also admits that § 2401(a)(10) provides that a "variety" may be represented by seed. Except as otherwise expressly admitted, Inari denies all remaining allegations in this paragraph.

49.    Inari admits that the Plant Variety Protection Office ("PVPO") of the United States Department of Agriculture ("USDA") implements the PVPA. To the extent this paragraph purports to characterize or describe a publicly available USDA document, Inari denies such characterization or description and states that the document speaks for itself. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

50.    To the extent this paragraph purports to characterize or describe § 2541 of the PVPA, Inari denies such characterization or description and states that § 2541 of the PVPA speaks for itself. Inari denies all remaining allegations in this paragraph.

51.    To the extent this paragraph purports to characterize or describe § 2561 of the PVPA, Inari denies such characterization or description and states that § 2561 of the PVPA speaks for itself. Inari denies all remaining allegations in this paragraph.

52.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

53.    Inari admits that the face of U.S. Patent No. 8,575,434 (the "'434 Patent") identifies Pioneer and du Pont as the assignees of the '434 Patent. Inari further admits that the '434 Patent is entitled "Maize Event DP-004114-3 and Methods for Detection Thereof" and that the U.S. Patent and Trademark Office ("USPTO") issued the '434 Patent on November 5, 2013. Inari

further admits that the face of the '434 Patent, which speaks for itself, identifies U.S. Patent Application No. 12/970,052 as the application for the '434 Patent, which claims priority to U.S. Provisional Application Nos. 61/413,536, filed November 15, 2010, and 61/287,462, filed December 17, 2009, respectively, but denies that the priority claim is valid. Inari admits that what purports to be a true and correct copy of the '434 Patent is attached as Exhibit C. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

54.    To the extent this paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description and states that the '434 Patent speaks for itself and no response is required.

55.    Inari admits that the words quoted in this paragraph appear in the '434 Patent and states that the '434 Patent speaks for itself. Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

56.    To the extent this paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description and states that the '434 Patent speaks for itself. Inari admits that the words quoted in this paragraph appear in the '434 Patent. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

57.    To the extent this paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description and states that the '434 Patent speaks for itself. Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

58.     To the extent this paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description and states that the '434 Patent speaks for itself. Inari admits that the words quoted in this paragraph appear in the '434 Patent. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

59.     Inari admits that in order to meet the requirements to obtain the '434 Patent, Pioneer Hi-Bred International, Inc. deposited samples of seeds containing the DP-004114-3 ("DP4114") event with ATCC, that such deposits were to be made available to the public without restriction upon issuance of the '434 Patent, and that such deposits were given ATCC accession number PTA-11506. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

60.     Inari admits that the face of U.S. Patent No. 7,956,246 (the "'246 Patent") identifies Pioneer, Dow Agrosciences LLC ("DAS"), and du Pont as assignees of the '246 Patent. Inari further admits that the '246 Patent is entitled "Corn event DAS-59122-7 and methods for detection thereof," and that the USPTO issued the '246 Patent on June 7, 2011. Inari further admits that the face of the '246 Patent, which speaks for itself, identifies U.S. Patent Application No. 11/938,359, filed November 12, 2007, as the application for the '246 Patent, which is a divisional of U.S. Patent Application No. 11/237,222, filed on September 28, 2005. Inari further admits that the face of the '246 Patent claims priority from U.S. Provisional Application No. 60/614,225, filed on September 29, 2004, but denies that the priority claim is valid. Inari admits that an assignment effective October 1, 2021 was recorded with the USPTO that purports to assign all of du Pont's interest in the '246 Patent to Corteva Agriscience but Inari lacks knowledge or information sufficient to form

10

a belief as to whether the recorded document did in fact assign all interest in the '246 Patent to Corteva Agriscience and therefore denies the allegation. Inari admits that what purports to be a true and correct copy of the '246 Patent is attached as Exhibit D. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

61.     To the extent this paragraph purports to characterize or describe the '246 Patent, Inari denies such characterization or description and states that the '246 Patent speaks for itself and no response is required. To the extent a response is required, Inari admits that the words quoted in this paragraph appear in the '246 Patent. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

62.     To the extent this paragraph purports to characterize or describe the '246 Patent, Inari denies such characterization or description and states that the '246 Patent speaks for itself. Inari admits that the words quoted in this paragraph appear in the '246 Patent. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

63.     To the extent this paragraph purports to characterize or describe the '246 Patent, Inari denies such characterization or description and states that the '246 Patent speaks for itself. Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

64.     To the extent this paragraph purports to characterize or describe the '246 Patent, Inari denies such characterization or description and states that the '246 Patent speaks for itself. Inari admits that the words quoted in this paragraph appear in the '246 Patent. Except as otherwise

expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

65.    Inari admits that in order to meet the requirements to obtain the '246 Patent, Corteva deposited samples of seeds containing the DAS59122 event with ATCC, that such deposits were to be made available to the public without restriction upon issuance of the '246 Patent, and that such deposits were given ATCC accession number PTA-11384.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

66.    Inari admits that the face of U.S. Patent No. 8,283,522 (the "'522 Patent") identifies DAS as the assignees of the '522 Patent.  Inari further admits that the '522 Patent is entitled "Herbicide Resistance Genes," and that the USPTO issued the '522 Patent on October 9, 2012. Inari further admits that the face of the '522 Patent, which speaks for itself, identifies PCT Application No. PCT/US2006/042133, filed October 27, 2006 as the application of the '522 Patent.  Inari further admits that the'522 Patent, on its face, claims priority to U.S. Provisional Application No. 60/731,044, filed October 28, 2005 but denies that the priority claim is valid.  Inari admits that an assignment effective January 1, 2021 was recorded with the USPTO that purports to assign all of DAS's interest in the '522 Patent to Corteva Agriscience but Inari lacks knowledge or information sufficient to form a belief as to whether the recorded document did in fact assign all interest in the '522 Patent to Corteva Agriscience and therefore denies the allegation.  Inari admits that what purports to be a true and correct copy of the '522 Patent is attached as Exhibit E. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

67.     To the extent this paragraph purports to characterize or describe the '522 Patent, Inari denies such characterization or description and states that the '522 Patent speaks for itself and no response is required.  Inari admits that the words quoted in this paragraph appear in the '522 Patent.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

68.     To the extent this paragraph purports to characterize or describe the '522 Patent, Inari denies such characterization or description and states that the '522 Patent speaks for itself. Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

69.     Inari admits that Corteva deposited samples of seeds containing the DAS44406 event with ATCC, that such deposits were to be made available to the public without restriction upon issuance of the corresponding patent, and that such deposits were given ATCC accession number PTA-11336.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

70.     Inari admits that the face of U.S. Patent No. 8,680,363 (the "'363 Patent") identifies DAS as the assignee of the '363 Patent.  Inari further admits that the '363 Patent is entitled "Insect Resistant and Herbicide Tolerant Soybean Event 9582.814.19.1," and that the USPTO issued the '363 Patent on March 25, 2014.  Inari further admits that the face of the '363 Patent, which speaks for itself, identifies U.S. Patent Application No. 13/559,177, filed July 26, 2012 as the application of the '363 Patent.  Inari further admits that the'363 Patent, on its face, claims priority to U.S. Provisional Application Nos. 61/511,664, filed July 26, 2011, and 61/521,798, filed August 10,

2011 but denies that the priority claim is valid.  Inari admits that an assignment effective January 1, 2021 was recorded with the USPTO that purports to assign all of DAS's interest in the '363 Patent to Corteva Agriscience but Inari lacks knowledge or information sufficient to form a belief as to whether the recorded document did in fact assign all interest in the '363 Patent to Corteva Agriscience and therefore denies the allegation.  Inari admits that what purports to be a true and correct copy of the '363 Patent is attached as Exhibit F.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

71.    To the extent this paragraph purports to characterize or describe the '363 Patent, Inari denies such characterization or description and states that the '363 Patent speaks for itself and no response is required.  To the extent a response is required, Inari admits that the words quoted in this paragraph appear in the '363 Patent.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

72.    To the extent this paragraph purports to characterize or describe the '363 Patent, Inari denies such characterization or description and states that the '363 Patent speaks for itself. Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

73.    To the extent this paragraph purports to characterize or describe the '363 Patent, Inari denies such characterization or description and states that the '363 Patent speaks for itself. Inari admits that the words quoted in this paragraph appear in the '363 Patent.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

74.    Inari admits that in order to meet the requirements to obtain the '363 Patent, Corteva deposited samples of seeds containing the DAS81419 event with ATCC, that such deposits were to be made available to the public without restriction upon issuance of the '363 Patent, and that such deposits were given ATCC accession number PTA-12006.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

75.    Inari admits that the face of U.S. Patent No. 9,695,441 (the "'441 Patent") identifies DAS as the assignee of the '441 Patent.  Inari further admits that the '441 Patent is entitled "Insect Resistant and Herbicide Tolerant Soybean Event 9582.814.19.1," and that the USPTO issued the '441 Patent on July 4, 2017.  Inari further admits that the face of the '441 Patent, which speaks for itself, identifies U.S. Patent Application No. 14/223,249, filed March 24, 2014, as the application of the '441 Patent.  Inari further admits that the'441 Patent, on its face, discloses that it is a continuation of U.S. Patent Application No. 13/559,177, filed on July 26, 2012, and claims priority to U.S. Provisional Application Nos. 61/511,664, filed July 26, 2011, and 61/521,798, filed August 10, 2011, but denies that the priority claim is valid.  Inari admits that an assignment effective January 1, 2021 was recorded with the USPTO that purports to assign all of DAS's interest in the '441 Patent to Corteva Agriscience but Inari lacks knowledge or information sufficient to form a belief as to whether the recorded document did in fact assign all interest in the '441 Patent to Corteva Agriscience and therefore denies the allegation.  Inari admits that what purports to be a true and correct copy of the '441 Patent is attached as Exhibit G.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

76.     To the extent this paragraph purports to characterize or describe the '441 Patent, Inari denies such characterization or description and states that the '441 Patent speaks for itself and no response is required.  To the extent a response is required, Inari admits that the words quoted in this paragraph appear in the '441 Patent.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

77.     To the extent this paragraph purports to characterize or describe the '441 Patent, Inari denies such characterization or description and states that the '441 Patent speaks for itself. Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

78.     To the extent this paragraph purports to characterize or describe the '441 Patent, Inari denies such characterization or description and states that the '441 Patent speaks for itself. Inari admits that the words quoted in this paragraph appear in the '441 Patent.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

79.     Inari admits that in order to meet the requirements to obtain the '441 Patent, Corteva deposited samples of seeds containing the DAS81419 event with ATCC, that such deposits were to be made available to the public without restriction upon issuance of the '441 Patent, and that such deposits were given ATCC accession number PTA-12006.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

80.     Inari admits that ATCC is a depository into which patent applicants may deposit biological samples covered by a patent's claims in order to meet the requirements for patenting

and that Corteva has made such patent deposits of seeds claimed by its patents. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

81. To the extent this paragraph purports to characterize or describe a publicly available document on the ATCC website, Inari denies such characterization or description and states that the document speaks for itself. Inari admits that samples of seeds deposited for patent purposes with ATCC should be made available to the public freely without restriction upon issuance of the patents and that persons in Europe or Africa who request seeds deposited with ATCC must make their purchase requests through LGC Standards, ATCC's exclusive distributor for Europe. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

82. To the extent this paragraph purports to characterize or describe a publicly available document on the ATCC website, Inari denies such characterization or description and states that the document speaks for itself. Inari admits that samples of seeds deposited for patent purposes with ATCC should be available to the public without restriction upon issuance of the patents and denies that ATCC may legally impose restrictions on samples of patented seeds after issuance of the patents. Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Corteva has never authorized ATCC to provide a commercial use license to anyone. Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

83. Inari admits that one version of a sample material transfer agreement ("MTA") is available on ATCC's website. To the extent this paragraph purports to characterize or describe the terms of the MTA, Inari denies such characterization or description and states that the MTA speaks for itself. Except as otherwise expressly admitted, Inari lacks knowledge or information

17

sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

84.     To the extent this paragraph purports to characterize or describe the terms of the MTA, Inari denies such characterization or description and states that the MTA speaks for itself. Inari denies the allegations in this paragraph.

85.     To the extent this paragraph purports to characterize or describe the terms of the MTA or documents on the ATCC website, Inari denies such characterization or description and states that the MTA and ATCC documents speak for themselves.  Inari denies the allegations in this paragraph.

86.     Admitted.

87.     Admitted.

88.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the MTA dated July 14, 2019, (the "2019 MTA"), Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

89.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

90.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

91.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

92.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

93.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

94.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

95.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA, Inari denies such characterization or description and states that the 2019 MTA speaks for itself.

96.    To the extent this paragraph purports to characterize or describe the terms of the MTA dated April 22, 2022 (the "2022 MTA"), Inari denies such characterization or description and states that the 2022 MTA speaks for itself.  Inari admits that Inari Belgium signed an MTA

with ATCC dated April 22, 2022.  Inari further admits that a document purporting to be the 2022 MTA has been attached to the SAC as Exhibit I.  Inari denies all other allegations in this paragraph and specifically denies that Inari Belgium signed the MTA on behalf of Inari USA.

97.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

98.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

99.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

100.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

101.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

102.     Inari admits that the quoted words appear on Exhibit I.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

103.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA and the 2022 MTA, Inari denies such characterization or description and states that the 2019 MTA and the 2022 MTA speak for themselves.

104.     Admitted.

105.     Admitted.

106.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the MTA dated May 4, 2017 (the "2017 MTA"), Inari denies such characterization or description and states that the 2017 MTA speaks for itself.

107.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2017 MTA, Inari denies such characterization or description and states that the 2017 MTA speaks for itself.

108.     This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2017 MTA, Inari denies such characterization or description and states that the 2017 MTA speaks for itself.

109.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2017 MTA, Inari denies such characterization or description and states that the 2017 MTA speaks for itself.

110.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2017 MTA, Inari denies such characterization or description and states that the 2017 MTA speaks for itself.

111.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2017 MTA, Inari denies such characterization or description and states that the 2017 MTA speaks for itself.

112.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2017 MTA, Inari denies such characterization or description and states that the 2017 MTA speaks for itself.

113.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2017 MTA, Inari denies such characterization or description and states that the 2017 MTA speaks for itself.

114.    Inari admits that the 2022 MTA was signed on behalf of Inari Belgium.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph and specifically denies that the 2022 MTA was signed on behalf of Inari USA.

115.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

116.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

117.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

118.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

119.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself.

120.    To the extent this paragraph purports to characterize or describe the terms of the 2022 MTA, Inari denies such characterization or description and states that the 2022 MTA speaks for itself, and no response is required.  To the extent a response is required, Inari admits that the

quoted language appears in the 2022 MTA.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

121.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.  To the extent this paragraph purports to characterize or describe the terms of the 2017 MTA and the 2022 MTA, Inari denies such characterization or description and states that the 2017 MTA and the 2022 MTA speak for themselves.

122.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.

123.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it agreed to any restrictions on the samples it acquired from ATCC under the 2017 or the 2019 MTA.  To the extent this paragraph purports to characterize or describe the terms of the 2017 or the 2019 MTA, Inari denies such characterization or description and states that the 2017 and the 2019 MTA speak for themselves.  Inari admits that Inari Belgium ordered through LGC Standards seeds deposited by Corteva for patent purposes with ATCC and that the requested seeds were delivered to Infinite-Eversole Specialty Crop Services LLC ("IE-SCS"), which is a consulting firm with an office in Arlington, Massachusetts. Inari admits that Inari USA ordered seeds deposited by Corteva for patent purposes with ATCC and that the requested seeds were delivered to Inari's facility in West Lafayette, Indiana.  Inari lacks sufficient knowledge or information to form a belief as to the truth of the allegation that ATCC fulfilled the orders for Corteva seed without informing Corteva.  Inari denies the remaining allegations in this paragraph.

124.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegation that ATCC was required to notify Corteva about Inari's orders. Inari denies that ATCC did not notify Corteva.  Inari admits that Inari Belgium ordered through LGC Standards seeds deposited by Corteva for patent purposes with ATCC and that the requested seeds were delivered to IE-SCS.  Inari denies that IE-SCS acted as Inari's agent for the purposes of acquiring and exporting seeds.

125.    Denied.

126.    Inari admits the words quoted in this paragraph appeared on the IE-SCS website as of November 27, 2023, and states that the cited website speaks for itself and no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

127.    Denied.

128.    Paragraph 128 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies them.  Inari admits that its employees include at least one former employee of Syngenta or Bayer Crop Science.  To the extent this paragraph purports to characterize or describe an October 12, 2021 letter from Inari to Corteva and a 2022 Bank of America Global Research Report, Inari denies such characterization or description of the documents and states that the documents speak for themselves.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

129.    Inari admits that the Corteva seeds Inari acquired from ATCC were deposited with ATCC by Corteva to obtain patents that had issued before the dates Inari acquired the seeds.  Inari

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

130.    Paragraph 130 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that ATCC knowingly shipped the seeds set forth in Exhibit A that Inari Belgium purchased via LGC Standards to IE-SCS and that IE-SCS received those seeds directly from ATCC, arranged for a USDA phytosanitary certificate and had the remaining seeds together with the phytosanitary certificate shipped to Belgium.  Inari further admits that Inari USA obtained seeds set forth in Exhibit B from ATCC and, after expiration of the patents associated with the seeds set forth in Exhibit B, shipped seeds containing certain off-patent varieties to Chile.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

131.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

132.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

133.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph and specifically denies that it was required to obtain a license to purchase seeds deposited at ATCC by Corteva to meet the requirements for patenting.

134.    Inari denies it misappropriated Corteva's seeds.  Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies them.

135.    Inari admits that a videoconference involving representatives of Inari and Corteva occurred on September 14, 2021 during which Inari shared information with Corteva.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph and specifically denies that it required a "business relationship" with Corteva to access seeds containing the DP4114 and TC-1507 ("TC1507") events or that it engaged in an "elaborate scheme."

136.    Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them and specifically denies that it was under any obligation to disclose to Corteva that it had obtained patent deposit seeds from ATCC.

137.    Inari admits that Inari and Corteva did not enter into a business agreement during the September 14, 2021 videoconference.  Inari denies the remaining allegations in this paragraph and specifically denies that it proposed a "quid pro quo" or made a "demand" to Corteva during the September 14, 2021 videoconference.

138.    Inari admits that Corteva sent to Inari USA a letter dated October 1, 2021.  To the extent this paragraph purports to characterize or describe the October 1, 2021 letter, Inari denies such characterization or description and states that the letter speaks for itself.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

139.    Paragraph 139 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has misappropriated Corteva's inbred seeds. Inari admits that Inari USA sent to Corteva a letter dated October 12, 2021.  To the extent this paragraph purports to characterize or describe the October 12, 2021 letter, Inari denies such characterization or description and states that the letter speaks for itself.  Except as otherwise

expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

140.    Inari admits that Inari USA sent to Corteva a letter dated October 12, 2021.  To the extent this paragraph contains characterizations or descriptions of the October 12, 2021 letter, Inari denies such characterizations or descriptions and states that the letter speaks for itself.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph and specifically denies that it was under any obligation to explain the basis for its statement that the grain containing TC1507 was not subject to contractual restrictions.

141.    Inari admits that Corteva sent to Inari USA a letter dated December 16, 2021.  To the extent this paragraph purports to characterize or describe the December 16, 2021 letter, Inari denies such characterization or description and states that the letter speaks for itself.  Inari denies the remaining allegations in this paragraph and specifically denies that Inari USA did not respond to Corteva's December 16, 2021 letter.

142.    Inari admits that Inari USA issued a press release dated February 9, 2022.  To the extent this paragraph purports to characterize or describe the February 9, 2022 press release, Inari denies such characterization or description and states that the press release speaks for itself.  Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph and therefore denies them.

143.    Inari admits that Inari's Chief Legal Officer had a conversation with one or more representatives of Corteva on April 1, 2022 during which he identified U.S. Patent No. 11,214,811 (the "'811 Patent") issued to Inari.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

144.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

145.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

146.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

147.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

148.    To the extent this paragraph purports to characterize or describe certain documents containing quotations from LGC Standards, Inari denies such characterizations or descriptions and states that the documents speak for themselves.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

149.    Inari lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

150.    Inari admits that the Managing Director of Inari Belgium signed certain Inari purchase orders dated on or about May 20, 2020, September 8, 2020 and October 20, 2021.  To the extent this paragraph purports to characterize or describe those Inari purchase orders, Inari denies such characterization or description and states that the documents speak for themselves.

151.    Paragraph 151 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it "induced" ATCC to sell seeds deposited with ATCC for patent purposes or that it violated Corteva's patent and PVP rights or an ATCC MTA.

Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

152.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that it has grown plants containing Corteva's events DP4114, DAS59122, DAS44406 and DAS81419 in Belgium but otherwise denies the allegations in this paragraph.

153.    Inari admits that Inari USA obtained seeds set forth in Exhibit B from ATCC but otherwise denies the allegations in this paragraph.

154.    Paragraph 154 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it acted improperly in obtaining Corteva's patent deposit seeds from ATCC.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

155.    Paragraph 155 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations.

156.    To the extent this paragraph purports to characterize or describe publicly available documents, Inari denies such characterization or description and states that the documents speak for themselves.  Inari admits that it obtained from ATCC seeds deposited for patent purposes that contain the DP4114, DAS59122, DAS44406, and DAS81419 events and denies the remaining allegations in this paragraph.

157.    To the extent this paragraph purports to selectively characterize or describe a publicly available fact sheet from Inari's website, Inari denies such characterization or description and states that the document speaks for itself and no response is required.  To the extent a response is required, Inari admits that the fact sheet from Inari's website cited in this paragraph contains the

quoted passages.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

158.    Paragraph 158 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has misappropriated Corteva's seeds.  To the extent this paragraph purports to characterize or describe publicly available articles, Inari denies such characterization or description and states that the articles speak for themselves.  Inari denies the remaining allegations in this paragraph.

159.    To the extent this paragraph purports to selectively characterize or describe publicly available patent applications, Inari denies such characterization or description and states that the document speaks for itself and no response is required.  To the extent a response is required, Inari admits that in July 2020, Inari submitted U.S. Provisional Application Nos. 63/059,813, 63/059,860, 63/059,916, and 63/059,963.  Inari further admits that Inari was aware of the '434, '246, '363, and '441 patents as early as July of 2020.  Except as otherwise expressly admitted, Inari denies the remaining allegations.

160.    Paragraph 160 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

161.    Inari admits that the '811 Patent is entitled "INIR6 Transgenic Maize," that it was issued on January 4, 2022, that U.S. Patent Application No. 17/249,640 filed on March 8, 2021 is the application from which it issued, and that it lists U.S. provisional applications dated as early as July 31, 2020.  Inari admits that U.S. Patent No. 11,753,648 (the "'648 Patent") was issued on September 12, 2023, that U.S. Patent Application No. 17/680,647 filed on February 25, 2022 was the application from which it issued, and that it lists U.S. provisional applications dated as early as July 31, 2020.  To the extent this paragraph purports to characterize or describe the '811 Patent

31

or the '648 Patent, Inari denies such characterization or description and states that the '811 Patent and the '648 Patent speak for themselves. Except as otherwise expressly admitted, Inari denies the remaining allegations.

162.    Inari admits that it obtained U.S. Patent No. 11,773,397 (the "'397 Patent") entitled "Modified Excisable DAS59122-7 Maize Transgenic Locus," which issued on October 3, 2023. Inari admits that, on its face, the '397 Patent identifies U.S. Patent Application No. 18/058,081, filed on November 22, 2022, discloses that it is a continuation of PCT Application No. PCT/US2021/043919, filed on July 30, 2021, and claims priority to U.S. provisional applications dated as early as July 31, 2020. Inari further admits that the quoted words "modifications of the DAS59122-7 maize locus" appear in the '397 Patent. To the extent this paragraph purports to characterize or describe the '397 Patent, Inari denies such characterization or description and states that the '397 Patent speaks for itself. Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

163.    Inari admits that it filed four patent applications relating to the DAS44406 event. Inari admits that U.S. Patent Application No. 17/302,110 (the "'110 application") is one such application, that it is entitled "INHT26 Transgenic Soybean," that it was filed on April 23, 2021, and that it claims priority to U.S. provisional applications dated as early as July 31, 2020. Inari further admits that the '110 application was published on February 3, 2022 as U.S. Publication No. 2022/0030822 (the "'822 publication"). Inari admits that the words "modifications of the DAS44406-6 soybean locus" appear in the '822 publication, as well as the specifications for U.S. Patent Application Nos. 18/162,681 (the "'681 application"), 18/040,110 (the "'0110" Application), and 18/162,134 (the "'134 Application"). To the extent this paragraph purports to characterize or describe the '110 Application, the '822 Publication, the '681 Application, the '0110

Application, and the '134 Application, Inari denies such characterization or description and states that the documents speak for themselves.  Except as otherwise expressly admitted, Inari denies the remaining allegations.

164.    Inari admits that it obtained U.S. Patent No. 11,814,630 (the "'630 Patent") entitled "Modified Excisable DAS81419-2 Soybean Transgenic Insect Resistance Locus," which issued on November 14, 2023.   Inari admits that the '630 Patent issued from U.S. Application No. 18/057,867, filed on November 22, 2022, which is a continuation of a PCT application filed on July 30, 2021 and claims priority to U.S. provisional applications dating as far back as July 31, 2020.  Inari admits that the words "modifications of the DAS 81419 soybean locus" appear in the '630 patent.  To the extent this paragraph purports to characterize or describe the '630 Patent, Inari denies such characterization or description and states that the '630 Patent speaks for itself.  Except as otherwise expressly admitted, Inari denies the remaining allegations.

165.    Paragraph 165 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has infringed Corteva's intellectual property rights or caused damages or irreparable injury to Corteva.  Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies them.

166.    Inari incorporates herein by reference its responses to paragraphs 1 through 165 above as if fully set forth herein.

167.    Paragraph 167 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

168.    Paragraph 168 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that the identified seeds were purchased via purchase

orders submitted to ATCC's European agent LGC Standards but otherwise denies the allegations in this paragraph.

169.    Paragraph 169 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that PVP Certificate No. 200900369 lists on its face PH128Z as its subject and Pioneer as its owner.  Inari states that the PVP Certificate No. 200900369 speaks for itself and to the extent this paragraph purports to characterize or describe the PVP Certificate denies such characterization or description.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

170.    Paragraph 170 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that the identified seeds were purchased through purchase orders submitted to LGC Standards but otherwise denies the allegations in this paragraph.

171.    Paragraph 171 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

172.    Paragraph 172 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that its employees include at least one former employee of Syngenta or Bayer Crop Science.  To the extent this paragraph purports to characterize or describe a publicly available document, Inari denies such characterization or description and states that the document speaks for itself.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

173.    Paragraph 173 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has misappropriated seeds or otherwise infringed Corteva's intellectual property rights.  To the extent this paragraph purports to

characterize or describe any document, Inari denies such characterization or description and states that the documents speak for themselves.  Inari denies all remaining allegations in this paragraph.

174.    Paragraph 174 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

175.    Paragraph 175 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

176.    Paragraph 176 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

177.    Paragraph 177 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

178.    Paragraph 178 contains conclusions of law to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

179.    Inari incorporates herein by reference paragraphs 1 through 178 as if fully set forth herein.

180.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Exhibit B identifies PVP certificates corresponding to Corteva varieties.  Inari denies the remaining allegations in this paragraph.

181.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Inari USA purchased the seeds identified in this paragraph.  Inari admits that Inari USA exported certain seeds of the identified variety after relevant patents expired.  Inari denies the remaining allegations in this paragraph.

182.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph and specifically denies that it was not authorized to purchase or required to obtain a license to purchase seeds deposited at ATCC by Corteva to meet the requirements for patenting.

183.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph and specifically denies that it was required to obtain a license to purchase or export seeds deposited at ATCC by Corteva to meet the requirements for patenting.

184.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.  Inari specifically denies that its conduct required authorization from Corteva and that it was not for the purpose of plant breeding or other bona fide research.

185.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that its employees include at least one former employee of Syngenta or Bayer Crop Science.  To the extent this paragraph purports to characterize or describe a publicly available document, Inari denies such characterization or description and states that the document speaks for itself.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

186.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  To the extent this paragraph purports to characterize or describe any document, Inari denies such characterization or description and states

36

that the documents speak for themselves.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

187.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

188.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

189.    This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

190.    Inari incorporates herein by reference its responses to paragraphs 1 through 189 above as if fully set forth herein.

191.    Paragraph 191 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the DP4114 event with ATCC as a requirement to obtain the '434 Patent and that such deposit was given ATCC accession number PTA-11506.  Inari states that the'434 Patent speaks for itself and to the extent this paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

192.    Paragraph 192 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

193.    Inari admits that a phytosanitary certificate provides phytosanitary certification of various U.S. agricultural seeds, crops, or plant products.  Inari also admits that a country may require a phytosanitary certificate for seeds, crops, or plant products entering said country and that

seeds purchased were subject to phytosanitary testing as a requirement for shipment to Belgium. Inari denies the remaining allegations.

194.    Paragraph 194 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that, now and during the time relevant to this action, Belgium required a phytosanitary certificate for corn seeds entering the country and that the seeds purchased were subject to phytosanitary testing.  Inari denies the remaining allegations, and specifically denies that IE-SCS exported the corn event DP4114 seeds, that IE-SCS was an agent of Inari Belgium, or that IE-SCS used the seeds in any manner.

195.    Paragraph 195 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that the quoted words appear in claim 8 of the '434 patent and denies the remaining allegations in this paragraph.

196.    Paragraph 196 contains conclusions of law to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

197.    Inari repeats and incorporates by reference its responses to paragraphs 1 through 196 above as if fully set forth herein.

198.    Paragraph 198 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the DP4114 event with ATCC as a requirement to obtain the '434 Patent and that such deposit was given ATCC accession number PTA-11506.  Inari states that the'434 Patent speaks for itself and to the extent this paragraph purports to characterize or describe the '434 Patent, Inari denies such characterization or description.

199.    Paragraph 199 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

200.    Denied.

201.    Paragraph 201 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

202.    Paragraph 202 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

203.    Paragraph 203 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph and specifically denies that it required a license to the '434 Patent in order to access seeds deposited by Corteva with ATCC to obtain the '434 Patent.

204.    Paragraph 204 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

205.    Paragraph 205 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

206.    Paragraph 206 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

207.    Paragraph 207 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

208.    Denied.

209.    Paragraph 209 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

210.    Paragraph 210 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

211.    Inari admits that the quoted words appear in the '811 Patent and the '648 Patent. Inari states that the '811 Patent and the '648 Patent speak for themselves and to the extent this paragraph purports to characterize or describe the '811 Patent or the '648 Patent, denies such characterization or description.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

212.    Inari admits that a videoconference involving Inari and Corteva occurred on September 14, 2021 and that Inari informed Corteva during that videoconference that Inari Belgium had genome edited the DP4114 event.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

213.    Inari admits that Ponsi Trivisvavet sent to Corteva a letter dated October 12, 2021. To the extent this paragraph purports to characterize or describe the October 12, 2021 letter, Inari denies such characterization or description and states that the letter dated October 12, 2021 speaks for itself.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

214.    Inari admits that on or around April 1, 2022, a representative of Inari informed Corteva of the patent application filing for the '811 Patent and the '648 Patent.  Inari denies the remaining allegations in this paragraph.

215.    Paragraph 215 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that it was aware that the seed deposited under Accession No. PTA-11506 containing the DP4114 event was patented because the seed was deposited in order to meet the requirements of patentability under 35 U.S.C. § 112 and to satisfy

37 C.F.R. §§ 1.801-1.809, which require that the seeds be available to the public without restriction upon issuance of the patent.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

216.    Paragraph 216 contains conclusions of law to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

217.    Paragraph 217 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

218.    Inari incorporates herein by reference paragraphs 1 through 217 above as if fully set forth herein.

219.    Inari admits that Corteva deposited with ATCC a sample of seeds containing the DP4114 event in order to obtain the '434 Patent and that such sample was given ATCC accession number PTA-11506.  To the extent this paragraph purports to characterize or describe ATCC's policies, terms of use or agreements, Inari denies such characterization or description and states that the documents speak for themselves.  Inari denies the remaining allegations in this paragraph.

220.    Paragraph 220 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

221.    Paragraph 221 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

222.    Inari admits that Inari USA has sent to Corteva a letter dated October 12, 2021. Inari states that the letter dated October 12, 2021 and Corteva's Trait Stewardship website speak for themselves and to the extent this paragraph purports to characterize or describe such materials,

Inari denies such characterization or description.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

223.    Paragraph 223 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

224.    Paragraph 224 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

225.    Inari states that the cited document speaks for itself and to the extent the paragraph purports to characterize or describe a fact sheet on the Inari website, Inari denies such characterization or description.

226.    Paragraph 226 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

227.    Paragraph 227 contains conclusions of law to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

228.    Paragraph 228 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

229.    Inari incorporates herein by reference paragraphs 1 through 228 above as if fully set forth herein.

230.    Paragraph 230 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the DAS59122 event with ATCC as a requirement to obtain the '246 Patent and that such deposit was given ATCC accession number PTA-11384.  To the extent this paragraph purports to characterize or describe the '246 Patent, Inari states that the '246 Patent speaks for itself and denies such

characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

231.    Paragraph 231 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

232.    Paragraph 232 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that IE-SCS arranged for a USDA phytosanitary certificate and arranged for their shipping to Belgium.  Inari admits that a phytosanitary certificate was and is required to meet the phytosanitary requirements of Belgium.  Inari denies the remaining allegations in this paragraph.

233.    Paragraph 233 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that at the relevant time, Belgium required a phytosanitary certificate confirming the absence of certain bacterial pathogens in corn seeds being imported into the country and that at least one laboratory test may be necessary to have confirmed the absence of such bacterial pathogens.  Inari denies the remaining allegations in this paragraph and specifically denies that IE-SCS used the patented seeds in the United States to conduct, or have conducted, the required testing and inspection to obtain a USDA phytosanitary certificate.

234.    Paragraph 234 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

235.    Paragraph 235 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

236.    Inari repeats and incorporates by reference paragraphs 1 through 235 above as if fully set forth herein.

237.    Paragraph 237 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the DAS59122 event with ATCC as a requirement to obtain the '246 Patent, that such deposit was given ATCC accession number PTA-11384, and that the quoted language appears in claim 10 of the '246 Patent.  To the extent this paragraph purports to characterize or describe the '246 Patent, Inari states that the '246 Patent speaks for itself and denies such characterization or description. Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

238.    Paragraph 238 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

239.    Paragraph 239 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

240.    Paragraph 240 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

241.    Paragraph 241 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph and specifically denies that it or IE-SCS was required to obtain a license.

242.    Paragraph 242 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

243.    Paragraph 243 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited seeds comprising corn event DAS59122 with the ATCC for the purpose of obtaining the '246 Patent and that such deposit was given the deposit number PTA-11384.  Except as otherwise expressly admitted, Inari lacks

knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies them.

244.    Paragraph 244 contains legal conclusions to which no response is required. To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them. To the extent this paragraph purports to characterize or describe the '246 Patent, Inari states that the '246 Patent speaks for itself and denies such characterization or description.

245.    Paragraph 245 contains legal conclusions to which no response is required. To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

246.    Paragraph 246 contains legal conclusions to which no response is required. To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

247.    Paragraph 247 contains legal conclusions to which no response is required. To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them. To the extent this paragraph purports to characterize or describe the '246 Patent, Inari states that the '246 Patent speaks for itself and denies such characterization or description.

248.    Paragraph 248 contains legal conclusions to which no response is required. To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them. To the extent this paragraph purports to characterize or describe the '246 Patent, Inari states that the '246 Patent speaks for itself and denies such characterization or description.

249.    Inari admits that the quoted language appears in the '397 Patent.  To the extent this paragraph purports to characterize or describe the '246 Patent or the '397 Patent, Inari states that the '246 Patent and the '397 Patent speak for themselves and denies such characterization or description.  Except as expressly admitted, Inari denies the allegations in this paragraph.

250.    Paragraph 250 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  To the extent this paragraph purports to characterize or describe the '246 Patent, Inari states that the '246 Patent speaks for itself and denies such characterization or description.

251.    Paragraph 251 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

252.    Paragraph 252 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

253.    Inari incorporates herein by reference paragraphs 1 through 252 as if fully set forth herein.

254.    Paragraph 254 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited seeds with the ATCC for the purpose of obtaining the '246 Patent, and that such deposit was given an ATCC accession number of PTA-11384.  To the extent this paragraph purports to characterize or describe the '246 Patent and ATCC's policies, terms of use, and agreements, including an MTA, Inari states that the

documents speak for themselves and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

255.    Paragraph 255 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations as to whether ATCC or LGC was authorized or required authorization to sell or transfer seeds and therefore denies them.  Inari specifically denies that it was required to obtain authorization to obtain seeds from ATCC and that Inari's conduct regarding the seeds qualify as commercial use.  To the extent this paragraph purports to characterize or describe ATCC's standard MTA, Inari states that the standard MTA speaks for itself and denies such characterization or description.

256.    Paragraph 256 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

257.    Paragraph 257 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.  To the extent this paragraph purports to characterize or describe a publicly available document, Inari states that the document speaks for itself and denies such characterization or description.

258.    Paragraph 258 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

259.    Paragraph 259 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

260.    Inari admits that the quoted words appear in the publicly available document.  To the extent paragraph 260 purports to characterize or describe a publicly available document, Inari

states that the document speaks for itself and denies such characterization or description. Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

261.    Paragraph 261 contains legal conclusions to which no response is required. To the extent a response is required, Inari admits that claim 12 of the '246 Patent contains the quoted language. To the extent this paragraph purports to characterize or describe the '246 Patent, Inari states that the '246 Patent speaks for itself and denies such characterization or description. Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

262.    Paragraph 262 contains legal conclusions to which no response is required. To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

263.    Paragraph 263 contains legal conclusions to which no response is required. To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

264.    Inari incorporates herein by reference paragraphs 1 through 263 above as if fully set forth herein.

265.    Paragraph 265 contains legal conclusions to which no response is required. To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the DAS44406 event with ATCC and that such deposit was given ATCC accession number PTA-11336. To the extent this paragraph purports to characterize or describe the '522 Patent, Inari states that the '522 Patent speaks for itself and denies such characterization or description. Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

266.    Paragraph 266 contains legal conclusions to which no response is required. To the extent a response is required, Inari denies the allegations in this paragraph.

267.    Paragraph 267 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that IE-SCS arranged for a USDA phytosanitary certificate and arranged for their shipping to Belgium.  Inari admits that a phytosanitary certificate was and is required to meet the phytosanitary requirements of Belgium.  Except as otherwise expressly admitted, Inari denies the remaining allegations in this paragraph.

268.    Paragraph 268 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that at the relevant time, Belgium required a phytosanitary certificate confirming the absence of certain bacterial pathogens in corn seeds being imported into the country and that at least one laboratory test may be necessary to have confirmed the absence of such bacterial pathogens.  Inari denies the remaining allegations in this paragraph and specifically denies that IE-SCS used the patented seeds in the United States to conduct, or have conducted, the required testing and inspection to obtain a USDA phytosanitary certificate.

269.    Paragraph 269 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that claim 13 of the '522 Patent contains the quoted language.  Except as expressly admitted, Inari denies the allegations in this paragraph.  To the extent this paragraph purports to characterize or describe the '522 Patent, Inari states that the '522 Patent speaks for itself and denies such characterization or description.

270.    Paragraph 270 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

271.    Inari repeats and incorporates by reference paragraphs 1 through 270 above as if fully set forth herein.

272.    Paragraph 272 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the AAD-12 gene and DAS44406 event with ATCC as a requirement to obtain the '522 Patent, that such deposit was given ATCC accession number PTA-11336, and that the quoted language appears in claim 2 of the '522 Patent.  To the extent this paragraph purports to characterize or describe the '522 Patent, Inari states that the '522 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

273.    Inari admits that claim 1 of the '522 Patent contains the quoted language.  To the extent this paragraph purports to characterize or describe the '522 Patent, Inari states that the '522 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

274.    Inari admits that the seeds deposited with the ATCC under Accession No. PTA-11336 and purchased by Inari Belgium were processed by IE-SCS for delivery to Inari Belgium in or about September 2020 and again in October 2021.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

275.    Paragraph 275 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

276.    Paragraph 276 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

277.    Paragraph 277 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

278.    Paragraph 278 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph and specifically denies that it or IE-SCS was required to obtain a license.

279.    Paragraph 279 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

280.    Paragraph 280 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited seeds comprising the AAD-12 gene and soy event DAS44406 with the ATCC for the purpose of obtaining the '522 Patent and that such deposit was given the deposit number PTA-11336.  Except as expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies them.

281.    Paragraph 281 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  To the extent this paragraph purports to characterize or describe the '522 Patent, Inari states that the '522 Patent speaks for itself and denies such characterization or description.

282.    Paragraph 282 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

283.     Paragraph 283 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

284.     Paragraph 284 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  To the extent this paragraph purports to characterize or describe the '522 Patent, Inari states that the '522 Patent speaks for itself and denies such characterization or description.

285.     Paragraph 285 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  Inari specifically denies that it intended to use and did use the exported components for the commercial purpose of growing a plant and then using the plant tissue and/or cells to develop a modified DAS44406 soy event and seeds containing the modified event.  To the extent this paragraph purports to characterize or describe the '522 Patent, Inari states that the '522 Patent speaks for itself and denies such characterization or description.

286.     Inari admits that the quoted language appears in the '822 Publication.  To the extent this paragraph purports to characterize or describe the '822 Publication, Inari states that the '822 Publication speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

287.     Paragraph 287 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that it was aware that Corteva deposited seeds with the ATCC for the purpose of obtaining the '522 Patent and that such deposit was given an accession

number of PTA-11336.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

288.    Paragraph 288 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

289.    Paragraph 289 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

290.    Inari incorporates herein by reference paragraphs 1 through 289 as if fully set forth herein.

291.    Paragraph 291 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the DAS44406 event with ATCC as a requirement to obtain the '522 Patent and that such deposit was given ATCC accession number PTA-11336.  To the extent this paragraph purports to characterize or describe the '522 Patent and ATCC's policies, terms of use, and agreements, including an MTA, Inari states that the documents speak for themselves and denies such characterization or description.  Except as expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies the allegations in this paragraph.

292.    Paragraph 292 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks the knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  Inari specifically denies that it was required to obtain authorization to obtain seeds from ATCC and that Inari's conduct regarding

53

the seeds qualify as commercial use. To the extent this paragraph purports to characterize or describe ATCC's standard MTA, Inari states that the standard MTA speaks for itself and denies such characterization or description.

293.    Paragraph 293 contains legal conclusions to which no response is required. To the extent a response is required, Inari denies the allegations in this paragraph.

294.    Paragraph 294 contains legal conclusions to which no response is required. To the extent a response is required, Inari lacks the knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

295.    Paragraph 295 contains legal conclusions to which no response is required. To the extent a response is required, Inari lacks the knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

296.    Paragraph 296 contains legal conclusions to which no response is required. To the extent a response is required, Inari denies the allegations in this paragraph.

297.    Inari admits that the quoted words appear in the publicly available document. To the extent paragraph 297 purports to characterize or describe a publicly available document, Inari states that the document speaks for itself and denies such characterization or description. Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

298.    Paragraph 298 contains legal conclusions to which no response is required. To the extent a response is required, Inari admits that claim 13 of the '522 Patent contains the quoted language. To the extent this paragraph purports to characterize or describe the '522 Patent, Inari states that the '522 Patent speaks for itself and denies such characterization or description. Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

299.    Paragraph 299 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

300.    Paragraph 300 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

301.    Inari incorporates herein by reference paragraphs 1 through 300 above as if fully set forth herein.

302.    Paragraph 302 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the DAS81419 event with ATCC as a requirement to obtain the '363 Patent and that such deposit was given ATCC accession number PTA-12006.  To the extent this paragraph purports to characterize or describe the '363 Patent, Inari states that the '363 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

303.    Paragraph 303 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

304.    Paragraph 304 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that IE-SCS arranged for a USDA phytosanitary certificate and arranged for their shipping to Belgium.  Inari admits that a phytosanitary certificate was and is required to meet the phytosanitary requirements of Belgium.  Inari denies the remaining allegations in this paragraph.

305.     Paragraph 305 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that at the relevant time, Belgium required a phytosanitary certificate confirming the absence of certain bacterial pathogens in soy seeds being imported into the country and that at least one laboratory test may be necessary to have confirmed the absence of such bacterial pathogens.  Inari denies the remaining allegations in this paragraph and specifically denies that IE-SCS used the patented seeds in the United States to conduct, or have conducted, the required testing and inspection to obtain a USDA phytosanitary certificate.

306.     Paragraph 306 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that claim 8 of the '363 Patent contains the quoted language.  To the extent this paragraph purports to characterize or describe the '363 Patent, Inari states that the '363 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph and specifically denies that it conducted the phytosanitary testing.

307.     Paragraph 307 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

308.     Inari repeats and incorporates by reference paragraphs 1 through 307 above as if fully set forth herein.

309.     Paragraph 309 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds comprising the DAS81419 event with ATCC as a requirement to obtain the '363 Patent, that such deposit was given ATCC accession number PTA-12006, and that the quoted language appears in claim 7 of the '363 Patent.  To the extent this paragraph purports to characterize or describe the '363 Patent,

Inari states that the '363 Patent speaks for itself and denies such characterization or description. Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

310.    Inari admits that the seeds deposited with the ATCC under Accession No. PTA-12006 were processed by IE-SCS for delivery to Inari Belgium in or about September 2020 and again in October 2021.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

311.    Denied.

312.    Paragraph 312 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

313.    Paragraph 313 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph and specifically denies that it or IE-SCS was required to obtain a license.

314.    Paragraph 314 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

315.    Paragraph 315 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited seeds comprising soy event DAS81419 with the ATCC for the purpose of obtaining the '363 Patent and that such deposit was given the deposit number PTA-12006.  Except as expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies them.

316.    Paragraph 316 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to

the truth of Corteva's allegations and therefore denies them.  To the extent this paragraph purports to characterize or describe the '363 Patent, Inari states that the '363 Patent speaks for itself and denies such characterization or description.

317.    Paragraph 317 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that a sample of seed was deposited under Accession No. PTA-12006 with ATCC for the purpose of obtaining the '363 Patent.  Except as expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies them.

318.    Paragraph 318 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

319.    Paragraph 319 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  To the extent this paragraph purports to characterize or describe the '363 Patent, Inari states that the '363 Patent speaks for itself and denies such characterization or description.

320.    Paragraph 320 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  To the extent this paragraph purports to characterize or describe the '363 Patent, Inari states that the '363 Patent speaks for itself and denies such characterization or description.

321.    Inari admits that the quoted language appears in the '630 Patent.  To the extent this paragraph purports to characterize or describe the '630 Patent, Inari states that the '630 Patent

speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

322.    Paragraph 322 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that it was aware that Corteva deposited seeds with the ATCC for the purpose of obtaining the '363 Patent and that such deposit was given an accession number of PTA-12006.  Inari admits that the quoted words appear in the '630 Patent and states that the '630 Patent speaks for itself.  To the extent this paragraph purports to characterize or describe the '630 Patent, Inari states that the '630 Patent speaks for itself and denies such characterization or description.    Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

323.    Paragraph 323 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

324.    Paragraph 324 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

325.    Inari incorporates herein by reference paragraphs 1 through 324 above as if fully set forth herein.

326.    Paragraph 326 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that a sample of seeds was deposited with ATCC for the purpose of obtaining the '363 Patent and that such deposit was given an ATCC accession number of PTA-12006.  To the extent this paragraph purports to characterize or describe the '363 Patent and ATCC's policies, terms of use, and agreements, including an MTA, Inari states that the

documents speak for themselves and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

327.    Paragraph 327 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks the knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  Inari specifically denies that it was required to obtain authorization to obtain seeds from ATCC and that Inari's conduct regarding the seeds qualify as commercial use.  To the extent this paragraph purports to characterize or describe ATCC's standard MTA, Inari states that the standard MTA speaks for itself and denies such characterization or description.

328.    Paragraph 328 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

329.    Paragraph 329 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks the knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

330.    Paragraph 330 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks the knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

331.    Paragraph 331 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

332.    Inari admits that the quoted words appear in the publicly available document.  To the extent paragraph 332 purports to characterize or describe a publicly available document, Inari states that the document speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

333.    Paragraph 333 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that claim 8 of the '363 Patent contains the quoted language.  To the extent this paragraph purports to characterize or describe the '363 Patent, Inari states that the '363 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

334.    Paragraph 334 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

335.    Paragraph 335 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

336.    Inari incorporates herein by reference paragraphs 1 through 335 above as if fully set forth herein.

337.    Paragraph 337 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds containing the DAS81419 event with ATCC as a requirement to obtain the '441 Patent and that such deposit was given ATCC accession number PTA-12006.  To the extent this paragraph purports to characterize or describe the '441 Patent, Inari states that the '441 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

338.    Paragraph 338 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

339.    Paragraph 339 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that IE-SCS arranged for a USDA phytosanitary certificate and arranged for their shipping to Belgium.  Inari admits that a phytosanitary certificate was and is required to meet the phytosanitary requirements of Belgium.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

340.    Paragraph 340 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that at the relevant time, Belgium required a phytosanitary certificate confirming the absence of certain bacterial pathogens in corn seeds being imported into the country and that at least one laboratory test may be necessary to have confirmed the absence of such bacterial pathogens.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph and specifically denies that IE-SCS used the patented seeds in the United States to conduct, or have conducted, the required testing and inspection to obtain a USDA phytosanitary certificate.

341.    Paragraph 341 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that claim 2 of the '441 Patent contains the quoted language.  To the extent this paragraph purports to characterize or describe the '441 Patent, Inari states that the '441 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph and specifically denies that it conducted the phytosanitary testing.

342.    Inari admits that claim 1 of the '441 Patent contains the quoted language.  To the extent this paragraph purports to characterize or describe the '441 Patent, Inari states that the '441 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies remaining the allegations in this paragraph.

343.    Paragraph 343 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

344.    Inari repeats and incorporates by reference paragraphs 1 through 343 above as if fully set forth herein.

345.    Paragraph 345 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited a sample of seeds comprising the DAS81419 event with ATCC as a requirement to obtain the '441 Patent, that such deposit was given ATCC accession number PTA-12006, and that the quoted language appears in claim 2 of the '441 Patent.  To the extent this paragraph purports to characterize or describe the '441 Patent, Inari states that the '441 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

346.    Inari admits that the seeds deposited with the ATCC under Accession No. PTA-12006 were processed by IE-SCS for delivery to Inari Belgium in or about September 2020 and again in October 2021.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

347.    Denied.

348.    Paragraph 348 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

349.    Paragraph 349 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph and specifically denies that it or IE-SCS was required to obtain a license.

350.    Paragraph 350 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that Corteva deposited seeds comprising soy event DAS81419 with the ATCC for the purpose of obtaining the '441 Patent and that such deposit was given the deposit number PTA-12006.  Except as expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies them.

351.    Paragraph 351 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  To the extent this paragraph purports to characterize or describe the '441 Patent, Inari states that the '441 Patent speaks for itself and denies such characterization or description.

352.    Paragraph 352 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that a sample of seed was deposited under Accession No. PTA-12006 with ATCC for the purpose of obtaining the '441 Patent.  Except as expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies them.

353.    Paragraph 353 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

354.    Paragraph 354 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  To the extent this paragraph purports

to characterize or describe the '441 Patent, Inari states that the '441 Patent speaks for itself and denies such characterization or description.

355.    Paragraph 355 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  To the extent this paragraph purports to characterize or describe the '441 Patent, Inari states that the '441 Patent speaks for itself and denies such characterization or description.

356.    Inari admits that the quoted language appears in the '630 Patent.  To the extent this paragraph purports to characterize or describe the '630 Patent, Inari states that the '630 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

357.    Paragraph 357 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that it was aware that Corteva deposited seeds with the ATCC for the purpose of obtaining the '441 Patent and that such deposit was given an accession number of PTA-12006.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

358.    Paragraph 358 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

359.    Paragraph 359 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

360.    Inari incorporates herein by reference paragraphs 1 through 359 above as if fully set forth herein.

361.    Paragraph 361 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that a sample of seeds was deposited with ATCC for the purpose of obtaining the '441 Patent and that such deposit was given an ATCC accession number of PTA-12006.  To the extent this paragraph purports to characterize or describe the '441 Patent and ATCC's policies, terms of use, and agreements, including an MTA, Inari states that the documents speak for themselves and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

362.    Paragraph 362 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks the knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.  Inari specifically denies that it was required to obtain authorization to obtain seeds from ATCC and that Inari's conduct regarding the seeds qualify as commercial use.  To the extent this paragraph purports to characterize or describe ATCC's standard MTA, Inari states that the standard MTA speaks for itself and denies such characterization or description.

363.    Paragraph 363 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

364.    Paragraph 364 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks the knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

365.    Paragraph 365 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks the knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

366.    Paragraph 366 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

367.    Inari admits that the quoted words appear in the publicly available document.  To the extent paragraph 367 purports to characterize or describe a publicly available document, Inari states that the document speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

368.    Paragraph 368 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that claim 2 of the '441 Patent contains the quoted language.  To the extent this paragraph purports to characterize or describe the '441 Patent, Inari states that the '441 Patent speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

369.    Paragraph 369 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

370.    Paragraph 370 contains legal conclusions to which no response is required.  To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

371.    Inari incorporates herein by reference its responses to paragraphs 1 through 370 above as if fully set forth herein.

372.     Paragraph 372 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the 2019 MTA and the 2022 MTA speak for themselves and denies all remaining allegations in this paragraph.

373.     Paragraph 373 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the 2019 MTA and the 2022 MTA speak for themselves and denies all remaining allegations in this paragraph.

374.     Inari admits that the quoted words appear in the cited sample MTA.  Inari states that the sample MTA, the 2019 MTA, and the 2022 MTA speak for themselves.  Except as otherwise expressly admitted, Inari denies all remaining allegations in this paragraph.

375.     Paragraph 375 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the 2019 MTA and the 2022 MTA speak for themselves and denies all remaining allegations in this paragraph.

376.     Inari states that the 2019 MTA and the 2022 MTA speak for themselves, and to the extent this paragraph purports to characterize or describe the terms of the 2019 MTA or the 2022 MTA, Inari denies such characterization or description.  Inari denies the remaining allegations in this paragraph and specifically denies that Inari Belgium was required to obtain a license from Corteva.

377.     To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA and the 2022 MTA, Inari denies such characterization or description and states that the 2019 MTA and the 2022 MTA speak for themselves.

378.     To the extent this paragraph purports to characterize or describe the terms of the 2019 MTA and the 2022 MTA, Inari denies such characterization or description and states that the 2019 MTA and the 2022 MTA speak for themselves.  Inari lacks knowledge or information

sufficient to form a belief as to the truth of the allegation as to what is "common in commercial contracts where such an exclusion is intended" and therefore denies the allegation.

379.    Paragraph 379 contains conclusions of law to which no response is required.  To the extent a response is required, Inari denies that it has "disregard[ed]" or otherwise violated any MTA with ATCC.  Inari admits that it released a press release dated February 9, 2022.  To the extent this paragraph purports to characterize or describe the February 9, 2022 press release, Inari denies such characterization or description and Inari states that the press release speaks for itself. Except as otherwise expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies them.

380.    Paragraph 380 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the press release dated February 9, 2022 speaks for itself and denies all remaining allegations in this paragraph.

381.    Paragraph 381 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the 2019 MTA and the 2022 MTA speak for themselves and denies all remaining allegations in this paragraph.

382.    Paragraph 382 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

383.    Paragraph 383 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

384.    Inari incorporates herein by reference paragraphs 1 through 383 as if fully set forth herein.

385.    Paragraph 385 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

386.    Paragraph 386 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

387.    Paragraph 387 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that the quoted words appear in the publicly available ATCC documents.  To the extent this paragraph purports to characterize or describe the publicly available ATCC documents, Inari states that the documents speak for themselves and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

388.    Paragraph 388 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that the 2017 MTA and the 2022 MTA contain sections entitled "Scope of Use."  To the extent this paragraph purports to characterize or describe the 2017 MTA and the 2022 MTA, Inari states that the documents speak for themselves and denies such characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

389.    Paragraph 389 contains legal conclusions to which no response is required.  To the extent this paragraph purports to characterize or describe the 2017 MTA and the 2022 MTA, Inari states that the documents speak for themselves and denies such characterization or description.  To the extent a response is required, Inari denies the allegations in this paragraph.

390.    Paragraph 390 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that the quoted words appear in the 2017 MTA and the 2022 MTA.  To the extent this paragraph purports to characterize or describe the 2017 MTA and the 2022 MTA, Inari states that the documents speak for themselves and denies such

characterization or description.  Except as expressly admitted, Inari denies the remaining allegations in this paragraph.

391.    Paragraph 391 contains legal conclusions to which no response is required.  To the extent a response is required, Inari denies the allegations in this paragraph.

392.    Paragraph 392 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that the quoted words appear in Inari's publicly available document.  To the extent this paragraph purports to characterize or describe the publicly available Inari document, Inari states that the document speaks for itself and denies such characterization or description.  Except as expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies the allegations in this paragraph.

393.    Paragraph 393 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that the quoted words appear in 2017 MTA and the 2022 MTA.  To the extent this paragraph purports to characterize or describe the 2017 MTA and the 2022 MTA, Inari states that the 2017 MTA and the 2022 MTA speak for themselves and denies such characterization or description.  Except as expressly admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies the allegations in this paragraph.

394.    Paragraph 394 contains legal conclusions to which no response is required.  To the extent a response is required, Inari admits that the 2017 MTA and the 2022 MTA contain conflicting forum selection clauses.  To the extent this paragraph purports to characterize or describe the 2017 MTA and the 2022 MTA, Inari states that the 2017 MTA and the 2022 MTA speak for themselves and denies such characterization or description.  Except as expressly

admitted, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies the allegations in this paragraph. Inari specifically denies that the conflicting clauses should be disregarded.

395.    Paragraph 395 contains legal conclusions to which no response is required. To the extent a response is required, Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies the allegations in this paragraph.

396.    Inari incorporates herein by reference its responses to paragraphs 1 through 395 above as if fully set forth herein.

397.    Paragraph 397 contains conclusions of law to which no response is required. To the extent a response is required, Inari admits that Inari USA maintains its principal place of business in Massachusetts. Inari states that Chapter 93A speaks for itself and denies all remaining allegations in this paragraph.

398.    Paragraph 398 contains conclusions of law to which no response is required. To the extent a response is required, denied.

399.    Paragraph 399 contains conclusions of law to which no response is required. To the extent a response is required, denied.

400.    Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's allegations and therefore denies them.

401.    Inari states that its press releases speak for themselves. To the extent a response is required, denied.

402.    Paragraph 402 contains conclusions of law to which no response is required. To the extent a response is required, denied.

403.    Paragraph 403 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

404.    Paragraph 404 contains conclusions of law to which no response is required.  To the extent a response is required, Inari admits that Inari USA maintains its principal place of business in Massachusetts.  Inari denies the remaining allegations in this paragraph.  Inari lacks knowledge or information sufficient to form a belief as to the truth of whether IE-SCS maintains its principal place of business in Massachusetts and therefore denies the allegation.

405.    Paragraph 405 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

406.    Inari incorporates herein by reference its responses to paragraphs 1 through 47 and 80 through 165 above as if fully set forth herein.

407.    Paragraph 407 contains conclusions of law to which no response is required.  To the extent a response is required, Inari states that the cited documents speak for themselves and denies all remaining allegations in this paragraph.

408.    Paragraph 408 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

409.    Inari lacks knowledge or information sufficient to form a belief as to the truth of Corteva's remaining allegations and therefore denies them.

410.    Paragraph 410 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

411.    Paragraph 411 contains conclusions of law to which no response is required.  To the extent a response is required, denied.

## **AFFIRMATIVE DEFENSES**

The Inari Defendants rely upon the following defenses to each claim asserted against them:

### **First Affirmative Defense:**
### **Failure to State a Claim**

The SAC fails to state a claim upon which relief may be granted.

### **Second Affirmative Defense:**
### **Invalidity of the '434 Patent**

The claims of the '434 Patent are invalid for failure to meet the requirements of patentability under 35 U.S.C. §§ 101 *et seq.*, including without limitation §§ 101, 102, 103, 112 and/or any judicially-created doctrine of invalidity including nonstatutory double patenting.

### **Third Affirmative Defense:**
### **Noninfringement of the '434 Patent**

The Inari Defendants have not infringed any valid and enforceable claim of the '434 Patent directly or indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, or in any other manner.

### **Fourth Affirmative Defense:**
### **Unenforceability of the '434 Patent**

The '434 Patent is unenforceable.  By bringing a suit for patent infringement against Inari to impede Inari's access to the written description of the '434 Patent, of which patent deposit ATCC PTA-11506 is an integral part, Corteva has breached the promise it made to the public to obtain the '434 Patent that it would make available to the public pursuant to 37 C.F.R. § 1.808 samples of patent deposit ATCC PTA-11506 without restriction upon issuance of the patent.  As a result of Corteva's breach of its representation as to the unrestricted availability of the patent deposit to the USPTO and the public, the '434 Patent is unenforceable.

**Fifth Affirmative Defense:**
**Invalidity of the '246 Patent**

The claims of the '246 Patent are invalid for failure to meet the requirements of patentability under 35 U.S.C. §§ 101 *et seq*., including without limitation §§ 101, 102, 103, 112 and/or any judicially-created doctrine of invalidity including nonstatutory double patenting.

**Sixth Affirmative Defense:**
**Noninfringement of the '246 Patent**

The Inari Defendants have not infringed any valid and enforceable claim of the '246 Patent directly or indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, or in any other manner.

**Seventh Affirmative Defense:**
**Unenforceability of the '246 Patent**

The '246 Patent is unenforceable.  By bringing a suit for patent infringement against Inari to impede Inari's access to the written description of the '246 Patent of which patent deposit ATCC PTA-11384 is an integral part, Corteva has breached the promise to the public to obtain the '246 Patent that it would make available to the public pursuant to 37 C.F.R. § 1.808 samples of patent deposit ATCC PTA-11384 without restriction upon issuance of the patent.  As a result of Corteva's breach of its representation as to the unrestricted availability of the patent deposit to the USPTO and the public, the '246 Patent is unenforceable.

**Eighth Affirmative Defense:**
**Invalidity of the '363 Patent**

The claims of the '363 Patent are invalid for failure to meet the requirements of patentability under 35 U.S.C. §§ 101 *et seq*., including without limitation §§ 101, 102, 103, 112 and/or any judicially-created doctrine of invalidity including nonstatutory double patenting.

**Ninth Affirmative Defense:**
**Noninfringement of the '363 Patent**

The Inari Defendants have not infringed any valid and enforceable claim of the '363 Patent directly or indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, or in any other manner.

**Tenth Affirmative Defense:**
**Unenforceability of the '363 Patent**

The '363 Patent is unenforceable. By bringing a suit for patent infringement against Inari to impede Inari's access to the written description of the '363 Patent, of which patent deposit ATCC PTA-12006 is an integral part, Corteva has breached the promise it made to the public to obtain the '363 Patent that it would make available to the public pursuant to 37 C.F.R. § 1.808 samples of patent deposit ATCC PTA-12006 without restriction upon issuance of the patent. As a result of Corteva's breach of its representation as to the unrestricted availability of the patent deposit to the USPTO and the public, the '363 Patent is unenforceable.

**Eleventh Affirmative Defense:**
**Invalidity of the '441 Patent**

The claims of the '441 Patent are invalid for failure to meet the requirements of patentability under 35 U.S.C. §§ 101 *et seq.*, including without limitation §§ 101, 102, 103, 112 and/or any judicially-created doctrine of invalidity, including nonstatutory double patenting.

**Twelfth Affirmative Defense:**
**Noninfringement of the '441 Patent**

The Inari Defendants have not infringed any valid and enforceable claim of the '441 Patent directly or indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, or in any other manner.

### Thirteenth Affirmative Defense:
### Unenforceability of the '441 Patent

The '441 Patent is unenforceable.  By bringing a suit for patent infringement against Inari to impede Inari's access to the written description of the '441 Patent, of which patent deposit ATCC PTA-12006 is an integral part, Corteva has breached the promise it made to the public to obtain the '441 Patent that it would make available to the public pursuant to 37 C.F.R. § 1.808 samples of patent deposit ATCC PTA-12006 without restriction upon issuance of the.  As a result of Corteva's breach of its representation as to the unrestricted availability of the patent deposit to the USPTO and the public, the '441 Patent is unenforceable.

### Fourteenth Affirmative Defense:
### Invalidity of the '522 Patent

The claims of the '522 Patent are invalid for failure to meet the requirements of patentability under 35 U.S.C. §§ 101 *et seq.*, including without limitation §§ 101, 102, 103, 112 and/or any judicially-created doctrine of invalidity including nonstatutory double patenting.

### Fifteenth Affirmative Defense:
### Noninfringement of the '522 Patent

The Inari Defendants have not infringed any valid and enforceable claim of the '522 Patent directly or indirectly, by inducement, contributorily, literally or under the doctrine of equivalents, or in any other manner.

### Sixteenth Affirmative Defense:
### Judicial Estoppel

Corteva is judicially estopped from claiming in this lawsuit that the Inari Defendants infringed any of the '434, '246, '522, '363 or '441 Patents or the PVP Certificates identified in Exhibit A of the SAC based on the alleged activities of obtaining samples of seeds claimed by the patents that Corteva deposited with ATCC for patent purposes, growing the seeds and sequencing the DNA of the seeds.  Corteva represented to the USPTO in PGR2024-00019, filed by Inari, that

a biological deposit made to support the grant of a patent forms part of the patent's written specification and that Inari and its expert could and should have obtained publicly available seed deposited as part of the written disclosure of the patent at issue in the PGR and compared it to the publicly available prior art seeds by performing a "phenotypical comparison by growing the plants under the same environmental conditions" and performing "genetic comparisons between the claimed variety and the asserted prior art varieties." Corteva's representation is an admission that the activities of growing a plant from patent deposit seeds and sequencing the DNA of the seeds are lawful activities of evaluating the written description after patent issuance and before patent expiry. The USPTO accepted Corteva's representations in denying Inari's PGR petition, which was the relief Corteva requested in its opposition to Inari's PGR petition.

## Seventeenth Affirmative Defense:
### Failure to Mark

Corteva failed to mark or give notice in the ATCC catalogue, on the label of the patent deposits and in documentation as required by 7 U.S.C. § 2567 that the patent deposits identified in the SAC made by Corteva with ATCC pursuant to 35 U.S.C. § 112 to obtain utility patents were subject to Plant Variety Protection ("PVP") Certificates and therefore may not recover damages.

## Eighteenth Affirmative Defense:
### Invalidity of the Plant Variety Protection Certificates

Each of the PVP Certificates identified in Exhibit A and Exhibit B of the SAC is invalid for failure to meet the requirements of protectability under 7 U.S.C. §§ 2401 *et seq*., including without limitation those set forth in § 2402.

### Nineteenth Affirmative Defense:
### Plant Variety Protection Act Research Exemption
### (7 U.S.C. § 2544)

The acts of the Inari Defendants do not infringe the PVP Certificates identified in Exhibit A and Exhibit B of the SAC because the use of the seeds was for breeding and/or other bona fide research under 7 U.S.C. § 2544.

### Twentieth Affirmative Defense:
### Noninfringement of Plant Variety Protection Certificates
### (7 U.S.C. § 2541(d))

The Inari Defendants have not infringed any valid and enforceable PVP Certificate identified in Exhibit A or Exhibit B of the SAC because (i) patent deposits were made for each of the plant varieties identified in Exhibit A and Exhibit B of the SAC with the ATCC and the ATCC was authorized by Corteva to sell seeds from those deposits to the public without restriction on patent grant, (ii) the plant varieties were sold by ATCC with the consent of the owner in the United States, and (iii) the export of the patent deposit seeds listed in Exhibit A and seeds of the varieties listed in Exhibit B were into countries that provide plant variety protection for varieties of maize. The acts of the Inari Defendants alleged in the SAC, therefore, are not infringing under 7 U.S.C. § 2541(d).

### Twenty-First Affirmative Defense:
### No Damages Under Plant Variety Protection Act
### (7 U.S.C. § 2566)

Corteva knew or reasonably should have known about the acts of the Inari Defendants that it alleges infringe the PVP Certificates identified in Exhibit A and Exhibit B of the SAC more than one year before commencing this suit. Corteva's claims for damages as to those acts are therefore barred as untimely under 7 U.S.C. § 2566.

**Twenty-Second Affirmative Defense:**
**Estoppel**

Corteva is legally estopped and has waived its right under 7 U.S.C. § 2541(a)(2) to assert infringement of the PVP Certificates in Exhibit A and Exhibit B of the SAC.  Corteva made patent deposits for each of the varieties in Exhibits A and B pursuant to 35 U.S.C. § 112 to obtain utility patents claiming the same varieties as claimed in the PVP Certificates.  By obtaining patents subject to patent deposits, Corteva is estopped from asserting infringement claims under the PVPA or U.S. patent law against Inari for obtaining and exporting samples from the ATCC patent deposits.  Corteva represented in the patents for which it made patent deposits, including the patents corresponding to the PVP Certificates in Exhibit A and Exhibit B of the SAC (*see* Exhibit 1 attached), the '434, '246, '363 and '441 Patents and the patent for which deposit PTA-11336 was made,[1] that the patent deposits would be available to the public without restriction in compliance with 37 C.F.R. § 1.808 upon patent grant.  Inari justifiably relied on Corteva's representations and promises in the patents in obtaining samples from the patent deposits.

**Twenty-Third Affirmative Defense:**
**Patent Misuse**

By asserting infringement of the PVP Certificates in Exhibit A and Exhibit B of the SAC under 7 U.S.C. § 2541(a)(2) after the utility patents claiming the same varieties as in the PVP Certificates have expired, Corteva unlawfully seeks to extend the term of the utility patents claiming the varieties and is engaged in patent misuse.

**Twenty-Fourth Affirmative Defense:**
**Misuse of Plant Variety Protection Certificates**

Corteva has engaged in misuse of the PVP Certificates in Exhibit A and Exhibit B of the SAC by bringing legal action for infringement under 7 U.S.C. § 2541(a)(2), where there has been

---

[1] U.S. Patent No. 9,540,655.

no sale, marketing, importation, stocking, dispensing or propagation of the varieties claimed in the PVP Certificates in the United States by the Inari Defendants, where the Inari Defendants' acts are not considered infringement under 7 U.S.C. § 2541(d), and where the use by the Inari Defendants of the varieties claimed in the PVP Certificates was for plant breeding or other bona fide research exempt from infringement under 7 U.S.C. § 2544.

### Twenty-Fifth Affirmative Defense:
### No Infringement of Patents or Plant Variety Protection Certificates By Obtaining or Exporting Samples of Seeds Deposited for Patent Purposes
### (37 C.F.R. § 1.808)

Patent deposits are freely accessible to the public without restriction on patent grant and obtaining and exporting seeds from a public depository wherein such patent deposits are stored is not an infringement of a PVP Certificate or of a patent under 35 U.S.C. § 271.  37 C.F.R. § 1.808.

### Twenty-Sixth Affirmative Defense:
### Waiver of Plant Variety Protection Rights
### (7 USC 2483(a)(3))

By making an ATCC patent deposit in compliance with 35 U.S.C. § 112 and 37 C.F.R. § 1.808 to obtain a utility patent claiming a plant variety, for each of the plant varieties claimed in the PVP Certificates in SAC Exhibits A and B, Corteva has waived it rights under 7 U.S.C. § 2483(a)(3) to exclude others from exporting seeds from such ATCC patent deposit.

### Twenty-Seventh Affirmative Defense:
### Lack of Third-Party Beneficiary Standing

Corteva lacks standing as a third-party beneficiary to enforce the terms of the material transfer agreements ("MTAs") between ATCC and the Inari Defendants.

### Twenty-Eighth Affirmative Defense:
### Waiver of Third-Party Beneficiary Rights

Corteva waived any rights it purportedly has as a third-party beneficiary to enforce commercial use or transfer restrictions under the MTAs between ATCC and the Inari Defendants

including because in its agreements with ATCC relating to the patent deposits at issue it expressly agreed that ATCC may furnish samples of the patent deposits to the public without restriction.

## Twenty-Ninth Affirmative Defense:
### No Breach of the 2017 MTA

Inari USA did not breach the 2017 MTA with ATCC because (a) any restriction in the 2017 MTA allegedly breached by Inari USA is unenforceable by operation of the "Compliance With Laws" provision of the MTA, which expressly provides that (i) "[d]istribution by ATCC of Budapest Treaty patent deposits are made pursuant to, and in compliance with, all applicable laws and regulations, including the Budapest Treaty and related 37 C.F.R. provisions" and (ii) in the event of any conflict between "the terms of [the] MTA and any applicable law or regulation with respect to ATCC Material that is supplied hereunder by ATCC from the stock of a Budapest Treaty deposit, then the terms of the applicable law or regulation shall govern;" (b) the patents covering the deposited seeds purchased by Inari USA had expired at the time of Inari USA's alleged infringing acts; and (c) none of the alleged uses of seeds purchased by Inari USA comprise "commercial use" under the 2017 MTA. Inari Belgium's purchase of ATCC patent deposits were not subject to the 2017 MTA and the 2017 MTA is therefore not relevant to the Inari Belgium patent deposit purchases at issue in this action.

## Thirtieth Affirmative Defense:
### No Breach of the 2019 MTA

Inari Belgium did not breach the 2019 MTA with ATCC because (a) any restriction in the 2019 MTA allegedly breached by Inari Belgium is unenforceable by operation of the "Compliance With Laws" provision of the MTA, which expressly provides that (i) "[d]istribution by ATCC of Budapest Treaty patent deposits are made pursuant to, and in compliance with, all applicable laws and regulations, including the Budapest Treaty and related 37 C.F.R. provisions;" (ii) in the event of any conflict between "the terms of [the] MTA and any applicable law or regulation with respect

82

to ATCC Material that is supplied hereunder by ATCC from the stock of a Budapest Treaty deposit, then the terms of the applicable law or regulation shall govern;" and (b) none of the alleged uses of seeds purchased by Inari Belgium comprise "commercial use" under the 2019 MTA.

### Thirty-First Affirmative Defense:
### No Breach of the 2022 MTA

The Inari Defendants did not breach the 2022 MTA because (a) all the patent deposit seeds alleged in the SAC to have been obtained by Inari Belgium were obtained from ATCC pursuant to purchase orders placed under the 2019 MTA and before the execution of the 2022 MTA; (b) all the patent deposit seeds alleged in the SAC to have been obtained by Inari USA were obtained from ATCC pursuant to purchase orders placed under the 2017 MTA and before execution of the 2022 MTA; (c) none of the patent deposit seeds alleged in the SAC were the subject of an ATCC purchase order subject to the 2022 MTA; and (d) none of the alleged uses of the seeds purchased by the Inari Defendants comprise "commercial use" under the 2022 MTA.

### Thirty-Second Affirmative Defense:
### Lack of Unfair or Deceptive Acts or Practices
### (Mass. Gen. Laws Ch. 93A, Section 2)

The Inari Defendants did not engage in unfair or deceptive acts or practices but were transparent and upfront with Corteva as to the conduct alleged in the SAC.

### Thirty-Third Affirmative Defense:
### Acts Not Occurring Primarily or Substantially in Massachusetts
### (Mass. Gen. Laws Ch. 93A, Section 11)

The allegedly unfair or deceptive conduct identified in the SAC did not occur primarily or substantially in Massachusetts.

### Thirty-Fourth Affirmative Defense:
### No Misappropriation of Seeds Containing TC1507 Event

Corteva's TC1507 event was not protected by or claimed in a valid, enforceable utility patent or PVP Certificate and was not misappropriated by the Inari Defendants.  The seeds

purchased by Inari were a mixture of seeds of unknown provenance that were not labeled and were not subject to any agreement or indication of proprietary rights, interest or ownership.

### Thirty-Fifth Affirmative Defense:
### No Proprietary or Possessory Interest

At the time Inari Belgium obtained samples of the seeds at issue from ATCC, Corteva did not have a proprietary or possessory interest in the samples, which it deposited with ATCC for patenting purposes and which as a matter of law were freely available to the public without restriction upon issuance of the patents.

### Thirty-Sixth Affirmative Defense:
### Unclean Hands

Corteva is not entitled to the relief requested because it comes to this Court with unclean hands. Corteva engages in its own business in the same activities with third party patent deposits it alleges that when performed by Inari are infringing and seeks relief based on legal positions that are contrary to those it has asserted to obtain relief in other contemporaneous legal proceedings with Inari.

### Thirty-Seventh Affirmative Defense:
### No Injunctive Relief

Corteva is not entitled to permanent equitable relief including at least because Corteva's alleged damages are not irreparable, Corteva has an adequate remedy at law and Corteva has unclean hands.

### Thirty-Eighth Affirmative Defense:
### No Exceptional Case

The Inari Defendants' actions in defending this case do not rise to an exceptional case under 35 U.S.C. § 285.

### Thirty-Ninth Affirmative Defense:
### No Willful Infringement

The Inari Defendants have not willfully infringed any claim of the '434 Patent, the '246 Patent, the '522 Patent, the '363 Patent, the '441 Patent, or the PVP Certificates identified in Exhibit A and Exhibit B of the SAC.

### Fortieth Affirmative Defense:
### No Conversion

The Inari Defendants did not convert any of the patent deposit seeds or Corteva property because they legally purchased and made full payment for the patent deposit seeds obtained from the ATCC, who was legally and contractually obligated and expressly authorized by Corteva to sell the patent deposit seeds to the public.

### Forty-First Affirmative Defense:
### Exhaustion of Rights as to Patent Deposit Sample Seeds

By promising that the subject patent deposits would be made available to the public upon patent grant without restriction, authorizing the ATCC to sell samples of the patent deposits to the public without restriction, and advocating in a PGR that Inari should have used sample patent deposit seeds to access genotype and phenotype of plants claimed in a Corteva patent, Corteva has exhausted its right to allege that the use of the sample patent deposit seeds purchased by Inari is an infringement of the Asserted Utility Patents and the asserted PVP Certificates.

### Forty-Second Affirmative Defense:
### Additional Defenses

Any additional defenses that discovery may reveal.

### Reservation of Affirmative Defenses

The Inari Defendants' investigation of their defenses is continuing, and the Inari Defendants reserve the right to allege and assert any additional defenses.

## INARI'S COUNTERCLAIMS

For its counterclaims, Defendants-Counterclaim Plaintiffs Inari USA and Inari Belgium allege against Plaintiffs-Counterclaim Defendants Corteva Agriscience, Pioneer, and Agrigenetics (collectively, "Corteva") as follows:

## INTRODUCTION

1.      Inari, an emerging company, is a pioneer in the novel application of cutting-edge technologies to plants including CRISPR genome-editing technology and artificial intelligence-based predictive design.  CRISPR, an acronym for "Clustered Regularly Interspaced Short Palindromic Repeats," is a Nobel Prize-winning technology that selectively and precisely modifies the DNA of living organisms through genome editing.  Predictive design enables Inari quickly and accurately to identify novel genes and genome regions to edit and create novel variations to improve crops.  Inari's second-to-none technology platform is capable of rapidly generating plants that require fewer inputs to produce significantly higher yield than plants developed using conventional breeding or traditional genetic engineering.  Inari's platform also allows it to genome-edit plants and develop varieties and traits without infringing third parties' intellectual property rights.

2.      Corteva is the largest seed company in the world, with annual revenues of over $17 billion a year, and the dominant supplier of hybrid and genetically-modified corn and soy in the United States.  Corteva is one of two agribusiness giants that together control more than 70% of the market for corn seed and more than 65% of the market for soybean seed sold in the United States.

3.      Corteva has been in business for nearly one hundred years.  It has used time-consuming traditional and conventional breeding techniques to develop plants and uses genetic

engineering technology to introduce foreign genes into plants.  To maintain its control over these plants and techniques, Corteva contends that the seeds it sells to farmers are subject to Technology Use Agreements that purport to restrict the sale and use of Corteva seeds and prohibit research and breeding activities with its seeds that could result in new varieties of corn and soy.

4.    Corteva acquired and maintains a dominant position in the market by acquiring and consolidating intellectual property on plant varieties, including intellectual property issued to entities that are now owned and controlled by Corteva such as Pioneer Hi-Bred International, Dow AgroSciences, Agrigenetics and DuPont.  Corteva owns more than 50% of all utility patents issued for varieties of corn and nearly 25% of all utility patents issued for varieties of soy in the United States since 1976, amounting to thousands of patents.  Corteva also obtains plant variety protection ("PVP") certificates claiming the identical corn and soy varieties that it claims in its utility patents. Corteva owns 53% of all PVP certificates issued in the United States in recent decades for purportedly new corn and soy varieties.

5.    Corteva is investing in CRISPR genome editing but is several years behind Inari and knows it.  Since its founding in 2016, Inari has been engaged in research and development relating to the novel application of CRISPR genome editing technology to crop plants and is poised to begin commercializing gene-edited traits in the near term.  Corteva has publicly announced that it does not expect to advance gene-edited traits to commercialization until 2030.[2]  In September 2024, Corteva announced that it had taken a $25 million equity investment in the genome editing company Pairwise and had formed a joint venture with it valued at over $40 million "to accelerate the delivery of advanced gene editing solutions to farmers."[3]  Upon information and belief,

---

[2] https://www.corteva.com/resources/media-center/corteva-announces-plant-breeding-innovation-to-combat-corn-disease.htm.

[3] "Corteva, Pairwise Join Forces to Accelerate Gene Editing, Advance Climate Resilience in

Corteva had planned this transaction before it commenced this lawsuit.  Pairwise is a direct competitor of Inari.  Bayer Crop Science, Corteva's largest direct competitor in the corn and soy seed markets, also owns an equity stake in Pairwise.  Corteva's equity stake in and joint venture with Pairwise provides it with an economic incentive to prevent Inari's technology from reaching the market.

6.      Inari represents a powerful future competitive threat to Corteva's investments and dominant market positions in corn and soy despite its lack of substantial sales of corn or soy products in the United States or anywhere.  Inari has not sold any corn or soy products derived from the Corteva seeds at issue in this action or that infringe a Corteva patent or PVP certificate.

7.      Unable to identify an Inari product in the United States that infringes a valid and enforceable U.S. intellectual property right, Corteva instead has sued Inari claiming that Inari's legal acts of *buying seeds* from the American Type Culture Collection ("ATCC"), *which Corteva deposited there to obtain its U.S. patents and promised would be available to the public without restriction after patent grant*, and then exporting those same seeds outside the United States infringes Corteva's intellectual property rights and its purported rights under ATCC Material Transfer Agreements.  Corteva's claims against Inari are objectively baseless and were brought to tarnish Inari and to frustrate and delay Inari's entry into the U.S. market to the benefit of Corteva and its joint venture with Pairwise.  The ultimate victims of Corteva's conduct are American farmers who are denied access to more and better choices in the market for crop seed.

8.      Corteva itself buys patent deposit seeds from the ATCC covered by patents of its competitors, grows plants from the seeds and sequences their DNA in ways that would infringe competitors' patents under the legal theories Corteva asserts against Inari.  Corteva's "Germplasm

_____

Agriculture," September 17, 2024.

Surveillance Unit" has routinely purchased from ATCC *thousands* of samples of competitors' patent deposit seeds in the past decade and has used them to understand and analyze the DNA of the competitors' seeds.  Corteva's germplasm surveillance and its allegations against Inari in this litigation expose its hypocrisy and unclean hands before this Court.  Corteva knows that the legal positions it has taken in this litigation are without merit because it has taken the *opposite* positions before the U.S. Patent and Trademark Office ("USPTO") Patent Trial and Appeal Board ("PTAB") in defending the validity of its plant utility patents in proceedings filed by Inari.

## THE PARTIES

9.    Inari Agriculture, Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business located at One Kendall Square, Cambridge, Massachusetts.

10.    Inari Agriculture NV is a public limited company organized and existing under the laws of Belgium with a principal place of business located in Ghent, Belgium.  Inari Agriculture NV is a wholly owned subsidiary of Inari Agriculture, Inc.

11.    Corteva Agriscience LLC is a limited liability company organized and existing under the laws of Delaware with a principal place of business located at 9330 Zionsville Road, Indianapolis, Indiana 46268.

12.    Pioneer Hi-Bred International, Inc. is a corporation organized and existing under the laws of Iowa with a principal place of business at 7100 NW 62nd Avenue, Johnston, Iowa 50131.

13.    Agrigenetics, Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business at 9330 Zionsville Road, Indianapolis, Indiana 46268.

14.    Corteva Agriscience, Pioneer, and Agrigenetics are each wholly-owned subsidiaries of Corteva Inc., which is organized and existing under the laws of Delaware and

maintains its principal place of business at 9330 Zionsville Road, Indianapolis, Indiana 46268. Corteva Inc. is the legacy agribusiness of predecessor companies The Dow Chemical Company and DuPont de Nemours, Inc.

## JURISDICTION AND VENUE

15.     Inari asserts Counterclaims for declaratory judgment of invalidity, unenforceability and noninfringement under the patent laws of the United States, 35 U.S.C. § 100, et seq., pursuant to 28 U.S.C. §§ 2201 and 2202 (the "Patent Law Counterclaims").  This Court has subject matter jurisdiction over the Patent Law Counterclaims pursuant to 28 U.S.C. § 1331.

16.     Inari asserts Counterclaims for declaratory judgment of noninfringement and unenforceability under the Plant Variety Protection Act, 7 U.S.C. § 2321 et seq., pursuant to 28 U.S.C. §§ 2201 and 2202 (the "PVPA Counterclaims").  This Court has subject matter jurisdiction over the PVPA Counterclaims pursuant to 28 U.S.C. § 1331.

17.     Inari asserts a Counterclaim under 15 U.S.C. § 1125 for unfair competition (the "Federal Unfair Competition Counterclaim").  This Court has subject matter jurisdiction over the Federal Unfair Competition Counterclaim pursuant to 28 U.S.C. § 1331.

18.     Inari asserts state law counterclaims for unfair competition and abuse of process (the "State Law Counterclaims").  This Court has supplemental jurisdiction over the State Law Counterclaims under 28 U.S.C. § 1367 because, *inter alia*, they form part of the same case or controversy as Inari's other federal subject matter counterclaims.

19.     This Court has personal jurisdiction over Plaintiffs-Counterclaim Defendants by virtue of their presence in Delaware, having conducted business in Delaware, and having availed themselves of the rights and benefits of Delaware law such that they should reasonably anticipate being haled into court in this judicial district.

20.     Plaintiffs-Counterclaim Defendants have filed this action for patent infringement and other claims in this Court and have thus submitted to this Court's personal jurisdiction.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## NATURE OF THE ACTION

22.     Inari asserts these counterclaims to redress Corteva's misuse of the intellectual property laws to stifle innovation in crop seeds and delay competition from new innovative seed technologies.

23.     Corteva seeks to restrict the public's legal access to samples of corn and soybean seeds and plants that are subject to Corteva's active and expired U.S. patents.  In so doing, Corteva seeks to reap the valuable commercial benefits of exclusivity under its patents without making good on its end of the patent bargain, which requires Corteva to disclose its patented inventions to the public so that the public can learn from and improve on them and can practice the invention after patent expiry.

24.     In 2013, Corteva was granted the '434 Patent for corn containing a particular transgenic event known as DP4114.  To get the patent, Corteva assured the USPTO that, when the patent is granted, it would make seeds of the plant containing the DP4114 transgenic event available to the public without restriction, as it was required to do.  The USPTO relied on that representation in issuing the patent.

25.     After the '434 Patent issued, Inari Belgium purchased and acquired a sample of the DP4114 corn patent deposit from the ATCC public depository.  Inari Belgium, outside the United States, had the DNA of the '434 Patent deposit seed sequenced to understand the invention of the '434 Patent disclosure, learn from it and improve upon it.  Though not required to do so, Inari told Corteva about its research with the sample in Belgium.  In response, Corteva brought this action

seeking to enforce alleged restrictions that would deny the public access to its patent deposits. Corteva contends that Inari's access to and export of PTA-11506 (DP4114 corn seed), PTA-11384 (DAS59122 corn seed), PTA-11336 (DAS44406 soybean seed), and PTA-12006 (DAS81419 soybean seed), which Corteva deposited with ATCC to obtain utility patents, violates purported restrictions under U.S. patent law, the Plant Variety Protection Act, contract, and state unfair competition and conversion law.

26.    Corteva's position in this lawsuit is that after the USPTO grants a patent to Corteva, Corteva gets to decide *who* may access the written description disclosure of its patented invention and *for what purpose*.  That is not the law.  Where a patent claims a new plant or seed, the written words of the patent alone do not enable the public to understand or make the invention.  The law therefore requires the owner of a patent claiming a new plant or seed to make a deposit of the seed to satisfy the written description and enablement requirements of the Patent Act.  Once a patent claiming a plant or seed is granted, the seed deposited by the patent owner to satisfy the written description and enablement requirements of the Patent Act become an integral part of the patent's written description.  Just as a patent owner may not lawfully prevent any member of the public from reading the patent to understand the written description of, and improve on the invention claimed by the patent, a patent owner may not lawfully prevent any member of the public from accessing and sequencing the DNA of a patent deposit seed to understand the patented plant and seed and improve on them.

27.    Corteva's attempt to restrict Inari from lawfully accessing Corteva's patent deposits is part of a scheme to stifle innovation in crop seeds, deter emerging competitors like Inari from challenging Corteva's market dominance, and delay lawful competition from new seed

technologies and new market entrants like Inari who are ahead of Corteva in the development and potential commercialization of gene-edited traits and/or varieties.

28.     Corteva's dominant position in the market for crop seed is the result of its use of intellectual property to prevent competition.  Having elected to obtain utility patents on its plants and traits, Corteva was required, as part of the quid pro quo inherent in the patent grant, to promise, and did promise, to make samples of the seeds of the patented varieties freely available to the public without restriction once its patents issued.  In exchange for that promise, relied on by the USPTO for the benefit of the public, Corteva received the benefit of years of valuable market exclusivity for its varieties.  This is the bargain inherent in the patent grant, which is intended to "promote the progress of science and useful arts," as articulated in Article I of the United States Constitution.  Awarding to inventors a limited period of exclusivity incentivizes them to disclose their inventions to the public so that those disclosures can contribute to public knowledge and enable further innovation.

29.     Corteva's conduct in this lawsuit reveals that Corteva never intended to make good on its end of the patent bargain.  Corteva has engaged in a scheme to restrict the public's access to its patented varieties in violation of its promises and U.S. law.  Corteva wants it both ways.  It wants the benefit of U.S. patent protection on its crop seeds so it can earn the substantial profits that flow from patent exclusivity and payments tied to its patent rights, but it also wants to improperly limit the promise it made to obtain its limited monopoly, which is to fully disclose its patented invention to the public without restriction.  Corteva's conduct stifles innovation and deprives farmers and others in agricultural markets of new and superior varieties of crop plants that would compete with Corteva's products.  Corteva's conduct gives rise to counterclaims for patent and PVP Certificate invalidity, noninfringement and unenforceability; patent misuse; unfair

competition under state and federal law; and abuse of process.  Inari has been and continues to be injured by Corteva's conduct in this lawsuit and in the marketplace.  The ultimate victims of Corteva's scheme, however, are American farmers and independent seed companies who are denied access to more and better choices because of Corteva's exclusionary and anticompetitive conduct, which in turn harms American consumers.

## FACTS RELEVANT TO THE COUNTERCLAIMS

### I.    INTELLECTUAL PROPERTY PROTECTION FOR PLANTS.

#### A.    Utility Patents on Plants

30.    In the United States, the breeder of a new plant variety may be able to obtain a utility patent on that variety if it meets the requirements of patentability under the Patent Act, that it be new, useful and non-obvious.  The description of the invention in the patent must also satisfy the written description and enablement requirements of the Patent Act.

31.    To meet the written description and enablement requirements, the patent must describe the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use" the invention.  35 U.S.C. § 112.  As the Supreme Court has stated, the requirement that the inventor provide an enabling written description of the invention is fundamental to the quid-pro-quo that comprises the patent bargain, in which inventors obtain a limited period of exclusivity in exchange for public disclosure of their inventions.  *Universal Oil Prods. Co. v. Globe Oil & Ref. Co.*, 322 U.S. 471, 484 (1944).

32.    To meet the written description and enablement requirement of Section 112, an applicant for a patent claiming biological materials like a plant or seed must make samples of the biological materials available to the public in a depository unless the biological materials are otherwise known and readily available to those skilled in the art.  37 C.F.R. § 1.802; *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l. Inc.*, 534 U.S. 124, 142 (2001).  Typically, plant varieties

are not known and readily available to those skilled in the art and cannot be reproduced by a skilled person based on the written text of the patent alone. Therefore, a deposit is required under Section 112.

33.    Deposits of biological materials made to satisfy Section 112 of the Patent Act may be made subject to the requirements of the Budapest Treaty on the International Recognition of the Deposit of Microorganisms for the Purpose of Patent Procedure (the "Budapest Treaty"), to which the United States is a signatory (a signatory being a "Member State"). Under the Budapest Treaty, a deposit of biological materials with an "international depository authority" satisfies the deposit requirements under Section 112 of the Patent Act and under the patent laws of other signatory countries. In the United States, the ATCC is recognized to be an international depository authority ("IDA") under the Budapest Treaty. The Budapest Treaty benefits patent owners like Corteva because it allows them to make a deposit of biological materials with a single IDA that satisfies the deposit requirements of the patent laws of all Member States and relieves patent owners of the cost and burden that would be incurred by making a patent deposit in every country in which they seek to obtain patents. The Budapest Treaty necessarily contemplates that nationals of Member States located outside of the country where the deposit is made will be permitted to access samples of the deposit. This is integral to the very purpose of the Budapest Treaty.

34.    Deposits of biological materials made to satisfy Section 112 must meet the requirements of 37 C.F.R. §§ 1.801-1.809. Under 37 C.F.R. § 1.808, a deposit of biological materials "must be made under conditions that *assure* that . . . *all restrictions* imposed by the depositor on the availability to the public of the deposited material will be *irrevocably removed* upon the granting of the patent" (emphasis added). The irrevocable removal of all restrictions is unqualified under the regulation. As the USPTO itself notes, the absence of restrictions on the

availability of the deposit to the public ensures that the patented materials are readily available to the public as required under 35 U.S.C. § 112. *See* USPTO, Manual for Patent Examination Procedure § 2404.01. Once a patent on biological materials issues, the inventor must assure that samples of the patented biological material deposited for purposes of satisfying the written description and enablement requirements will be available to the public without restriction. The U.S. patent regulations governing patent deposits necessarily contemplate that, upon patent issuance, both U.S. and foreign members of the public will have unrestricted access to patent deposits, which form an integral part of the written description of the patents for which they were deposited.

35. Upon issuance, a patent is entitled to a term of twenty years from the earliest filing date of the patent. During the term, a patent owner may lawfully exclude others from making, using, offering to sell or selling the patented invention in the United States. Once the patent expires, the public is free to make, use and sell the invention without restriction.

### B.  **Plant Variety Protection**

36. Plant varieties may also qualify for protection under a PVP Certificate. Unlike utility patents, PVP Certificates are issued by the United States Department of Agriculture ("USDA"). To qualify for protection under a PVP Certificate, a plant variety must meet the statutory requirements of the Plant Variety Protection Act ("PVPA"), which require, *inter alia*, that the variety be new, distinct, uniform, and stable. 7 U.S.C. § 2402. An applicant for a PVP Certificate is also required to deposit a sample of seed or plant tissue of the variety with the USDA within three months of filing the application. Unlike samples of biological materials deposited to meet the requirements to obtain a utility patent, which are available to the public without restriction upon issuance of the patent, samples of deposited seed for a PVP Certificate are not available to the public until after the PVP Certificate expires.

37.     The term of a PVP Certificate for a new plant variety is twenty years from the date on which the PVP Certificate *issues*.  During the term, the owner of a PVP Certificate may exclude others from certain activities relating to the protected variety, including selling the variety, offering it for sale, reproducing it, importing it, exporting it, or using it in producing (as distinguished from developing) a hybrid or different variety.  7 U.S.C. § 2541(a).

38.     The rights conferred by the grant of a PVP Certificate are subject to certain exemptions and limitations that do not exist for utility patents.  Under the PVPA's research exemption, the use and reproduction of a protected variety for plant breeding or other bona fide research does not constitute an infringement of a PVP Certificate.  7 U.S.C. § 2544.  This exemption is not restricted by any rights granted to the PVP Certificate owner under the PVPA, including any rights in relation to the export of seeds.

39.     The PVPA also provides that it shall not be an infringement of a PVP Certificate to export a protected variety that is sold or otherwise marketed with the consent of the owner in the United States unless the act involves export for further propagation of the variety into a country that does not protect varieties of the plant genus or species to which the variety belongs.  7 U.S.C. § 2541(d).

40.     The PVPA provides that the owner of a PVP Certificate may waive any or all rights under the Certificate.  7 U.S.C. § 2483(a)(3).

## C.     <u>Contractual Restrictions on Research and Breeding</u>

41.     Corteva uses contracts, which it refers to as technology use agreements ("TUAs"), to restrict the use of its plant varieties by Corteva's customers.

42.     Corteva's TUAs prohibit customers who purchase Corteva seed from using for further planting seed produced by crops grown from the purchased seed or using the purchased seed for crop breeding or research.  Corteva's template TUA expressly, and without exception,

provides that a grower who purchases seed from Corteva "may not conduct research on Grower's crop produced from [the] Seed."[4]  TUA provisions such as these eviscerate the exemptions provided for by Congress under the PVPA.

## II.    CORTEVA'S SCHEME TO DEPRIVE THE PUBLIC OF ACCESS TO ITS PATENTED SEEDS AND STIFLE FOLLOW-ON INNOVATION.

43.    Corteva misuses intellectual property protection and contractual provisions to erect a thicket that restricts public access to its plant varieties after patent issuance and expiration to impermissibly extend exclusivity for its commercial products.  Corteva's conduct violates its statutory obligation to disclose its claimed inventions to the public and improperly extends Corteva's monopoly in corn and soy products.

44.    To meet the written description and enablement requirements and obtain patents on corn varieties, Corteva represented to the USPTO that on the granting of the patents it would make available to the public without restriction, pursuant to 37 C.F.R. § 1.808, seeds comprising the claimed inventions by depositing samples of the seeds with the ATCC.  The USPTO relied upon Corteva's representations and promises in granting Corteva's utility patents.

45.    Corteva has taken steps to systematically interfere with the public's ability to access the inventions claimed by its utility patents, rendering those patents invalid and unenforceable as a matter of law.  It has done so in several ways, including by seeking to enforce in this lawsuit, as a purported third-party beneficiary, provisions in ATCC's form MTA between ATCC and members of the public that purportedly limit by contract the purposes for which the public may access Corteva's patent deposit seeds after the related patents issue.  The ATCC MTA does not and cannot restrict access in the way Corteva claims, which underscores the unreasonableness of

---

[4] Corteva Technology Use Agreement Aug 2022, https://www.corteva.us/content/dam/dpagco/ corteva/na/us/en/files/trait-stewardship/DOC-Corteva-Technology-Use-Agreement-WATERMARK-NONEXECUTABLE-COPY.pdf.

Corteva's position.  Corteva also contends, in ways that violate U.S. patent law and the United States' international obligations under the Budapest Treaty, that access to its patent deposits by foreign members of the public infringes Corteva's U.S. patent and PVP rights in those patent deposits.  It does not.  Corteva's attempts to restrict access to its patented plants by foreign members of the public are a breach of its promise to the public in exchange for the patent grant that the patent deposit would be available without restriction.

46.    Upon information and belief, Corteva has deliberately frustrated the public's ability to access samples of its patented plants by depleting and not replenishing deposits of samples of its patented seeds at ATCC, contrary to its representations and obligations to the USPTO and the ATCC.

47.    As to certain of its utility patents on corn, including U.S. Patent No. 8,901,378 (the "'378 Patent") covering the TC1507 event, Corteva has not enabled the claimed invention because it failed to make a deposit of the patented biological material altogether even while publicly acknowledging in at least the European Patent Office in August 2014 that the claimed TC1507 event could not be reproduced without access to seed of the event.  The lack of a patent seed deposit renders the '378 Patent invalid *ab initio*.  With knowledge of the invalidity of the '378 Patent, and with no other valid intellectual property covering the TC1507 event, Corteva has alleged that Inari misappropriated samples of TC1507 even though Corteva had no valid intellectual property covering the event.  On information and belief, Corteva's allegations against Inari are based on the conclusory assumption that Inari obtained samples of TC1507 from a source that was a party to a Corteva TUA on TC1507, yet Corteva fails to identify any applicable executed TUA.  Upon information and belief, Corteva included the '378 Patent in the TC1507 TUA as the means for prohibiting access to the TC1507 event.  By including the '378 Patent in its TUA,

Corteva has improperly restricted use of the TC1507 event and has extracted royalties under the '378 Patent, from patent issuance on December 2, 2014 until its expiration, from farmers and seed companies even though the patent was invalid and, on information and belief, Corteva has known this since at least August 2014.

48.    Corteva also restricts public access to its patented seeds by including in its TUAs prohibitions on any research whatsoever using its commercially sold patented seeds, which would preclude, among other things, growers and others from sequencing the DNA in the seed to understand the purported invention claimed in its patents and to verify whether the seeds are in fact covered by the patents identified in Corteva's TUAs.  Corteva's conduct in restricting public access to its plant varieties protected by PVP certificates and utility patents through TUAs forecloses continued innovation during the life of its PVP certificates and patents and after the certificates and patents expire contrary to the purposes of the grant of those forms of intellectual property.

49.    The USDA has raised concerns about the effect on continued innovation in seed technology of the intellectual property practices of Corteva and other dominant agribusiness companies.

50.    For example, the USDA has noted that:

> To create a new variety or incorporate a new trait into a breeding program, it is necessary to have access to germplasm, i.e., seeds or other propagation material, which contain the source of the genetic material.  New varieties can be created from non-IP protected germplasm, but *follow-on innovations on patented material are constrained by restrictions which limit access to that germplasm*.  In other industries, innovators may be able to look at descriptions of inventions described in patent applications, then design around the claimed invention.  In contrast, plant varieties and the genetic traits they contain are the product of evolutionary history, domestication, and breeding.  *Withholding access to IP-protected seed or other propagation material prevents access not only to the trait of variety in question,*

*but also to the prior innovation that leads to its development. This limits the ability of other innovators to make follow-on improvements.*[5]

51.    The USDA has further noted that:

PVP and utility patents often require seed deposits of the protected plant. These deposits serve as part of the disclosure *and are intended to be available for continued innovation*. For PVP varieties, the assumption is that one could procure seed on the commercial market and make use of the research and breeding exemption to continue innovation. . . . [T]hese varieties are increasingly often only available with licenses that restrict research and breeding.[6]

52.    As these observations indicate, Corteva's conduct in restricting public access to its patented plants forecloses continued innovation during the life of its patents and—even more importantly—after the patents expire, contrary to the purposes of the patent grant. This provides Corteva with a monopoly that extends beyond that contemplated by U.S. patent law.

53.    Corteva's efforts to deter innovation and discourage competition do not stop there. Corteva takes steps to obtain an improper timewise extension of its monopoly on its patented varieties. While the term of a U.S. utility patent is 20 years from the date the inventor filed the application for the patent, the term of a PVP certificate is 20 years from when the PVP certificate is granted. Upon information and belief, Corteva intentionally files applications for PVP certificates later than its applications for utility patents claiming the same plants to extend the duration of its exclusionary rights. For nearly all the varieties identified in Exhibits A and B of the SAC, Corteva's staging of its patent and PVP application filings results in additional years of PVP patent-like protection beyond the term of the patent in a timewise extension of the patent monopoly. Corteva has asserted that obtaining and exporting a sample of a patent deposit after the patent expires is an infringement of later-expiring PVP certificate claiming the same variety.

---

[5] U.S. Dept. of Agriculture Agricultural Marketing Services, *More and Better Choices for Farmers*, March 2023, at 29 (emphasis added).
[6] *Id.*

Corteva also claims in the SAC that restrictions in the ATCC MTA preclude commercial use of patent deposit materials by any commercial entity *even after expiry of the patent for which the deposit was made*, which would preclude use of Corteva's patented seeds and inventions *indefinitely after patent expiration*.

54.    Taken together, Corteva's conduct harms public access to inventions for which Corteva obtained valuable exclusivity, improperly extends the duration of its exclusivity on its plant varieties and traits and stifles follow-on innovation and competition in the markets for corn and soy.

## III.    CORTEVA'S EFFORTS TO FORECLOSE INARI FROM THE MARKET IN FURTHERANCE OF THE SCHEME.

55.    Corteva's conduct towards Inari, both through this litigation and in the market, exhibit Corteva's anticompetitive scheme in action.   Inari represents a formidable future competitive threat to Corteva's dominant market position in corn and soy.   Corteva has every motive to keep Inari out of the market, particularly given Corteva's recent investment in Pairwise and its public admission that it will not be ready to compete with its own gene-edited traits until 2030.  But Inari has not sold commercial corn or soy products in the United States derived from the Corteva seeds identified in the SAC, let alone corn or soy that infringes a Corteva patent or PVP Certificate.   Unable to identify an Inari commercial product that infringes any of its intellectual property rights, Corteva instead has sued Inari claiming that Inari's *mere access to samples of the very seeds Corteva had deposited at ATCC to obtain U.S. patents and that Inari purchased from ATCC* infringes Corteva's intellectual property rights and its purported rights under an ATCC MTA.

56.    On information and belief, Corteva's claims against Inari were brought without regard to their merits.  For example, discovery has revealed that Corteva itself buys from ATCC

seeds deposited by its competitors with ATCC to satisfy the requirements for patentability under 35 U.S.C. § 112, grows them, and sequences their DNA in ways that would infringe the corresponding patents under the *legal theories* Corteva asserts against Inari. If Corteva were to prevail on its infringement allegations, Corteva's business practices with its competitors' patented seeds would certainly violate the law. Corteva's claims against Inari were brought not for their merit, but to harass Inari, cause Inari economic injury, harm Inari's relationships with investors and potential commercial partners, and forestall additional follow-on innovations by Inari.

57.    Inari simply did what any member of the public is entitled to do on the grant of a patent supported by a biological deposit:  access samples of seeds Corteva promised would be made available to the public on patent grant.  And yet Corteva has leveraged its claims against Inari in this lawsuit to spin a narrative through the media, in the industry, and in market-facing communications that falsely disparages Inari as a "thief" who has "stolen" Corteva's intellectual property.  Inari's activities are not only sanctioned and permissible, but they are activities in which Corteva routinely engages as to its competitors' patented seeds.

### A.    Inari's Competitive Threat to Corteva

58.    Inari is a pioneer in the novel and still-emerging application of CRISPR genome-editing technology and artificial intelligence-based predictive design to plants.  CRISPR is a technology that allows scientists to modify the DNA of living organisms selectively and precisely through genome editing.  Inari's second-to-none technology platform is capable of rapidly generating plants that require fewer inputs yet produce significantly higher yield than plants developed using conventional breeding.  Inari's platform also allows it to genome-edit plants and develop varieties and traits without infringing third parties' intellectual property rights, including those of Corteva.

59.     Inari's innovative platform, eight years in development, poses a significant competitive threat to Corteva's dominant position in the market for corn and soy and a threat to Corteva's investments in Pairwise.  To deter Inari's advances in this critical area and protect its dominant market position, Corteva has attempted to foreclose Inari from entering the market in ways that violate federal and state unfair competition laws and involve a misuse of Corteva's intellectual property.

**B.**    **Inari's Pre-suit Disclosure to Corteva of Its Activities with Publicly Available Seeds**

60.     The circumstances leading up to Corteva's institution of litigation and disparaging market-facing statements about Inari include the following.

61.     In 2020, Inari Belgium purchased from ATCC patent deposit seeds of the corn varieties identified in Exhibit A of the SAC, and corn and soy seeds containing certain genetic events, including the DP4114, DAS59122, DAS44406, and DAS81419 events, that Corteva deposited with ATCC to meet the requirements of Section 112 in utility patents claiming the varieties and events.  The samples were freely available to the public without restriction upon issuance of the related patents.

62.     In 2020, Inari lawfully purchased publicly available corn cobs of undisclosed provenance, which after analysis were found to include the TC1507 event.  Inari was neither asked nor required to sign, and did not sign, any contract purporting to restrict the use Inari could make of the purchased corn cobs.  The patents covering the TC1507 event, including the '378 Patent, are invalid under Section 112 of the Patent Act because Corteva never made a deposit of seeds of the TC1507 event.

63.     Inari Belgium's research and development activities with respect to all the patent deposit seeds of unexpired patents it acquired from ATCC occurred outside the United States.

Inari has not commercialized products in the United States that comprise or contain the genetic events or varieties claimed in Corteva's patents directed to the AAD-12 gene, the DP4114, DAS59122, DAS44406, DAS81419 or TC1507 events, or the varieties identified in Exhibit A or Exhibit B of the SAC.

64.    In a series of communications with Corteva, including videoconferences and correspondence, between September 2021 and December 2022, Inari explained to Corteva that (i) Inari had obtained seeds containing the DP4114 event from ATCC; (ii) Inari had obtained publicly available commodity grain not subject to any contractual restrictions containing the TC1507 event; (iii) Inari believed the patent covering TC1507 was invalid for failure to make a patent deposit; (iv) genetic materials containing TC1507 were used by Inari Belgium in Chile for trait development work and introgression into Inari's germplasm; (v) genetic materials containing the DP4114 event were used by Inari Belgium in Ghent, Belgium for genome editing under experimental use exemptions under Belgian law; (vi) Inari had applied for one or more U.S. patents relating to its genome-edited modification of DP4114; and (vi) Inari had not partnered with any third party to commercialize seed products containing TC1507 or Inari's modified DP4114 event.[7]

65.    Discovery to date confirms the veracity of Inari's pre-suit disclosures to Corteva and the lack of infringement of any intellectual property rights asserted by Corteva in this action. It confirms that:  Inari Belgium had the DNA of the seeds identified in the SAC sequenced outside of the United States for research purposes and to inform the design of a plant breeding program; the activities in Belgium are exempt from infringement under the PVPA and are not covered by any parallel Belgian plant variety protection or patent right; and Inari's genome editing activities with respect to transgenic events identified in the SAC were conducted entirely outside the United

---

[7] *See, e.g.*, P. Trivisvavet Letter to Corteva dated Oct. 12, 2021.

States under experimental use exceptions under Belgian law.  Discovery to date evidences that Inari has not and does not propagate any of the varieties in Exhibit A of the SAC, or offer to sell, or sell in the United States any of the varieties identified in Exhibits A and B of the SAC.

### C.    Corteva's Unsuccessful Efforts to Pressure ATCC into Restricting Inari's Lawful Access to Patent Deposits

66.    In or around April 2023, more than a year after Inari had disclosed to Corteva its activities with DP4114 seed obtained from ATCC, Corteva engaged Baker & McKenzie ("BM") to apply pressure on ATCC to restrict Inari's access to Corteva's patent deposits.  In an April 4, 2023 letter to ATCC's attorney, Corteva (via its counsel BM) claimed that ATCC had "failed to fulfill its obligations" as a recognized International Depository Authority by allowing Inari Belgium to access its patent deposits without notification to or authorization by Corteva.  On behalf of their client Corteva, BM informed ATCC that "[a]s one of [the] largest depositors of seeds for patent purposes, Corteva is extremely concerned about ATCC's *lax practice of providing seeds to foreign entities*" like Inari Belgium.  Invoking "the extent of our client's seed deposits with ATCC," BM stated that it intended "to work directly with ATCC to address immediate concerns and help develop policies/procedures to *safeguard against future misappropriation by foreign entities*."  Among other things, BM demanded that ATCC inform Inari Belgium that its "*access and receipt* of Corteva seeds . . . were in violation of ATCC's [MTA] terms" and request that Inari Belgium "*immediately destroy the seeds and any data derived therefrom*."  BM also demanded that ATCC "[u]pdate [its] terms and conditions for seed deposit access ("MTA") *to expressly prohibit the export of patented seed deposits outside the US*."

67.    A subsequent letter from BM to ATCC's attorney dated June 8, 2023 indicates that ATCC was "not amenable to moving forward with the requests outlined in [BM's] April 4, 2023 letter."  Upon information and belief, ATCC declined to accede to Corteva's demands with respect

to Inari Belgium because doing so would violate U.S. patent laws and regulations and Regulation 11.3 under the Budapest Treaty, which expressly provides that "an international depository authority *shall furnish* a sample of any deposited microorganism to any authority, natural person or legal entity, on the request of such person" where such person "has a right to a sample of the microorganism under the law governing patent procedure" in the jurisdiction where the patent for which the deposit was made issued.  As noted above, under 37 C.F.R. § 1.808, which is applicable to patents issued in the U.S., "all restrictions by the depositor on the availability to the public of the deposited material will be irrevocably removed upon the granting of [a U.S.] patent."  Failure by ATCC to comply with the Budapest Treaty Regulations would jeopardize its status as a recognized International Depository Authority under the Budapest Treaty.[8]

### D.      Corteva's Multi-Part Campaign to Harm Inari's Reputation in the Market

68.     Upon information and belief, Corteva has embarked on a multi-part campaign to disparage Inari in the marketplace by asserting, including in press releases published in national and industry publications, that Inari is a "thief" who "stole" Corteva's intellectual property and does not have the necessary freedom to operate to support its public announcements about future commercialization.  Corteva is aware that these statements are false, including because Inari disclosed to Corteva that it had lawfully acquired samples of Corteva's patented seed from publicly available sources and the nature of its activities with those samples.

69.     Early in the morning it filed its complaint against Inari on September 27, 2023, before Inari was even served with process, Corteva caused to be issued press releases via PR

---

[8] Budapest Treaty Article 6(2)(viii) (International Depository Authority must furnish samples of deposited microorganism in conformity with the Regulations); Article 8 (status of International Depository Authority may be terminated on ground of noncompliance with Article 6).

Newswire[9] and articles in global and industry publications, including the Wall Street Journal[10] and the Progressive Farmer,[11] each of which included a prepared statement by Corteva's Chief Technology Officer, Sam Eathington, in which Corteva disparaged Inari as having committed a "theft" of Corteva's intellectual property.  None of these articles and press statements was reasonably incidental to the prosecution of the lawsuit.  Nor did any acknowledge that, as Inari had previously disclosed to Corteva, Inari Belgium had accessed Corteva's seeds by purchasing them from publicly available ATCC patent deposits that Corteva had promised to make available to the public without restriction after patent grant.  Nor did any of the articles or statements acknowledge that Corteva, too, routinely buys from ATCC samples of patented seeds deposited by others and uses them for commercial purposes.  Upon information and belief, Corteva's intent in issuing and/or causing these media statements to issue was to tarnish Inari's reputation and to harm its existing and prospective relationships with investors and commercial partners in anticipation of Inari's next fundraising round.  Corteva purposefully published these articles or caused these articles to be published on websites or in publications that would have the farthest reach across the industry.

70.    Before it filed its complaint against Inari, Corteva, upon information and belief, proactively contacted several of Inari's prospective commercial partners to alert them to the forthcoming filing of the lawsuit.  Upon information and belief, Corteva has also represented to financial analysts who monitor and issue market-facing commentary on agriculture markets that

---

[9] "Corteva Acts to Stop Theft of Intellectual Property, Protect American Farming," PRNewswire, September 27, 2023.
[10] "Top Agriculture Company Corteva Accuses Startup of Stealing Seeds," Wall Street Journal, September 27, 2023.
[11] "Corteva Sues Over Patent Infringement: Inari Agriculture Accused of Purloining Corteva Agriculture Patent-Protected Seeds," Progressive Farmer, September 27, 2023.

Inari lacks freedom to operate in the United States sufficient to support its financial projections and valuations.

71.    Discovery in this action has revealed that these efforts occurred in parallel to the ██████████████████████████████████████████████████████ that was supported by a venture capital company called Radicle Growth.  Corteva engaged Radicle Growth beginning in or around 2019 to help Corteva identify investment opportunities in emerging Agtech startup companies that were primed to "disrupt" the industry with novel technological solutions.  Discovery shows that ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████.

72.    Corteva has also attempted to enlist its largest competitors in its campaign to restrict Inari's access to ATCC patent deposits and foreclose Inari from the U.S. market.

73.    One such example is Corteva's outreach to Bayer Crop Science, Corteva's largest direct competitor in corn and soybean seeds and an investor in Pairwise.  Discovery reveals that on June 1, 2023, just a few months before it commenced this action against Inari, Cornel Fuerer, General Counsel of Corteva, contacted Lars Benecke, Head of Law, Patents and Compliance at Bayer Crop Science, and Stacey Stater, Lead Attorney for Global Seeds & Traits and U.S. Crop Science at Bayer Crop Science, to set up a call to discuss "recent findings" Corteva had made about Inari.  Following their call, Mr. Fuerer sent to Mr. Benecke copies of purchase orders that Inari had submitted to ATCC.  In his cover email, Mr. Fuerer noted that the ATCC purchase orders contained information "that references Bayer IP."  Following that exchange, on September 26, 2023, the day before Corteva filed suit against Inari, Mr. Fuerer contacted Mr. Benecke to inform him that Corteva would be filing suit against Inari the following day.

74.    Upon information and belief, Corteva's outreach to Bayer was intended to enlist Bayer to join forces against Inari.  Corteva has admitted that it is a routine practice of companies involved in the commercial crop seed industry to obtain samples of each other's patent deposit seeds to monitor for patent infringement and other purposes.  There is no economically rational basis for Corteva to alert Bayer Crop Science, Corteva's largest competitor, to the fact that Inari had accessed the latter's patent deposit except to coordinate and execute on a plan to exclude Inari from the market and protect a common investment in Pairwise.

75.    By way of another example, discovery also reveals that on August 13, 2023, just over a month before commencing the instant action, Cornel Fuerer made a similar outreach to Stephen Landsman, General Counsel of Syngenta, another direct competitor of Corteva, and provided Mr. Landsman with information about Inari's purchases of samples of the Syngenta's patent deposits from ATCC.  After Corteva commenced this lawsuit against Inari, Mr. Fuerer sent Mr. Landsman a follow up email informing Mr. Landsman of the filing.

76.    Discovery produced by ATCC in this action shows that between April 20, 2020 and July 19, 2022, ATCC sent to Corteva furnishing reports identifying purchases of Corteva patent deposits by members of the public.  These reports indicate that, during this time period, Syngenta purchased more than one hundred samples of Corteva patent deposits *including samples of 111 of the very same patent deposits that were purchased by Inari and are at issue in this litigation*.  Corteva admits that it has never authorized ATCC to provide a commercial use license to anyone.  *See* Second Amended Complaint, October 1, 2024 (D.I. 148) at ¶ 82.  To Inari's knowledge, Corteva has never sued Syngenta for breach of an ATCC MTA or for patent or PVP Certificate infringement even though Corteva has been aware since at least April 2020 that Syngenta has accessed many of the same ATCC patent deposit seeds of Corteva that Inari accessed.  Nor is Inari

aware of any press release or public statement issued by Corteva in which it describes Syngenta as a "thief" for purchasing from ATCC many of the same patent deposit seeds that Inari purchased.

77.     The combined U.S. market share of Corteva, Bayer Crop Science and Syngenta in corn and soy is approximately 75%.  Upon information and belief, through its outreach to its direct competitors Bayer Crop Science and Syngenta, Corteva sought to secure the allegiances of those giant agribusiness companies against Inari not for any legitimate purpose but instead to impede Inari's development and activities, to poison the well against Inari, and to limit Inari's ability to establish partnerships with the major seed companies who collectively command the vast majority of the commercial seed market, and thereby delay Inari's ability to enter the market with commercial gene-edited traits before Corteva.

### E.     Corteva's Litigation Against Inari Is Not Supported by the Facts or Law

78.     In this action, Corteva asserts against Inari claims of infringement or inducing infringement of five utility patents, claims of infringement of 248 PVP certificates, claims for breach of Inari's MTAs with ATCC, and claims for violations of state unfair competition and conversion law.  Corteva's claims are objectively meritless in view of the relevant facts and law and, on information and belief, are intended to inflict economic and reputational harm on Inari.

### 1.     Corteva's MTA-Based Claims

79.     Corteva's allegations of breach of MTAs, unfair competition and conversion by Inari, and Corteva's allegation that Inari induced ATCC to infringe the '434 Patent, the '246 Patent, the '552 Patent, the '363 Patent, and the '441 Patent (the "Asserted Utility Patents") are predicated on the assumption that ATCC was not permitted to sell Inari the patent deposit seeds due to purported restrictions in Inari's MTA with ATCC that allegedly prohibit certain commercial uses of the seeds after purchase.  This assumption is in error because the MTA expressly provides that patent deposits, such as those at issue in this case, are governed by the terms of the Budapest Treaty

111

and U.S. laws and regulations, and if any MTA restrictions conflict with the treaty or U.S. law and regulations, the treaty or U.S. law and regulations govern, and, in any event, Corteva expressly authorized ATCC to furnish the patent deposits at issue to the public without restriction, as required under U.S. law and regulation.  ATCC was both permitted and required to furnish the patented seeds to Inari upon Inari's request without restriction.  Upon information and belief, ATCC so informed Corteva before Corteva filed this lawsuit.

80.    Discovery produced in this action confirms that ATCC *agrees* that the purported restrictions on which Corteva seeks to rely for its claims against Inari in this action *do not apply to patent deposits for issued patents*.  For example, on July 30, 2019, a member of the public who wished to purchase samples of certain patent deposit seeds from ATCC asked ATCC whether the then-operative MTA, which is the same form MTA under which Inari Belgium purchased all the patent deposits at issue in this action, "prohibited the use of patent deposit material for commercial purposes."  A Contract Specialist at ATCC responded with an answer to this question that leaves no room for doubt about ATCC's view.  They do not:[12]

> Per the MTA, "Distribution by ATCC of Budapest Treaty patent deposits are made pursuant to, and in compliance with, all applicable laws and regulations, including the Budapest Treaty and related 37 C.F.R. provisions.  If there is any conflict between the terms of this MTA and any applicable law or regulation with respect to ATCC Material that is supplied hereunder by ATCC from the stock of a Budapest Treaty deposit, then the terms of the applicable law or regulation shall govern"
>
> With respect to patent deposit materials, the transfer and commercial use restrictions in the ATCC MTA are superseded by Budapest Treaty and USPTO regulations.

81.    Similarly, in a November 4, 2016 email to a member of the public who wished to purchase a sample of patent deposit seeds, an Associate Licensing MTA Specialist at ATCC confirmed that "[w]ith respect to patent deposit materials, the transfer and commercial use restrictions in the ATCC MTA are superseded by Budapest Treaty and USPTO regulations. ***Patent deposits are not subject to the transfer provisions of the ATCC Material Transfer Agreement or***

---

[12] ATCC_000099928 (emphasis added).

***ATCC Commercial Use license requirements***."[13]  The intent and understanding of ATCC, the counterparty to the MTAs at issue in this action, as to the MTA restrictions on which Corteva purports to base its claims as a third-party beneficiary could not be clearer.

82.    Corteva itself expressly agreed in its deposit agreements with ATCC for all the patent deposits at issue in this action, that upon issuance of the patents, ATCC was *authorized* by Corteva to furnish to the public, without restriction, samples of its patent deposit seeds.  In those agreements, Corteva *expressly agreed* that (i) "ATCC may furnish as permitted by or required under [the] Budapest Treaty or applicable law" and that (ii) "*[n]otwithstanding anything to the contrary, ATCC may, without restriction, furnish samples of the deposit at any time after the issuance of any relevant patent*."

83.    Upon information and belief, it is ATCC's practice to notify depositors when it learns of the issuance of a patent for which a deposit was made and, in such communications, to request the depositor's confirmation in writing that it understands that ATCC will distribute the patent deposit to the public upon the public's request pursuant to the Budapest Treaty and/or U.S. patent law and regulations.  Upon information and belief, consistent with its practice, ATCC sent Corteva such communications with respect to all the patent deposits at issue in this action.  As to more than 200 of the patent deposits at issue, Corteva responded to ATCC confirming its understanding that ATCC would furnish samples to the public as required by law.  Upon information and belief, Corteva at no time ever disputed or objected to ATCC's statement that it was permitted and required to furnish to the public without restriction the patent deposits at issue in this action.

---

[13] ATCC_000061048 (emphasis added).

84.     Corteva's claim that Inari USA breached the 2017 MTA by purchasing from ATCC the seeds deposited to obtain patents listed in Exhibit B of the SAC is objectively baseless for yet another reason:  at the time of Inari USA's purchases, the utility patents for which the deposits listed in Exhibit B of the SAC were made had expired.  Corteva's claim that Inari USA breached the 2017 MTA is predicated on the erroneous view that Corteva may use an ATCC MTA to block the public, including members of the public located in the U.S., from accessing and using patent deposits *after the U.S. patents for which the deposits were made have expired*.  By so contending, Corteva seeks to use a contract to impermissibly extend the term of its patents.  Corteva knows that this contention is legally baseless because in a recent submission to the USPTO in response to request for comments on a possible statutory experimental use exception signed by Corteva's General Counsel, Cornel Fuerer, Corteva admitted that:

> In the United States . . . the system of utility patents and PVPs allow *open access to seed to anyone who wants it after 20 years of patent protection*.  The choice and availability that is therefore available to America's farmers is unmatched – and the results, in terms of food production, speak for themselves.[14]

85.     Based on these facts, applicable law and representations and admissions by Corteva, no reasonable litigant would expect to succeed on the merits of the claims asserted by Corteva.

## 2.    Corteva's Claims Predicated on Inari's Purchase of TC1507

86.     Corteva's claims that Inari's purchase and use outside the United States of material containing the TC1507 event violates Massachusetts unfair competition law and comprises conversion are predicated on the assumption that the TC1507 event was protected by valid patents and that Corteva possesses a proprietary interest in biological material containing the TC1507

---

[14] Comments by Corteva, Docket No. PTO-C-2024-0023, Experimental Use Exception Request for Comments, September 26, 2024 (emphasis added).

event.  However, Corteva knows that the TC1507 patents, including the '378 Patent, are invalid under Section 112 because it failed to make a patent deposit of seeds containing the event even while representing publicly to the European Patent Office that "*[r]eproducing the event of the invention in the absence of any physical sample would be almost impossible*."[15]

### 3.    Corteva's Claims of Direct Patent Infringement

87.    Corteva's claim that Inari directly infringes the Asserted Utility Patents because Inari Belgium or its agent performed phytosanitary testing of seeds covered by those patents in the United States is not supported by the facts.  Upon information and belief, Corteva is aware of how phytosanitary testing is conducted because it is an accredited entity authorized by the USDA to conduct phytosanitary testing and issue phytosanitary certificates for purposes of export. [16] Discovery to date has established that the allegedly infringing phytosanitary testing was conducted not by Inari but by Iowa State University at the direction of USDA.  Phytosanitary testing does not comprise a "use" of the patented invention under 35 U.S.C. § 271(a), particularly as seed comprising the patented invention is destroyed in such testing.  Corteva's allegation of infringement under 35 U.S.C. § 271(f)(2) that Inari Belgium combines the patented seeds with water, soil and air in Belgium amounts to a prohibited extraterritorial application of U.S. patent law and expands § 271(f)(2) beyond the scope contemplated by Congress.  The seeds comprise the patented invention; they are not mere "components" of a patented invention subject to the extra-territorial reach of 35 U.S.C. § 271(f)(2).

88.    Corteva knows its claims of infringement of the Asserted Utility Patents are meritless because, upon information and belief, Corteva also obtains from ATCC competitors'

---

[15] August 7, 2014 Written Submission in Preparation to/during Oral Proceedings, EP 04751097.9, at 3 (emphasis added).
[16] USDA Animal and Plant Health Inspection Service, Aphis Entities Accredited Under the National Seed Health System (https://www.aphis.usda.gov/media/document/32525/file).

patented seeds and sequences their DNA.  Corteva's "Germplasm Surveillance Unit" has routinely obtained competitors' patented seeds since 1926 and has used them to understand and analyze the DNA of the seeds.  Corteva did not disclose these facts in the SAC but has admitted that it buys competitors' patented seeds from ATCC, grows them, observes and measures the resulting plants to understand agronomic factors and yields, and performs genetic testing to obtain genetic markers to assess whether they infringe a Corteva patent.  Under the legal theory advanced by Corteva against Inari in this action, this conduct would be an infringing "use" of the inventions claimed in the patents for which Corteva's competitors deposited the seeds with ATCC.  This is the same conduct that, when conducted by Inari, Corteva has disparaged as "theft" in the media.

89.     If Corteva were to succeed on its legal theory against Inari, Corteva's own conduct would violate the Patent Act, which shows that Corteva's assertion of infringement claims against Inari is without regard to the merits of the claims and for an ulterior purpose.  Corteva knows this because in a recent response to a post grant review ("PGR") petition Inari filed with the USPTO PTAB challenging the validity of a Corteva patent on a plant, Corteva criticized Inari for failing to grow the prior art and patented Corteva plant varieties at issue in the PGR proceedings and conduct side-by-side phenotypic and genetic sequence comparisons, *activities that would comprise infringement under the theory Corteva advances against Inari in this action*.[17]  The USPTO PTAB accepted Corteva's arguments and denied Inari's PGR petition.  Corteva is now judicially estopped

---

[17] *See*, *e.g.,* Patent Owner's Preliminary Response, June 26, 2024, PGR2024-00019, at 2 ("Petitioner did not grow up a seed of the claimed invention side by side with its asserted prior art under the same growing conditions in order to conduct a true phenotypic analysis . . . .  Inari presents no genetic analysis of the deposited seeds to demonstrate any similarity or lack thereof of the genotype of the claimed maize variety from the asserted prior art.  Inari failed to do this despite admitting that POSAs regularly assess the genetics of inbred seeds as basic tools in the plant breeding art.").

from taking a position in these proceedings contrary to the one it successfully asserted in opposition to Inari's PGR petition.

### 4.    Corteva's Claims of Inducing Patent Infringement

90.    Corteva also claims that Inari induced ATCC to infringe the Asserted Utility Patents by furnishing patent deposit seeds to Inari without authorization by Corteva.  The facts and evidence show that Corteva's claim is in error.  In its deposit agreement with ATCC and in subsequent correspondence with ATCC after the patent issued, Corteva expressly authorized ATCC, on issuance of the '434 Patent, to furnish the DP4114 seeds without restriction to the public, which includes Inari.

91.    Corteva's Budapest Treaty patent deposit of DP4114 seeds was made to support not only the U.S. '434 Patent but also European Patent EP 251226B1, the European counterpart to the '434 Patent.[18]  Allowing an owner of a U.S. patent who has made patent deposits under Section 112 of the Patent Act and 37 C.F.R. § 1.808 and also to support foreign patents to restrict access to a Budapest Treaty patent deposit by alleging infringement under 35 U.S.C. §§ 271(a), (b) and (f)(2) violates U.S. law and the Budapest Treaty's prohibition on export restrictions of biological materials deposited for patenting.  The Treaty prohibits export restrictions on patent deposits except for national security, health or environmental purposes.[19]  In promulgating the regulations governing deposits of biological materials for patenting purposes, 37 C.F.R. §§ 1.801-1.809, the USPTO expressly declined to adopt a restriction on the export of patent deposit materials

---

[18] *See* EP 2512226B1 at 8.5:8.8 ("Upon allowance of any claims in the application, the Applicant(s) will make available to the public, pursuant to 37 C.F.R. § 1.808, sample(s) of the deposit of at least 2500 seeds of hybrid maize with the American Culture Type Collection . . . .").

[19] *See* Budapest Treaty, Article 5 ("[I]f and to the extent to which the export from or import into its territory of certain kinds of microorganisms is restricted, such restriction should apply to microorganisms deposited; or destined for deposit, under this Treaty only where the restriction is necessary in view of national security or the dangers for health or the environment.").

for this and related reasons.  Such a restriction would also violate the national treatment provisions of the TRIPs Agreement, which require that member states accord to the nationals of all other member states no less favorable treatment than it accords its own nationals with regard to intellectual property and applies particularly when the Budapest Treaty patent deposit with ATCC is made to support foreign patents.[20]

### 5.    Corteva's Baseless Claims of PVP Infringement

92.    Corteva's claim that the Inari Defendants infringed 248 PVP Certificates by exporting outside the United States patent deposit seeds of the protected varieties are objectively meritless.  Corteva sought and obtained utility patents on the same varieties covered by the 248 PVP Certificates and made patent deposits for each patent and agreed to make samples of its protected varieties available to the public without restriction on patent grant.  In promising unrestricted access to the patent deposits, Corteva is legally estopped from asserting and waived its right, pursuant to 7 U.S.C. § 2483(a)(3), to assert that the export of a sample from the patent deposit is an infringement under 7 U.S.C. § 2541(a)(2).

93.    Indeed, the very legal position advanced by Corteva in this action was expressly *rejected* by the USPTO when it promulgated and adopted 37 C.F.R. § 1.801-809.  For example, the USPTO expressly rejected the proposal to restrict exports of patent deposits under the regulations relating to deposits of biological materials, stating that "the Budapest Treaty (Article 5) provides that restrictions on exports and imports of microorganisms should apply *only where the restriction is necessary in view of national security or the dangers to health or the environment*."  53 Fed. Reg. 39,420 (emphasis added).  The USPTO also concluded that "[a] restriction against exports could be considered to be violative of 35 U.S.C. § 112 *since foreign*

---

[20] *See* Agreement on Trade-Related Aspects of Intellectual Property Rights, Article 3.1.

*requesters would be denied access to deposits* where a patentee had never sought foreign patent protection." 54 Fed. Reg. 34,864 (emphasis added).

94.     As Corteva has readily admitted outside these proceedings, once a patent expires the public has the unfettered right to practice the invention claimed in the expired patent.  In the SAC, Corteva has asserted infringement of numerous PVP Certificates under 7 U.S.C. § 2541(a)(2) after the utility patents claiming the same varieties as the PVP Certificates have expired (the relevant PVP Certificates are identified in Exhibit 2 hereto).  In doing so, Corteva unlawfully seeks a time-wise extension of the terms of the utility patents' monopoly claiming the varieties and engages in patent misuse.  In obtaining PVP Certificates and utility patents claiming the same varieties, Corteva is legally estopped from asserting and waived its right, pursuant to 7 U.S.C. § 2483(a)(3), to assert infringement under the PVPA after expiration of the term of the corresponding utility patent.

95.     Upon information and belief, Corteva's purpose in pursuing this action against Inari is for the ulterior and anticompetitive purposes of inflicting economic harm on Inari and tarnishing Inari's reputation in the market, interfering with commercial plans and timeliness for launches of products that would compete with Corteva, and sending a message to deter others who might desire to enter the market with superior competitive alternatives to Corteva's seeds.

## COUNT I

### Declaration of Invalidity of the '434 Patent

96.     Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 95 of the Counterclaims above.

97.     The claims of the '434 Patent are invalid for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 100 *et seq.*, including but not limited to §§ 102, 103 and 112.

98.     The claims of the '434 Patent are invalid as anticipated under 35 U.S.C. § 102.  The '434 Patent was filed December 16, 2010, claiming priority to U.S. Provisional Application No. 61/287,462 filed December 17, 2009, and U.S. Provisional Application No. 61/413,536, filed November 15, 2010.  ATCC patent deposit PTA-11506 of DP4114 maize event seeds was made November 24, 2010.

99.     As evident from Pioneer's own regulatory submission, beginning at least as early as 2006, more than three years before the provisional application filing date of the '434 Patent, interstate movements and field trials of Pioneer 4114 Maize, the claimed invention of the '434 Patent, were conducted in publicly accessible growing regions within the United States, including Arkansas, California, Colorado, Delaware, Georgia, Hawaii, Iowa, Illinois, Indiana, Kansas, Michigan, Minnesota, Missouri, Nebraska, Oklahoma, Pennsylvania, Puerto Rico, South Dakota, Tennessee, Texas, and Wisconsin.[21]  Corteva did not disclose this material information on the extensive public field trials to the USPTO during prosecution.  The invention as defined in each of claims 1-28 of the '434 Patent was in widespread public use in this country more than one year prior to the date of the provisional application for the '434 Patent.  Corteva did not disclose the field trials to the USPTO and the Examiner did not consider the field trials during the examination of the patent application. Event DP4114, the claimed invention of the '434 Patent, was complete and reduced to practice and ready for patenting before the field trials of Pioneer 4114 Maize commenced in 2006.  The field trials, even for regulatory purposes, of an invention that has been reduced to practice and is ready for patenting do not qualify as an experimental use exception to negate the public use bar.

---

[21] Petition for the Determination of Nonregulated Status for Insect-Resistant and Herbicide-Tolerant 4114 Maize at 215-40.

100.    The claims of the '434 Patent are invalid as obvious under 35 U.S.C. § 103 in view of *Summary of the Application for the Authorisation of Genetically Modified 59122x1507xNK603 Maize and Derived Food and Feed in Accordance with Regulation (EC) 1829/2003* (2008); *Scientific Opinion - Application (Reference EFSA-GMO-NL-2005-15) for the Placing on the Market of the Insect-Resistant and Herbicide-Tolerant Genetically Modified Maize 1507 x 59122, for Food and Feed Uses, Import and Processing under Regulation (EC) No 1829/2003 from Mycogen Seeds, c/o Dow AgroSciences LLC and Pioneer Hi-Bred International, Inc. as Represented by Pioneer Overseas Corporation* (April 21, 2009); *Gene Stacking in Transgenic Plants – the Challenge for 21st Century Plant Biotechnology,* 3 PLANT BIOTECHNOL. J. 141 (2005); Linda Castle et al., *Agricultural Input Traits: Past, Present and Future,* 17(2) CURRENT OPINIONS BIOTECH 105 (2006); United States Patent Application Publication No. 2008/0178357A1; International Publication No. WO 2004/099447A2; Gang Hua et al., *Binding Analyses of Bacillus thuringiensis Cry d-Endotoxins Using Brush Border Membrane Vesicles of Ostrinia Nubilalis,* 67(2) APPLIED ENV'T MICROBIOL. 872 (2001); Renate Kaiser-Alexnat et al., *Studies on the proteolytic processing and binding of Bt toxins Cry3Bb1 and Cry34Ab1/Cry35Ab1 in the midgut of Western corn rootworm (Diabrotica virgifera virgifera LeConte)*, 45 IOBC/WPRS BULLETIN 235 (2009); Laura Appenzeller et al., *Subchronic Feeding Study with Genetically Modified Stacked Trait Lepidopteran and Coleopteran Resistant (DAS-Ø15Ø7-1xDAS-59122-7) Maize Grain in Sprague-Dawley Rats*, 47 FOOD CHEM. TOXICOL. 1512 (2009); and APHIS Plant Pest Risk Assessment for Pioneer 4114 Maize.

101.    The claims of the '434 Patent are invalid for failure to satisfy the requirements of 35 U.S.C. § 112 because a person of skill in the art would not, without undue experimentation, be able to make or isolate a maize plant comprising DP4114 without access to patent deposit PTA-

11506 and Corteva seeks to restrict public access to its patented corn plant patent deposits in violation of 37 C.F.R. § 1.808.

102.    The only distinguishing characteristic in independent claim 1 from the prior art cited by the Examiner was the inclusion of the flanking sequences SEQ. ID NOS: 27 and 28.  A person of skill in the art would not, without undue experimentation, be able to make or isolate the DP4114 event with the claimed flanking sequences SEQ ID NOS: 27 and 28 based solely on the published specification of the '434 Patent.

103.    During prosecution, the Examiner rejected all pending claims under 35 U.S.C. § 112 for failing to meet the deposit requirement for biological material.  The Examiner explained that "[t]he claims are directed to specific seed" and that a deposit of corn seed comprising event DP4114 is required if the claimed seed "were not obtainable by a repeatable method set forth in the specification or otherwise readily available to the public."  02-04-2013 Non-Final Rejection at 5.  While the specification disclosed that Corteva had made a deposit with ATCC of corn seed comprising the DP4114 event, the Examiner explained that "no statement has been provided stating that the instant invention will be irrevocably and without restriction released to the public upon issuance of the patent."  *Id*. (citing 37 C.F.R. § 1.801-809).

104.    In response to the non-final rejection, Corteva neither traversed the rejection nor contended that a deposit was not required to satisfy Section 112.  Rather, it argued that it was in compliance with 37 C.F.R. § 1.801-809 because the specification represented that, "[u]pon allowance of any claims in the application, the Applicant(s) will make available to the public, pursuant to 37 C.F.R. § 1.808, samples of the deposit of at least 2,500 seeds of hybrid maize . . . ."  Corteva further explained that 37 C.F.R. § 1.808 requires that "all restrictions imposed by the depositor on the availability to the public of the deposited material *will be irrevocably removed*

*upon the granting of the patent*."  05-02-2013 Response to Non-Final Rejection at 13 (emphasis added).  The Examiner relied upon this statement to withdraw the invalidity rejection under 35 U.S.C. § 112 and issue the '434 Patent.

105.    In this lawsuit, Corteva seeks to enforce, after issuance of the '434 Patent, restrictions on the availability to the public of samples of corn seed comprising the DP4114 event deposited with ATCC.

106.    Corteva seeks, as a purported third-party beneficiary, to enforce alleged restrictions on the alleged commercial use or transfer of samples of patented deposited seed contained in ATCC's MTA with Inari.  Under Corteva's interpretation of the MTA, ATCC is not authorized to furnish samples of patent deposited seed comprising the DP4114 event to any member of the public for any purpose other than non-commercial research.  Corteva's position is that a commercial entity cannot qualify as conducting non-commercial research. Corteva's actions effectively prohibit public access to the entirety of the '434 Patent's written description, which includes the patent seed deposit.

107.    Corteva also contends that any attempt by a member of the public outside the United States to access samples of the patented seeds, for any purposes, infringes the '434 Patent where phytosanitary testing of the seeds is required by the recipient country's government to export the seeds outside the United States, because such phytosanitary testing constitutes an infringing use of the invention claimed by the '434 Patent.  Corteva also asserts that because the '434 Patent claims a plant grown from a seed, export of the patented deposited seed is the export of a component of the '434 Patent invention and thus patent infringement under 35 U.S.C. § 271(f)(2).  Corteva's assertion of patent infringement effectively bars any member of the public, especially those located outside the United States, from accessing the written description of the

invention claimed in the '434 Patent.  Failure by Corteva to make the patented corn seed comprising the DP4114 event available to the public without restriction after issuance of the '434 Patent, including without restriction based on the geographical location of the public, renders the '434 Patent invalid under 35 U.S.C. § 112 because of Corteva's breach of its promise to make the patent deposit ATCC PTA-11506 available to the public without restriction on patent grant.

108.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to the validity of the claims of the '434 Patent, based on Corteva's allegations in the SAC that Inari has infringed or will infringe the '434 Patent.

109.    Inari is entitled to a declaratory judgment that the claims of the '434 Patent are invalid pursuant to 28 U.S.C. §§ 2201 and 2202.

110.    A declaration is necessary and appropriate to establish that the claims of the '434 Patent are invalid.

## COUNT II

### Declaration of Invalidity of the '246 Patent

111.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 110 of the Counterclaims above.

112.    The claims of the '246 Patent are invalid for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 100 *et seq.*, including but not limited to §§ 102, 103 and 112.

113.    The claims of the '246 Patent are invalid as anticipated under 35 U.S.C. § 102.  The '246 Patent was filed on November 12, 2007, claiming priority to U.S. Provisional Application No. 60/614,225, filed on September 29, 2004, and U.S. Application No. 11/237,222, filed on

September 28, 2005.  ATCC patent deposit PTA-11384 of DAS59122 maize event seeds was made on October 4, 2010.

114.    Beginning at least as early as 2001, more than three years before the provisional application filing date of the '246 Patent, interstate movements and field trials of Dow AgroSciences LLC ("DAS") Corn Line 59122, the claimed invention of the '246 Patent, were conducted in publicly accessible growing regions within the United States, including California, Iowa, Illinois, Indiana, Missouri, Wisconsin, Hawaii, Nebraska, Texas and Puerto Rico.[22]  Corteva did not disclose this material information on the extensive public field trials to the USPTO during prosecution.  The invention as defined in each of claims 1-14 of the '246 Patent was in widespread public use in this country more than one year prior to the date of the provisional application for the '246 Patent.  Corteva did not disclose the field trials to the Patent Office and the Examiner did not consider the field trials during the examination of the patent application.  Event DAS59122, the claimed invention of the '246 Patent, was complete and reduced to practice and ready for patenting before the field trials of (DAS) Corn Line 59122 commenced in 2001.  The field trials, even for regulatory purposes, of an invention that has been reduced to practice and is ready for patenting do not qualify as an experimental use exception to negate the public use bar.

115.    During prosecution of the '246 Patent, the Examiner rejected all pending claims as obvious under 35 U.S.C. § 103 in view of U.S. Patent No. 6,372,480 ("Narva") in view of U.S. Patent Application Publication No. 2002/0199215 ("Boets"), taken with the evidence of Crickmore et al,[23] finding that Narva teaches a DNA construct comprising three expression cassettes, the first

---

[22] Application for the Determination of Nonregulated Status for *B.t.* Cry34/35Ab1 Insect-Resistant, Glufosinate-Tolerant Corn:  Corn Line 59122, December 18, 2003, Revised September 7, 2004.
[23] http://www.lifesci.sussex.ac.uk/Home/Neil_Crickmore/Bt/.

comprising a maize ubiquitin promoter, a maize ubiquitin 5' untranslated exon, a maize ubiquitin first intron, a DNA encoding the PS149B1 14 kDa toxin, and a PinII transcriptional terminator; the second comprising a maize ubiquitin promoter, a maize ubiquitin 5' untranslated exon, a maize ubiquitin first intron, a DNA encoding the PS149B1 44.3 kDa toxin, and a PinII transcriptional terminator; and the third comprising a CaMV 35S promoter, a DNA encoding PAT, and a CaMV 35S transcriptional terminator; and that Narva teaches maize plants transformed with the DNA construct. The Examiner rejected all pending claims because it would have been obvious to one of ordinary skill in the art to modify the DNA construct taught by Narva to use the wheat peroxidase promoter in the construct as described in Boets and that one of ordinary skill in the art would have been motivated to do so because targeting the toxin to the roots would be advantageous in controlling rootworm. February 9, 2010 Non-Final Rejection.

116.    In response to the Non-Final Rejection, Corteva amended the pending claims to recite that the corn plant comprises in its genome a DNA construct linked to at least one flanking region comprising a nucleotide sequence selected from the group consisting of the nucleotide sequence set forth in SEQ ID NO: 19 and the nucleotide sequence set forth in SEQ ID NO: 20. Corteva also added new claims directed to various embodiments of the plant of the amended claims and to plants and seeds comprising in their genomes DNA characteristic of event DAS59122.

117.    In a July 9, 2010 Final Rejection, the Examiner withdrew her obviousness rejection under Section 103 in view of Corteva's amendments to the claims but rejected all pending claims under, *inter alia*, 35 U.S.C. § 112 as containing subject matter that was not described in the specification in such a way as to enable one skilled in the art to make and/or use the invention. The Examiner noted that the only corn plants taught in the specification that contain the elements recited in the pending claims are event DAS59122 plants and that a deposit of the DAS59122

126

plants was necessary to enable the pending claims. The Examiner stated that if a deposit of DAS59122 seeds is made under the Budapest Treaty, then an affidavit or declaration by Corteva, or a statement by an attorney of record, stating that the seeds "will be irrevocably and without restriction or condition released to the public upon the issuance of a patent would satisfy the deposit requirement made herein." The Examiner further stated that if Corteva had not made a deposit under the Budapest Treaty, then in order to certify that the deposit meets the requirements of 37 C.F.R. § 1.801-1.809, Corteva could provide assurance of compliance by an affidavit or declaration or by a statement by an attorney of record showing that, among other things, "all restrictions upon availability to the public will be irrevocably removed upon granting of the patent." July 9, 2010 Final Rejection at 2-4.

118.    In an August 20, 2010 response to the Final Rejection, Corteva stated that "[u]pon allowance, it will deposit seeds comprising event DAS59122 under 37 U.S.C. § 1.804 and will amend the specification to add identifying information to the specification. Corteva stated that it "provides assurance that . . . all restriction upon availability to the public will be irrevocably removed upon granting of the patent." August 20, 2010 Remarks at 5-6. The Examiner issued a Notice of Allowance on January 10, 2011 in reliance on Corteva's assurances. After the Notice of Allowance, Corteva amended the specification to provide identifying information as to patent deposit PTA-11384 and to reflect the assurances it provided to the Examiner in its August 20, 2010 response to the July 9, 2010 Final Rejection.

119.    Claim 1 of the '246 Patent and all dependent claims thereto are invalid under 35 U.S.C. § 112 for lack of enablement. Claim 1 claims a corn plant comprising in its genome a DNA construct "linked to at least one flanking region . . . ." Claim 1 is not limited to the specific insertion site embodied in patent deposit PTA-11384 of the DAS59122 maize event. Insertion

sites other than that embodied in deposit PTA-11384 are not enabled by the deposit of DAS59122 seed.

120.   In this lawsuit, Corteva seeks to enforce, after issuance of the '246 Patent, restrictions on the availability to the public of samples of soybean seed comprising the DAS59122 event deposited with ATCC.

121.   Corteva seeks, as a purported third-party beneficiary, to enforce alleged restrictions on the alleged commercial use or transfer of samples of patented deposited seed contained in ATCC's MTA with Inari.  Under Corteva's interpretation of the MTA, ATCC is not authorized to furnish samples of patent deposited seed comprising the DAS59122 event to any member of the public for any purpose other than non-commercial research.   Corteva's position is that a commercial entity cannot qualify as conducting non-commercial research. Corteva's actions effectively prohibit public access to the entirety of the '246 Patent's written description, which includes the patent seed deposit.

122.   Corteva also contends that any attempt by a member of the public outside the United States to access samples of the patented seeds, for any purposes, infringes the '246 Patent where phytosanitary testing of the seeds is required by the recipient country's government to export the seeds outside the United States, because such phytosanitary testing constitutes an infringing use of the invention claimed by the '246 Patent.  Corteva also asserts that because the '246 Patent claims a plant grown from a seed, export of the patented deposited seed is the export of a component of the '246 Patent invention and thus patent infringement under 35 U.S.C. § 271(f)(2).  Corteva's assertion of patent infringement effectively bars any member of the public, especially those located outside the United States, from accessing the written description of the invention claimed in the '246 Patent.  Failure by Corteva to make the patented soybean seed

comprising the DAS59122 event available to the public without restriction after issuance of the '246 Patent, including without restriction based on the geographical location of the public, renders the '246 Patent invalid under 35 U.S.C. § 112 as a result of Corteva's breach of its promise to make the patent deposit PTA-11384 available to the public without restriction on patent grant.

123.    Inari is entitled to a declaratory judgment that the claims of the '246 Patent are invalid pursuant to 28 U.S.C. §§ 2201 and 2202.

124.    A declaration is necessary and appropriate to establish that the claims of the '246 Patent are invalid.

## COUNT III

### Declaration of Invalidity of the '522 Patent

125.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 124 of the Counterclaims above.

126.    The claims of the '522 Patent are invalid for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 100 et seq., including but not limited to §§ 103 and 112.

127.    During prosecution, the Examiner rejected pending claim 89, among others, under 35 U.S.C. § 103 as obvious over U.S. Patent No. 5,608,147 ("Kaphammer") in view of Localization and Characterization of Two Novel Genes Encoding Stereospecific Dioxygenases Catalyzing 2(2,4-Dichlorophenoxy) propionate Cleavage in Delftia acidovorans MC1, 70(9) APPL ENVIRON MICRIOBIOL 5357-5365 (September 2004) ("Schleinitz") and U.S. Patent No. 7,205,561 ("Pallett").  07-14-2011 Non-Final Rejection at 7-8.  The Examiner explained that Kaphammer teaches a plant cell comprising a polynucleotide that encodes a protein having aryloxyalkanoate dioxygenase activity, resistance to 2,4-D, a plant regenerated therefrom, an

isolated polynucleotide having aryloxyalkanoate dioxygenase activity, transforming a soybean cell, a method of controlling weeds by applying 2,4-D herbicide to a crop field, and that a transgene which confers resistance to glyphosate can also be introduced into the plant cell. *Id.* Schleinitz teaches an isolated polynucleotide comprising instant SEQ ID NO: 1, which would encode a protein naturally having aryloxyalkanoate dioxygenase activity. *Id.* at 8. Pallett teaches introducing polynucleotides to a transformed plant cell that renders said plant cell resistant to multiple herbicides including glyphosate and glufosinate. *Id.* As a result, the Examiner found that it would have been obvious to a person of skill to modify the teachings of Kaphammer to introduce a polynucleotide from Schleinitz in addition to a polynucleotide encoding resistance to glyphosate and glufosinate as suggested by Pallett with a reasonable expectation of success. *Id.* at 8-9.

128.    In response to the non-final rejection, Corteva amended pending claim 89 to require that the encoded protein have at least 95% amino acid sequence identity with a sequence selected from the group consisting of SEQ ID NO:2 and SEQ ID NO:4. 10-14-2011 Response to Non-Final Rejection at 3. In its remarks, Corteva first argued that a person of skill would not have had a reasonable expectation of success to achieve the subject matter of claim 89 because AAD-12 was selected from "upwards of 100 homologous protein sequences at varying levels" of amino acid identity to tfdA, which is a protein that confers resistance to 2,4-D. *Id*. at 6-7.

129.    Corteva then argued that AAD-12 demonstrated surprising and unexpected results. First, it argued that plants transformed with a plant-optimized variant of AAD-12 named AAD-12(v1), which Corteva characterized as having "very low identity" to tfdA at 31% amino acid identity, were more resistant to 2,4-D than plants transformed to express proteins having 44% amino acid identity to tfdA. *Id.* Second, it argued that it was surprising and unexpected for AAD-

12 to have substrate specificity for two distinct herbicide classes: 2,4-D and pyridyloxyacetate herbicides. *Id.* at 6-8.

130. The Examiner relied upon the amendments to the claims and statements of unexpected results as directed to the claims to withdraw the rejection under 35 U.S.C. § 103. March 27, 2012 Final Rejection at 2. Pending claim 89 issued as claim 1 on October 9, 2012.

131. Issued claim 1 of the '522 Patent is overly broad and functionally defined. Further, the genus of issued claim 1, which includes amino acids with at least 95% amino acid sequence identity with a sequence selected from the group consisting of SEQ ID NO:2 and SEQ ID NO:4 encompasses $2.2 \times 10^{41}$ variants. Even when narrowed to those sequences starting with methionine and including five fixed motifs, the genus still encompasses $1.6 \times 10^{41}$ variants. However, the specification discloses only two species-and tests only one-that meets the structural requirements of the claims and possess the required functional features. Given the unpredictable nature of protein folding and structure-function correlation, the minimal disclosure of the '522 Patent's two species with at least 95% sequence identity fails to provide a representative number of species for the claimed genus. As such, the specification does not sufficiently show that the inventor was in possession of the claimed genus as of the filing date.

132. Because the specification for the '522 Patent does not disclose a sufficient number of species compared to the universe of possible variants, the specification also fails to enable a person of skill to make and use the full scope of the claimed invention without undue experimentation.

133. In addition, all issued claims of the '522 are invalid as obvious. AAD-12's resistance against two distinct herbicides had already been known and thus neither surprising nor unexpected. Westendorf et al reported in 2003 that a dioxygenase isolated and purified from

*Delftia acidovorans* MC1, the same bacterium from which AAD-12 is isolated, cleaved both phenoxypropionate herbicides and phenoxyacetate herbicides.

134.    Further, despite Corteva's representation that AAD-12 confers resistance against pyridyloxyacetate herbicides such as triclopyr and fluroxypyr, the examples disclosed in the '522 Patent show that plants transformed with AAD-12 exhibit low resistance against triclopyr and fluroxypyr.  For instance, in a field level test, fluroxypyr at 280 g ae/ha caused 11% visual injury to the wild-type corn at 14 DAT while it caused 8% visual injury to AAD-12 events at 5 DAT. '522 Patent at 64:8-11.  Triclopyr used at twice the normal field use rate (840 g ae/ha) caused 31% visual injury to the control group at 14 DAT, while it caused 3% injury at 14 DAT.  *Id.* at 64:4-8. In contrast, 2,4-D caused 0% visual damage to AAD-12-containing events at double and quadruple normal field use rates (1120 g ae/ha, 2240 g ae/ha, respectively) and 1% visual injury at eight times the normal field use rate (4480 g ae/ha) while it caused 44% visual injury to the control group at 4480 g ae/ha.  *Id.* at 63:26-64:4. Similarly, AAD-12 showed low activity against triclopyr and fluroxypyr in protecting tobacco plants, with triclopyr causing and average of 8% injury to one tobacco AAD-12 event at 1120 g ae/ha, and fluroxypyr causing an average of 18% injury to the same event at 560 g ae/ha.  *Id.* at Table 21.  In contrast, no injury was observed at quadruple the field rate for 2,4-D.  *Id.*  This shows that AAD-12 does not provide sufficient resistance against pyridyloxyacetate herbicides to support the claim that it confers resistance against both 2,4-D and pyridyloxyacetate herbicides.   As a result, AAD-12 does not demonstrate a surprising and unexpected result that overcomes the rejection under 35 U.S.C. § 103 from the Non-Final Rejection.

135.    In fact, Corteva explicitly prohibits growers of seeds containing the AAD-12 gene from treating the plants with any pyridyloxyacetate herbicides.  This further suggests that AAD-

12 does not confer to plants adequate resistance against pyridyloxyacetate herbicides such that it demonstrates a surprising and unexpected result that overcomes the rejection under 35 U.S.C. § 103 from the Non-Final Rejection.

136.    Inari is entitled to a declaratory judgment that the claims of the '522 Patent are invalid pursuant to 28 U.S.C. §§ 2201 and 2202.

137.    A declaration is necessary and appropriate to establish that the claims of the '522 Patent are invalid.

## COUNT IV

### Declaration of Invalidity of the '363 Patent

138.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 137 of the Counterclaims above.

139.    The claims of the '363 Patent are invalid for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 100 et seq., including but not limited to § 112.

140.    In this lawsuit, Corteva seeks to enforce, after issuance of the '363 Patent, restrictions on the availability to the public of samples of soybean seed comprising the DAS81419 event deposited with ATCC.

141.    During prosecution, the Examiner rejected pending claim 10 under 35 U.S.C. § 112(a) for failing to meet the deposit requirement for biological material.  The Examiner explained that "[t]he claim is directed to novel plants" and that a deposit of seeds of the plant is required if the claimed plants were not "obtainable by a repeatable method set forth in the specification or otherwise [] readily available to the public."  07-10-2013 Non-Final Rejection at

14. It was noted that, while Corteva has deposited the plants with the ATCC under accession number PTA-12006, there was no affirmative statement as to irrevocable public availability. *Id.*

142. In response to the non-final rejection, Corteva submitted a certificate of deposit corresponding to PTA-12006 and a Budapest Treaty declaration in which it stated "that all restrictions upon public access to the deposit (except those restrictions permitted by 37 C.F.R. § 1.808(b)) will be irrevocably removed upon the grant of a U.S. patent on the '177 application, and the deposit will be replaced if viable samples cannot be dispensed by the depository." 10-10-2013 Miscellaneous Incoming Letter at 2. The Examiner subsequently allowed pending claim 10 along with other claims. 11-05-2023 Notice of Allowance at 3.

143. However, Corteva now attempts to renege on the representations it made in the Budapest Treaty declaration regarding irrevocably removing all restrictions upon public access to the deposit upon the grant of the relevant patent. By restricting the public from accessing the deposit, Corteva has failed to satisfy the deposit requirement for the '363 Patent and the '363 Patent is invalid under 35 U.S.C. § 112(a).

144. Corteva seeks, as a purported third-party beneficiary, to enforce alleged restrictions on the alleged commercial use or transfer of samples of patented deposited seed contained in ATCC's MTA with Inari. Under Corteva's interpretation of the MTA, ATCC is not authorized to furnish samples of patent deposited seed comprising the DAS81419 event to any member of the public for any purpose other than non-commercial research. Upon information and belief, ATCC has informed Corteva that its interpretation of the MTA is incorrect. Corteva's position is that a commercial entity cannot qualify as conducting non-commercial research. Corteva's actions effectively prohibit public access to the entirety of the '363 Patent's written description, which includes the patent seed deposit.

145.    Corteva also contends that any attempt by a member of the public outside the United States to access samples of the patented seeds, for any purposes, infringes the '363 Patent where phytosanitary testing of the seeds is required by the recipient country's government to export the seeds outside the United States, because such phytosanitary testing constitutes an infringing use of the invention claimed by the '363 Patent.  Corteva also asserts that because the '363 Patent claims a plant grown from a seed, export of the patented deposited seed is the export of a component of the '363 Patent invention and thus patent infringement under 35 U.S.C. § 271(f)(2).  Corteva's assertion of patent infringement effectively bars any member of the public, especially those located outside the United States, from accessing the written description of the invention claimed in the '363 Patent.  Failure by Corteva to make the patented soybean seed comprising the DAS81419 event available to the public without restriction after issuance of the '363 Patent, including without restriction based on the geographical location of the public, renders the '363 Patent invalid under 35 U.S.C. § 112 and unenforceable as a result of Corteva's breach of its promise to make the patent deposit ATCC PTA-12006 available to the public without restriction on patent grant.

146.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to the validity of the claims of the '363 Patent, based on Corteva's allegations in the SAC that Inari has infringed or will infringe the '363 Patent.

147.    Inari is entitled to a declaratory judgment that the claims of the '363 Patent are invalid pursuant to 28 U.S.C. §§ 2201 and 2202.

148.    A declaration is necessary and appropriate to establish that the claims of the '363 Patent are invalid.

## COUNT V

### Declaration of Invalidity of the '441 Patent

149. Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 148 of the Counterclaims above.

150. The claims of the '441 Patent are invalid for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 100 et seq., including but not limited to § 112.

151. In this lawsuit, Corteva seeks to enforce, after issuance of the '441 Patent, restrictions on the availability to the public of samples of soybean seed comprising the DAS81419 event deposited with ATCC under the terms of the Budapest Treaty.

152. Corteva seeks, as a purported third-party beneficiary, to enforce alleged restrictions on the alleged commercial use or transfer of samples of patented deposited seed contained in ATCC's MTA with Inari. Under Corteva's interpretation of the MTA, ATCC is not authorized to furnish samples of patent deposited seed comprising the DAS81419 event to any member of the public for any purpose other than non-commercial research. Upon information and belief, ATCC has informed Corteva that its interpretation of the MTA is incorrect. Corteva's position is that a commercial entity cannot qualify as conducting non-commercial research. Corteva's actions effectively prohibit public access to the entirety of the '441 Patent's written description, which includes the patent seed deposit.

153. Corteva also contends that any attempt by a member of the public outside the United States to access samples of the patented seeds, for any purposes, infringes the '441 Patent where phytosanitary testing of the seeds is required by the recipient country's government to export the seeds outside the United States, because such phytosanitary testing constitutes an

infringing use of the invention claimed by the '441 Patent. Corteva also asserts that because the '441 Patent claims a plant grown from a seed, export of the patented deposited seed is the export of a component of the '441 Patent invention and thus patent infringement under 35 U.S.C. § 271(f)(2). Corteva's assertion of patent infringement effectively bars any member of the public, especially those located outside the United States, from accessing the written description of the invention claimed in the '441 Patent. Failure by Corteva to make the patented soybean seed comprising the DAS81419 event available to the public without restriction after issuance of the '441 Patent, including without restriction based on the geographical location of the public, renders the '441 Patent invalid under 35 U.S.C. § 112 because of Corteva's breach of its promise to make the patent deposit ATCC PTA-12006 available to the public without restriction on patent grant.

154. During prosecution of the '441 Patent, the Examiner rejected pending claim 2 under 35 U.S.C. § 112(a) for failing to meet the deposit requirement for biological material. 09-08-2016 Non-Final Rejection at 9-10. Claim 2 was originally directed to "[a] soybean plant, seed, or other part of said plant comprising event [DAS81419] as present in seed deposited with the American Type Culture Collection under Accession No. PTA-12006." 12-08-2016 Response to Non-Final Rejection at 5. The Examiner explained that "[t]he claim is directed to novel plants" and that a deposit of soybean seeds comprising event DAS81419 is required if the claimed seed were not obtainable by a repeatable method set forth in the specification or are otherwise readily available to the public. 09-08-2016 Non-Final Rejection at 9. The Examiner then noted that Corteva's statement regarding the deposit with the ATCC lacked an affirmative statement as to the availability to the public of the deposit without restriction and provided instructions for satisfying the deposit requirement, for which a statement of public availability without restriction was necessary. *Id*. at 9-10.

155.    In response to the non-final rejection, Corteva amended pending claim 2 to recite "[a] soybean plant, seed, or other part of said plant comprising the polynucleotide of claim 1." 12-08-2016 Response to Non-Final Rejection at 9. The Examiner allowed claim 2 as amended. 03-07-2017 Notice of Allowance at 3. Claim 1 of the '441 Patent claims the polynucleotide comprising SEQ ID NO: 14, which is the DAS81419 event. Because a person of skill in the art would not, without undue experimentation, be able to make or isolate a soybean plant comprising DAS81419 without access to patent deposit PTA-12006, the PTA-12006 deposit is necessary to enable the patent and satisfy the written description requirement under 35 U.S.C. § 112.

156.    The '441 Patent is invalid because (i) before issuance, Corteva did not provide its assurance that, upon issuance of the patent, PTA-12006 would be available to the public without restriction even though PTA-12006 is identified in the specification as part of the invention disclosure, and (ii) through this lawsuit, Corteva has taken steps to restrict the public's access to PTA-12006 after patent issuance.

157.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to the validity of the claims of the '441 Patent, based on Corteva's allegations in the SAC that Inari has infringed or will infringe the '441 Patent.

158.    Inari is entitled to a declaratory judgment that the claims of the '441 Patent are invalid pursuant to 28 U.S.C. §§ 2201 and 2202.

159.    A declaration is necessary and appropriate to establish that the claims of the '441 Patent are invalid.

## COUNT VI

### Declaration of Noninfringement of the '434, '246, '522, '363 and '441 Patents

160.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 159 of the Counterclaims above.

161.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to whether Inari has infringed any valid or enforceable claim of the '434, '246, '522, '363 or '441 Patents either directly or indirectly, and either literally or under the doctrine of equivalents.

162.    Inari does not make, use, sell or offer to sell the subject matter claimed by the '434, '246, '522, '363 or '441 Patents in the United States and therefore does not infringe any valid or enforceable claim(s) of the '434, '246, '522, '363 or '441 Patents directly or indirectly, literally or under the doctrine of equivalents.

163.    Corteva contends that Inari infringed the '434, '246, '522, '363 or '441 Patents by testing patent deposit seeds comprising the patented events or gene for pathogens because phytosanitary testing comprises an infringing use of the invention under 35 U.S.C. § 271(a).  It is not.  The phytosanitary testing of the patent deposit seeds at issue performed by Iowa State University as instructed by the USDA here involved grinding the seeds, soaking them in a sample extraction buffer, and applying an antibody specific for a target pathogen to a subsample of the seed extract to detect pathogen presence.  Such testing does not involve an infringing use of the patented invention because it does not put the claimed invention into action or service or convey to the alleged user any benefit from the invention.  To the contrary, phytosanitary testing entailed the *destruction* of the patented invention and in any event does not test the invention and does not

perform any patented test method but rather tests for the presence of pathogens on the seeds.  The seeds that were subject to phytosanitary testing were destroyed; the remaining seeds that were exported were not subjected to phytosanitary testing, and neither the destruction nor the mere exportation of a patented invention is a use of the invention under 35 U.S.C. § 271(a).  Nor did Inari itself perform, directly or indirectly, any allegedly infringing phytosanitary testing of the patent deposit seeds.  The allegedly infringing testing was performed by Iowa State University at the direction of the USDA.

164.    Corteva contends that Inari Belgium's export of the patent deposit seeds to Belgium infringes the '434, '246, '522, '363 and '441 Patents under 35 U.S.C. § 271(f)(2).  It does not.  It is an infringement of Section 271(f)(2) to supply or cause to supply a "*component*" of a patented invention from the United States knowing that the component will be combined outside of the United States in a way that would infringe a U.S. patent if such combination occurred in the United States.  The exported patent deposit seeds are not each a "component" of the invention claimed by the '434, '246, '522, '363 and '441 Patents.  They are the patented invention itself.  Water, soil, air and sun are not components of any claim of the '434, '246, '522, '363 or '441 Patent.  Nor, as Corteva contends, is combining the seeds with water, soil, air and sun abroad to grow the plant of the variety so its DNA can be sequenced a "combination" that would infringe the patents if it were to occur in the United States because growing the plant to extract and sequence its DNA from the seeds deposited to satisfy 35 U.S.C. § 112 is akin to reading the written disclosure of the patent and not an act of infringement, as Corteva has admitted in these proceedings.[24]

---

[24] *See* Corteva's Responses and Objections to Defendants' First Requests for Admission (1-3), August 5, 2024, at 7 ("Corteva admits that it regards its review of genetic marker information as akin to reading the specification of a patent and that the patent infringement allegations made by Corteva in this case against Inari are not premised on Defendants' review of genetic marker profile information.").

165.    Corteva is estopped from alleging infringement by Inari in obtaining and exporting seeds from the patent deposit for the '434, '246, '363 and '441 Patents.  Inari reasonably relied upon Corteva's representations in the '434, '246, '363 and '441 Patents and their prosecution history that the patent deposit seeds would be available to the public without restriction upon patent grant.

166.    Inari did not induce ATCC to infringe the '434, '246, '522, '363 or '441 Patent under 35 U.S.C. § 271(b).  ATCC did not directly infringe the '434, '246, '522, '363 or '441 Patents.  The 2019 MTA expressly provides that patent deposits are governed by the terms of the Budapest Treaty and U.S. patent regulations, and if any MTA restrictions conflict with the treaty or regulations, the treaty or regulation govern.  Under the governing law of the MTA, ATCC was both permitted and required to furnish patented seeds to Inari without restriction.  Corteva expressly agreed in its deposit agreements with ATCC, including its deposit agreements for PTA-11506 relating to DP4114, for PTA-11384 relating to DAS59122, for PTA-11336 relating to DAS44406, and PTA-12006 relating to DAS81419, that, upon issuance of the patent, ATCC was authorized by Corteva to furnish to the public without restriction samples of its patent deposit seeds.

167.    Inari is under a reasonable apprehension of suit that Corteva may or will assert against Inari claims of infringement under '434, '246, '522, '363 or '441 Patents for the modified events claimed in U.S. Patent No. 11,773,397, U.S. Patent No. 11,214,811 and U.S. Patent No. 11,814,630, issued to Inari, or Inari's U.S. Patent Application No. 17/302,110, if such modified events were to be made , used offered for sale, or sold in or imported to the United States (they are not).  The modified events do not infringe any of the '434, '246, '522, '363 or '441

Patents because the modified events do not meet each and every limitation of at least one claim of the '434, '246, '522, '363 or '441 Patents.

168.    Inari is entitled to a declaratory judgment that Inari has not infringed any valid and enforceable claim(s) of the '434, '246, '522, '363 or '441 Patents pursuant to 28 U.S.C. §§ 2201 and 2202.

169.    A declaration of non-infringement is necessary and appropriate to establish the rights and obligations of each party.

## COUNT VII

### Declaration of Invalidity of the '378 Patent

170.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 169 of the Counterclaims above.

171.    The '378 Patent, which claims the TC1507 event, is invalid under 35 U.S.C. § 112 for lack of written description and enablement.  During prosecution of the European counterpart to the '378 Patent, Corteva admitted to the European Patent Office that:

> [A] skilled person would need physical access to TC1507 germplasm, or other suitable genetic material derived from the plant, to reproduce the event.  This is because even if the juncture sequences of the event were known (which they are not) the same event could not routinely be obtained again by transformation.  Reproducing the event in the absence of any physical sample would be almost impossible.[25]

172.    Despite this admission, Corteva never made a patent deposit of samples of seed containing the TC1507 event to comply with 35 U.S.C. § 112.  The '378 Patent is, therefore, invalid under Section 112.

---

[25] August 7, 2014 Written Submission in Preparation to/during Oral Proceedings, EP 04751097.9, at 3.

173.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to the validity and enforceability of the claims of the '378 Patent, based on Corteva's allegations in the SAC that Inari has violated Massachusetts General Laws Chapter 93A and common law conversion by acquiring seeds containing TC1507 and exporting them to Belgium for alleged commercial purposes, which are predicated on the allegation that the '378 Patent is valid and enforceable and provides Corteva with a proprietary interest in seeds containing the TC1507 event.  Inari is under a reasonable apprehension of suit that Corteva may or will assert against Inari claims of infringement under the '378 Patent for alleged past damages.

174.    Inari is entitled to a declaratory judgment that the claims of the '378 Patent is invalid pursuant to 28 U.S.C. §§ 2201 and 2202.

175.    A declaration is necessary and appropriate to establish that the claims of the '378 Patent is invalid.

## COUNT VIII

### Declaration of Unenforceability of Utility Patents Claiming the Plant Varieties Identified in Exhibit A of the SAC

176.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 175 of the Counterclaims above.

177.    Corteva's unexpired utility patents that claim the plant varieties identified in Exhibit A of the SAC are unenforceable because Corteva seeks to impose restrictions upon the availability to the public of samples of patent deposits made to satisfy 35 U.S.C. § 112 of the claimed varieties including through anticompetitive conduct comprising: sham litigation under PVP Certificates that claim the same varieties to restrict export of the patent deposit samples; sham litigation as a purported third party beneficiary of ATCC MTAs after expressly authorizing ATCC

to provide unrestricted public access to the samples upon patent grant; an attempt to coerce ATCC to conspire to impose illegal restrictions on access by foreign members of the public, and by Inari in particular, to samples from patent deposits after patent grant; and efforts to solicit competitor oligopolists to engage in similar concerted anticompetitive activity against Inari.

178.     Exhibit 1 to Inari's Answer, Affirmative Defenses and Counterclaims to the Second Amended Complaint identifies the unasserted, unexpired utility patents (the "Exhibit 1 Unasserted Utility Patents") that claim the same plant varieties as PVP Certificates identified in SAC Exhibit A that Corteva asserts in this action.  For each of the Exhibit 1 Unasserted Utility Patents, Corteva deposited with ATCC seed samples of the variety and represented to the public and the USPTO that samples of the claimed varieties would be available to the public without restriction upon issuance of the patent to satisfy the requirements of 35 U.S.C. § 112.  The USPTO relied upon this representation and promise by Corteva in issuing the patents.  Exhibit 1 identifies the ATCC accession number of the patent deposit Corteva made for each of the Unasserted Utility Patents to satisfy 35 U.S.C. § 112.  Under *J.E.M. Ag Supply*, 534 U.S. at 142, patent deposits of seeds of the varieties are required to satisfy the written description and enablement requirements of 35 U.S.C. § 112 as further evidenced by the requirement of a deposit to obtain PVP Certificates for the same varieties.  That the patented inventions were not available to a person of ordinary skill in the art without undue experimentation is evidenced by Corteva's deposit of samples to satisfy the requirements of 35 U.S.C. § 112 as required by the USPTO during prosecution of the patents.

179.     In this lawsuit, Corteva contends that Inari Belgium's access to the patent deposits identified in Exhibit 1 infringes Corteva's export rights under PVP Certificates and breaches purported restrictions under an ATCC MTA.  In proceedings before the PTAB, Corteva has unequivocally stated to the USPTO and the public that patent deposits of seeds are available to the

public without restriction for the public to evaluate the written description of the subject patents. Upon information and belief, Corteva's attempts before instituting this lawsuit to coerce the ATCC to restrict access to the foreign public were rebuffed by the ATCC as contrary to law and the terms of the ATCC MTAs.  Corteva engages in the same type of conduct that it alleges is infringement by Inari, by accessing and evaluating competitor's patent deposits.  Upon information and belief, Corteva knew its claims in this lawsuit were baseless and it brought this suit not based on its merits but for the improper purpose of interfering with Inari's business and harming competition.

180.    By seeking to restrict access to the patent deposits for the Exhibit 1 Unasserted Utility Patents by foreign members of the public such as Inari Belgium, Corteva has violated 35 U.S.C. § 112, 37 C.F.R. § 1.808 and its own promises to the USPTO and the public that samples of the varieties would be made available to the public without restriction upon issuance of the Exhibit 1 Unasserted Utility Patents.  In representing to the USPTO during prosecution of the Exhibit 1 Unasserted Utility Patents that all restrictions on the availability to the public *would be irrevocably removed upon patent issuance*, Corteva made a promise to the USPTO and the public that is *ongoing* after patent issuance and whose continued performance by Corteva is a material condition of the validity of the Exhibit 1 Unasserted Utility Patents.  Corteva's conduct through this lawsuit knowingly violates the promise Corteva made to the USPTO upon which the USPTO relied in issuing the Exhibit 1 Unasserted Utility Patents and renders those patents unenforceable for patent misuse and unclean hands.  In its original complaint in this action, Corteva admitted that when it made deposits of seeds with ATCC to obtain patents, it did so with the *expectation* that ATCC would *restrict public access* to the seed deposit despite its promise to the USPTO to the contrary on which the USPTO relied to issue the patents.  *See* Complaint, September 27, 2023 (D.I. 1) at ¶ 62 ("When depositing seeds with ATCC for patent purposes, Corteva had every

expectation that ATCC would only allow the public to access those seeds *exclusively for research purposes*.") (emphasis in original).

181.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to the enforceability of the Exhibit 1 Unasserted Utility Patents based on Corteva's allegations in the SAC that Inari has infringed or will infringe the 248 PVP Certificates asserted in this action (the "Asserted PVP Certificates"), a subset of which claim the same plant varieties as the Exhibit 1 Unasserted Utility Patents.  Corteva's assertion of infringement claims against Inari under the Asserted PVP Certificates as to the seeds Inari obtained from patent deposits, and its assertion of infringement claims under the Asserted Utility Patents in respect of seeds Inari obtained from patent deposits that are not subject to a PVP Certificate, create a reasonable apprehension that if Inari prevails on its defense that it does not infringe the Asserted PVP Certificates, as Inari expects to do, Corteva will assert claims against Inari for infringement of the Exhibit 1 Unasserted Utility Patents covering many of the same varieties.  Inari's counterclaim of unenforceability as to the Exhibit 1 Unasserted Utility Patents arises out of the same transaction and events that are at issue in Corteva's claim that Inari infringes the Asserted PVP Certificates, which makes Count VIII a compulsory counterclaim.

182.    Inari is entitled to a declaratory judgment that the Exhibit 1 Unasserted Utility Patents are unenforceable pursuant to 28 U.S.C. §§ 2201 and 2202.

183.    A declaration is necessary and appropriate to establish that the Unasserted Utility Patents are unenforceable.

## COUNT IX

### Declaration of Unenforceability of
### the Asserted Utility Patents

184.    Inari hereby incorporates by reference all of the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 183 of the Counterclaims above.

185.    Corteva comes to this Court with unclean hands by seeking to impose unlawful restrictions upon the availability to the public of samples of patent deposits made to satisfy 35 U.S.C. § 112, engaging in anticompetitive conduct comprising: sham litigation under PVP Certificates that claim the same varieties to restrict export of the patent deposit samples; sham litigation as a purported third party beneficiary of ATCC MTAs after expressly authorizing ATCC to provide unrestricted public access to the samples upon patent grant; attempting to coerce ATCC to impose illegal restrictions on access by foreign members of the public, and by Inari in particular, to samples from patent deposits after patent grant; engaging in efforts to solicit competitor oligopolists to engage in similar anticompetitive activity against Inari; and disparaging Inari as a thief of intellectual property.

186.    Discovery taken by Corteva before it filed the SAC establishes that Corteva's claims of infringement of the Asserted Utility Patents by Inari are without merit.  Corteva's continued prosecution of its claims against Inari constitutes sham litigation for the improper purpose of injuring Inari and harming competition and renders the Asserted Utility Patents unenforceable.

187.    As explained above in connection with Count VI, Corteva's claim that Inari directly infringed the Asserted Utility Patents because the patent deposit seeds claimed by the patents were subjected to phytosanitary testing is without merit because the phytosanitary testing did not involve

an infringing "use" of the seeds.  The phytosanitary testing was not conducted by Inari but was done by Iowa State University under instructions from the USDA.  The seeds that were subject to phytosanitary testing were destroyed through the testing, precluding Inari from obtaining any benefit from the claimed invention embodied in those seeds.  Upon information and belief, Corteva knew or should have known before it filed the SAC that its claims of direct infringement are without merit because Corteva is an institution accredited and approved by USDA to perform phytosanitary testing and issue phytosanitary certificates for purposes of export.  By continuing to assert in the SAC claims against Inari of direct patent infringement based on phytosanitary testing, Corteva is knowingly prosecuting an objectively baseless claim against Inari for the ulterior purpose of causing Inari economic injury and harming competition.

188.    Corteva's claims that Inari infringes the Asserted Utility Patents under 35 U.S.C. § 271(f)(2) is objectively baseless because the patent deposit seeds that were exported outside the United States are not "components" of a patented invention within the meaning of Section 271(f)(2); they comprise the patented invention itself.  Corteva knows that its claim of infringement under Section 271(f)(2) is without merit because it has admitted that combining patent deposit seeds with water, air, nutrients and physical support to grow a plant and to sequence the DNA of the plant is not an infringement of the patent covering the seeds when done in the United States.  If such conduct is not infringing when conducted in the United States, it cannot be infringing under Section 271(f)(2) when conducted outside the United States.  By continuing to assert in the SAC claims against Inari of direct patent infringement under 35 U.S.C. § 271(f)(2), Corteva is knowingly prosecuting an objectively baseless claim against Inari for the ulterior purpose of causing Inari economic injury and harming competition.

189.     Corteva's claims that Inari induced ATCC to infringe the Asserted Utility Patents by inducing ATCC to allow Inari to purchase samples of seeds deposited to obtain the Asserted Utility Patents is objectively baseless because Corteva expressly authorized ATCC to furnish the seeds to members of the public without restriction upon patent issuance.  Corteva knows that its claims of induced infringement are objectively baseless because it itself authorized the purchases of patent deposit samples through which Inari allegedly induced ATCC's infringement.  By continuing to assert in the SAC claims against Inari of inducing patent infringement, Corteva is knowingly prosecuting an objectively baseless claim against Inari for the ulterior purpose of causing Inari economic injury and harming competition.

190.     Corteva's prosecution against Inari of objectively baseless claims of infringement under the Asserted Utility Patents after discovery has established that Corteva's claims have no merit renders the Asserted Utility Patents unenforceable for sham litigation, unclean hands and misuse of intellectual property rights.

191.     An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to whether Inari has infringed any enforceable claim of the Asserted Utility Patents either directly or indirectly.

192.     Inari is entitled to a declaratory judgment that the Asserted Utility Patents are unenforceable pursuant to 28 U.S.C. §§ 2201 and 2202.

193.     A declaration is necessary and appropriate to establish that the Asserted Utility Patents are unenforceable.

## COUNT X

### Declaration of Unenforceability of
### the Asserted PVP Certificates

194.    Inari hereby incorporates by reference all  the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 193 of the Counterclaims above.

195.    Corteva comes to this Court with unclean hands by seeking to impose unlawful restrictions upon the availability to the public of samples of patent deposits made to satisfy 35 U.S.C. § 112, engaging in anticompetitive conduct comprising: sham litigation under PVP Certificates that claim the same varieties to restrict export of the patent deposit samples; sham litigation as a purported third party beneficiary of ATCC MTAs after expressly authorizing ATCC to provide unrestricted public access to the samples upon patent grant; attempting to coerce ATCC to impose illegal restrictions on access by foreign members of the public, and by Inari in particular, to samples from patent deposits after patent grant; engaging in efforts to solicit competitor oligopolists to engage in similar anticompetitive activity against Inari; and disparaging Inari as a thief of intellectual property.

196.    Discovery to date before Corteva filed the SAC establishes that Inari has not and does not propagate the PVP certificate varieties in Exhibit A of the SAC, or offer to sell, or sell any of the varieties identified in Exhibits A and B of the SAC.

197.    Discovery taken by Corteva before it filed the SAC establishes that Corteva's claims of infringement of the Asserted PVP Certificates by Inari are without merit.  Corteva's continued prosecution of its claims against Inari constitutes sham litigation for the improper purpose of injuring Inari and harming competition and renders the Asserted PVP Certificates unenforceable.

198.    Corteva expressly authorized ATCC to furnish the patent deposit seeds to members of the public without restriction upon patent issuance.  Corteva knows its claims against Inari are objectively baseless because it itself authorized the purchases of patent deposit samples to members of the public including those outside the United States.  By continuing to assert in the SAC claims against Inari for infringement of the PVPA through the export of seeds it authorized ATCC to provide and sell, Corteva is knowingly prosecuting an objectively baseless claim against Inari for the ulterior purpose of causing Inari economic injury and harming competition.

199.    Discovery produced by Inari before Corteva filed the SAC confirms that activities of Inari with seeds of the varieties claimed by the Asserted PVP Certificates qualify for the research exemption from PVP infringement under 7 U.S.C. § 2544 because use or reproduction of the protected varieties to obtain DNA sequence information of the varieties was for the purpose of bona fide research and breeding, i.e., to evaluate genes and traits and to inform the design of a plant breeding program using publicly available germplasm.  Discovery also confirms that (i) the patent deposits accessed by Inari were made for each of the plant varieties at issue and ATCC was authorized by Corteva to sell seeds from those deposits to the public without restriction on patent grant, (ii) the plant varieties were sold by ATCC with the consent of the owner in the United States, and (iii) the export of the patent deposit seeds was into countries that provide plant variety protection for varieties of maize.  Having conducted extensive discovery of Inari before filing the SAC, Corteva knew or should have known at the time it filed the SAC that its claims of PVP infringement are without merit.  By continuing to assert in the SAC claims of PVP infringement against Inari, Corteva is knowingly prosecuting an objectively baseless claim against Inari for the ulterior purpose of causing Inari economic injury and harming competition.

200.    Corteva's prosecution against Inari of objectively baseless claims of infringement under the Asserted PVP Certificates after discovery has established that Corteva's claims have no merit renders the PVP Certificates unenforceable for sham litigation, unclean hands and misuse of intellectual property rights.

201.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to whether Inari has infringed any enforceable PVP Certificate.

202.    Inari is entitled to a declaratory judgment that the Asserted PVP Certificates are unenforceable pursuant to 28 U.S.C. §§ 2201 and 2202.

203.    A declaration is necessary and appropriate to establish that the Asserted PVP Certificates are unenforceable.

## COUNT XI

### Declaration of Noninfringement of the Asserted PVP Certificates

204.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 203 of the Counterclaims above.

205.    An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to whether Inari has infringed the Asserted PVP Certificates.

206.    The activities of Inari with seeds of the varieties claimed by the Asserted PVP Certificates qualify for the research exemption from PVP infringement under 7 U.S.C. § 2544 because use or reproduction of the protected varieties to obtain DNA sequence information of the varieties was for the purpose of bona fide research and breeding, i.e., to evaluate genes and traits and to inform the design of a plant breeding program using publicly available germplasm.  The sequencing was for the purpose of obtaining information for research and breeding, which qualifies

as bona fide research, and to evaluate the written description of the patents for which the seeds were deposited, which is also bona fide research.  Breeding and other bona fide research are exempt from infringement under 7 U.S.C. § 2544.  This exception is not restricted by any rights granted to the breeder, including any rights in respect of the export of propagating material like seeds.

207.   Inari obtained the seeds of the varieties covered by the Asserted PVP Certificates by acquiring them from ATCC patent seed deposits, with Corteva's consent for ATCC to furnish the seeds to members of the public without restriction after the patent grants, and exported the seeds to Belgium and Chile, which are members of the UPOV 1991 Convention and provide statutory protection to the plant genus (i.e., maize) to which the varieties belong.  Inari's export of the seeds to Belgium and Chile is not an infringement under 7 U.S.C. § 2541(d).

208.   Inari is entitled to a declaratory judgment that Inari has not infringed any valid and enforceable Asserted PVP Certificate pursuant to 28 U.S.C. §§ 2201 and 2202.

209.   A declaration of non-infringement is necessary and appropriate to establish the rights and obligations of each party.

## COUNT XII

**Declaration that Corteva Is Legally Estopped from Asserting PVP Certificates
to Bar the Export of Patent Deposit Seeds Under 7 U.S.C. § 2541(2)
and Has Waived Its Right to Do So Under 7 U.S.C. § 2483(a)(3)**

210.   Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 209 of the Counterclaims above.

211.   An actual, substantial, continuing, and justiciable controversy exists between Inari and Corteva as to whether Inari has infringed the Asserted PVP Certificates.

212.   In electing to obtain utility patents and PVP Certificates covering the very same plant varieties and making deposits of seeds of the patented varieties to satisfy 35 U.S.C. § 112,

37 C.F.R. § 1.808, Corteva is legally estopped from asserting infringement under PVP Certificates to bar foreign members of the public from accessing and exporting seeds of the patented varieties from patent deposits after the utility patents claiming the varieties issued.

213.    During prosecution of the Exhibit 1 Unasserted Utility Patents, Corteva represented that samples of the varieties claimed by the Unasserted Utility Patents would be available to the public without restriction upon patent grant and deposited samples of the claimed varieties to satisfy the requirements of 35 U.S.C. § 112.  The USPTO relied upon Corteva's representations to issue the patents.   Inari relied upon Corteva's representations of public availability without restriction to its detriment.  Corteva's representations to the USPTO and the public, upon which the USPTO and the public relied, legally estop Corteva from enforcing its PVP Certificates to prevent public access and export after patent issuance to seeds of the patented varieties that Corteva deposited to obtain the Exhibit 1 Unasserted Utility Patents.

214.    In electing to obtain utility patents and PVP Certificates covering the very same plant varieties and making deposits of seeds of the patented varieties to satisfy 35 U.S.C. § 112, 37 C.F.R. § 1.808, Corteva has waived, pursuant to 7 U.S.C. § 2483(a)(3), its right to assert infringement of PVP Certificates to bar the exportation by foreign members of the public, after issuance of the utility patents, of seeds of the protected varieties that were deposited to obtain utility patents.  Any statement by Corteva to the contrary is of no legal effect in view of Corteva's conduct in obtaining utility patents that cover the same varieties as the PVP Certificates.

215.    Inari is entitled to a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that Corteva is legally estopped from asserting and has waived its right to assert infringement of PVP Certificates to bar the exportation by foreign members of the public, after patent issuance, of seeds of the protected varieties that were deposited to obtain utility patents.

## COUNT XIII

**Declaration of Unenforceability for Patent Misuse**

216.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 215 of the Counterclaims above.

217.    Corteva has engaged in patent misuse by asserting infringement under PVP Certificates after patents claiming the very same varieties have expired.  Exhibit 2 to Inari's Answer, Affirmative Defenses and Counterclaims identifies seventeen utility patents (the "Expired Utility Patents") that had expired at the time Inari allegedly purchased ATCC patent deposit seeds of the varieties.  For example, Corteva asserts that Inari infringes PVP Certificate 200000242. Corteva obtained a utility patent on the same variety, U.S. Patent No. 6,700,041 (the "'041 Patent").  That patent expired on January 24, 2020, nearly four years before Corteva commenced this action against Inari.  In this action, Corteva asserts that Inari infringes PVP Certificate 200000242 by accessing and exporting from ATCC samples of the variety Corteva deposited to obtain the '041 Patent, which expired in January 2020 before the alleged acts of access and exportation in May 2020 on which Corteva bases its claims of infringement of PVP Certificate 200000242.

218.    Corteva obtained and enjoyed the benefit under the Patent Act of all available exclusivity under the Expired Utility Patents as to the plant varieties claimed by those patents.  The exclusivity to which Corteva is entitled is a limited one.  Once Corteva's patents expire, the public is free to use the inventions claimed in Corteva's patents.  This is fundamental to the quid pro quo at the heart of the patent bargain.  In obtaining PVP Certificates and utility patents claiming the same varieties, Corteva is legally estopped from asserting and waived its right, pursuant to 7 U.S.C.

§ 2483(a)(3), to assert infringement under the PVPA after expiration of the term of the corresponding utility patent.

219.    The PVP Certificates covering the varieties claimed by the Expired Utility Patents (the "Unenforceable PVP Certificates") do not claim different aspects of the plant varieties than those claimed by the Expired Utility Patents.    Each Unenforceable PVP Certificate and corresponding Expired Utility Patent claims the same plants and the same aspects of the plants. Corteva's efforts to enforce PVP Certificates after expiry of utility patents that claim the same plant varieties effects an improper time-wise extension of Corteva's monopoly on the plant varieties of the Expired Utility Patents and constitutes patent misuse.  Upon information and belief, Corteva intentionally delays filing its applications for PVP Certificates until months or more after filing applications for utility patents on the same plant varieties to improperly extend the period of exclusivity on those plant varieties.

220.    Corteva has also engaged in patent misuse by (i) purporting to rely on restrictions in the 2017 MTA to limit Inari USA's access to seeds Corteva deposited with ATCC to obtain patents that all had expired at the time of Inari's alleged access to the seeds, which effects an improper timewise extension on the term of the expired patents; and (ii) enforcing the '378 Patent and/or license terms under the '378 Patent in this action, which, upon information and belief, Corteva knows is invalid because it failed to make an enabling deposit of seed containing the TC1507 while admitting to the European Patent Office that such a deposit is required to enable persons of skill in the art to understand and practice the invention claimed in the patent, as explained in connection with Counterclaim Count III.

221.    Inari is entitled to a declaratory judgment that the Unenforceable PVP Certificates and the '378 Patent are unenforceable pursuant to 28 U.S.C. §§ 2201 and 2202.

222.    A declaration is necessary and appropriate to establish that the Unenforceable PVP Certificates and the '378 Patent are unenforceable.

## COUNT XIV

**Federal Unfair Competition Under Section 43(a) of the Lanham Act**

223.    Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 222 of the Counterclaims above.

224.    Corteva has, in commercial communications directed at financial analysts, the investment community and other market participants, disparaged Inari and made misrepresentations regarding the nature, characteristics and qualities of Inari's prospective commercial products, including by representing that those products will infringe Corteva's U.S. patents and that they involve the "theft" of Corteva's intellectual property rights in its patent deposited seeds. Such statements constitute "commercial advertising or promotion" under Section 43A of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), because they comprise commercial speech by an entity that is in commercial competition with Inari for the purpose of influencing market participants not to buy Inari's products or to invest in or partner with Inari.

225.    Corteva's statements to the market are in bad faith because, upon information and belief, Corteva knows or should know that its claims that Inari infringes Corteva's intellectual property are without merit and yet Corteva nonetheless has represented to the market that Inari is a thief and lacks freedom to operate in view of Corteva's intellectual property rights.

226.    Inari has been and is likely to be further damaged by Corteva's conduct including by losing prospective investment opportunities and commercial partnerships as a result of Corteva's conduct.

## COUNT XV

**Unfair Competition Under Mass. Gen. Laws Ch. 93A, Section 11**

227.    Inari hereby incorporates by reference the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 226 of the Counterclaims above.

228.    Corteva has engaged unfair methods of competition directed at Inari by, among other things, commencing objectively meritless litigation against Inari, including after taking extensive discovery of Inari that establishes the lack of merit of Corteva's claims, for the purpose of causing economic injury to Inari and hampering Inari's ability to enter the commercial corn and soy seed market, and tarnishing Inari's reputation with actual and potential investors and commercial partners by falsely depicting Inari as a thief who stole Corteva's patented seeds in press releases, news articles and other communications directed at the market.  Corteva has also engaged in deceptive trade practices by representing to the USPTO and the public to obtain patents that seeds of the patented plants would be available to the public without restriction to obtain patents and then enforcing purported restrictions on public access to its patented seeds after patent issuance to exclude lawful competition from the market.  Inari has been injured by Corteva's unfair and deceptive practices by, among other things, losing prospective investment opportunities and commercial partnerships because of Corteva's conduct and by incurring costs and expenses to defend against Corteva's objectively meritless claims against Inari.

229.    Corteva's unfair conduct occurred primarily and substantially in the Commonwealth of Massachusetts because Inari USA is based in Cambridge, Massachusetts and experienced injury in Massachusetts as a result of Corteva's unfair conduct, including economic

injuries in the form of attorney's fees and costs to defend against Corteva's claims in the lawsuit and lost investment and other commercial opportunities as a result of Corteva's conduct.

## COUNT XVI

### Delaware Common Law Abuse of Process

230.     Inari hereby incorporates by reference all the foregoing Paragraphs of Inari's Answer and Affirmative Defenses to the Second Amended Complaint and Paragraphs 1 to 229 of the Counterclaims above.

231.     Corteva has instituted against Inari litigation without regard to its merits and has committed overt acts in addition to the filing of the lawsuit, including but not limited to issuing or causing to be issued press releases and media statements that depict Inari in false and misleading ways as a thief who has stolen Corteva's patent deposit seeds and by leveraging the fact of the lawsuit to chill market acceptance of Inari's technology and offerings.  Upon information and belief, Corteva instituted and continues this lawsuit against Inari in bad faith and for the purpose of causing economic injury to Inari by harming its relationships with investors and commercial partners and driving it out of the market.

232.     Inari has been and will be injured as a result of Corteva's abuse of process including through the incurrence of attorney's fees and costs to defend this action and through the loss of economic opportunities and investments as a result of Corteva's overt acts.

### PRAYER FOR RELIEF

WHEREFORE, Inari respectfully prays that this Court enter judgment in its favor against Corteva as follows:

A.     Adjudging and decreeing that Corteva be denied all relief requested under the SAC and take nothing by its action;

B.    Declaring that the '434, '246, '522, '363 or '441 Patent are invalid and/or unenforceable;

C.    Declaring that Inari has not infringed any valid and enforceable claim of the '434, '246, '522, '363 or '441 Patents;

D.    Declaring that Corteva is estopped from asserting that the export of patent deposit seeds is an infringement of the '434, '246, '522, '363 and '441 Patents;

E.    Declaring that Inari does not infringe the PVP Certificates asserted by Corteva in the SAC;

F.    Declaring that the PVP Certificates asserted by Corteva in the SAC are unenforceable;

G.    Declaring that Corteva is legally estopped from asserting and has waived its right to assert infringement under PVP certificates to prevent foreign members of the public from accessing, after patent issuance, seeds of the varieties that were deposited to obtain utility patents on the same varieties;

H.    Declaring that the '378 Patent is invalid and/or unenforceable;

I.    Declaring that the utility patents claiming the plant varieties identified in Exhibit A of the SAC are unenforceable;

J.    Declaring that Corteva is legally estopped from asserting and has waived its right to assert infringement under PVP certificates after the expiration of the corresponding patents claiming the same varieties;

K.    Declaring that Corteva has engaged in patent and/or PVP misuse;

L.    Awarding damages for violations of the Lanham Act, Mass. Gen. Laws Ch. 93A, and Delaware abuse of process;

M.    Declaring the case exceptional under 35 U.S.C. § 285;

N.    Declaring the case exceptional under 7 U.S.C. § 2565;

O.    Awarding Inari's costs and reasonable attorney's fees; and

P.    Awarding any other such relief as it is just and proper.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Megan E. Dellinger

OF COUNSEL:

Dimitrios Drivas
Raj S. Gandesha
John P. Scheibeler
Jongtae Jason Lee
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One Barker Avenue
White Plains, NY  10601
(914) 288-0022

November 14, 2024

Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on November 14, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

  I further certify that I caused copies of the foregoing document to be served on November 14, 2024, upon the following in the manner indicated:

Chad S.C. Stover, Esquire            *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Peter Bicks, Esquire             *VIA ELECTRONIC MAIL*
Brian Raphel, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
*Attorneys for Plaintiffs*

David Gindler, Esquire            *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
Christopher Lynch, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire           *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA  90401
*Attorneys for Plaintiffs*

Carly Romanowicz, Esquire         *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
*Attorneys for Plaintiffs*

Todd Vare, Esquire                                      *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN  46204
*Attorneys for Plaintiffs*

Ronald Cahill, Esquire                                  *VIA ELECTRONIC MAIL*
Heather B. Repicky, Esquire
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA  02210
*Attorneys for Plaintiffs*

Lauren Baker, Esquire                                   *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA  30326
*Attorneys for Plaintiffs*


                                            */s/ Megan E. Dellinger*

                                    _____

                                    Megan E. Dellinger (#5739)