IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CORTEVA AGRISCIENCE LLC,** | : | **CIVIL ACTION** |
| **PIONEER HI-BRED** | : | |
| **INTERNATIONAL, INC. and** | : | |
| **AGRIGENETICS, INC.,** | : | |
| | : | |
| **v.** | : | **NO.   23-1059** |
| | : | |
| **INARI AGRICULTURE, INC., and** | : | |
| **INARI AGRICULTURE NV.** | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**[*]                                                                    **May 13, 2025**

This is our second occasion to weed through the pleadings in this case. Corteva sued Inari to try to prove that Inari misappropriated its proprietary plant technology. Corteva's pleadings tell the story of Inari's planned and comprehensive raid on Corteva's intellectual property. But now we confront Inari's countersuit, which portrays Corteva as an institutional abuser of the intellectual property system. Inari says that Corteva knew it was out of options, so it had no choice but to abandon its promises to the Patent Office to make its deposited seeds publicly available, sue Inari for doing things it was perfectly entitled to do, and poison the industry against it. Among other things, Inari aims to prove that Corteva's misconduct renders its portfolio of utility patents and plant variety protection certificates (some of which was already involved in this case and some of which was not) unenforceable. Corteva now asks us to prune back Inari's answer and counterclaims. We do, in some respects.

---

[*] Judge John Frank Murphy, of the United States District Court for the Eastern District of Pennsylvania.

## I.    Background

We covered much of the relevant background — from Corteva's perspective — in our opinion denying Inari's[1] motion to dismiss.  *See Corteva Agriscience, LLC v. Inari Agriculture, Inc.*, 743 F. Supp. 3d 603 (D. Del. 2024).  Here we have the other side of the same coin.

Despite being a year into discovery, the pleadings remain unclosed in this case.  After we denied Inari's motion to dismiss Corteva's first amended complaint, Inari filed a comprehensive answer with 28 affirmative defenses and counterclaims covering 10 counts.  DI 106.  Rather than respond, Corteva filed a second amended complaint that supplemented its PVP certificate allegations and added four more utility patents: 7,956,246, 8,283,522, 8,680,363, and 9,695,411. DI 148.  That brought the count to 232 PVP certificates and 5 utility patents.  *Id.*  Inari's response expanded proportionately, spanning 42 affirmative defenses and counterclaims stated in 16 counts.  DI 160.  Corteva then moved to dismiss 9 counts of the counterclaims and strike 7 affirmative defenses.  DI 173.  Inari's allegations cover a lot of ground, but the central theme is that Corteva's case is not only baseless, but it is also fatally hypocritical because Corteva engages in the same sort of seed acquisition as Inari.  DI 160 CC ¶¶ 1-8.[2]  We will take up the specifics on an argument-by-argument basis.

## II.    Standard of Review

Corteva's motion invokes Fed. R. Civ. P 12(b)(1), 12(b)(6), and 12(f).  For Rule 12(b)(1), we look to Inari, the counterclaim plaintiff, to demonstrate that subject matter jurisdiction exists

---

[1] When the distinction is important, we will use "Inari USA" for Inari Agriculture, Inc. and "Inari Belgium" for Inari Agriculture NV.  Otherwise, we will use "Inari."

[2] When citing to the allegations of Inari's counterclaims, we will add "CC" to the citation to distinguish from the paragraphs of the answer.

over the challenged declaratory judgment counterclaims. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). We will find jurisdiction when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). For Rule 12(b)(6), we accept Inari's allegations and consider whether they include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

And when applying Rule 12(f) to an affirmative defense, we consider whether the purported "insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986) (quotation omitted), *rev'd on other grounds*, 505 U.S. 504 (1992). When determining the fate of an affirmative defense, district courts in this Circuit for the most part apply a standard akin to Rule 12(b)(6)'s standard, but shaded by the Third Circuit's "clearly apparent" modifier — for example, courts tend to treat motions to strike as disfavored, and tend to factor in equitable and practical considerations more often than with Rule 12(b)(6). *E.g., Newborn Bros. Co., Inc. v. Albion Eng'g Co.*, 299 F.R.D. 90, 93-94 (D.N.J. 2014); *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356-57 (D. Del. 2009); *Total Containment, Inc. v. Environ Prods., Inc.*, No. 91-7911, 1992 WL 208981, *1-2 (E.D. Pa. Aug. 19, 1992).

For some affirmative defenses, the parties dispute whether we ought to apply Rule 8 or the stricter standard of Rule 9(b). The generally applicable standard of Rule 8(a)(2) requires a complainant to provide "a short and plain statement of the claim showing that the pleader is

entitled to relief," but Rule 9(b) requires that, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud[.]"  On that debate, the details of the particular affirmative defense matter, so we address the choice along with the merits, *infra*.

## III.    Analysis

We take up the issues grouped in a fashion similar to the parties' approach.

### a.    There is subject-matter jurisdiction for Inari's counterclaim counts VII and VIII and we will not decline to exercise jurisdiction.

Inari's counterclaim count VII seeks a declaration of invalidity of U.S. Patent No. 8,901,378 (the 378 patent).  DI 160 CC ¶¶ 47, 62, 86, 170-75.  Count VIII seeks a declaration of unenforceability of 231 utility patents identified in exhibit 1 to Inari's counterclaims.  *Id.* ¶¶ 176-83 (referring to DI 160-1).

Starting with count VII, the 378 patent is significant because, according to Inari, it claims Corteva's TC-1507 event.[3]  DI 160 CC ¶¶ 47, 86, 171.  The TC-1507 event, in turn, is significant because Corteva alleges that Inari wrongly acquired seeds containing TC-1507.  DI 148 ¶¶ 140, 396-411 (counts XX and XXI of the second amended complaint, which are violations of Massachusetts General Laws Chapter 93A and common law conversion, respectively).  Inari says that the justiciable connection is that Corteva's wrongful acquisition claims "are predicated on the allegation that the '378 patent is valid and enforceable and provides Corteva with a proprietary interest in seeds containing the TC1507 event."  DI 160 CC ¶ 173.

---

[3] Reminder: "The term 'event' . . . refers to the insertion of a particular transgene into a particular location in a plant chromosome. . . .  An event, in essence, is the relevant unit of technology in a transgenic plant."  *Corteva*, 743 F. Supp. 3d at 608.

Count VIII attacks 231 patents, but the significance is the same for each. Corteva's second amended complaint alleges that Inari violated Corteva's rights under 248 PVP certificates listed in exhibit A[4] to the second amended complaint. DI 148 ¶ 167 (referring to DI 148-2). Inari apparently examined the PVP certificates listed in Corteva's exhibit A and identified a Corteva utility patent corresponding to each PVP certificate. Those, among others, are listed in Inari's exhibit 1. *See* DI 160-1. Inari's counterclaim count VIII implicates just the unasserted, unexpired utility patents (which is how the number drops from 248 to 231 — we think). DI 160 CC ¶¶ 177-78.[5] Inari alleges that the 231 utility patents pose a risk to Inari because "if Inari prevails on its defense that it does not infringe the Asserted PVP Certificates, as Inari expects to do, Corteva will assert claims against Inari for infringement of the Exhibit 1 Unasserted Utility Patents covering many of the same varieties." *Id.* ¶ 181. Count VIII seeks a declaratory judgment of unenforceability rather than invalidity, but Corteva is not concerned with that distinction for purposes of its motion.

Turning to Corteva's motion, Corteva argues that both counts VII and VIII of Inari's counterclaims should be dismissed under Rule 12(b)(1) because Inari's fears lack the required immediacy and concreteness to justify the exercise of jurisdiction. We disagree. Inari correctly relies on *Vanguard Rsch., Inc. v. PEAT, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002). There, PEAT sued Vanguard for breach of contract, unfair competition, trade secret misappropriation, and the like.

---

[4] The entries in exhibit A to the second amended complaint are not numbered, but no one seems to dispute that there are 248, so that is either correct or it is immaterial.

[5] If it was not clear already, it is a little difficult to keep count and compare the parties' tables listing PVP certificates and utility patents. Fortunately, the exact numbers are not relevant to Corteva's motion and our decision, so it can be left to the parties to sort this out.

*Id.* at 1252.  PEAT's allegations centered on Vanguard's wrongful use of certain waste disposal technology.  *Id.* at 1251.  Vanguard responded with a declaratory judgment action seeking a declaration of invalidity and unenforceability of a PEAT patent on the same technology because Vanguard feared "that PEAT would sue Vanguard for patent infringement."  *Id.* at 1252.  The district court dismissed the declaratory judgment action for lack of subject matter jurisdiction, but the Federal Circuit reversed.  *Id.* at 1253, 1255-56.  As the Federal Circuit explained, "[b]y filing the earlier lawsuit and informing Vanguard's clients that Vanguard is using the PEAT technology without a license, PEAT has shown 'a willingness to protect that technology.'  Filing a lawsuit for patent infringement would be just another logical step in its quest to protect its technology."  *Id.* at 1255 (quoting from and relying on *Goodyear Tire & Rubber Co. v. Releasomers Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987)).  PEAT's aggressive and affirmative steps to protect its technology allowed Vanguard to attack PEAT's patent on the same technology even though: (1) the Federal Circuit was using the narrower pre-*Medimmune* "reasonable apprehension of suit" test and (2) PEAT said it had never filed a patent claim against Vanguard and had never indicated any intent of doing so.  *Id.* at 1254-55.  Corteva faces the same result here — its broadside against Inari's misappropriation creates an immediate and concrete controversy extending to Corteva's utility patents on the allegedly misappropriated seeds.

In its briefing and at oral argument, Corteva had no rebuttal to the principle established by *Vanguard* and *Goodyear*.  Corteva relies on *W.L. Gore & Assocs., Inc. v. AGA Med. Corp.*, No. 11-539, 2012 WL 924978, at *6 (D. Del. Mar. 19, 2012), but that decision is entirely consistent with *Vanguard*.  In *W.L. Gore*, there was no subject matter jurisdiction because the "record lack[ed] any indication that [DJ plaintiff] has ever intimated that claims of the [patent to

be challenged] could cover the [pertinent technology]." *Id.* That is of course not the case here because the challenged unasserted Corteva utility patents allegedly (probably indisputably, but allegedly is sufficient) cover the same seeds as Corteva's asserted PVP certificates.

That leaves the question of whether we should decline to entertain Inari's counterclaim counts VII and VIII. A district court has "bounded and reviewable" yet "substantial discretion to decide whether to exercise [Declaratory Judgment Act] jurisdiction." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 140 (3d Cir. 2014). The Third Circuit directs us to consider four factors:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation; and
> (4) the availability and relative convenience of other remedies.

*Id.* Corteva dedicates only three sentences to the *Reifer* factors in its brief, but mostly through oral argument raises the entirely legitimate concern that introducing 231 or 232 more utility patents in this case is impractical, inconvenient, and not in the interests of justice. DI 174 at 12. Inari responds that its counterclaims are proportional to Corteva's complaint, and explained that its anticipated arguments (e.g., unenforceability in light of Corteva's conduct) would be the same for all the patents. With a touch of trepidation, we tend to agree with Inari. This case, although cumbersome and growing more so, is the best place to resolve the entirety of the dispute between the parties.[6]

---

[6] We asked Corteva counsel at oral argument whether, if we refused jurisdiction, Corteva would be subject to claim preclusion for the unasserted utility patents. Counsel was reluctant to say yes. Understandable, but, all the more reason why this is the necessary result.

7

**b.  Inari sufficiently stated its counterclaim counts IX and X with respect to unclean hands but we will strike affirmative defenses 23 and 24.**

Inari's counterclaim counts IX and X seek a declaration of unenforceability of Corteva's asserted utility patents and PVP certificates.  DI 160 CC ¶¶ 184-203.  These counterclaim counts are grouped with affirmative defense 23 (misuse of the utility patents), 24 (misuse of the PVP certificates), 36 (unclean hands), and 37 (no injunctive relief).  DI 160 at 80-81, 84.  Inari emphasizes three grounds for unenforceability that have a shared factual basis: sham litigation, unclean hands, and patent misuse.[7]  The key shared allegations are as follows.

Corteva deposited with the ATCC samples of the seeds involved in this case as part of its utility patent applications, thus making them available to the public.  DI 160 CC ¶ 178; *see also Corteva*, 743 F. Supp. 3d at 610-11.  As a matter of disputed contract interpretation or legal requirement, Inari would add to that: irrevocably available to the public *without restriction*.  DI 160 ¶¶ 179-80.  Inari then alleges a pattern of conduct that looks quite different depending on whether or not Corteva has the right to restrict access to its seeds.  That conduct extends to most everything already discussed in our decision denying Inari's motion to dismiss, such as obtaining more patents and PVP certificates and then enforcing them here, advancing atypical infringement theories, enforcing the commercial use restrictions in the agreements with ATCC, and accusing Inari of stealing in and out of court.  *See Corteva*, 743 F. Supp. 3d at 606-20.  Other conduct is newly alleged, such as Corteva: (i) "depleting and not replenishing deposits of samples of its

_____

[7] The pleadings and briefing left some ambiguity as to exactly what Inari was proposing. But at oral argument Inari essentially said, all three grounds or any combination of them: "I think it is a broth . . .  because I think you can consider them all together.  But I think they are each, independently — so, for example, if Your Honor found okay, I'm not with Inari on X, but there's still Y and Z, right?  That get you there.  So I don't think — we haven't pled it in a way that the whole count stands — rises or falls with a single element that we are pointing to."  DI 199 at 59:23-60:1-7.

patented seeds at ATCC," DI 160 CC ¶ 46; (ii) buying "seeds deposited by its competitors with ATCC," growing them, and sequencing them "in ways that would infringe the corresponding patents under the *legal theories* Corteva asserts against Inari," *id.* ¶ 56; (iii) persuading competitors Bayer and Syngenta to "join forces against Inari," *id.* ¶¶ 74-76; and (iv) pursuing this case in spite of learning facts in discovery that Inari says dispose of some of Corteva's claims, *id.* ¶¶ 185-200.  Corteva argues that these allegations fail to state a basis for unenforceability on any of Inari's three grounds — sham litigation, patent misuse, and unclean hands.

     ***Sham litigation.***  Starting with sham litigation, there is an immediate problem.  Inari identified no authority suggesting that sham litigation is a free-floating basis for unenforceability of patents or PVP certificates.  In intellectual property cases, sham litigation is typically invoked as an exception to the *Noerr-Pennington* doctrine that opens up antitrust liability (or other business tort liability) premised on a baseless lawsuit.  *See, e.g.*, *FTC v. AbbVie Inc.*, 976 F.3d 327, 360 (3d Cir. 2020).  There is no antitrust claim here.  Corteva pointed this out, DI 174 at 16-17, but Inari nowhere responded, DI 178 at 14-21.  None of Inari's sham litigation authority suggests that a court may hold a patent unenforceable where the elements of sham litigation are established.  Rather, Inari relies on irrelevant antitrust cases.  The concept of sham litigation has no apparent place in this case and cannot support an unenforceability counterclaim.

     ***Patent misuse.***  Turning to patent misuse, there are again threshold problems.  The en banc Federal Circuit explained that "the basic rule of patent misuse [is] that the patentee may exploit his patent but may not 'use it to acquire a monopoly not embraced in the patent.'"  *Princo Corp. v. ITC*, 616 F.3d 1318, 1327 (Fed. Cir. 2010) (en banc) (quoting *Transparent–Wrap Mach.*

*Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 (1947)).  The Federal Circuit has "characterized patent misuse as the patentee's act of impermissibly broadening the physical or temporal scope of the patent grant with anticompetitive effect." *Id.* at 1328 (quotation omitted).  A simple example is requiring payment of royalties on a naked license to an expired patent — the temporal problem. *Id.* at 1327; *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 451-55 (2015).  But there are not many other simple examples.  For example, tying a license to one patent to rights to another patent or purchase of a separate product is not misuse absent attendant antitrust concerns.  35 U.S.C. § 271(d). *Princo* itself considered a complex pooling arrangement that conditioned access to one technology on suppression of another and found no misuse.  616 F.3d at 1339-40. The Federal Circuit has not invited creative application of the doctrine, noting that Congress narrowed it through § 271(d), and that misuse requires showing that "the conduct in question restricts the use of that patent and does so in one of the specific ways that have been held to be outside the otherwise broad scope of the patent grant." *Id.* at 1329-30.

Inari's misuse theory is that Corteva's actions — meaning, following the USPTO's biological material deposit procedures and then bringing this suit against Inari — "frustrate the public's right to the patent disclosure for which the public paid the congressionally mandated price of limited exclusivity."  DI 178 at 21.  Inari has identified no authority even hinting that this could be patent misuse.  Indeed, Inari acknowledges that its misuse theory is unprecedented. *See id.* ("There is no precedent for a patent owner repudiating its representations to comply with the requirements of 35 U.S.C. § 112 after the USPTO granted the patents in which the representations were made.").  The "frustration" that Inari points to is the same frustration that would be present in any case where allegations of patent infringement are incorrect (or even

10

baseless) or involve invalid patents.  But Inari cannot demonstrate that any of that is patent

misuse either.  "[T]he catalog of practices labelled 'patent misuse' does not include a general

notion of 'wrongful' use."  *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir.

1998).  "It is not patent misuse to bring suit to enforce patent rights not fraudulently obtained."[8]

*Id.*  Thus, the concept of patent misuse has no place in this case either.

    ***Unclean hands.***  As for unclean hands, that is a broad equitable defense not necessarily

specific to patent law.  *Gilead Sci., Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 n.2 (Fed. Cir.

2018) (declining to choose between Federal Circuit and Ninth Circuit law and observing that

"[t]he doctrine of unclean hands is not patent-specific, but its application to patents has some

distinctive features affecting the patent system").  "[A]pplication of unclean hands rests within

the sound discretion of the trial court."  *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir.

1999) ("[N]either we nor the Supreme Court has required . . . that application of the unclean

hands doctrine is mandatory.").  The doctrine remedies "misconduct" or "violations of

conscience" that "affect the equitable relations between the parties."  *Keystone Driller Co. v.*

*Gen. Excavator Co.*, 290 U.S. 240, 245 (1933).  The most important guardrail for unclean hands

is that there be a clear and close connection between the troubling conduct and the claim brought

before the court.  *New Valley*, 181 F.3d at 525.  As the Supreme Court put it, the misconduct of

the party seeking relief (Corteva, here) must have "immediate and necessary relation to the

---

[8] Inari argues in passing that Corteva's conduct "is the same as if the patents had been fraudulently obtained."  DI 178 at 21.  There is nothing even close to a pleading of fraud on the patent office in Inari's counterclaims.  Further, the Federal Circuit's double-negative phrasing is a bit confusing but certainly does not introduce or condone a family of patent misuse claims based on enforcement of fraudulently obtained patents.  Inari cites *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1071-72 (Fed. Cir. 1998) a few times, but that is a *Walker Process* case, again implicating antitrust concerns that have not been alleged here.

equity that [it] seeks in respect of the matter in litigation." *Keystone*, 290 U.S. at 245. In that way, we disagree with Inari's overly wide net of "one who is a wrongdoer with respect to the subject matter of the suit." DI 178 at 15. Similarly, while the five-element standard cited by Corteva seems useful, Corteva did not produce any authority suggesting that it is the only way to prove unclean hands. DI 174 at 17 (quoting from *Sonos, Inc. v. D&M Holdings Inc.*, No. 14-cv-1330, 2016 WL 4249493, at *5 (D. Del. Aug. 10, 2016)).

The main case that Inari relies upon is a good example. In *Gilead*, the Federal Circuit affirmed a district court's finding of unclean hands based on "pre-litigation business misconduct and litigation misconduct." 888 F.3d at 1233. The business misconduct involved activities bordering on misappropriation — an individual "acquired improperly" information about a compound that later evolved into the accused product and then he assisted with the prosecution of patent applications to cover such compounds. *Id.* at 1240-42. The district court's findings about how this individual improperly contributed to the acquisition of the patent were "immediately and necessarily related to the equity of Merck's obtaining enforcement of its patent in th[at] litigation." *Id.* at 1244. The Federal Circuit also approved of the district court's reliance on extensive litigation misconduct, highlighted by intentionally false testimony by that same individual.[9] *Id.* at 1244. That false testimony "was relevant to the invalidity issues in the litigation and hence immediately and necessarily related to the equity of the patent-enforcement relief Merck s[ought] in th[at] case." *Id.* A survey of other authority reveals similar themes of

---

[9] The district court made remarkably extensive findings of fact in proceedings following a jury trial. *Gilead Sciences, Inc. v. Merck & Co., Inc.*, no. 13-cv-4057, 2016 WL 3143943 (N.D. Cal. June 6, 2016). The Federal Circuit relied on "a more limited set of wrongful conduct." *Gilead*, 888 F.3d at 1247.

grossly deceptive acts that facilitated the lawsuit: reprehensible litigation misconduct,[10] suppression of evidence,[11] misuse of confidential information,[12] knowing reliance on fabricated evidence,[13] forged back-dated assignments,[14] and theft of confidential and privileged information.[15]  Also, as a practical matter, a common thread running through the precedent is that unclean hands was a defense of last resort; the defendant is in essence saying "you only won this case because you cheated."

Here, the allegations are not as sensational the scenarios in the mine run of precedent. Inari focuses on its allegations that Corteva obtained utility patents covering the seeds involved in this case by depositing sample seeds and then later engaged in a judicial and extrajudicial campaign to block members of the public (including Inari) from actually doing what they are entitled to do with those seeds.  DI 178 at 16-17, 19-20.  The problem for Inari is that its unclean hands theory also requires it to be generally correct that it is *not* liable in this case.  If Corteva gave up its right to protect its deposited seeds from commercial exploitation, then Inari is probably going to win this case.  The same is true for Inari's allegations that Corteva accessed

---

[10] *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1094-96 (Fed. Cir. 2024).

[11] *Keystone*, 290 U.S. at 245-47.

[12] *Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, 636 F. Supp. 3d 483, 486-89 (D. Del. 2022).

[13] *Robocast, Inc., v. Microsoft Corp.*, 21 F. Supp. 3d 320, 337-39 (D. Del. 2014).

[14] *Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1074-77 (C.D. Cal. 2009).

[15] *Staton Techiya, LLC v. Samsung Elecs. Co., Ltd.*, 742 F. Supp. 3d 602, 610 (E.D. Tex. 2024).

and grew plants from competitor seed deposits.  *Id.* at 19.  As far as we can tell from the authorities presented to us, Corteva's choice to bring suit against Inari in the face of legal (and factual) uncertainty is not a wrong that the unclean hands doctrine is designed to right.

All that said, several points counsel against foreclosing the unclean hands defense at this stage.  First, because Inari's theory does not sound in fraud (as many unclean hands defenses do), we will not get out the microscope to look for allegations rising to the level of Fed. R. Civ. P. 9(b).  Second, while it is tempting to look to our earlier denial of Inari's motion to dismiss (where Inari advanced the same unified theory of the case), it would not make sense to impair discovery into a properly pleaded defense because, when the facts are viewed *disfavorably*, the defense fails.  Third, application of unclean hands is discretionary and the facts are tried to the bench, so there is not much harm in tabling the issue for now.  Fourth, and very significantly, we already held that there is subject matter jurisdiction over count VIII, which implicates essentially the same discovery — and it does not appear that Corteva moved to dismiss count VIII under Fed. R. Civ. P. 12(b)(6).  So it does not change much to let Inari complete development of its unclean hands theory with respect to asserted patents.

To sum up, we deny Corteva's motion to dismiss counts IX and X to the extent they are premised on unclean hands.  But there does not appear to be any basis for Inari to pursue theories of unenforceability due to sham litigation or patent misuse.  For the same reason, we strike affirmative defenses 23 and 24,[16] but not 36 or 37.

---

[16] Neither party suggested that PVP certificate misuse should be treated differently than utility patent misuse.  That hardly seems obvious, but, we will take it at face value without expressing a view.

     **c.  Inari insufficiently stated its counterclaim count XII and we will strike corresponding affirmative defenses 22 and 26.**

Inari's counterclaim count XII asks for a declaratory judgment that "Corteva is legally estopped from asserting and has waived its right to assert infringement of PVP Certificates to bar the exportation by foreign members of the public, after patent issuance, of seeds of the protected varieties that were deposited to obtain utility patents."  DI 160 CC ¶ 215.  Affirmative defense 22 addresses the estoppel angle, and affirmative defense 26 the waiver angle.  Waiver and estoppel are broad headings, and though the pleadings include several additional paragraphs of information, the legal theory is unclear.  For that, we will rely on Inari's brief.  DI 178 at 22-25.

Inari argues that by obtaining overlapping utility patents and PVP certificates on the same seeds, Corteva has engaged in something akin to obviousness-type double patenting.  *Id.* at 22-23.  As Inari puts it, "Corteva intentionally stages the filing of its PVP certificate applications to occur months after the filing of the patent application claiming the identical variety to extend the duration of its exclusionary rights."  *Id.* at 24.  This, according to Inari, effects a waiver of Corteva's PVP rights under 7 U.S.C. § 2483(a)(3) ("An owner may waive a right provided under this subsection . . . .")[17] and also estops Corteva from asserting its PVP rights under either a legal or promissory estoppel theory.  DI 178 at 24-25.

No authority endorses Inari's waiver and estoppel theories.  To the contrary, as we explained before, there is nothing unusual about overlapping intellectual property regimes.  *Corteva*, 743 F. Supp. 3d at 615-16.  Nor has Inari identified any case where a court was troubled by an apparent extension of exclusivity resulting from the otherwise legal use of two such

---

[17] Neither Corteva nor Inari seems to know exactly what § 2483(a)(3) does, but we need not answer that question broadly because Inari's reliance on it is limited to its unfair-extension-of-exclusivity theory.

regimes.  The analogy to obviousness-type double patenting (an intricate, judge-made doctrine that is simply not amenable to adaptation) makes little sense.  Because count XII lacks any legal foundation as Inari has explained it, we dismiss that count and strike corresponding affirmative defenses 22 and 26.

### d.  We will not strike Inari's affirmative defense 16.

Inari's affirmative defense 16 is judicial estoppel, which Inari says arises because Corteva took a position in the Patent Office contradictory to its position here.  DI 160 at 77-78.  "Judicial estoppel may be imposed only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity."  *Montrose Med. Gr. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001).  The alleged irreconcilable inconsistency stems from a post-grant review proceeding between Inari and Corteva.  There, Corteva criticized Inari's reliance on a prior art patent because Inari's expert did not conduct an analysis that would have required him to obtain a deposited seed, grow it, and analyze it.  Inari argues that Corteva should now not be able to allege that Inari did anything wrong by obtaining Corteva's seeds and commercially exploiting them.  We tend to agree with Corteva that the affirmative defense lacks a clear articulation of an irreconcilable inconsistency, and gives no reason to see bad faith here.  But we have very little context to make this determination.  And we see no reason to overly scrutinize a defense that depends very much on exactly what arguments are advanced; requires little development in discovery; and may not even make the cut for Inari later in the case.  We decline to strike affirmative defense 16.

16

### e. Inari insufficiently stated its counterclaim count XIII.

Inari's counterclaim count XIII seeks a declaration of unenforceability for patent misuse of the 378 patent as well as 16 Corteva PVP certificates[18] that cover the same seeds as 16 Corteva expired utility patents.  DI 160 CC ¶¶ 216-22.  The allegations appear to be undisputed: Corteva obtained utility patents covering certain seeds; those patents expired; it now has PVP certificates still in force that cover the same seeds.  *Id.*; DI 174 at 24-26.  Inari hypothesizes that "Corteva's allegations of PVP infringement after patents claiming the same variety have expired have the effect of broadening the temporal scope of Corteva's patents and extending Corteva's statutory rights under expired patents with an anticompetitive effect."  DI 178 at 28.  This, Inari says, is patent misuse, because it "show[s] that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect."  *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986) (quotation omitted).  We will not repeat the general discussion of patent misuse above.[19]  Here, it is sufficient to note two fatal problems with Inari's theory.  First, the "scope of the patent grant" cannot be expanded with a different form of intellectual property because that is by definition not the "scope of the patent grant." Second, Inari glosses over the requirement for "anticompetitive effect," and the pleadings nowhere allege an anticompetition case against Corteva.  Counterclaim count XIII must be dismissed.

---

[18] Inari's counterclaim says "seventeen utility patents . . . that had expired," DI 160 CC ¶ 217, but its brief says "16 expired patents," DI 178 at 27.  The number is immaterial here.

[19] Throughout its misuse theories, this one included, Inari pays little heed to the Federal Circuit's exhortation that "[t]here is no such thing as misuse in the air.  The misuse must be of the patent in suit."  *Princo*, 616 F.3d at 1329 (quotation omitted).

**f.  Inari sufficiently stated its counterclaim count XIV.**

Inari's counterclaim count XIV alleges federal unfair competition under the Lanham Act. DI 160 CC ¶¶ 223-26 (citing Section 43A of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)).  The Lanham Act creates liability for false or misleading representations in commercial advertising or promotion.  § 1125(a)(1)(B).  Third Circuit precedent provides that:

> To establish a false advertising claim under the Lanham Act, a plaintiff must prove: 1) that the defendant has made false or misleading statements as to his own product or another's; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (quotation omitted).  Inari focuses attention on its allegations that Corteva: issued multiple press releases that were misleading because they said Inari committed theft of intellectual property, DI 160 CC ¶ 69; told prospective commercial partners and financial analysts that Inari "lacks freedom to operate in the United States sufficient to support its financial projections and valuations," *id.* ¶ 70; engaged with other industry players to join forces and box Inari out of the market, *id.* ¶¶ 71-77.

Corteva attacks Inari's allegations on several fronts, arguing that Inari's allegations do not fit the false advertising mold.  Good-faith (even if ultimately incorrect) marketplace statements accompanying patent litigation generally do not support a false advertising claim. *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1352-55 (Fed. Cir. 1999); *see also Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999) (applying *Noerr-Pennington* immunity broadly to business torts).  But Inari says Corteva's statements are "in bad faith" because Corteva knows its positions are baseless and because they were made as part of an extra-

18

judicial campaign to harm Inari.  DI 160 CC ¶ 225.  Inari's allegations — the ones that go beyond ordinary marketplace statements — are admittedly thin.  *E.g.*, *id.* ("upon information and belief"); *id.* ¶ 68 ("[u]pon information and belief"); *id.* ¶ 70 ("upon information and belief," twice); *id.* ¶ 74 ("[u]pon information and belief,"); *id.* ¶ 77 ("[u]pon information and belief").  But we are reluctant to dismiss this counterclaim, or adopt a heightened pleading standard, where most of Corteva's arguments require factual nuance, such as identifying the relevant goods or services, identifying specific statements qualifying as commercial advertising or promotion, and understanding who was deceived and how Inari was harmed.  We will not dismiss Inari's counterclaim XIV.

### g.   Inari insufficiently stated its counterclaim count XV.

Turning to Inari's counterclaim count XV, there Inari alleges that Corteva engaged in unfair competition under Mass. Gen. Laws Ch. 93A, Section 11.  DI 160 CC ¶¶ 227-29.  Recall that Corteva has a similar claim against Inari, which survived a motion to dismiss.  *Corteva*, 743 F. Supp. 3d at 620.  A key requirement of the Massachusetts law is that "the unfair or deceptive conduct must occur primarily and substantially within Massachusetts to be actionable."  *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 52 (1st Cir. 1998) (quotation omitted).  "Courts apply this standard by considering the facts 'in the context of the entire § 11 claim,' and then determining 'whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.'"  *Sonoran Scanners v. PerkinElmer*, 585 F.3d 535, 546 (1st Cir. 2009) (quoting *Kuwaiti Danish Comput. Corp. v. Digit. Equip. Co.*, 781 N.E.2d 787, 799 (Mass. 2003)).

Inari's allegations are essentially the same as we have already covered in the sections above: knowingly bringing meritless claims, interfering with the marketplace, violating promises

19

to the public and the Patent Office, and so forth. DI 160 CC ¶ 228. Inari says these satisfy the Massachusetts law's location requirement "because Inari USA is based in Cambridge, Massachusetts and experienced injury in Massachusetts as a result of Corteva's unfair conduct." *Id.* ¶ 229. That sounds good at first glance, but the law's focus is not on the location of an injured company; the focus is on the "center of gravity of the circumstances that g[a]ve rise to the claim." *Sonoran*, 585 F.3d at 546. Inari alleges no acts of unfair competition that occurred in Massachusetts. As Corteva points out, this is a common basis for dismissing a claim under the Massachusetts law. *See* DI 182 at 15-16 (citing district court cases). And for that same reason, we dismiss Inari's counterclaim count XV.

### h. Inari sufficiently stated its counterclaim count XVI.

Last but not least, we consider Inari's counterclaim count XVI, which alleges that Corteva's lawsuit constitutes abuse of process under Delaware common law. DI 160 CC ¶¶ 230-32. The parties appear to agree that such a claim requires alleging more than a supposedly meritless lawsuit — some sort of willful act, beyond ordinary process, made with an illegitimate objective. Inari argues that the "overt acts not reasonably incidental to the litigation that leverage it as a form of coercion to obtain collateral advantage over Inari" are Corteva's market communications, including press releases, discussions with commercial partners and analysts, and contacts with competitors. DI 178 at 34. Corteva responds that Inari cannot rely on alleged actions that took place *before* the lawsuit (which the alleged actions did), because those would go to purported malicious prosecution rather than abuse of process. DI 182 at 17 (citing *Preferred Inv. Servs., Inc. v. T&H Bail Bonds, Inc.*, No. 5886, 2013 WL 3934992, at *23 (Del. Ch. July 24, 2013)). This distinction, while logical, is rather under-briefed and requires some creative reading

of ambiguous pleadings.  Given the legal and factual ambiguities, we think the better course is not to dismiss counterclaim count XVI.

## IV.    Conclusion

For the reasons set forth above, Corteva's motion to dismiss certain counterclaim counts and strike certain affirmative defenses is granted in part and denied in part as follows:

- Counterclaim count VII (invalidity of 378 patent): **DENIED**;

- Counterclaim count VIII (unenforceability of certain utility patents): **DENIED**;

- Counterclaim count IX (unenforceability of certain utility patents): **GRANTED** and **DISMISSED** as to sham litigation and patent misuse, **DENIED** as to unclean hands;

- Counterclaim count X (unenforceability of certain PVP certificates): **GRANTED** and **DISMISSED** as to sham litigation and patent misuse, **DENIED** as to unclean hands;

- Counterclaim count XII (legal estoppel and waiver): **GRANTED** and **DISMISSED**;

- Counterclaim count XIII (misuse of 378 patent and certain PVP certificates): **GRANTED** and **DISMISSED**;

- Counterclaim count XIV (Lanham Act § 43A): **DENIED**;

- Counterclaim count XV (Massachusetts General Laws Chapter 93A § 11): **GRANTED** and **DISMISSED**;

- Counterclaim count XVI (Delaware common law abuse of process): **DENIED**;

- Affirmative defense 16 (judicial estoppel): **DENIED**;

- Affirmative defense 22 (estoppel): **GRANTED** and **STRUCK**;

- Affirmative defense 23 (patent misuse): **GRANTED** and **STRUCK**;

- Affirmative defense 24 (PVP certificate misuse): **GRANTED** and **STRUCK**;

- Affirmative defense 26 (waiver of PVP rights): **GRANTED** and **STRUCK**;

- Affirmative defense 36 (unclean hands): **DENIED**;

- Affirmative defense 37 (no injunctive relief): **DENIED**;

Corteva sought dismissal with prejudice and Inari did not seek leave to amend or dismissal without prejudice.  Therefore, all dismissals are with prejudice.  This case will continue to progress through discovery.