**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **CORTEVA AGRISCIENCE LLC, PIONEER HI-BRED INTERNATIONAL, INC., AGRIGENETICS, INC.** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 23-1059** |
| **INARI AGRICULTURE, INC., INARI AGRICULTURE NV** | : | |

# MEMORANDUM

**MURPHY, J.*** **March 2, 2026**

This seed-biotechnology intellectual-property dispute is over two years old. The parties have been busy. We are about seven months from trial, and the parties are occupied with expert discovery and dispositive motions. As the case begins to ossify for trial, so come the motions to strike and motions for leave to amend. We dispose of two such motions here. One is Corteva's motion to strike portions of the report of an Inari damages expert, decided under the *Pennypack* standard. The other is Inari's motion for leave to amend its already extensive first amended answer and counterclaims, decided under Rule 16's good-cause standard. Although the motions face somewhat different standards, there is a common theme. Given sufficient resources, ingenious lawyers will always come up with another idea. But at some point, the schedule must become more than a suggestion, and the deciding factor cannot be merely whether the equally ingenious lawyers on the other side can keep up. We resolve both motions in favor of Corteva.

---

* Judge John Frank Murphy, of the United States District Court for the Eastern District of Pennsylvania.

## I. Background

Corteva, a long-established player in agricultural science, alleges that Inari, a relatively new venture, has been wrongfully exploiting Corteva's seed technology to enter the market. Corteva's amended complaint asserts numerous utility patents and plant variety protection certificates. Inari counterclaims that Corteva's intellectual property is invalid, wrongly acquired, and being used for no purpose other than to disparage and bully Inari. Since the two motions at issue center around the question of whether Inari acted too late in the context of this litigation, a brief timeline sets the stage. Corteva filed a complaint on September 7, 2023, and an amended complaint on November 27, 2023. DI 1, 19. On April 10, 2024, the first scheduling order set the close of fact discovery for April 30, 2025. DI 49. That very first schedule had a deadline to move to amend pleadings of September 30, 2024, and it never changed. *Id.* We denied Inari's comprehensive motion to dismiss on August 2, 2024. *See Corteva Agriscience LLC v. Inari Agriculture, Inc.*, 743 F. Supp. 3d 603 (D. Del. 2024). Inari timely answered (DI 106) but then just after the deadline to amend pleadings, and with Inari's consent, Corteva filed a second amended complaint on October 1, 2024. DI 148. Soon after, the parties stipulated to move the close of fact discovery to July 14, 2025. DI 151. Inari filed its answer and counterclaims to the second amended complaint on November 14, 2024. DI 160. On May 13, 2025, we partly granted Corteva's motion to dismiss some of the counterclaims and strike some of the affirmative defenses. *Corteva Agriscience LLC v. Inari Agriculture, Inc.*, 2025 WL 1380763 (D. Del. May 13, 2025). We held the *Markman* hearing on June 3, 2025. DI 291.

On July 3, 2025, over Corteva's objection, Inari moved to extend fact discovery to September 15, 2025, to "complete items of discovery that remain outstanding and to allow the

parties to develop facts necessary to try the issues in the case." DI 331 at 4. We ordered the parties to develop and submit a comprehensive schedule for remaining fact discovery, and to get a trial date set. DI 335. They did, and we reset the close of fact discovery for September 8, 2025, and set the (still holding) trial date of September 23, 2026. DI 350.

In September, Inari launched a campaign of last-minute changes to its defenses, including Second and Third Supplemental Invalidity Contentions served just before and just after the close of discovery. Corteva moved to strike some of the new defenses. DI 409, 410. We granted the motion in part because the inequitable conduct defenses had not been pled, and we learned that Inari intended to move to amend the pleadings. DI 421. Soon after, Inari did so. DI 435. Corteva opposed. DI 452. In the meantime, the parties were preparing their expert reports. On November 4, 2025, Inari served an expert damages report of Dr. Marc Zenner, Ph.D. On November 24, 2025, Corteva filed a motion to strike portions of Dr. Zenner's expert report that exceeded what Inari had disclosed during fact discovery. DI 471, 472. Inari opposed. DI 483. By the end of 2025, briefing was closed on these two motions. The deadline for summary judgment and *Daubert* motions is about a month away.

## II. Analysis

We will address Corteva's motion to strike first, then Inari's motion to amend the pleadings.

### a. We grant Corteva's motion to strike portions of the expert report of Marc Zenner, Ph.D.

Corteva seeks to strike portions of the expert report of Dr. Marc Zenner, an Inari damages expert. According to Corteva, portions of Dr. Zenner's report exceed what Inari gave Corteva fair notice of in its pleadings and during fact discovery. Both parties want this dispute addressed

under *Pennypack*. Indeed, faced with conflict over late-disclosed evidence, district courts in Delaware and elsewhere in the Third Circuit consider essentially the following factors: (1) the prejudice or surprise in fact of the party against whom the evidence would have been presented, (2) the ability of that party to cure the prejudice, (3) the extent to which the presentation of the evidence would disrupt the orderly and efficient trial of the case or other cases in the court, (4) bad faith or willfulness in failing to comply with the court's order, and (5) the importance of the excluded evidence. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-905 (3d Cir. 1977). District courts have discretion to evaluate these factors, and it works largely the same way whether the proponent moves for leave or the opponent moves to strike. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

The disputed opinions relate to Inari's purported damages arising from its counterclaims in this case. We wrote about some of those counterclaims before. *See Corteva*, 2025 WL 1380763. Dr. Zenner assumes that Inari will be able to prove that Corteva's lawsuit is meritless and serves only to tortiously disparage Inari. His assignment, then, was to:

- Explain in which ways disparagement affects the value of a firm in general, and of a private emerging growth company such as Inari, specifically.
- Evaluate whether Corteva's Alleged Misconduct against Inari caused material impact to Inari's reputation, operations, and valuation and to quantify the valuation impact, if any, that Inari incurred from Corteva's Alleged Misconduct.

Zenner R. ¶ 18. Dr. Zenner analyzed how the assumed disparagement can affect an emerging company like Inari, including with respect to certain investors and business partners (the "Ten Undisclosed Entities"). He opined "that even small increases in perceived riskiness and small delays in Inari's product roll out reduce the value of Inari by" a significant percentage of Inari's total valuation. *Id.* at ¶ 20 (constituting a high nine-figure sum). Corteva explains, and Inari

does not seriously dispute, that the valuation opinion — and the underlying allegations that this lawsuit harmed Inari's relationship with the Ten Undisclosed Entities — were well outside the scope of what Corteva was able to learn from Inari during fact discovery about its damages case. Corteva's briefing on this point was completely persuasive. Corteva took exhaustive measures in written discovery, the corporate deposition, and correspondence among counsel to nail down exactly what Inari's damages theory was and was not. Inari's arguments in opposition were specious.

Corteva argues, and we agree, that the court "should not reward Inari for its hide-the-ball tactics by subjecting Corteva to the burden of out-of-time discovery and the harm of potential delay in the case schedule." DI 487 at 5. Corteva was objectively surprised and of course harmed since it was deprived of the opportunity to explore the factual bases of the opinions and make whatever adjustments to its tactics might be warranted.

But *Pennypack* recognizes that, left unchecked, unyielding procedural formality can interfere with the search for truth and work injustice. Inari correctly points out that the challenged opinions are important to its defense; indeed, what could be of greater strategic significance to a defendant than creating exposure for the plaintiff? And "[t]he importance of the evidence is often the most significant factor." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (citations omitted). Corteva responds that if the opinions were so important, Inari would have surfaced them sooner, but that begs the question.

Inari can also credibly say that whatever disruption Dr. Zenner's new opinions may cause, Corteva will be able to catch up and prepare for trial, the date of which is set about 7 months from now (and it was almost 11 months from the date Inari served Dr. Zenner's opinion).

That is doubtless true; this is a high-stakes case and Corteva's extremely competent lawyers can and will adjust to anything thrown at them — they probably already have. Thus, the prejudice seems curable, costly and painful as it may be. We could even shift fees to Inari for that. Nor is there any sign of bad faith. It appears that Inari's legal team and Dr. Zenner just thought of the new approach after the close of fact discovery while working on his report. Inari doesn't admit that, but the record offers no other possibility (aside from Corteva's superficial inference of bad faith). DI 483 at 24.

Important new evidence, curable prejudice, and no bad faith? The *Pennypack* factors seem to be saying that this is a win for Inari. But why does that seem absurd in the context of a big patent case? The scheduling order in a case like this is heavily negotiated and exquisitely detailed. Large teams of sophisticated counsel ramp up their efforts and make tactical decisions in total reliance on that schedule. And "[d]eadlines are not suggestions. Litigants must respect them." *Archer v. Defenders, Inc.*, 2021 WL 3033347, at *1 (D. Del. Jul. 19, 2021) (Bibas, J., sitting by designation). Each deadline along the way, not just the one for trial, imposes forks in an unendingly forked road. With accommodations for the usual unpredictable happenstance of litigation, at some point, the parties are entitled to find repose in the scheduling order. Stripping away the clutter, Inari is saying that there's just no such thing as trying to understand with certainty the factual basis of an opponent's damages theory before the end of fact discovery. You'll find out in the opening expert report and then you can adjust afterwards. How can that be right?

To help dispel the cognitive dissonance, take a brief and refreshing detour into the facts of the 50-year-old *Pennypack* decision. That decision was about the last-minute disclosure of

two "key witnesses" in a civil-rights case. *Pennypack*, 559 F.2d at 903-04. The witnesses were a land developer and a former president of the defendant housing association, which had been accused of racially discriminatory practices. *Id.* at 903-04. The plaintiff discovered them after the pretrial memorandum was filed. *Id.* at 905. They would have testified in a bench trial that the defendant had a reputation in the black community as an all-white development in which black applicants could not buy homes. *Id.* at 904. The testimony was "important" and its absence "critical." *Id.* The Third Circuit held that the district court had abused its discretion by excluding the two late-disclosed witnesses. *Id.* at 905. As the decision points out, because it was a bench trial, all the district court had to do was "adopt[] perhaps, an adjournment of a few days while Pennypack conducted discovery with costs taxed to Meyers." *Id.*

That sudden feeling of clarity readers may be experiencing, we submit, is the difference between an oft-excerpted list of factors and a holding set in its proper context. Dr. Zenner's new opinions, while "important," are not analogous to *Pennypack*'s two late-discovered and then-disclosed third-party witnesses who knew previously unheard material facts. Dr. Zenner is a distinguished professional expert who charges $1500 per hour and relies on a team of assistants. Zenner R. ¶¶ 1-12, 19. The record does not indicate when Inari retained Dr. Zenner, but by not arguing that Dr. Zenner was a late-discovered witness (that would have been odd), we take it Inari would not disagree that Dr. Zenner was retained early enough that he had ample opportunity to develop his theories. And surely Dr. Zenner was in deep collaboration with the legal team — entirely appropriate, but the point is that the evidence of his opinions is tightly intertwined with the litigation strategy, unlike the two third-party fact witnesses in *Pennypack*. In the world of patent litigation, and certainly the damages side of the case, there is always

another idea, always a way to adjust, always a way to improve — but the schedule forces the case to move forward to a conclusion. In its brief, Inari nowhere suggested that it did not have enough time, resources, or brainpower to come up with its damages theories on time, nor did it suggest that it had to react to some surprising turn of events.

There are differences on the prejudice side as well. In *Pennypack*, at most all that was required was a couple short depositions to prepare for trial testimony that itself could be received at any time convenient for the judge as part of the bench trial. Here, the scale of the prejudice is masked by the scale of this litigation. To observe that Corteva can adjust its tactics, hire a responsive expert, pursue third-party discovery, take depositions, and so on, is a function of the resources justified by the high stakes of this case. Further, the nature of an opponent's damages theory has unpredictable, unknowable, and path-dependent consequences for a party's overall approach to the case. Time only flows forward in litigation, and advantages and disadvantages often accrue and dissipate permanently. That is why in professional sports, some plays are reviewable and some are not.

This analysis should not be read as any sort of criticism of *Pennypack*, which is as sound a holding today as it was 50 years ago. But this *is* a criticism of cutting-and-pasting the *Pennypack* factors into the middle of a fight about a sophisticated damages expert in a sprawling patent litigation and expecting the results to make sense automatically. Corteva should not have to pretend that Dr. Zenner's opinions are not "important" to Inari's case or feign inability to adjust to the new opinions before trial. Nor is there any need to sling allegations of bad faith. For exactly the reasons explained in *Pennypack*, this is decidedly not a situation where the

schedule should flex to accommodate an important, but belated, idea. The motion to strike is granted.

**b. We deny Inari's motion for leave to amend its answer, affirmative defenses, and counterclaims.**

Inari filed its motion to amend its answer and counterclaims over a year after the agreed deadline for amending pleadings and after the close of fact discovery. Therefore, Inari must demonstrate good cause. Fed. R. Civ. P. 16(b)(4). The Third Circuit has reaffirmed many times that a plaintiff's diligence factors into a showing of good cause. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (citations omitted). In this district, judges often view a lack of diligence as dispositive. *State Farm Mut. Auto. Ins. Co. v. Amazon.com, Inc.*, 2024 WL 4145022, at *2 (D. Del. Sep. 11, 2024) ("If that party has not been diligent, the inquiry ends[.]") (citation omitted). We may also consider futility and prejudice to the non-moving party. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Inari's answers were neither terse nor rushed. The first stated 28 affirmative defenses and 10 counterclaims spanned 50 pages. DI 106. The second version escalated to 42 affirmative defenses and 16 counterclaims stated across 87 pages. DI 160. Inari did not offer amendments in response to Corteva's motion to dismiss or strike, and it did not seek an extended deadline for amending the pleadings. Now, Inari's proposed amendments tack on four more affirmative defenses and three more counterclaims as follows:

1. Claims 7-9 of the 363 patent are invalid for improper inventorship (DI 436 at 88 (affirmative defense 43), counterclaims ¶¶ 151-52);
2. Claim 2 of the 441 patent is invalid for improper inventorship (*id.* at 88 (affirmative defense 44), counterclaims ¶¶ 164-65);
3. Claim 6 of the 522 patent is invalid for improper inventorship (*id.* at 88 (affirmative defense 45), counterclaims ¶¶ 136-40);
4. The 522 patent is unenforceable for inequitable conduct (*id.* at 88 (affirmative defense 46), ¶¶ 242-53 (counterclaim count 17));

5. Declaration that Corteva's PVP certificates are invalid under 28 U.S.C. §§ 2201 and 2202 (*id.* ¶¶ 253-62 (counterclaim count 18)); and
6. Declaration that so-called "Exhibit 1 Unasserted Utility Patents" are invalid under 35 U.S.C. § 102(b) and, Inari says, 28 U.S.C. §§ 2201 and 2202 (*id.* ¶¶ 263-71 (counterclaim count 19)).

The new inequitable conduct defense breaks down into four theories, accurately described by Corteva and paraphrased below:

1. Corteva and inventors Dr. Terry Wright, and Mr. Justin Lira failed to disclose a litigation (*id.* at ¶¶ 243-44);
2. Corteva and Dr. Wright failed to disclose data from trials concerning AAD-12 and resistance to pyridyloxyacetate herbicides as described in a 2017 email chain (*id.* at ¶¶ 245-46);
3. Dr. Wright made statements in declarations submitted during prosecution of an unrelated patent that are allegedly inconsistent with statements in the 522 patent (*id.* at ¶ 247); and
4. Dr. Wright and Corteva did not name Dr. Zhanyuan Zhang as an inventor on the 522 patent (*id.* at ¶¶ 126, 248).

DI 452 at 12-13.[1]

At the outset we touch on three preliminary points. First, we will consider good cause issue-by-issue, as the parties have, but we note that the broad nature of the proposed amendments gives the distinct impression that this is not an example of adding an uncovered allegation late but as soon as possible. If that were true, there would have been multiple proposed amendments made at the times when each became ripe. Rather, it appears that Inari simply dumped everything else it could think of into a final end-of-discovery salvo. That is not a recipe for good cause. Second, a common thread running through Inari's arguments is that Inari diligently

[1] It is fair to ask whether Inari failed to carry its burden to show good cause simply because its brief obscured, rather than clarified, what exactly was added by presenting the material in disorganized fashion — both in the proposed pleading and in the supporting brief. In its reply brief, Inari complained that Corteva misconstrued and misapprehended the nature of the amendments. If that's true, then we give Corteva partial credit for trying, because it was an objectively confusing exercise.

sought amendment after learning of new information, and that is enough. It may be, sometimes, but that is not the general rule. The need for diligence does not run from the moment a new fact is uncovered until the moment of moving for leave to amend. Rather, it encompasses the totality of discovery. *E.g.*, *Magsil Corp. v. Seagate Tech.*, 2010 WL 2710472, at *2 (D. Del. July 7, 2010) (denying leave to amend even though key facts were revealed in a late deposition because of "Defendants' decision to wait until little more than one month before the close of fact discovery to depose such a major witness"). Third, we agree with Corteva that the proposed amendments work the expected prejudice because of the late hour, especially because of the need for third-party discovery. But Inari is correct, as a practical matter, that the parties could open parallel tracks to address the new issues, so the prejudice is curable to a degree. Ultimately, diligence guides our decisions here.

***Improper inventorship (affirmative defenses 43-45).*** Inari's theory is that the 363, 441, and 522 patents are invalid because they failed to name Dr. Zhang as an inventor. Dr. Zhang is an Inari employee. DI 453-6. For the 363 and 441 patents, Inari's allegations are based on a 2011 report — said by Inari to be the basis of the two patents — listing Dr. Zhang as a contributor to the report. DI 436 ¶¶ 151, 164. It is unclear if the report is publicly available, but Inari does not disagree that Corteva produced the report in March 2025. For the 522 patent, Inari's allegations are based on a 2010 published scientific paper by inventor Dr. Wright — said by Inari to be the basis of the patent — that also references Dr. Zhang as a contributor. DI 436 ¶ 138. Thus, before moving to amend, Inari had unlimited access to one allegedly significant publication and the purported unnamed inventor, and seven months of access to the other allegedly significant report. Inari cannot dig itself out of the diligence hole that its own proposed

amendments dug. Inari's response is to point to other information it supposedly learned and argue that a pleading need not set forth all evidence that supports a claim for relief. DI 458 at 9. That entirely misses the point and does not explain how Inari could be said to be diligent pursuing these theories. We agree with Corteva that Inari did not show good cause for adding affirmative defenses 43, 44, and 45.

***Inequitable conduct (affirmative defense 46 & count 17).*** Inari's inequitable conduct defense has four separate grounds, one of which — inventorship of the 522 patent — we may dispose of immediately for the same reasons discussed above for affirmative defense 46. Two remaining grounds suffer from similar facial diligence problems. First, Inari alleges that Corteva, Dr. Wright, and Mr. Lira failed to disclose to the Patent Office a related ongoing litigation. DI 436 ¶ 244. Second, Inari alleges that Dr. Wright made statements in declarations filed with the Patent Office that were inconsistent with the face of the 522 patent. *Id.* at ¶ 247. The relevant file wrappers (declarations included) and the litigation were, of course, always public knowledge, making Inari presumptively undiligent. In response, Inari retreats, claiming that these facts merely tend to support an inference of intent rather than state separate grounds for inequitable conduct. DI 458 at 8. If that is true, then it serves only to further erode Inari's argument for diligence for its final ground, which we turn to next.

That leaves Inari's allegation that Dr. Wright failed to disclose to the Patent Office material testing data from 2009 field probe trials said to contradict statements in the 522 patent. DI 436 ¶¶ 245-46. This theory relies on a 2017 e-mail from Dr. Wright "in relation to the 2009 trials" that, according to Inari, suggests that Dr. Wright knew the trial data was problematic. *Id.* at ¶ 245. Corteva says, and Inari does not disagree, that it produced that e-mail in March 2025.

Inari did not notice Dr. Wright's deposition until June 2025. To deflect from this apparent lack of diligence, Inari argues that it "did not have all of the elements of its proposed inequitable conduct counterclaim and defense until it received from Corteva on and *after* the close of fact discovery" the 2009 field probe trial data. DI 458 at 8-9. But that argument is unpersuasive for two reasons. First, it is inconsistent with the pleadings themselves, which place material weight on the correspondence, not the data. DI 436 ¶ 245 ("The correspondence states that the activity against triclopyr and fluroxypyr was 'absolutely insufficient for any commercial purpose,' in direct contradiction of representations in the '522 patent."). Second, again, Inari takes too cramped a view of diligence. The question is, what has Inari been doing throughout the time when it has reason to develop defenses relating to the 522 patent and its inventor? And the answer is, nowhere near enough to justify such a significant amendment to its counterclaims after the close of discovery. We agree with Corteva that Inari did not show good cause for adding affirmative defense 46 or count 17.

***Declaration of PVP certificate invalidity (count 18) and declaration of unasserted utility patent invalidity (count 19).*** Inari groups these proposed amendments together, arguing that depositions of Corteva witnesses taken on July 30, August 6, August 6, and August 21, 2025, revealed the basis for the late amendments. That may be true (it is not easy to tell on this limited record), but what Inari leaves out is why those depositions came so late, or why it waited until July 16 and August 8, 2025, to serve the document requests seeking the relevant agreements with third-party growers. Inari did not address that critical aspect of good cause in its opening motion. Nor did Inari provide an explanation in its reply brief after Corteva pointed out this

problem. Thus, we are compelled to agree with Corteva that Inari failed to show good cause for the invalidity counterclaims (count 18 and count 19).

## III. Conclusion

For the reasons outlined above, we grant Corteva's motion to strike portions of the expert report of Dr. Marc Zenner, and we deny Inari's motion for leave to file a second amended answer and counterclaims.