IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, PIONEER HI-BRED INTERNATIONAL, INC. and AGRIGENETICS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 23-1059 (JFM) |
| INARI AGRICULTURE, INC. and INARI AGRICULTURE NV, | ) ) ) | REDACTED - PUBLIC VERSION |
| Defendants. | ) ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND
<u>MOTION TO EXCLUDE UNDER *DAUBERT* AND RULE 702</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Dimitrios Drivas
Raj S. Gandesha
John P. Scheibeler
Hallie Kiernan
Jongtae Jason Lee
Angelika Kligos
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY  10601
(914) 288-0022

**Originally Filed:  April 3, 2026
Redacted Version Filed:  April 22, 2026**

TABLE OF CONTENTS

Page

I.   INARI'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT.....1

    A.   INTRODUCTION ........................................................................................1

    B.   NATURE AND STAGE OF THE PROCEEDINGS ........................................1

    C.   SUMMARY OF THE ARGUMENT ................................................1

    D.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................5

    E.   LEGAL STANDARDS ................................................................5

    F.   ARGUMENT.................................................................................6

        1.   Patent Deposits Made to Comply with 35 U.S.C. § 112 are Accessible to All Members of the Public....................................................6

        2.   Corteva Authorized the Distribution of Patent Deposits to the Public ...7

        3.   Corteva's Infringement Contentions Under the PVPA (Counts I & II)..7

            a.   Because Corteva Authorized ATCC to Distribute to Members of the Public Seeds of the Asserted PVP Varieties There Is No Infringement of the PVP Certificates..........................................8

            b.   The Export of the Seeds to Belgium and Chile, Countries That Protect Corn Varieties, is Not Infringing Under 7 U.S.C. § 2541(d)...............................................................................9

            c.   Inari's Use of the Exhibit A Seeds for Bona Fide Research and the Exhibit B Seeds For Breeding Are Not Infringements Under the 7 U.S.C. § 2544 Research Exemption................................10

        4.   Corteva's Infringement Contentions Under 35 U.S.C.§ 271(b) (Counts V, VIII, XI, XIV & XVII)................................................................11

            a.   There Can Be No Inducement of Another Authorized by the Patentee to Perform the Allegedly Infringing Act ....................11

            b.   ATCC Did Not Directly Infringe the Asserted Patents Because Corteva Authorized ATCC to Sell Patent Deposit Seeds and Inari Therefore Is Not Liable for Inducing Infringement Under § 271(b)..................................................................................12

        5.   Corteva's Infringement Contentions Under 35 U.S.C. § 271(a) (Counts III, VI, VIV, XII & XV) .......................................................13

a. Soybean Seeds Were Never Sent to or Tested by ISU and Therefore There Is No Infringement of the '363, '441, and '522 Patents Under 35 U.S.C. § 271(a) (Counts VIV, XII, and XV) ...............................................................................13

b. The Export of Patent Deposit Corn Seeds to Belgium Required a USDA Phytosanitary Certificate that the Seeds Were Free of a Contaminating Bacterial Pathogen ...........................................14

c. Inari Is Not Vicariously Liable as a Direct Infringer for Acts Performed by ISU That Were Not Under Its Direction or Control ....................................................................................14

d. The Phytosanitary Testing Conducted by ISU at the Direction of the USDA Is Not an Infringing Use Under 35 U.S.C. § 271(a) ..................................................................................15

6. Corteva's Infringement Contentions Under 35 U.S.C. § 271(f)(2) (Counts IV, VII, X, XIII & XVI)...........................................16

a. Infringement Under 35 U.S.C. § 271(f)(2) Requires that the Infringer Supply from the U.S. an Uncombined Component of an Invention Intending It Be Combined in an Infringing Manner Outside the U.S. ....................................................................16

b. Because Corteva Authorized the Export of the Patent Deposit Seeds, There Is No Infringement Under 35 U.S.C.§ 271(f)(2).17

c. A Seed is Not a Component of a Plant ....................................17

d. The Claimed Seeds Are Commodities and Have Substantial Non-infringing Uses Outside the Asserted Claims...................19

e. Corteva's Application of § 271(f)(2) Is a Prohibited Extraterritorial Application of U.S. Patent Law .......................21

7. Corteva Is Legally Estopped From Asserting Patent and PVPA Infringement Claims to Restrict Foreign Members of the Public From Accessing Patent Deposit Seeds (Counts I-XVII) ...............................22

G. CONCLUSION...................................................................................23

II. INARI'S MOTION TO EXCLUDE UNDER *DAUBERT* AND RULE 702 ...............24

A. INTRODUCTION AND SUMMARY OF INARI'S *DAUBERT* ARGUMENTS..............................................................................24

B. FACTUAL BACKGROUND RELEVANT TO INARI'S *DAUBERT* MOTION........................................................................................25

1. Dr. Vellturo's Damages Opinions..........................................25

2. The Opinions of Corteva's Technical Experts.......................27

ii

C.      LEGAL STANDARD RELATING TO INARI'S *DAUBERT* MOTION........28

D.      ARGUMENT.........................................................................................28

      1.      Dr. Vellturo's Damages Opinions Should Be Excluded.......................28

            a.      Dr. Vellturo's Reasonable Royalty Damages Are Impermissibly Based on Foreign Uses of the Patented Inventions That Are Not Accused of Infringement and Are Not Subject to U.S. Patents 28

            b.      Dr. Vellturo's Opinion as to Damages Under Mass. Gen. Law Ch. 93A Is Irrelevant and Should Be Excluded........................33

            c.      Dr. Vellturo's Opinion As to Corteva's Breach of Contract Damages Is Unreliably Speculative And Remote.....................35

      2.      Dr. Wessler's, Dr. Dellporta's, and Dr. Mikel's Opinions as to Inari's Intent, Motive, or State of Mind Should Be Excluded .........................37

III.      CONCLUSION.......................................................................................39

iii

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015)...................................................................................4, 14

*Amgen, Inc. v. Elanex Pharms., Inc.*,
    No. C93-1483D, 1996 WL 84590 (W.D. Wash. Feb. 6, 1996) ...............................................16

*AMP Inc. v. United States*,
    389 F.2d 448 (Fed. Cl. Ct. 1968), *cert. denied*, 391 U.S. 964 (1968) ..............................22, 23

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................................................................5

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    365 U.S. 336 (1961).................................................................................................................11

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015)...............................................................................................29

*AstraZeneca LP v. Tap Pharmaceutical Prods.*,
    F. Supp. 2d 278, 293 (D. Del. 2006)......................................................................................37

*Awards.com v. Kinko's, Inc.*,
    42 A.D.3d 178 (N.Y. App. Div. 2007) ...................................................................................36

*Boggs v. Duncan*,
    202 Va. 877 (1961) ................................................................................................................35

*Brumfield v. IBG LLC*,
    97 F.4th 854 (Fed. Cir. 2024) ...............................................................................................30

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
    576 F.3d 1348 (Fed. Cir. 2009)..............................................................................................19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................................................6

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)...........................................................................................4, 15

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015).................................................................................................................11

iv

*Deepsouth Packing Co. v. Laitram Corp.*,
 406 U.S. 518 (1972)........................................................................................4, 16, 21

*Digital Broadcast Corp. v. Ladenburg, Thalmann & Co., Inc.*,
 63 A.D.3d 647 (N.Y. App. Div. 2009) ...................................................................36

*Ecolab, Inc. v. Dubois Chems., Inc.*,
 C.A. No. 21-567-RGA, 2023 U.S. Dist. LEXIS 191428 (D. Del. Oct. 25, 2023)...................28

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
 845 F.3d 1357 (Fed. Cir. 2017).............................................................................14

*Ex parte Hildebrand*,
 15 U.S.P.Q.2d 1662, 1990 WL 354517 (B.P.A.I. Apr. 23, 1990) ..............................................6

*Feldman v. Aunstrup*,
 517 F.2d. 1351 (C.C.P.A. 1975), *cert. denied*, 424 U.S. 912 (1976)........................................6

*FinancialApps, LLC v. Envestnet, Inc.*,
 C.A. No. 19-1337-GBW-CJB, 2023 U.S. Dist. LEXIS 164136 (D. Del. Sept. 13, 2023) ......34

*Fla. Found. Seed Producers, Inc. v. Ga. Farms Servs., LLC*,
 977 F. Supp. 2d 1336 (M.D. Ga. 2013) .....................................................................8

*Grecia v. McDonald's Corp.*,
 724 F. App'x 942 (Fed. Cir. 2018) ..........................................................................15

*Hop-In Food Stores, Inc. v. Serv-N-Save, Inc.*,
 247 Va. 187 (1994) ................................................................................................35

*ITT Hartford Grp. v. Va. Fin. Assocs.*,
 258 Va. 193 (1999) ................................................................................................35

*I-Mab Biopharma v. Inhibrx, Inc.*,
 C.A. No. 22-276-CJB, 2024 WL 4581539 (D. Del. Oct. 21, 2024) ......................................37

*In re Lundak*,
 773 F.2d 1216 (Fed. Cir. 1985)................................................................................6

*In re TMI Litig.*,
 193 F.3d 613 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) ....................................28

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l. Inc.*,
 534 U.S. 124 (2001)........................................................................... passim

*Johns Hopkins Univ. v. CellPro, Inc.*,
 152 F.3d 1342 (Fed. Cir. 1998)...........................................................................16, 21

*Johnston v. IVAC Corp.*,
   885 F.2d 1574 (Fed. Cir. 1989) .................................................................................... 6

*Kenford Co. v. Cnty. of Erie*,
   67 N.Y.2d 257 (1986), *aff'd*, 73 N.Y.2d 312 (1989) .................................................. 36

*Kitner v. CTW Transp., Inc.*,
   53 Mass. App. Ct. 741 (2002) ..................................................................................... 33

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999) .................................................................................................... 28

*Life Techs. Corp. v. Promega Corp.*,
   580 U.S. 140 (2017) .......................................................................................... 16, 20, 21

*LightLab Imaging, Inc. v. Axsun Techs, Inc.*,
   469 Mass. 181 (2014) .................................................................................................. 33

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014) ..................................................................................................... 11

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
   566 U.S. 66 (2012) ....................................................................................................... 19

*McCoy v. Mistuboshi Cutlery, Inc.*,
   67 F.3d 917 (Fed. Cir. 1995) .................................................................................. 11, 12

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007) .......................................................................................... 5, 16, 21

*Midwest Energy Emissions Corp. & Mes Inc. v. Arthur J. Gallagher & Co.*,
   C.A. No. 19-1334-CJB, 2023 WL 7411710 (D. Del. Nov. 3, 2023) ...................... 37, 38

*Mullen v. Brantley*,
   213 Va. 765 (1973) ...................................................................................................... 35

*Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*,
   2017 WL 11421891 (S.D. Cal. 2017) ........................................................................... 5

*NTP, Inc. v. Research In Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005) ................................................................................... 15

*Opticurrent, LLC v. Power Integrations, Inc.*,
   C.A. No. 17-03597-WHO, 2018 U.S. Dist. LEXIS 215907 (N.D. Cal. Dec. 21, 2018) ......... 32

*Oracle America, Inc. v. Google Inc.*,
   798 F. Supp. 2d 1111 (N.D. Cal. 2011) ....................................................................... 29

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
No. 2:18-CV-00014-JRG-RSP, 2019 U.S. Dist. LEXIS 111892 (E.D. Tx. June 11, 2019) ...29

*PMX Jewels Ltd. v. Ruvanni Inc.*,
C.A. No. 14-243, 2014 U.S. Dist. LEXIS 60420 (E.D. Pa. May 1, 2014) .............................34

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013)....................................................................................29, 31

*Regents of the University of California v. California Berry Cultivar*,
2017 WL 9531948 (N.D. Cal. 2017) ...................................................................................18

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC.*,
C.A. No. 17-189-LPS-CJB, 2019 WL 4451364 (D. Del. Sep. 13, 2019)...............................11

*Santagate v. Tower*,
64 Mass. App. Ct. 324 (2005).............................................................................................34

*Schneider ex re. Estate of Schneider v. Fried*,
320 F.3d 396 (3d Cir. 2003)...............................................................................................28

*Shire ViroPharma Inc. v. CSL Behring LLC*,
C.A. No. 17-414, 2021 WL 1227097 (D. Del. Mar. 31, 2021)........................................37, 38

*Syneron Med. Ltd. v. Invasix, Inc.*,
No. 8:16-cv-00143, C.A. No. 8:16-cv-00143-DOC-KES, 2018 U.S. Dist. LEXIS 220514
(C.D. Cal. Aug. 27, 2018)...................................................................................................32

*Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*,
534 F. Supp. 340 (D. Mass. 1982) ......................................................................................34

*TechSearch, L.L.C. v. Intel Corp.*,
286 F.3d 1360 (Fed. Cir. 2002).............................................................................................6

*Trademark Rsch. Corp. v. Maxwell Online, Inc.*,
995 F.2d 326 (2d Cir. 1993)...............................................................................................36

*Trs. of Columbia Univ. in the City of New York v. Roche Diagnostics GmbH*,
150 F. Supp. 2d 191 (D. Mass. 2001) ........................................................................5, 17, 22

*Vicarious Surgical Inc. v. Tragakis*,
C.A. No. 2284CV02321-BLS2, 2023 Mass. Super. LEXIS 36 (Apr. 27, 2023)....................33

*Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*,
103 F.3d 1571 (Fed. Cir. 1997)...........................................................................................22

*Wesley Jessen v. Bausch & Lomb, Inc.*,
256 F. Supp. 2d 228 (D. Del. 2003).....................................................................................21

*WesternGeco v. ION Geophysical Corp.*,
    585 U.S. 407 (2018).................................................................................................30

*Whitehead v. Cape Henry Syndicate*,
    111 Va. 193 (1910) ...............................................................................................36

*Zelby Holdings, Inc. v. VideogeniX, Inc.*,
    92 Mass. App. Ct. 86 (2017)..................................................................................34

*Zimmer Surgical, Inc. v. Stryker Corp.*,
    365 F. Supp. 3d 466 (D. Del. 2019).................................................................37, 38

*Zink v. Mark Goodson Prods.*,
    261 A.D.2d 105 (N.Y. App. Div. 1999) .................................................................36

## RULES AND STATUTES

Fed. R. Evid. 702 ....................................................................................................................28

35 U.S.C. § 271(f)(2) ..............................................................................................................19

37 C.F.R. § 1.801 ......................................................................................................................4

37 C.F.R § 1.808. ......................................................................................................................6

G.L. c. 93A § 11......................................................................................................................33

**I.    INARI'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

**A.    INTRODUCTION**

This summary judgment motion is based on the undisputed facts relating to the Inari Defendants' purchase from The American Type Culture Collection ("ATCC") samples from patent deposits Corteva made to obtain patents.  The question of law presented is whether the acts of obtaining access to biological material patent deposits that are essential to the description of the patented inventions can also be an infringement of the Patent Laws or the Plant Variety Protection Act?  Because the answer is "No," summary judgment for Inari pursuant to Fed. R. Civ. P. 56 on Counts I-XVII of Corteva's Second Amended Complaint, D.I. 148, is appropriate.

**B.    NATURE AND STAGE OF THE PROCEEDINGS**

Discovery is closed.  An oral hearing on Summary Judgment and *Daubert* motions is scheduled for May 29, 2026.  Trial is scheduled for September 23 to October 2, 2026.

**C.    SUMMARY OF THE ARGUMENT**

The patent deposits that are the basis for Corteva's infringement allegations fall into three buckets:

(1) Inari Belgium purchased seeds from patent deposits of inbred corn varieties that are also the subject of the Plant Variety Protection ("PVP") Certificates listed in Exhibit A of the Second Amended Complaint ("SAC");

(2) Inari Belgium purchased seeds from patent deposits of four asserted transgenic corn and soybean event patents and from a deposit of an unasserted patent on a plant containing the gene in an asserted herbicide-resistant gene patent.  The plants covered by these patents were not subject to PVP certificates; and

(3) Inari USA purchased seeds from patent deposits of expired patents on inbred corn varieties that are also the subject of the PVP Certificates listed in Exhibit B of the SAC.

1

The bucket (1) and (2) corn seeds were exported to Belgium after required phytosanitary testing.  Progeny of the bucket (3) Exhibit B patent deposits were exported to Chile.

These transient acts in the United States, purchase, phytosanitary testing and export, are what Corteva alleges constitute patent and PVP infringement in the seventeen Counts that are the subject of this motion.  All these transient acts were to effectuate access to patent deposits that are part of the written description of issued patents.  The statutes on which the allegations of infringement of Counts I-XVII are based all require that for the act to infringe it must be done *without authority*. A material fact common to all the Counts that cannot be disputed is that Corteva authorized public access to the patent deposits. For this reason alone, summary judgment of non-infringement on Counts I-XVII is appropriate.

The claims of the patents for which the seed deposits were made would not have been allowed absent the patent deposits made to comply with 35 U.S.C. § 112.  SOF ¶¶ 2, 5, 8, 11, 15, 25.[1] Corteva not only promised public access to the deposits when the patents were issued; it *authorized* ATCC to distribute samples to the public.  Just as the public can read the written text of the patent, it can inspect and "read" the deposited biological material necessary to describe and understand the invention.  Where a patent claims a "plant" defined by its genetics, this includes sequencing genetic material and growing plants from the deposited seed to observe and analyze the plant's claimed genetic attributes.

Each of the statutory provisions governing Corteva's claims of patent and PVP infringement, 35 U.S.C. §§ 271(a), (b), and (f)(2) and 7 U.S.C. § 2541(a)(2), provide that it is only acts done "*without authority*" that are infringing.  To obtain the patents, Corteva authorized public access to the patent deposits.  That authorization includes export of the patent deposit seeds to the

---

[1]  All cites to "SOF" are intended to incorporate the Fact, Corteva's Response to the Fact, and Inari's Reply to Corteva's Response.

public outside the U.S. All of Inari's allegedly infringing acts of purchasing, pathogen testing, and export were to effectuate access to the patent deposits. Corteva now attempts to withdraw its express authorizations and renege on the promises of public access to the patent deposits under 37 C.F.R § 1.808 it made to obtain patents. Corteva's infringement allegations under the Plant Variety Protection Act ("PVPA") and 35 U.S.C. §§ 271(b) and (f)(2) seek to restrict access to patent deposits of seeds essential to the description of the invention. Once a patent is granted, the patentee may not unilaterally select which part of the patent description is available to the public or to whom it will be made available. As Corteva would have it, utility patents for plants are a special class of patents for which the full description of the invention is inaccessible to members of the public during the patent term.

Not only were the purchase and export of the seeds authorized by Corteva, but Inari's use of the seeds is exempt from infringement under the PVPA. Under 7 U.S.C. § 2541(d), the export of the seeds to Belgium and Chile was non-infringing because Belgium and Chile are member countries of the International Union of New Varieties of Plants ("UPOV") that protect varieties of maize. Inari used the seeds in bona fide research and breeding activities exempt from infringement under 7 U.S.C. § 2544.

As to patent infringement, Corteva alleges that Inari infringes the Asserted Patents under 35 U.S.C. § 271(b) by inducing ATCC to sell samples of patent deposits to Inari and thereby infringe the patents. To give rise to infringement under 35 U.S.C. § 271(a), the sale by ATCC must have been a direct infringement, a necessary predicate of Corteva's inducement claims. But ATCC cannot be a direct infringer because Corteva authorized ATCC to supply the public with the patent deposit samples, and ATCC was required to do so as a patent depository. Since there was no direct infringement, Inari as a matter of law cannot be liable under 35 U.S.C. § 271(b).

3

Corteva also alleges that Inari is vicariously liable for direct infringement based on Iowa State University ("ISU") performing the standard United States Department of Agriculture ("USDA") phytosanitary testing for contamination of the patent deposit corn seeds required for export to Belgium. Neither Inari nor its shipping contractor, IE-SCS, directed or controlled the USDA-standard test performed by ISU. There is no basis for Inari to be held vicariously liable under § 271(a) for any acts by ISU required by the USDA. *See generally Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015). Nor is testing for the presence of a contaminant on corn seeds an infringing "use" of the asserted claims under § 271(a). ISU's testing destroyed the seeds and was not a beneficial use of the patented invention. *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) (to "use" a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it).

Corteva also alleges infringement of the Asserted Patents under 35 U.S.C. § 271(f)(2), alleging that the export of patented "seeds" infringe claims in the Asserted Patents to a "plant" because a seed is a component of a plant and Inari intended the seeds to be combined outside the U.S. with water, light, air, physical support and nutrients to grow into plants. Because Corteva expressly authorized access by the public to the patent deposits, there can be no infringement under § 271(f)(2). That authorization includes export of the patent deposit samples from the U.S.

Section 271(f)(2) was enacted in response to the decision in *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972), to protect against the export of a component of a multicomponent combination invention, that in uncombined form would not infringe in the U.S. A patent deposit of biological material must be self-replicating, viable, and capable of reproduction. 37 C.F.R. § 1.801. A self-replicating seed is not a component to be assembled into

4

the multicomponent invention contemplated by § 271(f)(2). A seed and a mature plant are different stages in the life cycle of the same plant. Environmental conditions, such as light and air, cannot be considered components under the purpose for enacting § 271(f)(2). The exported patent deposit seeds are the complete patented inventions and not an uncombined component to which 35 U.S.C. § 271(f)(2) applies. *Trs. of Columbia Univ. in the City of New York v. Roche Diagnostics GmbH*, 150 F. Supp. 2d 191, 204-05 (D. Mass. 2001); *Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC,* 2017 WL 11421891, at *5 (S.D. Cal. 2017).

"The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law," and courts should resist expanding the scope of infringement under § 271(f). *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 442, 454-55 (2007). Corteva here attempts to expand the scope of § 271(f)(2) to cover extraterritorial activity. If it believes that Inari's activity in Belgium infringe its patent rights, Corteva has counterpart European patents of the Asserted Patents enforceable in Belgium it can assert in the proper venue, rather than asking the Court to stretch § 271(f)(2) to cover foreign activity. SOF, ¶¶ 4, 7, 10, 12, 14, 17.

### D.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Inari incorporates its Consolidated Statement of Facts in Support of Defendants' Motion for Summary Judgment ("SOF") filed herewith.

### E.    LEGAL STANDARDS

Summary judgment under Fed. R. Civ. P. 56 is proper if no reasonable jury could find infringement on the undisputed facts, with all reasonable inferences drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). After adequate time for discovery, entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to its case on which the party

bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant may meet its initial burden by showing an absence of evidence to support the nonmovant's case or by negating an essential element. *Id.* at 323; *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989). If the movant meets this burden, the nonmovant must then designate specific facts showing a genuine issue for trial.

If the patentee's proof is deficient as to any essential element, summary judgment of noninfringement is proper. *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). General assertions, denials, or conclusory statements are insufficient to defeat summary judgment.

### F.    ARGUMENT

#### 1.    Patent Deposits Made to Comply with 35 U.S.C. § 112 are Accessible to All Members of the Public

Deposits made to comply with 35 U.S.C. § 112 must be made available to the public, including members of the public outside the U.S., upon the issuance of the patent. 37 C.F.R. § 1.808(a)(2). Assurance of access to the deposit by the public is required in exchange for the patent grant. *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l. Inc.*, 534 U.S. 124, 141 (2001) (citing 37 C.F.R. §§ 1.808-1.809 (2001)); *In re Lundak*, 773 F.2d 1216, 1221 (Fed. Cir. 1985); *Feldman v. Aunstrup*, 517 F.2d. 1351, 1354 (C.C.P.A. 1975), *cert. denied*, 424 U.S. 912 (1976); *Ex parte Hildebrand*, 15 U.S.P.Q.2d 1662, 1990 WL 354517, at *3 (B.P.A.I. Apr. 23, 1990). In promulgating the amended rules, 37 C.F.R. §§ 1.808-1.809, governing patent deposits and access to them, the USPTO clarified that the rules applied to all members of the public, domestic and foreign, and that there was no restriction on the export of patent deposits. SOF, ¶ 28.

In *J.E.M. Ag Supply, Inc.*, the Supreme Court emphasized that, "[b]ecause of the more stringent requirements, utility patent holders receive greater rights of exclusion than holders of a

6

PVP certificate." 534 U.S. at 143. The Court explained that, to obtain a utility patent, one must describe the plant with sufficient specificity to enable others to make and use the invention and that the description requirement includes the deposit of biological material such as seeds. *Id.* at 142.

The public must be able to inspect and "read" the deposited biological material that is necessary to describe and understand the invention. This includes sequencing genetic material, DNA, from the self-replicating seeds and growing plants to observe and analyze their claimed features, particularly where a "plant" is a claimed invention. Corteva does not disagree, SOF, ¶ 105, and has successfully argued in opposing PGRs at the U.S. Patent Office that a genetic analysis of a deposited seed and phenotypic analysis of the plant grown from the seed is necessary to compare a claimed maize variety to the prior art. SOF, ¶¶ 103-04.

### 2.    Corteva Authorized the Distribution of Patent Deposits to the Public

This Court has previously acknowledged that Inari has identified a tension arising from Corteva's allegations in the way the Patent Act and the PVPA interact. (D.I. 100 at 17, 18, n. 9). The tension in this case, however, is resolved because Corteva expressly authorized public access to the patent deposits in its representations in the patents and prosecution in the USPTO and in its agreements and correspondence with ATCC. SOF, ¶¶ 2, 3, 5, 6, 8, 9, 11, 15, 16, 18-25. Corteva's express promises and authorizations of public access preclude application of its PVPA and patent rights to restrict access to the patent deposits.

### 3.    Corteva's Infringement Contentions Under the PVPA (Counts I & II)

Under the PVPA, acts performed with the authority of the owner of a protected variety are not infringing. Section 2541(a) of the PVPA provides that acts performed "without authority" of the PVP Certificate owner are an infringement of the owner's rights, including export of the variety from the U.S. as in 7 U.S.C. § 2541(a)(2). The PVPA, in 7 U.S.C. § 2541(b)(1), however, provides

7

that the owner of a PVP certificate may authorize, subject to conditions and limitations specified by the owner, use of the variety.  Corteva made the patent deposits pursuant to 37 C.F.R § 1.808.  Section 1.808(a)(2) provides that a patent deposit must be made under conditions that assure that, except for paragraph (b) relating to the deposit request, all restrictions imposed by the depositor on availability will be irrevocably removed upon granting the patent.  In a situation where the PVP certificate owner, here Corteva, has also obtained patent protection on the same variety by making a patent deposit, it has authorized, under § 2541(b)(1), access to and export of samples of the patent deposit.

> **a.    Because Corteva Authorized ATCC to Distribute to Members of the Public Seeds of the Asserted PVP Varieties There Is No Infringement of the PVP Certificates**

Corteva accuses Inari of violating Corteva's rights under 7 U.S.C. § 2541(a)(10) by inducing ATCC to sell patent deposits also covered by the Asserted PVP Certificates.  (D.I. 148 at ¶ 174, 187).

There must be direct infringement for one to be liable for inducing infringement of a PVP right under 7 U.S.C. § 2541.  *Fla. Found. Seed Producers, Inc. v. Ga. Farms Servs., LLC*, 977 F. Supp. 2d 1336, 1340 (M.D. Ga. 2013) (claim of inducement liability requires proof of direct infringement by the induced party).  There was no direct infringement of Corteva's PVP rights here.  Corteva represented to the USPTO and the public that the patent deposits must be made available.  Corteva authorized ATCC to sell samples of the patent deposits to the public, including samples of patented varieties that are also subject to the Asserted PVP Certificates.  SOF, ¶¶ 24, 25.  As a qualified patent USPTO depository under 37 C.F.R. § 1.803, and a Budapest Treaty depository, ATCC must provide samples of the patent deposits to the public.  SOF, ¶¶ 1, 26, 27.  ATCC was not a direct infringer, and Inari cannot be liable for inducing infringement under 7 U.S.C. § 2541(a)(10).  Therefore, Inari's export of the seeds to Belgium is not an infringement of

Corteva's rights under 7 U.S.C. § 2541(a)(2) of the Asserted PVP Certificates.

> **b.    The Export of the Seeds to Belgium and Chile, Countries That Protect Corn Varieties, is Not Infringing Under 7 U.S.C. § 2541(d)**

7 U.S.C. § 2541(d) addresses acts not considered infringing and provides that it is not an act of PVP infringement to perform any act concerning propagating material of any kind, or harvested material, including entire plants or parts of plants, of a protected variety "that is sold or otherwise marketed with consent of the owner in the United States" unless the act involves export of material of the variety into a country that does not protect varieties of the plant genus or species to which the variety belongs, unless the exported material is for final consumption.

The Exhibit A patent deposit corn seeds were sold by ATCC to Inari with Corteva's consent and exported to Belgium.  SOF, ¶¶ 29-34, 55.  Their use in Belgium was for research and not for final consumption.  SOF, ¶¶ 56-64.  The laws of Belgium protect new varieties of maize.  Belgium, like the U.S., is a member of the International Union of New Varieties of Plants ("UPOV") and Belgian Plant Breeder's Rights provide exclusive rights for new maize varieties within Belgian territory.  SOF, ¶¶ 65-66.  The export of the Exhibit A patent deposit seeds to Belgium is, therefore, not considered infringing under 7 U.S.C. § 2541(d).

Chile is also a member of UPOV and provides protection on new varieties of maize under a Plant Breeder's Right certificate.  SOF, ¶¶ 84-85.  The Exhibit B corn seeds were sold by ATCC to Inari with Corteva's consent, 37 C.F.R. §§ 1.806 and 1.808, after the patents expired.  SOF, ¶¶ 24, 25, 68-70, 72-82.  The export of the Exhibit B seeds and progeny seeds grown from them to Chile was for breeding and not final consumption and is, therefore, not considered infringing under 7 U.S.C. § 2541(d).

9

        c.        **Inari's Use of the Exhibit A Seeds for Bona Fide Research and the Exhibit B Seeds For Breeding Are Not Infringements Under the 7 U.S.C. § 2544 Research Exemption**

The PVPA, 7 U.S.C. § 2544, provides that the use and reproduction of a protected variety for plant breeding or other bona fide research shall not constitute infringement. The Supreme Court in *J.E.M. Ag Supply, Inc.*, pointed out that the exemption allows a breeder to use the PVP protected plant to develop new inbred lines. 534 U.S. at 143. The Supreme Court recognized that, in contrast to the patent law, the PVPA research exemption's statutory purpose was to promote continued innovation in plant breeding.

The material facts of what Inari Belgium did with the Exhibit A patent deposit seeds are undisputed. SOF, ¶¶ 56-62, 64. Inari Belgium's activities qualify as bona fide research under the § 2544 research exemption. Inari Belgium used a contract research organization to sequence DNA derived from the patent deposit seeds to obtain information on the plant genetics. SOF, ¶¶ 56-64. The DNA sequence information was used in breeding research. No other use was made of the Exhibit A seeds, and the seeds themselves were not used for breeding. Inari's use of the Exhibit A patent deposit seeds was for bona fide research and qualifies for the research exemption under 7 U.S.C. § 2544.

Inari exported Exhibit B seeds and their progeny to Chile for use in a breeding program to develop new inbred corn varieties. SOF, ¶¶ 71, 83. When Inari purchased the patent deposit samples of the Exhibit B seeds, the underlying patents had expired (SOF, ¶¶ 68-70, 72-73), and the public was able to use the seeds free of patent infringement. Many of the PVP certificates expired shortly after. SOF, ¶¶ 74-82. The use of Exhibit B plants in breeding to create new inbred varieties is precisely the conduct that is non-infringing under the 7 U.S.C. § 2544 research exemption. The exemption covers the use of protected varieties to create new inbred lines in

10

furtherance of the research exemption's statutory purpose to promote continued innovation in plant breeding. *J.E.M. Ag Supply*, 534 U.S. at 143.

Summary judgment that Inari's activities do not constitute infringement under 7 U.S.C. §§ 2541(a)(1) and (2), § 2541(d), and § 2544 is proper.

### 4.    Corteva's Infringement Contentions Under 35 U.S.C.§ 271(b) (Counts V, VIII, XI, XIV & XVII)

Corteva alleged that Inari infringed claims 6, 8 and 12-13 of U.S. Patent No. 7,956,246 (the "'246 patent"); claims 1 and 12-13 of U.S. Patent No. 8,283,522 (the "'522 patent"); claims 1, 8, and 14-15 of U.S. Patent No. 8,575,434 (the "'434 patent"); claim 8 of U.S. Patent No. 8,680,363 (the "'363 patent"); and claims 1 and 2 of U.S. Patent No. 9,695,441 (the "'441 patent") under 35 U.S.C.§ 271(b) by inducing ATCC to sell samples of patent deposit seeds.

#### a.    There Can Be No Inducement of Another Authorized by the Patentee to Perform the Allegedly Infringing Act

Liability for inducement of infringement under 35 U.S.C. § 271(b) may arise only if there is direct infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 923 (2014). The defendant also must have known that the induced acts of the third party, here the ATCC selling patent deposit samples, would infringe the patent. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015). Section 271(a) provides that infringement occurs when someone sells the patented invention "without authority." Any language or conduct of the patentee from which a person may properly infer that the owner consents to the sale of the patented subject matter constitutes a license and defense to infringement. *McCoy v. Mistuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995). If all the acts induced were authorized, those acts cannot give rise to liability for patent infringement. *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC.*, C.A. No. 17-189-LPS-CJB, 2019 WL 4451364, at *3 (D. Del. Sep. 13, 2019).

11

        **b.**      **ATCC Did Not Directly Infringe the Asserted Patents Because Corteva Authorized ATCC to Sell Patent Deposit Seeds and Inari Therefore Is Not Liable for Inducing Infringement Under § 271(b)**

Corteva expressly authorized ATCC to make the patent deposits available to the public. SOF, ¶¶ 2, 3, 5, 6, 8, 9, 11, 15, 16, 19-23. All the patent deposits at issue in Corteva's claims of infringement of the Asserted Patents were made under the Budapest Treaty. SOF, ¶¶ 2, 5, 8, 11, 15, 23. The ATCC MTA entered by Inari Belgium on July 14, 2019 to purchase the patent deposit seeds provided that the terms of the applicable law or regulation, including US patent regulations, and the Budapest Treaty shall govern. SOF, ¶ 30. Not only were ATCC's acts of providing Inari with samples from these patent deposits authorized by Corteva, ATCC, as a Budapest Treaty Depository and U.S. Patent Office-recognized depository, was obligated under the Budapest Treaty and patent regulations to provide Inari with the requested samples from the patent deposits. SOF, ¶ 1. ATCC is therefore not a direct infringer under § 271(a). Since there was no direct infringement by ATCC, Inari cannot be liable for inducing ATCC to infringe under 35 U.S.C. § 271(b). Moreover, the promises and representations Corteva made in the patents and during prosecution are a defense to inducing infringement since a member of the public could only infer that Corteva consented to the sale of the patent deposit samples. *McCoy*, 67 F.3d at 920.

After it was notified that Inari had accessed the patent deposits, Corteva attempted to have ATCC retrieve the patent deposits purchased by Inari. SOF, ¶ 26. It sought to persuade ATCC with the same argument it makes in this action, that patent deposits cannot be exported. Such export and use restrictions were proposed when the patent deposit rules were amended and rejected by the USPTO in promulgating 37 C.F.R. § 1.808. SOF, ¶ 28. ATCC refused Corteva's demands. SOF, ¶ 27.

Contrary to its allegations here, Corteva engages on a massive scale in the same acts that it alleges are infringement under § 271(b) when done by Inari.  Corteva routinely purchases competitor's patent deposit seeds from ATCC, ███████████████████████████

██████████████████████████████. SOF, ¶¶ 98-101.  Corteva even criticized Inari's invalidity arguments in USPTO proceedings brought by Inari to invalidate Corteva patents, arguing that Inari could and should have obtained a sample of the patented seed from an ATCC patent deposit to sequence its DNA and compare it to the prior art in support of its invalidity arguments.  SOF, ¶¶ 102-104.  Induced infringement claims under § 271(b) based on a patent depository furnishing samples of a patent deposit is anathema to the basic tenets of the Patent Laws.  Summary judgment of noninfringement under § 271(b) is appropriate.

**5.      Corteva's Infringement Contentions Under 35 U.S.C. § 271(a) (Counts III, VI, VIV[2], XII & XV)**

Corteva alleges that the same claims Inari infringed under 35 U.S.C.§ 271(b) were infringed under 35 U.S.C.§ 271(a) when ISU conducted the USDA-standard testing of corn seeds to confirm they were free of a contaminating pathogen.

**a.      Soybean Seeds Were Never Sent to or Tested by ISU and Therefore There Is No Infringement of the '363, '441, and '522 Patents Under 35 U.S.C. §  271(a) (Counts VIV, XII, and XV)**

It is undisputed that phytosanitary testing was not performed by ISU on soybean seeds from PTA-11336, alleged to infringe the '522 patent, and PTA-12006, alleged to infringe the '363 and '441 patents.  SOF, ¶ 54.  Corteva has not dismissed these claims even though there is no factual basis for the allegations of infringement under 35 U.S.C. § 271(a) of the '522, '363, and '441 patents based on phytosanitary testing.  Summary judgment dismissing Counts VIV, XII and

---

[2]  Corteva's Second Amended Complaint identifies its ninth cause of action as "Count VIV." D.I. 148 at p.74.  For clarity, Inari uses the same nomenclature.

XV is, therefore, appropriate.

> **b.      The Export of Patent Deposit Corn Seeds to Belgium Required a USDA Phytosanitary Certificate that the Seeds Were Free of a Contaminating Bacterial Pathogen**

Inari Belgium engaged IE-SCS to ship the seeds it acquired from ATCC to Belgium. IE-SCS was an independent contractor and not Inari's agent. SOF, ¶ 35. IE-SCS arranged with the USDA for phytosanitary certificates as required by Belgium for importation of corn seeds. SOF, ¶ 32. Belgium required that the corn seeds be certified by the USDA as negative for the pathogen Stewart's Wilt. SOF, ¶¶ 36, 49, 67. A USDA-designated inspector selected the seeds from ATCC patent deposit samples that IE-SCS shipped to ISU, a designated USDA testing facility. SOF, ¶¶ 38, 41, 42. Two or three seeds from PTA-11384 ('246 patent) and PTA-11336 ('434 patent) were included in the samples comprising hundreds of seeds. SOF, ¶¶ 43-46. ISU performed the USDA standard ELISA antibody test for the Stewart's Wilt bacterial pathogen. SOF, ¶¶ 39, 40, 47, 48. The seeds were destroyed in the test. SOF, ¶ 50. The test was negative for contamination, the USDA inspector issued the phytosanitary certificate, and IE-SCS shipped the seeds to Inari Belgium. SOF, ¶¶ 53, 55. Neither IE-SCS nor Inari instructed or directed ISU on the USDA standard testing procedure. SOF, ¶¶ 51-52.

> **c.      Inari Is Not Vicariously Liable as a Direct Infringer for Acts Performed by ISU That Were Not Under Its Direction or Control**

To hold an entity responsible under 35 U.S.C. § 271(a) for another's performance of an infringing act, one must prove that the entity directed or controlled the other's performance or that the entity and the other form a joint enterprise. *Akamai Techs.*, 797 F.3d at 1025; *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017). Neither Inari nor IE-SCS directed or controlled ISU's performance of the USDA-standard test for contamination. SOF, ¶ 52. ISU performed the USDA-approved ELISA test for Stewart's Wilt as a qualified USDA

14

testing laboratory. SOF, ¶¶ 37-39, 40-43. There is no basis for finding Inari vicariously liable for an allegedly infringing act by ISU, an act that was itself not patent infringement, as explained below.

**d.    The Phytosanitary Testing Conducted by ISU at the Direction of the USDA Is Not an Infringing Use Under 35 U.S.C. § 271(a)**

An infringing "use" under 35 U.S.C. § 271(a) must be a beneficial use of the invention. The ordinary meaning of "use" under 35 U.S.C. § 271(a) is to put the invention into action or service in some beneficial form. *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005); *Centillion Data Sys.*, 631 F.3d at 1284 (to "use" a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it); *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 947 (Fed. Cir. 2018) (non-precedential, affirming dismissal of direct infringement claim based on "use" where complaint failed to explain how the defendant put each claimed component into service and failed to plausibly allege that defendant obtained a benefit).

The phytosanitary test performed by ISU on corn seeds did not put the claimed seeds of the '434 and '246 patents into service. The test destroyed all the seeds. ISU did not grow the seeds into plants, use them as food, process them into some other item or sell them. SOF, ¶ 50. The sole purpose of the test was to confirm that the seeds were not contaminated. SOF, ¶ 49. Stewart's Wilt is unrelated to the claimed subject matter of the '246 and '434 patents. Neither ISU, IE-SCS, nor Inari obtained from the phytosanitary testing any benefit related to the subject matter of the asserted claims of the '246 and '434 patents.

Corteva contends that Inari benefited because the testing of the seeds enabled the export of the remaining seeds to Belgium. This is an illusory benefit since the export of patent deposits was authorized by Corteva and the phytosanitary certificate was required to effectuate the export of the

15

patent deposits.  SOF, ¶¶ 2, 3, 5, 6, 8, 9, 11, 15, 16, 19-23.  The export of the claimed seeds themselves, putting aside the erroneous arguments under § 271(f)(2) addressed below, is not an infringement.  *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1366 (Fed. Cir. 1998) ("neither export from the United States nor use in a foreign country of a product covered by a United States patent constitutes infringement"); *Amgen, Inc. v. Elanex Pharms., Inc.*, No. C93-1483D, 1996 WL 84590, at *3 (W.D. Wash. Feb. 6, 1996) (mere possession of infringing cells or shipping them outside the U.S. was not an infringing use).  Summary judgment dismissing Corteva's claims under 35 U.S.C. § 271(a) for direct infringement of the Asserted Patents is appropriate.

### 6.    Corteva's Infringement Contentions Under 35 U.S.C. § 271(f)(2) (Counts IV, VII, X, XIII & XVI)

Corteva alleges that Inari infringed claims 1, 3-4, and 10-11 (to a corn plant) of the '246 patent; claim 2 (to a plant) of the '522 patent; claims 2-7, 9, and 14-15 (to a plant or corn plant) of the '434 patent; claims 7 and 9 (to a soybean plant) of the '363 patent; and claim 2 (to a soybean plant or seed) of the '441 patent under 35 U.S.C.§ 271(f)(2) by supplying patent deposit seeds from the U.S. intending their combination in Belgium with water, air, light, nutrients and physical support to grow plants.  Corteva's claims fail as a matter of law based on the undisputed facts.

### a.    Infringement Under 35 U.S.C. § 271(f)(2) Requires that the Infringer Supply from the U.S. an Uncombined Component of an Invention Intending It Be Combined in an Infringing Manner Outside the U.S.

Section 271(f)(2) was enacted in response to the decision in *Deepsouth* to protect against the export of a component of a multicomponent patented invention that in uncombined form would not infringe in the U.S.  *See* 406 U.S. 518 (1972).  *See also Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 152 (2017).  Section 271(f) is an exception to the rule that U.S. patent law does not apply extraterritorially and should not be given an expansive interpretation.  *Microsoft*, 550 U.S.

16

at 442.  Section 271(f)(2) provides that only acts of supplying a component from the U.S. "*without authority*" constitute infringement.  Section 271(f)(2) prevents circumventing U.S. Patent Law by exporting a non-infringing component to be assembled abroad in a manner that would be infringing if assembly had been done in the U.S.  For § 271(f)(2) to apply, the exported product cannot infringe independently both prior to assembly under § 271(a) and after assembly with other components outside the U.S. under § 271(f)(2).  *Trs. of Columbia Univ.,* 150 F. Supp. 2d at 204-05.  Corteva's allegations under § 271(f)(2) fail for multiple reasons.

###### b.      Because Corteva Authorized the Export of the Patent Deposit Seeds, There Is No Infringement Under 35 U.S.C. § 271(f)(2)

Section 271(f)(2) provides that it is only the supply of a component from the U.S. "*without authority*" that constitute infringement.  As set forth above, in making deposits PTA-11506, PTA-11384, PTA-11336 and PTA-12006, (SOF, ¶¶ 2, 3, 5, 6, 8, 9, 11, 15, 16, 18, 21, 22, 23), Corteva authorized the supply of seeds from these patent deposits to the public, including foreign members of the public (SOF, ¶ 28).  As a result, the export of these seeds is not an infringement under § 271(f)(2).

###### c.      A Seed is Not a Component of a Plant

The claims asserted under § 271(f)(2) are all directed to a "plant."  Corteva alleges that a seed is a component of a plant that is combined outside the U.S. with other components, water, light, air, nutrients from soil, and physical support to grow a plant.  Corteva relies on expert opinion to support its position and ignores facts that cannot reasonably be disputed.

The regulation governing the deposit of biological material for patents, 37 C.F.R. § 1.801, defines biological material as including material that is capable of self-replication either directly or indirectly, including "seeds."  Biological material such as a "seed" that self-replicates into a plant does not require assembly with other components.

17

A seed is the embryonic stage of a plant that, under appropriate conditions, continuously grows to become a mature plant. SOF, ¶ 87. It is not a component of the mature plant it grows into; it is the plant. Corteva itself, including in the Asserted Patents, also equates seeds and plants. Claims 6-9 of the '246 patent claim "wherein said plant is a seed." '246 patent at 78:36 ("6. The plant of claim 1, wherein said plant is a seed."). The '434 and '246 patents state that the term "plant" includes reference to "seeds." *See* '434 patent at 10:66-11:1; '246 patent at 11:18-31. All the patent deposits at issue were made to enable claims to a plant and not as "components" of a combination. The court in *Regents of the University of California v. California Berry Cultivar* faced a similar situation when it granted summary judgment of non-infringement under § 271(f)(1) of a plant patent claiming strawberry germplasm. 2017 WL 9531948, at *6 (N.D. Cal. 2017). The court, citing the Supreme Court's decision on § 271(f)(1) in *Life Techs.* found that "strawberry plants do not have 'components' that can be combined." *Id.* (citing *Life Techs.*, 580 U.S. at 150).

The appropriate conditions or environmental factors necessary for the development of a seed into a mature plant, include water, light, air, nutrients, and heat (measured by temperature). SOF, ¶¶ 86, 88. Corteva erroneously recharacterizes water, light, air, nutrients from the soil, and physical support as "components" of a plant intended to be combined with a seed. Neither Corteva nor its experts explain how a person can make the alleged combination. For example, how is light combined or assembled with a seed? Is the assembly of the purported components contemporaneous or does it occur over hours, days, weeks or months? How is physical support (not defined) a component of a plant? According to Corteva, temperature a measurement of kinetic energy (heat), is an environmental condition, but light (sunlight) energy is a component. SOF, ¶ 86. Corteva's conclusory and inconsistent statements are insufficient to defeat summary judgment.

18

Corteva also does not explain where in the asserted claims or in the specifications of the Asserted Patents there is a description of the components or a combination invention of a seed, water, light, air, nutrients from the soil, and physical support assembled into a plant, or how a person skilled in the art, for example, assembles light and air to combine with a seed. SOF, ¶ 86. In essence, Corteva's allegations construe the asserted claims to describe the natural process whereby plants are propagated from seeds. This is not a combination that Corteva invented. The natural phenomena and process of plant growth are not patentable subject matter. *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012). Corteva's arguments can also be viewed as construing the claims to comprise a method for combining "components" to grow plants that occurs over an extended, undefined period. Section 271(f)(2) is not applicable to method claims. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1365 (Fed. Cir. 2009). The asserted claims do not support an allegation of infringement under § 271(f)(2).

### d. The Claimed Seeds Are Commodities and Have Substantial Non-infringing Uses Outside the Asserted Claims

For infringement under § 271(f)(2), Corteva must prove that the supplied seeds are "especially made or especially adapted for use in the invention of the asserted claims *and* not a staple article or commodity of commerce suitable for substantial infringing use." 35 U.S.C. § 271(f)(2) (emphasis added). The seeds here embody the claimed transgenic events and herbicide resistant gene that are the basis for commodities in commerce and each have substantial non-infringing uses outside of the asserted claims for plants. Corteva disputes that the patent deposit seeds were commercially available and contends that their only use is as components to combine with water, light, etc., to grow plants. However, the transgenic events represented by the deposited seeds PTA-11336, PTA-11384, PTA-12006 and PTA-11506 are the foundation of Corteva's corn and soybean seed sales franchise. SOF, ¶¶ 89-97.

19

Corn seeds comprising transgenic events represented by PTA-11384 and PTA-11506 are sold in the U.S. and exported as commodity grain and are used to produce food, animal feed, high fructose corn syrup, vegetable oil and ethanol. SOF, ¶¶ 89-93. PTA-11384, PTA-12006 and PTA-11506 are representative of the transgenic events that are the basis of Corteva's best-selling Qrome®, Herculex XTRA®, and Optimum AcreMax® products and make up ██████████ ████████████████ Indeed, according to Corteva's experts, ██████████████ ████████████████████████████ SOF, ¶¶ 89-97.

Soybean seeds containing the transgenic event represented by PTA-12006 and PTA-11336 are sold in the U.S. and exported as commodity soybean and used as food, animal feed, processed food products, plastics, lubricants, and vegetable oil. SOF, ¶¶ 94-97. According to Corteva, ██ ██████████████████████████████████████ ████████████████████████████ There are multiple uses of these seeds that do not infringe the plant claims as asserted and construed by Corteva under § 271(f)(2). The seeds are sold in the U.S. to farmers to grow plants to produce larger quantities of seed covered by the Asserted Patents that are sold in commerce as commodities.

A supplier may be liable for supplying from the U.S. "a single component under § 271(f)(2) if it is especially made or especially adapted for use in the invention and not a staple article or commodity . . . [H]owever, [] when as in this case a product is made abroad and all components but a single commodity article are supplied from abroad, this activity is outside the scope of the statute." *Life Techs. Corp.*, 580 U.S. at 152 (2017). Here, the alleged component seeds of PTA-11384, PTA-11506 and PTA-12006 are single commodity articles that according to Corteva are combined with the purported "components," light, air, etc., that are by nature existing in the environment in Belgium. The supply of the seeds from the U.S. is outside the scope of § 271(f)(2).

20

*Id.* at 152.

e.    **Corteva's Application of § 271(f)(2) Is a Prohibited Extraterritorial Application of U.S. Patent Law**

As discussed above, Corteva alleges that the same seeds that are the component supplied for infringement under § 271(f)(2) are also alleged to be the patented invention of other claims infringed in the U.S. by phytosanitary testing or by sale of patent deposits by ATCC under §§ 271(a) and (b). They cannot be both. Section 271(f) was enacted in response to the decision in *Deepsouth* to fill a gap in the enforceability of patent rights by reaching components of a combination invention that are manufactured in the U.S. but assembled overseas in an infringing manner beyond the reach of the statute in its prior formulation. *See* 406 U.S. 518 (1972); *Life Techs. Corp.*, 580 U.S. at 152 (2017). The seeds here are alleged to be the patented invention within the reach of the statute when used or sold in the U.S. As the Supreme Court stated in *Microsoft*, "foreign law alone, not United States law, currently governs the manufacture and sale of components of patented inventions in foreign countries." 550 U.S. at 456. Corteva has obtained corresponding European Patents designating Belgium for each of the Asserted Patents and the '655 patent. SOF, ¶¶ 4, 7, 10, 12, 14, 17. Corteva's remedy, if any, lies in enforcing its European patents. *Microsoft*, 550 U.S. at 456. There is no factual or legal basis for infringement under § 271(f)(2). Section 271(f) is an exception to the rule that U.S. patent law does not apply extraterritorially and should not be given an expansive interpretation. *Id.* at 442.

The export of a patented invention does not constitute infringement, even if the use or sale of the invention in the U.S. otherwise infringes under § 271(a). *Johns Hopkins Univ*, 152 F.3d at 1366; *Wesley Jessen v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228, 231 (D. Del. 2003). Here, Corteva alleges both that the same seeds give rise to infringement when sold or used in the U.S. under §§ 271(a) and (b) and that they are a "component" in order to allege infringement under

21

§ 271(f)(2).  The export of seeds claimed as the complete invention in the Asserted Patents does not constitute infringement under § 271(f)(2).  *See Trs. of Columbia Univ.*, 150 F. Supp. 2d at 204-05.

      **7.**      **Corteva Is Legally Estopped From Asserting Patent and PVPA Infringement Claims to Restrict Foreign Members of the Public From Accessing Patent Deposit Seeds (Counts I-XVII)**

In addition to expressly authorizing public access to the patent deposits, Corteva, by obtaining both PVP and patent protection for the same varieties, is precluded from using its PVPA and patent rights to restrict access to patent deposits under the principles of legal estoppel.

Legal estoppel applies in circumstances where a party has granted a definable right for valuable consideration and then has attempted to derogate or detract from that right.  The grantor is estopped from taking back to any extent that for which it has already received consideration. *AMP Inc. v. United States*, 389 F.2d 448, 452 (Fed. Cl. Ct. 1968), *cert. denied*, 391 U.S. 964 (1968).  A formal finding of equitable estoppel is not a prerequisite to legal estoppel.  *See id.* at 453-454; *Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997). The primary difference between the analysis for legal estoppel and that for equitable estoppel is that legal estoppel is based on an affirmative grant of consent or permission to make, use, or sell. Equitable estoppel, on the other hand, focuses on "misleading" conduct suggesting that the patentee will not enforce patent rights.  *Wang Laby's*, 389 F.3d at 1581.

The definable right Corteva granted was public access to the patent deposits in exchange for the valuable consideration of obtaining patents.  Corteva promised the USPTO and the public that the patent deposits would be available to the public through ATCC after the patents were granted.  SOF, ¶¶ 2, 3, 5, 6, 8, 9, 11, 15, 16, 18-25.  The file histories of the patents make clear that allowance of the applications was based on Corteva making patent deposits to enable claims.  In exchange, Corteva received valuable consideration in the form of 248 utility patents to the same

22

varieties as in the Asserted PVP Certificates and five utility patents for transgenic plants. Having received such consideration, Corteva is legally estopped from detracting from the limited right of the public to access the patent deposits that are essential to the description of the claimed inventions. *See AMP*, 389 F.2d at 453-54.

The Supreme Court in *J.E.M. Ag Supply* observing that there were differences in the requirements and coverage of utility patents and PVP certificates, found the differences between the statutes did not create irreconcilable conflicts because the protections afforded by a patent are more stringent and greater than that of a PVP certificate. 534 U.S. at 141. Once the benefit of patent protection has been granted, access by the public to the patent deposit is mandated by the Patent Law. *Id*. In a situation where the PVP certificate owner has also obtained patent protection for the same variety, it should be legally estopped from asserting PVP and patent infringement to restrict access to the patent deposit. Corteva's promises during prosecution and in the patents are a grant of consent to the public to access the patent deposits from ATCC. This consent, while not a license to patentee's patent and PVP rights, permits foreign members of the public to export from the U.S. samples of the patent deposit to effectuate mandatory access to the patent deposit, exactly what Inari did here.

### G.   CONCLUSION

Corteva's infringement allegations in effect restrict the public's right to access the description of the invention in utility patents claiming inbred plant varieties and transgenic plants. This is wrong as a matter of law. Inari respectfully requests an order of summary judgment of noninfringement of the Asserted PVP Certificates and Asserted Patents in Counts I-XVII.

## II.   INARI'S MOTION TO EXCLUDE UNDER *DAUBERT* AND RULE 702

### A.   INTRODUCTION AND SUMMARY OF INARI'S *DAUBERT* ARGUMENTS

Inari moves to exclude all opinions of Dr. Christopher Vellturo (Corteva's damages expert) and certain opinions of Dr. Susan Wessler (Corteva's technical expert on corn), Dr. Stephen Dellaporta (Corteva's technical expert on soy), and Dr. Mark Mikel (Corteva's PVP expert).

Dr. Vellturo's damages opinions should be excluded in their entirety because (1) his computation of reasonable royalty damages is impermissibly based on foreign conduct that cannot give rise to damages for infringing U.S. patents; (2) his computation of a reasonable royalty replaced the hypothetical forward-looking negotiation of what the parties would have anticipated as of the hypothetical negotiation date when alleged infringement began with a backward-looking inquiry based on Inari projections, made years after the hypothetical negotiation date, of sales that never materialized; (3) his calculations of economic loss and "unjust enrichment" damages for Inari's alleged violation of Mass. Gen. Law 93A are based on future contingent projected losses by Corteva or gains to Inari, but Massachusetts law permits only actual losses suffered by the plaintiff or actual unfair gains obtained by the defendant to be recovered, not speculative future losses or gains, and Dr. Vellturo did not otherwise compute Corteva's "actual damages" under the statute; and (4) Dr. Vellturo's estimate of breach of contract damages is based on the speculative occurrence of future projected events that are far too remote and not sufficiently certain to provide a reliable basis for contract damages.

The opinions of Corteva's technical experts Drs. Wessler, Dellaporta and Mikel as to the intent and state of mind of Inari based on inferences the experts make from Inari's internal documents and the testimony of Inari witnesses should be excluded for usurping the jury's role.

24

**B.    FACTUAL BACKGROUND RELEVANT TO INARI'S *DAUBERT* MOTION**

**1.    Dr. Vellturo's Damages Opinions**

Dr. Vellturo estimates Corteva's purported damages for Inari's alleged infringement of the Asserted Patents, Inari's alleged violation of Mass. Gen. Law 93A, and Inari's alleged breach of its MTAs with ATCC for a total range of ████████████████████████ JA2938 at JA2944-JA2947 (Vellturo Op. Rep. ¶¶ 9-16).  There is no dispute that ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Corteva SOF ¶ 327; Declaration of Hallie Kiernan ("Kiernan Decl."), Ex. 2 (Vellturo Dep. Tr.) at 84:22-25; 86:6-13; JA1955 at JA1982-JA1988 (Goodwin Reb. Rep. ¶¶ 45-53).

**Patent Infringement Damages.**    Dr. Vellturo estimates reasonable royalty patent infringement damages of ████████ based on the outcome of a Hypothetical Negotiation that would have occurred in May 2020 (the date of the first alleged infringement) for a lump-sum, ████████████████████████████████ (JA2938 at JA2944-JA2945 (Vellturo Op. Rep. ¶ 11)) that would grant Inari nonexclusive ████████████████████████

████████████████████████████████████████████████████████

████████████ (*id.* at JA2994 (Vellturo Op. Rep. ¶ 115 (emphasis added))).  Dr. Vellturo's royalty estimate is based on ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████    *Id.* at JA2997-JA3004 (Vellturo Op. Rep. ¶¶ 124-138).

25

Dr. Vellturo neither estimated damages for each of the accused acts separately alleged to be infringing under 35 U.S.C. §§ 271(a), (b) and (f)(2) nor apportioned his lump sum to the accused acts. Instead, Dr. Vellturo estimated patent damages by considering Inari's accused conduct as a whole, which he understood to comprise the totality of at least the following: inducing ATCC to sell Corteva's patented seeds to Inari "for commercial use;" "arranging" for phytosanitary testing of Corteva's seeds in the U.S. before export; arranging for the export of "components of Corteva's Asserted Patented Inventions that ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* at JA2977-JA2981 (Vellturo Op. Rep. ¶¶ 82-88). Dr. Vellturo estimated reasonable royalty damages based entirely on ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ JA4182 at JA4184 (Exhibit B (Corteva's Third Supplemental Infringement Contentions) at 3); JA2938 at JA2998-JA3001 (Vellturo Op. Rep. ¶¶ 128-134). Dr. Vellturo conceded that his estimate of patent damages is based on what he refers to as ████████████

████████████████████████ Kiernan Decl., Ex. 3 (Vellturo Reply Rep.) ¶ 25 (emphasis added); *see also* Kiernan Decl., Ex. 2 (Vellturo Dep. Tr.) at 226:24-228:25. Dr. Vellturo also conceded that he has no opinion as to the amount of Corteva's infringement damages if the accused infringing conduct were ***not*** to include ████████████████████████████████

████ Kiernan Decl., Ex. 2 (Vellturo Dep. Tr.) at 57:22-58:19.

**Damages Under Mass. Gen. Law 93A.** For Inari's alleged violation of Mass. Gen. Law 93A, Dr. Vellturo calculated future projected losses by Corteva of ████████████, which reflects

████████████████████████████████████████████████████████

26

 JA2938 at JA3037-JA2938 (Vellturo

Op. Rep. ¶ 224).  Dr. Vellturo also calculated "unjust enrichment" damages of ████████,

which reflects his estimate of the expected future profits Inari stood to gain through ████

████████████████████████████████████████████████ *Id.*

at JA3039 (Vellturo Op. Rep. ¶ 227-228).

**Breach of Contract Damages.**  For Inari's alleged breach of the ATCC MTAs, Dr.

Vellturo estimates damages of ██████████  *Id.* at JA2949 (Vellturo Op. Rep. ¶ 232).  Dr.

Vellturo calculated this amount by estimating the reduction to Corteva's forecasted future

operating income that would result from future U.S. sales of soy and corn by Corteva that would

be displaced by ████████████████████████████████████████████

████████████████████████ *Id.* at JA3040-JA3041 (Vellturo Op. Rep. ¶¶ 230,

232).

### 2.    The Opinions of Corteva's Technical Experts

Dr. Wessler opines that Inari infringed the Asserted Patents relating to corn under 35

U.S.C. §§ 271(a), (b) and (f)(2).  JA2299 at JA2304-JA2305 (Wessler Op. Rep. ¶¶ 8-10).  Dr.

Dellaporta opines that Inari infringed the Asserted Patents relating to soy under 35 U.S.C.

§§ 271(b) and (f)(2).  JA2596 at JA263 (Dellaporta Op. Rep. ¶¶ 8-9).  Dr. Mikel opines that Inari

infringed the Asserted PVP Certificates under 7 U.S.C. § 2541(a)(2).  JA2108 at JA2155 (Mikel

Op. Rep. ¶ 124).  None of them have any special expertise or training in psychology or human

motivations.  Yet, in their infringement opinions, each purport to opine on what Inari "planned,"

"knew," and "intended."  *See* Attachment A (compilation of expert opinions on intent, motive, or

state of mind).

### C.    LEGAL STANDARD RELATING TO INARI'S *DAUBERT* MOTION

Federal Rule of Evidence 702 sets out the requirements for the admissibility of expert testimony and states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (c) the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702.  Rule 702 places district courts in the role of gatekeeper requiring courts to "ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993)).  The *Daubert* inquiry "embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider ex re. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  Qualification examines the expert's specialized knowledge, reliability examines the grounds for the expert's opinion and fit examines whether the testimony is relevant and will assist the trier of fact.  *Id.*; *Ecolab, Inc. v. Dubois Chems., Inc.*, C.A. No. 21-567-RGA, 2023 U.S. Dist. LEXIS 191428, at *6 (D. Del. Oct. 25, 2023).  Expert evidence that does not relate to an issue in the case is not helpful to the jury and is subject to exclusion.  *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000).

### D.    ARGUMENT

#### 1.    Dr. Vellturo's Damages Opinions Should Be Excluded

##### a.    Dr. Vellturo's Reasonable Royalty Damages Are Impermissibly Based on Foreign Uses of the Patented Inventions That Are Not Accused of Infringement and Are Not Subject to U.S. Patents

Under 35 U.S.C. § 284, upon a finding of infringement, a patent owner is entitled to an award of "damages adequate to compensate *for the infringement*" (emphasis added).  It is

28

axiomatic that foreign use of a patented invention is not an infringement of a U.S. patent that gives rise to damages under Section 284. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013) ("a defendant's foreign exploitation of a patented invention . . . is not infringement at all") (citing *Brown v. Duschesne*, 60 U.S. 183, 195 (1856) ("And the use of [the invention] outside of the United States is not an infringement of [the patent owner's] rights, and he has no claim to any compensation for the profit or advantage the party may derive from it")); *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 2:18-CV-00014-JRG-RSP, 2019 U.S. Dist. LEXIS 111892, at *14 (E.D. Tx. June 11, 2019) ("[A] plaintiff cannot recover under § 271(a) for purely foreign manufacturing, use, sales, or offers because those acts do not constitute infringement under § 271(a).").

A reasonable royalty must compensate the patent owner for "the actual infringement that took place – no more and no less." *Oracle America, Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1117 (N.D. Cal. 2011) (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)). The hypothetical license, therefore, must be tailored to the amount and type of infringement alleged and that actually occurred. *Id*. "The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015).

Corteva's infringement claims are based on alleged acts that occurred in the U.S.: allegedly inducing ATCC to infringe the patents *in the U.S.* by selling patent deposits to Inari (*see* Counts III, VI, VIV, XII and XV alleging § 271(b) indirect infringement); allegedly arranging for pathogen testing *in the U.S.* (*see* Counts III, VI, VIV, XII and XV alleging § 271(a) direct infringement); and exporting the seeds *from the U.S.* (*see* Counts IV, VII, X, and XVI alleging §

29

271(f)(2) infringement by export of a component).  Corteva does not contend in this action that Inari's edited versions of Corteva's GM traits infringe any of the Asserted Patents.  JA4182 at JA4184 (Exhibit B (Corteva's Third Supplemental Infringement Contentions) at 3).  Corteva's entitlement to damages, if any, under Section 284 is limited to damages arising from the domestic acts of purchasing seeds from ATCC, testing the seeds for pathogens, and exporting the seeds abroad.  *See WesternGeco v. ION Geophysical Corp.*, 585 U.S. 407, 415 (2018) (damages for infringement under § 271(f)(2) are those arising from domestic act of "suppl[ying] in or from the United States"); *Brumfield v. IBG LLC*, 97 F.4th 854, 875 (Fed. Cir. 2024) (damages for infringement under § 271(a) are limited to those arising from domestic acts of making, using, offering to sell and selling in the U.S.).

Dr. Vellturo's patent damages opinion runs afoul of these principles and is subject to exclusion for lack of "fit" because it relies entirely on



. Dr. Vellturo calculated his reasonable royalty by determining Inari's "minimum willingness to pay" and Corteva's "maximum willingness to accept" for a license based upon

*Id.* at JA2978-JA2979 (Vellturo Op. Rep. ¶ 85) ("Inari . . . exported the seeds to its Ghent, Belgium location . . .  In Ghent, Inari began to germinate (i.e., grow into plants by providing water, nutrients, etc.) and then sequence certain of the ATCC-obtained Corteva seeds lines



████████████); Kiernan Decl., Ex. 2 (Vellturo Dep. Tr.) at 226:24-228:25; Kiernan Decl., Ex. 3 (Vellturo Reply Rep.) ¶ 25.  The projected sales of products ████████████ ███████████████████████████ forms the entire basis for Dr. Vellturo's reasonable royalty damages.  This is reflected in Dr. Vellturo's hypothetical license, which includes the ██████████████████████████—activity that is not and could not be alleged to be infringing.  JA2938 at JA2994 (Vellturo Op. Rep. ¶ 115); JA4182 at JA4184 (Exhibit B (Corteva's Third Supplemental Infringement Contentions) at 3).  Inari's alleged extraterritorial use of Corteva's seeds to develop modified versions of Corteva's patented inventions is an independent, intervening non-infringing act that cuts off the chain of causation between any domestic acts of infringement and any future sale of products incorporating gene-edited versions of Corteva's GM traits.  *Power Integrations*, 711 F.3d at 1371-72 (citing *Morrison v. Int'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010)).

Dr. Vellturo did not otherwise calculate a reasonable royalty limited █████████ █████████████████████ Kiernan Decl., Ex. 2 (Vellturo Dep. Tr.) at 57:22-58:19. Because Dr. Vellturo's reasonable royalty damages opinion is based on foreign acts that are not and could not be alleged to infringe, his patent damages opinion is not relevant to any issue in the case and should be excluded under Rule 702.



Dr. Vellturo's Hypothetical Negotiation is also based on pure speculation. It uses ████ █████████████████████████████ ██████████████████████████ ████████████ JA2938 at JA2998-JA2999 (Vellturo Op. Rep. ¶ 129).  Dr. Vellturo explains that he did not rely on Inari's ███ model because Inari's 30(b)(6) witness, Clay Graham, testified that ██████████████████████. *Id*.  Vellturo dismissed the ███ model,

rather than account for it, because it did not provide a basis for his excessive lump-sum reasonable royalty conclusion.  JA2938 at JA2998-JA2999 (Vellturo Op. Rep. ¶¶ 129-30).  Graham testified that ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████.  JA806 at J891-JA894 (Graham Dep. 299:15-312:18).  Most significantly for purposes of the May 2020 Hypothetical Negotiation, Inari's ████ projections did not ██████████████

███████████████████████████████████████████████████████

██████████████████████████.  *Id.* at JA893-JA894 (Graham Dep. 310:24-312:18).  Given Inari's █████████, the May 2020 Hypothetical Negotiation would be under radically different circumstances than the negotiation Dr. Vellturo describes using the later ███████████

█████████.  It would have been a negotiation for a license to Corteva's Asserted Patent and events,

███████████████████████████████████████████████████████

██████    JA1955 at JA1961-JA1964, JA1992-JA1994 (Goodwin Reb. Rep. ¶¶ 9, 60-62).  Dr. Vellturo's opinion based on post-hoc projections is not relevant to what the parties would have negotiated in May 2020 and is therefore speculative and unreliable and should be excluded under Rule 702.  *Opticurrent, LLC v. Power Integrations, Inc.*, C.A. No. 17-03597-WHO, 2018 U.S. Dist. LEXIS 215907, at *29 (N.D. Cal. Dec. 21, 2018) (while post-infringement evidence can be a relevant book of wisdom, "the book of wisdom is not a blank canvas on which an expert may consider any piece of evidence.") (citing *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014) (incorrect to replace "the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened")); *Syneron Med. Ltd. v. Invasix, Inc.*, No. 8:16-cv-00143, C.A. No. 8:16-cv-00143-DOC-KES, 2018 U.S. Dist. LEXIS 220514, at *24-26 (C.D. Cal. Aug. 27, 2018).

32

**b.    Dr. Vellturo's Opinion as to Damages Under Mass. Gen. Law Ch. 93A Is Irrelevant and Should Be Excluded**

Section 11 of Mass. Gen. Law 93A authorizes a court to award "actual damages" for a "loss of money or property" arising from a violation of the statute.  G.L. c. 93A § 11.  While Section 11 actual damages encompass reasonably foreseeable consequential losses arising from the violation, any loss must be actually suffered by the plaintiff and may not be "remote, speculative, hypothetical [or] not within the realm of reasonable certainty" to be recoverable. *Kitner v. CTW Transp., Inc.*, 53 Mass. App. Ct. 741, 748 (2002) (quoting *Lowrie v. Castle*, 225 Mass. 37, 51 (1916)).  If a plaintiff has not suffered any actual loss, the remedy is to obtain an injunction if the violation "may have the effect of causing [a] loss of money or property." G.L. c. 93A § 11.  Dr. Vellturo conceded that Corteva has not lost any profits because of Inari.  Kiernan Decl., Ex. 2 (Vellturo Dep. Tr.) at 86:6-13.  Instead, Dr. Vellturo opined that Corteva "*will likely*" in the future lose ▮▮▮▮▮▮ in sales "to competing products Inari *planned to develop* using the Corteva seeds it acquired through its deceptive practices."  JA2938 at JA3037-JA3038 (Vellturo Op. Rep. ¶ 224 (emphasis added)).  Whether such future losses ever materialize is based on multiple future contingencies, including completed product development, regulatory approval, and, ultimately, actual sales.  *See id.* at JA2964-JA2968 (Vellturo Op. Rep. ¶¶ 54-60).  Future potential losses based on such uncertain contingencies are not reasonably certain "actual damages" recoverable under Section 11.  *See Vicarious Surgical Inc. v. Tragakis*, C.A. No. 2284CV02321-BLS2, 2023 Mass. Super. LEXIS 36, at *9-12 (Apr. 27, 2023) (dismissing Section 11 claim where complaint alleged no actual loss by plaintiff or profit by defendant from use of plaintiff's proprietary information); *LightLab Imaging, Inc. v. Axsun Techs, Inc.*, 469 Mass. 181, 185-86 (2014) (noting that expert opinion as to Section 11 damages based on future lost profits excluded by trial court as speculative and conjectural as a matter of law).  Dr. Vellturo's opinion as to

33

potential future losses Corteva may suffer in the future is not relevant to Corteva's claim under Mass. Gen. Law 93A and, therefore, should be excluded under Rule 702.

Dr. Vellturo also purports to calculate "unjust enrichment" damages under Section 11 and estimates that "Inari's use of Corteva's Asserted Intellectual Properties enriched Inari by approximately ███████████." JA2938 at JA3038 (Vellturo Op. Rep. ¶ 225). However, Dr. Vellturo calculated such damages based on ████████████████ through anticipated future sales of products incorporating gene-edited versions of Corteva's traits. *Id.* at JA3038-JA3039 (Vellturo Op. Rep. ¶¶ 225-228). Under Massachusetts law, a plaintiff may not recover future potential gains by a defendant under an unjust enrichment theory, only gains actually obtained. *See Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982) (unjust enrichment is "the *retention* of money or property of another" and requires a "direct benefit *conferred* on one party by another") (emphasis added); *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329-30 (2005) (same); *Zelby Holdings, Inc. v. VideogeniX, Inc.*, 92 Mass. App. Ct. 86, 92 (2017) (unjust enrichment claim accrues upon actual receipt of benefit by defendant); *see also FinancialApps, LLC v. Envestnet, Inc.,* C.A. No. 19-1337-GBW-CJB, 2023 U.S. Dist. LEXIS 164136, at *27 (D. Del. Sept. 13, 2023) (striking unjust enrichment damages opinion based on projected future profits because "essence of an unjust enrichment claim is that one party *has* received money or a benefit at the expense of another") (quoting *Medidata Sols. v. Veeva Sys.*, 17 Civ. 589 (LGS), 2021 U.S. Dist. LEXIS 160919, at *10 (S.D.N.Y. Aug. 25, 2021) (striking expert opinion as to hypothetical "future unjust enrichment" profits and noting that elements of unjust enrichment are similar in every state)); *PMX Jewels Ltd. v. Ruvanni Inc.*, C.A. No. 14-243, 2014 U.S. Dist. LEXIS 60420, at *2 (E.D. Pa. May 1, 2014) ("[C]ourts have consistently found future benefits cannot be the basis of an unjust enrichment claim."). Dr.

34

Vellturo does not otherwise opine as to the quantum of any unfair gain Inari has actually obtained to date. His opinion as to purported unjust enrichment damages is, therefore, irrelevant and should be excluded under Rule 702.

### c. Dr. Vellturo's Opinion As to Corteva's Breach of Contract Damages Is Unreliably Speculative And Remote

Dr. Vellturo estimates damages for Inari's alleged breach of ATCC MTAs by calculating the ██████████████████████████████████████████████████████████ ████████████████████████████████████████████ and estimates ██████ ██████ in breach of contract damages. JA2938 at JA3040-JA3041 (Vellturo Op. Rep. ¶ 232). He failed to quantify an amount that would put Corteva in a position as if there had been no alleged breach. Dr. Vellturo's breach of contract damages are impermissibly speculative and remote and not reasonably certain under governing Virginia and New York case law[3] and his contract damages opinion should, therefore, be excluded as unreliable under Rule 702.

Under Virginia law, lost profits that are remote, speculative, contingent or uncertain are not recoverable. *Boggs v. Duncan*, 202 Va. 877, 883-84 (1961). Virginia courts have rejected damages claims as too remote and contingent to be recovered as a matter of law when the existence of damages depends on the occurrence of uncertain future events, including future market states, future commercial relationships and consumer choices. *Hop-In Food Stores, Inc. v. Serv-N-Save, Inc.*, 247 Va. 187, 193 (1994); *Mullen v. Brantley*, 213 Va. 765, 768-69 (1973). Virginia courts are particularly skeptical of future lost profits damages in cases involving new businesses with no prior sales history from which to predict future sales. *Mullen*, 213 Va. 768-69; *ITT Hartford Grp.*

---

[3] The ATCC patent deposit purchases at issue were subject to an MTA executed in 2019 that contains no governing law clause but identifies Virginia in its forum selection clause, and ATCC's principal place of business is in Virginia. JA16298 (2019 MTA). The 2022 MTA at issue in Corteva's breach of contract claims is governed by New York law. JA16294 (2022 MTA).

*v. Va. Fin. Assocs.*, 258 Va. 193, 202-03 (1999); *Whitehead v. Cape Henry Syndicate*, 111 Va. 193, 197 (1910).

New York courts similarly reject damages theories as too speculative and not reasonably certain when they depend on multiple future contingencies, such as successful product development, market launch, customer choices and the ability to sustain large-scale sales. *Kenford Co. v. Cnty. of Erie*, 67 N.Y.2d 257, 261-62 (1986), *aff'd*, 73 N.Y.2d 312 (1989); *Awards.com v. Kinko's, Inc.*, 42 A.D.3d 178, 185 (N.Y. App. Div. 2007); *Trademark Rsch. Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 333 (2d Cir. 1993). New York courts apply strict scrutiny of future lost profits damages when the case involves a new venture, a developmental product, or a business without an established sales record because there is no historical experience from which future profits can be estimated with reasonable certainty. *Kenford*, 67 N.Y.2d at 261-62; *Digital Broadcast Corp. v. Ladenburg, Thalmann & Co., Inc.*, 63 A.D.3d 647, 647-48 (N.Y. App. Div. 2009); *Zink v. Mark Goodson Prods.*, 261 A.D.2d 105, 106 (N.Y. App. Div. 1999).

Dr. Vellturo bases his breach of contract damages on Inari's (now outdated) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Kiernan Decl., Ex. 4 (Vellturo Op. Rep., Ex. 6). Despite conceding that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (JA2938 at JA2970 (Vellturo Op. Rep. ¶ 66)), Dr. Vellturo did not independently validate the reliability of those projections as a basis for estimating contract damages. Inari's ability to achieve its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on multiple contingencies and uncertain future events, including but not limited to successful completion of product development, approval from regulators in major soy and corn markets, execution of necessary commercial agreements with independent seed companies and other partners, and ultimately consumer choices. *See id.* at JA2964-JA2968 (Vellturo Op. Rep. ¶¶ 54-60). These are

36

the same type of uncertainties that have led Virginia and New York courts to reject future lost profits damages claims as speculative, remote and not reasonably certain.  Dr. Vellturo's contract damages opinion should be excluded as unreliable under Rule 702.

### 2. Dr. Wessler's, Dr. Dellporta's, and Dr. Mikel's Opinions as to Inari's Intent, Motive, or State of Mind Should Be Excluded

Expert witnesses may not offer opinions as to the intent, motive, or state of mind of others. *See Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019); *AstraZeneca LP v. Tap Pharmaceutical Prods.*, F. Supp. 2d 278, 293 (D. Del. 2006); *I-Mab Biopharma v. Inhibrx, Inc.*, C.A. No. 22-276-CJB, 2024 WL 4581539, at *1-2 (D. Del. Oct. 21, 2024); *Midwest Energy Emissions Corp. & Mes Inc. v. Arthur J. Gallagher & Co.*, C.A. No. 19-1334-CJB, 2023 WL 7411710, at *3 (D. Del. Nov. 3, 2023); *Shire ViroPharma Inc. v. CSL Behring LLC*, C.A. No. 17-414, 2021 WL 1227097, at *5-6 (D. Del. Mar. 31, 2021).  "Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Zimmer Surgical, Inc.*, 365 F. Supp. 3d at 497 (citing *Siring v. Oregon State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2014)).  Despite this prohibition, Dr. Wessler, Dr. Dellaporta, and Dr. Mikel offer opinions as to Inari's purported intent, motive, or state of mind at the time of Inari's ATCC seed deposit purchases.

For example, Dr. Wessler concludes that "Inari *knew* that ATCC's sale to Inari for what Inari knew to be commercial purposes was not authorized" (JA2299 at JA2417, JA2419 (Wessler Op. Rep. ¶¶ 362, 370)); that "Inari *knew* that ATCC's sale would constitute infringement" (*id.*); and that "there would not have been any reason to conceal its involvement *if Inari did not believe that Iowa State's use of the seeds would constitute infringement*" (*id.* at JA2422, JA2424 (Wessler

37

Op. Rep. ¶¶ 379, 387)).  Dr. Dellaporta concludes that Inari "*knew* that ATCC's sale would constitute infringement" (JA2596 at JA2709-JA2710, JA2711-JA2712 (Dellaporta Op. Rep. ¶¶ 301, 309)); that Inari "*knew* that ATCC's sale to Inari for what Inari knew to be commercial purposes was not authorized" (*id.*); and that ███████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████ (*id.* at JA2692 (Dellaporta Op. Rep. ¶ 220)).  Dr. Mikel opined that he applied his "experience in reviewing Inari's internal documents, deposition testimony, and interrogatory responses in order to understand the scope, *purpose, and intent* of Inari's acquisition, export, and use of Corteva PVP-protected inbred varieties" (JA2108 at JA2148 (Mikel Op. Rep. ¶ 106) (emphasis added)); and concluded that "[b]ased on his experience and review of the materials," it is his opinion that "Inari's acquisition, export, and use, of Corteva's PVP-protected inbred varieties—including genetically sequencing the exported seeds for use in Inari's breeding program—was for *commercialization purposes* in order to develop plant products (e.g., corn) for sale to compete with, among others, Corteva" (*id.*); *see also* Attachment A.

The testimony and inferences drawn by Drs. Wessler, Dellaporta and Mikel are virtually identical to those excluded by Delaware courts in other cases.  *See, e.g., Midwest Energy Emissions Corp.*, 2023 WL 7411710 at *3 (excluding expert testimony as to accused infringer's knowledge or intent for indirect infringement and inferences of intent from internal documents); *Zimmer Surgical, Inc.*, 365 F. Supp. 3d at 500 (excluding testimony that party would have acted differently if it possessed a certain understanding or knowledge); *Shire ViroPharma*, 2021 WL 1227097 at *15-19 (excluding testimony that impermissibly inferred corporate state of mind from party's

38

internal documents). Drs. Wessler's, Dellaporta's, and Mikel's opinions as to intent, motive, and state of mind are improper and should be excluded.

## III.  CONCLUSION

Inari respectfully requests the Court grant (1) Inari's Motion for Summary Judgment of Non-Infringement and grant judgment in Inari's favor on Counts of the Asserted PVP Certificates and Asserted Patents in Counts I-XVII, and (2) Inari's Motion to Exclude Corteva's Experts' Opinions Under Daubert and Rule 702.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

OF COUNSEL:

Dimitrios Drivas
Raj S. Gandesha
John P. Scheibeler
Hallie Kiernan
Jongtae Jason Lee
Angelika Kligos
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY  10601
(914) 288-0022

April 3, 2026

Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

39

# TAB A

**ATTACHMENT A:**

**CORTEVA EXPERT OPINIONS AS TO SUBJECTIVE INTENT, MOTIVE, OR STATE OF MIND**

**Wessler Opening Report**

| Para. No. | Statement |
|---|---|
| 110 | In Sections IX.B and IX.H, I discuss Inari's plan to acquire PTA-11384 and PTA-11506 corn seeds from ATCC so it could modify the event contained within them. |
| 143 | [redacted] |
| 144 | [redacted] |
| 359 | It is my opinion that Inari intentionally encouraged ATCC to directly infringe claims 6, 8, and 12-13 of the '246 patent. As discussed in Section IX.B above, [redacted] |
| 362 | It is also my opinion that Inari had knowledge that ATCC's sale would constitute infringement. |
| 362 | This means that Inari knew that ATCC's sale to Inari for what Inari knew to be commercial purposes was not authorized. |
| 363 | Through IE-SCS, Inari Belgium asked ATCC to sell Inari Belgium the PTA-11384 seeds with knowledge of the '246 patent and knowledge that the sale infringed claims of the '246 patent. |
| 367 | It is my opinion that Inari intentionally encouraged ATCC to directly infringe claims 1, 8, and 14-15 of the '434 patent. |
| 367 | As discussed in Section IX.H above, [redacted] |
| 370 | It is also my opinion that Inari had knowledge that ATCC's sale would constitute infringement. |
| 370 | This means that Inari knew that ATCC's sale to Inari for what Inari knew to be commercial purposes was not authorized. |

| Para. No. | Statement |
|---|---|
| 110 | In Sections IX.B and IX.H, I discuss Inari's plan to acquire PTA-11384 and PTA-11506 corn seeds from ATCC so it could modify the event contained within them. |
| 143 | █████████████████████████████████████████████ |
| 144 | █████████████████████████████████████████████ |
| 371 | Through IE-SCS, Inari Belgium asked ATCC to sell Inari Belgium the PTA-11506 seeds with knowledge of the '434 patent and knowledge that the sale infringed claims of the '434 patent. |
| 376 | It is my opinion that Inari intentionally encouraged Iowa State to directly infringe claims 6, 8, and 12-13 of the '246 patent. As discussed in Section IX.B above, ████████████████████████████████ |
| 379 | It is also my opinion that Inari had knowledge of Iowa State's use of the PTA-11384 corn seeds would constitute infringement. |
| 379 | In my opinion, there would not have been any reason to conceal its involvement if Inari did not believe that Iowa State's use of the seeds would constitute infringement. |
| 380 | Through IE-SCS, Inari directed Iowa State to test the seeds for purposes of receiving a phytosanitary certificate so it could send the seeds to Belgium, with knowledge of the '246 patent and knowledge that the use infringed claims of the '246 patent. |
| 384 | It is my opinion that Inari intentionally encouraged Iowa State to directly infringe claims 1, 8, and 14-15 of the '434 patent. As discussed in Section IX.H above, ████████████████████████████████ |
| 387 | It is also my opinion that Inari had knowledge of Iowa State's use of the PTA-11506 corn seeds would constitute infringement. |
| 387 | In my opinion, there would not have been any reason to conceal its involvement if Inari did not believe that Iowa State's use of the seeds would constitute infringement. |

2

| Para. No. | Statement |
| --- | --- |
| 110 | In Sections IX.B and IX.H, I discuss Inari's plan to acquire PTA-11384 and PTA-11506 corn seeds from ATCC so it could modify the event contained within them. |
| 143 | ████████████████████████████████████ |
| 144 | ████████████████████████████████████ |
| 388 | Through IE-SCS, Inari directed Iowa State to test the seeds for purposes of receiving a phytosanitary certificate so it could send the seeds to Belgium, with knowledge of the '434 patent and knowledge that the use infringed claims of the '434 patent. |
| 395 | It is my opinion that Inari knew that the PTA-11384 corn seeds were so made or adapted for use in the ZMS183_1-3 corn plants. |
| 395 | Inari also knew that combining the PTA-11384 corn seeds with water, light, air, and nutrient-rich soil to make the ZMS183_1-3 corn plants would infringe the '246 patent. |
| 396 | It is also my opinion that Inari intended that the PTA-11384 corn seeds would be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States. |
| 396 | Inari knew that growing plants from the PTA-11384 corn seeds in the United States would infringe the '246 patent's claims. |
| 404 | It is my opinion that Inari knew that the PTA-11506 corn seeds were so made or adapted for use in the ZMS186_1-3 corn plants. |
| 404 | Inari also knew that combining the PTA-11506 corn seeds with water, light, air, and nutrient-rich soil to make the ZMS186_1-3 corn plants would infringe the '434 patent. |
| 405 | It is also my opinion that Inari intended that the PTA-11506 corn seeds would be combined outside of the United States in a manner that would infringe the patent is such combination occurred within the United States. |
| 405 | Inari knew that growing plants from the PTA-11506 corn seeds in the United States would infringe the '434 patent's claims. |

3

**Dellaporta Opening Report**

| Para. No. | Statement |
|---|---|
| 146 | From these, it is my opinion that ███████████████████████████████████████████████████ |
| 147 | Inari believed that it could source DAS-44406-6 from the PTA-11336 seeds stored at ATCC and ultimately could edit that event… |
| 166 | From these, it is my opinion that ███████████████████████████████████████████████████ |
| 220 | ████████████████████████████████████████████████████████████████████████████████████████ |
| 298 | It is my opinion that Inari intentionally encouraged ATCC to directly infringe claims 1 and 12-13 of the '522 patent. |
| 301 | It is my opinion that Inari knew that ATCC's sale would constitute infringement. |
| 301 | Inari thus knew that ATCC's sale to Inari for what Inari knew to be commercial purposes was not authorized. |
| 302 | Through IE-SCS, Inari Belgium asked ATCC to sell Inari Belgium the PTA-11336 seeds with knowledge of the '522 patent and knowledge that the sale infringed claims of the '522 patent. |
| 306 | It is my opinion that Inari intentionally encouraged ATCC to directly infringe claim 8 of the '363 patent and claims 1-2 of the '441 patent. |
| 309 | It is my opinion that Inari knew that ATCC's sale would constitute infringement… Inari thus knew that ATCC's sale to Inari for what Inari knew to be commercial purposes was not authorized. |
| 310 | Through IE-SCS, Inari Belgium asked ATCC to sell Inari Belgium the PTA-12006 seeds with knowledge of the '363 and '441 patents and knowledge that the sale infringed claims of the '363 and '441 patents. |
| 318 | It is my opinion that Inari knew that the PTA-11336 soybean seeds were so made or adapted for use in the GMS413_1-9 soybean plants. |

4

| Para. No. | Statement |
|-----------|-----------|
| 318 | Inari also knew that combining the PTA-11336 soybean seeds with water, light, air, and nutrient-rich soil to make the GMS413_1-9 soybean plants would infringe the '522 patent. |
| 319 | It is also my opinion that Inari intended that the PTA-11336 soybean seeds would be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States. |
| 319 | Inari knew growing plants from the PTA-11336 soybean seeds in the United States would infringe the '522 patent's claims. |
| 328 | It is my opinion that Inari knew that the PTA-12006 soybean seeds were so made or adapted for use in the GMS414_1-2 soybean plants. |
| 328 | Inari also knew that combining the PTA-12006 soybean seeds with water, light, air, and nutrient-rich soil to made the GMS414_1-2 soybean plants would infringe the '363 and '441 patents. |
| 329 | It is also my opinion that Inari intended that the PTA-12006 soybean seeds would be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States. |
| 329 | Inari knew growing plants from the PTA-12006 soybean seeds in the United States would infringe the '363 and '441 patents' claims. |

5

**Mikel Opening Report**

| Para. No. | Statement |
|---|---|
| 106 | I have applied my experience in reviewing Inari's internal documents, deposition testimony, and interrogatory responses in order to understand the scope, purpose, and intent of Inari's acquisition, export, and use of Corteva PVP-protected inbred varieties. |
| 106 | Based on my experience and review of these materials, it is my opinion that Inari's acquisition, export, and use, of Corteva's PVP-protected inbred varieties— ███████████████████████████████████ ████ —was for commercialization purposes in order to develop plant products (e.g., corn) for sale to compete with, among others, Corteva. |
| 108 | Inari had a plan to acquire from ATCC Corteva's PVP-protected inbred varieties, export them, grow plants from them in Belgium, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ |

6

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 3, 2026, upon the following in the manner indicated:

Chad S.C. Stover, Esquire                                    *VIA ELECTRONIC MAIL*
Brian S.S. Auerbach, Esquire
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Todd Vare, Esquire                                           *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN  46204
*Attorneys for Plaintiffs*

Ronald Cahill, Esquire                                       *VIA ELECTRONIC MAIL*
Heather B. Repicky, Esquire
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA  02210
*Attorneys for Plaintiffs*

Lauren Baker, Esquire                                        *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA  30326
*Attorneys for Plaintiffs*

Peter Bicks, Esquire                                         *VIA ELECTRONIC MAIL*
Kim B. Goldberg, Esquire
Jordan B. Fernandes, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
*Attorneys for Plaintiffs*

David Gindler, Esquire                          *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
Christopher Lynch, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire                         *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA  90401
*Attorneys for Plaintiffs*

Carly Romanowicz, Esquire                        *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
*Attorneys for Plaintiffs*


                              */s/ Megan E. Dellinger*
                              _____
                              Megan E. Dellinger (#5739)

2

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 17, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Chad S.C. Stover, Esquire<br>Brian S.S. Auerbach, Esquire<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Todd Vare, Esquire<br>BARNES & THORNBURG LLP<br>11 South Meridian Street<br>Indianapolis, IN 46204<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Ronald Cahill, Esquire<br>Heather B. Repicky, Esquire<br>BARNES & THORNBURG LLP<br>One Marina Park Drive, Suite 1530<br>Boston, MA 02210<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Lauren Baker, Esquire<br>BARNES & THORNBURG LLP<br>3340 Peachtree Road N.E., Suite 2900<br>Atlanta, GA 30326<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Peter Bicks, Esquire<br>Kim B. Goldberg, Esquire<br>Jordan B. Fernandes, Esquire<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY 10019-6142<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

David Gindler, Esquire                                        *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
Christopher Lynch, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire                                      *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA  90401
*Attorneys for Plaintiffs*

Carly Romanowicz, Esquire                                     *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
*Attorneys for Plaintiffs*


                                          */s/ Megan E. Dellinger*

                                          _____
                                          Megan E. Dellinger (#5739)

2