Originally Filed:  May 1, 2026
Redacted Version Filed:  May 8, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, PIONEER HI-BRED INTERNATIONAL, INC. and AGRIGENETICS, INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-1059 (JFM) |
| | ) | |
| INARI AGRICULTURE, INC. and INARI AGRICULTURE NV, | ) ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |

**INARI'S ANSWERING BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>AND MOTION TO EXCLUDE EXPERT TESTIMONY</u>**

<div style="float:right">

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

</div>

OF COUNSEL:

Dimitrios Drivas
Raj S. Gandesha
John P. Scheibeler
Hallie Kiernan
Jongtae Jason Lee
Angelika Kligos
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY  10601
(914) 288-0022

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

    A.    Corteva Has Not Met Its Initial Burden as Summary Judgment Movant ...........1

    B.    Corteva's *Daubert* Motions to Exclude Inari's Experts Do Not Show That the Experts' Methodology Is Flawed or Will Not Aid the Jury in Reaching an Accurate Result ...................................................................................................2

II.   CORTEVA'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED .....3

    A.    Corteva's Breach of Contract Claims Fail as a Matter of Law and Material Facts in Dispute Preclude Summary Judgment in Corteva's Favor (Counts XVIII & XVIV) ...................................................................................................3

        1.    The Transfer and Commercial Use Restrictions in the ATCC MTAs Do Not Apply to Patent Deposits ...............................................................3

            a.    The Patent Deposit Rules Do Not Permit Patent Owners to Restrict Transfer and Use of Patent Deposits by Contract .........4

            b.    Corteva's Claims Impose MTA Restrictions That Conflict with Federal Patent Deposit Regulations and Are Not Enforceable as to Patent Deposits .......................................................................6

        2.    Corteva Disclaimed Any Benefit from the MTA Restrictions by Agreeing That ATCC May Furnish Patent Deposits to the Public Without Restriction – This Is Fatal to Corteva's Attempt to Enforce the MTAs as a Third-Party Beneficiary .........................................................9

        3.    Factual Disputes as to Whether Inari Breached MTAs Preclude Summary Judgment of Liability ...........................................................10

            a.    The 2022 MTA Does Not Apply to the Corteva Patent Deposit Seeds Purchased by Inari .........................................................10

            b.    Factual Disputes as to Whether Inari Breached the MTAs' Restrictions Preclude Summary Judgment ...............................11

    B.    Corteva's Motion for Summary Judgment as to Inari's Lanham Act Counterclaim (Counterclaim 14) Should Be Denied .......................................15

    C.    Summary Judgment Should Be Denied as to Inari's Abuse of Process Counterclaim (Counterclaim 16) ....................................................................18

    D.    Corteva's Motion Under § 102 (Counterclaims 1, 2, 4, 5 and 7; Second, Fifth, Eighth, and Eleventh Affirmative Defenses) ...................................................19

1.  Once an Invention Is Complete and Ready for Patenting, Commercial Exploitation Prior to the Critical Date Is an Invalidating Public Use...19

2.  The Pre-Critical Date Field Trials.........................................................21

3.  The Pre-Critical Date Regulated Field Trials of GM Events After the Events Were Reduced to Practice Are Commercial Exploitation ........21

4.  Whether the Field Trials Were Accessible to the Public Is Disputed...22

E.  Corteva's Motion Under § 2402 (Eighteenth Affirmative Defense) ................25

1.  There Is a Genuine Dispute as to Whether Corteva's Process for Selecting MSVs Demonstrates Distinctness Under § 2402(a)(2).........26

III.  CORTEVA'S *DAUBERT* MOTIONS SHOULD BE DENIED...................................29

A.  Dr. Silverstone's Opinions on Invalidity of the Corteva Patents Based on Public Use Should Not Be Excluded ...................................................29

B.  Dr. Silverstone's Opinions Are Based on the Court's Claim Construction of "Aryloxyalkanoate Dioxygenase Activity" ........................................32

C.  Dr. Riley's Opinions on Distinctness Are Based on His Knowledge and Expertise and His Review of Relevant Material, Including USPTO Files.......33

D.  Dr. Goodwin's Opinion Should Not Be Excluded.............................................34

E.  Corteva's Motion to Exclude Dr. Zenner's Testimony Should Be Denied ......36

F.  Inari's Experts Do Not Offer Legal Opinions...................................................39

IV.  CONCLUSION...............................................................................................40

TABLE OF AUTHORITIES

Page(s)

**CASES**

*18W Holdings, Inc. v. Sing for Serv., LLC*,
    763 F. Supp. 3d 651 (D.N.J. 2025) ....................................................................12

*Air Support Int'l, Inc. v. Atlas Air, Inc.*,
    54 F. Supp. 2d 158 (E.D.N.Y. 1999) .................................................................11

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F 3d 1336 (Fed. Cir. 2002)....................................................................20, 22

*Am. Fin. Corp. v. Comput. Scis. Corp.*,
    558 F. Supp. 1182 (D. Del. 1983).....................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................1, 27

*Application of Argoudelis*,
    434 F.2d 1390 (C.C.P.A. 1970) ..........................................................................8

*Barry v. Depuy Synthes Companies*,
    164 F.4th 896 (Fed. Cir. 2026) .........................................................................33

*BASF Corp. v. SNF Holding Co.*,
    955 F.3d 958 (Fed. Cir. 2020)......................................................................30, 31

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
    583 F.3d 832 (Fed. Cir. 2009)...........................................................................25

*Berkshire Bank v. Pioneer Bank*,
    2021 WL 2763120 (N.Y. Sup. Ct. July 1, 2021) ..............................................11

*Betterbox Commc'ns Ltd. v. BB Techs., Inc.*,
    300 F.3d 325 (3d Cir. 2002)..............................................................................37

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
    627 F. Supp. 2d 384 (D.N.J. 2009) ...................................................................17

*Canfield Sci., Inc. v. Melanoscan, LLC*,
    C.A. No. 16-4636, 2017 WL 2304644 (D.N.J. May 25, 2017) .........................17

*Cap Exp., LLC v. Zinus, Inc.*,
    C.A. No. 2:21-cv-07148-JWH-MRWx, 2023 WL 6381821 (C.D. Cal. Sep. 28, 2023)..........16

*CareDx, Inc. v. Natera, Inc.*,
  C.A. No. 19-662 (CFC) (CJB), 2019 WL 7037799 (D. Del. Dec. 20, 2019), *report and recommendation adopted*, C.A. No. 19-662 (CFC), 2020 WL 401773 (D. Del. Jan. 24, 2020) ................................................................................................................................37, 38

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................................... passim

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979)....................................................................................................6

*Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993)..................................................................................................17

*Copenhaver v. Rogers*,
  238 Va. 361 (1989) ...................................................................................................13

*Datacore Software Corp. v. Scale Computing, Inc.*,
  C.A. No. 22-535-GBW, 2024 WL 6945983 (D. Del. Aug. 21, 2024)......................30

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)....................................................................................................2

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
  778 F.3d 1243 (Fed. Cir. 2015)..........................................................................22, 23

*Design with Friends, Inc. v. Target Corp.*,
  C.A. No. 1:21-cv-01376-SB, 2024 WL 4103737 (D. Del. Sep. 6, 2024)................11

*Dey, L.P. v. Sunovian Pharms., Inc.*,
  715 F.3d 1351 (Fed. Cir. 2013).........................................................................20, 31

*Ellis v. Holy Comforter Saint Cyprian Cmty. Action Grp.*,
  153 F. Supp. 3d 338 (D.D.C. 2016) ...........................................................................9

*Fidelity Fed. Sav. and Loan Ass'n v. Cuesta*,
  458 U.S. 141 (1982)....................................................................................................6

*Garmon Corp. v. Vetnique Labs, LLC*,
  C.A. No. 19 C 8251, 2020 WL 3414983 (N.D. Ill. June 22, 2020)........................16

*Genetics Inst., Inc. v. Amgen, Inc.*,
  No-91-13, 1991 WL 11178446 (U.S. Aug. 26, 1991) ...............................................8

*Gibson v. Mayor and Council of the City of Wilmington*,
  355 F.3d 215 (3d Cir. 2004)....................................................................................10

iv

*Glob. Tech LED, LLC v. HiLumz Int'l Corp.*,
  C.A. No. 2:15-cv-553-FtM-29CM, 2017 WL 588669 (M.D. Fla. Feb. 14, 2017) ..................16

*Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*,
  819 F.3d 42 (2d Cir. 2016)..................................................................................................6

*In re AndroGel Antitrust Litig. (No.II)*,
  888 F. Supp. 2d 1336 (N.D. Ga. 2012)..............................................................................33

*In re Johnson & Johnson Derivative Litig.*,
  900 F. Supp. 2d 467 (D.N.J. 2012) ...................................................................................37

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994).............................................................................................2, 34

*In re Smith*,
  714 F. 2d 1127 (Fed. Cir. 1983).........................................................................................31

*In re Theis*,
  610 F.2d 786 (C.C.P.A. 1979) .....................................................................................20, 21

*Insight Equity v. Transitions Optical, Inc.*,
  252 F. Supp. 3d 382 (D. Del. 2017).....................................................................................2

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
  424 F.3d 1374 (Fed. Cir. 2005)...................................................................19, 20, 22, 23

*Jackson v. City of Pittsburgh, Pa.*,
  C.A. No. 07-111, 2010 WL 3222137 (W.D. Pa. Aug. 13, 2010) ...........................................37

*Jaroslawicz v. M&T Bank Corp.*,
  C.A. No. 15-00897-EJW, 2024 WL 474846 (D. Del. Feb. 7, 2024) ........................................2

*Kaiser Steel Corp. v. Mullins*,
  455 U.S. 72 (1982).............................................................................................................6

*Karlo v. Pittsburgh Glass Works, LLC*,
  849 F.3d 61 (3d Cir. 2017)................................................................................................36

*Kimble v. Marvel Ent., LLC*,
  576 U.S. 446 (2015).......................................................................................................7, 8

*Kisor v. Wilkie*,
  588 U.S. 558 (2019)...........................................................................................................6

*Korzybski v. Underwood & Underwood, Inc.*,
  36 F.2d 727 (2d Cir. 1929) (A. Hand, J.)............................................................................5

*Kumho Tire Co. v. Carmichael,*
  526 U.S. 137 (1999) .................................................................................................36

*Lee v. Sixth Mt. Zion Baptist Church of Pittsburgh,*
  903 F.3d 113 (3d Cir. 2018) .....................................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  572 U.S. 118 (2014) .................................................................................................37

*Metallizing Eng'g Co. v. Kenyon Bearing & Auto Parts Co.,*
  153 F.2d 516 (2d Cir. 1946) (L. Hand, J.) ...............................................20, 23, 31

*Minco, Inc. v. Combustion Eng'g, Inc.,*
  95 F.3d 1109 (Fed. Cir. 1996) .................................................................................36

*Mirror Worlds Techs., LLC v. Meta Platforms, Inc.,*
  122 F.4th 860 (Fed. Cir. 2024) ...............................................................................30

*Monon Corp. v. Stoughton Trailers, Inc.,*
  239 F.3d 1253 (Fed. Cir. 2001) ...............................................................................20

*Nat'l State Bank v. Fed. Rsrv. Bank of New York,*
  979 F.2d 1579 (3d Cir. 1992) ...........................................................1, 15, 16, 18

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.,*
  C.A. No. 17-cv-5096, 2020 WL 5512507 (D. Minn. Sep. 14, 2020) ......................33

*Nuance Commc'ns, Inc. v. MModal LLC,*
  C.A. No. 17-1484-MN-SRF, 2018 WL 6804488 (D. Del. Dec. 27, 2018) ..............18

*NY Mach. Inc. v. Korean Cleaners Monthly,*
  C.A. No. 17-cv-12269-ESK, 2023 WL 3508330 (D.N.J. May 17, 2023) ...............17

*Oddi v. Ford Motor Co.,*
  234 F.3d 136 (3d Cir. 2000) .....................................................................................37

*Pactiv Corp. v. Perk-Up, Inc.,*
  C.A. No. 08-05072 (DMC), 2009 WL 2568105 (D.N.J. Aug. 18, 2009) ...............17

*Perez-Ruiz v. Crespo-Guillen,*
  25 F.3d 40 (1st Cir. 1994) ..........................................................................................3

*Pfaff v. Wells Elecs., Inc.,*
  525 U.S. 55 (1998) ...................................................................................................19

*PhishMe, Inc. v. Wombat Sec. Techs., Inc.,*
  C.A. No. 16-403-LPD-CJB, 2017 WL 3821107 (D. Del. Aug. 31, 2017) ..............18

*Preferred Inv. Servs. v. T&H Bail Bonds*,
  C.A. No. 5886-VCP, 2013 WL 3934992 (Del. Ch. Ct. July 24, 2013) .................................19

*Preston Hollow Cap. LLC v. Nuveen LLC*,
  C.A. No. 2019-0169-SG, 2020 WL 1814756 (Del. Ch. Apr. 9, 2020)..................................38

*Primex Int'l Corp. v. Wal-Mart Stores*,
  89 N.Y. 2d 594 (1997) ......................................................................................................11

*Princeton Digital Image Corp. v. Office Depot, Inc.*,
  C.A. No. 13-239-LPS, 2017 U.S. Dist. LEXIS 120493 (D. Del. Aug. 1, 2017) ...............24, 30

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993)..............................................................................................................19

*Refundo, LLC v. Drake Enters., Ltd.*,
  C.A. No. 13-643 (JLL), 2013 WL 1750016 (D.N.J. Apr. 22, 2013) .......................................17

*Rottlund Homes of N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.*,
  243 F. Supp. 2d 145 (D. Del. 2003).....................................................................................12

*Sears, Roebuck & Co. v. Stiffel Co.*,
  376 U.S. 225 (1964)..............................................................................................................7

*Silicon Graphics, Inc. v. ATI Techs., Inc.*,
  C.A. No. 06-cv-611-bbc, 2011 WL 322664 (W.D. Wis. Jan. 31, 2011) ...............................25

*Stevens v. Indep. Newspapers, Inc.*,
  C.A. No. 85C-OC11, 1988 WL 25377 (Del. Super. Ct. Mar. 10, 1988) ...............................38

*Tillery v. Leonard & Sciolla, LLP*,
  521 F. Supp. 2d 346 (E.D. Pa. 2007) ...................................................................................18

*TP Lab'ys., Inc. v. Pro. Positioners, Inc.*,
  724 F.2d 965 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 826.....................................................20

*Travelodge Hotels, Inv. v. Honeysuckle Enters.*,
  357 F. Supp. 2d 788 (D.N.J. 2005) .....................................................................................11

*Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*,
  127 F.4th 1340 (Fed. Cir. 2025) ...........................................................................................33

*U.S. Healthcare v. Blue Cross of Greater Phila.*,
  898 F.2d 914 (3d Cir. 1990)..................................................................................................17

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
  949 F.3d 825 (3d Cir. 2020)..................................................................................................39

vii

*Unit, Inc. v. Ky. Fried Chicken Corp.*,
304 A.2d 320 (Del. Super. 1973)..................................................................................38

*United States ex rel. Petratos v. Genentech Inc.*,
855 F.3d 481 (3d Cir. 2017).....................................................................................3, 4

*United States v. Weaks*,
388 F.3d 913 (D.C. Cir. 2004).......................................................................................9

*VG Innovations, Inc. v. Minsurg Corp.*,
C.A. No. 8:10-cv-1726-T-33MAP, 2011 WL 1466181 (M.D. Fla. Apr. 18, 2011) ................16

**STATUTES AND RULES**

37 C.F.R. § 1.808(a)(2)..................................................................................................4

37 C.F.R. § 1.808(b) ......................................................................................................4

7 U.S.C. § 2401(b)(5) ..................................................................................................28

7 U.S.C. § 2402(a)(2)..............................................................................................26, 27

15 U.S.C. § 1125(a)(1)(B) ...........................................................................................37

35 U.S.C. § 284............................................................................................................35

Fed. R. Civ. P. 56(a) ...................................................................................................27

Fed. R. Evid. 702 ........................................................................................................36

Fed. R. Evid. 703 ........................................................................................................24

MPEP 2410.01 ...............................................................................................................5

Prosser and Keeton on Torts § 121 (5th ed. 1984) ....................................................38

Restatement (Second) of Contracts § 306............................................................3, 9, 10

Restatement (Second) of Contracts § 309............................................................3, 9, 10

## I.    INTRODUCTION

The movant for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The substantive law identifies which facts are material, and disputes over material facts preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant bears the burden of proof at trial, and the motion does not establish the absence of a genuine factual issue, summary judgment should be denied even if no opposing evidentiary matter is presented. *Nat'l State Bank v. Fed. Rsrv. Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992). If the non-movant bears the burden of proof at trial, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Celotex*, 477 U.S. at 325. The non-moving party must come forward with specific facts showing that there is a genuine issue for trial, but that does not mean it must produce evidence in the form that would be admissible at trial to avoid summary judgment. *Id.* at 324.

### A.    Corteva Has Not Met Its Initial Burden as Summary Judgment Movant

Corteva moves for summary judgment on breach of contract claims, counts XVIII and XVIV[1], as a third-party beneficiary of three Material Transfer Agreements ("MTAs") dated 2017, 2019 and 2022 between ATCC and Inari. It bears the burden of proof on this claim at trial. Corteva's motion does not address: (i) how it can be a third-party beneficiary to a contract that it alleges imposes restrictions it purposely surrendered in the patents and deposit agreements with ATCC when it promised public access without restriction, (ii) why under the terms of the 2017 and 2019 MTAs, the terms of the Budapest Treaty and patent regulations do not apply, and (iii) how the MTAs can impose restrictions on the use of patent deposits after the patents expire.

---

[1] Corteva's Second Amended Complaint identifies its nineteenth cause of action as "Count XVIV." D.I. 148 at p.99. For clarity, Inari uses the same nomenclature.

Instead of showing how Inari's activities are a breach of the commercial use and transfer terms as defined in the MTA, Corteva makes conclusory arguments about commercial use and transfer. Corteva's motion on counts XVIII and XVIV has not met its initial burden since it is replete with erroneous legal conclusions and disputed material facts.

Corteva also moves on claims for which Inari has the burden of proof at trial: Lanham Act § 43 (a) (counterclaim 14), Abuse of Process (counterclaim 16), Invalidity under 35 U.S.C. § 102 (counterclaims 1, 2, 4, 5 and 7; second, fifth, eighth, and eleventh affirmative defenses), and PVP invalidity under 7 U.S.C. § 2402 (eighteenth affirmative defense). Corteva has failed to show that there are no issues of genuine material fact on these claims. As set forth below, there are genuine disputes of material fact for trial on each of these counterclaims and affirmative defenses.

**B.    Corteva's *Daubert* Motions to Exclude Inari's Experts Do Not Show That the Experts' Methodology Is Flawed or Will Not Aid the Jury in Reaching an Accurate Result**

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702 require the district court to act as a gatekeeper to assure the methodology on which the expert opinion is founded is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 732 (3d Cir. 1994). The expert's assessments need not be correct, but the proponent of the testimony must demonstrate that they are based on sufficient facts and data and sound principles and methods. *Id.* at 744; *Jaroslawicz v. M&T Bank Corp.*, C.A. No. 15-00897-EJW, 2024 WL 474846, at *10 (D. Del. Feb. 7, 2024). Even if the conclusions are incorrect, a judge may believe that a jury attempting to reach an accurate result should consider the evidence. *Jaroslawicz*, 2024 WL 474846, at *10 (quoting *In re Paoli*, 35 F.3d at 745). There is a strong preference for admission. *Insight Equity v. Transitions Optical, Inc.*, 252 F. Supp. 3d 382, 386 (D. Del. 2017) (citing *In re Paoli*, 35 F.3d at 745). As explained below, Inari's expert opinions are based on facts and sound principles and should not be excluded.

2

**II.    CORTEVA'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED**

    **A.    Corteva's Breach of Contract Claims Fail as a Matter of Law and Material Facts in Dispute Preclude Summary Judgment in Corteva's Favor (Counts XVIII & XVIV)**

Corteva contends that Inari breached the commercial use and transfer restrictions in the ATCC MTAs.  In its patents and deposit agreements with ATCC on the deposits purchased under the 2017 and 2019 MTAs, Corteva promised as a condition of patent grant that samples of the patented seeds would be available to the public without restriction consistent with 37 C.F.R. § 1.808.  This precludes Corteva from enforcing the MTA restrictions as a third-party beneficiary because it disclaimed all restrictions on access.  Restatement (Second) of Contracts §§ 306, 309.

When it denied Inari's motion to dismiss the First Amended Complaint, the Court concluded that there is no conflict between the MTA transfer and commercial use restrictions and U.S. patent regulations governing patent deposits.  D.I. 100 at 23-24.  That ruling under Rule 12(b)(6) without a complete record is subject to reevaluation at the summary judgment stage. *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (citing *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) (denials of motions to dismiss are interlocutory, remain open to trial court reconsideration, and do not constitute law of the case)). Even if the Court were to find the transfer and commercial use restrictions in the MTAs enforceable by Corteva, factual disputes exist as to whether Inari breached those restrictions.  This precludes summary judgment in Corteva's favor.

    **1.    The Transfer and Commercial Use Restrictions in the ATCC MTAs Do Not Apply to Patent Deposits**

ATCC is a WIPO-recognized international patent depositary.  JA920 at JA925 (21:7-10). In addition to patent deposits, ATCC holds a general collection of biological materials from university laboratories and other sources that it makes available to the scientific community. *Id.*

3

at JA926 (22:2-15).  ATCC's general collection is twice the size of its patent deposit holdings and generates more revenue for ATCC.  *Id.* (22:16-23:23).  To order any biological sample from ATCC, a requester must open an account and execute ATCC's form MTA.  *Id.* at JA941 (82:7-83:16).  The same MTA is used for ATCC's general and patent deposit collections.  *Id.* (82:24-83:16).  ATCC does not permit addendums or riders to the MTA, JA1828 at JA1840-41, and denies access to materials to anyone who does not execute the MTA.  JA920 at JA955 (140:13-141:11).

The 2017, 2019, and 2022 MTAs each purport to prohibit certain commercial uses and transfers of ATCC material to third parties.  While these restrictions may be applicable to ATCC's general collection, they conflict with federal patent law and patent regulations on patent deposits, which renders them inapplicable to patent deposits under the terms of the MTA.  The restrictions also conflict with ATCC's obligation under the Budapest Treaty to furnish patent deposits to anyone legally entitled to them under U.S. patent law and are unenforceable as a matter of law.  The 2017 and 2019 MTAs expressly acknowledge that as applied to patent deposits, where a conflict exists between the MTA terms and U.S. patent law and regulations, "then the terms of the applicable law or regulation shall govern."  JA5218 at JA5220; JA16298 at JA16300.

> a.    **The Patent Deposit Rules Do Not Permit Patent Owners to Restrict Transfer and Use of Patent Deposits by Contract**

The USPTO's regulations governing the deposit of biological material are codified at 37 C.F.R. §§ 1.801-1.809.  Section 1.808 governs the furnishing of samples by a patent depository and provides that "[a] deposit must be made under conditions that assure that . . . all restrictions imposed by the depositor on the availability to the public of the deposited material will be irrevocably removed upon the granting of the patent."  37 C.F.R. § 1.808(a)(2).  The only restrictions permitted under § 1.808 are to the form and content of the request.  37 C.F.R.

§ 1.808(b); *see also* MPEP 2410.01, Conditions of Deposit.

The rules governing patent deposits were revised in 1989 when the USPTO promulgated 37 C.F.R. §§ 1.801-1.809.  During the rulemaking process, the USPTO considered and rejected proposals that a depositor be permitted to impose contractual restrictions on access to patent deposits because doing so would restrict access to the written description of patents.  Some commentators proposed that a depositor be permitted to require that a sample shall be furnished only if the requesting party agreed not to make the material or a derivative available to a third party without the depositor's permission.  D.I. 23-1 (54 F.R. 34864 (Aug. 22, 1989)).  The USPTO declined to adopt the proposed rule and stated:

> Fundamentally, however, the proposed rule has not been adopted in view of the rationale . . . that **no greater restriction on access to a deposit should be permitted than is permitted on access to the written description itself**, even considering that the practical value of access to a deposit may be substantially greater than access to the written description and that infringement may be more difficult to police.

*Id.* (emphasis added).

Other commentators proposed a rule that would require the requester "to use the biological material only for experimental purposes concerning the invention." *Id.*  The USPTO rejected this proposal stating that "**the proper redress for non-experimental use is a suit for patent infringement, not a suit based on the requester's promise to the depository**." *Id.* (emphasis added).  The rationale was that the public should have the same access to a patent deposit that it has to the written text of a patent, which is not subject to any restrictions.  *Id.*; *see Korzybski v. Underwood & Underwood, Inc.*, 36 F.2d 727, 729 (2d Cir. 1929) (A. Hand, J.) (photograph of device embodied in drawings of a patent did not infringe copyright: when patent issued, patent owner "made a full disclosure of his invention and dedicated it to the public, save for the right to make, use and vend it . . . . The public had the right to the information disclosed in his patent and the right to use and copy the text and diagrams.").

The USPTO's comments during rulemaking inform the scope and interpretation of the regulations. *See, e.g.*, *Kisor v. Wilkie*, 588 U.S. 558, 573-80 (2019) (court may defer to agency's reasonable, expert interpretation of its own rule to resolve ambiguities in the rule); *Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 56-57 (2d Cir. 2016) (resolving dispute over meaning of "substantial compliance" based on proposals rejected by agency during rulemaking). The USPTO rejection of proposals to restrict use or transfer of a patent deposit confirm that such restrictions must be removed irrevocably under 37 C.F.R. § 1.808 and cannot be imposed in the MTAs. Corteva's claims on breach of the MTA are based on a purported promise in the MTA that restricts what a requester could do with the purchased patent deposit. These are exactly the type of post-purchase restrictions on transfer and use of the deposit that the USPTO rejected when promulgating the regulations 37 C.F.R. §§ 1.801-1.809.

> **b.**    **Corteva's Claims Impose MTA Restrictions That Conflict with Federal Patent Deposit Regulations and Are Not Enforceable as to Patent Deposits**

A court may not enforce the contract provision that conflicts with federal law. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982). This is true whether the source of federal law is a statute or a regulation that is substantive in character, rooted in delegated legislative authority and promulgated with required procedures. *Fidelity Fed. Sav. and Loan Ass'n v. Cuesta*, 458 U.S. 141, 153-54 (1982); *Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96 (1979). The patent deposit regulations were promulgated pursuant to the USPTO's delegated authority to establish regulations to conduct proceedings in the Patent Office and to facilitate the processing of patent applications, 35 U.S.C. § 2(b)(2)(A), (D), and through formal notice and comment procedures required by the Administrative Procedure Act, 5 U.S.C. § 553. They are substantive, not interpretive, rules because they create rights and obligations that did not exist before the regulations came into effect. *Chrysler*, 441 U.S. at 301-03. The patent deposit regulations have the force and effect of law. *Id*.

6

The restrictions on transfers and commercial uses in ATCC's MTAs conflict with the federal patent regulation on patent deposits.  The terms of the MTAs recognize this conflict and provide that the terms of the applicable law or regulation shall govern.  JA5218 at JA5220; JA16298 at JA16300.  If ATCC were to deny a requester access to a patent deposit because they declined to agree to the MTA restrictions and execute the MTA, this would run afoul of § 1.808.  ATCC cannot deny access to patent deposits to anyone who does not agree to the transfer and commercial use restrictions in the MTAs.  Federal patent law prohibits this as do the terms of the MTAs.

The ATCC MTAs have unlimited terms.  If the transfer and commercial use restrictions were to apply, they would prohibit transfer or commercial use of a patent deposit even after patent expiry.  This is an absurd result that conflicts with the patent law policy that "'an article on which the patent has expired,' like an unpatentable article, 'is in the public domain and may be made and sold by whoever chooses to do so,'" and that permitting a restriction on the use of an expired patent "would impermissibly undermine the patent laws." *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 452 (2015) (quoting *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 (1964)).  Here, Corteva claims that Inari USA breached the MTAs through its transfer and use of patent deposits that it purchased from ATCC *after* the patents had expired.  *See* D.I. 148, Count XVIV, Ex. B.  Corteva's claims imply that a patent owner, as a third-party beneficiary to a contract, may restrict the public from freely using patented inventions after patent expiry.

ATCC itself understands that the MTA transfer and commercial use restrictions, while applicable to ATCC's general collection material, do not apply to patent deposits.  In response to inquiries from the public, ATCC has stated that:

> With respect to patent deposit materials, the transfer and commercial use restrictions in the ATCC MTA are superseded by Budapest Treaty and USPTO

7

regulations.  Patent deposits are not subject to the transfer provisions of the ATCC Material Transfer Agreement or ATCC Commercial Use license requirements.

JA5124 at JA5126.  The 2017 and 2019 MTAs contain "Compliance With Laws" provisions that expressly acknowledge the conflict with federal law governing patent deposits.  JA5218 at JA5220; JA16298 at JA16300.  In the event of a conflict, the terms of the Budapest Treaty and applicable laws and regulations apply.  *Id*.[2]

The U.S. patent laws are consistent with ATCC's obligations as an international depositary authority under the Budapest Treaty.  Pursuant to Rule 11.3 of the Regulations Under the Budapest Treaty, ATCC is required to furnish a sample of any deposited microorganism to any authority, natural person, or legal entity that has a right to the sample under the law governing patent procedure where a patent referencing the deposit has been filed.  Nothing in the Budapest Treaty or U.S. patent law authorizes ATCC to require that a requester legally entitled to receive a patent deposit agree not to transfer or make commercial use of the sample as a condition for receiving it.

In an amicus brief submitted to the U.S. Supreme Court in 1991, ATCC acknowledged that the distribution of patent deposits may not be restricted under U.S. law and the public is free to use a patent deposit to improve upon the invention during and after the patent term:

> ***Once a culture deposit has been made, anyone can obtain that microorganism from the depository after the patent has issued; the depositor/inventor cannot hinder or restrict distribution of samples.***  Biocultures are thus available to all who wish to avail themselves of their freedom under the patent laws to experiment with and improve upon the invention during and after the patent term.  This deposit procedure was endorsed and held sufficient to satisfy the disclosure requirements of 35 U.S.C. § 112 in the landmark case of *Application of Argoudelis*, 434 F.2d 1390 (C.C.P.A. 1970).[3]

---

[2]  The 2022 MTA does not contain this provision.  As explained below, the 2022 MTA is inapplicable to Inari's purchases of Corteva's patent deposits and does not otherwise apply retroactively to revoke the terms of the 2017 and 2019 MTAs.

[3] Kiernan Decl., Ex. 1 (Brief of Amicus Curiae of the American Type Culture Collection in Support of Petitioners, Petition for Writ of Certiorari, *Genetics Inst., Inc. v. Amgen, Inc.*, No-91-13, 1991 WL 11178446, at *5 (U.S. Aug. 26, 1991) (emphasis added)).

Corteva's motion for summary judgment on its breach of contract claims should be dismissed because the MTA restrictions conflict with federal patent law and are unenforceable as to patent deposits.

**2.    Corteva Disclaimed Any Benefit from the MTA Restrictions by Agreeing That ATCC May Furnish Patent Deposits to the Public Without Restriction – This Is Fatal to Corteva's Attempt to Enforce the MTAs as a Third-Party Beneficiary**

Corteva's purported rights as a third-party beneficiary are subject to "any claim or defense arising from [its] own conduct or agreement."  Restatement (Second) of Contracts § 309 (4).  A beneficiary may "render any duty to himself [by the promisor] inoperative from the beginning by disclaimer."  Restatement (Second) of Contracts § 306; *see also Ellis v. Holy Comforter Saint Cyprian Cmty. Action Grp.*, 153 F. Supp. 3d 338, 342 (D.D.C. 2016) (third party beneficiary may reject a promised benefit; effect on the promisor's duty is as if no promise had been made) (quoting *United States v. Weaks*, 388 F.3d 913, 917 (D.C. Cir. 2004)).  As the Restatement explains, "[n]o particular formality is required for disclaimer, and its effect on the promisor's duty to the beneficiary is the same as if no promise had been made."  Restatement (Second) of Contracts § 306, cmt. b.

In its patents, Corteva promised as a condition for grant that all restrictions on the availability to the public of its patent deposits would be removed irrevocably upon patent grant in compliance with 37 C.F.R. § 1.808.  SOF, ¶¶ 208 Resp., 212 Resp.[4]  In the deposit agreements, Corteva acknowledged and agreed that "[n]otwithstanding anything to the contrary, ATCC may, without restriction, furnish samples of the deposit at any time after the issuance of any relevant patent."  *See, e.g.*, JA26767 at JA26769.  Corteva authorized ATCC on patent grant to distribute

---

[4] All citations to "SOF" are to Corteva's Consolidated Statement of Facts (D.I. 536) and intended to incorporate Corteva's fact, Inari's Response, and Corteva's Reply unless otherwise specified.

the patent deposits "to the public pursuant to [the] Budapest Treaty and U.S. patent law" and acknowledged that it "does not have the right to prevent the furnishing of samples to parties legally entitled, whatever [its] personal wishes may be." *See, e.g.*, JA5336 at JA5379-81.

Corteva's promises disclaim any purported benefit in the MTA transfer and commercial use restrictions and render any purported duty by Inari to Corteva under those restrictions inoperative. Restatement (Second) of Contracts §§ 306, 309. The Court should enter summary judgment against Corteva on its breach of contract claims. Not only should Corteva's summary judgment motion be denied, but contrary to Corteva's arguments for summary judgment in its favor, Corteva's disclaimer of the restrictions it now seeks to enforce as a third-party beneficiary, discussed above and in Inari's motion for summary judgment on noninfringement, D.I. 540 at 12-13 and 22-23, present a situation under Fed. R. Civ. P. 56(f)(1) where the court may *sua sponte* grant summary judgment to a non-movant. *See Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 222-25 (3d Cir. 2004) (citing *Celotex*, 477 U.S. at 326); *Lee v. Sixth Mt. Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 (3d Cir. 2018) (same).

### 3. Factual Disputes as to Whether Inari Breached MTAs Preclude Summary Judgment of Liability

Even if the Court were to find the MTAs' transfer and commercial use restrictions enforceable by Corteva, factual disputes preclude summary judgment of liability.

#### a. The 2022 MTA Does Not Apply to the Corteva Patent Deposit Seeds Purchased by Inari

There is no basis to claim that Inari breached the 2022 MTA. Inari executed the 2022 MTA long after it purchased the patent deposit seeds at issue here. SOF, ¶¶ 80, 82, 101, 103. The Second Amended Complaint contends that the 2022 MTA applies to Inari's earlier purchases because a merger clause states that it "supersedes all previous agreements between ATCC and Purchaser relating to the ATCC Material." D.I. 148, ¶ 97.

10

Under New York law governing the 2022 MTA, a merger clause in a later agreement does not cause the terms of the later agreement to have retroactive effect. The purpose of a merger provision is to require full application of the parol evidence rule to bar the introduction of extrinsic evidence, including earlier agreements between the parties, to vary or contradict the terms of the writing. *Primex Int'l Corp. v. Wal-Mart Stores*, 89 N.Y. 2d 594, 599 (1997). Absent an agreement by the parties to the contrary, a merger clause does not retroactively revoke the terms of an earlier agreement. *Id.* at 599-600 (merger clause in 1995 agreement that did not provide for right of arbitration did not retroactively render arbitration clauses in 1990 and 1993 agreements unenforceable); *see also Air Support Int'l, Inc. v. Atlas Air, Inc.*, 54 F. Supp. 2d 158, 166 (E.D.N.Y. 1999) (clause that later agreement "supersedes any and all previous Agreements between the parties" did not waive, release or relinquish legal claims that arose out of prior agreements); *Berkshire Bank v. Pioneer Bank*, 2021 WL 2763120, at *1 (N.Y. Sup. Ct. July 1, 2021) (superseding later agreement will not discharge obligations created under a prior agreement unless evidence shows this was intended by the parties).

There is no evidence in the 2022 MTA or elsewhere that ATCC and Inari intended the 2022 MTA to have retroactive effect and apply to Inari's pre-2022, completed purchases. Corteva has not shown any evidence to support the claim that the 2022 MTA is applicable to Inari's purchases of Corteva patent deposits. Corteva's claims for breach of the 2022 MTA should be dismissed.

> **b.    Factual Disputes as to Whether Inari Breached the MTAs' Restrictions Preclude Summary Judgment**

Where a plaintiff moves for summary judgment of liability for breach of contract, a court should deny the motion if there are genuine factual disputes as to the elements of the plaintiff's claims. *Design with Friends, Inc. v. Target Corp.*, C.A. No. 1:21-cv-01376-SB, 2024 WL 4103737, at *4-5 (D. Del. Sep. 6, 2024); *Travelodge Hotels, Inv. v. Honeysuckle Enters.*, 357 F.

11

Supp. 2d 788, 795-98 (D.N.J. 2005); *18W Holdings, Inc. v. Sing for Serv., LLC*, 763 F. Supp. 3d 651, 661-63 (D.N.J. 2025). Here, multiple factual disputes exist that preclude summary judgment in favor of Corteva.

**Whether Corteva is a "Contributor" under the MTAs.** Corteva's third-party beneficiary claims are premised on the contention that Corteva is a "Contributor" under the MTAs. D.I. 535 at 5. The 2017 and 2019 MTAs define "Contributor" as "any organization(s), entity(ies) and/or individual(s) providing technology and/or patent rights related to the ATCC Material, or original material to ATCC for deposit." JA5218; JA16298. Corteva does not provide technology or patent rights to ATCC, and the patent deposits are not included in ATCC's general collection. Outside of the MTA, ATCC refers to entities who contribute materials to ATCC's general collection as "Contributors." Kiernan Decl., Ex. 3. In Corteva's deposit agreements, by contrast, ATCC defines patent depositors like Corteva as "Depositors." JA26767 at JA26769. On its website, ATCC also refers to entities that make patent deposits as "depositors." JA1828 at JA1846-50. The term "Depositor" does not appear in any of the MTAs. In view of the conflict with federal law discussed above in § II.A.1., it is a question of fact whether a patent depositor can be a third-party beneficiary as a contributor under the MTA. A reasonable jury viewing the evidence could conclude that patent depositors are not "Contributors" under the MTA and, thus, Corteva is not an intended third-party beneficiary of the terms of the MTAs. At a minimum, there is a disputed factual question as to whether Corteva is an intended beneficiary under the MTAs as a "Contributor."

Should a jury find that Corteva is a "Contributor" under Delaware law, which Corteva argues applies here, D.I. 535 at 3 n.2, Corteva must establish that ***both*** Inari ***and*** ATCC intended that the third-party benefit from the terms of the agreement. *Rottlund Homes of N.J., Inc. v. Saul,*

12

*Ewing, Remick & Saul, L.L.P.*, 243 F. Supp. 2d 145, 152 (D. Del. 2003); s*ee also Am. Fin. Corp. v. Comput. Scis. Corp.*, 558 F. Supp. 1182, 1185 (D. Del. 1983) (unilateral intent of one party insufficient); *accord Copenhaver v. Rogers*, 238 Va. 361, 384 (1989). Corteva presents no evidence that Inari intended Corteva to be a third-party beneficiary. A jury could find that Inari reasonably expected that Corteva was ***not*** a beneficiary because it promised the public that there were no restrictions on access to its patent deposits. Whether both Inari and ATCC intended Corteva as a third-party beneficiary is in dispute and a question for the jury.

**Whether Inari engaged in a prohibited "Commercial Use."** Corteva argues that Inari violated the MTAs' commercial use restrictions because "Inari is a for-profit company," "aims to make money from the products it commercializes," used information from the Corteva Seeds to

███████████████████████████████████████████████████

████████████████████████████  D.I. 535 at 7. The MTAs do not bar for-profit companies from purchasing material and Inari identified as a "for-profit" on the MTAs. *See* JA5218; JA16298. Corteva itself purchases ████████████████████████████

████████████████. Rather, the 2017 and 2019 MTAs prohibit specific "Commercial Uses" of ATCC Material, defined in relevant part as "the sale, license, lease, export, transfer or other distribution of the Biological Materials . . . for financial gain or other commercial purposes," "to provide a service . . . for financial gain," or "to produce or manufacture products for general sale." JA5218; JA16298. The prohibited commercial uses in the MTAs are with third parties and yield actual financial remuneration. On its website FAQs, ATCC explains the meaning of "Commercial Use" in the MTA as: "Generally speaking, the commercial standard (requiring an ATCC license) is met when ATCC materials (progeny, unmodified derivatives and/or modifications) are used in a product, service or in a support function related to product/services *that are commercialized*

13

*(generating revenue)* or under regulatory development/scrutiny." JA1828 at JA1841 (emphasis added). Inari has not generated any revenue from the sale, license, export or transfer of any product derived from or incorporating any Corteva Seed. D.I. 541, Ex. 2 (84:22-25). Nor has it manufactured any products intended for general sale derived from or incorporating any Corteva Seed. A reasonable jury could conclude that Inari has not breached the MTAs' commercial use prohibitions. At a minimum, this is a disputed factual issue to be determined by the jury.

**Whether Inari engaged in a prohibited "transfer."** Corteva argues that Inari breached the prohibitions on transfer of ATCC Material in the MTAs by (i) transferring Corteva Seeds from West Lafayette, Indiana to a CRO in Chile; (ii) transferring plants grown from Corteva Seeds to █ ███████████████████████████████████████████; (iii) transferring DNA from leaflets grown from Corteva Seeds in Belgium to ████████ for sequencing; and (iv) transferring seeds derived from Corteva Seeds to ████████████████████████. D.I. 535 at 10-12. Factual disputes exist as to whether any of these activities violate the MTAs.

First, Inari did not transfer Corteva Seeds from Indiana to a CRO in Chile. ████████ ████████████████████████████████████ Under the MTAs, ████ ████████████████ are "Unmodified Derivatives" that may be transferred to a CRO for research purposes. JA5218; JA16298.

Second, Inari transferred plants to ████████████████████████████████. For a seed company, the greenhouse is its laboratory. Corteva's claim that the MTA precludes a requester from conducting activities in a rented space because the MTAs require that activities only take place on property owned by the requester is absurd.

14

Third, Inari's transfer to ▇▇▇▇▇ of extracted DNA material was a transfer of an Unmodified Derivative to a CRO for DNA sequencing that is permitted under the MTAs. Corteva presents no evidence to the contrary.

Fourth, Corteva contends that seeds that Inari shipped to ▇▇▇▇▇▇▇ comprise "Modifications" under the MTAs that may not be transferred. Inari disputes that the seeds that were shipped were derived from Corteva Seeds. SOF, ¶¶ 241-244 Resps.

A reasonable jury could conclude based on the totality of the evidence that Inari did not breach the transfer restrictions in the MTAs. At a minimum, factual disputes preclude entry of summary judgment in favor of Corteva. In view of these factual disputes, the Court should deny Corteva's motion for summary judgment on breach of contract claims (Counts XVIII and XVIV).

## B.    Corteva's Motion for Summary Judgment as to Inari's Lanham Act Counterclaim (Counterclaim 14) Should Be Denied

The existence of genuinely disputed questions of material fact precludes summary judgment on Inari's Lanham Act counterclaim. *Nat'l State Bank*, 979 F.2d at 1582.

**False or misleading statement.** Corteva's September 27, 2023 press release, issued the same day the complaint was filed, falsely characterized Inari "taking illegal actions to steal proprietary technology" and committing "theft." JA24741 at JA24744; SOF, ¶ 271. The plain and ordinary meaning of "theft" is an unlawful taking of property as by embezzlement or burglary.[5] The press release misleadingly portrayed Inari as "deliberately" using a "third-party agent to obtain protected Corteva seeds" and "illegally export[]" them. JA24741 at JA24744. Corteva's press release did not acknowledge that Inari purchased Corteva's seeds from ATCC patent deposits that were available to the public and that Corteva authorized and promised their availability. The press release also implied that the "nation's farmers" (the ultimate consumers of Inari's future products)

---

[5] Definition of "Theft," Merriam-Webster Dictionary (2026).

15

would be hurt by Inari's theft.  It is a question of fact for the jury whether Corteva's press release was intended to, and did lead its intended audience, farmers, government, investors, and Inari collaborators and customers, to view Inari as a "thief" engaged in a covert conspiracy to steal Corteva's seeds and secret them outside the United States.  *Id*.

Corteva  also  ███████████████████████████████████████████

████████████████████████████████████████████████████████████

JA1650 at JA1658-61 (21:15-36:23).  The Court may properly consider testimony by Inari's senior executive and 30(b)(6) witness in evaluating whether material facts are in dispute.  *Celotex*, 477 U.S. at 324 (nonmoving party need not produce evidence in a form that would be admissible at trial to avoid summary judgment).  Corteva also contacted Bayer and Syngenta, potential Inari customers, to inform them it was preparing to sue Inari.  D.I. 160 at p. 109-11, ¶¶ 73-77; JA611 at JA644 (130:11-131:22, 133:15-19).  These communications were not reasonably incidental to the prosecution of the litigation or a routine public announcement of suit.

There is more than sufficient evidence to establish that Corteva made false or misleading representations of fact about Inari in bad faith.  *Cap Exp., LLC v. Zinus, Inc.*, C.A. No. 2:21-cv-07148-JWH-MRWx, 2023 WL 6381821, at *4-5 (C.D. Cal. Sep. 28, 2023) (false and misleading statements to plaintiff's sales partners and in press release that plaintiff infringed patent supported Lanham Act claim); *see also Glob. Tech LED, LLC v. HiLumz Int'l Corp.*, C.A. No. 2:15-cv-553-FtM-29CM, 2017 WL 588669, at *1-2, 4-5 (M.D. Fla. Feb. 14, 2017); *VG Innovations, Inc. v. Minsurg Corp.*, C.A. No. 8:10-cv-1726-T-33MAP, 2011 WL 1466181, at *5-7 (M.D. Fla. Apr. 18, 2011); *Garmon Corp. v. Vetnique Labs, LLC*, C.A. No. 19 C 8251, 2020 WL 3414983, at *6-7 (N.D. Ill. June 22, 2020).

16

**Commercial advertising or promotion.**   Whether a statement proposes a commercial transaction to a consumer is merely one consideration as to whether the statement is commercial advertising or promotion under the Lanham Act; it is not a standalone gatekeeping requirement. In *Refundo, LLC v. Drake Enters., Ltd.*, C.A. No. 13-643 (JLL), 2013 WL 1750016, at *4 (D.N.J. Apr. 22, 2013), the court adopted "the U.S. Supreme Court's broadest definition for commercial speech," which is "an 'expression related solely to the economic interest of the speaker and its audience.'"  *Id*. (citing *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 457 (D.N.J. 2009) (quoting *Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 422 (1993)).  The *Refundo* court found that statements to the plaintiff's customers that the plaintiff used a bank that was "under suspicion," "unapproved, and "unauthorized" related to the economic interests of the speaker and audience and comprised commercial speech.  *Id.*; *see also Canfield Sci., Inc. v. Melanoscan, LLC*, C.A. No. 16-4636, 2017 WL 2304644, at *9-10 (D.N.J. May 25, 2017) (speech is commercial if the speaker has an economic motivation for the speech) (citing *Pactiv Corp. v. Perk-Up, Inc.*, C.A. No. 08-05072 (DMC), 2009 WL 2568105, *9 (D.N.J. Aug. 18, 2009); *U.S. Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990)).

Corteva's September 27, 2023 press release appeals to the economic interests of consumers by suggesting that Inari's "theft" of Corteva's seeds hurts "our nation's farmers," and effectively promotes a boycott of Inari's products.  JA24741 at JA24744.  The press release qualifies as commercial speech under the Lanham Act.

**Deception.**  Corteva's press release about Inari is deceptive because it falsely portrays Inari as a "thief" and misleadingly omits key information of the relevant facts to form a misapprehension in the mind of a reader.  Whether a statement is deceptive or tends to deceive is a factual question for the jury. *NY Mach. Inc. v. Korean Cleaners Monthly*, C.A. No. 17-cv-12269-ESK, 2023 WL

17

3508330, at *5 (D.N.J. May 17, 2023); *Tillery v. Leonard & Sciolla, LLP*, 521 F. Supp. 2d 346, 350 (E.D. Pa. 2007). There is a sufficient basis on which for a jury to find the press release deceptive.

**Injury.** Corteva states that the four prospective investors  who declined to participate in Inari's Series F Fundraising round did so for reasons other than the lawsuit and Corteva's disparagement. D.I. 535 at 15-16. But those investors ██████████████████████████████████████████████.

*See* JA3495 at JA3535-39 (¶¶ 79-85). What role the litigation and Corteva's media campaign played in the investors' decisions not to invest is a question of fact for the jury. *Nat'l State Bank*, 979 F.2d at 1582. Corteva has not satisfied its burden to show that there is an absence of evidence to support Inari's case and summary judgment should be denied. *Celotex*, 477 U.S. at 324.

### C. Summary Judgment Should Be Denied as to Inari's Abuse of Process Counterclaim (Counterclaim 16)

Corteva's summary judgment motion on Inari's abuse of process counterclaim fails because evidence shows that Corteva has used the fact of the lawsuit to inflict extra-judicial injury on Inari. *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, C.A. No. 16-403-LPD-CJB, 2017 WL 3821107, at *9 (D. Del. Aug. 31, 2017); *Nuance Commc'ns, Inc. v. MModal LLC*, C.A. No. 17-1484-MN-SRF, 2018 WL 6804488, at *4 (D. Del. Dec. 27, 2018). Corteva leveraged the forthcoming filing of the lawsuit ███████████████████████ (JA1650 at JA1658-61 (21:15-36:23)), disseminated a false and misleading press release relating to Inari and the lawsuit via PR Newswire with the expectation that prospective investors in and commercial partners with Inari would elect not to work with Inari because of it (JA24741 at JA24744), and it communicated the press release to ███████████████████████

18

███████████████████████████████████████████████████████████

██████████ to harm Inari's reputation with U.S. law makers and regulators (JA14142; JA14139).

There is no credible argument that such communications were reasonably incidental to the prosecution of the lawsuit. *Preferred Inv. Servs. v. T&H Bail Bonds*, C.A. No. 5886-VCP, 2013 WL 3934992, at *23 (Del. Ch. Ct. July 24, 2013). Nor is government petitioning protected by *Noerr-Pennington* when it is objectively meritless and done to interfere with the business of a competitor. *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). There are sufficient facts on which a jury could conclude that Corteva leveraged the fact of this lawsuit to tarnish Inari in the eyes of investors, prospective commercial partners, and government regulators, and inflict extra-judicial harm on Inari. Corteva has not satisfied its burden to show that there is an absence of evidence to support Inari's case and summary judgment should be denied. *Celotex*, 477 U.S. at 324.

## D. Corteva's Motion Under § 102 (Counterclaims 1, 2, 4, 5 and 7; Second, Fifth, Eighth, and Eleventh Affirmative Defenses)

Corteva's motion concerns claims that the regulated field trials were a public use invalidating the '434, '246, '363, '441, and '378 patents. D.I. 535 at 18-23.

### 1. Once an Invention Is Complete and Ready for Patenting, Commercial Exploitation Prior to the Critical Date Is an Invalidating Public Use

The on-sale bar of § 102(b) applies when two conditions are satisfied before the critical date: 1) the claimed product is subject to a commercial offer for sale, and 2) the invention is ready for patenting. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). The second condition may be satisfied by proof of reduction to practice before the critical date. *Id.* "[T]he Supreme Court's 'ready for patenting test' applies to the public use bar under § 102(b)." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005). "[I]n applying the *Pfaff* two-part test in the

19

context of the public use bar, evidence of experimental use may negate either the 'ready for patenting' or 'public use' prong. *Id*. at 1379-80. The ultimate determination of whether a patent is invalid for public use under § 102(b) is a question of law based on underlying factual considerations. *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001). The public use inquiry is replete with factual considerations. *Dey, L.P. v. Sunovian Pharms., Inc.*, 715 F.3d 1351, 1357 (Fed. Cir. 2013).

"[O]nce the invention is reduced to practice, there can be no experimental use negation." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F 3d 1336, 1354 (Fed. Cir. 2002). The experimental use exception does not apply to experiments performed to non-claimed features of an invention. *In re Theis*, 610 F.2d 786, 793 (C.C.P.A. 1979).

"The proper test for the public use prong of the § 102(b) statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." *Invitrogen*, 424 F.3d at 1380. "[A]n agreement of confidentiality, or circumstances creating a similar expectation of secrecy, may negate a 'public use' where there is not a commercial exploitation." *Id*. at 1382. "Commercial exploitation is a clear indication of public use." *Id*. at 1380. "[S]ecret use may be public 'within the meaning of the statute, if the inventor is making commercial use of the invention under circumstances which preserve its secrecy.'" *Id*. at 1381 (citing *TP Lab'ys., Inc. v. Pro. Positioners, Inc.*, 724 F.2d 965, 972 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 826).

> [I]t is a condition upon an inventor's right to a patent that he shall not exploit his discovery competitively after it is ready for patenting; he must content himself with either secrecy or legal monopoly . . . . But if he goes beyond that period of probation, he forfeits his right regardless of how little the public may have learned about the invention; just as he can forfeit it by too long concealment, even without exploiting the invention at all.

*Metallizing Eng'g Co. v. Kenyon Bearing & Auto Parts Co.*, 153 F.2d 516, 520 (2d Cir. 1946) (L. Hand, J.).

20

### 2.    The Pre-Critical Date Field Trials

Corteva does not dispute that prior to the critical date for each of the patents, Corteva conducted field trials on the transgenic plants claimed in the patents.  Corteva erroneously states that Inari does not contend that the seeds and plants in the field trials were commercially exploited, citing SOF, ¶¶ 406-407.  D.I. 535 at 18-19.  But SOF, ¶¶ 406-407, which Inari disputed, are not limited to regulated field trials and relate to the *sale* of seeds and plants from the trials, not to whether the trials themselves are a commercial business activity pre-critical date.  Dr. Silverstone's opinions on invalidity for public use under § 102(b) are not based on sales, but on the regulated field trials as a commercial use before the critical dates.  JA3114 at JA3146-49 (¶¶ 76-82), JA3176-79 (¶¶ 141-146), JA3198-200 (¶¶ 196-200), JA3224-25 (¶¶ 257-258), JA3276 (¶¶ 371-372); JA3390 at JA3398-99 (¶¶ 6-7), JA3402 (¶¶ 14), JA3417-18 (¶¶ 36-37), JA3429-31 (¶¶ 58-62).

### 3.    The Pre-Critical Date Regulated Field Trials of GM Events After the Events Were Reduced to Practice Are Commercial Exploitation

The pre-critical date regulated field trials of the transgenic events claimed in the '378, '434, '246, '363, and '441 patents were to analyze whether the events had "deleterious effects on plants, nontarget organisms or the environment" before approval and sale.  D.I. 535 at 18.  The events had been reduced to practice and were ready for patenting prior to the applications for permits to conduct the field trials.  The effects analyzed in the field trials are not features claimed in any of the patents and for this reason alone the experimental use exemption does not apply to negate the trial's public use.  *In re Theis*, 610 F.2d at 793 (finding experiments on non-claimed features not experimental use).

Corteva has not shown that there is an absence of evidence to show that each of the transgenic plant events subject to the regulated field trials had been reduced to practice.  SOF, ¶¶ 411 Resp., 427 Resp., 442 Resp., 456 Resp.; JA3114 at JA3148-49 (¶¶ 80-81), JA3178-79

21

(¶ 146), JA3199-200 (¶ 200), JA3225 (¶ 258), JA3276 (¶ 372).  Once the invention is reduced to practice, there can be no experimental use negation of the public use.  *Allen Eng'g*, 299 F.3d at 1354.  Even if no seeds were sold from the field trials, the field trials were commercial exploitation under the public use prong of the *Pfaff* test.  This is so even if the trials were conducted in secret. *Invitrogen*, 424 F.3d at 1382.  There are no disputed facts as to the purpose of the field trials and when they took place.  SOF, ¶ 409 Resp. (citing the APHIS petitions for each asserted event and the portions of each petition discussing the field trials).  Should Corteva dispute whether any of the patented events were reduced to practice before the field trial or whether the regulatory trials are a commercial exploitation, those would be fact questions for the jury to decide.

### 4.    Whether the Field Trials Were Accessible to the Public Is Disputed

The Court need not address public accessibility of the field trials if there is a finding of commercial exploitation.  Nevertheless, there are disputes of fact as to whether the regulated field trials were publicly accessible.  Corteva has not shown that there is an absence of evidence to support public accessibility.  SOF, ¶ 409 Resp.  Even though Corteva contends that ███████ ████████████████████████████████████, it has not come forward with any agreement specific to a pre-critical date trial to show what the confidentiality provisions were and who was bound by them.  SOF, ¶¶ 396-397 Resps., 400 Resp., 403 Resp.

Corteva cites *Delano Farms Co. v. Cal. Table Grape Comm'n*, 778 F.3d 1243 (Fed. Cir. 2015) for the proposition that mere accessibility in the field of unreleased plant varieties is not a public use because there is no evidence that a member of the public could identify the varieties. *Delano Farms* does not apply here because Corteva's field trials were done by the patentee whereas the plants in *Delano Farms* were secretly grown in a field by a third party who had misappropriated the plant varieties.  In *Delano Farms*, the patentee did not commercially exploit the inventions by conducting field trials after the inventions were ready for patenting before the

22

critical date.  778 F.3d at 1246.  Here, the public use, even if secret, is a commercial pre-critical date exploitation by a patentee. *Metallizing Eng'g*, 153 F.2d at 520.  Commercial exploitation is a clear indication of public use.  *Invitrogen*, 424 F.3d at 1380.  Even though a finding of commercial exploitation would be dispositive in this case, Corteva is incorrect in concluding that there is no dispute as to whether the field trials were publicly accessible.

To support its allegations that the field trials were "thoroughly confidential," Corteva relies on disputed facts SOF, ¶¶ 390, 399-403.  D.I. 535 at 19-20.  The evidence Corteva cites is conclusory testimony by Dr. Bubeck and opinions of expert witnesses who lack knowledge of the cooperator agreements and Corteva's field trials.  Corteva has identified only one ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ SOF, ¶ 400, but has not identified any specific field trial or tested transgenic event to which it pertains.  While that cooperator agreement ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮, it would not prevent third parties from observing the regulated crops in the field segregated from non-regulated crops.  *See* JA14928 at JA14932-33, JA14937-39.  Corteva has not referred to any other cooperator agreements related to the numerous field trials conducted prior to the critical dates.

Even if Corteva can come forward with specific cooperator agreements tied to the pre-critical date trials, and their confidentiality provisions, the facts as to whether the field trials were accessible to the public remain in dispute.  The non-Corteva cooperator farmers conducting the pre-critical date field trials were all likely Corteva customers who had previously farmed Corteva transgenic products and would be future customers for the crops planted in the trials once they were marketed.  As set forth in Dr. Silverstone's expert report and in the applications to conduct the trials, listed in Exhibit C, the general location of the trials was available to the public as were some of the transgenes in each of the transgenic events to be tested.  JA3114 at JA3147-48

(¶¶ 79-80), JA3178 (¶¶ 144-45), JA3199-200 (¶¶ 199-200), JA3225 (¶¶ 257-58), JA3276 (¶¶ 371-72). As described in the '434, '246, '363, and '441 patents and subsequent APHIS petitions, each of these transgenic events were molecular stacks of products previously marketed with the same transgenes in breeding stacks. *See, e.g.*, JA11588 at JA11593; JA13881 at JA13892, JA13895. It is a question of fact whether the information in field trial permit applications and information on existing commercial transgenic crops amount to accessibility to the public even if confidentiality restrictions were placed on the cooperators. The disputed facts on public accessibility and the effect of any confidentiality provisions in cooperator agreements are questions for the jury.

Corteva's objection to Exhibit C of the Silverstone report as inadmissible hearsay is misplaced. SOF, ¶¶ 478, 480. Exhibit C is an excerpt from the USDA APHIS website listing permit notifications for regulated field trials by Corteva and its predecessors. JA3114 at JA3178 (¶ 145). While Exhibit C does not contain the actual permit applications, it is probative of public information about the trials when the permits were approved. *Compare* JA3279 at JA3279-81 (rows 12-25), *with* JA6364 at JA6599; JA3279 at JA3282-87 (rows 54-73), *with* JA13881 at JA14095-120; JA3279 at JA3281 (rows 42-53), *with* JA11588 at JA11790; JA3279 at JA3287-88 (rows 74-94), *with* JA6270 at JA6336-39. USDA APHIS website information is the type of reliable information an expert would rely on. Even if Exhibit C is found to be inadmissible, an expert can rely on such information in forming their opinion. *See* Fed. R. Evid. 703; *Princeton Digital Image Corp. v. Office Depot, Inc.*, C.A. No. 13-239-LPS, 2017 U.S. Dist. LEXIS 120493, at *5-6 (D. Del. Aug. 1, 2017). It is a factual question for the jury to decide whether the information contained on the USDA APHIS website summarized in Exhibit C and other evidence that would have been available through the Freedom of Information Act ("FOIA") or from field observations

24

support a finding that the pre-critical date field trials were publicly accessible.

Corteva has not satisfied its burden to show that there is an absence of evidence to support Inari's case. *Celotex*, 477 U.S. at 325. This motion should be denied.

### E.    Corteva's Motion Under § 2402 (Eighteenth Affirmative Defense)

Corteva erroneously states that granting this motion would fully resolve Inari's Eighteenth Affirmative Defense. D.I. 535 at 23 n.9. It relies on the Court's ruling, D.I. 519, denying Inari's motion to amend the pleadings to add a counterclaim on invalidity of the PVP certificates because the varieties were not new under § 2402(a)(1). *Id*. The Eighteenth Affirmative Defense pleading invalidity under § 2402 was in Inari's answers D.I. 106 and D.I. 160. Corteva did not move to dismiss that affirmative defense. Corteva moved to strike certain of Inari's supplemental invalidity contentions including under § 2402(a)(1). D.I. 409; D.I. 410. The Court did not grant Corteva's motion to strike contentions under § 2402(a)(1). D.I. 421. While the Court denied Inari's motion to amend its pleadings to add a counterclaim for declaration of PVP invalidity (count 18), it did not strike Inari's Eighteenth Affirmative Defense. D.I. 519.

Corteva fails to cite any case dismissing an affirmative defense when a court denies a motion to add a parallel counterclaim on procedural grounds. *But see*, *Silicon Graphics, Inc. v. ATI Techs., Inc.*, C.A. No. 06-cv-611-bbc, 2011 WL 322664, at *3-4 (W.D. Wis. Jan. 31, 2011) ("When a party loses the right to assert a counterclaim for procedural reasons, this does not necessarily mean that an affirmative defense under the same theory is lost as well") (citing *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 840 (Fed. Cir. 2009)). The Court did not address Inari's Eighteenth Affirmative Defense in its order denying Inari's motion to amend. D.I. 519. Granting Corteva's motion as to distinctness would not fully resolve Inari's Eighteenth Affirmative Defense.

25

**1.  There Is a Genuine Dispute as to Whether Corteva's Process for Selecting MSVs Demonstrates Distinctness Under § 2402(a)(2)**

Under § 2402(a)(2), a variety is entitled to plant variety protection if the variety is "distinct, in the sense that the variety is clearly distinguishable from any other variety the existence of which is publicly known or a matter of common knowledge at the time of the filing of the application." 7 U.S.C. § 2402(a)(2).  An applicant seeking PVP protection can satisfy the distinctness burden by (1) stating how the application variety is distinct from "all other varieties in the same crop," or (2) identifying the most similar variety or group of related varieties, describing "all differences objectively," and providing statistical data.  *See, e.g.*, JA26132 at JA26135 (describing specific instructions for Item 19b relating to applicant's "Statement of Distinctness").  Corteva elected to satisfy its burden on distinctness by comparing to a most similar variety ("MSV").  There is a genuine factual dispute as to whether the Corteva's selection process for the MSV based on a limited pool of candidates and not all "publicly known varieties" complied with § 2402(a)(2).

Substantial evidence exists to allow a jury to find that Corteva's procedure for selecting the MSV is designed for its convenience rather than to identify an MSV out of all publicly known varieties or varieties of common knowledge.  JA2188 at JA2214-25 (¶¶ 69-89); JA2263 at JA2267-81 (¶¶ 6-31).  As explained by Dr. Riley, Corteva selected MSVs from a ██████████ ████████████████████████████████████ *See, e.g.*, JA2188 at JA2219-21 (¶¶ 78-80).  It failed to consider any non-Corteva varieties that were publicly known or a matter of common knowledge.  Publications demonstrate that non-Corteva varieties existed in the same heterotic groups as Corteva varieties that would be sufficiently similar to require consideration. *See* SOF, ¶¶ 367 Resp., 369 Resp.  Morphological comparison to publicly known varieties is not a factor in Corteva's MSV selection.  SOF, ¶ 368 Resp.

Corteva's process is based on ██████████████████ that may not correlate with the

morphological or phenotypic characteristics that are the focus of PVP protection. JA2188 at JA2214-23 (¶¶ 69-83). Corteva's process is deficient because Corteva does not consult breeders of the variety for which PVP protection is sought to identify what characteristic the variety was selected for and then identify an MSV with that same characteristic and there is no evidence that ███████████████████████████████████████████████████. SOF, ¶ 372 Resp.; JA2188 at JA2220-21 (¶ 80); JA2263 at JA2276-78 (¶¶ 21-25); JA25967 at JA25969. Corteva disputes Dr. Riley's opinions and interpretations of the evidence (SOF, ¶¶ 352-372), but that is an issue of fact that must be decided by a jury. Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248.

Corteva argues that Dr. Riley was required to compare two varieties to show that the Asserted PVP varieties were not "clearly distinguishable" to meet its burden. D.I. 535 at 24. It is a question of fact for the jury whether Inari has met its burden on invalidity based on the evidence it presents at trial. As Dr. Riley explains, Corteva's use of ███████████████████████ to only Corteva varieties and not other publicly known varieties to select an MSV is not compliant with § 2402(a)(2) because it excludes other publicly known varieties that may be more similar. JA2188 at JA2214-25 (¶¶ 69-89); JA2263 at JA2267-81 (¶¶ 6-31). There is no evidence that the ███████████████████████████████████ were linked to the characteristics evaluated for PVP purposes and Corteva has not shown any such evidence in its motion. JA2188 at JA2194 (¶¶ 13-14), JA2214-23 (¶¶ 69-83); JA2263 at JA2267-76 (¶¶ 6-20). In applying for PVP protection, Corteva did not meet its obligation to identify a most similar variety or group of varieties and reasonably demonstrate that the subject varieties were distinguishable from "any other variety the existence of which is publicly known or a matter of common knowledge." 7 U.S.C. § 2402(a)(2).

27

Corteva claims the USDA PVPO guidelines for Demonstrating DUS for PVP applications (the "Guidelines") "do not identify any particular process for selecting an MSV," or "any particular phenotypic characteristic for which an applicant variety must be distinct from an MSV."  D.I. 535 at 25 (citing SOF, ¶¶ 355, 358, 361).  While the Guidelines may not identify a particular process, they do describe the scope of the varieties "publicly known or a matter of common knowledge at the time of the filing" that are the comparator under § 2402(a)(2).  It is a question of fact for the jury as to whether Corteva's PVP applications met that requirement.  The facts are disputed and Corteva has not come forward with any evidence to show that there can be no genuine dispute.  *See* SOF, ¶¶ 355 Resp., 358 Resp., 361 Resp.

Corteva also argues that the PVPA provides that distinctness may be based on "other characteristics."  D.I. 535 at 25 (citing 7 U.S.C. § 2401(b)(5)).  Corteva does not show any evidence of what "other characteristics" are relevant to the subject PVP certificates.  Even so, distinguishing those "other characteristics" relying solely on ███████████████████████████████ ███████████████████████████████ is flawed.  JA2188 at JA2219-21 (¶¶ 79-80); JA2263 at JA2271-73 (¶¶ 13-15).  The Asserted PVP Certificates records demonstrate that Corteva did not supply molecular marker data in its PVP applications.  *See, e.g.*, JA6109 at JA6121 (indicating isozymes molecular marker data is available but not supplied); JA7447 at JA7458 (same); JA7463 at JA7474 (same); JA26132 at JA26142 (indicating SNPs molecular marker data is available but not supplied); JA26146 at JA26156 (same).

Corteva takes issue with the examples Dr. Riley identified where the MSV selected for purposes of PVP protection differed from the prior art variety the USPTO identified in the parallel utility patent application.  D.I. 535 at 26.  Corteva has not shown any evidence why this does not raise an issue of fact as to whether Corteva's MSV selection process does not comply with

28

§ 2402(a)(2)'s "publicly known or a matter of common knowledge at the time of the filing" requirement since it excluded the closest prior art identified by the USPTO from consideration as an MSV." JA2263 at JA2278-79 (¶ 26); *see also id.* at JA2279-81(¶¶ 27-31).

Corteva further argues that "both parties have equal access to information about 'publicly known' varieties," and that Dr. Riley could have analyzed and reviewed this information but did not. D.I. 535 at 27. Despite admitting that this information is available to everyone, it is disputed whether Corteva included such information in its selection of MSVs. Corteva has not satisfied its burden to show that there is an absence of evidence to support Inari's case. *Celotex*, 477 U.S. at 325. This motion should be denied.

## III.    CORTEVA'S *DAUBERT* MOTIONS SHOULD BE DENIED

### A.    Dr. Silverstone's Opinions on Invalidity of the Corteva Patents Based on Public Use Should Not Be Excluded

As discussed above, Dr. Silverstone's opinion is that the patents are invalid under 35 U.S.C. § 102(b) for public use prior to the critical dates because the field trials to deregulate transgenic events were a commercial use, even if kept secret. JA3114 at JA3129-30 (¶ 36), JA3146-49 (¶¶ 76-82), JA3176-79 (¶¶ 141-46), JA3198-200 (¶¶ 196-200), JA3224-25 (¶¶ 257-58). He also opines that the field trials were publicly accessible and refers to Exhibit C of his report, an excerpt from the USDA APHIS website listing the permits to conduct the trials, to support his opinion that the permits were available to the public under FOIA for public comment. He does not rely on Exhibit C as a prior art reference, but refers to Exhibit C to show that the pre-critical date field trials were not experimental but were for the commercial purpose of obtaining regulatory approval. It is the pre-critical date field trials that are the invalidating commercial public use, not Exhibit C.

Corteva seeks to exclude Dr. Silverstone's opinion arguing that Exhibit C is inadmissible evidence as an unverified, undated chart. D.I. 535 at 28-30. The USDA APHIS permits are

self-authenticating public records under Fed. R. Evid. 901(7).  Exhibit C is a summary of the information on the permits from the USDA-APHIS website.  *See* JA3279.  Exhibit C is a summary of relevant evidence, Fed. R. Evid. 402 and 1006, and is not prejudicial to Corteva, Fed. R. Evid. 403.  Even if Exhibit C were not admitted as hearsay, Dr. Silverstone can rely on such information in forming his opinions.  *Princeton Digital Image Corp.*, 2017 U.S. Dist. LEXIS 120493, at *5-6.

The cases Corteva relies on in D.I. 535 are inapposite.  In *Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*, 122 F.4th 860, 870 (Fed. Cir. 2024), the excluded materials were unauthenticated, undated screenshots offered to show the existence of a claim limitation in the prior art, in contrast to a summary of self-authenticating public government documents here.  In *Datacore Software Corp. v. Scale Computing, Inc.*, C.A. No. 22-535-GBW, 2024 WL 6945983, at *2 (D. Del. Aug. 21, 2024), damages expert's reliance on materials to show customer behavior were excluded, because there were no guidelines tying the evidence to damage calculations; the evidence was unverified; it was subject to methodological flaws; and unreliable.  In contrast, here, Dr. Silverstone uses Exhibit C as a summary of APHIS permits (which Corteva produced in discovery, *see* D.I. 535 at 29) from the USDA website.

Corteva faults Dr. Silverstone for attempting to show "public use" by reference to Corteva confidential information in Corteva's USDA permit applications produced in the litigation.  D.I. 535 at 29.  Corteva cites *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 964 (Fed. Cir. 2020) for the proposition that confidential information cannot be the basis of a claim of "public use."  Corteva's reliance on *BASF Corp.* is misplaced because in *BASF Corp.* the alleged use was a third party's prior secret commercial use alleged to anticipate under § 102(a) and as a prior public use under § 102(b).  At issue here is the patentee's pre-critical date commercial use of its own invention.  The Federal Circuit in *BASF Corp.*, 955 F.3d at 967-68, affirmed that the holding in

30

*Metallizing Eng'g Co.*, 153 F.2d at 519-20, applies to the inventor's pre-critical date commercial exploitation and even if secret, it is an invalidating public use under § 102(b).

Corteva's citation to *BASF Corp.* at 964 is not relevant here because there the court addressed the phrase "known or used" in § 102(a). As to whether third-party secret use could qualify as prior art under § 102(b), the court explained that § 102(b) "'does not require a strict identity between the claimed invention and the device involved in the public use or on sale activities;' it only requires that 'the differences between the claimed invention and the prior device used or sold would have been obvious to one skilled in the art.'" *BASF Corp.*, 955 F.3d at 967 (citing *In re Smith*, 714 F. 2d 1127, 1137 n.13 (Fed. Cir. 1983)). The court explained that the factfinder should consider whether certain elements of the claimed invention were already in the public domain at the time of the alleged public use, *id.* at 967, like the case here where the transgenic plants in the field trials were molecular stacks of transgenes that had been previously extensively marketed and planted with the same transgenes in breeding stacks. The court in *BASF Corp.* identified factors relevant to the public use inquiry: the nature of the activity that occurred in public, public access to and knowledge of the public use, existence of an actual or implied confidentiality obligation, and the relevant skill and knowledge of observers. *Id.* (citing *Dey L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355-56 (Fed. Cir. 2013)). Even though the rule in *Metallizing Engineering* is dispositive of public use in this case, Dr. Silverstone's opinions address the public accessibility factors that the jury should consider on public availability. JA3114 at JA3147-49 (¶¶ 79-81), JA3178-79 (¶¶ 144-46), JA3199-200 (¶¶ 199-200), JA3224-25 (¶¶ 257-58), JA3276 (¶¶ 371-72). His opinions and testimony on these issues should not be excluded.

31

### B.    Dr. Silverstone's Opinions Are Based on the Court's Claim Construction of "Aryloxyalkanoate Dioxygenase Activity"

Corteva seeks to preclude Dr. Silverstone from testifying to the application of the term in claim 1 of the '522 patent, "a polynucleotide that encodes a protein having aryloxyalkanoate dioxygenase activity" as based on an incorrect claim construction.  D.I. 535 at 31.  Corteva mischaracterizes Dr. Silverstone's opinions.

Dr. Silverstone's Opening Report is clear that he understands the Court rejected Inari's proposed claim construction and adopted Corteva's claim construction.  JA3114 at JA3243-44 (¶ 300).  He explains that he understands the Court's construction to be that the protein encoded by the polynucleotide is not required to have activity against both phenoxyacetate and pyridyloxyacetate herbicides but is only required to have activity against one aryloxyalkanoate herbicide.  Dr. Silverstone explains that aryloxyalkanoate herbicides are a broad class of herbicides as described in the '522 patent and that it is his opinion that the claims of the '522 patent are invalid under 35 U.S.C. § 112 because the patent does not enable or describe polynucleotides that encode proteins having dioxygenase activity against other members of the claimed class other than 2,4-D. JA3114 at JA3244-55 (¶¶ 301-21); JA3390 at JA3453-56 (¶¶ 101-05).  He further opines, based on the Court's claim construction, that the claims of the '522 patent are obvious under 35 U.S.C. § 103 because a person skilled in the art would have found it obvious and was motivated to transform plants with prior art genes encoding proteins that degrade 2,4-D to arrive at the claims as construed.  JA3114 at JA3256-63 (¶¶ 322-44); JA3390 at JA3456-66 (¶¶ 106-22).

The deposition testimony cited by Corteva, D.I. 535 at 31, is taken out of context from a longer line of questioning (JA3863 at JA3891-96 (103:3-123:14)), in a deposition conducted over a video conference and a line of questions that resulted in confusion (*e.g.*, JA3863 at JA3892 (106:23-107:25)).  Dr. Silverstone on redirect clarified that he applied the Court's claim

32

construction in his opinions. JA3863 at JA3914-15 (196:21-199:6). Any inconsistency between the expert reports and deposition testimony is properly addressed by cross-examination at trial, not by preclusion of testimony. *See Barry v. Depuy Synthes Companies,* 164 F.4th 896, 905, 909 (Fed. Cir. 2026) (deviations from claim construction go to weight not exclusion); *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, C.A. No. 17-cv-5096 (WMW/BRT), 2020 WL 5512507, at *7-9 (D. Minn. Sep. 14, 2020) (where an expert report applied the court's claim construction, inconsistencies arising in deposition testimony were "matters for cross-examination, not grounds for exclusion" citing *In re AndroGel Antitrust Litig. (No.II)*, 888 F. Supp. 2d 1336, 1356 (N.D. Ga. 2012)).

Corteva's reliance on *Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*, 127 F.4th 1340 (Fed. Cir. 2025) is misplaced. In *Trudell,* the expert had not submitted a Rule 26 expert report, and reliance was placed on a noninfringement declaration not tethered to the Court's claim construction in support of a summary judgment motion. 127 F.4th at 1348-50. The plaintiff in *Trudell* did not have the opportunity to depose the expert on the opinions offered at trial. *Id.* at 1348. Here, in contrast, Dr. Silverstone submitted three voluminous expert reports under Rule 26; in those expert reports, he applies the Court's claim construction as the basis for his opinions, and he was deposed on the substance and basis of his opinions. Preclusion is not warranted.

### C. Dr. Riley's Opinions on Distinctness Are Based on His Knowledge and Expertise and His Review of Relevant Material, Including USPTO Files

Corteva contends that Dr. Riley's opinions relating to distinctness should be excluded because they are "untested hypotheses" because he allegedly "provides no evidence that a different process actually would yield a different MSV—let alone a different MSV would render the Asserted PVP Certificates invalid as not distinct." D.I. 535 at 31-33. For the reasons stated above, Dr. Riley's opinions are based on his decades of experience as a corn breeder and grounded in his

33

review of relevant material, including USPTO files.  He provides clear reasoning why Corteva's MSV selection is not reasonably designed to select the MSV.  *See supra* § II.E.1.  Corteva also argues neither the PVPA nor the Guidelines require a specific process to select the MSV.  D.I. 535 at 31.  Whether the Guidelines provide specific processes or factors to consider is disputed.  *See* SOF, ¶¶ 358, 361.  The Guidelines provide the scope of comparator varieties that should be considered.  SOF, ¶¶ 355 Resp., 358 Resp.

Corteva implies in a footnote that Dr. Riley is not qualified to offer opinions on the MSV selection process.  Dr. Riley's "broad range of knowledge, skill, and training qualify" him as an expert who can identify an MSV.  *In re Paoli*, 35 F.3d at 741.  Dr. Riley has decades of experience in plant breeding, with over a decade of breeding leading corn varieties at Pioneer Hi-Bred, Corteva's predecessor.  JA3804 at JA3813-14 (25:24-26:4).  He is certainly qualified to offer opinions on the underlying problems with Corteva's MSV process that relate to, among other things, genetic marker-trait correlation, importance of breeder goals, and genetic relationships between varieties.  JA2188 at JA2191-94 (¶¶ 2-13); Kiernan Decl., Ex. 2.

### D.    Dr. Goodwin's Opinion Should Not Be Excluded

Corteva seeks to exclude Dr. Goodwin's entire rebuttal of Dr. Vellturo's reasonable royalty damages calculation because Dr. Goodwin purportedly failed to consider (i) Corteva's position in the hypothetical license negotiation; and (ii) Inari's actual conduct.  Neither ground warrants exclusion under Fed. R. Evid. 702.

As to the first ground, Dr. Goodwin did consider Corteva's position on the hypothetical negotiation and why it was flawed.  Dr. Goodwin explains that Dr. Vellturo failed to tie the hypothetical license to the allegedly infringing acts of purchasing, testing, and exporting Corteva's seeds from the United States and instead calculated a reasonable royalty for a hypothetical license that would allow Inari to gene-edit Corteva's traits in Belgium, activity that does not and could not

34

infringe Corteva's asserted U.S. patents.   JA1955 at JA1961-64 (¶ 9); JA4182 at JA4184 (confirming Corteva does not contend Inari infringed the Asserted Patents based on Inari's modified events).  Critically, gene-editing Corteva's GM traits was not an option that Inari had adopted as of the May 2020 hypothetical negotiation.  JA1955 at JA1982-83 (¶ 45).  Dr. Goodwin, as an experienced agricultural economist, opines that the hypothetical license that best fits the alleged infringement and facts of the case at the time of the hypothetical negotiation would grant Inari non-exclusive access to use a patented GM trait or event for incorporation into its or third-party germplasm, be subject to standard stewardship conditions, provide for milestone and per-unit royalties, and not permit editing of GM traits.  JA1955 at JA2017-19 (¶¶ 102-07).  He identified examples of comparable licenses in the industry to support his rebuttal of Dr. Vellturo, including licenses by Corteva.  JA1955 at JA1992-96 (¶¶ 60-65).  There is nothing flawed in this rebuttal.  Corteva's complaint that Dr. Goodwin did not adequately assess whether Corteva ever would have agreed to such a hypothetical license is fodder for cross-examination.  It certainly does not preclude Dr. Goodwin from even "commenting" on Dr. Vellturo's opinion.  D.I. 535 at 35.

Corteva's second ground for exclusion fails for similar reasons.  Corteva argues that Inari's gene-editing of Corteva's traits in Belgium would have "breached" Dr. Goodwin's hypothetical license and argues that, therefore, Dr. Goodwin's license is not one the parties would have agreed to in the hypothetical negotiations.  D.I. 535 at 35.  But Inari's gene-editing in Belgium would not have infringed Corteva's patents, nor would Inari have needed a license to gene-edit Corteva's GM traits if it had a license as Dr. Goodwin proposes to export and introgress Corteva's GM traits. The accused acts of infringement in this case are the purchase and export of patent deposit seeds. Subsequent acts outside the U.S. are not accused of infringement in this lawsuit.  JA4182 at JA4184.  The Patent Act requires that patent owners be compensated for "the infringement."  35

35

U.S.C. § 284.  As explained in Inari's *Daubert* motion as to Dr. Vellturo, the Patent Act does not permit U.S. patent owners to recover damages for acts not accused of infringement or that occur outside the geographic scope of U.S. patents, regardless of whether they were reasonably foreseeable.  D.I. 540 at 28-32.  In any event, whether Inari would gene-edit Corteva's traits abroad was not foreseeable in May 2020.  *Id.*  Corteva's reliance on *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109 (Fed. Cir. 1996), does not alter the conclusion.  There, the court allowed the patent owner to recover damages based on reasonably foreseeable acts of infringement, not unforeseen, non-infringing uses of the patented invention occurring abroad.  *Id.* at 1118.  Corteva's motion to exclude Dr. Goodwin should be denied.

### E.    Corteva's Motion to Exclude Dr. Zenner's Testimony Should Be Denied

Corteva does not challenge Dr. Zenner's qualifications as a corporate finance expert. Dr. Zenner provides opinions as to the decisions of four potential investors, ███████████ ███████████ not to invest in Inari shortly after Corteva filed suit.  His expert reports set forth his methodology based on established principles of investor decision-making (JA3495 at JA3511-13 (¶¶ 36-40), JA3522-27 (¶¶ 56-63)) and the evidentiary support for his opinion (JA3495 at JA3535-39 (¶¶ 78-85)) that this litigation, Corteva's characterization of the case and Inari's actions, and Corteva's disparagement of Inari were factors in the investors' decisions not to invest in Inari and caused Inari to raise ███████ less than expected.  JA3495 at JA3544-45 (¶ 97). Dr. Zenner's approach fits the facts and Inari's counterclaims in this case and will assist the jury under Fed. R. Evid. 702.  *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81 (3d Cir. 2017). Corteva fails to raise any legal basis under *Daubert* to exclude Dr. Zenner's opinions.

Corteva asserts that Dr. Zenner's opinions lack "the methods and procedures of science." D.I. 535 at 37.  Dr. Zenner's damages opinions do not involve science or technology but rather "other specialized" knowledge.  Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

36

141 (1999).  The reliability standard accepts professional experience-based judgment on facts, just as Dr. Zenner has done here.  *See, e.g.*, *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327 (3d Cir. 2002) (specialized knowledge can be practical experience as well as academic training and credentials); *Jackson v. City of Pittsburgh, Pa.*, C.A. No. 07-111, 2010 WL 3222137, at *9 (W.D. Pa. Aug. 13, 2010) (where expert is proffered to testify on non-scientific matters, reliability focuses on personal knowledge, experience, and the methodology used in applying experience to the facts); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 493-94 (D.N.J. 2012).

Corteva's argument that Dr. Zenner merely used his intuition relies on deposition testimony taken out of context.  Dr. Zenner explained that his opinions reflect established principles of investor behavior and risk assessment drawn from decades of professional experience, economic research publications, and commonly taught corporate-finance frameworks.  *See, e.g.*, JA3495 at JA3535-39 (¶¶ 78-85), JA3544-45 (¶ 97); *see also* JA3917 at JA3941-42 (82:6-86:16), JA3963 (171:3-173:21).

Corteva's argument that Dr. Zenner's opinion is unreliable because he has no methodology to disaggregate harms from actionable conduct and those from nonactionable conduct is erroneous. The Lanham Act does not require proof that Corteva's conduct was the sole cause of lost opportunity or an investment decision.  *See* 15 U.S.C. § 1125(a)(1)(B) (". . . shall be liable in a civil action by any person who believes that he or she is **likely** to be damaged by such act.") (emphasis added).  It requires proof that the challenged conduct was a contributing factor to harm. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) (Lanham Act cause of action extends to plaintiffs whose injuries are proximately caused by violations of the statute); *CareDx, Inc. v. Natera, Inc.*, C.A. No. 19-662 (CFC) (CJB), 2019 WL 7037799, at *7

(D. Del. Dec. 20, 2019), *report and recommendation adopted*, C.A. No. 19-662 (CFC), 2020 WL 401773 (D. Del. Jan. 24, 2020) (proximate cause if defendant's statements will likely cause plaintiff economic harm in the future).

A proximate cause standard also applies to Inari's Delaware abuse of process claim. *See* Prosser and Keeton on Torts § 121, at 900-01 (5th ed. 1984) (cited in *Unit, Inc. v. Ky. Fried Chicken Corp.*, 304 A.2d 320, 331 (Del. Super. 1973), and *Stevens v. Indep. Newspapers, Inc.*, C.A. No. 85C-OC11, 1988 WL 25377, at *8 (Del. Super. Ct. Mar. 10, 1988)); *Preston Hollow Cap. LLC v. Nuveen LLC*, C.A. No. 2019-0169-SG, 2020 WL 1814756, at *15-16 (Del. Ch. Apr. 9, 2020) (proximate cause shown if challenged conduct "motivated" third-party decisions causing injury). Any imprecision in damages calculation does not warrant exclusion or summary judgment. *See, e.g.*, *Unit*, 304 A.2d at 332 ("Damages indeed may be difficult to prove but the lack of precise damages would not justify summary judgment."). Dr. Zenner's opinion addresses the relevant standards by analyzing how increased perceived risk resulting from litigation and disparagement reasonably influenced investor evaluation of Inari as an emerging company. JA3495 at JA3539-45 (¶¶ 86-97). Corteva's demand for exclusive causation misstates the applicable legal standard.

Nor did Dr. Zenner admit to having no methodology to disaggregate harm between actionable and non-actionable conduct. Dr. Zenner's discussion (JA3917 at JA3937 (66:2-69:17), JA3942- (88:13-92:21)) relates to his opinions on harm to Inari measured in a decline in Inari's valuation, which opinion the Court has struck, making Corteva's argument moot. *See* D.I. 520; D.I. 471-2. Dr. Zenner's methodology as to valuation harm (JA3495 at JA3504 (¶ 20)) was independent of his opinion that litigation and Corteva's disparagement was a factor resulting in lost investments Inari estimated as between ███████ and ███████. JA3495 at JA3544-45

38

(¶ 97).

Corteva's reliance on *UGI Sunbury* is misplaced. That case concerned the exclusion of a valuation opinion when the expert was unable to identify quantifiable data or explain how to connect consumer habits in the appliance market to a decline in property values near environmental catastrophes to support a damages opinion. *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833-34 (3d Cir. 2020). Dr. Zenner's opinions do not seek to bridge such unconnected activities. Corteva's criticisms that Dr. Zenner's opinions "are contrary to, or not founded in, the evidence" (D.I. 535 at 38) ignore Dr. Zenner's consideration of the evidence and reflect a disagreement with the opinions, *compare* D.I. 535 at 38-39, *with* JA3495 at JA3535-39 (¶¶ 78-81, 85), JA3544-45 (¶ 97), which goes to the weight of the evidence. These are matters for cross-examination, not the admissibility of those opinions. Preclusion is not warranted.

## F.  Inari's Experts Do Not Offer Legal Opinions

Corteva seeks to exclude testimony of Drs. Silverstone, Riley, and de Leon Gatti because they "opine on what the law is." D.I. 535 at 39-40. This is incorrect. All three experts state they are not a lawyer and do not provide legal opinions, but have been advised of legal standards provided by counsel to be applied in forming their opinions. JA3114 at JA3126 (¶ 22); JA2188 at JA2195 (¶ 18); JA3070 at JA3076 (¶ 16). The experts explain that they were "informed by counsel," "informed," "understand," or some combination of those. *See, e.g.*, JA3070 at JA3077-78 (¶¶ 21-22), JA3089-90 (¶ 50), JA3100-04 (¶¶ 73-79, 81-82); JA3289 at JA3313-15 (¶¶ 57-60), JA3340-41 (¶¶ 128-31), JA3356-58 (¶¶ 170-73), JA3364-65 (¶¶ 191-94), JA3378-79 (¶¶ 217-20); JA3114 at JA3146 (¶ 75), JA3176 (¶ 140), JA3197 (¶ 195), JA3224 (¶ 256), JA3274-75 (¶ 366). For example, Dr. de Leon Gatti describes the facts and statements in the legislative history of the PVPA to "inform" her analysis (JA3070 at JA3100-04 (¶¶ 73-79, 81-82)), and Dr. Riley describes the prosecution history of patents which inform his opinions, (JA2188 at JA2223-25 (¶¶ 84-89)).

39

Dr. Silverstone explains that he is informed by counsel on the law of § 271(f)(2) (JA3289 at JA3298-99 (¶¶ 18-22)), and the portions of his report challenged by Corteva apply the law as he understands it (JA3289 at JA3316-17 (¶¶ 63-65), JA3342-43 (¶¶ 134-35), JA3358-59 (¶¶ 176-77), JA3366-67 (¶¶ 196-98), JA3380-81(¶¶ 223-26)).  Dr. Riley explains his understanding of the facts and law as "informed by counsel" (JA2188 at JA2240 (¶ 115)) and then evaluates the specification of the patents in view of the law (JA2188 at JA2237-47 (¶¶ 108-131); JA2263 at JA2296-97 (¶¶ 62-63)).

Corteva does not identify any expert opinion on the law as opposed to an application of the law as informed by documents or counsel to the facts to "opine on legal conclusions (*e.g.*, validity or infringement)."  D.I. 535 at 39.

IV.    CONCLUSION

Inari respectfully requests the Court deny Corteva's partial motion for summary judgment and to exclude expert testimony.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

OF COUNSEL:

Dimitrios Drivas
Raj S. Gandesha
John P. Scheibeler
Hallie Kiernan
Jongtae Jason Lee
Angelika Kligos
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY  10601
(914) 288-0022

May 1, 2026

Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 1, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Chad S.C. Stover, Esquire<br>Brian S.S. Auerbach, Esquire<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Todd Vare, Esquire<br>BARNES & THORNBURG LLP<br>11 South Meridian Street<br>Indianapolis, IN  46204<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Ronald Cahill, Esquire<br>Heather B. Repicky, Esquire<br>BARNES & THORNBURG LLP<br>One Marina Park Drive, Suite 1530<br>Boston, MA  02210<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Lauren Baker, Esquire<br>BARNES & THORNBURG LLP<br>3340 Peachtree Road N.E., Suite 2900<br>Atlanta, GA  30326<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Peter Bicks, Esquire<br>Kim B. Goldberg, Esquire<br>Jordan B. Fernandes, Esquire<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY  10019-6142<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

David Gindler, Esquire                               *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
Christopher Lynch, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire                             *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA  90401
*Attorneys for Plaintiffs*

Carly Romanowicz, Esquire                            *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
*Attorneys for Plaintiffs*


*/s/ Megan E. Dellinger*
_____
Megan E. Dellinger (#5739)

2

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 8, 2026, upon the following in the manner indicated:

Chad S.C. Stover, Esquire                                     *VIA ELECTRONIC MAIL*
Brian S.S. Auerbach, Esquire
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Todd Vare, Esquire                                            *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN  46204
*Attorneys for Plaintiffs*

Ronald Cahill, Esquire                                        *VIA ELECTRONIC MAIL*
Heather B. Repicky, Esquire
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA  02210
*Attorneys for Plaintiffs*

Lauren Baker, Esquire                                         *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA  30326
*Attorneys for Plaintiffs*

Peter Bicks, Esquire                                          *VIA ELECTRONIC MAIL*
Kim B. Goldberg, Esquire
Jordan B. Fernandes, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
*Attorneys for Plaintiffs*

David Gindler, Esquire                                    *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
Christopher Lynch, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire                                  *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA  90401
*Attorneys for Plaintiffs*

Carly Romanowicz, Esquire                                 *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
*Attorneys for Plaintiffs*


                                    */s/ Megan E. Dellinger*

                                    _____
                                    Megan E. Dellinger (#5739)

2