Originally Filed:  May 15, 2026
Redacted Version Filed:  May 19, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, PIONEER HI-BRED INTERNATIONAL, INC. and AGRIGENETICS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 23-1059 (JFM) |
| INARI AGRICULTURE, INC. and INARI AGRICULTURE NV, | ) ) ) | REDACTED - PUBLIC VERSION |
| Defendants. | ) ) | |

**INARI'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY**

OF COUNSEL:

Dimitrios T. Drivas
Raj S. Gandesha
Hallie Kiernan
Angelika Kligos
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10010
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY  10601
(914) 288-0022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Defendants*

TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     CORTEVA HAS NOT RAISED A MATERIAL FACT DISPUTE OR
        IDENTIFIED WHY SUMMARY JUDGMENT SHOULD NOT BE GRANTED
        AS A MATTER OF LAW .......................................................................................1

        A.      Corteva Cannot Absolve Itself of Commitments to Public Access to Its Patent
                Deposits It Made for Granted Patents....................................................................1

        B.      There Is No Dispute as to a Material Fact on Corteva's Infringement Claims
                Under 7 U.S.C. § 2541............................................................................................4

                1.      The Varieties Claimed in the Asserted PVP Certificates Were Sold in
                        the U.S. Under § 2541(d)..............................................................................4

                2.      The Research Exemption Under 7 U.S.C. § 2544 Applies to Inari's
                        Activities ......................................................................................................6

        C.      Budapest Treaty Patent Deposits Preclude Infringement Under 35 U.S.C.
                § 271(a), (b) and (f)(2) ...........................................................................................7

        D.      There Can Be No Induced Infringement Under 35 U.S.C. § 271(b): Corteva
                Disclaimed Any Benefit from the MTA Restrictions by Agreeing That
                ATCC May Furnish Patent Deposits to the Public Without Restriction –
                There Is No Question for the Jury............................................................................9

        E.      The Facts of the Phytosanitary Testing Do Not Amount to Patent
                Infringement Under 35 U.S.C. § 271(a) ...............................................................10

        F.      There Are No Genuine Factual Disputes as to Infringement Under 35 U.S.C.
                § 271(f)(2) to Preclude Summary Judgment.........................................................11

        G.      Legal Estoppel Prevents Corteva from Imposing Restrictions on the Export
                of Patent Deposits by Enforcing Provisions of the PVPA and Patent Laws ....12

III.    CORTEVA HAS NOT DEMONSTRATED THAT DR. VELLTURO'S OPINION IS
        ADMISSIBLE OR THAT INTENT OPINIONS SHOULD NOT BE EXCLUDED ..13

        A.      Dr. Vellturo's Damages Opinions Should Be Excluded...................................13

                1.      Dr. Vellturo's Reasonable Royalty Opinion.........................................13

                2.      Dr. Vellturo's Opinion as to Damages Under Mass. Gen. Law
                        Ch. 93A......................................................................................................18

                3.      Dr. Vellturo's Opinion as to Breach of Contract Damages ..................19

        B.      Corteva Does Not Meaningfully Dispute That Its Experts Offer
                Impermissible Intent Opinions That Should Be Excluded ..............................19

i

IV.    CONCLUSION..................................................................................................................20

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  600 U.S. 412 (2023)................................................................2, 3

*Acqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014)...................................................18

*AGSouth Genetics, LLC v. Georgia Farm Servs., LLC*,
  22 F. Supp. 3d 1342 (M.D. Ga. 2014) .........................................5

*AMP Inc. v. United States*,
  389 F.2d 448 (Fed. Cl. Ct. 1968),
  *cert. denied,* 391 U.S. 964 (1968)...........................................13

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015)............................................14, 16

*AstraZeneca UK Ltd. v. Watson Lab'ys, Inc. (NV)*,
  2012 WL 6043266 (D. Del. Nov. 14, 2012) ...............................19

*Brumfield v. IBG LLC*,
  97 F.4th 854 (Fed. Cir. 2024) ............................14, 15, 16, 17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................1

*Danise v. Saxon Mortg. Servs. Inc.*,
  738 F. App'x. 47 (3d Cir. 2018) .................................................13

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993).......................................................................1

*Deepsouth Packing Co. v. Laitram Corp.*,
  406 U.S. 518, 523-24 (1972) .....................................................12

*Ecolab Inc. v. Dubois Chems., Inc.*,
  2023 WL 7019266 (D. Del. Oct. 25, 2023) ...............................14

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994)............................................................1

*In re: Tylenol (Acetaminophen) Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2016 WL 4039271 (E.D. Pa. July 28, 2016)...........................19, 20

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
  534 U.S. 124, 142 (2001)................................................................................2, 6, 7, 13

*Johns Hopkins Univ. v. CellPro, Inc.*,
  152 F.3d 1342 (Fed. Cir. 1998)................................................................................15

*Kewanee Oil Co. v. Bicron Corp.*,
  416 U.S. 470 (1974)................................................................................2, 13

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)................................................................................18

*Life Techs. Corp. v. Promega Corp.*,
  580 U.S. 140 (2017)................................................................................11

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
  387 F. Supp. 2d 794 (N.D. Ill. 2005)................................................................................13

*Microsoft Corp. v. AT&T Corp.*,
  550 U.S. 437 (2007)................................................................................12

*Midwest Energy Emissions Corp. & Mes Inc. v. Arthur J. Gallagher & Co.*,
  2023 U.S. Dist. LEXIS 202160 (D. Del. Nov. 3, 2023)................................................................................20

*Nat'l Grp. for Commc'ns. & Computers, Ltd. v. Lucent Techs. Int'l, Inc.*,
  331 F. Supp. 2d 290 (D.N.J. 2004)................................................................................6

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
  30 F.4th 1339 (Fed. Cir. 2022)................................................................................14

*Opticurrent, LLC v. Power Integrations, Inc.*,
  2018 WL 6727826 (N.D. Cal. Dec. 21, 2018)................................................................................18

*Perez-Ruiz v. Crespo-Guillen*,
  25 F.3d 40 (1st Cir. 1994)................................................................................1

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)................................................................................11

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
  2019 U.S. Dist. LEXIS 111892 (E.D. Tex. June 11, 2019)................................................................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013)................................................................................15

*Roche Prods., Inc. v. Bolar Pharm. Co.*,
  733 F.2d 858 (Fed. Cir. 1984)................................................................................10

*Southard v. United Reg'l Health Care Sys., Inc.*,
2008 WL 4489692 (N.D. Tex. Aug. 5, 2008)....................................................................13

*United States ex rel. Petratos v. Genentech Inc.*,
855 F.3d 481 (3d Cir. 2017)...............................................................................................1

*United States v. Cunningham,*
679 F.3d 355 (6th Cir. 2012) ...........................................................................................13

*United States v. Urban*,
140 F.3d 229 (3d Cir. 1998)...............................................................................................5

*VLSI Tech. LLC v. Intel Corp.*,
87 F.4th 1332 (Fed. Cir. 2023) ........................................................................................16

*Waymark Corp. v. Porta Sys. Corp.*,
245 F.3d 1364 (Fed. Cir. 2001).......................................................................................10

*WesternGeco LLC v. ION Geophysical Corp.*,
585 U.S. 407 (2018)...................................................................................................14, 15

*Wirtgen Am., Inc. v. Caterpillar, Inc.*,
715 F. Supp. 3d 587 (D. Del. 2024)..................................................................................13

*Zimmer Surgical, Inc. v. Stryker Corp.*,
365 F. Supp. 3d 466 (D. Del. 2019)............................................................................19, 20

## STATUTES AND RULES

7 U.S.C. § 2541(a) .............................................................................................................6

7 U.S.C. § 2541(d) .....................................................................................................*passim*

7 U.S.C. § 2544...............................................................................................................6, 7

35 U.S.C. § 271(a) ............................................................................................9, 10, 15, 16

35 U.S.C. § 271(b) .............................................................................................................9

35 U.S.C. § 271(e) .........................................................................................................9, 10

35 U.S.C. § 271(f)(2) ...........................................................................................3, 9, 11, 12

Fed. R. Civ. P. 44.1............................................................................................................6

Fed. R. Evid. 702 ..........................................................................................1, 13, 18, 19

**REGULATIONS**

37 C.F.R. §§ 1.801-1.809.................................................................................2, 3, 13

37 C.F.R. § 1.808 ........................................................................................2, 3, 4, 9

54 F.R. 34864 (Aug. 22, 1989) ...............................................................................4

**MISCELLANEOUS**

Mass. Gen. Law Chapter 93A, § 11......................................................................18

*National Farm Security Action Plan* § 4 (2025)....................................................3

Restatement (Second) of Contracts §§ 306, 309..................................................10

## I.    INTRODUCTION

Corteva bears the burden of proof at trial on infringement.  Inari has met its burden in showing that there is an absence of evidence to support Corteva's case and summary judgment is proper as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Corteva has not come forward with any specific facts showing that there is a genuine issue of material fact on infringement presented in Inari's motion.  *Id.* at 324.  Corteva relies on the Court's denial of Inari's motion to dismiss to support its opposition.  But a motion to dismiss is based on the pleadings and the Court must take the facts alleged in the complaint as true.  *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (citing *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) (denials of motions to dismiss are interlocutory, are open to reconsideration, and are not law of the case)).

Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-95 (1993), and Fed. R. Evid. 702, the proponent of testimony must demonstrate that it is based on sufficient facts and data and sound principles and methods.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994).  Corteva has not demonstrated that the challenged opinions of its experts are based on reliable methodology as applied to relevant facts.

## II.    CORTEVA HAS NOT RAISED A MATERIAL FACT DISPUTE OR IDENTIFIED WHY SUMMARY JUDGMENT SHOULD NOT BE GRANTED AS A MATTER OF LAW

### A.    Corteva Cannot Absolve Itself of Commitments to Public Access to Its Patent Deposits It Made for Granted Patents

Corteva contends that the restrictions on which its infringement claims are based are not imposed by Corteva but are imposed *by Congress* in the PVPA and Patent Act.  D.I. 557 at 3.  But Congress is not the plaintiff here.  It is Corteva that received patents based on the commitments it made that patent deposits would be accessible to the public.  It cannot renege on those

1

commitments after having received patents as a result.

The Supreme Court in *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.* explained that the disclosure required by the Patent Act is the *quid pro quo* of the right to exclude. 534 U.S. 124, 142 (2001) (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 484 (1974)). Corteva argues that 37 C.F.R. § 1.808 does not and cannot bar Corteva from enforcing the requirements of the PVPA and Patent Act. D.I. 557 at 3. But § 1.808 alone is not the bar; it is Corteva's pledge to abide by the rule that bars enforcement. In *J.E.M. Ag Supply*, the Supreme Court discussed the different requirements and coverage of utility patents and PVP certificates, explaining that under the Patent Act, "[t]he description requirement for plants includes a deposit of biological material, for example, seeds, and **mandates** that such material be accessible to the public." 534 U.S. at 142 (citing 37 C.F.R. §§ 1.801-1.809 (2001)) (emphasis added). Corteva promised to comply with the mandate. Its patent deposits must be accessible to the public even if there is a concurrent PVP certificate.

Corteva argues that it did "not waive" its rights under the PVPA in its patents, citing text in the '246 and '434 patents, *e.g.*, JA1 at JA18 (19:10-14) and JA48 at JA56-57 (6:67-7:6). D.I. 557 at 3. Reliance on this text is misplaced. Corteva cannot and has not alleged infringement of the PVPA for the plants in the '246 and '434 patents because they are not the subject of PVP certificates. Corteva SOF, ¶¶ 350, 426, 428, 441, 443.[1]

According to Corteva, the "public" under § 1.808 is "presumptively the **American** public" and not the **foreign** public. D.I. 557 at 4 (emphasis in original). It cites to *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417 (2023) to support its presumption. In *Abitron Austria*, the Supreme Court held that the Lanham Act cannot be applied extraterritorially. *Id.* at 419. It

---

[1]  All cites to Corteva's SOF or Inari's SOF are intended to incorporate the fact, response, and reply unless otherwise specified.

explained that only if Congress provided unmistakable instruction that the provision is extraterritorial, can claims on exclusively foreign conduct proceed subject to the limits Congress has imposed. *Id*. at 418 (citing *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337-38 (2016)). While *Abitron Austria* may counsel against Corteva's mistaken allegation seeking to apply the patent laws extraterritorially under 35 U.S.C. § 271(f)(2), it has no bearing on accessing a patent deposit in the U.S. There are no restrictions in 37 C.F.R. § 1.808 limiting the public to Americans or excluding foreigners and Corteva has not pointed to evidence to suggest otherwise. *See* Inari SOF, ¶ 28; *see also* Inari SOF, ¶ 26. Since § 1.802 and § 1.803 permit deposits to be made in qualified depositories outside the United States, Corteva's mock argument that access to U.S. deposits is limited to Americans clashes with the regulations.

Corteva further argues that the Budapest Treaty recognizes that export restrictions may be imposed in view of national security and implies that the *National Farm Security Action Plan* § 4 (2025) elevates intellectual property theft as such a threat. D.I. 557 at 4. The *Plan* is not law or any government directive and mentions intellectual property twice. D.I. 557, Ex. A at 3, 9. Putting aside Corteva's hyperbole, the *Plan* does not raise the export of a few hundred corn seeds to a national security threat export restriction under the Budapest Treaty.

Corteva contends that § 1.808 does not authorize the export of patent deposits "for commercial exploitation" or for purposes of violating § 271(f)(2) and that this creates a triable dispute. D.I. 557 at 4. Corteva's catch-all undefined phrase "for commercial exploitation" does not appear in 37 C.F.R. § 1.808, 35 U.S.C. § 271 or 7 U.S.C. § 2541. When the USPTO promulgated 37 C.F.R. §§ 1.801-1.809, it considered and rejected a proposed rule that would require the requester "to use the biological material only for experimental purposes concerning the invention," essentially restricting access for any other purpose that may be encompassed by

3

"commercial exploitation."  D.I. 23-1 at 147-48 (54 F.R. 34864 (Aug. 22, 1989)).  There are no commercial exploitation exclusions under § 1.808.  Even so, Corteva has not put forward any evidence that Inari has sold or "commercially exploited" the varieties in the Asserted PVP Certificates or the genes and events in the Asserted Patents.  Inari has not sold or commercialized any products to date.  Corteva SOF, ¶¶ 222 Resp., 225 Resp., 255 Resp., 257 Resp., 258 Resp. Whether any restrictions on access to a patent deposit under § 1.808 are enforceable by Corteva is a question of law, not a disputed issue of fact.

**B.     There Is No Dispute as to a Material Fact on Corteva's Infringement Claims Under 7 U.S.C. § 2541**

**1.     The Varieties Claimed in the Asserted PVP Certificates Were Sold in the U.S. Under § 2541(d)**

Inari is identified in the 2017 and 2019 MTAs as the "Purchaser."  Corteva SOF, ¶ 43; JA16298; JA5218.  It paid ATCC for the patent deposit samples.  Purchase and sale are two sides of the same transaction.  Inari purchased the patent deposit seeds sold by ATCC.  *E.g.*, Corteva SOF, ¶¶ 80-83, 99, 103-105.  Section 2541(d) states: "It shall not be an infringement of the rights of the owner of a variety . . . that is sold or otherwise marketed with the consent of the owner in the United States."  ATCC's sale of the patent deposit samples was with the consent of Corteva since it authorized ATCC to make such sales without any restrictions in the deposit agreements with ATCC and correspondence after patent grant.  Inari SOF, ¶¶ 18-20, 25.

Corteva argues that "sold or otherwise marketed" are synonyms as used in § 2541(d) and mean the same thing, when a variety is "placed into the stream of commerce."[2]  D.I. 557 at 6-7. But "or" is a conjunction linking two alternatives and under principles of statutory construction

---

[2]  Corteva, in D.I. 557 at 7, faults Inari for not even trying to show the seeds it acquired from ATCC are "sold or otherwise marketed."  While it is not necessary for a determination of summary judgment, should this case go to trial, Inari will present evidence to the jury on its Affirmative Defense XVIII that hybrids of the varieties claimed in the Asserted PVP certificates were sold with Corteva's consent more than one year before the applications for PVP protection.

4

they do not mean the same thing.  *E.g.*, *United States v. Urban*, 140 F.3d 229, 232 (3d Cir. 1998) ("[C]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings unless the context dictates otherwise") (quotation omitted).  The phrase "stream of commerce" does not appear in § 2541(d).  Corteva urges the Court to ignore the purported "non-commercial" sale by ATCC of the patent samples and consider whether the varieties have been placed in the stream of commerce.  D.I. 557 at 6-7.  It argues that the purported restrictions on commercial use in the ATCC MTAs prevent the patent deposit varieties from entering "the stream of commerce."  *Id.*  Corteva has not come forward with any evidence to show that a patent depository (ATCC) can impose restrictions on access.  Corteva consented to ATCC furnishing the patent deposits to the public.  Inari SOF, ¶ 25.  Inari, the "Purchaser" (*see* Corteva SOF, ¶ 43; JA16298; JA5218), was "sold" patent deposit samples by ATCC with Corteva's consent under § 2541(d), and Corteva's embellishing the statute with additional terms and conditions cannot lead to any other conclusion.  Nor does the *AGSouth Genetics, LLC v. Georgia Farm Servs., LLC*, 22 F. Supp. 3d 1342, 1348 (M.D. Ga. 2014) decision cited by Corteva interpreting the term "propagation" in § 2541(d) suggest otherwise.

Corteva contends that Inari has not shown that its activity with the patent deposit seeds claimed in the PVP certificates was not further propagation of the variety.  D.I. 557 at 8.  Wrong.  The evidence shows that some of the seeds exported to Belgium were used to grow plantlets for DNA extraction and sequencing.  D.I. 540 at 10; Inari SOF, ¶¶ 56-58; Corteva SOF, ¶¶ 113-114.  ███████████████████████████████████████████████████████ Inari SOF, ¶¶ 60-62.  Inari did not propagate any of the Exhibit A varieties in Belgium and Corteva has not shown any evidence to the contrary.  Inari SOF, ¶¶ 60-63.  As to the Exhibit B seeds ████████ ██████████████████████████ Inari showed in its motion, D.I. 540 at 10, that those seeds were

5

to be used in a breeding program developing new inbreds.  *See* Inari SOF, ¶ 83.  Inari has not sold any lines derived from Exhibit B seeds.  JA4649 at JA4720-21.  The Supreme Court in *J.E.M. Ag Supply* recognized the research and breeding infringement exemption of § 2544, 534 U.S. at 140, and that developing new inbred lines was non-infringing under § 2541(a)(4), *id.* at 143.

Corteva argues that even if Inari's conduct was not propagation, its export of seeds to Belgium and Chile does not qualify as non-infringing under § 2541(d) because Inari has not adequately shown that Belgium and Chile are countries that protect varieties of corn and soybean.  D.I. 557 at 8.  Corteva has not asserted infringement of the PVPA for any soybean varieties.  Inari presented evidence in its motion that both Belgium and Chile, member states of UPOV, protect new corn varieties.  D.I. 540 at 9; Inari SOF, ¶¶ 65-66, 84-85.  Corteva does not dispute that Belgium and Chile protect new corn varieties or that the seeds were not exported for final consumption.  The material presented by Inari is sufficient for the Court to find under Fed. R. Civ. P. 44.1 that both Belgium and Chile protect new varieties of corn.  *Nat'l Grp. for Commc'ns. & Computers, Ltd. v. Lucent Techs. Int'l, Inc.*, 331 F. Supp. 2d 290, 294 (D.N.J. 2004) (for questions of law, court may consider any relevant material even if inadmissible at trial).  Accordingly, the export of the patent deposit seeds to Belgium and Chile is not considered infringing under § 2541(d).

### 2. The Research Exemption Under 7 U.S.C. § 2544 Applies to Inari's Activities

Corteva argues that Inari misapprehends the text of § 2544 because it applies only to the use of the protected variety not its export, since Congress chose not to list "export" in § 2544.  D.I. 557 at 9.  Both § 2541 and § 2544 are in Subchapter III, Part K, Infringement of Plant Variety Protection, of the PVPA.  The first paragraph § 2541(a), titled "Acts constituting infringement," states: "***Except as otherwise provided in this subchapter***, it shall be an infringement."  7 U.S.C.

6

§ 2541(a) (emphasis added).  The § 2544 research exemption in the subchapter applies to all infringing acts recited in § 2541, including export, when the varieties are used for breeding or research.  The breadth of this statutory exemption as compared to the Patent Act was recognized by the Supreme Court in *J.E.M. Ag Supply*, 534 U.S. at 140.

Corteva has not shown any evidence of a factual dispute as to whether the § 2544 research exemption applies to Inari's Belgium-based activities.  ████████████████████████ ████████████████████████████████████████████████████ ████████████████████  Inari SOF, ¶¶ 56-58, 60; Corteva SOF, ¶¶ 113-114.  It has not produced or sold any varieties using the information it obtained from the deposit seeds, Inari SOF, ¶¶ 61-63; Corteva SOF, ¶ 117 Resp., and Corteva has not shown any evidence that would suggest the research exemption does not apply.  Corteva's discussion of "essentially derived varieties," D.I. 557 at 10, is irrelevant because the research exemption applies equally to all breeding.  Essentially derived varieties become an issue when a variety is propagated for sale or marketing.  Corteva's argument on essentially derived varieties is inapt because Inari has not propagated, marketed, or sold any corn varieties to compare to the PVP varieties.  Corteva, as the party with the burden of proof at trial, has not come forward with any specific facts to show there is a genuine dispute for trial.

### C.    Budapest Treaty Patent Deposits Preclude Infringement Under 35 U.S.C. § 271(a), (b) and (f)(2)

The patent deposits on which Corteva makes its patent infringement allegations were all under the Budapest Treaty.  Inari SOF, ¶¶ 2, 5, 8, 11, 15.[3]  The Treaty enables a depositor in a

---

[3]  In Inari's Statement of Facts (D.I. 539), Inari has identified a numbering error that caused the paragraph number for SOF, ¶ 2 to appear for Inari's SOF, ¶ 3.  Inari SOF, ¶ 2 starts at the third line of page 2.  Inari SOF, ¶ 3 starts at the second line of page 5.  Inari's SOF correctly continues the numbering from ¶ 4.

Contracting State to make a deposit in one international depository authority to support patent applications and patents in all the Contracting States instead of making deposits in each State. Budapest Treaty on the Int'l Recognition of the Deposit of Microorganisms for the Purpose of Patent Proc., art. 3, Apr. 28, 1977, 32 U.S.T. 1241, *as amended*, Sep. 26, 1980; *see also* JA26541. The Treaty also provides that a legally entitled requester from a Contracting State has the right to obtain a patent deposit sample according to the laws of patent procedure. *Id.* at r. 11.3; *see also* JA26541 at JA26553-54. The United States and Belgium are Contracting States.

The Budapest Treaty deposit forms executed by Corteva contain provision 8, "Availability," which includes subsection (a) providing:

> ATCC may furnish as permitted by or required under Budapest Treaty or applicable law. Notwithstanding anything to the contrary, ATCC may, without restriction, furnish samples of the deposit at any time after the issuance of any relevant patent.

*See, e.g.*, JA7406 at JA7408. Corteva applied for and obtained patents in both the United States and Europe (designating Belgium) (*see* Inari SOF, ¶¶ 4, 7, 10, 12, 14, 17) based on these Budapest Treaty deposits. It benefited from the Treaty convenience of depositing in a single depository to obtain patents in multiple countries. Corteva knew when it made the deposits that foreign members of the public from Contracting States, such as Inari Belgium, would be legally entitled to obtain samples of the Budapest Treaty patent deposits from ATCC. The ATCC patent deposits are integral to the description of Corteva's European patents and access, and use of those patent deposits is covered by the law of the jurisdictions in which those patents are in force. *See* Budapest Treaty on the Int'l Recognition of the Deposit of Microorganisms for the Purpose of Patent Proc., art. 3, Apr. 28, 1977, 32 U.S.T. 1241 at r. 11.3, *as amended*, Sep. 26, 1980 (referring to access to deposits "under the law governing patent procedure before that office"); JA26541 at JA26553. What Inari Belgium can do with the patent deposits in Europe, including Belgium, is governed by the patent laws of those jurisdictions, not U.S. patent law. Having benefited from the Budapest

8

Treaty deposit to obtain patents in multiple jurisdictions with a single deposit, Corteva cannot frustrate the members of the public in Contracting States from obtaining samples of the deposits by alleging infringement under U.S. patent laws. For this reason alone, the Court should grant summary judgment of noninfringement under 35 U.S.C. § 271(a), (b) and (f)(2). Corteva's other arguments for patent infringement also fail for the reasons set forth below.

**D.    There Can Be No Induced Infringement Under 35 U.S.C. § 271(b): Corteva Disclaimed Any Benefit from the MTA Restrictions by Agreeing That ATCC May Furnish Patent Deposits to the Public Without Restriction – There Is No Question for the Jury**

Corteva alleges Inari willfully and intentionally induced ATCC to sell the Budapest Treaty patent deposit seeds to Inari for "commercial purposes" knowing that ATCC was not authorized to do so. D.I. 557 at 11. Corteva's central point under § 271(b) is that ATCC was not authorized to distribute Corteva's seeds to Inari "for commercial use" but it shows no evidence in support.

The evidence shows that Corteva promised as a condition for patent grant that all restrictions on the availability to the public of its patent deposits would be removed irrevocably upon patent grant in compliance with 37 C.F.R. § 1.808. Corteva SOF, ¶¶ 208 Resp., 212 Resp.; Inari SOF, ¶¶ 2, 3, 5, 8, 9, 11, 15, 16. In the deposit agreements, Corteva agreed that "[n]otwithstanding anything to the contrary, ATCC may, without restriction, furnish samples of the deposit at any time after the issuance of any relevant patent." *See, e.g.*, JA26767 at JA26769. Corteva authorized ATCC on patent grant to distribute the Budapest Treaty patent deposits "to the public pursuant to [the] Budapest Treaty and U.S. patent law" and acknowledged ATCC's notifications after patent issuance that Corteva "does not have the right to prevent the furnishing of samples to parties legally entitled, whatever [its] personal wishes may be." *See, e.g.*, JA5336 at JA5379-81. Corteva's actions and promises disclaim any purported benefit in the MTA transfer and commercial use restrictions and render any purported duty by Inari to Corteva under those

9

restrictions inoperative.  Restatement (Second) of Contracts §§ 306, 309.  There are no questions for the jury to decide.

      **E.**      **The Facts of the Phytosanitary Testing Do Not Amount to Patent Infringement Under 35 U.S.C. § 271(a)**

The dispositive issue controlling Corteva's allegations of infringement under § 271(a) is whether the phytosanitary testing performed by the Iowa State University lab is a "use" of the inventions claimed in the '434 and '246 patents.  What Iowa State did and why are not in dispute. Inari SOF, ¶¶ 43-44, 46-48.  Corteva does not dispute that contamination by the Stewart's Wilt pathogen is not related to the inventions of the '434 and '246 patents.  Inari SOF, ¶ 49.  Whether Iowa State's activities testing corn pathogen contamination is an infringing use of the claimed inventions of the '434 and '246 patents is a question of law for the Court.

The cases cited in Corteva's brief, D.I. 557 at 13-14, are not applicable to the phytosanitary testing facts.  Those cases all involved testing that practiced the claimed inventions for their intended purpose.  *See, e.g.*, *Roche Prods., Inc. v. Bolar Pharm. Co.*, 733 F.2d 858, 861 (Fed. Cir. 1984), *superseded in part by statute*, 35 U.S.C. § 271(e) (testing of a patented drug for FDA approval).  Whereas here, the phytosanitary testing was for the sole purpose of determining whether a minute number of patent deposit seeds of the '434 and '246 patents tested positive for the Stewart's Wilt pathogen.  Inari SOF, ¶¶ 41, 43, 44, 67.  The phytosanitary testing resulted in destruction of the seeds and was not a beneficial use of the seeds, the inventions as claimed in the '434 and '246 patents, or for their intended purpose.  Inari SOF, ¶ 50; *see Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) (the infringer must use the patented invention to infringe under 35 U.S.C. § 271(a)). Corteva bears the burden of proof on § 271(a) and has not come forward with any evidence to show that there is a genuine issue of fact for trial to preclude summary judgment.

10

**F.      There Are No Genuine Factual Disputes as to Infringement Under 35 U.S.C. § 271(f)(2) to Preclude Summary Judgment**

The claims of a patent define the invention to which the patentee has the right to exclude. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). This fundamental principle applies to cases under § 271(f). *See Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 142 (2017). The claims alleged to infringe under § 271(f)(2) are not claims to a combination invention requiring the assembly of various components. Corteva argues that claims to plants or biological materials are infringed when a seed is combined with an unspecified number of components, none of which are recited in the asserted claims and the claims do not direct their assembly or combination. D.I. 557 at 16-17. The components that Corteva alleges are combined with a seed, include but do not necessarily require water, light, air, nutrients, and physical support. *Id.* at 17. How and when they are to be combined is not disclosed in the patents. D.I. 540 at 19; Inari SOF, ¶ 86. In its brief, Corteva has introduced and included additional components to be combined: cells, organelles, DNA, and events. D.I. 557 at 16 & n.7. This moving target of components is not a fact question for the jury but a legal question of claim construction for the Court.

Corteva's real objective with its § 271(f)(2) claims are what it considers to be "knock-off versions of Corteva's patented events." D.I. 557 at 16, 5 n.1. But Corteva does not and cannot contend that Inari has infringed any of the asserted patents based on these "knock off" events and instead reserved all rights to assert that Inari has infringed claims of Corteva's patents based on ███████████████████████████ in future litigation. JA4182 at JA4184. Contrary to its Budapest Treaty pledges, Corteva complains that deposits made to meet § 112 requirements do not give anyone the authority to export seeds from the U.S. with the intent to grow the seeds to make knock-off versions of patented events. D.I. 557 at 16. But U.S. patent laws as a general rule

11

cannot be applied extraterritorially. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007). Corteva has European patents, counterparts to the U.S. patents, that it has chosen not to enforce. Inari SOF, ¶¶ 4, 7, 10, 12, 14, 17. Corteva's tortured attempt to apply § 271(f)(2) to the export of patent deposit seeds is not the loophole identified in *Deepsouth Packing Co. v. Laitram Corp*. that Congress meant to close. 406 U.S. 518, 523-24 (1972). Nor has Corteva shown any evidence that Congress meant § 271(f)(2) to supersede Budapest Treaty procedures and obligations.

Corteva admits that it is the patented events and DNA embodied in the exported seeds that are the inventions claimed in the patents it alleges are infringed under § 271(f)(2). It also considers those events to be components of the plants grown from the seeds. D.I. 557 at 16 n.7. Those events and DNA are embodied in Corteva's Enlist E3®, Qrome®, Herculex® XTRA and Optimum® AcreMax® commodity products sold and used throughout the U.S. and commodity grain that has been exported worldwide. Inari SOF, ¶¶ 89-92, 94-95. It is the events and the DNA that are the patented invention in the patent deposit seeds that Corteva alleges infringes its patents. Inari SOF, ¶¶ 89-92, 94-95. They are commodities and suitable for non-infringing uses, food, fodder, etc. Inari SOF, ¶¶ 93, 96. Infringement under § 271(f)(2) does not apply as a matter of law.

###### G. Legal Estoppel Prevents Corteva from Imposing Restrictions on the Export of Patent Deposits by Enforcing Provisions of the PVPA and Patent Laws

As Corteva would have it, a patentee's statement that all restrictions on patent deposit access will be removed on patent grant is a dead letter. The effect of Corteva's assertions is that such a promise is illusory and simply a pro forma statement made by an applicant so that the USPTO Examiner will grant the patent. According to Corteva, the patentee can subsequently rely on depository MTA restrictions, concurrent PVP certificates, or patent law infringement to impose the restrictions it promised would be removed. As the Supreme Court explained in *J.E.M. Ag Supply*, "the disclosure required by the Patent Act is 'the *quid pro quo* of the right to exclude.'"

12

534 U.S. at 142 (citing *Kewanee Oil*, 416 U.S. at 484).  The Supreme Court explained that under the Patent Act, "[t]he description requirement for plants includes a deposit of biological material, for example, seeds, and ***mandates*** that such material be accessible to the public."  *Id.* (citing 37 C.F.R. §§ 1.801-1.809 (2001)).  Corteva, in exchange for making the patent deposits here, received patents with the right to exclude.  It should be legally estopped from restricting access to those deposits.  *See AMP Inc. v. United States*, 389 F.2d 448, 452 (Fed. Cl. Ct. 1968), *cert. denied,* 391 U.S. 964 (1968); *see also Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x. 47, 50 (3d Cir. 2018).

## III.  CORTEVA HAS NOT DEMONSTRATED THAT DR. VELLTURO'S OPINION IS ADMISSIBLE OR THAT INTENT OPINIONS SHOULD NOT BE EXCLUDED

### A.  Dr. Vellturo's Damages Opinions Should Be Excluded

Corteva argues that Inari's motion to exclude Dr. Vellturo's damages opinions should be denied because it is based on a mere disagreement with his conclusions or his view of what information the parties to the hypothetical license negotiation would have considered relevant. Not so.  Dr. Vellturo's damages opinions rely on erroneous legal premises.  Expert opinions that are contrary to law are inadmissible under Rule 702.  *United States v. Cunningham,* 679 F.3d 355, 380 (6th Cir. 2012); *Southard v. United Reg'l Health Care Sys., Inc*., C.A. No. 7-06-CV-11-L, 2008 WL 4489692, at *2 (N.D. Tex. Aug. 5, 2008); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc*., 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005).  He also fails to apportion damages so that they are attributable only to the infringement and not to non-infringing features.  *Wirtgen Am., Inc. v. Caterpillar, Inc.*, 715 F. Supp. 3d 587, 591-94 (D. Del. 2024) (excluding damages opinion).

#### 1.  Dr. Vellturo's Reasonable Royalty Opinion

Dr. Vellturo did not calculate a reasonable royalty for Inari's allegedly infringing domestic acts of purchasing, testing, or exporting Corteva's patented seeds at the time infringement began. D.I. 541 (Kiernan Decl.), Ex. 2 (57:22-58:19).  Instead, he estimated reasonable royalty damages

based on Inari's years later projection of future sales of corn and soy products not based on the alleged exported patent deposit seeds.  His opinion is based on projected products that incorporate non-infringing versions of Corteva's GM traits modified through gene-editing along with non-accused features such as germplasm and Inari's proprietary yield edits.  *See* JA1955 at JA2001 (¶ 76).  Inari's gene-editing activities occurred in Belgium outside the territorial scope of Corteva's U.S. patents.  JA2938 at JA2978-79 (¶ 85); D.I. 541 (Kiernan Decl.), Ex. 2 (226:24-228:25); *id.* (Kiernan Decl.), Ex. 3 at ¶ 25.  Corteva stated that it does not contend here that Inari's gene-edited events infringe the Asserted Patents.  JA4182 at JA4184.  An expert opinion that includes non-infringing products or activities in its estimate of reasonable royalty patent damages is subject to exclusion.  *See, e.g.*, *Ecolab Inc. v. Dubois Chems., Inc.*, C.A. No. 21-567-RGA, 2023 WL 7019266, at *12-13 (D. Del. Oct. 25, 2023) (citing *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022)); *see also AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (reasonable royalty damages cannot include activities that do not constitute patent infringement).

The *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407 (2018) and *Brumfield v. IBG LLC*, 97 F.4th 854 (Fed. Cir. 2024) cases relied on by Corteva do not support its cause.  In *WesternGeco*, the accused infringer manufactured components of a system for surveying the ocean floor and shipped them from the U.S. to customers abroad who combined the exported components into products that competed with WesternGeco in foreign markets.  585 U.S. at 411.  The Supreme Court held that WesternGeco was entitled to lost profits damages based on foreign contracts diverted to the competing systems because the foreign loss of profits flowed from the domestic infringing act of exporting components from the U.S.  *Id.* at 417; *see also id.* at 416 (overseas combining components were "merely incidental to the infringement").  The *WesternGeco* holding

did "not address" whether the doctrine of proximate cause "could limit or preclude damages in particular cases." *Id.* at 417 n.3.

Critically, the systems that gave rise to damages in *WesternGeco* were neither modified abroad nor new inventions created abroad. They were "indistinguishable from WesternGeco's [patented system]." *Id.* at 411. Here, by contrast, the as-yet not commercialized products whose future sales projections form the basis for Dr. Vellturo's reasonable royalty damages are patented gene-edited modifications of Corteva's GM traits that were modified outside the U.S. Their DNA is not the same as the DNA constructs in the exported patent deposit seeds and do not meet the claims of the Asserted Patents. They are the subject of Inari patent applications and U.S. patents and are not here alleged to infringe the Asserted Patents. Inari's work outside the U.S. breaks the chain of causation between the domestic act of export and future sales of any product incorporating those non-infringing modifications. *Power Integrations*, *Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371-72 (Fed. Cir. 2013).

While *WesternGeco* "supersedes" the Federal Circuit's holding in *Power Integrations* that a patent owner may not recover for foreign sales under 35 U.S.C. § 271(a), *see Brumfield*, 97 F.4th at 871, *WesternGeco* did not overturn the rule reflected in *Power Integrations* that a U.S. patent owner may not recover damages for foreign uses of a patented invention. *See Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 2:18-CV-00014-JRG-RSP, 2019 U.S. Dist. LEXIS 111892, at *12-14 (E.D. Tex. June 11, 2019); *see also Brumfield*, 97 F.4th at 881 ("[N]either export from the United States *nor use in a foreign country of a product covered by a United States patent constitutes infringement*" subject to damages) (emphasis added) (quoting *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1366 (Fed. Cir. 1998)). Nothing in *WesternGeco* supports the proposition underlying Dr. Vellturo's opinion that a U.S. patent owner may obtain damages based

15

on sales of non-infringing products developed abroad, especially here where no sales have occurred and none are expected for years.

In *Brumfield*, the Federal Circuit applied the Supreme Court's *WesternGeco* framework and held that reasonable royalty damages for infringement under § 271(a) may encompass foreign sales. 97 F.4th at 875-77. Here, foreign sales (there are none) are not at issue because Dr. Vellturo calculates damages based on Inari's speculative future expected U.S. sales only. D.I. 541 (Kiernan Decl.), Ex. 3 at ¶ 25. The Federal Circuit affirmed that reasonable royalty damages may not include activities that do not constitute patent infringement and must be apportioned to exclude unclaimed aspects. *Brumfield*, 97 F.4th at 876-77 (citing *AstraZeneca*, 782 F.3d at 1343; *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1345 (Fed. Cir. 2023)). The Federal Circuit stated that where a patentee seeks to recover reasonable royalty damages based on foreign conduct, it must show why the foreign conduct increases the value of the domestic infringement "*while respecting the apportionment limit that excludes values beyond that of practicing the patent.*" *Id.* at 877 (emphasis added). Here, Dr. Vellturo bases his speculative damages on future U.S. domestic sales of products developed through non-infringing foreign conduct. The Federal Circuit noted that the necessary causal connection between domestic infringement and foreign conduct requires more than "but-for" causation and is subject to limits on "remoteness." *Id.* at 877-78.

Applying these principles, the Federal Circuit affirmed the exclusion of an expert's proposed reasonable royalty opinion based on foreign sales of software not encompassed by the claims directed to a computer readable medium ("CRM") allegedly infringed in the U.S. *Brumfield*, 97 F.4th at 880. There was evidence that the accused infringer had developed CRMs meeting the claim limitations while developing its software products, but the Federal Circuit rejected the concept that the patent owner was entitled to reasonable royalty damages for "the

16

prospective making and sale of CRMs abroad for use abroad" because use in a foreign country of a product covered by a U.S. patent does not constitute infringement. *Id.* at 881. *Brumfield* confirms that Dr. Vellturo's calculation of reasonable royalty damages based on Inari's speculative prospective sales of products developed abroad not alleged to be encompassed by the claims of the Asserted Patents is legally erroneous and should be excluded.

Corteva's argument that but for Inari's domestic purchase, testing, and export of Corteva's seeds, Inari would not have had the ability to create modified versions of Corteva's seeds abroad whose future sales form the basis of Dr. Vellturo's opinion fails to establish the required causal nexus for damages. *Brumfield*, 97 F.4th at 877-78 ("[P]roximate causation is more than but-for causation" and includes "the absence of remoteness"). Whether Inari's modification of Corteva's GM traits outside the U.S. breaks the chain of causation is a legal question based on facts not in dispute and is not an issue for the jury. *See* D.I. 557 at 26; JA2938 at JA2978-79 (¶ 85); D.I. 541 (Kiernan Decl.), Ex. 2 (226:24-228:25); *id.* (Kiernan Decl.), Ex. 3 at ¶ 25; JA4182 at JA4184.

Dr. Vellturo's opinion should also be excluded because it is based on speculation and hindsight relying on Inari's expectations long after the date of alleged infringement. D.I. 540 at 31-32. At the time of the May 2020 hypothetical negotiation, Inari had decided that ███████ ██████████████████████ As the documents cited by Corteva reflect, Inari considered but had not then decided whether ███████████████████████████████████ ████████ *See* D.I. 557 at 21, 24, 27-28; *see also* D.I. 540 at 32. The hypothetical license, therefore, would have been a license for ██████████████████████████ ████████ It would not need to include a license to edit GM traits. D.I. 555 at 34-36. Corteva's argument that the 2022 and 2023 projections provided "specificity" that did not exist in May 2020 misses the point. D.I. 557 at 26. Inari's expectations changed over time. Dr. Vellturo's reliance

17

on Inari's post-alleged infringement date expectations in 2022 and 2023 for the hypothetical license negotiation is hindsight analysis not encompassed by the "book of wisdom." *Acqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014) (incorrect to base hypothetical negotiations on a "backward-looking inquiry into what turned out to have happened"). This is not a matter for cross-examination at trial but a ground for exclusion. *Opticurrent, LLC v. Power Integrations, Inc.*, C.A. No. 17-cv-03597-WHO, 2018 WL 6727826, at *10-11 (N.D. Cal. Dec. 21, 2018); *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66 (Fed. Cir. 2012) (post-infringement evidence not relevant to hypothetical negotiation due to changed circumstances).

### 2. Dr. Vellturo's Opinion as to Damages Under Mass. Gen. Law Ch. 93A

Under Mass. Gen. Law Ch. 93A, § 11, Corteva is entitled to its actual damages. Corteva has suffered no actual damages because Inari has not made any sales. D.I. 541 (Kiernan Decl.), Ex. 2 (86:6-13). Instead, Dr. Vellturo calculated damages of ▮▮▮▮▮▮▮ based on potential future losses that Corteva may suffer if Inari ever commercializes a product derived from a Corteva seed purchased from an ATCC patent deposit and assumed a one-to-one correlation between future sales by Inari and future lost sales by Corteva. JA2938 at JA3037-38 (¶ 224); JA1955 at JA2008-09 (¶ 88). Those damages are speculative and not "actual" because Inari could fail to ever commercialize such a product or achieve any appreciable market share if it did. D.I. 540 at 33-34. Nor are Dr. Vellturo's unjust enrichment damages cognizable under Massachusetts law. Dr. Vellturo's unjust enrichment damages of ▮▮▮▮▮▮ are based on Inari's projected profits from hypothetical future contingent sales, not profits it has already obtained from sales, which are zero. JA2938 at JA3038 (¶ 225). Massachusetts law limits unjust enrichment damages to unfair gains actually obtained by the defendant. D.I. 540 at 34-35. Dr. Vellturo's opinion as to damages under Mass. Gen. Law Ch. 93A are contrary to governing law and should be excluded under Rule 702.

18

**3.** **Dr. Vellturo's Opinion as to Breach of Contract Damages**

Virginia and New York courts agree that damages claims that depend on the occurrence of future contingent events fail as a matter of law because they are speculative and not reasonably certain, particularly where they involve an emerging company without an historical record of prior sales from which to predict future sales. D.I. 540 at 35-37. Dr. Vellturo's breach of contract damages estimate of ████████ is based on Corteva's future projected losses if Inari, an emerging company with no sales history, ever commercializes a product derived from a Corteva seed. Dr. Vellturo's opinion conflicts with the laws governing Corteva's breach of contract claims. Corteva's ability to generate cash flows from its protected seeds has not been impeded in any way by Inari, who has not sold a product. Dr. Vellturo's breach of contract damages opinion should be excluded under Rule 702.

**B.** **Corteva Does Not Meaningfully Dispute That Its Experts Offer Impermissible Intent Opinions That Should Be Excluded**

Experts may not opine on intent, motive or state of mind. *See Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019); *AstraZeneca UK Ltd. v. Watson Lab'ys, Inc. (NV)*, C.A. No. 10-915-LPS, 2012 WL 6043266, at *2 (D. Del. Nov. 14, 2012); *In re: Tylenol (Acetaminophen) Mktg., Sales Pracs., & Prods. Liab. Litig.*, C.A. No. 2:12-cv-07263, 2016 WL 4039271, at *8-9, 8 n.33 (E.D. Pa. July 28, 2016) (collecting cases); D.I. 540 at 37 (citing cases). Here, Corteva's experts do exactly that. Dr. Wessler and Dr. Dellaporta opine that Inari acted "knowingly," "possessed specific intent," "intending" to combine components, and "knowing" components were especially adapted. D.I. 557 at 35, 37. Dr. Mikel analyzed Inari's "scope, purpose, and intent." *Id.* at 38. This should end the inquiry.

Corteva attempts to recast its experts' opinions as permissible opinions about Inari's alleged "documented plans" on plant breeding. D.I. 557 at 33-34. Far from supporting its position,

19

Corteva's examples highlight the difference between discussion of technical documents and the improper state of mind testimony that Inari challenges. *Id.* Inari does not challenge Corteva's expert opinions on the technical content of documents; it challenges only specific opinions that go beyond the technical documents and wade into state of mind. *See, e.g.*, D.I. 540, Attach. A.

Corteva further argues that "Inari disregards the necessity of expertise in plant breeding or genetics for understanding Inari's intent." D.I. 557 at 35-39. Testimony on expertise in plant breeding or genetics is not relevant or probative of a party's intent or state of mind, which are questions of fact for the jury. Cloaking expert opinion testimony on intent and state of mind with technical expertise is prejudicial and not helpful to the jury. *Zimmer Surgical*, 365 F. Supp. 3d at 497 (permitting expert testimony on intent would be substituting the expert's judgment for the jury's and would not be helpful to the jury). Corteva does not cite any authority that permits scientific experts who are not qualified to opine on intent or state of mind.

Corteva attempts to distinguish the cases Inari cited in its opening brief, D.I. 557 at 39-40, by arguing the opinions addressed in the cases had "no grounding in [the expert's] particular expertise or were fundamentally speculative." D.I. 557 at 39. The cases clearly exclude expert opinions because the opinions go to intent or subjective thought. *See, e.g.*, *Midwest Energy Emissions Corp. & Mes Inc. v. Arthur J. Gallagher & Co.*, C.A. No. 19-1334-CJB, 2023 U.S. Dist. LEXIS 202160, at *30-33 (D. Del. Nov. 3, 2023) (excluding evidence regarding intent opinions). As Corteva admits, the Court should exclude "statements that directly express a conclusion on intent." D.I. 557 at 39. The opinions of Drs. Wessler, Dellaporta, and Mikel identified in Attachment A should, therefore, be excluded.

## IV.    CONCLUSION

Inari respectfully requests the Court grant its motion for summary judgment of noninfringement and its motion to exclude certain expert testimony.

20

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

OF COUNSEL:

Dimitrios Drivas
Raj S. Gandesha
Hallie Kiernan
Angelika Kligos
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY  10601
(914) 288-0022

May 15, 2026

Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

21

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 15, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Chad S.C. Stover, Esquire<br>Brian S.S. Auerbach, Esquire<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Todd Vare, Esquire<br>BARNES & THORNBURG LLP<br>11 South Meridian Street<br>Indianapolis, IN  46204<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Ronald Cahill, Esquire<br>Heather B. Repicky, Esquire<br>BARNES & THORNBURG LLP<br>One Marina Park Drive, Suite 1530<br>Boston, MA  02210<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Lauren Baker, Esquire<br>BARNES & THORNBURG LLP<br>3340 Peachtree Road N.E., Suite 2900<br>Atlanta, GA  30326<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Peter Bicks, Esquire<br>Kim B. Goldberg, Esquire<br>Jordan B. Fernandes, Esquire<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY  10019-6142<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

David Gindler, Esquire                                    *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
Christopher Lynch, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire                                  *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA  90401
*Attorneys for Plaintiffs*

Carly Romanowicz, Esquire                                 *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
*Attorneys for Plaintiffs*

/s/ *Megan E. Dellinger*

_____
Megan E. Dellinger (#5739)

2

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 19, 2026, upon the following in the manner indicated:

Chad S.C. Stover, Esquire                                 *VIA ELECTRONIC MAIL*
Brian S.S. Auerbach, Esquire
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Todd Vare, Esquire                                        *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN  46204
*Attorneys for Plaintiffs*

Ronald Cahill, Esquire                                    *VIA ELECTRONIC MAIL*
Heather B. Repicky, Esquire
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA  02210
*Attorneys for Plaintiffs*

Lauren Baker, Esquire                                     *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA  30326
*Attorneys for Plaintiffs*

Peter Bicks, Esquire                                      *VIA ELECTRONIC MAIL*
Kim B. Goldberg, Esquire
Jordan B. Fernandes, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
*Attorneys for Plaintiffs*

David Gindler, Esquire
Lauren Drake, Esquire
Christopher Lynch, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Gary Frischling, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA  90401
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Carly Romanowicz, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)

2