## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CORTEVA AGRISCIENCE LLC,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  23-1059** |
| | : | |
| **INARI AGRICULTURE, INC.,** *et al.* | : | |

## ORDER

**AND NOW**, this 1st day of June, 2026, upon considering the summary judgment and *Daubert* briefing, and oral argument held May 29, 2026, further briefing from the parties as follows is **ORDERED**:

1.      First, the question of Corteva's experts testifying on Inari's mental state.  The briefing was insufficient foundation to grant Inari's motion, but it will be more efficient to get a head start now rather than to inevitably revisit the issues on motions in limine or trial objections. We subscribe to the general principle that an expert opinion on a party's intent in a civil case is usually beyond an expert's ken and usually confusing and unhelpful to the jury.  Often, experts are appropriately called upon to reach the ultimate issue under Rule 704, and that may require them to assume certain premises, such as the legal framework (since experts generally do not opine on the law), hypothetical starting points provided by counsel (like how a damages expert assumes liability), or the jury's conclusions on intent (which an expert may acknowledge is in the jury's domain).  So while experts usually should not directly opine that "the defendant knew X" or "intended Y," they are often able to testify about what a reasonable actor in the field would have understood, what the evidence would have signaled, or what departed from industry norms.  It appears to us, at first inspection, that Corteva could craft its experts' directs consistent with this logic.  To this end, we ask Corteva to consider Inari's objections, meet and confer with Inari, and attempt to develop a plan for the proposed expert testimony that satisfies both sides.

If those efforts fail, Inari may file a brief outlining any remaining objections no later **than June 26, 2026**, with a response from Corteva 14 days after that.

2.        Second, no later than **June 12, 2026**, Inari shall file a brief addressing the question of ATCC's alleged direct infringement underlying Inari's alleged induced infringement.  Corteva shall file a response no later than June 26, 2026.  In Corteva's opposition to Inari's summary judgment motion, Corteva repeatedly emphasizes that whether ATCC's sales were authorized depends on whether the sales were "for commercial purposes."  DI 557 at 11.  What does that mean and where does that question lead?  This is an important and undebriefed point.  Inari's reply does not explore the issue because it argues that a commercial-use restriction cannot even be attempted because of, e.g., the Budapest Treaty or USPTO rules.  We have enough briefing on that argument; the next question is, suppose ATCC were allowed to include commercial-use restrictions under the Budapest Treaty or USPTO rules.  Then what?  Corteva says, that's the end of it — send it to the jury and let Corteva prove that the eventual use was commercial.  Maybe, but we have some hesitation.  What is the legal rule for distinguishing authorized from unauthorized sales?  How is ATCC supposed to tell the difference?   Does it matter what ATCC knew?  *See Impression Prods., Inc. v. Lexmark Intern., Inc.*, 581 U.S. 360, 376-77 (2017) (discussing *General Talking Pictures Corp. v. Western Elec. Co.*, 305 U.S. 124, 127 (1938)).  What if Inari (i) lied to ATCC about engaging in non-commercial use only or (ii) told ATCC the truth but then sometime later, changed its mind and decided to engage in commercial use or (iii) told ATCC something in good faith that, ultimately, under the correct legal rule for distinguishing non-commercial use from commercial, was incorrect?  Are the undisputed facts dispositive one way or the other under the correct legal rule, or is it a jury

question?  Are there other legal reasons why ATCC could not restrict the use of the transferred seeds post-sale?  Does the nature of ATCC's property interest in the seeds matter?  There is a body of law (not the clearest, admittedly) on how to distinguish authorized from unauthorized sales, and it appears to us that the parties have not joined this important issue.[1]

_____
MURPHY, J.

---

[1] Unfortunately the government was not able to assist with this issue at oral argument. But the Department of Justice has certainly wrestled with this before, so a government contribution would be welcome.  Either way, everyone should review the government's briefs in *Impression v. Lexmark*, especially its merits brief filed January 24, 2017, on pages 19-21.