IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, PIONEER HI-BRED INTERNATIONAL, INC. and AGRIGENETICS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 23-1059 (JFM) |
| INARI AGRICULTURE, INC. and INARI AGRICULTURE NV, | ) ) ) | REDACTED - PUBLIC VERSION |
| Defendants. | ) ) | |

## **INARI'S BRIEF IN RESPONSE TO ORDER D.I. 572**

OF COUNSEL:

Dimitrios T. Drivas
Raj S. Gandesha
Hallie Kiernan
Angelika Kligos
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10010
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY 10601
(914) 288-0022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

Originally Filed:  June 12, 2026
Redacted Version Filed:  June 17, 2026

TABLE OF CONTENTS

Page

I.   INTRODUCTION ...........................................................................................................1

II.  STATEMENT OF FACTS ...........................................................................................2

III. ARGUMENT ................................................................................................................5

    A.   The Furnishing of Patent Deposits to the Public Is Mandated by 35 U.S.C. § 112 and Not Patent Infringement Under 35 U.S.C. § 271(a)...........................5

    B.   Corteva Authorized ATCC to Furnish Sample Deposit Seeds ...........................6

    C.   The ATCC 2017 and 2019 MTAs Have No Term Limits; The Post-Sale Restrictions Therein Would Violate the Patent Laws if Applied to Patent Deposits...................................................................................................10

    D.   Inari Did Not Induce ATCC to Infringe the Asserted Patents ...........................11

        1.   A Requester's Intended Future Use of Patent Deposit Seeds Cannot Render the Sale of the Seeds an Infringing Act ....................................11

        2.   The Supreme Court's Decision in *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.* Compels a Finding of No Induced Infringement ...................................................................................................11

    E.   As a Patent Depository, ATCC Is a Custodian of the Seeds to Fulfill the Patent Depositor's Obligations Under 35 U.S.C. § 112 and for the Benefit of the Public .................................................................................................13

    F.   Corteva's Authorization and Exhaustion Also Apply to the Patent Deposits of the PVP Certificates ...........................................................................17

IV.  CONCLUSION...........................................................................................................17

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Amarin Pharma, Inc. v. Hikma Pharms. USA Inc*,
    104 F.4th 1370 (Fed. Cir. 2024) ...........................................................................................11

*Bowman v. Monsanto Co.*,
    569 U.S. 278 (2013).................................................................................................................9

*Brulotte v. Thys Co.*,
    379 U.S. 29 (1964).................................................................................................................10

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015)...............................................................................................................12

*De Forest Radio Tel. & Tel. Co. v. U.S.*,
    273 U.S. 236 (1927).................................................................................................................8

*Ex parte Hildebrand*,
    1990 Pat. App. LEXIS 7 (BPAI 1990) ...................................................................................15

*Ex parte Humphreys*,
    1992 Pat. App. LEXIS 19 (BPAI 1992) ..................................................................................15

*Ex parte Jianjun Liu*,
    Appeal 2012-6661 (PTAB 2012).............................................................................................16

*General Talking Pictures Corp. v. Western Elec. Co.*,
    305 U.S. 124 (1938).........................................................................................................1, 7, 8

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)...............................................................................................................12

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
    No. 24-889, 2026 U.S. LEXIS 2358 (U.S. June 4, 2026)...........................................11, 12, 13

*Impression Prods., Inc. v. Lexmark Intern., Inc.*,
    581 U.S. 360 (2017)........................................................................................................ *passim*

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l., Inc.*,
    534 U.S. 124 (2001)..............................................................................................................5, 9

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*,
    734 F.3d 1361 (Fed. Cir. 2013).................................................................................................8

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
  572 U.S. 915 (2014)...................................................................................................12, 13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)...................................................................................................12, 13

*MiiCs & Partners Am., Inc. v. Toshiba Corp.*,
  274 F. Supp. 3d 247 (D. Del. 2017), *aff'd*, 748 F. App'x 1026 (Fed. Cir. 2019).....................7

*Quanta Comput., Inc. v. LG Elecs., Inc.*,
  553 U.S. 617 (2008)........................................................................................................7, 8

*Tessera, Inc. v. Int'l Trade Comm'n*,
  646 F.3d 1357 (Fed. Cir. 2011)............................................................................................13

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
  563 F.3d 1271 (Fed. Cir. 2009)..............................................................................................8

*York v. Jones*,
  717 F. Supp. 421 (E.D. Va. 1989) ........................................................................................14

**STATUTES AND RULES**

7 U.S.C. § 2541(a)(10)...........................................................................................................17

35 U.S.C. § 112 .......................................................................................................... *passim*

35 U.S.C. § 271(a) ..................................................................................................... *passim*

35 U.S.C. § 271(b) ...........................................................................................................2, 6, 17

**REGULATIONS**

37 C.F.R. § 1.803 .............................................................................................................2, 14, 15

37 C.F.R. § 1.806 ...................................................................................................................2, 16

37 C.F.R. § 1.808 ......................................................................................................................16

**OTHER AUTHORITIES**

8A Am. Jur. 2d Bailments § 1 (Updated May 2026) ...............................................................14

8A Am. Jur. 2d Bailments § 28 (Updated May 2026) .............................................................14

8A Am. Jur. 2d Bailments § 51 (Updated May 2026) .............................................................14

Budapest Treaty Regulations, Rule 2, 9-11 .............................................................................14

*Manual for Patent Examination Procedure*, Chapter 2400 ...........................................................15

## I.    INTRODUCTION

When it made the patent deposits at issue, Corteva in the deposit agreements authorized ATCC to ***furnish*** samples of the seeds to the public without any restrictions upon patent issuance. Corteva did not, and could not, impose a restriction on the furnishing of the deposits contrary to the requirements of 35 U.S.C. § 112.  If the furnishing of patent deposits seeds is found to be an infringing sale under 35 U.S.C. § 271(a), it would be contrary to and would disrupt the existing precedent on enablement and written description requirements under 35 U.S.C. § 112 for patents in which the written description alone is insufficient and non-enabling.

The statute governing direct infringement, 35 U.S.C. § 271(a), does not prohibit the "furnishing" of patent deposits; it prohibits making, using, selling or offering to sell a patented invention.  Corteva, to concoct an infringement claim, alleges that ATCC made an unauthorized "***sale***," not a furnishing, of the patent deposit seeds to Inari.  If the furnishing is a "sale" as Corteva alleges, following the reasoning in *Impression Prods., Inc. v. Lexmark Intern., Inc.*, 581 U.S. 360 (2017), ATCC's sale of the patent deposit seeds to Inari was authorized by Corteva, and results in patent exhaustion as to the particular deposit seeds sold.  Unlike the sale in *General Talking Pictures Corp. v. Western Elec. Co.*, 305 U.S. 124 (1938), the sale of the patent deposit seeds by ATCC was a sale within the scope permitted and consistent with the conditions authorized in the Corteva deposit agreements and confirmed in correspondence with ATCC.  Any post-sale commercial use restrictions that could be imposed in the MTA would be an issue of contract law, not patent infringement.

ATCC cannot legally impose post-sale restrictions on patent deposits.  ATCC as a patent depository is a custodian of the patent deposit seeds for the benefit of the public.  ATCC's ***role*** as a patent depository is to store patent deposits in a manner that ensures they are kept viable and uncontaminated and to furnish samples of deposited material to the public for the period required

1

by 37 C.F.R. § 1.806 in an expeditious and proper manner. 37 C.F.R. § 1.803(a)(2). Without any proprietary rights to the deposited seeds, ATCC cannot legally impose restrictions on the post-sale use of the patent deposit seeds.

Even if, hypothetically, ATCC were permitted to impose commercial restrictions on the post-sale use of the deposit seeds under an MTA, that would not render ATCC's sale of the patent deposit seeds to Inari an un-authorized sale giving rise to direct infringement under 35 U.S.C. § 271(a). Instead, the question would be whether there was a breach by Inari of the MTA unrelated to the initial sale of the deposited seeds. Because Corteva authorized ATCC's sale without any restrictions to requestors, including Inari, ATCC cannot be a direct infringer under 35 U.S.C. § 271(a) and Inari cannot, therefore, be liable for inducing infringement under § 271(b). The reasons for which Corteva's § 271(b) claims fail also apply to Corteva's remaining patent and PVP infringement allegations. And, as explained in Inari's summary judgment briefing, patent deposits are not subject to ATCC's MTA restrictions; Inari cannot, therefore, be liable for breach of the MTA. D.I. 555 at 3-9.

## II.    STATEMENT OF FACTS

All the patent deposits related to the Asserted Patents were made under the Budapest Treaty. JA5238 at JA5239 (deposit form for the '434 patent indicating yes to "Is this an original deposit under the Budapest Treaty?"); *see also* JA5307 at JA5308 (same for '363 and '441 patents); JA5354 at 5355 (same for '246 patent); JA5420 at JA5421 (same for '655 patent[1]). The Budapest Restricted Certificate of Deposit does not convey a license to the patent for which the deposit is made. *See* JA5236 at JA5236 ('434 patent certificate); JA5305 at JA5305 ('363 and '441 patents certificate); JA5340 at JA5340 ('246 patent certificate); JA5408 at JA5408 ('655

---

[1] PTA-11336, the export of which is accused of infringing the '522 Patent, was a Budapest Treaty deposit made for purposes of enabling the unasserted '655 Patent on event DAS-44406-6.

patent certificate).

In the Deposit Declarations section of the deposit form agreements executed by Corteva, Corteva represents, warrants, and covenants that:

> [T]he depositor [sic] hereunder is for the purposes of enabling one or more patents in the patent and industrial property offices, and depositor will comply with all applicable law (including, without limitation all rules and regulations such patent and industrial property offices[.]

JA5238 at JA5241 ('434 patent deposit form); JA5307 at JA5310 ('363 and '441 deposit form); JA5354 at 5357 ('246 patent deposit form); JA5420 at JA5423 ('655 patent deposit form).  Thus, Corteva represented that the patent deposits were made for the purpose of enablement and to comply with 35 U.S.C. § 112.

The Budapest Restricted Certificate of Deposit also states that after the relevant patent issues, ATCC is responsible for releasing the seeds and making them available to the public without restrictions.  JA5236 at JA5236 ('434 patent certificate); *see also* JA5305 at JA5305 ('363 and '441 patents certificate); JA5340 at JA5340 ('246 patent certificate); JA5408 at JA5408 ('655 patent certificate).

The obligation of ATCC and Corteva's authorization is repeated in the deposit forms:

> ATCC® may furnish as permitted by or required under Budapest Treaty or applicable law.  ***Notwithstanding anything to the contrary, ATCC may, without restriction, furnish samples of the deposit at any time after the issuance of any relevant patent***.

JA5238 and JA5240 ('434 patent deposit form) (emphasis added); *see also* JA5307 at JA5309; ('363 and '441 patents deposit form); JA5354 at JA5356 ('246 patent deposit form); JA5420 at JA5422 ('655 patent deposit form).

After patent issuance, ATCC requested that Corteva confirm its authorization to furnish the deposits after patent issuance and Corteva's response confirmed its authorization and ATCC's obligations:

> Please ***confirm*** to ATCC® in writing via email . . . within 15 days of this letter that the relevant patent issuance listed above is accurate and that ***you understand that the patent deposit will be distributed to the public*** pursuant to Budapest Treaty and U.S. patent law.

JA5297 ('434 patent request for authorization) (emphasis added); *see also* JA5330 at JA5330 ('363 and '441 patents request for authorization); JA5400 at JA5400 ('246 patent request for authorization).  Corteva provided confirmation:

> [W]e hereby ***confirm authorization*** for the ATCC to furnish a sample of each listed ATCC deposit in connection with the corresponding issued U.S. Patent.

JA5296 ('434 patent authorization) (emphasis added); *see also* JA5329 (confirming authorization to make PTA-12006 seeds available for the '363 and '441 patents); JA5399 (confirming patent issuance for the '246 patent).

Inari Belgium entered a purchase order with LGC Standards, ATCC's sales agent for Europe, to purchase the patent deposit seeds relevant to the Asserted Patents.  *See* JA5119; JA5120.  Inari Belgium also entered the 2019 MTA to purchase the seeds.  *See* JA16298.  Inari Belgium is identified as a for-profit organization and the "Purchaser" in the MTA.  JA16298 at JA16298.

The 2019 MTA provides that:

> Use of the Biological Materials may be subject to the intellectual property rights of a person or entity not a party to this MTA, the existence of which rights may or may not be identified in the ATCC catalog or website, and ATCC makes no representation or warranty regarding the existence or the validity of such rights. Purchaser shall have the sole responsibility for obtaining any intellectual property licenses necessitated by its possession and use of the Biological Materials.

JA16298 at JA16299.

The "Compliance with Laws" section of the MTA provides:

> Distribution of Budapest Treaty patent deposits are made pursuant to, and in compliance with, all applicable laws and regulations, including the Budapest Treaty and related 37 C.F.R. provisions. If there is any conflict between the terms of this MTA and any applicable law or regulation with respect to ATCC Material that is supplied hereunder by ATCC from the stock of a Budapest Treaty deposit, then the terms of the applicable law or regulation shall govern.

4

JA16298 at JA16300.

The 2019 MTA does not have any term limits except for those implied by the applicable laws in the "Compliance with Laws" section.

In April 2023, Corteva through its attorneys, Baker & Mackenzie, attempted to impose conditions and restrictions on patent deposits sold to Inari Belgium and the future furnishing of deposits.  D.I. 539 ("Inari SOF"), ¶ 26.  The conditions and restrictions Corteva attempted to impose were outside the scope of its agreements with ATCC.  ATCC refused to impose the restrictions.  Inari SOF, ¶ 27.

## III.    ARGUMENT

In its June 1, 2026 Order, the Court asked the parties to address the question of ATCC's alleged direct infringement underlying Inari's alleged induced infringement and to suppose that ATCC was allowed to include commercial-use restrictions under the Budapest Treaty or USPTO rules.  D.I. 572 at 2.  The Court also asked, "Are the undisputed facts dispositive one way or the other under the correct legal rule, or is it a jury question?"  *Id.* at 2-3.  Inari addresses these issues below.

### A.    The Furnishing of Patent Deposits to the Public Is Mandated by 35 U.S.C. § 112 and Not Patent Infringement Under 35 U.S.C. § 271(a)

The pertinent language of § 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States…during the term of the patent therefor, infringes the patent."  The furnishing of a patent deposit made for purposes of 35 U.S.C. § 112 by a patent depository does not fall within the proscribed infringing activity of § 271(a).  To find otherwise would run afoul of 35 U.S.C. § 112 and disrupt the mandated disclosure *quid pro quo* based on patent deposits for utility patents for plants.  *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l., Inc.*, 534 U.S. 124, 142 (2001).  Characterizing the furnishing as a

5

sale does not make the act of furnishing an infringement especially where the act was authorized by the patent owner.

**B.      Corteva Authorized ATCC to Furnish Sample Deposit Seeds**

Putting aside the prohibitions on restrictions in the Budapest Treaty and U.S. patent Regulations, the agreements and correspondence between Corteva and ATCC relating to the patent deposits evidence a clear contractual authorization for ATCC to furnish the deposits to the public upon patent issuance without any restrictions. *See supra* Section II.

To allege that Inari induced ATCC to infringe under § 271(b), Corteva has characterized the furnishing of patent deposit samples by ATCC as a "sale." Indeed, the transaction by which Inari purchased the patent deposit samples from ATCC through its sales agent, LGC, has the trappings of a sale. *See supra* Section II. If the furnishing of the seeds by ATCC was a "sale" to Inari as Corteva alleges, Corteva cannot challenge that a sale within the scope of ATCC's authorization would not be infringing and would result in patent exhaustion as to the particular seeds purchased.

Corteva argues that the commercial-use restrictions in ATCC's MTA evidence that the sale to Inari was unauthorized. Corteva claims that at the time it made the deposits at issue it understood that ATCC required all parties requesting access to seed deposits to execute MTAs containing use and transfer restrictions. *See, e.g.*, Inari SOF, ¶ 20 Resp. (citing JA742 at JA777 (Fitzpatrick Depo. Tr. at 141:5-16); JA511 at JA520-21 (Devadas Depo. Tr. at 37:1-20; 38:22-39:2); JA1121 at JA1131 (Morales Depo. Tr. at 39:6-40:1); JA1145 at JA1175 (Nelson Depo. Tr. at 119:16-120:1)). But Corteva never communicated its reliance on the MTA terms to ATCC or anyone else. Nor were such restrictions included in the deposit agreements as a condition for making the deposits. The supposed MTA restrictions were not imposed by Corteva and cannot limit Corteva's express authorization of ATCC to furnish the seeds without restriction. *See* D.I.

6

564 at 7.  Any restrictions purportedly imposed by ATCC on deposit purchasers do not limit the authorization from Corteva to ATCC to sell the patent deposit seeds without restriction.  Patent exhaustion turns only on the acts of the patentee; here Corteva's authorization of ATCC to furnish and sell patent deposits to the public.  *See Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 636-37 (2008) (the purchaser's intended use is not determinative of the scope of authorization); *see also MiiCs & Partners Am., Inc. v. Toshiba Corp.*, 274 F. Supp. 3d 247, 253-54 (D. Del. 2017), *aff'd*, 748 F. App'x 1026 (Fed. Cir. 2019).

Corteva never qualified or limited its authorization to distributions by ATCC for non-commercial or no-transfer purposes only; nor could it, having warranted that the deposits were made to comply with 35 U.S.C. § 112.  Inari SOF, ¶¶ 2, 5, 8, 11, 15.  Counsel for Corteva conceded this point at oral argument.  D.I. 577 (May 29, 2026 Hr'g Tr.) at 111:1-4 ("And [Corteva] didn't impose any restrictions.").  Corteva's authorization alone prevents a finding that ATCC directly infringed the Asserted Patents under § 271(a).  Even if ATCC could impose contractual post-sale restrictions on the commercial use of the seeds in the MTA, which Inari contends it cannot, whether Inari later breached those restrictions would not render the initial "sale" by ATCC infringing under § 271(a) because that "sale" was made with authority.  ATCC's authority to sell to Inari depends solely on the terms of the agreement between Corteva and ATCC.  *See Quanta*, 553 U.S. at 636-37 (whether a distributor's sale is authorized depends solely on the terms of the agreement between the patent holder and that distributor).

The authorized sale by ATCC is the same as a sale made in the scope of the license as in *Impression Prods., Inc. v. Lexmark Intern., Inc.*, 581 U.S. 360, 376 (2017).  It is distinct from the type of sale outside the scope of the license in *General Talking Pictures*, 305 U.S. at 124.  In *General Talking Pictures*, the licensee was authorized to sell the product for non-commercial uses

7

only.  *Id.* at 125-26.  The licensee violated the license by selling the product for commercial use. *Id.* at 126.  The Supreme Court held that the sale outside the scope of the license had the effect that no license had been granted, and the sale was not authorized and infringing.  *Id.* at 127.  Under *General Talking Pictures*, a sale outside the scope of a license does not result in patent exhaustion.

Here, the agreements between Corteva and ATCC do not impose restrictions or limitations on ATCC's furnishing of patent deposit seeds to the public.  The agreements state that ATCC may furnish without restrictions.  Corteva's later correspondence with ATCC confirms ATCC's authorization in the deposit agreements.  Corteva never limited that authorization.  *See supra* Section II.  Because ATCC's sale of seeds to Inari was within the scope of its authorization, Inari's intentions are irrelevant, and the "sale" to Inari Belgium was not "without authority" under 35 U.S.C. § 271(a).

Corteva chose and promised to give the patent deposit seeds to requesters through ATCC for the benefit of receiving patents.  After those particular seeds were sold by ATCC with Corteva's consent and under its authority, Corteva cannot now argue that the principles of patent exhaustion should not apply to those particular seeds.  *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1375 (Fed. Cir. 2013); *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1277 (Fed. Cir. 2009) ("The only issue relevant to patent exhaustion is whether [the seller's] sales were authorized, not whether [the parties] intended, expressly or impliedly, for the covenant to extend to [the seller's] customers.") (citing *Quanta*, 553 U.S. at 637); *see also De Forest Radio Tel. & Tel. Co. v. U.S.*, 273 U.S. 236, 241 (1927) (finding that no formal granting of a license is necessary to give it effect and any language or conduct by the patent owner, that may properly infer that the owner consents to the use of the patent, "constitutes a license and a defense to an action for a tort").

Following the holding and analysis by the Supreme Court in *Lexmark*, patent exhaustion applies to the particular patent deposit seeds purchased by Inari through the authorized sale from ATCC. *Lexmark*, 581 U.S. at 377 ("Once a patentee decides to sell – whether on its own or through a license – that sale exhausts its patent rights, regardless of any post-sale restrictions . . . ."). In accordance with the holding in *Bowman v. Monsanto Co.,* 569 U.S. 278, 284 (2013) (patent exhaustion applies only to the "particular article" sold, *i.e.*, particular seeds, and not to the ability to prevent the buyer from making new copies of the patented seed, *i.e.*, making subsequent generations of seeds), patent exhaustion would apply to the particular sample seeds purchased.

Because the sale of the patent deposit seeds was authorized, the phytosanitary testing, export, and growing plants from those seeds are all non-infringing activities within that express authorization subject to patent exhaustion. Corteva itself recognizes this principle of access to the written description for patents claiming plants and seeds because it faulted Inari for not growing seeds for purposes of analyzing the descriptions of a patent claiming a plant variety in proceedings before the Patent Trial and Appeal Board. Inari SOF, ¶¶ 102-04. The requirement for patent deposits and public access to such deposits is especially necessary for patent claims that are directed towards whole plants and seeds and not just nucleic acid sequences such as those at issue here. D.I. 540 at 7; *cf.* Inari SOF, ¶ 2 Reply (requiring a deposit for the '246 patent for claims to plants and seeds); *id.*, ¶ 5 Reply (requiring deposit for "claims" of '434 patent, including plant and seed claims); *id.*, ¶ 8 Reply (requiring patent deposit for "novel plant" claim for '363 patent); *id.*, ¶ 11 Reply; *id.*, ¶ 15 Reply (requiring patent deposit for "novel plant" claim for '655 patent).

The "furnishing" of patent deposit seeds by ATCC is mandated under 35 U.S.C. § 112. *J.E.M. Ag Supply, Inc.*, 534 U.S. at 142. Therefore, furnishing a patent deposit is not proscribed by the statute and not an infringement under § 271(a). Even if that furnishing is deemed to be a

"sale" of the patent deposit, under the undisputed facts here, such a sale was authorized by Corteva, and is not infringing as a matter of law.  The sale results in exhaustion of Corteva's patent rights as to the particular seeds purchased.

> **C.      The ATCC 2017 and 2019 MTAs Have No Term Limits; The Post-Sale Restrictions Therein Would Violate the Patent Laws if Applied to Patent Deposits**

Another legal reason why ATCC cannot restrict the use of the transferred seeds post sale is the following: the ATCC MTAs do not contain any term limitations.  If the MTA post-sale restrictions on commercial use or transfer without any term limits apply to purchased patent deposits, they would violate the Patent Laws.  When a patent expires, is invalidated or is abandoned, the public is free to practice the patented invention.  ATCC cannot, in furnishing patent deposits, impose contractual restrictions on the purchaser's use of a patented invention after the patent is no longer in force.  The MTA restrictions cannot be construed to restrict the public's use of patent deposits after the expiration of the relevant patents.  D.I. 555 at 7; *see also Brulotte v. Thys Co.*, 379 U.S. 29, 31-32 (1964) (acknowledging patent rights become public after expiration and finding a license beyond expiration "unlawful *per se*").  The only viable legal construction of the MTAs is that of the MTA "Compliance with Law" provisions, which provide that if there is a conflict between the terms of the MTA and any applicable law or regulation or Budapest Treaty, the terms of the applicable law or regulation apply to all patent deposits.  ATCC cannot impose the Commercial Use provisions on patent deposits in violation of the Patent Laws.  When considered in the context of the MTA "Commercial Use" terms, which are unlimited by term, the applicable patent laws and regulations must apply.  Otherwise, the MTA would have the effect of unlawfully restricting the use of patent deposits after the relevant patents have expired.  D.I. 555 at 7.

### D. Inari Did Not Induce ATCC to Infringe the Asserted Patents

#### 1. A Requester's Intended Future Use of Patent Deposit Seeds Cannot Render the Sale of the Seeds an Infringing Act

Corteva's theory of direct infringement by ATCC is that Inari's future intended use of the seeds at the time of purchase renders ATCC's sale unauthorized and a direct infringement. D.I. 577 (May 29, 2026 Hr'g Tr.) at 73. Under Corteva's theory of infringement, Inari USA's act in 2018 or Inari Belgium's act in 2019 of checking a "Research Use Only" box on a New Account form under "Intended Use" renders ATCC's subsequent sales of patent deposits to Inari Belgium a direct infringement of the Asserted Patents by ATCC. The timing and facts do not support Corteva's contrived allegations. They are also wrong as a matter of law. Should the Court conclude that ATCC could impose post-sale restrictions on patent deposits in the MTA, which Inari contends it cannot, this would not present a question of induced patent infringement but an issue of breach of contract.

#### 2. The Supreme Court's Decision in *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.* Compels a Finding of No Induced Infringement

In *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, No. 24-889, 2026 U.S. LEXIS 2358, decided June 4, 2026, the Supreme Court confirmed that the induced acts of a third party must constitute patent infringement and that the inducer must take active steps to encourage direct infringement. Here, ATCC's furnishing of patent deposits was not a direct infringement and Inari did not take any active steps to encourage ATCC to engage in acts other than those it was obligated to perform as a patent depository and authorized by Corteva to conduct.

In *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, No. 24-2889, 2026 U.S. LEXIS 2358, the Supreme Court reversed the Federal Circuit decision, 104 F.4th 1370 (Fed. Cir. 2024), that found it to be plausible that a physician could read statements on Hikma's website and press releases as encouraging infringement even though Hikma's generic drug was approved with a

11

skinny label that excluded uses of the approved generic drug that would have infringed the patent owner's method of treatment claims.  Citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005), the Supreme Court stated that "mere knowledge of infringing potential or of actual infringing uses [is] not . . . enough . . . to subject a distributor to liability."  *Hikma Pharms. USA*, 2026 U.S. LEXIS 2358 at *9.  Under *Hikma*, an alleged inducer's knowledge that their product might be used by a purchaser in an infringing manner is not enough for inducing infringement.  Here, Corteva attempts to turn that reasoning on its head by alleging that the alleged inducer's secret intent can render a third-party seller's otherwise authorized acts a direct infringement.

> The Court in *Hikma* set out the required elements of an induced-infringement claim as:
>
> First there must be a direct infringement by a third party. *Limelight Networks, Inc. v. Akamai Technologies, Inc*., 572 U.S. 915, 920-921 (2014). Second, the inducer must know that "the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A*., 563 U.S. 754, 766 (2011). Third, and most relevant here, the inducer must take "active steps… to encourage direct infringement *Grokster*, 545 U.S., at 936 (internal quotation marks omitted).

*Hikma Pharms. USA*, 2026 U.S. LEXIS 2358 at *9.

None of the required elements are present here.  ATCC was authorized and obligated to sell the patent deposit seeds to Inari.  Inari understood that ATCC as a patent depository was so authorized and obligated.  Any post-sale restrictions imposed by ATCC in the MTA would be a breach of contract issue since ATCC's sale complied with the scope of Corteva's authorization. *Lexmark*, 581 U.S. at 376.

Direct patent infringement under 35 U.S.C. § 271(a) is a strict liability tort.  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 638-39 (2015) ("under this form of liability, a defendant's mental state is irrelevant" (citing *Global-Tech*, 563 U.S., at 761 n.2)).  ATCC's state of mind is not relevant to whether the sale to Inari was a direct infringement.  If the sale was authorized by

12

Corteva, there could be no direct infringement.

What Inari may have told ATCC about its plans for the use of the seeds after purchase or whether Inari was correct in its interpretation of the meaning of non-commercial use should also have no bearing on whether the sale by ATCC was authorized by Corteva. *See* D.I. 572 at 2-3. Inari's state of mind or intent has no relevance to whether ATCC's authorized sale can be a direct infringement of the Asserted Patents. *Limelight Networks*, 572 U.S. at 920-21. And relevant here, Inari did not take any active steps to encourage ATCC to directly infringe the patents. The ordinary acts of entering a new account form and ordering samples of patent deposits are incident to ATCC's functions and obligations as a patent depository. Inari's acts did not encourage ATCC to perform unauthorized acts and do not support liability under an inducement theory. *Grokster*, 545 U.S. at 937, *Hikma Pharms. USA*, 2026 U.S. LEXIS 2358 at *13-14, 14 n.3. Nor is a once-authorized sale converted into an unauthorized sale by a subsequent breach of an agreement by the buyer's later conduct. *Impression Prods., Inc.*, 581 U.S. at 376 ("The purchasers might not comply with the restriction, but the only recourse for the licensee is through contract law, just as if the patentee itself sold the item with a restriction."); *Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357, 1370 (Fed. Cir. 2011) (licensee subsequent breach does not make an authorized sale unauthorized).

> **E.      As a Patent Depository, ATCC Is a Custodian of the Seeds to Fulfill the Patent Depositor's Obligations Under 35 U.S.C. § 112 and for the Benefit of the Public**

In the June 1, 2026 Order, the Court also asked (1) whether there are other legal reasons why ATCC could not restrict the use of the transferred seeds post-sale and (2) whether the nature of ATCC's property interest in the seeds matters.

As a patent depository, ATCC does not have any ownership or property interest in the seeds. *See* JA1845 at JA1850 (explaining the depositor maintains ownership of patent deposit

13

material); JA5238 and JA5240 ('434 patent deposit form providing that "Individuals should verify with their management as to who owns the deposit"); JA5307 at JA5309; (same for '363 and '441 patents deposit form); JA5354 at JA5356 (same for '246 patent deposit form); JA5420 at JA5422 (same for '655 patent deposit form). Its function is that of a custodian maintaining and furnishing the patent deposits for the public.

ATCC's custodial obligations as a patent depository is analogous in some respects to a bailment under common law. "A bailment is created by the delivery of personal property by one person to another in trust for a specific purpose, pursuant to an express or implied contract to fulfill that trust." 8A Am. Jur. 2d Bailments § 1 (Updated May 2026). No formal contract or actual meeting of the minds is necessary to create a bailment. *See* 8A Am. Jur. 2d Bailments § 28 (Updated May 2026); *York v. Jones*, 717 F. Supp. 421, 425 (E.D. Va. 1989). All that is required for the creation of a bailment are the elements of lawful possession and a duty to account for the thing as the property of another. *Id.* A bailee acquires a possessory interest in the property consistent with the purposes of the bailment. 8A Am. Jur. 2d Bailments § 51 (Updated May 2026). It differs from a common law bailment in that ATCC is an acknowledged patent depository under Federal regulations and an International Depositary Authority under the Budapest Treaty with obligations to provide public access to patent deposits.

ATCC's obligations and rights concerning its possessory interest in the patent deposits are determined by the terms of its agreements with the patent depositor and its duties and obligations as a USPTO Acceptable Depository and International Depositary Authority under the Budapest Treaty. As a patent depository, ATCC is tasked with testing the seeds to ensure viability, maintaining the seed deposits for the required period, and furnishing samples of the seeds to the public when the patents issue. 37 C.F.R. § 1.803(a)(2); Budapest Treaty Regulations, Rule 2, 9-11.

14

These obligations are also set out in the deposit agreements. *See supra* Section II. ATCC has a possessory interest in the seeds for the public benefit but no property interest in the seeds. ATCC has no right to impose post-sale restrictions on the use of the patent deposit seeds it furnishes to public requestors in its function as a patent depository.

The provisions of 37 C.F.R. § 1.803 ("Acceptable Depository") reinforce that as a depository recognized as suitable by the USPTO, ATCC is a custodian of the patent deposit on behalf of the public. Under § 1.803, ATCC must: (i) comply with the terms and conditions applicable to deposits for patent purposes (37 C.F.R. § 1.803(a)(2)); (ii) exist independent of the control of the depositor (*id.* at (a)(2)(ii)); (iii) be impartial and objective (*id.* at (a)(2)(v)); (iv) furnish samples of the deposited material in an expeditious and proper manner (*id.* at (a)(2)(vi)); and (v) promptly notify depositors of its inability to furnish samples and the reasons why (*id.* at (a)(2)(vii)). ATCC must also indicate the amount of any fees the depository will charge for storage, viability statements and furnishing of samples of the deposit. 37 C.F.R. § 1.803(b)(5).

The USPTO's *Manual for Patent Examination Procedure*, Chapter 2400 and cases cited therein set forth the USPTO procedures, practices, and regulations concerning deposits made for purposes of satisfying 35 U.S.C. § 112 and reiterate the strict requirements placed on patent depositors with respect to agreements and representations that must be made concerning the unrestricted availability of the deposits to the public. The removal by the depositor of any restrictions on patent deposits after patent issuance is irrevocable. Corteva, as the depositor, cannot impose any restrictions on the availability to the public of the deposits. *See Ex parte Hildebrand*, 1990 Pat. App. LEXIS 7, at *9 (BPAI 1990) (Budapest Treaty deposit without waiving right to secrecy under Rule 9.2 of the Treaty is not sufficient assurance that the public will have access to the deposited strains); *Ex parte Humphreys*, 1992 Pat. App. LEXIS 19, at *13-14 (BPAI 1992)

15

(representation that strains are available to the public from a research institute not sufficient assurance of public availability, deposit in suitable depository required); *Ex parte Jianjun Liu*, Appeal 2012-6661 (PTAB 2012) (Exhibit A) (to meet requirements of 37 C.F.R. § 1.808(a)(2), declaration is required with statement that all restrictions on access to the deposit will be irrevocably removed upon issuance of patent, absent such assurances, reference to a Budapest Treaty deposit is insufficient).

The conditions under which the USPTO recognizes a suitable patent depository and the obligations of such a suitable depository, coupled with the representations required by the depositor in making an acceptable patent deposit, form the terms and conditions applicable to patent deposits. JA920 at JA927 (29:3-12) (ATCC 30(b)(6) witness explaining that ATCC follows its contract with depositors "as its primary source of what it needs to do" and the contract should be compliant with the Budapest Treaty rules incumbent on ATCC); *id.* at JA929 (37:7-11) (explaining that requirement to furnish patent deposit samples to the public reflected in Section 8(a) of the deposit form is part of ATCC's obligations).

Here, ATCC is the custodian of seeds deposited to fulfill Corteva's obligations to the public under 35 U.S.C. § 112 in obtaining its patents. *See* 37 C.F.R. § 1.806. Corteva's rebuffed April 2023 attempt to impose post-sale restrictions on its ATCC deposits confirms the scope of the relationship under which ATCC operates as a patent depository and ATCC's role as a custodian of patent deposits in furtherance of the public interest. Inari SOF, ¶¶ 26-27. ATCC does not have any ownership interest in or rights to the seeds deposited beyond those of its custodial responsibilities. There is no legal basis for ATCC to impose any commercial use restrictions on post-transfer use of the seeds by contract. The only restrictions on access that ATCC is permitted to apply are those set forth in 37 C.F.R. § 1.808 (b) and the Budapest Treaty.

16

**F.    Corteva's Authorization and Exhaustion Also Apply to the Patent Deposits of the PVP Certificates**

In the Second Amended Complaint ("SAC"), D.I.148, Count I, ¶ 174, Count II, ¶ 187, and Prayer For Relief ¶ C, Corteva alleged that Inari induced ATCC to sell patent deposits that corresponded to the varieties claimed in the PVP certificates.  In its Forty-First Affirmative Defense, Inari pleaded that the sales of patent deposit seeds by ATCC were authorized by Corteva and that exhaustion applied to Inari's purchase of the seeds for the Asserted Utility Patents and the Asserted PVP Certificates.  D.I. 160 at 85.  Inari moved for summary judgment that the Asserted PVP Certificates were not infringed under 7 U.S.C. § 2541(a)(10).  D.I. 549 at 8.  In its Opposition to Inari's motion, Corteva appears to represent that it is not alleging Inari infringed by inducing ATCC under § 2541(a)(10).  D.I. 557 at 6 n.2.  Should Corteva's allegations of inducement in Counts I and II remain, the facts and argument addressed above on authorization, exhaustion, and ATCC's ability to impose post-sale restrictions also apply to the patent deposits related to the Asserted PVP Certificates.  Indeed, Corteva's allegations of direct infringement of the Asserted PVP Certificates should be barred because ATCC's sales were authorized, and with respect to Inari Belgium's purchases, exhausted.

## IV.    CONCLUSION

Inari respectfully requests that the Court grant its motion for summary judgment as to no inducement of infringement under 35 U.S.C. § 271(b).  Inari submits that the reasons addressed above also apply to Corteva's remaining patent and PVP infringement allegations and respectfully requests that the Court grant its summary judgment motion of no infringement on all infringement Counts for the Asserted Patents and PVP certificates.

17

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

OF COUNSEL:

Dimitrios Drivas
Raj S. Gandesha
Hallie Kiernan
Angelika Kligos
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY 10601
(914) 288-0022

June 12, 2026

Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

18

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 12, 2026, upon the following in the manner indicated:

Chad S.C. Stover, Esquire                                    *VIA ELECTRONIC MAIL*
Brian S.S. Auerbach, Esquire
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Todd Vare, Esquire                                           *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN  46204
*Attorneys for Plaintiffs*

Ronald Cahill, Esquire                                       *VIA ELECTRONIC MAIL*
Heather B. Repicky, Esquire
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA  02210
*Attorneys for Plaintiffs*

Lauren Baker, Esquire                                        *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA  30326
*Attorneys for Plaintiffs*

Peter Bicks, Esquire                                         *VIA ELECTRONIC MAIL*
Kim B. Goldberg, Esquire
Jordan B. Fernandes, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
*Attorneys for Plaintiffs*

David Gindler, Esquire                                    *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
Christopher Lynch, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire                                  *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA  90401
*Attorneys for Plaintiffs*

Carly Romanowicz, Esquire                                 *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
*Attorneys for Plaintiffs*

Elizabeth Moulton, Esquire                                *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
*Attorneys for Plaintiffs*


                                          */s/ Megan E. Dellinger*
                                          _____
                                          Megan E. Dellinger (#5739)


2

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 17, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Chad S.C. Stover, Esquire<br>Brian S.S. Auerbach, Esquire<br>BARNES & THORNBURG LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE 19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Todd Vare, Esquire<br>BARNES & THORNBURG LLP<br>11 South Meridian Street<br>Indianapolis, IN 46204<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Ronald Cahill, Esquire<br>Heather B. Repicky, Esquire<br>BARNES & THORNBURG LLP<br>One Marina Park Drive, Suite 1530<br>Boston, MA 02210<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Lauren Baker, Esquire<br>BARNES & THORNBURG LLP<br>3340 Peachtree Road N.E., Suite 2900<br>Atlanta, GA 30326<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Peter Bicks, Esquire<br>Kim B. Goldberg, Esquire<br>Jordan B. Fernandes, Esquire<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY 10019-6142<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

David Gindler, Esquire                                    *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
Christopher Lynch, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA  90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire                                  *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA  90401
*Attorneys for Plaintiffs*

Carly Romanowicz, Esquire                                 *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
*Attorneys for Plaintiffs*

Elizabeth Moulton, Esquire                                *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
*Attorneys for Plaintiffs*


                                        */s/ Megan E. Dellinger*
                                        _____
                                        Megan E. Dellinger (#5739)



                                        2