**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **CORTEVA AGRISCIENCE LLC,** | : | **CIVIL ACTION** |
| **PIONEER HI-BRED** | : | |
| **INTERNATIONAL, INC.,** | : | |
| **AGRIGENETICS, INC.** | : | |
| | : | |
| **v.** | : | **NO.  23-1059** |
| | : | |
| **INARI AGRICULTURE, INC., INARI** | : | |
| **AGRICULTURE NV** | : | |

## MEMORANDUM

**MURPHY, J.**[*]                                                    **August 10, 2026**

This is the first of what will be several memoranda addressing different portions of cross-motions for summary judgment and *Daubert* motions filed by the parties in this intellectual property dispute set for trial in late September, 2026.  We are splitting them up in the interest of time to aid counsel in trial preparation.  An order summarizing the disposition of all motions will follow the last memorandum.  In this memorandum, we grant Corteva's motion for summary judgment on Inari's counterclaims 14 (Lanham Act) and 16 (abuse of process) and deny as moot Corteva's motion to exclude Dr. Zenner's opinions on Lanham Act and abuse of process damages.

## I.    Background

We recently summarized this dispute as follows: "Corteva, a long-established player in agricultural science, alleges that Inari, a relatively new venture, has been wrongfully exploiting Corteva's seed technology to enter the market. Corteva's amended complaint asserts numerous

---

[*] Judge John Frank Murphy, of the United States District Court for the Eastern District of Pennsylvania.

utility patents and plant variety protection certificates. Inari counterclaims that Corteva's intellectual property is invalid, wrongly acquired, and being used for no purpose other than to disparage and bully Inari." *Corteva Agriscience LLC v. Inari Agriculture, Inc.*, 2026 WL 574624, at \*1 (D. Del. Mar. 2, 2026). Further background is available in our rulings on Inari's motion to dismiss, *Corteva Agriscience LLC v. Inari Agriculture, Inc.*, 743 F. Supp. 3d 603 (D. Del. 2024), and Corteva's motion to dismiss, *Corteva Agriscience LLC v. Inari Agriculture, Inc.*, 2025 WL 1380763 (D. Del. May 13, 2025), as well as our October 14, 2025 claim construction order, DI 443.

Corteva and Inari each filed combined motions advancing numerous grounds for partial summary judgment and seeking to preclude each other's experts for various reasons. *See* DI 534, 537, 538, and associated briefing and exhibits. This included a statement of interest from the United States addressing certain issues. DI 562. We held oral argument on May 29, 2026, where the parties and the United States were heard. DI 577. For two issues, we invited further submissions and provided limited guidance, which we incorporate here. *See* DI 572, 584. Trial begins September 23, 2026.

## II.    Standards of review

We "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine and material if a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion addressed to an issue on which the other side has the burden of proof, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation modified). Alternatively, the movant may show that there is no genuine issue of material fact by pointing out "an absence of evidence to support the nonmoving party's case." *Id.* at 325. After that, the responding party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation modified).

Turning to *Daubert*, Rule 702 requires the proponent of the expert to "demonstrate[ ] to the court that it is more likely than not that: . . . (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Where the challenged expert "testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (alteration in original) (citation modified) (quoting *Daubert*, 509 U.S. at 592). Courts must carefully distinguish between Rule 702's threshold gatekeeping analysis and disputes over factual weight that go to a jury. *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1338-40 (Fed. Cir. 2025) (en banc). "The distinction is particularly important in the context of patent damages because estimating a reasonable royalty 'necessarily involves an element of approximation and uncertainty.'" *Willis Electric Co., Ltd. v.*

3

*Polygroup Ltd.*, 166 F.4th 1363, 1374 (Fed. Cir. 2026) (quoting *EcoFactor*, 137 F.4th at 1340).

### III.    Analysis

As mentioned, this memorandum addresses Corteva's motion for summary judgment on Inari's counterclaims 14 (Lanham Act) and 16 (abuse of process) as well as Corteva's *Daubert* motion against Dr. Zenner.

### a.    We grant Corteva's motion for summary judgment on Inari's counterclaims 14 (Lanham Act) and 16 (abuse of process)

Inari alleges that Corteva's conduct in and related to this litigation constitutes unfair competition under § 43A of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and abuse of process under Delaware common law.  DI 160 ¶¶ 223-26 (counterclaim 14); ¶¶ 230-32 (counterclaim 16).  Starting with false advertising,

> To establish a false advertising claim under the Lanham Act, a plaintiff must prove: 1) that the defendant has made false or misleading statements as to his own product or another's; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (citation modified) (citation omitted).  As we have noted before, good-faith (even if ultimately incorrect) marketplace statements accompanying patent litigation generally do not support a false advertising claim.  *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1352-55 (Fed. Cir. 1999); *see also Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999) (applying *Noerr-Pennington* immunity broadly to business torts).

Inari attempts to forestall summary judgment by relying on Corteva's September 27, 2023 press release.  DI 555 at 24-25 (discussing some other facts in passing, but arguing only the

4

press release in detail). The press release, in relevant part, stated:

> **Corteva Acts to Stop Theft of Intellectual Property, Protect American Farming**
>
> Sep 27, 2023
>
> Illegal Actions to Steal Proprietary Technology Trigger Lawsuit Against Inari
>
> INDIANAPOLIS, Sept. 27, 2023 /PRNewswire/ -- To protect its intellectual property, Corteva (NYSE: CTVA) today filed suit against Inari Agriculture, Inc. and Inari Agriculture NV. As noted in the complaint, the lawsuit ". . . seeks to prevent Inari from continuing its brazen efforts to steal Corteva's groundbreaking work." Specifically, the lawsuit alleges that Inari deliberately used a third-party agent to obtain protected Corteva seeds, illegally exported the seeds out of the United States, made slight genetic modifications of the biotech traits and is seeking U.S. patents for those modified traits. Corteva is filing the suit in recognition of the fact that such theft will, if left unchecked, set a dangerous precedent for the industry: agricultural innovations take decades of research and testing and hundreds of millions of dollars of investment to bring to market. Corteva alone invests nearly $4 million every single day on research and development. Investments of time and effort are equally substantial: for example, a single crop protection product takes an average of 13 years to reach market, a biotech trait takes almost 16 years and a new seed product can take seven years.
>
> "Companies like ours are willing to make billions of dollars of investments in the future of agriculture not only because we want to contribute to the world around us, but also because we know that if our product is effective and serves farmers well, we can recoup our investment – and reinvest in the next game-changer," said Sam Eathington, Corteva's chief technology and digital officer. "Theft of proprietary technology hurts not only our company, but also, ultimately, our nation's farmers."
>
> Every year, advances in technology help farmers increase yields and protect crops from devastating weeds and pests. Investments in innovation, including those made by Corteva, have helped American farmers, despite the historic storms, floods, droughts and heat waves of recent years, to produce 300% more per acre today than they did 70 years ago.
>
> The suit was filed in the U.S. District Court for the District of Delaware.

JA24744 (as of this writing the press release is available on Corteva's website and widely on the internet). Inari argues that a jury could conclude that several parts of this press release are false

5

or misleading: (i) the word "theft," which Inari says means "unlawful taking of property as by embezzlement or burglary"; (ii) the characterization of Inari's conduct as "deliberately using a third-party agent to obtain protected Corteva seeds" and "illegally export[]" them; and (iii) the implication that farmers would be hurt by Inari's theft. DI 555 at 24-25.

The allegations in the press release are the gravamen of Corteva's complaint in this case. At times, Inari's briefing seems to be suggesting that the press release is exaggerating the complaint or using misleadingly imprecise language about the complaint. But no reasonable jury could conclude that the press release is anything but a simpler restatement of Corteva's allegations in this case. Inari intends to persuade a jury that the allegations are false. So too in any trial. Even if a jury agrees with Inari, that verdict would not automatically render Corteva a false advertiser. And in this case, no reasonable jury — even one that adopts Inari's views — could find the press release to be false advertising. There are several reasons, but the most glaring is the lack of evidence that "there is actual deception or at least a tendency to deceive a substantial portion of the intended audience." *Pernod Ricard*, 653 F.3d at 248. Inari's entire argument on this point is:

> **Deception.** Corteva's press release about Inari is deceptive because it falsely portrays Inari as a "thief" and misleadingly omits key information of the relevant facts to form a misapprehension in the mind of a reader. Whether a statement is deceptive or tends to deceive is a factual question for the jury. *NY Mach. Inc. v. Korean Cleaners Monthly*, C.A. No. 17-cv-12269-ESK, 2023 WL 3508330, at *5 (D.N.J. May 17, 2023); *Tillery v. Leonard & Sciolla, LLP,* 521 F. Supp. 2d 346, 350 (E.D. Pa. 2007). There is a sufficient basis on which for a jury to find the press release deceptive.

DI 555 at 26-27. We certainly agree that deception is a fact question. But you need facts to answer fact questions, and Inari offered nothing that would allow a jury to conclude that the targets of the press release (other industry players, presumably) would or could be deceived about anything.

6

Another reason is that "federal patent law bars the imposition of liability [under federal or state law] for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith." *Golan v. Pingel Enters., Inc.*, 310 F.3d 1360, 1370 (Fed. Cir. 2002) (quoting *Zenith*, 182 F.3d at 1353) (insertion of "[under federal or state law]" in original). Inari has adduced no evidence of bad faith here. Frankly, given the extensive history of this litigation, and the rulings that Corteva has obtained thus far (whether they are ultimately correct or incorrect), it is inconceivable that a reasonable jury could conclude Corteva was operating in bad faith.

Turning to abuse of process, Inari does not dispute Corteva's statement of the elements under Delaware law: "(1) an ulterior motive; and (2) a willful act in the use of the legal process that is not proper in the regular conduct of the proceedings." *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *23 (Del. Ch. July 24, 2013) (citing *Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Super. 1983)). This is a high bar:

> In explaining these elements, Prosser notes that some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required. Merely carrying out the process to its authorized conclusions, even though with bad intentions, will not result in liability. Some form of coercion to obtain collateral advantage, not properly involved in the proceeding itself, must be shown, such as obtaining the surrender of property or the payment of money by the use of the process as a threat or club. In other words, a form of extortion is required, and what is done in the course of negotiation is what typically constitutes the tort. Abuse of process is concerned with "perversion of the process after it has been issued," in comparison to malicious prosecution which focuses on the initiation of that process.

*Id.* Corteva argues that Inari cannot prove that Corteva used this litigation to engage in improper coercion. In response, Inari points to three acts: Corteva (i) "leveraged the forthcoming filing of the lawsuit to make 'courtesy calls' to Inari's prospective customers"; (ii) "disseminated a false and misleading press release relating to Inari and the lawsuit via PR Newswire with the

7

expectation that prospective investors in and commercial partners with Inari would elect not to work with Inari because of it"; and (iii) "communicated the press release to members of Congress and senior officials within the U.S. Department of Agriculture, the USPTO, the U.S. Department of State, and the U.S. Department of Justice to harm Inari's reputation with U.S. law makers and regulators."  DI 555 at 27-28.

There is no dispute that Corteva announced this lawsuit to the world and then communicated it to specific people and entities of interest to Corteva.  But then what?  Inari did not adduce evidence of improper coercion.  Inari relies on two Delaware district court opinions — both on motions to dismiss — neither of which is helpful.  In one, "a representative from [plaintiff] approached the hospital with the press release about the suit and [defendant's] alleged violation of [plaintiff's] patents, and proposed new pricing for [plaintiff's] solutions for the hospital."  *Nuance Commc'ns, Inc. v. MModal LLC*, 2018 WL 6804488, at \*4 (D. Del. Dec. 27, 2018).  In the other, plaintiff, "[a]fter filing the Complaint . . . used the litigation [via the dissemination of the Press Release, related social media posts and via direct communications with [defendant's] customers] as means to interfere with [defendant's] business and dissuade third parties from doing business with [defendant]."  *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, 2017 WL 3821107, at \*9 (D. Del. Aug. 31, 2017).  In those cases, the plaintiffs allegedly used the lawsuit to extract some other business advantage.  And that may be enough to survive a motion to dismiss and open discovery into the alleged coercion.  But here, facing trial, for a jury to agree with Inari that Corteva's dissemination of information about the lawsuit is abuse of process, it would have to impermissibly speculate.  This is not a close call.  We enter judgment against Inari on its counterclaims 14 and 16.

**b.      We deny as moot Corteva's motion to exclude Dr. Zenner's opinions on Lanham Act and abuse of process damages**

Dr. Zenner is Inari's damages expert for its Lanham Act and abuse of process counterclaims.  As explained above, we agree with Corteva that summary judgment against Inari is warranted on those two counterclaims.  Therefore, Corteva's *Daubert* motion to exclude Dr. Zenner's opinions is moot, and we will deny it as such.  *See* DI 577 at 189:20-23 (Corteva counsel confirming that there is no need to address the motion to exclude Dr. Zenner if summary judgment is granted against Inari on the Lanham Act and abuse of process counterclaims).

## IV.    Conclusion

For the reasons explained above, we grant Corteva's motion for summary judgment on Inari's counterclaims 14 (Lanham Act) and 16 (abuse of process) and deny as moot Corteva's motion to exclude Dr. Zenner's opinions on Lanham Act and abuse of process damages.  The motions will remain pending on the docket until fully resolved.