**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **CORTEVA AGRISCIENCE LLC, PIONEER HI-BRED INTERNATIONAL, INC., AGRIGENETICS, INC.** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 23-1059** |
| **INARI AGRICULTURE, INC., INARI AGRICULTURE NV** | : | |

# ORDER

**AND NOW**, this 11th day of September 2026, upon considering the parties' pretrial submissions to date, including the proposed final pretrial order and included motions in limine, and the final pretrial conference held September 9, 2026, we provide the following rulings and guidance for the parties to incorporate into their trial plans. In light of the guidance below, the parties shall continue the ongoing meet-and-confer process about the jury instructions and verdict sheet, and **FILE** revised versions of both no later than **September 16, 2026.**

1. **Access.** The current draft jury instructions and other aspects of the pretrial materials reflect disagreement between the parties about how to present the jury with the question of whether certain of Inari's accused acts are authorized/immune because they were the necessary equivalent of reading a patent specification to benefit from the § 112 disclosure. *See* DI 627 at 11-16 (discussing in the context of breach of contract, but the logic would be the same for patent and PVP infringement). We agree with Corteva that the jury will not benefit from recitations of USPTO rules, the Budapest Treaty, or portions of the patent specifications as part of the jury instructions. Rather, the parties (with court resolution as needed) should express in plain language what all of these authorities provide. DI 627 at 11-16. To use the specific

example of proposed jury instruction 2.4, we view Corteva's proposals as consistent with our summary judgment rulings, and they should be adopted over Inari's proposals, with one small exception. Corteva's last insert could be read to suggest that if an act meets the definition of patent infringement, then it **cannot** fall within the scope of excused "reading" activities. DI 647 at 21; *see also id.* at 21 n.20 (we agree with this footnote explanation). Thus, subject to review by the parties, we suggest replacing:

> To determine whether Corteva has proven its patent infringement claims, you will have to decide whether Inari's actions in the United States with the patent deposit seeds it obtained from ATCC went beyond Inari's right to access and read seeds deposited with ATCC to understand Corteva's patent. Put differently, you may only find patent infringement if you find that Inari did something more than access and understand Corteva's invention—specifically, something that meets the legal requirements for patent infringement which I will now provide you.

With

> To determine whether Corteva has proven its patent infringement claims, you will have to decide whether Inari's actions in the United States with the patent deposit seeds it obtained from ATCC went beyond Inari's right to access and read seeds deposited with ATCC to understand Corteva's patent. Put differently, you may only find patent infringement if you find that Inari did something more than access and understand Corteva's invention—specifically, something that meets the legal requirements for patent infringement **and which was not necessary to access and understand Corteva's invention**. I will now provide the legal requirements for patent infringement.

(emphasis for the parties here, not for the jury). We are not wedded to this exact language, so we leave it to the parties to take another pass through all the instructions, including 2.4, with this guidance in mind.

2. **PVP Research exception under § 2544.** Corteva's infringement theory under the PVPA is exportation under 7 U.S.C. § 2541(a)(2): "Except as otherwise provided in this subchapter, it shall be an infringement of the rights of the owner of a protected variety to perform without authority, any of the following acts . . . : import the variety into, or export it

from the United States." A separate section within the subchapter, 7 U.S.C. § 2544, provides that "[t]he use and reproduction of a protected variety for plant breeding or other bona fide research shall not constitute an infringement of the protection provided under this chapter." Inari moved for summary judgment of no PVP infringement on the basis of this research exception. We denied that motion because we saw jury questions. DI 641 at 10. But, to provide a jury instruction on this, we must answer the question of whether this defense applies to export infringement as a matter of law. Corteva argues that it does not because "use and reproduction" are different acts than exportation. Inari disagrees, pointing to the "[e]xcept as otherwise provided" language in § 2541(a). Inari is certainly correct that § 2541(a) is affected by other parts of the subchapter. But that does not mean that any derogation such as § 2544 automatically applies regardless of how it is phrased. Rather, § 2544's immunization for certain "use and reproduction" simply does not apply to exportation. That is not a troubling result since, after all, research on seeds could very well involve use and reproduction, but need not involve exportation. Further, as Corteva points out, this subchapter is careful with how it characterizes actions and assigns different consequences to them. For example, §§ 2541(d) and (e) refer broadly to "any act" whereas § 2543 and § 2545 (and so too, § 2544) refer to specific acts like saving seed or acting as an intermediary. Indeed, § 2541(a) clearly differentiates between acts that constitute a "use" — § 2541(a)(4),(5) — or "reproduction" — § 2541(a)(3) — and the act of "export" — § 2541(a)(2).

3. **Third-party beneficiary.** When addressing Corteva's motion for summary judgment in its favor on its breach of contract claim, Corteva contended that there could be no dispute that it is a third-party beneficiary of the ATCC-Inari MTAs. Our memorandum arguably

left it unclear whether we held that Corteva is a third-party beneficiary or merely: "Because Inari did not identify any dispute specifically about whether Corteva is a third-party beneficiary under the MTAs, we proceed to consider whether Inari's activities are legally immune from breach." DI 627 at 11. Upon review of the record and considering the arguments of the parties at the pretrial conference, we conclude that Corteva is a third-party beneficiary of the ATCC-Inari MTAs as a matter of law for the reasons explained in our memorandum and the additional reasons advanced by Corteva counsel, which we adopt here.

4. **2022 MTA.** The parties dispute which version of the ATCC-Inari MTA controls for trial, mainly on the question of the definition of commercial use. The issue is not whether the 2022 MTA (which was executed by both Inari entities) supersedes or replaces the 2017 and 2019 MTAs for all purposes, implicating the merger clause in the 2022 MTA. Rather, we agree with Corteva's simpler argument that the 2022 MTA on its face is an unambiguous agreement that covers, without limit, materials "received from ATCC by [Inari] on an ATCC purchase order" and defined progeny and unmodified derivatives. JA5222. Hence, the 2022 MTA, and, e.g., its definition of commercial use, plainly covers all of the Corteva seeds that Inari had already received from ATCC.

5. **Unenforceability and related expert testimony.** Neither unenforceability nor any other equitable issue will be presented to the jury. The trial is very complex already, and these are issues that are largely contingent and will be informed by the jury's result. Our understanding is that with our resolution of the dispute over how to explain the access issue to the jury through jury instructions, Inari has no further need to discuss the law of biological deposits directly with the jury.

6. **Exhaustion.** We agree with Corteva that there is no room for an exhaustion defense in this case now that we have held that ATCC's seed transfers to Inari were not sales and did not transfer title of the seeds to Inari (nor was title ever transferred from Corteva to ATCC, as far as the record reveals). As we explained at oral argument, the ball is in Inari's court to promptly move for reconsideration, which will need to include briefing and proposed jury instruction(s), if it has a proper basis for doing so. In an effort to avoid meritless briefing, we caution that *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236 (1927)[1] dealt with the application of the implied license doctrine, which is related to, but separate and distinct from, the doctrine of patent exhaustion and therefore constitutes an affirmative defense that Inari has not advanced. *See, e.g.*, *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1274 n.1 (Fed. Cir. 2009) (explaining that because it determined the claims were "barred by the doctrine of patent exhaustion, [the Federal Circuit] need not address the district court's decision on the related doctrine of implied license"); *AMP Inc. v. United States*, 389 F.2d 448, 450 (Ct. Cl. 1968) (explaining the doctrine provides "an affirmative defense based on an implied license arising by operation of law by virtue of a prior agreement between the parties"); *Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) (explaining that *De Forest* dealt with the implied license doctrine). Moreover, "because the seed distributor[] had no authority to confer a right to use [Corteva's] biotechnology, [ATCC] could not confer any sort of license to use the seeds." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336 (Fed. Cir. 2006); *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) (holding

---

[1] During the pretrial conference, Inari raised *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236 (1927) for the first time seemingly under the impression that *De Forest* provides support for its affirmative defense of patent exhaustion.

that a seller cannot confer broader rights via an implied license than it has been granted by the patent holder).

7. **Newness under § 2402(a)(1).** We agree with Inari that at no point did this court eliminate Inari's § 2402(a)(1) affirmative defense from the case. Around a year ago, we denied Corteva's motion to strike. DI 421. Corteva never followed up, and Corteva incorrectly assumes that our denial of Inari's motion for leave to add a parallel counterclaim would extend *sub silencio* to somehow resurrect and grant the motion to strike the preexisting affirmative defense.

8. **Application of § 2541(d).** Inari moved for summary judgment of no infringement of Corteva's PVP certificates because, *inter alia*, there is no "export" infringement under § 2541(d) because Corteva's seeds were sold and Belgium and Chile protect corn varieties. We denied summary judgment because Inari's purported "sale" was ATCC's dispensing of Corteva's seeds to Inari, which does not qualify as a "sale" as a matter of law. DI 641 at 9-10 (and for that matter, there were no sales by ATCC). Inari contends that the § 2541(d) defense is still available for trial because it plans to present evidence of other transactions — not involving ATCC — that allegedly constitute a commercial sale of Corteva's seeds. We heard conflicting arguments at the pretrial conference, but we have no sound record upon which to preclude Inari as Corteva wishes. Corteva did not move for summary judgment on this issue; Inari did. We are unsure how Corteva would justify a belated summary judgment motion or equivalent, but based on how the record stands right now, Inari is entitled to try the defense relying on evidence of other sales of Corteva's seeds.

9. **Anticipation defenses.** On August 21, 2026, we issued a memorandum granting Corteva's motion for summary judgment against Inari's counterclaims 1, 2, 4, 5, and 7 and affirmative defenses 2, 5, 8, 11 (anticipation). DI 627 at 4-8. Inari argues that it has additional anticipation defenses other than the one addressed in our memorandum that it should be able to advance at trial. We disagree. The problem is that Corteva moved for summary judgment on Inari's counterclaims and affirmative defenses, stated in its opening brief that Inari had a "sole anticipation argument," and addressed that argument. DI 535 at 18. In response, Inari failed to identify a second anticipation argument as a basis for denying summary judgment on its counterclaims and affirmative defenses and even appeared to explicitly concede that was its only anticipation argument. *See* DI 555 at 19 (acknowledging that "Corteva's motion concerns claims that the regulated field trials were a public use invalidating the '434, '246, '363, '441, and '378 patents"), 21 (conceding that "Dr. Silverstone's opinions on invalidity for public use under § 102(b) are not based on sales, but on the regulated field trials as a commercial use before the critical dates"), and 29 (conceding again that "Dr. Silverstone's opinion is that the patents are invalid under 35 U.S.C. § 102(b) for public use prior to the critical dates because the field trials to deregulate transgenic events were a commercial use, even if kept secret"). Thus, Inari may not now disturb our judgment under Rule 56. If Inari disagrees and has a proper basis for doing so, it should have (or will need to) seek reconsideration of summary judgment.

10. **Corteva's first motion in limine is GRANTED**. Inari may not introduce evidence or testimony or make argument about purported antitrust violations, antitrust investigations, or involvement of the Department of Justice because there is no probative value and there is significant potential for prejudice. Nor may Inari suggest through evidence or

argument that Corteva brought this lawsuit for an improper purpose because the Lanham Act and abuse of process counts were dismissed. To be clear, Inari is free to introduce evidence about how the market in this field works when it is relevant for damages or the like.

11. **Corteva's second motion in limine is GRANTED IN PART AND DENIED IN PART**. Inari is free to introduce yield-edit evidence consistent with what its experts disclosed because Corteva did not timely move to strike those disclosures or otherwise timely pursue Inari's purported refusal to produce information. However, when Inari fact witnesses testify, they may not testify on yield-edit subjects to which Inari objected during discovery.

12. **Corteva's third motion in limine is GRANTED IN PART AND DENIED IN PART**. Inari may not elicit testimony or make arguments suggesting an inability to satisfy any judgment. However, because Corteva did not address a *Daubert* challenge to this topic, Inari's experts are free to testify consistent with their disclosures about the relative bargaining positions of the companies and other aspects of the economic context of the hypothetical negotiation.

13. **Corteva's fourth motion in limine is GRANTED IN PART AND DENIED IN PART**. Inari may not introduce evidence or elicit testimony about foreign patents and may not elicit testimony or make arguments about the substance of foreign law. To the extent that Inari advances a § 2541(d) defense, we expect that the "a country that does not protect varieties of the plant genus or species to which the variety belongs" element will be covered in a jury instruction either by agreement or, if there is a dispute, after court resolution of the dispute. Inari witnesses may refer to foreign law if it is part of contextualizing Inari's actions, but Inari must not suggest to the jury that anything about foreign law immunizes its conduct.

14. **Corteva's fifth motion in limine is GRANTED IN PART AND DENIED IN PART**. Any unclean hands defense would be tried to the bench. Inari may not introduce evidence or argument about Corteva's or other third parties' acquisition of seeds from ATCC with one exception. In rebuttal to willful infringement, with proper foundation, an Inari witness could testify about seed acquisition if: (i) the witness was aware of the seed acquisition before this lawsuit was filed; (ii) the testimony is that seed acquisitions were within an understood standard of good conduct in the industry; and (iii) the seed-acquisition conduct was commensurate with what Inari did with Corteva's seeds. Under no circumstances can it be suggested to the jury that Inari did nothing wrong simply because Corteva or others acquired seeds from ATCC for mere "reading" purposes.

15. **Corteva's sixth motion in limine is GRANTED IN PART AND DENIED IN PART**. Inari may not introduce evidence or argue about whether Inari's edited events infringe Corteva's patents. Inari may not suggest in any fashion that Inari's own patents are any type of defense against Corteva's allegations. Presumably, Inari may present itself to the jury as an innovative company generally, with patents playing a general part of that; such assertions are easily tested in cross or counter-argument. The extent to which Inari can focus on its own patents in this regard depends on Corteva's case-in-chief and the extent to which Corteva calls into question Inari's capacity for innovation. Further, Inari will be entitled to respond to the extent that Corteva refers to Inari's patents or patent applications in connection with Inari's state of mind.

16. **Inari's first motion in limine is GRANTED IN PART AND DENIED IN PART**. Corteva is free to introduce evidence of the Syngenta incident and assert that the industry, including Inari, was well aware of it. Corteva may not introduce evidence that any specific Inari employees were aware because they were employees of Syngenta unless Inari opens the door by suggesting that the industry, including Inari, was not well aware of the Syngenta incident.

17. **Inari's second motion in limine is DENIED without prejudice**. Corteva is free to introduce evidence about its alleged invention story, and agrees that it will not assert specific dates for any reduction to practice.

18. **Inari's third motion in limine is DENIED**. To justify such a harsh sanction, Inari would have to show that it contemporaneously pursued what it now characterizes as Corteva's failure to produce correlating data. Inari did not do so.

19. **Inari's fourth motion in limine is DENIED**. Corteva demonstrated that the evidence is highly probative to willful infringement and there is no prospect of undue prejudice.

20. **Inari's fifth motion in limine is DENIED**. Inari did not persuade us that any of the evidence identified (or prospective testimony consistent with that evidence) should be precluded as a blanket matter. This case involves allegations of not just patent infringement, but also unfair business practices and conversion. That said, we do remind counsel that witnesses and lawyers should use language commensurate with the evidence and causes of action.

21. **Inari's sixth motion in limine is GRANTED**. The emails identified by Inari (DI 634-18 at 16) and associated deposition testimony are precluded. This evidence concerning the deletion of certain documents could be the start of something probative, but Corteva

identified no prospect of corroborating the evidence such that a jury would be able to do anything but speculate about what it means relative to any cause of action. We cannot allow the jury to speculate about inflammatory evidence.

22.

**JOHN F. MURPHY**
**United States District Judge**
**Eastern District of Pennsylvania**