**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CORTEVA AGRISCIENCE LLC, PIONEER HI-BRED INTERNATIONAL, INC., and AGRIGENETICS, INC.,

Plaintiffs,

v.

INARI AGRICULTURE, INC. and INARI AGRICULTURE NV,

Defendants.

C.A. No. 23-1059 (JFM)

**PUBLIC REDACTED VERSION**

**[PROPOSED] JOINT PRE-TRIAL ORDER**

**LIST OF EXHIBITS IN JOINT PRETRIAL ORDER**


STATEMENT OF UNCONTESTED FACTS

| | |
|---|---|
| Joint | Exhibit 1 |

ISSUES OF FACT THAT REMAIN TO BE TRIED

| | |
|---|---|
| Plaintiffs | Exhibit 2 |
| Defendants | Exhibit 3 |

ISSUES OF LAW THAT REMAIN TO BE TRIED

| | |
|---|---|
| Plaintiffs | Exhibit 4 |
| Defendants | Exhibit 5 |

EXHIBITS

| | |
|---|---|
| Plaintiffs | Exhibit 6 |
| Defendants | Exhibit 7 |
| Joint | Exhibit 8 |

WITNESSES

| | |
|---|---|
| Plaintiffs | Exhibit 9 |
| Defendants | Exhibit 10 |

DEPOSITION/TRIAL DESIGNATIONS

| | |
|---|---|
| Plaintiffs | Exhibit 11 |
| Defendants | Exhibit 12 |

STATEMENT OF INTENDED PROOFS

| | |
|---|---|
| Plaintiffs | Exhibit 13 |
| Defendants | Exhibit 14 |

VOIR DIRE

| | |
|---|---|
| Plaintiffs | Exhibit 15 |
| Defendants | Exhibit 16 |

MOTIONS *IN LIMINE*

| | |
|---|---|
| Plaintiffs | Exhibit 17 |
| Defendants | Exhibit 18 |

PVP FRE 1006 SUMMARY EXHIBIT


| | |
|---|---|
| Plaintiffs | Exhibit 19 |
| Defendants | Exhibit 20 |

# TABLE OF CONTENTS

Page


I. ABBREVIATIONS ..... 2

II. NATURE OF THE ACTIONS AND PLEADINGS ..... 4

- A. Operative Pleadings ..... 5
- B. Claim Construction ..... 7
- C. Court Orders Regarding Expert Testimony ..... 8
- D. Issues to be Resolved at Pretrial Conference ..... 11

III. JURISDICTION ..... 19

IV. STATEMENT OF UNCONTESTED FACTS ..... 20

V. ISSUES OF FACT THAT REMAIN TO BE TRIED ..... 21

VI. ISSUES OF LAW THAT REMAIN TO BE TRIED ..... 21

VII. EXHIBITS ..... 21

VIII. WITNESSES ..... 26

- A. Deposition Designations ..... 27

IX. STATEMENT OF INTENDED PROOFS ..... 30

- A. Corteva's Statement of Intended Proofs ..... 30
- B. Inari's Statement of Intended Proofs ..... 30

X. TRIAL PROCEDURES ..... 30

- A. Trial Time and Presentation ..... 30
- B. Identification of Witnesses ..... 31
- C. Identification of Exhibits and Demonstratives ..... 32
  1. Exhibits and Demonstratives for Opening Statements ..... 32
  2. Exhibits ..... 32
  3. Demonstratives and Summary Exhibits ..... 33

4. Admissions Read Into the Record ........ 35
5. Exhibits and Demonstratives for Closing Arguments ........ 36
D. Identification of Deposition Testimony and Exhibits ........ 36
E. Emails to the Court Containing Nightly Disputes ........ 39
F. Set Up of Electronic Equipment ........ 40
G. Confidentiality ........ 40
H. Jury Notebooks ........ 41
I. Witness Binders ........ 41
J. Post-Trial Status Report and Motions ........ 42
XI. OTHER STIPULATIONS ........ 42
XII. VOIR DIRE QUESTIONS ........ 45
XIII. AMENDMENTS TO THE PLEADINGS ........ 45
XIV. MOTIONS IN LIMINE ........ 45
XV. CERTIFICATION REGARDING SETTLEMENT ........ 45
XVI. OTHER MATTERS ........ 46

Plaintiffs Corteva Agriscience LLC ("Corteva Agriscience"), Pioneer Hi-Bred International, Inc. ("Pioneer"), and Agrigenetics, Inc. ("Agrigenetics" and collectively with Corteva Agriscience and Pioneer, "Corteva" or "Plaintiffs") and Defendants Inari Agriculture, Inc. ("Inari USA") and Inari Agriculture NV ("Inari Belgium" and together with Inari USA, "Inari" or "Defendants"), by and through their undersigned counsel, collectively submit this proposed Joint Pretrial Order pursuant to D. Del. LR 16.3. The parties attempted in good faith to reach consensus on the following issues. To the extent the parties had differing positions, each party's respective proposal is explained for the Court's consideration. A Pretrial Conference in this matter is scheduled for September 9, 2026. A jury trial is scheduled to commence before the Honorable John F. Murphy on September 23, 2026.

**Plaintiffs' Counsel**

Corteva's Counsel: Corteva is represented by Chad S.C. Stover (No. 4919) (chad.stover@btlaw.com) of Barnes & Thornburg LLP, 222 Delaware Ave, Suite 1200, Wilmington, DE 19801, (302) 300-3474. Corteva also is represented by Peter Bicks (pbicks@orrick.com), Kim Goldberg (kgoldberg@orrick.com), Christine Willgoos (cwillgoos@orrick.com), and Jordan Fernandes (jfernandes@orrick.com) of Orrick, Herrington & Sutcliffe LLP, 51 West 52nd Street, New York, NY 10019, (212) 506-5000; Gary Frischling (gfrischling@orrick.com) and Gavin McGimpsey (gmcgimpsey@orrick.com), of Orrick, Herrington & Sutcliffe LLP, 120 Broadway, 5th Floor, Santa Monica, CA 90401, (310) 633-2800; Lauren Drake (ldrake@orrick.com) and Avery Cartwright (acartwright@orrick.com) of Orrick, Herrington & Sutcliffe LLP, 355 S. Grand Avenue, Suite 2700, Los Angeles, CA 90071, (213) 629-2020; Elizabeth Moulton (emoulton@orrick.com) and Robert Reese Oñate (ronate@orrick.com) of Orrick, Herrington & Sutcliffe LLP, 405 Howard Street, San Francisco,

CA 94105, 415-773-5700; and Carly Romanowicz of Orrick, Herrington & Sutcliffe LLP, 222 Berkeley Street #2000, Boston, MA 02116, (617) 880-1800. Corteva is also represented by Todd Vare (todd.vare@btlaw.com) of Barnes & Thornburg LLP, 11 S. Meridian St., Indianapolis, IN 46204, (317) 231-7735, Ronald Cahill (ronald.cahill@btlaw.com), and Heather Repicky (hrepicky@btlaw.com) of Barnes & Thornburg LLP, One Marina Park Drive, Suite 1530, Boston, MA 02210, (617) 316-5312, and Lauren Baker (lauren.baker@btlaw.com) of Barnes & Thornburg LLP, 3340 Peachtree Road NE, Suite 2900, Atlanta, GA 30326, (404) 264-4036.

**Defendants' Counsel**

Inari's Counsel: Inari is represented by Megan E. Dellinger (#5739) (mdellinger@morrisnichols.com) of Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, (302) 658-9200. Inari is also represented by Cameron Clark (cclark@morrisnichols.com) of Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, (302) 658-9200. Inari is also represented by Dimitrios Drivas, Raj Gandesha, John Scheibeler, Hallie Kiernan, Jongtae Lee, and Angelika Kligos of White & Case LLP, 1221 Avenue of the Americas, New York, NY, 10020, (212) 819-8200. Inari is also represented by Robert Isackson, Henry Gabathuler, and Emily Rice of Leason Ellis LLP, One North Lexington Ave. Suite 1200, White Plains, NY 10601 (914) 288-0022. Inari is also represented by Amy Wigmore of Wilmer Cutler Pickering Hale and Dorr LLP, 2100 Pennsylvania Ave NW, Washington, DC 20037 (202) 663-6000, and Joseph Mueller of Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, MA 02109 (617) 526-6000.

## I. ABBREVIATIONS

To avoid repetition and improve readability, the Court and the parties may refer to the following terms using the abbreviations listed below. These abbreviations are used throughout this Joint Pretrial Order.

| Abbreviation | Term |
|---|---|
| Corteva Agriscience | Corteva Agriscience LLC |
| Pioneer | Pioneer Hi-Bred International, Inc. |
| Agrigenetics | Agrigenetics, Inc. |
| Corteva or Plaintiffs | Corteva Agriscience LLC, Pioneer Hi-Bred International, Inc., and Agrigenetics, Inc., collectively |
| Inari USA | Inari Agriculture, Inc. |
| Inari Belgium | Inari Agriculture NV |
| Inari or Defendants | Inari Belgium and Inari USA, collectively |
| ’246 patent | U.S. Patent No. 7,956,246 |
| ’434 patent | U.S. Patent No. 8,575,434 |
| ’441 patent | U.S. Patent No. 9,695,441 |
| ’363 patent | U.S. Patent No. 8,680,363 |
| ’522 patent | U.S. Patent No. 8,283,522 |
| Appendix A Seeds | Seeds of the Asserted PVP Certificates identified on Appendix A to this Pre-Trial Order |
| Appendix B Seeds | Seeds of the Asserted PVP Certificates identified on Appendix B to this Pre-Trial Order |
| Asserted Patents | U.S. Patent No. 8,575,434, U.S. Patent No. 7,956,246, U.S. Patent No. 8,283,522, U.S. Patent No. 8,680,363, U.S. Patent No. 9,695,441, collectively |
| ’378 patent | U.S. Patent No. 8,901,378 |
| PVPA | Plant Variety Protection Act |
| PVP | Plant Variety Protection |
| ATCC | American Type Culture Collection |
| LGC | LGC Standards |

| Abbreviation | Term |
|---|---|
| IE-SCS | Eversole Specialty Crop Services LLC, which is also sometimes referred to as "IE-SCS" |
| VIB | Vlaams Instituut voor Biotechnologie located in Nevele, Belgium |
| Novogene | Novogene (UK) Company LTD located in Cambridge, UK |
| Flagship | Flagship Pioneering, Inc. |
| MTA | Material Transfer Agreement |
| MTAs | MTA signed May 4, 2017 between ATCC and Inari USA; MTA signed July 14, 2019 between ATCC and Inari Belgium; and MTA signed April 22, 2022 between ATCC, Inari Belgium, and Inari USA, collectively |
| 2017 MTA | MTA signed May 4, 2017 between ATCC and Inari USA |
| 2019 MTA | MTA signed July 14, 2019 between ATCC and Inari Belgium |
| PTA-11506 | ATCC-designated seed containing the DP-4114 corn event |
| PTA-11384 | ATCC-designated seed containing the DAS-59122 corn event |
| PTA-11336 | ATCC-designated seed containing the *aad-12* gene, and the DAS-44406 soy event |
| PTA-12006 | ATCC-designated seed containing the DAS-81419 soy event |
| Unasserted Utility Patents | Corteva's U.S. Patents Referencing ATCC Deposit for which Corteva accuses Inari of PVP infringement |

## II. NATURE OF THE ACTIONS AND PLEADINGS

1. This is an action filed by Corteva against Inari for infringement of PVP certificates; infringement of the Asserted Patents; breach of MTAs; violation of Massachusetts General Laws Chapter 93A; and conversion.

2. The PVP certificates presently asserted are set out in Appendix A and Appendix B.

3. The patent claims presently asserted ("Asserted Claims") are:

| **Patent** | **Asserted Claims for § 271(a)** | **Asserted Claims for § 271(b)** | **Asserted Claims for § 271(f)(2)** |
|---|---|---|---|
| '434 patent | 1, 8, 14-15 | 1, 8, 14-15 | 2-6, 9 |
| '246 patent | 12-13 | 12-13 | 4, 10-11 |
| '522 patent | | 1, 12-13 | 2 |
| '363 patent | | 8 | 7, 9 |
| '441 patent | | 1 | |

4. Inari sought a declaratory judgment that it did not infringe any claim of the Asserted Patents, that the Asserted Patents are invalid, that the '378 patent is invalid, that the Asserted PVP Certificates are not infringed, that the Asserted PVP Certificates are invalid, that the Asserted Patents are unenforceable, that the Asserted PVP Certificates are unenforceable, and that Unasserted Utility Patents are unenforceable. *See* D.I. 160.

5. In connection with a planned corporate reorganization, scheduled to close October 1, 2026, Corteva Agriscience has assigned all of its rights in the '246 and '378 patents to Pioneer. Pursuant to Rule 25(c) this action may be continued in the name of all of the original Plaintiffs until such time as the Court on motion orders otherwise. The Parties agree that the Plaintiffs may continue to refer to themselves collectively as "Corteva" throughout the trial and the pleadings and case caption need not change at this time.

**A. Operative Pleadings**

6. The operative pleadings are Plaintiffs' Second Amended Complaint (D.I. 148), Defendants' Answer and Counterclaims to Plaintiffs' Second Amended Complaint (D.I. 160), and Plaintiffs' Answer and Affirmative Defenses to Defendants' Counterclaims (D.I. 297).

7. On April 3, 2026, Corteva moved for partial summary judgment on its claim for breach of MTAs, as well as on Inari's counterclaims and/or affirmative defenses regarding the

Lanham Act, abuse of process, patent invalidity under 35 U.S.C. § 102(a), and PVP invalidity under 7 U.S.C. § 2402. *See* D.I. 534.

8. On April 3, 2026, Inari moved for summary judgment of non-infringement of the Asserted PVP certificates and Asserted Patents. D.I. 537.

9. The Court heard oral argument on the summary judgment motions on May 29, 2026, with the United States attending and participating at the invitation of the Court. D.I. 565. The Court ordered supplemental briefing on certain issues. D.I. 572. Briefing was completed on July 2, 2026.

10. On August 10, 2026, the Court granted Corteva's motion for summary judgment on Inari's counterclaims 14 (Lanham Act) and 16 (abuse of process) and dismissed those claims. D.I. 605.

11. On August 21, 2026, the Court granted Corteva's motion for summary judgment on portions of Inari's counterclaims 1, 2, 4, 5, and 7 and affirmative defenses 2, 5, 8, 11; denied Corteva's motion for summary judgment on counts 18 and 19 (breach of contract); and granted in part and denied in part Corteva's motion for summary judgment as to Inari's affirmative defense 18, and dismissed those defenses and counterclaims consistent with the limitations in the order. D.I. 627.

12. Issues raised in summary judgment motions not yet resolved by the Court remain in dispute.

**B. Claim Construction**

13. The parties agreed to (D.I. 269), and the Court adopted (D.I. 443), the following claim constructions:

| Term | Patent, Claim(s) | Construction |
|---|---|---|
| "flanked by" | '434 patent, cl. 1 | Plain and ordinary meaning, which is joined or connected at the side to |
| "derived from" | '434 patent, cl. 14 | Plain and ordinary meaning, which is formed or developed out of |
| "wherein said sample comprises a nucleotide sequence selected from the group consisting of SEQ ID NO: 27 and SEQ ID NO: 28, or the complement thereof'" | '434 patent, cl. 14 | This language should be interpreted as a Markush group, which is "wherein said sample comprises a nucleotide sequence comprising any of: SEQ ID NO: 27, the complement of SEQ ID NO: 27, SEQ ID NO: 28, or the complement of SEQ ID NO: 28" |
| "linked" | '246 patent, cls. 1, 3 | Plain and ordinary meaning, which is joined or connected |
| "wherein: (a) said flanking region comprises a nucleotide sequence selected from the group consisting of the nucleotide sequence set forth in SEQ ID NO: 19 and the nucleotide sequence set forth in SEQ ID NO: 20" | '246 patent, cl. 1 | This language should be interpreted as a Markush group, which is "wherein (a) said flanking region comprises a nucleotide sequence comprising SEQ ID NO: 19 or SEQ ID NO: 20" |
| "flanked by" | '378 patent, cl. 1 (not asserted) | Plain and ordinary meaning, which is joined or connected at the side to |

14. The Court issued its Claim Construction Order on October 14, 2025 (D.I. 443), construing the following claim terms as relevant to the asserted claims:

| Term | Patent, Claim(s) | Construction |
|---|---|---|
| "DNA construct" | '434 patent, cls. 1, 8 | Plain and ordinary meaning, which is assembly of DNA molecules linked together |
| "corn event DP-004114-3" | '434 patent, cls. 8, 14-15 | "a Cry1F-encoding expression cassette, a Cry34Ab1-encoding expression cassette, a Cry35Ab1-encoding expression cassette, and a pat-encoding expression cassette, located between SEQ ID NO: 27 at the 5' end and SEQ ID NO: 28 at the 3' end" |

| | | |
|---|---|---|
| "a polynucleotide that encodes a protein having aryloxyalkanoate dioxygenase activity" | '522 patent, cl. 1 | Plain and ordinary meaning.<br>A polynucleotide is a polymeric molecule composed of multiple nucleotides. A protein having aryloxyalkanoate dioxygenase activity is a protein with the ability to degrade or diminish the activity of an aryloxyalkanoate herbicide. |
| "plant" / "plants" / "first plant" | '246 patent, cls. 1, 3-4, 10-11<br>'434 patent, cls. 6, 9, 14-15<br>'363 patent, cls. 7-9 | No construction required |

### C. Court Orders Regarding Expert Testimony

15. Corteva moved to strike Inari's Supplemental Invalidity Contentions (D.I. 409), which the Court granted in part and denied in part (D.I. 421) on October 1, 2025. Specifically, the Court granted Corteva's motion relating to Inari's "inequitable conduct defense because it is not pled." (*Id.*) The Court subsequently denied Inari's motion for leave to amend its first amended answer and counterclaims to add four affirmative defenses and three counterclaims relating to improper inventorship, inequitable conduct, invalidity of the PVP certificates, and invalidity of Unasserted Utility Patents (D.I. 519, 520) and Inari's motion for reconsideration (D.I. 531). The parties agree that the following portions of Dr. Silverstone's and Dr. Riley's reports are, accordingly, excluded:

| | |
|---|---|
| Claims 7-9 of the '363 patent are invalid for improper inventorship | • Silverstone Opening Report Section X.C.5 (¶¶ 238-240)<br>• Silverstone Reply Report Section VI.A.6 (¶¶ 89-91) |
| Claim 2 of the '441 patent invalid for improper inventorship | • Silverstone Opening Report Section XI.C.5 (¶¶ 274-275)<br>• Silverstone Reply Report Section VI.A.6 (¶¶ 89-91) |
| Claim 6 of the '522 patent invalid for improper inventorship | • Silverstone Opening Report Section XIII.C.3 (¶¶ 345-349) |

| | |
|---|---|
| | • Reply Report Section VI.B.4 (¶¶ 123-125),<br><br>• Allegations that data relating to the 2009 field trials contradicts any representation made in or during prosecution of the '522 patent (Silverstone Opening Report ¶¶ 315, 356 and Reply Report ¶¶ 101-103 |
| The '522 patent is unenforceable for inequitable conduct | • References to alleged non-disclosure, alleged misrepresentations or contradictory representations in Silverstone Opening Report Section XIII.C.4 (¶¶ 350-353) and Section XIII.C.6 (¶ 358)<br><br>• References to alleged non-disclosure, or alleged misrepresentations or contradictory representations in Silverstone Reply Report Section VI.B.5 (¶ 126)<br><br>• References to alleged non-disclosure of certain alleged material information in ¶¶ 200, 257 and 371 of Dr. Silverstone's Opening Report<br><br>• Allegations that data relating to the 2009 field trials contradicts any representation made in or during prosecution of the '522 patent (Silverstone Opening Report ¶¶ 315, 356 and Reply Report ¶¶ 101-103) |
| Declaration that Unasserted Utility Patents are invalid | • Riley Opening Report Section VI.B-C, ¶¶ 21-32, Section VIII, ¶¶ 60-64, and Section XI, ¶¶ 132-40 |

16. The parties dispute whether Inari's theory that the PVP certificate "varieties were not new under § 2402(a)(1)" was also fully foreclosed by the Court's denial (D.I. 519, 520) of Inari's motion to amend and motion for reconsideration. *See, e.g.* D.I. 564 at 14 n.6. Corteva contends that the following paragraphs of Dr. Riley's reports were excluded by the Court's denial: paragraphs 38, 51-55, and Section IX.B, paragraphs 90-107 of Dr. Riley's opening report and Section V.B, paragraphs 32-61 of Dr. Riley's reply report. Inari disagrees and contends that the

paragraphs of Dr. Riley's expert report identified are properly in the case in support of Inari's Eighteenth Affirmative Defense. The Court denied Corteva's motion to strike Inari's Supplemental Invalidity Contentions as to Inari's theory that the PVP varieties were not new under § 2401(a)(1), D.I. 421, ¶ 2.b, and Corteva did not move to dismiss Inari's Eighteenth Affirmative Defense, *see* D.I. 174. The Court recognized the parties' dispute but did not resolve it on summary judgment, instead leaving it to "trial preparation and Rule 37." *See* D.I. 627 at 18 n. 14.

17. Corteva also moved to strike portions of the expert report of Marc Zenner, Ph.D. D.I. 471. The Court granted the motion to strike portions of the Zenner report on March 2, 2026, excluding paragraphs 20, 65-74, 82-84, and 86-96 of the Zenner report. D.I. 519, 520. On April 3, 2026, in conjunction with its motion for summary judgment, Corteva filed a Rule 702 Motion to limit or exclude certain opinions of Inari's experts Dr. Aron Silverstone, Dr. Raymond Riley, Dr. Barry Goodwin, and Dr. Marc Zenner. D.I. 534. The Court denied Corteva's motion under Rule 702 as to Dr. Zenner as moot in light of its dismissal of Inari's Lanham Act and abuse of process counterclaims. D.I. 605.

18. The Court granted Corteva's motion as to Dr. Silverstone and Dr. Riley. D.I. 627.

19. On April 3, 2026, in conjunction with its motion for summary judgment, Inari filed a Rule 702 Motion to limit or exclude certain opinions of Corteva's experts Dr. Christopher A. Vellturo, Dr. Susan R. Wessler, Dr. Stephen Dellaporta, and Dr. Mark A. Mikel. D.I. 538.

20. On June 29, 2026, the Court entered an order denying without prejudice Inari's Rule 702 Motion regarding Corteva's experts testifying on Inari's mental state. D.I. 582, 583, 584.

21. On August 21, 2026, the Court entered an order granting Corteva's motion to preclude any Inari expert from opining on the law. D.I. 627.

22. Issues raised in the Rule 702 briefing but not yet resolved by the Court remain in dispute.

**D. Issues to be Resolved at Pretrial Conference**

23. The parties respectfully request that the Court resolve at least the following issues at the Pretrial Conference:

- How the jury will be instructed with respect to permitted "access" to deposited seeds. The parties' proposed final jury instruction on this issue is No. 2.4, Patents on Seeds Generally.
    - Corteva's position: The parties' positions are detailed in the Final Jury Instructions, No. 2.4. Generally, Corteva believes the jury should be instructed consistent with the "background principles" provided in the Court's summary judgment order, D.I. 627 at 12-13.
    - Inari's position: Inari's proposed edits to the jury instruction sets forth Inari's position.
- Corteva's proposed stipulation: "The parties will not offer arguments or evidence about the meaning, purpose, or scope of Rule 1.808, 35 U.S.C. § 112, or the Budapest Treaty that are inconsistent with or go beyond the Court's jury instructions and forthcoming summary judgment rulings."
    - Corteva's position: Inari has refused to stipulate to this language, stating that it cannot "agree in a vacuum without the benefit of the Court's orders." As described immediately above, it is Corteva's position that it is the role of the Court to instruct the jury on the law, including the meaning, purpose, and scope of Rule 1.808, 35 U.S.C. § 112, or the Budapest Treaty.
    - Inari's position: Inari cannot agree to the stipulation in a vacuum without the benefit of the Court's final orders on summary judgment. Further, Inari is entitled to present facts relating to Rule 1.808, 35 U.S.C. § 112, or the Budapest Treaty, including that the asserted patents had seed deposits made under certain rules and for the purposes of § 112. Corteva's proposed stipulation would prevent Inari from arguing the basic facts of the case that have been the cornerstone of Inari's defense since the inception of this case.
- Whether Inari's theory that the PVP certificate "varieties were not new under § 2402(a)(1)" was fully foreclosed by the Court's denial (D.I. 519) of Inari's motion to amend and motion for reconsideration. *See, e.g*. D.I. 564 at 14 n.6.
    - Corteva's position: Inari's theory that Corteva's "varieties were not new under § 2402(a)(1)" does not remain in the case as part of its Eighteenth

Affirmative Defense. D.I. 555 at 25. The Court denied Inari's motion for leave to add its PVP invalidity counterclaim, citing Inari's lack of diligence in seeking discovery on certain theories of PVP invalidity. D.I. 519 at 13-14. The Court also denied Inari's motion for reconsideration. D.I. 531. As Corteva explained in opposition to Inari's motion for reconsideration, Inari failed to develop evidence in support of this theory. This failure prevented those theories from advancing, whether as affirmative defenses or counterclaims. D.I. 529 at 4-6. Inari's MIL No. 3 highlights this failure. Inari's MIL No. 3 is nothing but an attempt to excuse its evidentiary failures through an adverse inference.

- Inari's position: Inari's Eighteenth Affirmative Defense pleading invalidity under § 2402 was in Inari's answers. *See* D.I. 106 and D.I. 160. Corteva did not move to dismiss that affirmative defense. Inari's served supplemental invalidity contentions on September 8, 2025, asserting an invalidity argument under § 2402(a)(1). Corteva moved to strike certain of Inari's supplemental invalidity contentions including under § 2402(a)(1). D.I. 409; D.I. 410. The Court denied Corteva's motion to strike Inari's contentions under § 2402(a)(1). D.I. 421. Inari subsequently sought to amend its counterclaims to assert an affirmative claim for invalidity of the Asserted PVP Certificates under § 2402(a)(1). The Court denied Inari's motion to amend its pleadings to add a counterclaim for declaration of PVP invalidity (count 18) contending that Inari was not diligent in moving to amend its pleadings. D.I. 519. Corteva did not move to dismiss, and the Court did not strike, Inari's Eighteenth Affirmative Defense in denying Inari the ability to amend its counterclaims. D.I. 519. "When a party loses the right to assert a counterclaim for procedural reasons, this does not necessarily mean that an affirmative defense under the same theory is lost as well." *Silicon Graphics, Inc. v. ATI Techs., Inc.*, C.A. No. 06-cv-611-bbc, 2011 WL 322664, at *3-4 (W.D. Wis. Jan. 31, 2011) (citing *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 840 (Fed. Cir. 2009)). Corteva has provided no authority supporting its position.

- Whether the Court's order granting "Corteva's motion for summary judgment on Inari's counterclaims 1, 2, 4, 5, and 7 and affirmative defenses 2, 5, 8, 11 (anticipation)" (D.I. 627) fully resolves Inari's anticipation counterclaims and affirmative defenses.

  - Corteva's position: Corteva moved for summary judgment on "Inari's sole anticipation argument for the '378, '434, '246, '363, and '441 patents." (D.I. 535 at 18) The Court recognized the scope of Corteva's motion ("Corteva moves for summary judgment on Inari's anticipation by prior public use defense") and granted Corteva's motion ("[W]e enter judgment in Corteva's favor on Inari's public use defense under its counterclaims 1, 2, 4, 5, and 7 and affirmative defenses 2, 5, 8, 11.") D.I. 627 4, 8. Corteva's motion for summary judgment on Inari's counterclaim 7 fully resolved Inari's

anticipation counterclaim regarding the '378 patent. Corteva's motion identified "Inari's sole anticipation argument" for the '378 patent as prior public use and cited the entirety of Inari's invalidity contentions regarding anticipation of the '378 patent. (D.I. 535 at 18 (citing JA26392, JA26399-40, JA26413-14, JA26418-19, JA26423)) Those contentions do not reference the "Sindt reference." Indeed, there is no "Sindt reference in the case." The only reference to "Sindt" is in Dr. Silverstone's materials considered list in his reply export report. (JA3491) The reference is never cited in the body of Dr. Silverstone's report but *seems* to relate to a heifer field study that Dr. Silverstone discusses in a single paragraph of his reply report. (JA3398) That paragraph suggests only that a study was performed in 2002-2003—less than one year before the application that resulted in the '378 patent was filed. And like the other field trials addressed in Corteva's summary judgment motion, the paragraph does not explain how the study was "public" or "commercially exploited" the patented invention. Nor did Inari suggest otherwise in response to Corteva's summary judgment motion.

  - Inari's position: Inari's expert opined that the '378 patent was invalid for prior public use on two bases (1) the regulatory field trials and (2) the trials and animal feeding disclosed the Sindt reference. Corteva had the opportunity to cross-examine Dr. Silverstone on the opinions raised in his reports and chose not to ask Dr. Silverstone questions on the Sindt study. Corteva did not seek summary judgment on public use of the '378 patent based on the Sindt reference. Accordingly, it is inappropriate to say that all anticipation grounds for Inari's '378 invalidity counterclaim (Count VII) have been dismissed.

- Whether the facts and opinion relating to Inari's theory that the Unasserted Variety Patents are unenforceable should be presented to the jury. The parties agree that Inari's theory that the Unasserted Variety Patents are unenforceable is equitable and should be decided by the Court.

  - Corteva's position: There is no need for the jury to make any fact findings about enforceability of the Unasserted Variety Patents. This is an equitable defense that should be tried to the Court. Accordingly, there is no basis for Inari or Dr. Riley to present facts or opinion to the jury to support that theory for the Unasserted Variety Patents. Because Paragraphs 108-131 of Dr. Riley's Opening Report and Paragraphs 62-65 of Dr. Riley's Reply Report are exclusively directed to the Unasserted Variety Patents, they are not relevant to any claim or issue to be decided by the jury.

  - Inari's position: The alleged underlying facts such as the lack of access and statements regarding access in the patents and patent deposit documents are evidence that will be before the jury on other issues, non-infringement, and are identical to facts on lack of access to the Asserted Patents. Whether the jury's findings of lack of access, written description and enablement render the Unasserted Utility Patents unenforceable would ultimately be a question

for the Court. Because of the overlap of evidence, the jury should consider the underlying factual questions to avoid any inconsistencies.

- Whether third-party beneficiary status is a question of law or fact for the jury to determine, and if a question of law, whether Corteva is a third-party beneficiary of the MTAs.

    - Corteva's position: Corteva does not rely on "inferences" or "surrounding facts" but rather the plain terms of the MTAs and the undisputed roles of Corteva as the party depositing seeds and Inari as the party receiving the seeds. Because there are no factual disputes to be resolved by a jury, the Court should decide this issue pre-trial. The Court has acknowledged as much in its summary judgment opinion, stating that Corteva "has to show as a matter of law that it is a third-party beneficiary of the MTAs such that it can assert breach ...." D.I. 627 at 9. Consistent with that same order, D.I. 627 at 10-11, "Inari did not identify any dispute specifically about whether Corteva is a third-party beneficiary under the MTAs," and the Court should find that Corteva is a third-party beneficiary for the reasons explained in Corteva's summary judgment motion. *Pierce Assocs. v. Nemours Found.*, 865 F.2d 530, 535 (3d Cir. 1988) (whether the terms of a contract establish a third-party beneficiary relationship is a question of law); *Freeman v. Doubletree*, 90 Va. Cir. 182, 182 (2015) (determining whether the terms of a contract establish a third-party beneficiary relationship as a matter of law).

    - Inari's position: Under Virginia law, the question of third-party beneficiary status is a question of fact to be decided by the jury. *See Ward v. Ernst & Young*, 246 Va. 317, 332 (1993) (finding that the evidence raised a jury question of whether the parties intended to benefit the plaintiff and holding that "the trial court erred in withholding that question from the jury"). Since Corteva's showing rests on inferences from the MTAs and the surrounding facts, it should go to the jury. Corteva proposed a jury instruction on Third-Party Beneficiary status on August 19 per the Court's standing procedures.

- How the jury will be instructed with respect to the exemption under § 2544 and its application to export.

    - Corteva's position: The jury should not be instructed on the research exemption under § 2544 as this exemption does not apply to export. As set forth in more detail in Corteva's opposition to Inari's motion for summary judgment, the research exemption applies only to "use and reproduction of a protected variety"—not to the export of a protected variety. D.I. 557 at 9. It is undisputed that Inari exported Corteva's protected varieties abroad. This conduct does not fall within the scope of the research exemption as a matter of law.

    - Inari's position: Inari's proposed jury instruction sets forth Inari's position. The research and breeding exemption applies to any acts of infringement

under 7 U.S.C. § 2541. Section 2541 lays out the acts of infringement "[e]xcept as otherwise provided in this subchapter." 7 U.S.C. § 2541(a). Section 2544 is within the same subsection and provides that research and breeding "shall not constitute an infringement of the protection provided ***under this chapter***." 7 U.S.C. § 2544 (emphasis added). The statutory history made clear that research and breeding was intended to be an exemption to all acts of infringement.

- Whether the 2022 MTA supersedes the 2017 and 2019 MTAs with respect to purchases made under the 2017 and 2019 MTAs. D.I. 555 at 10-11.

  - Corteva's position: The language of the 2022 MTA is clear that it "supersedes all previous agreements between ATCC and Recipient relating to the ATCC material," which would cover materials obtained under the 2017 and 2019 MTAs. Regardless, all of the 2017, 2019, and 2022 MTAs prohibit transfers and commercial use.

  - Inari's position: Under New York law governing the 2022 MTA, a merger clause in a later agreement does not cause the terms of the later agreement to have retroactive effect. Absent an agreement by the parties to the contrary, a merger clause does not retroactively revoke the terms of an earlier agreement. *Primex Int'l Corp. v. Wal-Mart Stores*, 89 N.Y. 2d 594, 599-600 (1997) (merger clause in 1995 agreement that did not provide for right of arbitration did not retroactively render arbitration clauses in 1990 and 1993 agreements unenforceable); *see also Air Support Int'l, Inc. v. Atlas Air, Inc.*, 54 F. Supp. 2d 158, 166 (E.D.N.Y. 1999) (clause that later agreement "supersedes any and all previous Agreements between the parties" did not waive, release or relinquish legal claims that arose out of prior agreements); *Berkshire Bank v. Pioneer Bank*, 2021 WL 2763120, at *1 (N.Y. Sup. Ct. July 1, 2021) (superseding later agreement will not discharge obligations created under a prior agreement unless evidence shows this was intended by the parties). There is no evidence in the 2022 MTA or elsewhere that ATCC and Inari intended the 2022 MTA to have retroactive effect and apply to Inari's pre-2022, completed purchases. Corteva has not shown any evidence to support the claim that the 2022 MTA is applicable to Inari's purchases of Corteva patent deposits.

- Whether Corteva seeks only remedies that sound in equity for its Corteva's Mass. Gen. Law Ch. 93A claim, and accordingly whether that claim should be tried by the jury or the bench.

  - Corteva's position: Corteva seeks monetary damages, not only equitable relief, for Inari's violation of Chapter 93A. The report of Corteva's damages expert, Dr. Christopher Vellturo, makes this clear; Dr. Vellturo opines that Corteva suffered at least $216.4 million in financial harm from Inari's conduct, in addition to difficult to quantify economic loss in connection with "the loss of control of its germplasm, the creation of

competing versions of Corteva's events, and the additional events Inari acquired but has not formally incorporated into its commercialization plans." He further quantifies Inari's benefits from its deceptive conduct as approximately [redacted]. It is for the jury to decide the damages Corteva proves it is entitled under Chapter 93A, but regardless, the remedies Corteva seeks do not sound only in equity. Because Corteva's Chapter 93A claim includes a claim for deception and for actual damages, it is for the jury, not the bench. *See Full Spectrum Software, Inc. v. Forte Automation Systems, Inc.*, 858 F.3d 666, 676 (1st Cir. 2017) (Chapter 93A claim for deception "appear[s] to be a claim that is analogous to 18th-century actions at law, such as fraud, deceit, or misrepresentation"). Inari's attack on the basis for Dr. Vellturo's calculation of Chapter 93A damages is incorrect for the same reasons set out in Corteva's opposition to Inari's Rule 702 motion (*see* D.I. 557 at 29-31) and does not suffice to wrest consideration of Corteva's monetary damages for Inari's unfair competition from the jury.

- Inari's position: Whether a plaintiff is entitled to a jury trial on a claim under Mass. Gen. Law Ch. 93A depends on a three-factor inquiry: (i) whether the plaintiff's cause of action is analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century; (ii) whether the remedy sought is legal or equitable in nature; and (iii) whether Congress has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder, such as a bankruptcy court, which is applied only if the first two inquiries indicate that a plaintiff has a right to a jury trial. *Full Spectrum Software, Inc. v. Forte Automation Systems, Inc.*, 858 F.3d 666, 675-76 (1st Cir. 2017). The First Circuit has held that the second factor (nature of the remedy sought) is more important than the first factor (whether the cause of action is analogous to 18th century common law causes of action). *Id.* at 675.

  Here, with respect to Corteva's Ch. 93A claim, Corteva's damages expert, Dr. Vellturo, estimates the amount of "unjust enrichment Inari has gained through its alleged deceptive trade practices," which "violate Massachusetts state law," and describes this amount as "based on Inari's ability to substantially accelerate its product development timelines by leveraging Corteva's protected seeds." Vellturo Op. Rpt ¶¶ 15, 223-228. Corteva also seeks injunctive relief for Inari's alleged violation of Mass. Gen Law Ch. 93A. *Id.* at ¶¶ 233-243. Restitution for unjust enrichment and injunctive relief are both equitable forms of relief. *See, e.g., Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 413 F.3d 215, 233-35 (1st Cir. 2005) (unjust enrichment is "equitable stopgap" for inadequate remedies at law mandating that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other") (citations omitted); *Vertical Biometrics, LLC v. Plex Research, Inc.*, 1884 CV 00648-BLS1, 2018 Mass. Super. LEXIS 776, * 28 (Mass. Super. Dec. 28, 2018) ("An injunction is a form of equitable relief . . . ."). While Dr. Vellturo purports to identify "actual damages" suffered by Corteva from Inari's

alleged violation of Mass. Gen. Law Ch. 93A, as explained in Inari's pending *Daubert* motion against Dr. Vellturo, Dr. Vellturo's purported "actual damages" are, in reality, future prospective damages that are not reasonably certain and therefore not cognizable as actual damages. D.I. 540 at 33-34. Therefore, Corteva is not entitled to a jury trial on its Mass. Gen Law Ch. 93A cause of action. *Hebert v. Vantage Travel Serv.*, 17-cv-10922-DJC, 2021 U.S. Dist. LEXIS 114398, *16-18 (D. Mass. June 18, 2021) (granting motion for bench trial on Ch. 93A claim where plaintiff sought restitutionary equitable relief in form of a refund).

- How the parties may handle evidence that is relevant to both equitable and non-equitable issues.

  - Corteva's position: Equitable issues—including unclean hands, legal estoppel, and the like—should be tried to the Court. Evidence relevant only to equitable issues should not be presented to the jury. Corteva expects that Inari will attempt to introduce evidence relevant only to equitable issues and proposes that (1) disputes over exhibits be raised through the nightly disclosure process and (2) Inari approach the bench for a sidebar before eliciting testimony that goes to equitable issues so that the parties can resolve any objections and avoid prejudicing the jury.

  - Inari's position: Evidence that is relevant to both equitable and non-equitable issues shall be presented to the jury, subject to rulings on evidentiary objections and motions in limine.

- What law governs the 2017 MTA and 2019 MTA.

  - Corteva's position: Under Delaware choice of law rules, Delaware law governs the 2017 and 2019 MTAs. *Travelers Indem. Co. v. CNH Indus. Am., LLC*, 191 A.3d 288 (Del. 2018). The 2017 and 2019 MTAs do not include a choice of law provision, and Corteva has not identified any relevant differences between Delaware and Virginia law. *Compare NAMA Holdings, LLC v. Related World Market Center, LLC*, 922 A.2d 417, 434 (Del. 2007) (characterizing a third-party beneficiary with enforceable rights under a contract to be one who the "parties to the contracted intended to confer a benefit upon"—as opposed to an incidental third-party beneficiary) *with Thorsen v. Richmond Society for the Prevention of Cruelty of Animals*, 292 Va. 251, 269-70 (2016) (requiring a third-party beneficiary to be an "intended" beneficiary between the contracting parties to have enforceable rights) (citing *Copenhaver v. Rogers*, 238 Va. 361(1989)). Accordingly, Delaware courts would apply Delaware law to the 2017 and 2019 MTAs. *Hertz Global Holdings, Inc. v. ACE American Insurance Co.*, No. N22C-05-130 SKR CCLD, 2024 WL 4668435, at *4 (Del. Oct. 9, 2024) ("In the absence of a choice of law provision and conflict between Delaware law and the law of another state, the Court applies Delaware law."). Corteva was unable to find the quoted language Inari cites for its representation of

Delaware law in the case it cited: *Triple C Railcar Serv., Inc*. Instead, that case states that a third-party "may enforce a contractual promise in his own right and name if the contract was *made for his benefit*"—which, according to Inari, is the same standard Virginia uses. *Triple C Railcar Serv., Inc. v. City of Wilmington*, 630 A.2d 629, 633 (Del. 1993) (emphasis added); *see* Va. Code Ann. § 55.1-119 (permitting suit by a third party to whom the "covenant or promise" was "made" to "benefit"). As such, Inari lacks a basis for which to assert that a conflict of laws issue exists here.

- Inari's position: Sitting in Delaware, the Court applies the most significant relationship test where there is no choice-of-law provision. Restatement (Second) of Conflict of Laws § 188 (1971); *Automated Precision, Inc. v. Pare*, 631 F. Supp. 3d 185, 196 n.2 (D. Del. 2022). The facts of this case point to Virginia as the appropriate law: ATCC sits in Manassas and the MTAs were formed there; the deposits were held there and samples furnished from there; and the 2019 MTA sends disputes to the Eastern District of Virginia. Where negotiation and performance are in the same state, that state's law ordinarily governs. Restatement (Second) of Conflict of Laws § 188(3). The laws of Virginia and Delaware differ on the question of third-party beneficiary status. Under Virginia law, the right to sue is statutory and requires a promise "made for the benefit" of the nonparty. Va. Code Ann. § 55.1-119. The nonparty must prove both contracting parties "clearly and definitely intended" to benefit it. *Copenhaver v. Rogers*, 238 Va. 361, 367 (1989); *Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 63 (2007). In contrast, Delaware asks only whether the benefit was "a material part of the contract's purpose." *Triple C Railcar Serv., Inc. v. City of Wilmington,* 630 A.2d 629, 633 (Del. 1993).

- Whether Corteva should be permitted to add Ignacio Martinez to its witness list and call Mr. Martinez in its case-in-chief.

    - Corteva's position: Mr. Martinez has consistently been included as a "will call" witness on Inari's witness list, and Corteva has affirmatively designated deposition testimony for Mr. Martinez from the outset. Corteva's witness list also reserved the right to call any witness listed on Inari's witness list. In light of Inari's refusal to agree to language in the Pretrial Order allowing parties to call witnesses who are included on the other party's witness list, Corteva re-reviewed its witness list and added Mr. Martinez. There is no surprise or prejudice to Inari.

    - Inari's position: The parties agreed to exchange witness lists on July 29, 2026. As part of that exchange, Corteva did not identify Mr. Ignacio Martinez as a may call or will call witness. Inari identified Mr. Martinez as a will call witness. On August 31, 2026, Corteva added Mr. Martinez to its witness list. Corteva admits that it added Mr. Martinez after Inari declined to allow Corteva to call any witness on Inari's list that Corteva had not identified on its own witness list. There is no basis to allow Corteva to add

Mr. Martinez to its witness list nor did Corteva explain what evidence Mr. Martinez would be necessary to elicit in Corteva's case-in-chief. Corteva presumably does not need Mr. Martinez in its case or it would have identified Mr. Martinez at the appropriate time under the parties' agreement.

- What version of the Federal Rule of Evidence 1006 PVP summary should be presented to the jury.

  - Corteva's position: Corteva's proposed FRE 1006 PVP summary is attached as **Exhibit 19**. Corteva objects to Inari's inclusion of the Deposit Form, Certificate of Deposit, and Specification Citations Referencing ATCC Accession Nos. columns in the Rule 1006 Summary of Corteva's PVP Certificates. Inari's proposed summary does not satisfy the purpose of Rule 1006 because the Deposit Form, Certificate of Deposit, and Specification Citations Referencing ATCC Accession Nos. columns do not prove the content of any record or contain any substantive contents or facts, and instead merely include citations to documents that are included on Inari's trial exhibit list or provide information that is cumulative (e.g., U.S. patent specification citations when the U.S. patent number is already provided in the Rule 1006 summary). Moreover, Inari has not explained how these columns are relevant to any party's claim or defense or are helpful to the jury beyond merely asserting that they are "relevant to Inari's non-infringement arguments on the Asserted PVP Certificates." Additionally, Inari's proposed Rule 1006 Summary of Corteva's PVP Certificates contains inaccuracies relating to the Deposit Type of several Asserted PVP Certificates, which are corrected in Corteva's proposed Rule 1006 Summary.

  - Inari's position: Inari's proposed FRE 1006 PVP summary is attached as **Exhibit 20**. Inari proposed during the pretrial exchange process, the addition of columns including the Deposit Form, Certificate of Deposit, and Specification Citations Referencing ATCC Accession Nos. for the Unasserted Utility Patents. These columns are relevant to Inari's non-infringement arguments on the Asserted PVP Certificates, including Inari's arguments that Corteva authorized the sale of the ATCC patent deposits Corteva accuses of infringing the Asserted PVP certificates. The inclusion in the summary will streamline the presentation to the jury given the voluminous record in this case.

## III. JURISDICTION

24. This is a civil action arising under*, inter alia*, the patent laws of the United States, including 35 U.S.C. § 271, and the plant variety protection laws of the United States, including 7 U.S.C. §§ 2402, 2483, and 2541. This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over Corteva's state law causes of action pursuant to 28 U.S.C. § 1367 because, *inter alia*, they form part of the same case or controversy.

25. The parties do not contest personal jurisdiction or jurisdiction over the subject matter of Corteva's claims.

26. Venue is proper under 28 U.S.C. §§ 1391(a) and 1400(b) as to Inari USA and under 28 U.S.C. §§ 1391(b) and 1400(b) as to Inari Belgium. Venue is not disputed by any party.

## IV. STATEMENT OF UNCONTESTED FACTS

27. The parties stipulate to and admit the facts listed in the Joint Statement of Uncontested Facts attached as **Exhibit 1**.

28. These proposed stipulated facts require no proof at trial. The Joint Statement of Uncontested Facts will be admitted as a joint exhibit at trial and may be published to the jury. A party, with the consent of the Court, may read any or all of the uncontested facts to the jury. Time spent by a party reading facts on **Exhibit 1** into the record will be charged against that party.

> a) Corteva's position: While a party may choose to read uncontested facts to the jury if it wishes (with time charged against that party as set forth above), it should not be required to do so. The uncontested facts reflect facts as to which there is no dispute, so the parties can understand them to have already been proven and treat them as such in testimony and argument. The jury will then have the full set of facts to which the parties have agreed at its disposition for deliberations. Inari's suggestion that only undisputed facts read to the jury would be included in the exhibit provided to the jury would destroy the efficiencies created by the parties agreeing to those facts, created administrative burdens in tracking, and potentially create unanticipated gaps in the record.
>
> b) Inari's position: The uncontested facts shall require no proof at trial and will become part of the evidentiary record in this case once read to the Court and jury. Any party, without prior notice to the other parties, may read any or all of the uncontested facts to the Court and will be charged the time accordingly. Courts in the District of Delaware have required uncontested facts be read into the record to be part of the evidentiary record. *See, e.g.*, *Power Integrations Inc. v. Fairchild Semiconductor International*

> *Inc., et. al.*, Case No. 1-08-cv-00309, D.I. 982 at 3 (D. Del. Oct. 25, 2018) (requiring uncontested fact be read into the record and denying request to admit as an exhibit). Allowing the admission of the uncontested facts as an exhibit without requiring that they be read to the jury creates the risk that the jury may give greater weight to the facts in the exhibit than the facts heard at trial only because they are provided as an exhibit. To avoid the risk of prejudice, the facts should be treated as any other facts presented during the course of trial and the jurors must rely on their memories of the facts as provided in the proposed jury instructions. In addition, allowing the document to be an exhibit without more includes in the record facts that the jury is presumed to know, but that the parties have no way of knowing if the jury actually saw or considered.

## V. ISSUES OF FACT THAT REMAIN TO BE TRIED

29. Corteva's Issues of Fact That Remain to be Tried is attached as **Exhibit 2**.

30. Inari's Issues of Fact That Remain to be Tried is attached as **Exhibit 3**.

## VI. ISSUES OF LAW THAT REMAIN TO BE TRIED

31. Corteva's Issues of Law That Remain to be Tried is attached as **Exhibit 4**.

32. Inari's Issues of Law That Remain to be Tried is attached as **Exhibit 5**.

## VII. EXHIBITS

33. Corteva's list of exhibits that it may offer at trial and Inari's objections thereto, except demonstrative exhibits and exhibits used solely for impeachment, is attached as **Exhibit 6**. Corteva's trial exhibits will be identified with PTX numbers.

34. Inari's list of exhibits that it may offer at trial and Corteva's objections thereto, except demonstrative exhibits and exhibits used solely for impeachment, is attached as **Exhibit 7**. Inari's trial exhibits will be identified with DTX numbers.

35. A list of joint exhibits is attached as **Exhibit 8**. Joint trial exhibits will be identified with JTX numbers.

36. Statements from any request for admission responses, any interrogatory responses, any stipulation, or admissions in pleadings may be read at trial, even outside of use during direct

or cross-examination. Time spent by a party reading any such statements into the record will be charged against that party.

37. Subject to the remaining provisions of this Order, no party may add to its exhibit list or use at trial an exhibit not present on its list absent stipulation or order of the Court upon a showing of good cause. However, any party may use an exhibit that is listed on the other side's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted, may be used equally by each party, subject to any limitations as to its admission.

38. If any party removes or otherwise withdraws an exhibit from its exhibit list, the other side may amend its exhibit list to include that same exhibit. The parties also agree that the opposing party may make objections to such exhibit, other than an objection based on untimely listing.

39. Any description of a document on an exhibit list is provided for convenience only and shall not be used as, or construed to be, an admission or evidence regarding the listed document or any other listed document.

40. Exhibits to be used solely for impeachment need not be included on the lists of trial exhibits or disclosed in advance of being used at trial. Such exhibits used solely for impeachment and not included on an exhibit list may not be admitted into evidence.

41. Complete legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in circumstances in which it would be unfair to admit the copy in lieu of the original. Legible copies of U.S. patents and PVP certificates and the contents of the Patent and Trademark

Office file histories may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections that might be made to the admissibility of certified copies.

42. All exhibits shall be pre-marked with a stamp on the first page, using the following labels and containing the following prefix identifiers:

a. Corteva's Exhibits: PTX (beginning with PTX-XXXX);

b. Inari's Exhibits: DTX (beginning with DTX-XXXX);

c. Joint Exhibits: JTX (beginning with JTX-XXXX).

43. The parties will exchange stamped and paginated trial exhibits on September 16, 2026.

44. In the case of trial exhibits that have been previously marked as a deposition exhibit, to remove duplicates and improve legibility of the exhibits used at trial, the parties agree that the trial exhibit shall be treated as identical to the indicated deposition exhibit regardless of whether it bears a deposition exhibit sticker, unless a genuine question is raised as to whether the trial exhibit and deposition exhibit are identical. The parties also agree that two exhibits that are identical (notwithstanding different Bates numbers) shall be treated as identical, unless a genuine question is raised as to whether the exhibits are identical.

45. The parties agree that a document is *prima facie* genuine and authentic if it is (a) produced in this case from a party's files and on its face appears to have been authored by an employee, officer, or agent of that party; (b) produced by a third party and appears on its face to have been authored by an employee, officer, or agent of a party; (c) produced by ATCC and appears on its face to have been authored by an ATCC employee, officer, or agent; (d) produced by IE-SCS and appears on its face to have been authored by an IE-SCS employee, officer, or agent; (e) published by the United States Patent and Trademark Office; (f) published by the Plant Variety

Protection Office; or (g) produced in this case from a party's files or a third party's files that was received from a third party and on its face there are no indicia of unauthenticity. For the avoidance of doubt, a "party" means Corteva or Inari. The parties reserve the right with respect to individual documents to adduce proof to the contrary or to require that the offering party provide authenticating evidence if the opposing party has a reasonable basis to believe the document is not authentic and if an appropriate objection was made by the opposing party on the exhibit lists attached to this Order. This stipulation shall not be deemed or interpreted to be a waiver of any other objections a party may have or a stipulation that any document is admissible in evidence. The parties reserve the right to object to the introduction into evidence of the documents and files referenced in the preceding paragraph (in whole or in part) on all other grounds, including the admissibility of these documents for reasons other than challenging their authenticity.

46. No exhibit will be admitted unless offered into evidence through a witness, unless otherwise agreed to by the parties or ordered by the Court. Exhibits may be introduced via video deposition testimony subject to the parties' objections and the Court's rulings on admissibility. A party may move to admit exhibits into evidence during a witness's examination and may publish them once the exhibit has been admitted. The parties may also display unobjected-to documents during video plays of deposition testimony. Should a party inadvertently fail to formally move an exhibit into evidence at the close of the witness's testimony, the parties agree that such exhibits may be moved into evidence, subject to objection, promptly thereafter. Exhibits that are offered into evidence at trial and as to which there are no objections shall be received in evidence by operation of this Order, without any need for further foundation testimony, provided it is used with a witness competent to testify about it. Except for exhibits used during opening statements or for impeachment, exhibits

may not be published, displayed, or otherwise shown in court until after they have been admitted into evidence. Once admitted, counsel may publish exhibits without requesting to do so.

47. The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible. Each party reserves the right to object to the relevance of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered. Moreover, the parties have included certain exhibits on their lists that they may seek to introduce in rebuttal to the other side's claims or defenses (*e.g.*, infringement, invalidity, etc.) including non-jury claims and defenses. By including a document on its exhibit list, neither party concedes that the exhibit is relevant to the issues that are to be decided, including by the jury.

48. No party shall comment or argue to the jury that the other side had a document on its exhibit list but did not introduce it into evidence.

49. The parties acknowledge that certain anticipated trial exhibits may not be feasible to show to a witness and/or provide to the jury in paper form, including, but not limited to, voluminous spreadsheets, videos, and product samples. Such exhibits may be initially presented to a sponsoring witness via a computer display prior to a party seeking their admission and publication to the jury, and such exhibits will be provided to the jury on a laptop or USB drive.

50. With regard to voluminous spreadsheets, to facilitate review of such exhibits by the jury, the parties agree that they may under Federal Rule of Evidence 1006 create a summary of the portions of such trial exhibits shown to the jury, which shall be given the same trial exhibit number, with the suffix "A", although the parties must agree in advance to such a summary. The parties will exchange Rule 1006 summaries no later than 5:00 p.m. on August 31, 2026.

51. On or before September 22, 2026, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

## VIII. WITNESSES

52. Corteva's list of the names of the fact and expert witnesses that it intends to call at trial is attached as **Exhibit 9**. Corteva further reserves the right to call an Inari document custodian for the sole purpose of authenticating documents, if necessary.

53. Inari's list of the names of the fact and expert witnesses that it intends to call at trial is attached as **Exhibit 10**. Inari further reserves the right to call a Corteva document custodian for the sole purpose of authenticating documents, if necessary.

54. The parties will work cooperatively to stipulate to the authenticity of documents or identify a witness to authenticate documents, if necessary, and will make all efforts to limit the burden on witnesses associated with authenticating the documents.

55. The inclusion of a witness on a party's witness list does not require the party to call that witness to testify and does not imply or establish that the party has the power to compel the live testimony of that witness or to make that witness available to the opposing party. Any witness not properly identified by a party on its witness list will be precluded from testifying, absent good cause shown. The following shall be considered good cause: (1) one or more additional witnesses whose testimony is necessary to establish authenticity or admissibility of any trial exhibit, if the evidentiary status of that exhibit is challenged by an opposing party; and (2) any witness solely for impeachment purposes.

56. A party shall promptly notify the opposing party of any change to the identification of witnesses or the anticipated order of witnesses.

57. The parties agree that fact witnesses who have not yet testified will be sequestered for the testimony of other fact witnesses except for any fact witness identified as a corporate representative under FRE 615. Fact witnesses who have not yet testified shall not review the transcripts of the trial testimony of other fact witnesses. The parties agree that expert witnesses need not be sequestered.

58. Except as permitted under D. Del. LR 43.1 or by express permission of the Court, once tendered for cross-examination, no witness shall communicate with any other person regarding the substance of the witness's testimony until such time as the cross-examination is concluded. If the witness will be recalled to the stand to testify later in the trial, the witness may speak with counsel after completing the current examination and leaving the stand, and before returning to the stand for the later testimony.

59. The parties agree that each fact witness will be called to the stand live only once during the jury trial absent order of the Court. The parties agree that should a witness be called live during the opposing party's case, the witness will be called as an adverse direct and the party whose witness it is shall be permitted to offer a direct examination not limited to the topics of the opposing party's adverse direct.

### A. Deposition Designations

60. The deposition testimony that Corteva may offer into evidence, together with Inari's objections and counter-designations thereto and Corteva's counter-counter-designations, is identified in **Exhibit 11**.

61. The deposition testimony that Inari may offer into evidence, together with Corteva's objections and counter-designations thereto and Inari's counter-counter-designations, is identified in **Exhibit 12**.

62. With respect to those witnesses whom the parties have identified in Exhibits 9 and 10 to be called to testify live at trial, no deposition designations or counter-designations are required. Should a fact witness identified in Exhibits 9 and 10 as testifying live at trial become unavailable, as that term is defined in the Federal Rules of Civil Procedure and Federal Rules of Evidence, or the calling party determines not to call the witness to testify live at trial, the parties may designate specific pages and lines of transcript that they intend to read or play in lieu of the witness's appearance upon reasonable notice.

63. Subject to the preceding paragraph, this pretrial order contains the maximum universe of deposition designations, counter-designations, counter-counter-designations, and objections to admission of deposition testimony. The parties, however, reserve the right to supplement their respective deposition designations, counter-designations, counter-counter-designations, and objections to admission of deposition testimony by agreement of the parties or as otherwise permitted by the Court upon a showing of good cause. For the avoidance of doubt, with respect to expert witnesses who served reports, no deposition designations or counter-designations are allowed.

64. Any party is entitled to use deposition testimony as designated herein by the other party when a witness becomes unavailable. A party's decision not to introduce some or all of the testimony of a witness designated by that party herein shall not be commented upon by the other party at trial.

65. Designated deposition testimony that the parties play by video in Court or have read into the record will count against the party's trial presentation time. Specifically, any affirmative designations and counter-counter designations offered by a party will count against that party's

trial presentation time whereas any counter-designations by the other party will count against the party who made the counter-designations.

66. All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

67. When deposition designation excerpts are introduced, all admissible deposition counter-designation excerpts and counter-counter-designation excerpts, whether offered by videotape or by transcript, will be introduced in the sequence in which the testimony was originally given. The specific portions of the deposition shall be read or played in page order. If an exhibit is introduced in a deposition designation, the exhibit will be admitted into evidence if it is included on the offering party's trial exhibit list and is not otherwise objected to. By so agreeing, neither party waives an objection that the witness lacked personal knowledge to testify about the document.

68. When a witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with three copies (including one for the court reporter) of the transcript of the designations, counter-designations, and counter-counter-designations that will be read or played. The parties shall provide the time to be charged to each party to the Court with the transcripts. The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

69. For those witnesses whose prior deposition or trial testimony will be read or played, the parties shall be permitted to make brief transition statements to introduce the witnesses and their role in the litigation. The parties agree to exchange their proposed transition statements when such witnesses are identified under Section X.B of this Order. The time for reading in transition statements will count against the party who initially proposes the use of the deposition testimony.

70. The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or to refresh the recollection of a witness. Any deposition testimony may be used at trial for the purpose of impeachment or to refresh the recollection of a witness, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

## IX. STATEMENT OF INTENDED PROOFS

71. Below are the parties' respective statements of intended proofs.

### A. Corteva's Statement of Intended Proofs

72. Corteva's Statement of Intended Proofs is attached as **Exhibit 13**.

### B. Inari's Statement of Intended Proofs

73. Inari's Statement of Intended Proofs is attached as **Exhibit 14**.

## X. TRIAL PROCEDURES

### A. Trial Time and Presentation

74. This case is currently scheduled for an eight-day jury trial beginning on September 23, 2026. The jury trial will be timed, as the parties will be allocated a total number of hours in which to present their respective cases. Total time will be split equally between Corteva, on the one hand, and Inari, on the other, with an expected time of 22 hours per side.

75. Subject to the Court's availability, the trial day will generally begin at 9:00 a.m. The Court may address objections, prior to the jury entering the courtroom, between 8:30 a.m. and 9:00 a.m., as needed. The Court may also address objections during the lunch break or at such other times as the Court may decide.

76. The evidentiary portion of the jury trial shall proceed in phases. In the first phase, Corteva will present its case-in-chief. In the second phase, Inari will respond to Corteva's case-in-

chief and will present Inari's invalidity case. In the third phase, Corteva will respond to Inari's invalidity case.

77. For opening statements, Corteva will present first, followed by Inari. There will be no rebuttals or replies to opening statements.

78. To the extent necessary, equitable claims and defenses, including Inari's defense and counterclaim of unclean hands, will be separately tried to the Court through a bench trial. The parties will meet-and-confer after the Court's summary judgment order to discuss the logistics of the bench trial and propose logistics to the Court to allow the Court to set a date and time for the bench trial.

**B. Identification of Witnesses**

79. Subject to the requirements below for disclosure of deposition testimony, each side will identify by email to the opposing side the witnesses it intends to call (in the order in which the witnesses will be called),[1] and whether those witnesses will be called live or by deposition, by **6:30 p.m. two calendar days before** such witness will be called to testify. For example, if the party expects to conduct the examination on Thursday, notice should be given to the opposing party by 6:30 p.m. on Tuesday. The non-offering party shall identify any objections to such witness(es) by **8:00 p.m. the following day**, and the parties shall meet-and-confer to resolve any objections by **9:00 p.m. that same evening**. To the extent the objections are not resolved through the meet-and-confer, the objecting party will email the Court's judicial administrator and Courtroom Deputy Clerk by **11:59 p.m. the day before the witness is to be called to testify**. The email will include a brief statement of that party's objection. (The content of the email will be agreed as to form before it is sent, as addressed below in Section X.E).

[1] The parties may call witnesses testifying by video deposition designation in any order to promote efficiency of trial.

80. A party shall provide reasonable notice if for any reason it does not intend to call a witness that it had previously indicated would appear live, but such notice shall be provided no later than **7:00 p.m. the day before** the witness was to be called. In that event, the other party may designate and offer deposition testimony from such witness, subject to the Federal Rules of Evidence. Counter-designations and objections may also be provided. In the event that such designations cannot be completed by the times agreed to below, the parties shall work in good faith to set deadlines for the disclosure of such designations, counter-designations, counter-counter-designations, and objections.

### C. Identification of Exhibits and Demonstratives

#### 1. Exhibits and Demonstratives for Opening Statements

81. The parties shall identify any exhibits and demonstrative exhibits expected to be used during their opening statements by **2:00 p.m. the day before the first day of trial**. The other party shall identify any objections to demonstrative exhibits and any objections to the admissibility of the exhibits sought to be used during opening statements by **4:30 p.m. that evening**. The parties shall then meet-and-confer by **6:30 p.m. that evening** regarding all objections and, to the extent the objections are not resolved through the meet-and-confer, the objecting party will email the Court's judicial administrator and Courtroom Deputy Clerk by **9:00 p.m. the day before opening statements are to be made** so that the Court can determine whether and when to hear the objection. (The content of the email will be agreed as to form before it is sent, as addressed below in Section X.E).

#### 2. Exhibits

82. The parties agree that disclosure of exhibits in accordance with the below procedure is not required for cross and adverse direct examinations. The parties will provide opposing

counsel with at least two copies of any exhibits used on cross at the start of the cross or adverse direct exam.

83. A party will provide, by electronic mail or FTP, a list of trial exhibits to be used in connection with the examination of a witness, including in connection with examination of witnesses being presented as rebuttal witnesses, specifically identifying the exhibit in connection with the witness by **6:30 p.m. the day before the witness is to be called at trial**, and objections will be provided no later than **8:00 p.m. the same day**. For the avoidance of doubt, if a witness is to testify in both a party's case-in-chief and rebuttal, the party need not disclose documents to be used with a witness on rebuttal during the disclosure process for the witness's testimony during the case-in-chief. The parties will meet-and-confer by **9:00 p.m. that same night**.

84. Physical exhibits shall be disclosed and made available for inspection by **6:30 p.m. the day before their intended use**, and objections will be provided no later than **8:00 p.m. the same day**. The parties will meet-and-confer by **9:00 p.m. that same night**.

85. If good-faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring a short, non-argumentative description of the objections to the Court's attention by emailing the Court's judicial administrator and Courtroom Deputy Clerk by **11:59 p.m. the day before the challenged exhibit is to be offered**. The email shall identify each challenged exhibit and include, for each unresolved objection, a short, non-argumentative statement of the objection, the other party's response, and a copy of the exhibit to be offered.

**3. Demonstratives and Summary Exhibits**

86. The parties agree that the demonstrative exhibits that the parties intend to use at trial do not need to be included on their respective exhibit lists that are part of this Final Pretrial Order.

87. Corteva's demonstrative exhibits will be identified with PDX numbers, starting with PDX 1.

88. Inari's demonstrative exhibits will be identified with DDX numbers, starting with DDX 1.

89. Once exchanged, the numbering on a demonstrative exhibit shall not be changed.

90. A party will provide color copies of demonstrative exhibits by electronic mail or file share to be used in connection with direct examination of witnesses being presented, including in connection with direct examination of witnesses being presented as rebuttal witnesses, by **6:30 p.m. the day before the witness is to be called at trial**. For the avoidance of doubt, if a witness is to testify in both a party's case-in-chief and rebuttal, the party need not disclose demonstratives to be used with a witness on rebuttal during the disclosure process for the witness's testimony during the case-in-chief. The parties' disclosures will reflect a good-faith determination of the demonstrative that will be used with a particular witness, and reasonable efforts will be made to streamline disclosures. The parties shall provide any objections no later than **8:00 p.m. the same day**. The parties will meet-and-confer at **9:00 p.m. that same night**. If any of the demonstratives changes after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s). To the extent the objections are not resolved by the meet-and-confer, the objecting party will email the Court's judicial administrator and Courtroom Deputy Clerk by **11:59 p.m. the day before the witness is called to testify**. The email will include a brief statement of that party's objection and the other party's response, and a copy of the demonstrative to be used.

91. The party seeking to use a demonstrative exhibit in connection with any direct examination will provide a color representation of the exhibit to the other side in PDF or PPT form.

The PDF or PPT form of the demonstratives shall be in the order of intended use. For irregularly sized physical demonstratives, the party seeking to use the demonstrative will provide, by electronic means, a legible color representation as a PDF of 8.5” x 11” copies of the demonstrative.

92. These provisions regarding demonstrative exhibits do not apply to demonstratives to be used for cross-examination, which need not be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony without more are not required to be provided to the other side in advance of their use.

93. A party that creates a demonstrative live in the courtroom during opening statements, examination, or closing arguments must provide the other party with a photograph or other electronic file of the demonstrative by **9:00 p.m. the day it was created**. This does not apply to blow-ups or highlights of exhibits or parts of exhibits or testimony.

94. Parties may make reasonable, non-substantive edits or corrections of typographical and similar errors to a demonstrative, but the party must promptly notify the opposing party of the change(s) to provide the opposing party with reasonable notice of the changes before the demonstrative exhibit is presented in court.

95. No party may use any of the other party’s disclosed demonstrative exhibits before the disclosing party has used it.

### 4. Admissions Read Into the Record

96. A party shall provide any statement by a party opponent in any pleading, request for admission response, interrogatory response, previous sworn testimony, or the Statement of Uncontested Facts (Exhibit 1) that it intends to have read into the record by **6:30 p.m. the day before such statement’s intended use**. The statement shall be provided in the form of its intended use (*e.g.*, any excerption or redaction applied). The parties shall provide any objections no later than **8:00 p.m. the same day**. The parties shall meet-and-confer regarding any objections by **9:00**

**p.m. the same day**. To the extent the objections are not resolved through the meet-and-confer, the objecting party will email the Court's judicial administrator and Courtroom Deputy Clerk by **11:59 p.m. that same night**. The email will include a brief statement of that party's objection and the other party's response, and a copy of the statement to be offered along with the other party's objections and any proposed modifications.

#### 5. Exhibits and Demonstratives for Closing Arguments

97. The parties agree that any exhibit that has been admitted into evidence during the course of trial can be used in closing argument and that the parties need not disclose the intent to use any admitted exhibit prior to closing arguments. The parties will not exchange demonstrative exhibits to be used in closing arguments.

### D. Identification of Deposition Testimony and Exhibits[2]

98. Unless otherwise agreed between the parties, the party offering deposition testimony (other than for impeachment purposes) shall identify the deposition testimony it intends to offer from previously exchanged designations by **6:30 p.m. at least two calendar days before the testimony is offered into the record**. A party must also identify any exhibits it wishes to introduce via the deposition testimony. A party may choose not to introduce deposition testimony designated in this Pretrial Order. The party receiving the designations shall inform the designating party of any objections (to both the testimony and exhibits) and any specific pages and lines from that deposition to counter-designate by **8:00 p.m. two calendar days prior to the testimony being offered** into the record. To the extent necessary, the designating party will provide the opposing party with any objections to the opposing party's counter-designations and any counter-counter designations by **8:30 p.m. two calendar days prior to the testimony being offered**. The

[2] Corteva reserves the right after the deposition designations are exchanged to revise or modify this procedure to promote efficiency at trial.

parties will thereafter meet-and-confer by **9:00 p.m. two calendar days prior to the testimony being offered**. If there are objections that remain to be resolved, the party calling the witness shall, no later than **11:59 p.m. two calendar days before the witness is to be called at trial**, submit to the Court's judicial administrator and courtroom deputy, on behalf of all parties: (i) a copy of the [Inari's position: pages with the objected to] [Corteva's position: entire] deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, counter-counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief description (*i.e.*, no more than one sentence per objection) of the basis for the objection and the offering party's response to it.

a) Corteva's position: The Court should have access to the entirety of the deposition testimony of the witness, with highlighted designations, counter-designations, counter-counter-designations, and pending objections, in order to provide the Court full access to information that may be necessary for the Court to resolve the objections.

b) Inari's position: Inari's proposal is attempting to alleviate the burden on the Court of reviewing unnecessary material. However, Inari defers to the Court's preferences on what it would like to receive.

99. If deposition testimony is to be presented by video (other than for impeachment purposes), then the party playing the designated testimony shall also provide the other party with electronic video clips of all testimony to be played by **9:00 p.m. the calendar day before the witness is to be called at trial**. The party offering the witness by deposition will be responsible for cutting video clips that contain both the deposition designation, counter-designations, and counter-counter-designations, and will provide a clip report of the designated testimony. All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or played at trial. If a party does not offer video testimony, that party need not offer video of the other party's counter-designations.

100. A designation and any corresponding counter-designations will be read or played by video in the order of questioning at deposition, unless the parties agree to a different order for a particular clip or witness.

101. The party offering testimony by deposition may elect to introduce less than all of the testimony it designated in connection with this Pretrial Order, and the opposing party may elect to introduce less than all of the testimony it counter-designated or any testimony previously designated by the offering party.

102. Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designations and counter-designations that are read or played for the jury. For video depositions, the parties will allocate the time attributable to each party according to the times in the clip reports. In the event of any dispute, the parties shall promptly meet-and-confer concerning the amount of time attributable to each party's designations and counter-designations and shall inform the Court of the allocation of the time.

103. If an exhibit is introduced through a deposition designation, the exhibit may be moved into evidence if it is on a party's trial exhibit list, the offering party moves it into evidence, and the exhibit is not subject to objection or the Court overrules any objection. If an exhibit is not objected to, it may be displayed during the video clip and the parties may move the exhibit into evidence at the end of the deposition testimony. Once an exhibit is moved into evidence, the designating party may display the exhibit to the jury alongside the video and highlight or enlarge portions of the exhibit on the screen as if the exhibit were being shown to a live testifying witness. The introducing party shall formally move exhibits into evidence either prior to or at the conclusion of the testimony.

### E. Emails to the Court Containing Nightly Disputes

104. The parties will work together in good faith to resolve disputes regarding witnesses, demonstratives, exhibits, and deposition designations. For issues on which the parties cannot reach agreement, the parties will jointly prepare an email to the Court's judicial administrator, as detailed above. Any issues (1) raised during the meet and confer process and not included in the joint email to the Court are waived; and (2) the parties may not raise issues that should have been covered during the nightly meet and confer process to the Court prior to meeting and conferring (this does not apply to objections during live testimony). The parties will agree during the nightly meet-and-confer which party will send the email to the court.

105. The template email will generally take the following format:

Dear Judge Murphy's Chambers,

The parties respectfully submit the following disputes for resolution tomorrow morning:

**Dispute Regarding John Doe Demonstrative (PDX1.10-15)**

***Corteva's position:***

***Inari's position:***

**Dispute Regarding Jane Doe Deposition (4:10-27, 6:5-19)**

***Corteva's position:***

***Inari's position:***

**Etc.**

106. Each side will prepare its own short written position statements for inclusion in the email. By **11:00 p.m.**, the party that is not submitting the email to the Court (*i.e.*, Inari during Corteva's case-in-chief), shall provide its positions in the template email. The party submitting the email to the Court will then paste in its positions *without editing its positions in response* and

send the email to the Court's judicial administrator, with appropriate attachments as detailed above.

> a) Corteva's position: Corteva's proposal is intended to provide an orderly and efficient process of getting the nightly disputes to the Court. Corteva's proposal closely mirrors the process used in the Eastern District of Texas and provides the Court with a helpful summary of the parties' positions prior to the morning objection hearing. (Corteva does not expect the Court or chambers to read the dispute email at midnight; the deadline is helpful to the parties.) In Corteva's experience, by the time the parties have crystallized their disputes to specific trial demonstratives, deposition testimony, and the like, a back-and-forth exchange of objections is not productive and generally only leads to lengthier—but not better—objections.
>
> b) Inari's position: Inari does not believe that a detailed email to the Court each night is necessary. The parties may send an email without the parties' positions and reserve their arguments for the Court in morning argument. Regardless, Inari defers to the Court on its preferences regarding emails on disputes and how to proceed with arguments each morning.

**F. Set Up of Electronic Equipment**

107. The parties may access the Courtroom on September 22, 2026 at 2:00 p.m., to set up electronic and computer devices to be used during the trial.

**G. Confidentiality**

108. The Court has entered a Stipulated Protective Order (D.I. 48) to safeguard the confidentiality of certain of the parties' business and technical information, as well as that of third parties. All outside counsel shall handle such protected information in accordance with the terms of the Protective Order and shall not disclose Protected Material to persons not authorized to view such information under the terms of the Protective Order.

109. It is agreed that any party or non-party whose information is subject to the Protective Order may request that testimony or an exhibit subject to the Protective Order be placed under seal and handled in accordance with the Protective Order (including through closing the Courtroom as described above). With the Court's permission, the parties may request that

demonstrative exhibits or evidence potentially reflecting confidential information not be made available to the public upon a party demonstrating it has met the *In re Avandia* standard.

110. Notwithstanding any statement to the contrary in the Protective Order, the parties have agreed that in-house counsel, agreed to by the parties, may attend any sealed portion of the trial.

**H. Jury Notebooks**

111. Subject to the Court's permission, the parties shall be allowed to provide a joint jury notebook to each of the jurors, which shall contain the Asserted Patents; a list correlating the event, ATCC accession number, and patent number; an exemplary PVP certificate; [Corteva's position: the relevant MTAs]; a list of asserted PVP certificates; a glossary of terms; a timeline of relevant events; a picture of each witness who testifies (with name and party affiliation); and a table showing the Court's claim constructions (*see* Section II.B). The jury will be permitted to bring these notebooks and handwritten notes into the deliberation room. Jury notebooks will be destroyed after the verdict is read. Corteva will provide a copy of the proposed jury notebook to Inari on September 14, 2026 and Inari will respond on September 17, 2026.

a) Corteva's position: The material transfer agreements are operative documents in the same way that the patents are operative documents. They should be included

b) Inari's position: Juror notebooks should not include copies of the material transfer agreements. Including the agreements may distract the jurors during presentation of evidence about the terms of the agreements as they may be reading the agreements instead of listening to the testimony.

**I. Witness Binders**

112. To the extent a party prepares a binder of trial or demonstrative exhibits for a witness, the party will provide at least two copies to the opposing party at the same time the binder

is presented to the witness. The offering party will simultaneously provide a copy for the Court, the Court's clerks, and the court reporter.

### J. Post-Trial Status Report and Motions

113. Within **seven days of the jury returning a verdict**, the parties shall jointly submit a form of order to enter judgment on the verdict, and at the same time, will submit a joint status report indicating how the case should proceed and listing any post-trial motions each party intends to file. The parties will coordinate with the Court to propose a post-trial briefing schedule.

> a) Corteva's position: Federal Rule of Civil Procedure 58(b) requires the court or the clerk to "promptly" enter judgment on the verdict. That judgment triggers important deadlines, including the deadline for post-trial motions under Rules 50(b) and 59, and is an enforceable judgment under Rule 62. Corteva does not believe that delaying entry of judgment on the verdict serves any valid purpose in ultimately reaching a final, appealable judgment in this case.
>
> b) Inari's position: The Court will need to decide equitable issues that when decided could impact Inari's liability, including for example the unenforceability of the patents against Inari. Submitting a form for judgment and the determination of any post-trial motions should be stayed pending a bench trial on the equitable causes of action. Inari agrees that within seven days of the jury returning a verdict, the parties should submit a joint status report on how the bench trial should proceed.

## XI. OTHER STIPULATIONS

114. The parties stipulate that the Federal Judicial Center's video entitled "The Patent Process: An Overview for Jurors" will be played as part of the Court's preliminary jury instructions after the jury has been seated. See https://www.fjc.gov/publications/patent-process-overviewjurors. Time to play the video will not be charged to any party.

115. Motions for judgment as a matter of law under Rule 50(a) ("JMOL") at the close of a party's case or after the close of all evidence may be made to the Court orally. The parties request that the Court then decide, based on the motions presented orally, whether to entertain argument.

116. The parties will not introduce evidence, testimony, or argument inconsistent with the Court's claim construction rulings.

117. The parties will not introduce evidence, testimony, or argument regarding the Court's summary judgment rulings.

118. The parties will not introduce evidence, testimony, or argument regarding the Court's rulings on Rule 702 motions.

119. The parties will not introduce evidence, testimony, or argument regarding claims or defenses, including prior art or patent claims, that the parties have dropped in advance of trial.

120. The parties will not reference or offer in front of the jury any expert testimony that has been excluded or rendered moot by this Court.

121. The parties will not introduce evidence, testimony, or argument concerning any advice of counsel. [Inari's position: If a party opens the door to advice of counsel and elicits otherwise privileged evidence, then the opposing party is entitled to introduce evidence, testimony, or argument to rebut the evidence presented.] This includes any advice of counsel regarding the Budapest Treaty and/or U.S. patent laws or regulations.

a) Corteva's position: Permitting a party to attempt to waive privilege as a sword at trial would be improper. Inari did not waive privilege during discovery; had it done so, Corteva would have been able to obtain well-rounded discovery. Inari has not permitted such discovery so should not be allowed unilaterally to cherry-pick privileged advice to disclose at trial. As with all MILs, if a party believes that opposing counsel opened the door, they should approach the bench and ask for permission to lift the MIL.

b) Inari's position: Inari maintains and does not waive privilege over advice of counsel and does not intend to waive privilege at trial. Inari's revision is intended as a mutual reservation of rights in case cross examination or other testimony opens the door to privileged testimony.

122. The parties will not introduce evidence, testimony, or argument regarding the number of law firms or lawyers that are currently representing or have previously represented any party in this case or any other litigation.

123. The parties will not make any negative reference to genetically modified crops and/or herbicides, including making no reference to tort litigation concerning glyphosate or to human or environmental health generally.

124. The parties will not introduce evidence, testimony, or argument regarding religion, political beliefs, race, ethnicity, gender, national origin, sexual orientation, or health of party, witness, attorney, or firm.

125. The parties will not introduce evidence, testimony, or argument regarding prior art not disclosed in an expert report or invalidity contentions.

126. The parties will not introduce evidence, testimony, or argument that relates only to equitable issues or defenses.

127. The parties will not introduce evidence, testimony, or argument describing the process or structures of PTAB, IPRs, AIA, or any alternative structure that does not relate directly to an Article III trial in a district court.

128. The parties will not introduce evidence, testimony, or argument regarding either party's other litigations or arbitrations.

129. The parties will not introduce evidence, testimony, or argument regarding the role or presence of jury consultants or shadow jurors or use of focus group or mock proceedings to assist with trial prep, jury selection, or trial.

130. The parties will not introduce evidence, testimony, or argument suggesting the District of Delaware is an improper or inconvenient venue.

131. The parties will not offer any expert testimony on opinions outside the parameters of a respective expert's report.

132. Inari will not raise a failure to mark under 35 U.S.C. § 287 in this action.

## XII. VOIR DIRE QUESTIONS

133. Plaintiffs' proposed *Voir Dire* questions are attached as **Exhibit 15**.

134. Defendants' proposed *Voir Dire* questions are attached as **Exhibit 16**.

## XIII. AMENDMENTS TO THE PLEADINGS

135. This Court's rulings and decisions on pending motions may significantly resolve or affect the issues otherwise to be tried in this case. The parties therefore reserve their respective rights to amend, or seek amendment of, the pleadings, so that they conform with and are consistent with the Court's decisions and rules on the summary judgment motion and the evidence presented at trial. The parties otherwise do not seek to amend the pleadings.

## XIV. MOTIONS IN LIMINE

136. Corteva's motions *in limine*, along with Inari's oppositions and Corteva's replies, are attached as **Exhibit 17**.

137. Inari's motions *in limine*, along with Corteva's oppositions and Inari's replies, are attached as **Exhibit 18**.

138. For the avoidance of doubt, a party's decision not to raise every asserted evidentiary dispute as a *motion in limine* does not waive its right to object at trial on such issues.

## XV. CERTIFICATION REGARDING SETTLEMENT

139. The parties certify that they have engaged in a good-faith effort to explore the resolution of the controversy by settlement. The parties have been unable to reach agreement.

## XVI. OTHER MATTERS

### A. Joint Issues

140. The Court's preference as to whether experts may be used to admit pre-authenticated documents into evidence.

a) Corteva's position: To the extent an expert relies on a document whose authenticity is not disputed, permitting the exhibit to be entered through expert testimony will be more efficient than requiring the parties to play deposition designations or prepare witness testimony solely for the purpose of introducing such exhibits. Corteva does not intend to introduce large numbers of exhibits in this way, but believes that the optionality to do so in certain cases would streamline the presentation of evidence.

b) Inari's position: Inari agrees with Corteva's proposal with the understanding that the exhibits must be admissible subject to any other objections made by the parties. Inari defers to the Court's preference on admitting pre-authenticated documents through expert testimony.

141. The Court's preferences on impeachment of witnesses.

a) Corteva's position: Corteva's position is that the parties should be permitted to object to efforts to impeach a witness with prior testimony, including to object that the testimony used to impeach is not complete or is not inconsistent.

b) Inari's position: Inari will follow the Judge's preferred procedure.

142. The Court's preferences on timekeeping, including allocation of time to the parties for issues like sidebars and argument.

a) Corteva's position: Corteva understands that the Court's typical practice is to charge time on sidebars and argument to the losing party and is amenable to that approach.

b) Inari's position: Inari will follow the Court's typical practices. Inari understands that the Delaware Courtroom Deputy will keep official time.

143. The Court's preferences on opening and closing statements, including allocation of time and presentation of rebuttals.

a) Corteva's Position: Each side is limited to one hour for its opening statement. For closing arguments, Corteva will present first, followed by

Inari, after which Corteva will have an opportunity for rebuttal. Each side is limited to a total time of one hour, with any rebuttal limited to no more than 20 minutes. Inari should not have opportunity for additional rebuttal after Corteva's rebuttal, as Inari's initial presentation may include a rebuttal to Corteva's infringement claim and Inari's arguments regarding its defenses and counterclaims. Inari does not have independent counterclaims such that a separate rebuttal is required; rather its counterclaims are duplicative of its defenses and may be addressed in its initial presentation.

b) Inari's Position: The Court has indicated its preference that the parties decide the course of trial. Accordingly, Inari believes the parties should be allowed to allocate their time for trial as they see fit, including opening and closing statements and presentation of evidence. Inari should have the opportunity for additional rebuttal after Corteva's rebuttal regarding its counterclaims.

144. Whether the Court has any objection to the parties setting up a "check" or "foot" monitor in the well.

a) Parties' position: A check or foot monitor in the well will assist counsel in presenting the case to the jury. The parties will coordinate with the courtroom deputy ahead of trial to arrange the logistics of that setup.

145. The Court's preference for deposition transcripts or clips of deposition testimony in opening statements.

a) Corteva's Position: Deposition testimony may be shown or played during opening statements where the parties agree to its use or where no objection has been asserted to the testimony.

b) Inari's Position: Opening statements are an opportunity for the parties to lay out what they believe the evidence ***will*** show, not what the evidence ***is***. Deposition clips or verbatim testimony is the evidence and it is not proper to admit or use in opening statements.

146. Whether the Court has any objection to a party presenting testimony of an officer, director, managing agent, or designee under Rule 30(b)(6) of an opposing party by deposition (transcript or video).

a) The parties jointly propose that the party permit the presentation of testimony by deposition of opposing party witnesses. Doing so will streamline the presentation of evidence at trial and avoid disputes between

parties as to the unavailability of one another's witnesses. Rule 32(a)(3) permits a party to use the deposition of anyone who, when deposed, was an opposing party's officer, director, managing agent, or designee under 30(b)(6) testimony for any purpose at trial. Fed. R. Civ. P. 32(a)(3). The District of Delaware has recognized that this rule applies even where the opposing party intends to bring the 30(b)(6) witness live at trial. *See Xin Wang v. Injective Labs Inc.*, Case No. 22-cv-943-WCB, 2026 U.S. Dist. LEXIS 25032, (D. Del. Feb. 6, 2026) (Judge Bryson analyzing competing lines of cases and ultimately allowing the use of adverse party's 30(b)(6) even where the witness would appear live and collecting cases).

147. The extent to which the parties may amend their exhibit lists in relation to Inari's production of documents in response to Corteva's RFPs 282-291 and deposition testimony of Catherine Feuillet and Lisa Nunez Safarian.

a) Corteva's position: On or by September 11, 2026, Corteva may add to its exhibit list documents produced by Inari on or after August 11, 2026, exhibits marked or used at the depositions of Catherine Feuillet and Lisa Nunez Safarian, or documents otherwise relevant to Corteva's trial examinations of Catherine Feuillet and Lisa Nunez Safarian. Any such exhibits added under this paragraph are excluded from paragraphs 36 and 37 and may not be used by Inari except in rebuttal to Corteva's use of the same document at trial. There is no reason for Inari to amend its exhibit list as it is the party that late-disclosed witnesses (necessitating last-minute document production and depositions) and has had all of the newly produced documents in hand since well before deadlines for exhibit lists. Inari should not be rewarded for its late disclosures by being able to amend its exhibit list at this late juncture.

b) Inari's Position: The parties are permitted to amend their exhibit lists on or before September 11 to identify any documents produced on or after August 11. Both parties may use those documents throughout the case, subject to any objections, without any restrictions. There is no basis to prevent Inari from using any of the evidence or documents produced with their witnesses.

148. How to treat the use of confidential information during the presentation of evidence.

a) Corteva's position: The presentation of evidence at trial shall take place in open court, unless a party specifically requests otherwise and the Court agrees, in which case the courtroom shall be closed to the public during presentation of certain portions of the evidence. Inari's suggestion that information that is "not relevant" be redacted would not just create enormous administrative hurdles but require significant amounts of judgment, which would no doubt engender dispute and require unnecessary

Court and attorney time to resolve. The jury should have complete versions of exhibits admitted into evidence so that it can consider statements in context and fulfill its factfinding function.

b) Inari's position: Unless otherwise ordered, the presentation of evidence at trial shall take place in open court. A party may request that particular exhibits marked "OUTSIDE COUNSELS' EYES ONLY" under the Protective Order entered in this case be displayed on monitors visible only to the Court, the jury, and the parties, but not otherwise be displayed in the courtroom during trial and not be filed publicly. The parties agree that they will use reasonable efforts to redact information that is confidential, but not relevant to any issues presented at trial. A party seeking to limit publication of a particular exhibit shall disclose the exhibits to the other party by 6:30 p.m. the day before such exhibit's intended use. To the extent necessary, the opposing party will provide any objections to the limited publication by 8:00 p.m. the day before such exhibit's intended use. The parties will thereafter meet-and-confer by 9:00 p.m. the day before such exhibit's intended use. Any remaining disputed will be included in the parties' email to the Court. Such requests must be supported by good cause.

It is standard practice in the District of Delaware to limit the display of the parties' highly confidential material to monitors in the jury box, for the Court, and at counsel tables. *See Harbour v. Teneobio*, C.A. No. 21-1807-MN, June 1, 2026 Pretrial Conference Tr. at 91:16-92:8 (D. Del.) (noting that using monitors for the jury has been done in other cases). It is understood to be a reasonable alternative to sealing the courtroom, which is a significantly high bar. *Id.* It is also common practice to allow the parties to redact irrelevant and highly confidential information from exhibits before they are displayed. That pages of a document may be relevant to the issues in this case, should not waive the confidentiality of irrelevant highly confidential material in other pages of the document. There is no basis to deviate from these practices in this case and Corteva has not articulated any.

So Ordered this __ day of September 2026:

______________________________

The Honorable John F. Murphy
United States District Judge

**BARNES & THORNBURG LLP**

*/s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
Brian S.S. Auerbach (No. 6532)
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Tel. (302) 300-3474
Chad.Stover@btlaw.com
Brian.Auerbach@btlaw.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Peter Bicks (*Pro hac vice*)
Kim B. Goldberg (*Pro hac vice*)
Jordan B. Fernandes (*Pro hac vice*)
Christine Willgoos (*Pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: +1 212 506 5000
Fax: +1 212 506 5151
pbicks@orrick.com
kgoldberg@orrick.com
jfernandes@orrick.com
cwillgoos@orrick.com

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Cameron P. Clark*
Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Dimitrios T. Drivas
Raj S. Gandesha
Hallie Kiernan
Jongtae Jason Lee
Angelika M. Kligos
White & Case LLP
1221 Avenue of the Americas
New York, NY 10010
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
Leason Ellis LLP
One North Lexington Ave.
Suite 1200
White Plains, NY 10601
(914) 288-0022

David Gindler (*Pro hac vice*)
Lauren Drake (*Pro hac vice*)
Christopher Lynch (*Pro hac vice*)
Avery Cartwright (*Pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue
Suite 2700
Los Angeles, CA 90071-1596
Tel: +1 213 629 2020
Fax: +1 213 612 2499
dgindler@orrick.com
ldrake@orrick.com
clynch@orrick.com
acartwright@orrick.com

Gary Frischling (*Pro hac vice*)
Gavin McGimpsey (*Pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA 90401
Tel: +1 310 633 2800
Fax: +1 310 633 2849
gfrischling@orrick.com
gmcgimpsey@orrick.com

Carly Romanowicz (*Pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley St.
Suite 2000
Boston, MA 02116
Tel: +1 617 880 1800
Fax: +1 617 880 1801
cromanowicz@orrick.com

Elizabeth Moulton (*Pro hac vice*)
Robert Reese Oñate (*Pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco CA 94105
Tel: +1 415 773 5700
Fax: +1 415 773 5759
emoulton@orrick.com
ronate@orrick.com

Todd Vare (*Pro hac vice*)
BARNES & THORNBURG LLP
11 S. Meridian St.
Indianapolis, IN 46204
Tel: (317) 231-7735
Todd.Vare@btlaw.com

Ronald Cahill (*Pro hac vice*)
Heather B. Repicky (*Pro hac vice*)
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA 02210
Tel: (617) 316-5312
Ronald.Cahill@btlaw.com
hrepicky@btlaw.com

Lauren Baker (*Pro hac vice*)
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA 30326
Tel: (404) 264-4036
Lauren.Baker@btlaw.com