# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, PIONEER HI-BRED INTERNATIONAL, INC. and AGRIGENETICS, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | **C.A. No. 23-1059 (JFM)** |
| | ) | **<u>HIGHLY CONFIDENTIAL</u>** |
| INARI AGRICULTURE, INC. and INARI AGRICULTURE NV, | ) | |
| Defendants. | ) | |

**<u>INARI'S STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED</u>**

Pursuant to Local Rule 16.3(c)(4), Inari Agriculture, Inc. and Inari Agriculture NV (collectively "Inari") respectfully submit the following Statement of Issues of Fact that Remain to Be Litigated. Inari reserves the right to revise, amend, supplement, or modify its statement of facts based upon any pretrial ruling by the Court and/or to address any additional issues, arguments, evidence, or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending and anticipated motions, and similar developments.

To the extent Inari's Statement of Issues of Law That Remain to Be Litigated contain issues of fact, those issues are incorporated herein by reference. The following statement of issues of fact is not exhaustive, and Inari reserves the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports. If the Court determines that any issue identified here is more appropriately considered an issue of law, it should be so considered.

# I. PATENT INFRINGEMENT

## A. Infringement under § 271(a)

1. Whether IE-SCS directed or instructed Iowa State University how to perform the ELISA test for Stewart's Wilt.

2. Whether Inari directed or instructed Iowa State University how to perform the ELISA test for Stewart's Wilt.

3. Whether IE-SCS acted as Inari's or Inari Belgium's agent in acquiring or exporting the patent deposit seeds.

4. Whether Inari Belgium retained IE-SCS at the direction of ATCC or LGC Standards.

5. Whether Inari Belgium's activities with the patent deposit seeds were directed or controlled by Inari USA.

6. Whether the phytosanitary testing of patent deposit seeds PTA-11384 and PTA-11506 was direct infringement of the '246 and '434 patents, respectively.

7. Whether Corteva's authorization of ATCC to sell the patent deposit seeds without restriction exhausted Corteva's right to assert that the phytosanitary testing of patent deposit seeds PTA-11384 and PTA-11506 infringed the '246 and '434 patents, respectively.

## B. Infringement under § 271(b)

8. Whether Corteva authorized ATCC to sell the patent deposit seeds without restriction.

9. Whether ATCC's sale of the patent deposit seeds to Inari Belgium was a direct infringement under § 271(a).

10. Whether Inari actively induced ATCC to infringe the Asserted Patents.

11. Whether Inari knew that ATCC's sale was a direct infringement.

12. Whether Corteva's authorization of ATCC to sell the patent deposit seeds without restriction exhausted Corteva's right to assert that ATCC's sale of the patent deposit seeds directly infringed the Asserted Patents.

**C. Infringement under § 271(f)(2)**

13. Whether the export of Budapest Treaty patent deposit seeds PTA-11506, PTA-11384, PTA-11336 and PTA-12006 was authorized by Corteva.

14. Whether a patent deposit seed is a component of the plant that grows from it or whether it is same the organism as the plant that grows from it.

15. Whether a plant embryo is a plant.

16. Whether light, air, soil, water, nutrients, and physical support are components of a plant.

17. Whether light, air, soil, water, nutrients, and physical support are components of claims 1, 3-4, and 10-11 of the '246 patent.

18. Whether light, air, soil, water, nutrients, and physical support are components of claims 2-7, 9, and 14-15 of the '434 patent.

19. Whether light, air, soil, water, nutrients, and physical support are components of claims 7 and 9 of the '363 patent.

20. Whether light, air, soil, water, nutrients, and physical support are components of claim 2 of the '441 patent.

21. Whether light, air, soil, water, nutrients, and physical support are components of claim 2 of the '522 patent.

22. Whether a seed of patent deposit PTA-11384 contains the plant of claims 1, 3-4, and 10-11 of the '246 patent.

23. Whether a seed of patent deposit PTA-11506 contains the plant of claims 2-7, 9, and 14-15 of the ’434 patent.

24. Whether a seed of patent deposit PTA-12006 contains the plant of claims 7 and 9 of the ’363 patent.

25. Whether a seed of patent deposit PTA-12006 contains the plant of claim 2 of the ’441 patent.

26. Whether a seed of patent deposit PTA-11336 contains the plant of claim 2 of the ’522 patent.

27. Whether Inari Belgium infringed the ’246 patent by exporting PTA-11384 patent deposit seeds.

28. Whether Inari Belgium infringed the ’434 patent by exporting PTA-11506 patent deposit seeds.

29. Whether Inari Belgium infringed the ’363 patent by exporting PTA-12006 patent deposit seeds.

30. Whether Inari Belgium infringed the ’441 patent by exporting PTA-12006 patent deposit seeds.

31. Whether Inari Belgium infringed the ’522 patent by exporting PTA-11336 patent deposit seeds.

32. Whether Corteva’s authorization of ATCC to sell the patent deposit seeds without restriction exhausted Corteva’s right to assert that Inari Belgium’s export of the PTA-11506, PTA-11384, PTA-11336 and PTA-12006 patent deposit seeds infringed the ’246, ’434, ’363, ’441, and ’522 patents.

33. Whether the exported patent deposit seeds are a staple article or commodity of commerce suitable for substantial non-infringing use.

34. Whether Inari exported the patent deposit seeds intending that such patent deposits will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

### D. Willfulness

35. Whether Inari willfully infringed the asserted claims of the ’246 patent.

36. Whether Inari willfully infringed the asserted claims of the ’434 patent.

37. Whether Inari willfully infringed the asserted claims of the ’363 patent.

38. Whether Inari willfully infringed the asserted claims of the ’441 patent.

39. Whether Inari willfully infringed the asserted claims of the ’522 patent.

## II. PATENT INVALIDITY

### A. The ’246 Patent

40. Whether the ’246 patent is invalid under 35 U.S.C. § 112 because Corteva violated its promises and obligations under 37 C.F.R. § 1.808 in asserting breach of ATCC’s MTA, thereby restricting access to the patent seed deposit for the ’246 patent.

41. Whether claims 1, 3, and 6 of the ’246 patent are invalid under 35 U.S.C. § 112 for lack of written description and enablement.

42. The level of skill of a person of ordinary skill in the art at the relevant time the invention of the ’246 patent was made.

43. Whether the claims of the ’246 patent are invalid under 35 U.S.C. § 103 as obvious in view of the prior art.

44. Whether a nexus exists between the alleged secondary considerations of nonobviousness and the patented features of the ’246 patent.

45. Whether secondary considerations such as long felt but unmet need, failure of others, unexpected results, licensing, commercial success, copying, or industry praise support the nonobviousness of the asserted claims of the ’246 patent.

**B. The ’434 Patent**

46. Whether the ’434 patent is invalid under 35 U.S.C. § 112 because Corteva violated its promises and obligations under 37 C.F.R. § 1.808 in asserting breach of ATCC’s MTA, thereby restricting access to the patent seed deposit for the ’434 patent.

47. The level of skill of a person of ordinary skill in the art at the relevant time the invention of the ’434 patent was made.

48. Whether the claims of the ’434 patent are invalid under 35 U.S.C. § 103 as obvious in view of prior art.

49. Whether a nexus exists between the alleged secondary considerations of nonobviousness and the patented features of the ’434 patent.

50. Whether secondary considerations such as long felt but unmet need, failure of others, unexpected results, licensing, commercial success, copying, or industry praise support the nonobviousness of the asserted claims of the ’434 patent.

**C. The ’363 Patent**

51. Whether the ’363 patent is invalid under 35 U.S.C. § 112 because Corteva violated its promises and obligations under 37 C.F.R. § 1.808 in asserting breach of ATCC’s MTA, thereby restricting access to the patent seed deposit for the ’363 patent.

52. Whether claims 1-4 and 6 of the ’363 patent are invalid for obviousness-type double patenting in view of claims 1-4 and 7 of U.S. Patent No. 9,738,904.

53. The level of skill of a person of ordinary skill in the art at the relevant time the invention of the ’363 patent was made.

54. Whether the claims of the ’363 patent are invalid under 35 U.S.C. § 103 as obvious in view of the prior art.

55. Whether a nexus exists between the alleged secondary considerations of nonobviousness and the patented features of the ’363 patent.

56. Whether secondary considerations such as long felt but unmet need, failure of others, unexpected results, licensing, commercial success, copying, or industry praise support the nonobviousness of the asserted claims of the ’363 patent.

**D. The ’441 Patent**

57. Whether the ’441 patent is invalid under 35 U.S.C. § 112 because Corteva violated its promises and obligations under 37 C.F.R. § 1.808 in asserting breach of ATCC’s MTA, thereby restricting access to the patent seed deposit for the ’441 patent.

58. Whether claim 2 of the ’441 patent is invalid for double patenting claiming the same invention as claim 9 of the ’363 patent.

59. The level of skill of a person of ordinary skill in the art at the relevant time the invention of the ’441 patent was made.

60. Whether the claims of the ’441 patent are invalid under 35 U.S.C. § 103 as obvious in view of the prior art.

61. Whether a nexus exists between the alleged secondary considerations of nonobviousness and the patented features of the ’441 patent.

62. Whether secondary considerations such as long felt but unmet need, failure of others, unexpected results, licensing, commercial success, copying, or industry praise support the nonobviousness of the asserted claims of the ’441 patent.

**E. The ’522 Patent**

63. Whether claims 1-14 of the ’522 patent are invalid under 35 U.S.C. § 112 for lack of written description and enablement.

64. Whether claims 3-11 of the ’522 patent are invalid for failure to make a patent deposit under 35 U.S.C. § 112.

65. The level of skill of a person of ordinary skill in the art at the relevant time the invention of the ’522 patent was made.

66. Whether the claims of the ’522 patent are invalid under 35 U.S.C. § 103 as obvious in view of the prior art.

67. Whether a nexus exists between the alleged secondary considerations of nonobviousness and the patented features of the ’522 patent.

68. Whether secondary considerations such as long felt but unmet need, failure of others, unexpected results, licensing, commercial success, copying, or industry praise support the nonobviousness of the asserted claims of the ’522 patent.

**F. The ’378 Patent**

69. Whether the claims of the ’378 patent are invalid for public use under 35 U.S.C. § 102(b) more than one year before the patent applications.

70. Whether the claims of the ’378 patent are invalid for lack of enablement under 35 U.S.C. § 112 in view of Corteva’s representation to the European Patent Office that the TC-1507 event cannot be routinely obtained by transformation and reproducing the event without a physical

sample would be almost impossible because no deposit was made in the ’378 patent and Corteva restricts any use of the commercially marketed event by compelling purchasers of seeds containing TC-1507 to comply with Technology Use Agreements so the event is not readily available to the public.

## III. PVP INFRINGEMENT

### A. Exhibit A Seeds

71. Whether Corteva authorized ATCC’s sale of the Exhibit A patent deposit seeds and export of the seeds.

72. Whether Belgium is a signatory of the UPOV 1991 Act and provides protection for new, distinct, uniform, and stable varieties of maize for 25 years from date protection is granted.

73. Whether Corteva’s authorization of ATCC to sell the patent deposit seeds of the corn varieties listed on Exhibit A without restriction exhausted Corteva’s right to assert that Inari infringed the Exhibit A PVP Certificates by export of the Exhibit A seeds acquired from ATCC.

74. Whether Inari’s use of the Exhibit A patent deposit seeds was bona fide research or plant breeding under 7 U.S.C. § 2544.

75. Whether Inari’s use of the Exhibit A patent deposit seeds constitutes an act concerning propagating material of any kind of a protected variety for purposes of selling or marketing the variety.

76. Whether Inari’s germinating the Exhibit A seeds to grow plantlets and destroying the plantlets before they reproduce is propagation of the Exhibit A PVP varieties.

77. Whether ATCC sold the Exhibit A patent deposit seeds in the United States with Corteva’s consent.

### B. Exhibit B Seeds

78. Whether Corteva authorized ATCC's sale of the patent deposit seeds of the corn varieties in Exhibit B.

79. Whether Chile is a signatory of the UPOV 1978 Act and provides protection for new varieties of corn that satisfy distinct, uniform, and stable criteria.

80. Whether Corteva's authorization of ATCC to sell the patent deposit seeds without restriction from utility patents claiming the same varieties covered by the PVP certificates listed on Exhibit B, exhausted Corteva's right to assert that Inari USA infringed the Exhibit B PVP Certificates by use or export of the Exhibit B seeds acquired from ATCC.

81. Whether Inari's use of the Exhibit B patent deposit seeds constitutes an act concerning propagating material of any kind of a protected variety for purposes of selling or marketing the variety.

82. Whether Inari's use of the Exhibit B patent deposit seeds was breeding under 7 U.S.C. § 2544.

83. Whether ATCC sold or the Exhibit B patent deposit seeds in the United States with Corteva's consent.

84. Whether the seed deposits corresponding to the Exhibit A and Exhibit B PVP Certificates were made as patent deposits to satisfy the deposit requirements of 35 U.S.C. § 112.

## IV. PVP INVALIDITY

### A. Exhibit A Seeds

85. Whether the Exhibit A PVP Certificates are invalid because of the sale and disposition of harvested material of the covered varieties authorized by Corteva more than one year before the filing of the PVP applications under 7 U.S.C. § 2402(a)(1).

### B. Exhibit B Seeds

86. Whether the Exhibit B PVP Certificates are invalid because of the sale and disposition of harvested material of the covered varieties authorized by Corteva more than one year before the filing of the PVP applications under 7 U.S.C. § 2402(a)(1).

## V. BREACH OF CONTRACT

87. Whether Corteva is a third-party beneficiary under the 2017 MTA between Inari USA and ATCC.

88. Whether Corteva is a third-party beneficiary under the 2019 MTA between Inari Belgium and ATCC.

89. Whether Corteva waived any benefit as a third party under the 2017 MTA.

90. Whether Corteva waived any benefit as a third party under the 2019 MTA.

91. Whether Inari Belgium violated any commercial use or transfer restrictions in the 2019 MTA.

92. Whether Inari USA violated any commercial use or transfer restriction of the 2017 MTA.

93. Whether Corteva is a "Contributor" under the 2017 MTA and the 2019 MTA.

94. Whether the commercial use and transfer restrictions of the 2017 MTA and the 2019 MTA apply to the patent deposit seed samples supplied by the ATCC to Inari USA or Inari Belgium.

95. Whether the MTA 2022 supersedes the 2017 MTA, and the 2019 MTA, and whether the purpose of the 2022 MTA was to purchase Corteva patent deposit seed samples from the ATCC.

96. Whether any breach of the 2017 MTA or 2019 MTA caused harm to Corteva.

## VI. UNFAIR OR DECEPTIVE ACTS

97. Whether Inari USA's alleged acts were unfair or deceptive and occurred in the conduct of trade or commerce.

98. Whether Inari USA's alleged acts primarily and substantially took place in Massachusetts.

99. Whether Inari USA legally acquired the patent deposit seeds listed in Exhibit B from the ATCC.

100. Whether Corteva was harmed by Inari USA's alleged acts.

## VII. CONVERSION

101. Whether Corteva maintained a proprietary, personal property, or possessory right to the patent deposit seeds it deposited with the ATCC after grant of the corresponding patents.

102. Whether Inari USA legitimately acquired possession of the patent deposit seed Corteva deposited with the ATCC under a good-faith claim of right.

103. Whether Inari Belgium legitimately acquired possession of the patent deposit seed Corteva deposited with the ATCC under a good-faith claim of right.

104. Whether Inari USA intentionally and wrongfully exercised control or dominion over the patent deposit seeds Corteva deposited with the ATCC.

105. Whether Inari Belgium intentionally and wrongfully exercised control or dominion over the patent deposit seeds Corteva deposited with the ATCC.

106. Whether Corteva waived any claim for conversion by making patent seed deposits with the ATCC and securing patents on such deposits.

## VIII. CORTEVA'S DAMAGES

107. Whether Corteva has met its burden of showing that Inari is obligated to pay Corteva damages in the form of a reasonable royalty where there has been no use, sale, offer to sell or importation of an infringing product.

108. Whether Corteva is entitled to a reasonable royalty for Inari's alleged infringement of the Asserted Patents, and if so, how much.

109. Whether Corteva is entitled to enhanced patent infringement damages pursuant to 35 U.S.C. § 284.

110. Whether Corteva is entitled to damages for Inari Belgium's alleged infringement of the Exhibit A PVP Certificates, and if so, how much.

111. Whether Corteva is entitled to damages for Inari USA's alleged infringement of the Exhibit B PVP Certificates, and if so, how much.

112. Whether Corteva is entitled to enhanced PVP infringement damages, and if so, how much.

113. Whether Corteva is entitled to PVP infringement damages when it knew of Inari's activities more than one year before filing the complaint in this action.

114. Whether Corteva is entitled to damages for Inari USA's alleged breach of the 2017 MTA, and if so, how much.

115. Whether Corteva is entitled to damages for Inari Belgium's alleged breach of the 2019 MTA, and if so, how much.

116. Whether Corteva faces irreparable harm from any alleged breach of the 2017 or 2019 MTAs or alleged infringement, and whether monetary remedies are adequate to compensate Corteva for any harm proven.

117. Whether Corteva is entitled to damages for Inari USA's alleged unfair or deceptive acts, and if so, how much.

118. Whether Corteva is entitled to damages for Inari's alleged conversion of the patent deposit seeds, and if so, how much.

119. Whether Corteva is entitled to attorneys' fees.

120. Whether Corteva is entitled to costs.

## IX. UNENFORCEABILITY OF INTELLECTUAL PROPERTY

121. Whether Corteva engaged and continues to engage in acts that it alleges are infringement when performed by Inari.

122. Whether Corteva obtained patent seeds deposits for unexpired patents from ATCC, planted some of the seeds, grew plantlets, extracted DNA from the plantlets, and sequenced the DNA.

123. Whether Corteva used competitors' patent deposit seeds covered by unexpired patents, or genetic information obtained therefrom for purposes other than reading the patents for which the patent deposits were made.

124. Whether Corteva obtained competitors' patent deposit seeds that were the subject of unexpired PVP certificates from ATCC, planted some of the seeds, grew plantlets or plants from the seeds, or obtained genetic information from the seeds or plants.

125. Whether Corteva used the genetic information from the competitors' patent deposit seeds, plants or plantlets covered by unexpired PVP certificates for research and/or breeding purposes.

126. [redacted]

127. [redacted]

128. Whether Corteva's allegations of PVP infringement restrict access to the patent deposit seeds for patents claiming the same varieties as the Asserted PVP Certificates.

129. Whether Corteva authorized ATCC to make the patent deposit seeds PTA-11506, PTA-11384, PTA-11336 and PTA-12006 and patent deposits correlating with the Asserted PVP certificates available without restriction upon patent issuance.

130. Whether Corteva after expressly authorizing ATCC to provide unrestricted access to patent deposits upon patent grant, attempted to coerce ATCC to impose illegal restrictions on access to patent deposits by foreign members of the public, and in particular Inari.

131. Whether Corteva engaged in efforts to solicit competitor oligopolists, Bayer and Syngenta, to engage in similar anticompetitive activity against Inari, and disparaged Inari as a thief of intellectual property.

## X. ESTOPPEL

132. Whether Corteva represented in patents claiming the same varieties for which it made patent deposits that the deposits would be available to the public without restriction.

133. Whether Corteva made the PTA-11506, PTA-11384, PTA-11336 and PTA-12006 deposits under the Budapest Treaty and obtained European Patents registered in Belgium referencing the patent deposits and that the deposits would be available to the public without restriction.

134. Whether Corteva engages in the same acts that it alleges are infringing when performed by Inari but non-infringing when performed by Corteva.

135. Whether Corteva made statements to the U.S. Patent and Trademark Office in PGR2024-00019 that Inari should have obtained patent deposit seeds, grown the seeds, and sequenced the DNA.

## XI. INARI'S DAMAGES

136. Whether Inari is entitled to attorneys' fees.

137. Whether Inari is entitled to costs.