# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, PIONEER HI-BRED INTERNATIONAL, INC. and AGRIGENETICS, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 23-1059 (JFM) |
| INARI AGRICULTURE, INC. and INARI AGRICULTURE NV, | ) | |
| Defendants. | ) | |

**INARI'S STATEMENT OF DISPUTED ISSUES OF LAW**

Pursuant to Local Rule 16.3(c)(5), Inari Agriculture, Inc. and Inari Agriculture NV (collectively "Inari") respectfully submit the following Statement of Disputed Issues of Law that remain to be presented and litigated in this case. This statement has been compiled based on the arguments that Inari expects to make at trial, as well as its understanding of the arguments that Plaintiffs are likely to make. To the extent that Plaintiffs make different legal arguments, Inari reserves the right to amend and/or supplement this statement to contest such legal positions, and present any and all rebuttal evidence and argument in response. Simply by including a legal issue herein, Inari does not assume the burden of proof or production with regard to that legal issue.

Inari cites to authorities in support of its arguments. The citations are not exhaustive, and Inari may rely upon other authorities not in this statement in addition to or instead of the authorities cited herein. Inari also relies upon various additional legal authorities to support its proposed jury instructions. If the court determines that any issue identified in this list should also be considered, or is more properly considered, an issue of fact, it should be so considered.

Inari reserves the right to revise this statement of issues of law as necessary in light of the

Court's pretrial orders, evidentiary rulings, or other new developments, including any new issues or allegations raised by Plaintiffs and the Court's order on summary judgment.

# I. PATENT INFRINGEMENT

## A. Issues

1. Whether Corteva has proven by a preponderance of the evidence that Inari directly infringed claims 1, 8, and 14-15 of the ’434 Patent and claims 6, 8, and 12-13 of the ’246 patent by directing or controlling Iowa State University to use the patented inventions.

2. Whether Corteva has proven by a preponderance of the evidence that Inari directly infringed claims 1, 8, and 14-15 of the ’434 Patent and claims 6, 8, and 12-13 of the ’246 patent by directing or controlling IE-SCS to use the patented inventions.

3. Whether Corteva has proven by a preponderance of the evidence that phytosanitary testing constitutes a use under 35 U.S.C. § 271(a).

4. Whether Corteva has proven by a preponderance of the evidence that the acts accused of infringement under § 271(a) were unauthorized.

5. Whether Corteva has proven by a preponderance of the evidence that Inari indirectly infringed, via induced infringement, claims 1, 8, and 14-15 of the ’434 patent, claims 6, 8, and 12-13 of the ’246 patent, claims 1, and 12-13 of the ’522 patent, claim 8 of the ’363 patent, and claims 1-2 of the ’441 patent.

6. Whether Corteva has proven by a preponderance of the evidence that ATCC directly infringed claims 1, 8, and 14-15 of the ’434 patent, claims 6, 8, and 12-13 of the ’246 patent, claims 1, and 12-13 of the ’522 patent, claim 8 of the ’363 patent, and claims 1-2 of the ’441 patent.

7. Whether Corteva has proven by a preponderance of the evidence that ATCC's sale of seeds to Inari was unauthorized.

8. Whether Corteva has proven by a preponderance of the evidence that Inari actively induced ATCC to directly infringe claims 1, 8, and 14-15 of the '434 patent, claims 6, 8, and 12-13 of the '246 patent, claims 1 and 12-13 of the '522 patent, claim 8 of the '363 patent, and claims 1-2 of the '441 patent.

9. Whether Corteva has proven by a preponderance of the evidence that water, light, air, nutrients, and physical support constitute components of claims 2-7, 9, and 14-15 of the '434 patent, claims 1, 3-4, and 10-11 of the '246 patent, claim 2 of the '522 patent, claims 7 and 9 of the '363 patent, and claim 2 of the '441 patent under 35 U.S.C. § 271(f)(2).

10. Whether Corteva has proven by a preponderance of the evidence that a seed of patent deposit PTA-11506 is a component of claims 2-7, 9, and 14-15 of the '434 patent, that a seed of patent deposit PTA-11384 is a component of claims 1, 3-4, and 10-11 of the '246 patent, that a seed of patent deposit PTA-11336 is a component of claim 2 of the '522 patent, and, a seed of patent deposit PTA-120006 is a component of claims 7 and 9 of the '363 patent, and claim 2 of the '441 patent under 35 U.S.C. § 271(f)(2).

11. Whether Corteva has proven by a preponderance of the evidence that water, nutrients, light, air, and physical support are component of claims 2-6 and 9 of the '434 patent; components of claims 4 and 10-11 of the '246 patent; component of claim 2 of the '522 patent; and, components of claims 7 and 9 of the '363 patent under 35 U.S.C. § 271(f)(2).

12. Whether Corteva has proven by a preponderance of the evidence that the export of patent deposit seeds PTA-11506, PTA-11384, PTA-11336, and PTA-12006 was unauthorized.

13. Whether Corteva has proven by a preponderance of the evidence that the exported seeds were especially made or especially adapted for use in the claimed inventions and were not staple articles or commodities of commerce suitable for substantial noninfringing use.

14. Whether 35 U.S.C. § 271(f)(2) is applicable where the patent owner, Corteva by making a Budapest Treaty deposits and obtaining a patents in Europe, caused the patent deposit seeds to be supplied in and from the United States.

15. Whether 35 U.S.C. § 271(f)(2) is applicable where the putative component that was exported is itself patented.

16. Whether the growing a plant from a seed using a natural method outside the United States constitutes the combination of components of a patented invention within the meaning of 35 U.S.C. § 271(f)(2).

17. Whether Corteva has proven by clear and convincing evidence that Inari willfully infringed the Asserted Claims of the Asserted Patents.

**B. Relevant Authority**

18. "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

19. "The patentee bears the burden of proving infringement by a preponderance of the evidence." *Creative Compounds, LLC v. Starmark Lab'ys*, 651 F.3d 1303, 1314 (Fed. Cir. 2011) (citation omitted); *Takeda Pharm. Co. v. Teva Pharms. USA, Inc.*, 668 F. Supp. 2d 614, 619 (D. Del. 2009), *aff'd*, 363 F. App'x 34 (Fed. Cir. 2010); *SmithKline Diagnostics, Inc. v. Helena Lab'ys*

*Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted). That burden never shifts to the defendant. *See Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008).

20. In making an infringement determination, the trier of fact must compare the properly construed claims to the accused infringing method or process. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

21. The ordinary meaning of "use" under 35 U.S.C. § 271(a) is to put the invention into action or service in some beneficial form." *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005).

22. Where direct infringement is premised on the acts of another, those acts are attributable to the accused infringer only if it directed or controlled the other's performance. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-23 (Fed. Cir. 2015) (en banc).

23. "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C.§ 271(b).

24. Induced infringement requires a showing of direct infringement by another. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920-21 (2014). In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). It also "must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part) (internal quotation omitted).

25. The inducer must know that "the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). An inducer must take active steps to encourage direct infringement. *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1398 (2026). "[M]ere knowledge of infringing potential or of actual infringing uses [is] not . . . enough . . . to subject a distributor to liability." *Id.* at 1397. "[M]ere omissions, inactions, or nonfeasance" are insufficient to find active inducement. *Id.* at 1402.

26. "Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer." 35 U.S.C.§ 271(f)(2).

27. Section 271(f) is an exception to the rule that U.S. patent law does not apply extraterritorially and should not be given an expansive interpretation. *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007). Section 271(f) does not apply to method claims. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1365 (Fed. Cir. 2009).

28. Actual combination of components abroad need not occur for infringement to be had under § 271(f). *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001) ("At no point does the statutory language require or suggest that the infringer must actually combine or assemble the components."). However, the exported product cannot be the complete invention and infringe independently both prior to assembly under § 271(a) and after assembly

with other components outside the U.S. under § 271(f)(2). *Trs. of Columbia Univ. in the City of New York v. Roche Diagnostics GmbH*, 150 F. Supp 2d 191, 204-05 (D. Mass. 2001).

29. Section 271(f)(2) applies only to a component that is "especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(f)(2); *see Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 147-49 (2017).

30. "To establish willfulness, a patentee must show that the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Provisur Techs., Inc. v. Weber, Inc.*, 119 F.4th 948, 955 (Fed. Cir. 2024) (citation omitted). "[K]nowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Id.* at 956 (citation omitted).

31. "In some respects, the intent standard for inducement is akin to the one for willfulness, as both rest on the subjective intent of the accused infringer." *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1119 (Fed. Cir. 2022).

32. Willfulness requires deliberate or intentional infringement; knowledge of the asserted patent alone is insufficient. *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987-88 (Fed. Cir. 2021). Enhanced damages under 35 U.S.C. § 284 are reserved for egregious cases of misconduct, and whether to enhance any award is committed to the Court, not the jury. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-06 (2016).

33. "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the

infringer intended to induce infringement of the patent." 35 U.S.C. § 298; *see also SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019) ("decision not to seek an advice-of-counsel defense is legally irrelevant under 35 U.S.C. § 298."); *Kaneka Corporation v. Designs for Health, Inc.*, 760 F. Supp. 3d 152, 172 (D. Del. 2024) ("Likewise, the Federal Circuit has barred '[t]he adverse inference that an opinion was or would have been unfavorable, flowing from the infringer's failure to obtain or produce an exculpatory opinion of counsel.'") (quoting *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (en banc)).

34. Article 3(1)(a) of the Budapest Treaty on the International Recognition of the Deposit of Microorganisms for the Purposes of Patent Procedures ("Budapest Treaty") provides that "Contracting States which allow or require the deposit of microorganisms for the purposes of patent procedure shall recognize, for such purposes, the deposit of a microorganism with any international depositary authority."

35. Article 5 of the Budapest Treaty states: "Each Contracting State recognizes that it is highly desirable that, if and to the extent to which the export from or import into its territory of certain kinds of microorganisms is restricted, such restriction should apply to microorganisms deposited[,] or destined for deposit, under this Treaty only where the restriction is necessary in view of national security or the dangers for health or the environment." Pursuant to Rule 11.3 of the Regulations Under the Budapest Treaty, an international depositary authority is required to furnish a sample of any deposited microorganism to any authority, natural person, or legal entity that has a right to a sample under the law governing patent procedure where a patent referencing the deposit has been filed.

36. Under 37 C.F.R. § 1.808, a deposit of biological material made to satisfy the requirements of patentability for a U.S. patent "must be made under conditions that assure that . . . all restrictions imposed by the depositor on the availability to the public of the deposited material will be irrevocably removed upon the granting of the patent." 37 C.F.R. § 1.808(a)(2). The only restrictions permitted under § 1.808 are to the form and content of the request. *Id.* § 1.808(b); *see also* MPEP § 2410.01.

37. Under 37 C.F.R. § 1.808(b)(3) a depositor may contract with the depository to require that the depositor to notify depositor of a request for a sample in writing "along with the date on which the sample was furnished and the name and address of the party to whom the sample was furnished."

## II. PATENT INVALIDITY

### A. Issues

38. Whether the claims of the '246 patent are invalid under 35 U.S.C. § 112 as a result of Corteva's assertion of breach of ATCC's MTA contrary to its promises and obligations made to obtain the '246 patent under 37 C.F.R. § 1.808.

39. Whether Inari has proven by clear and convincing evidence that claims 1, 3, and 6 of the '246 patent are invalid under § 112 for lack of written description and enablement.

40. Whether Inari has proven by clear and convincing evidence that each claim of the '246 patent is invalid under § 103 as obvious in view of the prior art.

41. Whether the claims of the '434 patent are invalid under 35 U.S.C. § 112 as a result of Corteva's assertion of breach of ATCC's MTA contrary to its promises and obligations made to obtain the '434 patent under 37 C.F.R. § 1.808.

42. Whether Inari has proven by clear and convincing evidence that each claim of the ’434 patent is invalid under § 103 as obvious in view of the prior art.

43. Whether the claims of the ’363 patent are invalid under 35 U.S.C. § 112 as a result of Corteva’s assertion of breach of ATCC’s MTA contrary to its promises and obligations made to obtain the ’363 patent under 37 C.F.R. § 1.808.

44. Whether Inari has proven by clear and convincing evidence that each claim of the ’363 patent is invalid under § 103 as obvious in view of the prior art.

45. Whether Inari has proven by clear and convincing evidence that claims 1-4 and 6 of the ’363 patent are invalid for obviousness-type double patenting in view of claims 1-4 and 7 of U.S. Patent No. 9,738,904.

46. Whether the claims of the ’441 patent are invalid under 35 U.S.C. § 112 as a result of Corteva’s assertion of breach of ATCC’s MTA contrary to its promises and obligations made to obtain the ’441 patent under 37 C.F.R. § 1.808.

47. Whether Inari has proven by clear and convincing evidence that each claim of the ’441 patent is invalid under § 103 as obvious in view of the prior art.

48. Whether Inari has proven by clear and convincing evidence that claim 2 of the ’441 patent is invalid for double patenting, as claiming the same invention as claim 9 of the ’363 patent.

49. Whether claims 1-14 of the ’522 patent are invalid under 35 U.S.C. § 112 for lack of written description and enablement.

50. Whether claims 3-11 of the ’522 patent are invalid under 35 U.S.C. § 112 for failure to make a patent deposit.

51. Whether Inari has proven by clear and convincing evidence that each claim of the ’522 patent is invalid under § 103 as obvious in view of the prior art.

52. Whether Inari has proven by clear and convincing evidence that each claim of the ’378 patent is invalid for public use under § 102(b) more than one year before the filing of the patent application.

53. Whether Inari has proven by clear and convincing evidence that the ’378 patent is invalid for lack of enablement under 35 U.S.C. § 112 in view of Corteva’s representation to the European Patent Office that the TC-1507 event cannot be routinely obtained by transformation and reproducing the event without a physical sample would be almost impossible because no deposit was made in the ’378 patent and Corteva restricts any use of the commercially marketed event by compelling purchasers of seeds containing TC-1507 to comply with Technology Use Agreements so the event is not readily available to the public.

54. Whether Inari has proven by a preponderance of the evidence that the Unasserted Utility Patents are unenforceable as to Inari because through this lawsuit Corteva has curtailed access to the patent deposits contrary to its promises and obligations made under 37 C.F.R. § 1.808 to obtain the Unasserted Utility Patents.

**B. Relevant Authority**

55. Patents are presumed valid and a party challenging the validity of a patent must prove invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *see also Microsoft Corp. v. i4i Ltd. P’ship*, 564 U.S. 91, 95 (2011).

1. **Written Description**

56. “The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out

the invention." 35 U.S.C. § 112(a).

57. The Federal Circuit reads 35 U.S.C. § 112 "to give effect to its language that the specification 'shall contain a written description of the invention' and hold[s] that § 112, first paragraph, contains two separate description requirements: a 'written description [i] of the invention, *and* [ii] of the manner and process of making and using [the invention.']" *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344 (Fed. Cir. 2010) (en banc) (emphasis in original).

58. Written description is only satisfied if the four corners of the specification "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Id.* at 1351 (internal citations omitted). Whether a patent satisfies the written description requirement is a question of fact. *Id.*

59. "[A]n adequate written description of a claimed genus requires more than a generic statement of an invention's boundaries." *Id.* at 1349. "[An] adequate written description requires a precise definition, such as by structure, formula, chemical name, physical properties, or other properties, of species falling within the genus sufficient to distinguish the genus from other materials." *Id.* at 1350.

60. "For generic claims, [the Court] set[s] forth a number of factors for evaluating the adequacy of the disclosure, including 'the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue." *Id.* at 1351.

61. "One shows that one is 'in possession' of *the invention* by describing *the invention*, with all its claimed limitations, not that which makes it obvious." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (emphasis in original).

62. "Thus, although written description and enablement often rise and fall together, requiring a written description of the invention plays a vital role in curtailing claims that do not require undue experimentation to make and use, and thus satisfy enablement, but that have not been invented, and thus cannot be described." *Ariad Pharms.*, 598 F.3d at 1352.

2. **Enablement**

63. Enablement is a question of law that may be based on underlying factual findings. *See ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010); *Wyeth & Cordis Corp. v. Abbott Lab'ys*, 720 F.3d 1380, 1384 (Fed. Cir. 2013).

64. Enablement requires that the specification of a patent teach a person of ordinary skill in the art how to make and use the claimed invention without undue experimentation. 35 U.S.C. § 112; *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988). A claim is not enabled when, "at the effective filing date of the patent, one of ordinary skill in the art could not practice their full scope without undue experimentation." *Wyeth & Cordis Corp.*, 720 F.3d at 1384. "Enablement is determined as of the effective filing date of the patent." *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed. Cir. 2003).

65. Whether making and using the invention would have required undue experimentation, and thus whether the disclosure is enabling, is a legal conclusion based upon several underlying factual inquiries. *See In re Wands*, 858 F.2d at 735-57.

66. Determining whether experimentation is "undue" is a factual inquiry based on a balance of the following factors:

a. The breadth of the claims;

b. The nature of the claimed invention;

c. The state of the prior art;

d. The level of skill of one of ordinary skill in the art;

e. The level of predictability of the art;

f. The amount of direction or guidance provided by the inventor;

g. The presence or absence of working examples; and

h. The quantity of experimentation necessary to make or use the invention based on the content of the disclosure.

*Id.* at 737.

3. **Obviousness**

67. Obviousness is a question of law that is based on underlying issues of fact. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007). The determination requires a factual inquiry into: (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of non-obviousness. *Id.* at 399, 406-07 (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)).

68. Patent claims are invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." 35 U.S.C. § 103.

69. The question of obviousness requires consideration of objective indicia of nonobviousness, also referred to as secondary considerations of nonobviousness. *See KSR*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. at 17-18); *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir. 2007); *Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 719 F.3d 1346, 1353-54 (Fed. Cir. 2013). "While th[e] burden of persuasion remains with the challenger, a patentee bears the

burden of production with respect to evidence of secondary considerations of nonobviousness." *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1374 (Fed. Cir. 2018). "Objective evidence of nonobviousness can include copying, long felt but unresolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of skilled artisans before the invention." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013); *see also WBIP, LLC v. Kohler Co.*, 829 F.3d 131, 1328-38 (Fed. Cir. 2016); *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 344 (D. Del. 2010), *aff'd*, 675 F.3d 1324 (Fed. Cir. 2012); *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1245-46 (Fed. Cir. 2010).

70. The evidence of secondary considerations must have a "nexus" to the claims, i.e., there must be "a legally and factually sufficient connection" between the evidence and the patented invention.'" *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) (quoting *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019)).

71. Unexpected results are not shown merely by demonstrating an improvement over the prior art. "Unexpected results that are probative of non-obviousness are those that are 'different in kind and not merely in degree from the results of the prior art.'" *Galderma Lab'ys, L.P. v. Tolmar, Inc.*, 737 F.3d 731, 739 (Fed. Cir. 2013). "Unexpected results must be established by factual evidence. Mere argument or conclusory statements in the specification does not suffice." *In re DeBlauwe*, 736 F.2d 699, 705 (Fed. Cir. 1984).

4. **<u>Prior Public Use</u>**

72. "A person shall be entitled a patent unless . . . the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (pre-AIA). Whether a patent is invalid based on the on-sale

bar or the public-use bar is a question of law based on underlying factual findings. *See Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002).

73. The public use prong applies when, before the critical date, the claimed invention (1) was "in public use" and (2) was "ready for patenting." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-80 (Fed. Cir. 2005). "The proper test for the public use prong of the § 102(b) statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." *Id.*

74. "[I]t is a condition upon an inventor's right to a patent that he shall not exploit his discovery competitively after it is ready for patenting; he must content himself with either secrecy or legal monopoly. . . . But if he goes beyond that period of probation, he forfeits his right regardless of how little the public may have learned about the invention; just as he can forfeit it by too long concealment, even without exploiting the invention at all." *Metallizing Eng'g Co. v. Kenyon Bearing & Auto Parts Co.*, 153 F.2d 516, 520 (2d Cir. 1946).

75. "[O]nce the invention is reduced to practice, there can be no experimental use negation." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F. 3d 1336, 1354 (Fed. Cir. 2002).

5. **Statutory Double Patenting**

76. Statutory double patenting is a question of law for the court. *See Pregis Corp. v. Doll*, 698 F. Supp. 2d 584, 600 (E.D. Va. 2010).

77. Statutory double patenting stems from 35 U.S.C. § 101 and prohibits a later patent from covering the same invention, *i.e.*, identical subject matter, as an earlier patent. *Application of Vogel*, 57 C.C.P.A. 920, 924 (C.C.P.A. 1970); *In re Goodman*, 11 F.3d 1046, 1052 (Fed. Cir. 1993). The "objective test" to determine whether subject matter is identical is "whether one of the

claims could be literally infringed without literally infringing the other. If it could be, the claims do not define identically the same invention." *Application of Vogel*, 57 C.C.P.A. at 924.

6. **Obviousness-Type Double Patenting**

78. "Obviousness-type" double patenting is a "judicially created doctrine adopted to prevent claims in separate applications or patents that do not recite the 'same' invention, but nonetheless claim inventions so alike that granting both exclusive rights would effectually extend the right of patent protection." *Bayer AG v. Dr. Reddy's Lab'ys, Ltd.*, 518 F. Supp. 2d 617, 638-39 (D. Del. 2007).

79. Obviousness-type double patenting is a question of law that may involve subsidiary factual issues that a jury can resolve on an advisory basis. *See Eli Lilly & Co. v. Barr Lab'ys, Inc.*, 251 F.3d 955, 972 (Fed. Cir. 2001).

80. Under obviousness-type double patenting, "a patent is invalid when it is merely an obvious variation of an invention disclosed and claimed in an earlier patent by the same inventor." *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1326 (Fed. Cir. 1999), *amended on reh'g*, 204 F.3d 1359 (Fed. Cir. 2000).

## III. PVP INFRINGEMENT

### A. Issues

81. Whether Corteva has proven by a preponderance of the evidence that Inari infringed the Exhibit A PVP Certificates.

82. Whether Corteva has proven by a preponderance of the evidence that Inari infringed the Exhibit B PVP Certificates.

83. Whether Corteva has proven by a preponderance of the evidence that Inari USA's use of the Exhibit B varieties in the U.S. and Chile constitute acts "concerning propagating material" that involves "further propagation" within the meaning of 7 U.S.C. § 2541(d).

84. Whether Corteva has proven by a preponderance of the evidence that Inari Belgium's use in Belgium of the Exhibit A seeds constitute acts "concerning propagating material" that involves "further propagation" within the meaning of 7 U.S.C. § 2541(d).

85. Whether Inari has proven by a preponderance of the evidence that Corteva consented to the sale by ATCC of the patent deposit seeds corresponding to the Asserted PVP varieties in the United States.

86. Whether Inari has proven by a preponderance of the evidence that its use of Exhibit A patent deposit seeds was bona fide research and exempt from infringement under 7 U.S.C. § 2544.

87. Whether Inari has proven by a preponderance of the evidence that its use of the Exhibit B patent deposit seeds was breeding and exempt from infringement under 7 U.S.C. § 2544.

88. Whether Corteva has proven by a preponderance of the evidence that Inari exported the Exhibit A and B patent deposit seeds into a country that does not protect varieties of corn (7 U.S.C. § 2541(d)).

**B. Relevant Authority**

89. "[I]t shall be an infringement of the rights of the owner of a protected variety to perform without authority, any of the following acts in the United States . . . import the variety into, or export it from, the United States." 7 U.S.C. § 2541(a)(2).

90. Plaintiff has the burden of proving infringement by a preponderance of the evidence. Because the PVPA is regularly discussed in terms of patent law and courts apply patent

law to fill gaps in PVPA jurisprudence, *Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1276 (Fed. Cir. 2006), the patent infringement burden applies, *see Creative Compounds*, 651 F.3d at 1314 ("The patentee bears the burden of proving infringement by a preponderance of the evidence.").

91. "It shall not be an infringement of the rights of the owner of a variety to perform any act concerning propagating material of any kind, or harvested material, including entire plants and parts of plants, of a protected variety that is sold or otherwise marketed with the consent of the owner in the United States, unless the act involves further propagation of the variety or involves an export of material of the variety, that enables the propagation of the variety, into a country that does not protect varieties of the plant genus or species to which the variety belongs, unless the exported material is for final consumption purposes." 7 U.S.C. § 2541(d).

92. The laws of Belgium protect new varieties of maize. Belgium, like the United States, is a member of the International Union for the Protection of New Varieties of Plants ("UPOV") and Belgian Plant Breeder's Rights provide exclusive rights for new maize varieties within Belgian territory. Belgium Royal Decree of May 12, 2015 (WIPO Lex. No. BE168) (INARI_0000217232); Belgium Economic Law Code of February 28, 2013 (WIPO Lex. No. BE176) Article XI.105, Article XI.120 (INARI_0000217248).

93. Chile is a member of UPOV and provides protection on new varieties of maize under a Plant Breeder's Right certificate. Decree Approving Regulations under Law 19.342 on the Right of Breeders of New Plant Varieties (WIPO Lex No. CL050) (INARI_0000217280); Chile Law No. 19.342 (WIPO Lex No. CL014) Article 8, Article 11 (INARI_0000217273)).

94. "The use and reproduction of a protected variety for plant breeding or other bona fide research shall not constitute an infringement of the protection provided under this chapter." 7

U.S.C. § 2544. A protected variety may, therefore, be used for research and breeding purposes. *See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 140 (2001) (describing the difference between patent law and the PVPA including the research exemption).

95. The research and breeding exemption of 7 U.S.C. § 2544 is an exemption to infringement for exporting a protected variety under 7 U.S.C. § 2541(a)(2). Both § 2541 and § 2544 are in Subchapter III, Part K, Infringement of Plant Variety Protection, of the PVPA. The first paragraph § 2541(a), titled "Acts constituting infringement," states: "***Except as otherwise provided in this subchapter, it shall be an infringement***." 7 U.S.C. § 2541(a) (emphasis added). The § 2544 research exemption in the subchapter applies to all infringing acts recited in § 2541, including export, when the varieties are used for breeding or research. The breadth of this statutory exemption as compared to the Patent Act was recognized by the Supreme Court in *J.E.M. Ag Supply*, 534 U.S. 124 at 140 (2001).

96. As one court has put it, the PVPA "seeks to protect owners of varieties from the distribution of the variety for the purpose of production as distinguished from distribution for the purpose of development." *AGSouth Genetics, LLC v. Georgia Farm Servs., LLC,* 22 F. Supp. 3d 1342, 1348 (M.D. Ga. 2014).

97. "§ 2541(d) would exempt any act that does not involve production – i.e. propagation." *AGSouth Genetics, LLC v. Georgia Farm Servs., LLC*, 22 F. Supp. 3d 1342, 1348 (M.D. Ga. 2014) (equating "further propagation" as recited in 7 U.S.C. § 2541(d) with "production," as opposed to acts involving development).

98. Section 2541(d) applies where propagating or harvested material of a protected variety "is sold or otherwise marketed with the consent of the owner in the United States." 7 U.S.C. § 2541(d). ATCC sells patent deposit samples to the public for a fee pursuant to standard

sales orders, with the depositor's consent. *AGSouth Genetics, LLC v. Georgia Farm Servs., LLC*, 22 F. Supp. 3d 1342 (M.D. Ga. 2014) (concerning the saving and resale of crop seed and not addressing samples distributed by a public depository).

99. Authority declining to apply the research exemption of 7 U.S.C. § 2544 where biological materials "were not properly, nor legally obtained" does not govern materials lawfully purchased from a patent depository. *Ariz. Grain Inc. v. Barkley Ag Enters. LLC*, No. CV-18-03371, 2021 WL 3144896, at *4 (D. Ariz. July 23, 2021).

## IV. PVP INVALIDITY

### A. Issues

100. Whether Inari has proven by clear and convincing evidence that the Exhibit A PVP Certificates are invalid because of the authorized sale and disposition of harvested material of hybrids of the covered varieties more than one year before the filing of the PVP applications under 7 U.S.C. §§ 2401(b)(3), 2402(a)(1).

101. Whether Inari has proven by clear and convincing evidence that the Exhibit B PVP Certificates are invalid because of the authorized sale and disposition of harvested material of hybrids of the covered varieties more than one year before the PVP applications under 7 U.S.C. §§ 2401(b)(3), 2402(a)(1).

### B. Relevant Authority

102. Certificates for plant variety protection are presumed valid and the burden of proving invalidity rests with the challenging party. 7. U.S.C. § 2562. The challenging party has the burden of proving invalidity by clear and convincing evidence. Because the PVPA is regularly discussed in terms of patent law and courts apply patent law to fill gaps in PVPA jurisprudence, *Syngenta*, 457 F.3d at 1276, the patent infringement burden applies, *see i4i Ltd. P'ship*, 564 U.S.

at 95 (patents are presumed valid and a party challenging the validity of a patent must prove invalidity by clear and convincing evidence).

103. A PVP certificate may be found invalid for failing to comply with any ground specified as a condition for protectability. 7 U.S.C. § 2562(b)(2). To obtain PVP protection on a variety, the variety must be new, distinct, uniform, and stable. 7 U.S.C. § 2402.

104. A variety is new when the variety or harvested material of the variety has not been sold or otherwise disposed of to other persons, by or with the consent of the breeder, for purposes of exploiting the variety in the United States, more than one year before the filing of the application for protection. 7.U.S.C. § 2402(a)(1). A sale or disposition of hybrid seed is considered a sale or disposition of harvest material of the varieties from which the seed was produced. 7 U.S.C. § 2401(b)(3).

## V. EXHAUSTION

### A. Issues

105. Whether Inari has proven by a preponderance of the evidence that Corteva's authorization of ATCC to furnish and sell the patent deposit seeds without restriction exhausted Corteva's right to assert that Inari infringed the Asserted Patents by acquiring or exporting the patent deposit seeds.

106. Whether Inari has proven by a preponderance of the evidence that Corteva's authorization of ATCC to furnish and sell the patent deposit seeds without restriction exhausted Corteva's right to assert that Inari infringed the Exhibit A PVP Certificates by acquiring or exporting the Exhibit A seeds.

107. Whether Inari has proven by a preponderance of the evidence that Corteva's authorization of ATCC to furnish and sell the patent deposit seeds without restriction exhausted

Corteva's right to assert that Inari infringed the Exhibit B PVP Certificates by acquiring, using, or exporting the Exhibit B seeds.

**B. Relevant Authority**

1. **Authorization by Contract**

108. "If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity." *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1345–46 (Fed. Cir. 2020). Likewise, "[e]xtrinsic evidence cannot write a provision into the contract that is not there." *MiiCs & Partners Am., Inc. v. Toshiba Corp.*, 274 F. Supp. 3d 247, 251 (D. Del. 2017), *aff'd*, 748 F. App'x 1026 (Fed. Cir. 2019).

2. **Patent Exhaustion**

109. Congress established under the Patent Act a grant of patent including an exclusionary right for certain acts by others done "without authority" of the patent owner. 35 U.S.C. § 271(a) ("whoever *without authority* makes, uses, offers to sell, or sells any patented invention … infringes the patent") (emphasis added).

110. The common law principle against restraints on alienation takes precedence such that Congressionally created rights of exclusion are exhausted when a protected article is sold by the patent owner. *Impression Prods., Inc. v. Lexmark Int'l.., Inc.*, 581 U.S. 360, 370-71 (2017) ("This well-established exhaustion rule marks the point where patent rights yield to the common law principle against restraints on alienation."). More generally:

> When a patentee sells one of its products, however, the patentee can no longer control that item through the patent laws—its patent rights are said to "exhaust." The purchaser and all subsequent owners are free to use or resell the product just like any other item of personal property, without fear of an infringement lawsuit.
> . . . . We conclude that a patentee's decision to sell a product exhausts all of its patent rights in that item, regardless of any restrictions the patentee purports to impose or the location of the sale.

*Lexmark*, 581 U.S. at 366*; see also Keurig, Inc. v. JBR, Inc.*, C.A. No. 11-11941-FDS, 2013 WL 2304171, at *10 (D. Mass. May 24, 2013), *aff'd*, 558 F. App'x 1009 (Fed. Cir. 2014) (patent exhaustion applied to the claim of direct infringement and, thus, no indirect infringement claim could lie); *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, C.A. No. 17-189-LPS-CJB, 2019 WL 4451364, at *3 (D. Del. Sept. 13, 2019) (same); *Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008).

111. "Once a patentee decides to sell—on its own or through a licensee—that sale exhausts its patent rights, regardless of any post-sale restrictions the patentee purports to impose, either directly or through a license." *Lexmark*, 581 U.S. at 376. A sale made in the scope of the rights granted to the selling party is authorized. *Id.*; *Quanta*, 553 US at 638.

112. A once-authorized and exhausting sale is not converted into an unauthorized sale by a subsequent breach of an agreement between the patentee and the distributor, or by the buyer's subsequent conduct. *Lexmark*, 581 U.S. at 376; *Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357, 1370 (Fed. Cir. 2011) (licensee's subsequent breach does not make an authorized sale unauthorized).

113. An exhausting sale does not immunize the purchaser's making of new copies of the particular article sold. *Bowman v. Monsanto Co.*, 569 U.S. 278, 283 (2013) (patent exhaustion applies only to the "particular article" sold, *i.e.*, particular seeds, and not to the ability to prevent the buyer from making new copies of the patented item, *i.e.*, growing subsequent generations of plants).

114. The exhaustion doctrine "is not a presumption about the authority that comes along with a sale; it is instead a limit on 'the scope of the *patentee's rights*." *Lexmark*, 581 U.S. at 374 (citing *United States v. General Elec. Co.*, 272 U.S. 476, 489 (1926)) (emphasis in original).

3. **<u>PVPA Exhaustion</u>**

115. Congress established under the Plant Variety Protection Act a grant of certificate protection of a variety including an exclusionary right for certain acts by others done "without authority" of the variety owner. 7 U.S.C. § 2541 ("it shall be an infringement of the rights of the owner of a protected variety to perform without authority, any of the following acts ….").

116. The common law principle against restraints on alienation takes precedence such that Congressionally created rights of exclusion are exhausted when a protected article is sold by the certificate owner or by another with the certificate owner's consent. *J.E.M. Ag Supply*, 534 U.S. at 143-44, expressly recognized that the PVPA, similar to patent law, provided for certain statutory rights of exclusion encompassed by the exclusionary rights afforded under a utility patent. *See also Syngenta*, 457 F.3d at 1276 (recognizing that "the PVPA is regularly discussed in terms of patent law and the Federal Circuit applies patent law to fill in the gaps in PVPA jurisprudence.").

## VI. BREACH OF CONTRACT

### A. Issues

117. Whether Delaware, Virginia, or Massachusetts law governs the interpretation of the 2017 MTA, which contains no choice-of-law provision.

118. Whether Delaware, Virginia, or Massachusetts law governs the interpretation of the 2019 MTA, which contains no choice-of-law provision.

119. Whether any actual conflict exists among Delaware, Virginia, and Massachusetts law governing contract interpretation or third-party beneficiary standing such that the choice of law is outcome determinative.

120. Whether the merger clause of the 2022 MTA operates retroactively to supersede the 2017 and/or 2019 MTAs with respect to purchases and conduct predating its execution.

121. Whether the 2022 MTA applies to Inari USA's use of seeds purchased under the 2017 MTA, and during which time period(s).

122. Whether the 2022 MTA applies to Inari Belgium's use of patent deposit seeds purchased under the 2019 MTA after execution of the 2022 MTA.

123. Whether Corteva, a non-party to the 2017 MTA, has standing to enforce the transfer and commercial use restrictions of that agreement as a third-party beneficiary.

124. Whether Corteva, a non-party to the 2019 MTA, has standing to enforce the transfer and commercial use restrictions of that agreement as a third-party beneficiary.

125. Whether Corteva waived any third-party beneficiary rights under the MTAs it may have had.

126. Whether the terms of the 2017 and/or 2019 MTA conflict with the Budapest Treaty and 37 C.F.R. §§ 1.801–1.808.

127. Whether restriction on transfer of patent deposit samples is permissible under the Budapest Treaty and 37 C.F.R. § 1.808.

128. Whether restriction on commercial use of patent deposit samples is permissible under the Budapest Treaty and 37 C.F.R. § 1.808.

129. Whether Corteva has proven by a preponderance of the evidence that Inari Belgium's activities with Exhibit A seeds constitutes a prohibited "Commercial Use" under the 2019 MTA.

130. Whether Corteva has proven by a preponderance of the evidence that Inari USA's transfer of off-patent, patent deposit seeds of Exhibit B varieties for breeding activities constitutes a "transfer" or "Commercial Use" under the 2017 MTA.

131. Whether Corteva has proven by a preponderance of the evidence that Inari's use of patent deposits PTA-11506, PTA-11384, PTA-11336, and PTA-12006 constitutes a "Commercial Use" under the 2019 MTA.

132. Whether Corteva has proven by a preponderance of the evidence that the patent deposits containing GM events were transferred under the 2019 MTA.

133. Whether Corteva has proven by a preponderance of the evidence that the Exhibit A patent deposits were transferred under the 2019 MTA.

134. Whether Corteva has proven by a preponderance of the evidence that the Exhibit B seeds were transferred under the 2019 MTA.

135. Whether the "Commercial Use" and "transfer" restrictions in the 2017 MTA and 2019 MTA as applied to patent deposits conflict with the terms of the Budapest Treaty and applicable United States Laws and Regulations such that the terms of the Budapest Treaty and applicable United States Laws and Regulations apply to ATCC patent deposits.

136. Whether the conferral of any benefit on Corteva was a material part of the purpose of the 2017 or 2019 MTA.

137. Whether the provision of the 2019 MTA stating that none of its provisions are intended to create, nor shall be deemed or construed to create, any relationship between ATCC or Purchaser other than that of independent entities contracting with each other solely for the purpose of effecting the provisions of the MTA forecloses intended third-party beneficiary status.

138. Whether, if Corteva has standing as a third-party beneficiary, its rights are subject to the terms of the agreements it invokes, including the Limitation of Liability provision and its exclusion of indirect, special, incidental, or consequential damages, and the provision committing disputes arising under the agreements exclusively to the United States District Court for the Eastern District of Virginia or the state courts of Virginia for Prince William County.

139. Whether Corteva has proven damages, an essential element of its breach of contract claim, with reasonable certainty.

140. Whether Corteva is entitled to specific performance, which requires proof of an enforceable contract by clear and convincing evidence and the absence of an adequate remedy at law, and whether Corteva's quantified claims for money damages establish that its remedies at law are adequate.

**B. Relevant Authority**

1. **<u>Cause of Action</u>**

141. Under Virginia law, a plaintiff asserting a breach of contract claim must establish (i) a legally enforceable obligation of the defendant to the plaintiff, (ii) the defendant's violation or breach of that obligation, and (iii) injury or damage to the plaintiff caused by the breach. *Filak v. George*, 267 Va. 612, 619 (2004); *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009). The plaintiff bears the burden of proving each element by a preponderance of the evidence, and must plead facts establishing the causal connection between the alleged breach and the claimed injury rather than asserting that connection conclusorily. *Filak*, 267 Va. at 619.

142. Under Delaware law, a plaintiff must establish by a preponderance of the evidence the following elements: (i) a contractual obligation, (ii) whether express or implied, (iii) a breach

of that obligation, and (iv) resulting damage to the plaintiff. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

143. Under New York law, a plaintiff must establish by a preponderance of the evidence the following elements: (i) the existence of a contract, (i) the plaintiff's performance thereunder, (iii) the defendant's breach thereof, and (iv) resulting damages. *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 426 (1st Dep't 2010). A plaintiff must also identify the specific contractual provision alleged to have been breached; generalized allegations that a party failed to perform under an agreement are insufficient. *Gianelli v. RE/MAX of N.Y., Inc.*, 144 A.D.3d 861, 862 (2d Dep't 2016).

2. **Choice of Law**

144. Under Delaware law, when a contract does not contain a choice of law provision, courts apply the "most significant relationship" test from the Restatement (Second) of Conflict of Laws to determine the governing law. *Automated Precision, Inc. v. Pare*, 631 F. Supp. 3d 185, 196 n.2 (D. Del. 2022). This test evaluates several factors, including: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.*; *see also Naghiu v. Inter-Cont'l Hotels Grp., Inc.*, 165 F.R.D. 413, 420-22 (D. Del. 1996) (applying factors).

145. Under Delaware law, where a contract does contain a choice of law provision, Delaware follows Restatement (Second) of Conflict of Laws § 187. The law of the state chosen by the parties governs their contractual rights and duties unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to a fundamental

policy of a state that has a materially greater interest in the determination of the particular issue and whose law would govern under § 188 in the absence of an effective choice. Restatement (Second) of Conflict of Laws § 187(2). Both conditions must be satisfied before a court will decline to give effect to the parties' choice.

146. Under New York law governing the 2022 MTA, a merger clause in a later agreement does not cause the terms of the later agreement to have retroactive effect. The purpose of a merger provision is to require full application of the parol evidence rule to bar the introduction of extrinsic evidence, including earlier agreements between the parties, to vary or contradict the terms of the writing. *Primex Int'l Corp. v. Wal-Mart Stores*, 89 N.Y. 2d 594, 599 (1997). Absent an agreement by the parties to the contrary, a merger clause does not retroactively revoke the terms of an earlier agreement. *Id.* at 599-600 (merger clause in 1995 agreement that did not provide for right of arbitration did not retroactively render arbitration clauses in 1990 and 1993 agreements unenforceable); *see also Air Support Int'l, Inc. v. Atlas Air, Inc.*, 54 F. Supp. 2d 158, 166 (E.D.N.Y. 1999) (clause that later agreement "supersedes any and all previous Agreements between the parties" did not waive, release or relinquish legal claims that arose out of prior agreements); *Berkshire Bank v. Pioneer Bank*, No. 901358-20, 2021 WL 2763120, at *18 (N.Y. Sup. Ct. July 1, 2021) (superseding later agreement will not discharge obligations created under a prior agreement unless evidence shows this was intended by the parties).

3. **<u>Third Party Beneficiary Standing</u>**

147. The contract must include a "covenant or promise made for the benefit" of the third party and the contracting parties must have "clearly and definitely intended [to] confer a benefit" on the third party. *Collins v. First Union Nat'l Bank*, 272 Va. 744, 751, 636 S.E.2d 442, 446-47 (2006); *Env't Staffing Acquisition Corp. v. B & R Constr. Mgmt., Inc.*, 283 Va. 787, 793 (2012);

Va. Code Ann. § 55.1-119; *see also Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 229 (4th Cir. 2000) (applying VA law: the third party "must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him").

148. To establish standing as a third-party beneficiary, Corteva must establish that ***both*** Inari ***and*** ATCC clearly and definitely intended that the third-party benefit from the terms of the agreement. *Copenhaver v. Rogers*, 238 Va. 361, 367, (1989) ("The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party…."); *accord Rottlund Homes of N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.*, 243 F. Supp. 2d 145, 152 (D. Del. 2003); *Am. Fin. Corp. v. Comput. Scis. Corp.*, 558 F. Supp. 1182, 1185 (D. Del. 1983) (unilateral intent of one party insufficient).

149. Under Delaware law, a third party may enforce a contractual promise only if it is an intended beneficiary of the contract, as opposed to an incidental beneficiary. *Triple C Railcar Serv., Inc. v. City of Wilmington*, 630 A.2d 629, 633 (Del. 1993). "To create third party beneficiary rights, a contract should confer an intended benefit on the third party, and the conferral of such benefit must be a material part of the contract's purpose." *Greater New York Mut. Ins. Co. v. Travelers Ins. Co.*, No. CIV. 10-01107-LPS, 2011 WL 4501207, at *3 (D. Del. Sept. 28, 2011).

150. Under New York law, a party seeking to sue as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for the third party's benefit, and (3) that the benefit is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the third party if the benefit is lost. *Walton v. Comfort Sys. USA (Syracuse), Inc.*, 155 F.4th 144, 157-58 (2d Cir. 2025). The MTAs impose no duty to compensate Contributors; they instead limit liability in Contributors' favor and disclaim any relationship beyond that of the contracting parties.

151. "The four corners of [the agreement reveal] whether the contracting parties clearly and definitely intended to directly benefit a third party." *Radosevic v. Va. Intermont Coll.*, 651 F. Supp. 1037, 1039 (W.D. Va. 1987).

152. A third-party beneficiary can only enforce those promises made directly for his benefit. *Hubbard v. Jenkins*, 76 Va. App. 533, 553 (2023) (Raphael, J., concurring); *Env't. Staffing*, 283 Va. at 795 (merely benefiting from a contract does not entitle a party to enforce it).

153. References to a putative third-party beneficiary in a contract does not *per se* evince a clear and definite intent of the parties to directly benefit the third party. References to a third-party that are representations of fact, without a promise to the third-party that can be fairly implied, cannot create intended third-party beneficiary rights. *See Bank of Am. v. Musselman*, 240 F. Supp. 2d 547, 554 (E.D. Va. 2003); *Food Lion*, 202 F.3d at 229 (4th Cir. 2000); *accord Env't Staffing*, 283 Va. at 795 ("[a] third person cannot maintain an action upon a contract merely because he would receive a benefit from its performance"; there must be an affirmative promise directed to the third party's benefit).

154. The intention to confer third-party beneficiary rights should also not be inferred from the indemnity language of a contract. *Hanover Ins. Co. v. Corrpro Cos.*, 312 F. Supp. 2d 816, 820-21 (E.D. Va. 2004); *Maersk Line Ltd. v. Care*, 271 F. Supp. 2d 818, 824 (E.D. Va. 2003); *Copenhaver*, 238 Va., at 367-68.

155. A third-party beneficiary's rights are subject to any claim or defense arising from its own conduct or agreement, and a beneficiary may render the promisor's duty inoperative from the beginning by disclaimer. Restatement (Second) of Contracts §§ 302, 306, 309(4); *Ellis v. Holy Comforter Saint Cyprian Cmty. Action Grp.*, 153 F. Supp. 3d 338, 342 (D.D.C. 2016) (quoting *United States v. Weaks*, 388 F.3d 913, 917 (D.C. Cir. 2004)).

156. An intended beneficiary takes the contract as written and subject to its terms, including its limitation of liability, damages exclusion, and forum selection provisions. Restatement (Second) of Contracts §§ 302, 306, 309(4).

## VII. UNFAIR OR DECEPTIVE ACTS UNDER MASS GEN. CH. 93A

### A. Issues

157. Whether Corteva has proven by a preponderance of the evidence that the conduct alleged to constitute an unfair or deceptive act occurred primarily and substantially within the Commonwealth of Massachusetts.

158. Whether Corteva has proven by a preponderance of the evidence that an unfair or deceptive act occurred in the conduct of trade or commerce.

159. Whether Corteva has proven by a preponderance of the evidence that it was injured and that Inari's alleged acts caused the injury.

### B. Relevant Authority

160. Chapter 93A prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass Gen. Law c. 93A § 2. To prevail on a Chapter 93A claim, the plaintiff must show by a preponderance of the evidence: "first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury." *Rafferty v. Merck & Co., Inc.*, 92 N.E.3d 1205, 1222 (Mass. 2018).

161. "Trade" and "commerce" are defined in § 1(b) to include "the advertising, the offering for sale, . . . the sale, . . . or distribution of any services and any property, tangible or intangible, . . . and any other article, commodity, or thing of value wherever situate, and shall

include any trade or commerce directly or indirectly affecting the people of this [C]ommonwealth." Mass Gen. Law c. 93A § 1(b).

162. An act or practice is deceptive if it could reasonably be found to have caused a person to act differently from the way that person otherwise would have acted. *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 394 (2004).

163. In determining whether acts or practices are unfair courts consider the following factors: (1) whether the conduct falls within some established concept of unfairness, a standard a material misrepresentation would satisfy; (2) whether the act or practice was immoral, unethical, oppressive, unscrupulous, or otherwise unconscionable; and (3) whether the act or practice caused substantial injury to competitors or other businesspersons. *See PMP Associates, Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975) (applying the Federal Trade Commission's unfairness standards approved in *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972)); *accord Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 778 (1986). In making the fairness determination, the court focuses on the nature of the challenged conduct and on the purpose and effect of that conduct. *Mass. Emp'rs Ins. Exch. v. Propac-Mass, Inc.*, 420 Mass. 39, 42-43 (1995). The Supreme Judicial Court has expressly described the earlier "level of rascality" and "rancid flavor of unfairness" formulations as uninstructive in deciding questions of unfairness under Chapter 93A. *Id.* (citing *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498 (1979), and *Atkinson v. Rosenthal*, 33 Mass. App. Ct. 219, 226 (1992)).

164. Chapter 93A authorizes an award of multiple damages where the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of section Two. Mass. Gen. Laws ch. 93A, § 11. An unfair or deceptive act is willful if the actor intends to commit an unfair or deceptive act, and knowing if the actor, "whatever [its] intent, knows that by

doing so [it] is committing an unfair or deceptive act." *See* Massachusetts Model Civil Jury Instructions, Instruction 6.01, Chapter 93A Consumer Protection: Willful or Knowing Violation (June 2004).

165. "Section 11 of Chapter 93A provides that no action shall be brought or maintained" under the statute unless the complained-of conduct "occurred primarily and substantially within the Commonwealth." *See Sonoran Scanners, Inc. v. PerkinElmer, Inc.*, 585 F.3d 535, 545-46 (1st Cir. 2009) (fact that defendants' senior management and in-house counsel were based in Massachusetts and "made all of the important decisions" was insufficient to make Massachusetts center of gravity for Chapter 93A claim where plaintiff's alleged losses and defendants' alleged deceptive conduct occurred in Arizona); *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 638 (Mass. 1985) (alleged deceptive or unfair conduct did not occur primarily in Massachusetts because, even though allegedly deceptive phone calls were made from Massachusetts, the calls were received and acted on in New York and plaintiffs' losses occurred in New York).

166. A breach of contract, without more, does not amount to a violation of Chapter 93A. *Duclersaint v. Fed. Nat'l Mortg. Ass'n*, 427 Mass. 809, 814 (1998).

167. Whether the actions and transactions constituting the alleged violation occurred primarily and substantially within the Commonwealth is determined by the center of gravity of the circumstances that give rise to the claim. *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 470-73 (2003).

168. There is no right to a jury trial on a claim under Chapter 93A. *Nei v. Burley*, 388 Mass. 307, 315 (1983).

## VIII. CONVERSION

### A. Issues

169. Whether Corteva has standing to assert a cause of action for conversion.

170. Whether Corteva has proven by a preponderance of the evidence that Inari intentionally and wrongfully exercised control or dominion over the property.

171. Whether Corteva has proven by a preponderance of the evidence that it retained a personal property or possessory right to the patent deposit seed after patent issuance and after ATCC sold the patent deposit seeds to Inari.

172. Whether Corteva has proven by a preponderance of the evidence that it was damaged by Inari's conduct.

173. Whether Corteva has proven by a preponderance of the evidence that Inari did not acquire possession of the property under a good-faith claim of right.

174. Whether Corteva waived any claim for conversion by making patent seed deposits with the ATCC and securing patents on such deposits.

175. Whether Corteva's conversion claim, to the extent it is premised on the acquisition or use of subject matter protected, disclosed, or made publicly available under US patent law and the Budapest Treaty, conflicts with and is preempted by federal law.

176. Whether the measure of any conversion damages is the fair market value of the property at the time and place of the alleged conversion, as established by the prices at which ATCC sold the samples.

### B. Relevant Authority

177. "An action for conversion can be maintained only by the person having a property interest in and entitled to the immediate possession of the item alleged to have been wrongfully

converted." *Economopoulos v. Kolaitis*, 259 Va. 806, 814 (2000) (quoting *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994)); *see generally* Restatement (Second) of Torts § 225 (1965) ("For a conversion the actor is subject to liability to one who at the time was entitled to immediate possession of the chattel.").

178. In Virginia, the elements of conversion once standing is established are "(i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession." *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (citing *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75-76 (1956)).

179. A plaintiff must have a proprietary right or interest at the time of the alleged conversion. *Airlines Reporting Corp.*, 155 F. Supp. 2d at 664.

180. To the extent that Corteva claims that it has a proprietary interest in the patent deposit seeds because of Corteva's patent and PVP rights covering those patent deposit seeds, or to the extent that Corteva claims Inari wrongfully exerted dominion and control over the patent deposit seeds because it breached contractual restrictions imposed to protect Corteva's patent and PVP rights, Corteva's conversion claim is preempted by federal law. *See, e.g.*, *BASF Agrochemical Prods. v. Unkel*, C.A. No. 05 cv 1478, 2006 WL 3533133, *6-7 (W.D. La. Dec. 7, 2006); *Malik v. Lynk, Inc.*, No. Civ. A. 99-2015-KHV, 1999 WL 760217, at *3 (D. Kan. Aug. 18, 1999); *Home Gambling Network, Inc. v. Piche*, Cv. No. 2:05-610-DAE, 2007 WL 9734421, at *10 (D. Nev. Mar. 30, 2007).

181. States may not offer patent-like protection to subject matter that the federal patent laws leave unprotected or dedicate to the public, and state remedies that conflict with the

accomplishment of the purposes of the federal scheme are preempted. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156-57 (1989).

182. The measure of damages in an action for conversion is the fair and reasonable market value of the property at the time of the conversion. *Jackson v. Innes*, 231 Mass. 558, 560 (1919).

## IX. ESTOPPEL

### A. Issues

183. Whether Corteva is estopped from claiming that Inari infringed the Asserted Patents and Asserted PVP Certificates based on the alleged activities of obtaining patent deposit seeds, growing the seeds, and sequencing the DNA because of statements Corteva made to the U.S. Patent and Trademark Office in PGR2024-00019.

184. Whether Corteva is estopped from asserting that Inari infringed the Asserted PVP Certificates because Corteva represented in patents for which it made patent deposits that the deposits would be available to the public without restriction upon patent grant.

185. Whether Corteva is estopped from asserting that Inari infringed the Asserted Exhibit B PVP Certificates because the patents for which the patent deposits were made expired and available to the public to practice the inventions claimed.

186. Whether Corteva is estopped from asserting that Inari infringed the Asserted Patents by exporting the patent deposit seeds to Belgium because Corteva made the deposits under the Budapest Treaty and obtained European Patents registered in Belgium referencing the patent deposits that covenanted that the deposits would be available to the public without restriction.

187. Whether Corteva is estopped from asserting that Inari infringed the Asserted PVP Certificates and Asserted Patents because Corteva engages in the same acts that it alleges are infringing when performed by Inari but non-infringing when performed by Corteva.

**B. Relevant Authority**

1. **Legal Estoppel**

188. The defendant bears the burden of proving its defense of legal estoppel (or implied license) by a preponderance of the evidence. *Sprint Commc'ns Co., L.P. v. Mediacom Commc'ns Corp.*, C.A. No. 17-1736-RGA, 2021 WL 982737, at *1 (D. Del. Mar. 16, 2021).

189. Whether an implied license exists is a question of law. *Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997).

190. "Legal estoppel refers to a narrower category of conduct encompassing scenarios where a patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted." *Id.* at 1581. The grantor is estopped from taking back to any extent that for which it has already received consideration. *AMP Inc. v. United States*, 389 F.2d 448, 452 (Cl. Ct. 1968), *cert. denied*, 391 U.S. 964 (1968).

191. A formal finding of equitable estoppel is not a prerequisite to legal estoppel. *See id.* at 453-454; *Wang Lab'ys* 103 F.3d at 1581 (Fed. Cir. 1997). The primary difference between the analysis for legal estoppel and that for equitable estoppel is that legal estoppel is based on an affirmative grant of consent or permission to make, use, or sell. Equitable estoppel, on the other hand, focuses on "misleading" conduct suggesting that the patentee will not enforce patent rights. *Id.*

192. To demonstrate legal estoppel, the defendant must put forward evidence to prove: "(1) the patentee, through statements or conduct, gave an affirmative grant of consent or

permission to [infringe] to the alleged infringer; (2) the alleged infringer relied on that statement or conduct; and (3) the alleged infringer would, therefore, be materially prejudiced if the patentee is allowed to proceed with its claim." *Winbond Elecs. Corp. v. Int'l Trade Comm'n,* 262 F.3d 1363, 1374 (Fed. Cir. 2001), opinion corrected, 275 F.3d 1344 (Fed. Cir. 2001).

2. **Judicial Estoppel**

193. Judicial estoppel may be imposed if: "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001).

194. Judicial estoppel is "designed to prevent litigants from 'playing "fast and loose with the courts." . . . [A] party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (citations omitted).

195. Privity and detrimental reliance are not required for the application of judicial estoppel. *Id.* at 360. Where the contentions asserted by a litigant are mutually exclusive, it is irrelevant that they are asserted against diverse parties for purposes of determining judicial estoppel. *Id.*

196. Judicial estoppel "bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 50 (3d Cir. 2018).

197. The application of judicial estoppel is particularly appropriate where the party has benefited from its original position. *Delgrosso v. Spang & Co.*, 903 F.2d 234, 242 (3d Cir. 1990); *Murray v. Silberstein*, 882 F.2d 61, 66 (3d Cir. 1989); *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1375 (Fed. Cir. 2023), *cert. denied*, 144 S. Ct. 2563 (2024); *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007). Where a tribunal acted on reliance of the party's initial assertion, the threat to the integrity of the judicial process from subsequent assertion of an incompatible position is more immediate. *See Scarano v. Cent. R. Co. of N. J.*, 203 F.2d 510, 513 (3d Cir. 1953); *Tr. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010) ("Judicial estoppel applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts.").

## X. UNENFORCEABILITY DUE TO UNCLEAN HANDS

### A. Issues

198. Whether Inari has proven by a preponderance of the evidence that the Asserted PVP Certificates are unenforceable as to Inari because of Corteva's Unclean Hands.

199. Whether Inari has proven by a preponderance of the evidence that the Asserted Patents are unenforceable as to Inari because of Corteva's Unclean Hands.

200. Whether Inari has proven by a preponderance of the evidence that the Unasserted Utility Patents are unenforceable as to Inari because of Corteva's Unclean Hands.

### B. Relevant Authority

201. Courts are "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Keystone Driller Co. v. Gen. Excavator, Co.*, 290 U.S. 240, 245-46 (1933). A determination of unclean hands may be reached when misconduct of a party seeking relief "has immediate and necessary relation to the equity that he seeks in respect

of the matter in litigation," *i.e.*, "for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court." *Id.* at 245.

202. Under the equitable principle of unclean hands, a court may refuse to grant relief to one who is a wrongdoer with respect to the subject matter of the suit. *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018). The primary principle guiding application of the unclean hands doctrine is that the alleged inequitable conduct must have a relationship to the matters before the court for resolution. *See Meds. Co. v. Teva Parenteral Meds., Inc.*, C.A. No. 09-750-ER, 2011 WL 13135647, at *23 (D. Del. Aug. 26, 2011), *report and recommendation adopted*, C.A. No. 09-750-ER, D.I. 494 (D. Del. July 19, 2011).

## XI. DAMAGES

### A. Issues

203. Whether Corteva has carried its burden of proving reasonable royalty damages by a preponderance of the evidence and the amount of any such damages.

204. Whether Corteva has carried its burden of proving it is entitled to damages for PVP infringement by a preponderance of the evidence and the amount of any such damages.

205. Whether Inari has proven by a preponderance of the evidence that Corteva knew or should have known of the alleged infringing acts more than one year prior to filing the complaint for infringement and is not entitled to recovery under 7 U.S.C. § 2566.

206. Whether Corteva has carried its burden of proving it is entitled to damages for breach of contract by a preponderance of the evidence and the amount of any such damages.

207. Whether Corteva has carried its burden of proving it is entitled to unjust enrichment damages for deceptive or unfair acts by a preponderance of the evidence and the amount of any such damages.

208. Whether Corteva has carried its burden of proving it is entitled to actual damages for deceptive and unfair acts by a preponderance of the evidence and the amount of any such damages.

209. Whether Corteva has carried its burden of proving it is entitled to damages for conversion by a preponderance of the evidence and the amount of any such damages.

210. Whether Corteva has carried its burden of proving it is entitled to injunctive relief in light of Corteva's unclean hands in performing the same acts it accuses Inari of performing.

211. Whether either party has established that this is an exceptional case, and whether either party is entitled to attorney fees pursuant to 35 U.S.C. § 285, and the amount.

212. Whether either party has established that it is entitled to costs, and the amount.

**B. Relevant Authority**

1. **Patent Damages**

213. Under 35 U.S.C. § 284, a prevailing plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."

214. The amount of damages "is a question of fact on which the patent owner bears the burden of proof." *See BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d. 1214, 1217 (Fed. Cir. 1993); *see also SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). A plaintiff must prove its damages amount by a preponderance of the evidence. *See Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017).

215. Depending on the circumstances of the case, compensatory damages may take the form of (1) lost profits, (2) an established royalty, or (3) a reasonable royalty. *See Smithkline*, 926 F.2d at 1163, 1167, n.5; *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983).

216. Once a patent holder is compensated via an award of patent damages, no additional recovery may be had from the paying infringer or any other direct or indirect infringer. *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1121 (Fed. Cir. 1996).

217. The determination of a reasonable royalty is an issue of fact that depends on the particular circumstances of each case. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996). Corteva must prove the amount of reasonable royalty by a preponderance of the evidence. *See SmithKline*, 926 F.2d at 1164.

218. A reasonable royalty may be based on a hypothetical negotiation that "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). "[P]arties in a hypothetical negotiation are presumed to have perfect knowledge of all facts and circumstances, some of which were unknown during the actual patent negotiations and acquisition." *Intell. Ventures I LLC v. Check Point Software Techs. Ltd.*, 215 F. Supp. 3d 314, 324–25 (D. Del. 2014) (citing *Mobile Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994)).

219. Evidence dated post-infringement may also be properly considered because such information provides "a legitimate aid to the appraisal of the value of the patent" at the time of the hypothetical negotiation. *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 697–98 (1933) ("[A] different situation is presented if years have gone by before the evidence is

offered. Experience is then available to correct uncertain prophecy. Here is a book of wisdom that courts may not neglect. We find no rule of law that sets a clasp upon its pages, and forbids us to look within.").

220. "[T]he book of wisdom is not a blank canvas on which an expert may consider any piece of evidence." *Opticurrent, LLC v. Power Integrations, Inc.*, C.A. No. 17-cv-03597-WHO, 2018 WL 6727826, at *9 (N.D. Cal. Dec. 21, 2018) (citing *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014) (incorrect to replace "the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened")); *Syneron Med. Ltd. v. Invasix, Inc.*, C.A. No. 8:16-cv-00143-DOC-KES, 2018 WL 4696969, at *8-9 (C.D. Cal. Aug. 27, 2018).

221. Factors considered when determining a reasonable royalty based on a hypothetical negotiation include:

- The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.
- The rates paid by the licensee for the use of other patents comparable to the patent in suit.
- The nature and scope of the license, as exclusive or non- exclusive; or as restricted or unrestricted in terms of territory or with respect to whom the manufactured product may be sold.
- The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.
- The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.
- The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
- The duration of the patent and the term of the license.

- The established profitability of the product made under the patent; its commercial success; and its current popularity.
- The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.
- The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.
- The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.
- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.
- The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.
- The opinion testimony of qualified experts.
- The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

222. As part of the analysis under Georgia-Pacific factors 1 and 2, the factfinder may consider, respectively, prior licenses for the use of the patent in suit, or prior licenses for the use of "other patents comparable to the patent in suit." *See id.*

223. The amount of weight given to any particular license depends on the degree of comparability with the terms of the hypothetical license. *See ResQNet.com, Inc. v. Lansa, Inc.*,

594 F.3d 860, 869–70 (Fed. Cir. 2010); *Lucent Techs.*, 580 F.3d at 1325–26; *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).

224. "A patentee is only entitled to a reasonable royalty attributable to the infringing features. The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) (internal quotations removed); *see also Garretson v. Clark,* 111 U.S. 120, 121 (1884); *Beatrice Foods Co. v. New Eng. Printing & Lithographing Co.*, 899 F.2d 1171, 1176 (Fed. Cir. 1990) (per curiam). A patentee may calculate a royalty as a percentage of the entire market value of the accused product only if the patented feature creates the basis for customer demand, i.e. that it creates the demand for the product "in the first place" rather than just enabling an important, or even essential, feature or characteristic. *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67–68 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). "The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014); *see also Bayer HealthCare LLC v. Baxalta Inc.*, No. 16-cv-1122-RGA, 2019 WL 330149, at *8 (D. Del. Jan. 25, 2019) (citing *Ericsson*, 773 F.3d at 1226–27); *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304–05 (Fed. Cir. 2015).

225. Foreign use of a patented invention is not an infringement of a U.S. patent that gives rise to damages under § 284. *Power Integrations*, 711 F.3d at 1371; *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 2:18-CV-00014-JRG-RSP, 2019 WL 4392535, at *5 (E.D. Tex. June 11, 2019). "The royalty base for reasonable royalty damages cannot include activities that

do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015).

226. Damages for infringement under § 271(f)(2) are those arising from the domestic act of "suppl[ying] in or from the United States." *WesternGeco v. ION Geophysical Corp.*, 585 U.S. 407, 415 (2018); *Brumfield v. IBG LLC*, 97 F.4th 854, 875 (Fed. Cir. 2024) (damages for infringement under § 271(a) are limited to those arising from domestic acts of making, using, offering to sell and selling in the U.S.).

227. A party may not recover more than once for the same injury, and any damages awarded on overlapping theories arising from the same operative facts must be reduced to prevent double recovery. *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017-19 (Fed. Cir. 2006); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002).

2. **PVPA Damages**

228. Upon finding an infringement the court shall award damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the variety by the infringer, together with interest and costs as fixed by the court. 7 U.S.C. § 2564(a).

229. A Plant Variety Certificate owner cannot recover damages for acts of infringement known to the owner more than one year before the filing of the complaint. 7 U.S.C. § 2566(a).

3. **Unfair or Deceptive Acts - Unjust Enrichment**

230. A claim under Mass. Gen. Laws ch. 93A, Section 11 also requires actual damages resulting from the unfair or deceptive act. Mass. G.L. c. 93A § 11; *Manning v. Zuckerman,* 444 N.E.2d 1262, 1264 (Mass. 1983). Section 11 of Mass. Gen. Law 93A authorizes a court to award

"actual damages" for a "loss of money or property" arising from a violation of the statute. G.L. c. 93A § 11. While Section 11 actual damages encompass reasonably foreseeable consequential losses arising from the violation, any loss must be actually suffered by the plaintiff and may not be "remote, speculative, hypothetical [or] not within the realm of reasonable certainty" to be recoverable. *Kitner v. CTW Transp., Inc.*, 53 Mass. App. Ct. 741, 748 (2002) (quoting *Lowrie v. Castle*, 225 Mass. 37, 51 (1916)). If a plaintiff has not suffered any actual loss, the remedy is to obtain an injunction if the violation "may have the effect of causing [a] loss of money or property." G.L. c. 93A § 11.

231. Future potential losses based on uncertain contingencies are not reasonably certain "actual damages" recoverable under Section 11. *See Vicarious Surgical Inc. v. Tragakis*, C.A. No. 2284CV02321-BLS2, 2023 Mass. Super. LEXIS 36, at *9-12 (Mass. Apr. 27, 2023).

232. Under Massachusetts law, a plaintiff may not recover future potential gains by a defendant under an unjust enrichment theory, only gains actually obtained. *See Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982); *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329-30 (2005) (same); *Zelby Holdings, Inc. v. VideogeniX, Inc.*, 92 Mass. App. Ct. 86, 92 (2017) (unjust enrichment claim accrues upon actual receipt of benefit by defendant); *see also FinancialApps, LLC v. Envestnet, Inc.*, C.A. No. 19-1337-GBW-CJB, 2023 WL 6037242, at *9 (D. Del. Sept. 13, 2023) (quoting *Medidata Sols. v. Veeva Sys.*, 17 Civ. 589 (LGS), 2021 WL 4243309, at *4 (S.D.N.Y. Aug. 25, 2021)). "[C]ourts have consistently found future benefits cannot be the basis of an unjust enrichment claim." *PMX Jewels Ltd. v. Ruvanni Inc.*, C.A. No. 14-243, 2014 WL 1725733, at *2 (E.D. Pa. May 1, 2014).

4. **Breach of Contract - Compensatory Damages**

233. The amount of damages recoverable for breach of contract is that which will put the injured party in the monetary position it would have occupied had the contract been performed. *Nichols Constr. Corp. v. Va. Machine Tool Co., LLC*, 276 Va. 81, 87-88 (2008); *Mann v. Clowser*, 190 Va. 887, 904 (1950). The plaintiff bears the burden of establishing damages with reasonable certainty, and the determination is fact specific. *Nichols Constr. Corp.*, 276 Va. at 89.

234. Expectation damages for breach of contract must be proven with reasonable certainty. *SIGA Techs., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1131 (Del. 2015).

235. Under Virginia law, lost profits that are remote, speculative, contingent or uncertain are not recoverable. *Boggs v. Duncan*, 202 Va. 877, 883-84 (1961). Virginia courts have rejected damages claims as too remote and contingent to be recovered as a matter of law when the existence of damages depends on the occurrence of uncertain future events, including future market states, future commercial relationships and consumer choices. *Hop-In Food Stores, Inc. v. Serv-N-Save, Inc.*, 247 Va. 187, 193 (1994); *Mullen v. Brantley*, 213 Va. 765, 768-69 (1973). Virginia courts are particularly skeptical of future lost profits damages in cases involving new businesses with no prior sales history from which to predict future sales. *Mullen*, 213 Va. at 768-69; *ITT Hartford Grp. v. Va. Fin. Assocs.*, 258 Va. 193, 202-03 (1999); *Whitehead v. Cape Henry Syndicate*, 111 Va. 193, 197 (1910).

236. New York courts similarly reject damages theories as too speculative and not reasonably certain when they depend on multiple future contingencies, such as successful product development, market launch, customer choices and the ability to sustain large-scale sales. *Kenford Co. v. Cnty. of Erie*, 67 N.Y.2d 257, 261-62 (1986), *aff'd*, 73 N.Y.2d 312 (1989); *Awards.com v. Kinko's, Inc.*, 42 A.D.3d 178, 185 (N.Y. App. Div. 2007); *Trademark Rsch. Corp. v. Maxwell*

*Online, Inc.*, 995 F.2d 326, 333 (2d Cir. 1993). New York courts apply strict scrutiny of future lost profits damages when the case involves a new venture, a developmental product, or a business without an established sales record because there is no historical experience from which future profits can be estimated with reasonable certainty. *Kenford*, 67 N.Y.2d at 261-62; *Digital Broadcast Corp. v. Ladenburg, Thalmann & Co., Inc.*, 63 A.D.3d 647, 647-48 (N.Y. App. Div. 2009); *Zink v. Mark Goodson Prods.*, 261 A.D.2d 105, 106 (N.Y. App. Div. 1999).

5. **Injunctive and Equitable Relief**

237. A party seeking a permanent injunction must demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Irreparable injury is not presumed.

238. A party seeking specific performance must prove the existence and terms of an enforceable contract by clear and convincing evidence and must demonstrate that there is no adequate remedy at law. *Minnesota Invco of RSA No. 7, Inc. v. Midwest Wireless Holdings LLC*, 903 A.2d 786, 793 (Del. Ch. 2006). Specific performance and injunctive relief are determined by the Court.

6. **Costs**

239. Under 35 U.S.C. § 284, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."

240. Under the rules of this District, "[u]nless otherwise ordered by the Court, the prevailing party shall be entitled to costs. The party shall, within 14 days after the time for appeal has expired or within 14 days after the issuance of the mandate of the appellate court, file a bill of costs. Failure to comply with the time limitations of this Rule shall constitute a waiver of costs, unless the Court otherwise orders or counsel are able to agree on the payment of costs. In the latter case, no bill of costs need be filed." D. Del. LR 54.1(a)(1). "Costs shall be taxed in conformity with the provisions of 28 U.S.C. §§ 1920, 1921, and 1923, and such other provisions of law as may be applicable and the remaining paragraphs of subpart (b) of this Rule." D. Del. LR 54.1(b)(1).

7. **Attorneys' Fees**

241. Under 35 U.S.C. § 285 and 7 U.S.C. § 2565, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

242. "[E]xceptionality is an element or precondition for the imposition of attorney fees." *See Samsung Elecs. Co. v. Rambus, Inc.*, 523 F.3d 1374, 1379–80 (Fed. Cir. 2008). Exceptional cases are rare. *See Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303 (Fed. Cir. 2018). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 545, 554–55 (2014). An award of "attorney fees is not automatic, even for the extraordinary case." *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996).