IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORTEVA AGRISCIENCE LLC, PIONEER HI-BRED INTERNATIONAL, INC. and AGRIGENETICS, INC., | ) | |
| Plaintiffs, | ) | C.A. No. 23-1059 (JFM) |
| v. | ) | REDACTED - PUBLIC VERSION |
| INARI AGRICULTURE, INC. and INARI AGRICULTURE NV, | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S RULINGS ON PATENT AND PLANT VARIETY PROTECTION ACT EXHAUSTION**
**<u>(D.I. 641; D.I. 658 ¶ 6)</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Dimitrios T. Drivas
Raj S. Gandesha
Hallie Kiernan
Angelika Kligos
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10010
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY 10601
(914) 288-0022

Originally Filed: September 16, 2026
Redacted Version Filed: September 21, 2026

# TABLE OF CONTENTS

Page

I. BACKGROUND .......... 1

II. STANDARD .......... 2

III. GROUNDS FOR RECONSIDERATION .......... 3

A. Exhaustion does not require a sale .......... 3

B. Corteva's authorization of ATCC's furnishing is what matters; title need not pass from Corteva to ATCC .......... 4

C. The Court has not decided whether ownership of the physical seeds passed to Inari, and the record demonstrates that it did .......... 5

D. Whether a sale occurred is one factor among several, and any dispute over those factors is for the jury .......... 7

E. Corteva received its reward for making the patent seed deposits .......... 8

F. Common-law exhaustion applies to the PVP certificates as well .......... 8

G. The exhaustion defense is confined to the particular seeds and fits the accused acts .......... 9

IV. RELIEF REQUESTED .......... 10

# TABLES OF AUTHORITIES

Page(s)

**Cases**

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010)....................8

*Bloomer v. McQuewan*,
55 U.S. (14 How.) 539 (1853)....................3, 5

*Bloomer v. Millinger*,
68 U.S. (1 Wall.) 340 (1864)....................3

*Bowman v. Monsanto Co.*,
569 U.S. 278 (2013)....................9

*Brambles USA, Inc. v. Blocker*,
735 F. Supp. 1239 (D. Del. 1990)....................2

*Chaffee v. Boston Belting Co*.,
63 U.S. (22 How.) 217 (1859)....................3

*De Forest Radio Telephone & Telegraph Co. v. United States*,
273 U.S. 236 (1927)....................2

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
581 U.S. 360 (2017).................... *passim*

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
534 U.S. 124 (2001)....................8, 9

*LifeScan Scotland, Ltd. v. Shasta Technologies, LLC*,
734 F.3d 1361 (Fed. Cir. 2013).................... *passim*

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
176 F.3d 669 (3d Cir. 1999)....................2

*Medicines Co. v. Hospira, Inc*.,
827 F.3d 1363 (Fed. Cir. 2016) (en banc)....................5, 7

*Milo & Gabby LLC v. Amazon.com, Inc*.,
693 F. App'x 879 (Fed. Cir. 2017)....................5, 7

*Schering Corp. v. Amgen, Inc.*,
25 F. Supp. 2d 293 (D. Del. 1998)....................2

*Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*,
457 F.3d 1269 (Fed. Cir. 2006)....................9

*United States v. Gen. Elec. Co.*,
272 U.S. 476 (1926)....................4

*United States v. Masonite Corp.*,
316 U.S. 265 (1942)....................4, 5, 8

**Other Authorities**

37 C.F.R. § 1.808(a)(2)....................5

**Rules and Statutes**

7 U.S.C. § 2541(a)....................8, 9

35 U.S.C. § 271(a).................... *passim*

35 U.S.C. § 271(f)(2)....................9

LR 7.1.5....................1

LR 7.1.5(a)....................1

Defendants Inari Agriculture, Inc. and Inari Agriculture NV (together, "Inari") move under D. Del. LR 7.1.5 for reconsideration of the Court's ruling that "there is no room for an exhaustion defense in this case," Order Following Final Pretrial Conference, D.I. 658 (Sept. 11, 2026) ("PTC Order"), ¶ 6, and of the related rulings in the Court's September 3, 2026 Memorandum, D.I. 641 ("SJ Mem."), to the extent they are read to foreclose that defense at trial. As the Court directed, this motion includes Inari's briefing and its proposed jury instruction and verdict questions on exhaustion, the latter two of which are attached as Exhibit A. PTC Order (D.I. 658) ¶ 6. The motion is timely as to both rulings. D. Del. LR 7.1.5(a). \

## I. BACKGROUND

Inari pleaded exhaustion as to patents and PVP certificates. In the supplemental briefing after the summary judgment hearing, Inari argued that Corteva had authorized ATCC to furnish the deposited seeds to the public and that exhaustion followed, D.I. 578 ("Inari Supp. Br.") at 6-10, 17, and Corteva answered that those arguments "miss the mark because there was no authorized first sale of the ATCC deposits," D.I. 581 ("Corteva Supp. Br.") at 1. Neither party briefed whether exhaustion requires a sale. Nor did the Court address it.

On September 2, 2026, both parties identified exhaustion in the Proposed Joint Pretrial Order, D.I. 634 ("PTO"), as an issue of fact and law for trial under the Patent Act and the PVPA. PTO Ex. 2 (Corteva's Statement of Issues of Fact) ¶¶ 34, 70; PTO Ex. 3 (Inari's Statement of Issues of Fact) ¶¶ 7, 12, 32, 73, 80; PTO Ex. 4 (Corteva's Statement of Issues of Law) ("Corteva Issues of Law") ¶¶ 102-08; PTO Ex. 5 (Inari's Statement of Issues of Law) ¶¶ 105-16.

On September 3, the Court held, on Inari's motion, that ATCC's transfers to Inari "were not sales within the meaning of § 271(a)" and entered judgment for Inari on the inducement counts. SJ Mem. (D.I. 641) at 14-17. The Court noted that neither party contended ATCC took title, that Corteva itself argued "there was no authorized first sale to ATCC," and that "if ATCC did take

title, exhaustion is the inevitable result and Corteva never says otherwise." *Id.* at 15 & n.5. On September 14, the Court ruled that "there is no room for an exhaustion defense in this case now that we have held that ATCC's seed transfers to Inari were not sales and did not transfer title of the seeds to Inari (nor was title ever transferred from Corteva to ATCC, as far as the record reveals)," invited a prompt motion for reconsideration "if [Inari] has a proper basis for doing so," and cautioned that *De Forest Radio Telephone & Telegraph Co. v. United States*, 273 U.S. 236, 241 (1927), concerns implied license rather than exhaustion. PTC Order (D.I. 658) ¶ 6 & n.1. Inari respectfully accepts that invitation to address exhaustion: this motion does not ask the Court to revisit its holding that the transfers were not "sales" under § 271(a). Instead, Inari asks the Court to revisit its determination that, absent a sale and a transfer of title from Corteva to ATCC, there is no room for an exhaustion defense, and asks the Court to hold that Corteva's rights in the seeds Inari obtained from ATCC are exhausted or, at a minimum, to submit the facts on which exhaustion turns to the jury under the instruction and verdict questions in Exhibit A.

## II. STANDARD

Reconsideration is appropriate to "correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Reargument is warranted where the Court "has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990); *Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998). The exhaustion rulings rest on the premise that the doctrine requires a sale, and that the absence of a transfer of title from Corteva to ATCC forecloses it. Controlling authority holds otherwise, and the parties never presented that question before the Court ruled.

## III. GROUNDS FOR RECONSIDERATION

### A. Exhaustion does not require a sale

The Federal Circuit decided this question in *LifeScan Scotland, Ltd. v. Shasta Technologies, LLC*, 734 F.3d 1361, 1374-77 (Fed. Cir. 2013). The patentee there distributed 60% of its meters for free, and the district court found that exhaustion could not apply to them because exhaustion requires a "sale" for "consideration." *Id*. at 1365. The Federal Circuit reversed. Although the Supreme Court's cases make "frequent references to 'sales' and 'purchasers,'" the Court "has more fundamentally described exhaustion as occurring when the patented product 'passes to the hands' of a transferee and when he 'legally acquires a title' to it," including by a transfer "from any other person ... authorized [by the patentee] to convey it." *Id*. at 1374 (quoting *Bloomer v. Millinger*, 68 U.S. (1 Wall.) 340, 351 (1864); *Chaffee v. Boston Belting Co*., 63 U.S. (22 How.) 217, 223 (1859); and *Bloomer v. McQuewan*, 55 U.S. (14 How.) 539, 549-50 (1853)). A "'sale' limitation would indeed be inconsistent" with *McQuewan*, "where the particular machines at issue had never been sold," yet "that lack of a 'sale' was no barrier to the application of patent exhaustion." *Id*. at 1374-75. And "a patentee cannot evade patent exhaustion principles by choosing to give the article away rather than charging a particular price for it." *Id*. at 1375. As *LifeScan* reads *McQuewan*, exhaustion is properly considered from the perspective of the person who holds the article: because the machines "had been constructed with the patentee's authorization and were the 'private, individual property' of the accused infringer, they were 'no longer under the protection of' the Patent Act." 734 F.3d at 1375 (quoting *McQuewan*, 55 U.S. (14 How.) at 549-50).

Exhaustion "marks the point where patent rights yield to the common law principle against restraints on alienation," *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 370-71 (2017), and the Supreme Court has "quite consistently refused to allow the form into which the

parties chose to cast the transaction to govern"; the test is "whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article," and "the scope of the [patentee's statutory] right to 'vend' cannot be determined by the private law of sales alone." *United States v. Masonite Corp.*, 316 U.S. 265, 278, 280 (1942). Exhaustion "is not a presumption about the authority that comes along with a sale; it is instead a limit on 'the scope of the patentee's rights.'" *Lexmark,* 581 U.S. at 374 (quoting *United States v. Gen. Elec. Co*., 272 U.S. 476, 489 (1926)). The patent exhaustion cases Corteva cites involved sales because sales are the ordinary case, Corteva Issues of Law ¶¶ 104-05; none holds that a sale is required. The September 3 holding that ATCC did not "sell" the seeds under § 271(a) and, therefore, does not mandate that Corteva's rights in the seeds were not exhausted.

**B. Corteva's authorization of ATCC's furnishing is what matters; title need not pass from Corteva to ATCC**

The PTC Order treats the absence of any transfer of title from Corteva to ATCC as an obstacle. PTC Order (D.I. 658) ¶ 6. It is not. Under *LifeScan*, exhaustion turns on whether the patented article passed into the hands of a transferee who legally acquired title through an authorized transfer, not on whether title passed directly from the patentee itself to the ultimate transferee. That is the rule for licensees, whose authorized sales are "treated, for purposes of patent exhaustion, as if the patentee made the sale itself," leaving the patentee with its "only recourse" in contract for a later violation of a use restriction. *Lexmark*, 581 U.S. at 376-77. And it is the rule for any other person the patentee authorizes to convey the article. *LifeScan*, 734 F.3d at 1374. The question here is whether Corteva authorized ATCC's furnishing of the seeds to Inari. It did, in writing and without qualification: after issuance the seeds "will be made available for distribution to the public without any restrictions," and ATCC "may, without restriction, furnish samples of the deposit at any time." SJ Mem. (D.I. 641) at 4-5; Hosack Ex. 7, JA5238-42 at JA5240

(ATCC_000128555) § 8(a); Hosack Ex. 8, JA5236-37 at JA5236 (ATCC_000128553). Federal regulation required no less. 37 C.F.R. § 1.808(a)(2) (the patent owner's restrictions on public availability "will be irrevocably removed upon the granting of the patent"). Corteva has conceded that a depositor "may not place 'restrictions . . . on the availability to the public of the deposited material,'" Corteva Supp. Br. (D.I. 581) at 5, and that the deposits exist so the public can obtain them, SJ Mem. (D.I. 641) at 17 (quoting Corteva Supp. Br. (D.I. 581) at 14).

### C. The Court has not decided whether ownership of the physical seeds passed to Inari, and the record demonstrates that it did

The September 3 memorandum read the MTA's recital that "ATCC and/or its Contributors 'shall retain ownership of all right, title and interest in the Biological Materials'" to mean that Inari never received title, in the course of deciding whether ATCC "sold" the seeds under § 271(a). SJ Mem. (D.I. 641) at 16-17. Whether the transfer was unconditional as to ownership for purposes of exhaustion, *LifeScan*, 734 F.3d at 1375 n.8; *McQuewan*, 55 U.S. (14 How.) at 549-50, is a different question, and it is decided by the substance of the transaction rather than its label. *Masonite*, 316 U.S. at 278. Title may matter because it marks when the patentee "gives up its interest and control over the product," *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1375 (Fed. Cir. 2016) (en banc), but it is "not of 'talismanic' significance," *Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 886 (Fed. Cir. 2017).

Every indicium of control and possession here sits with the purchaser, Inari. It is undisputed that Inari USA and Inari Belgium ordered the seeds from ATCC in 2020 and 2021 and paid the invoiced asking prices, and that ATCC filled and shipped the orders. Corteva's Consolidated Statement of Facts, D.I. 536 ("Corteva SOF"), ¶¶ 80-83, 99-104, 170 (undisputed); JA5119-20 (ATCC_000033313-314) (invoices). ATCC's and LGC's invoices and packing slips identify Inari as the purchaser, JA5119-20 (ATCC_000033313-314); JA16303-22 (INARI_000000327334;

INARI_0000000440-443; INARI_0000000448-455). ATCC's packing slips for the Exhibit B seeds shipped to Inari USA in West Lafayette identify Inari USA as the "SOLD TO" party, JA16303-22 (INARI_0000000327334; INARI_0000000440-443; INARI_0000000448-455). Under the arrangement ATCC set for Inari Belgium's order, Inari Belgium had to take delivery of the Exhibit A seeds, secure any necessary phytosanitary testing, and export the purchased seeds to Belgium, which it did by contracting with Infinite Eversole Specialty Crop Services. Inari SOF (D.I. 539) ¶¶ 32, 43, 51; SJ Mem. (D.I. 641) at 11. The MTA defines "ATCC Material" as material "acquired from ATCC by Purchaser as described on an ATCC Sales Order." Hosack Ex. 19, JA5218-21 at JA5218 (ATCC_000127778). ATCC itself described Inari Belgium's order as one with "terms of the sale" in which ATCC had "an economic as well as a business incentive" and "participates in the revenue share." Hosack Ex. 29, JA5116-18 at JA5117 (ATCC_000033222-224). In an April 21, 2020 email to Inari, John Ball of LGC emphasized that once the material is shipped and signed for, "it becomes your property," underscoring that none of Corteva, ATCC or LGC retained a possessory interest in the seeds. JA5076-84 at JA5077 (ATCC_000032836). Inari was not required to return the seeds after using them, nor did anyone ask Inari to return the seeds; the MTA lets the Purchaser use the material for research, make Modifications that the Purchaser owns, and keep the material indefinitely, and its only return-or-destroy obligations run from the Purchaser's collaborators back to the Purchaser, not to ATCC. *Id.* at JA5218-20; 2019 MTA, JA16298-301 (INARI_0000000249-252). The MTA permits Commercial Use of the material with ATCC's prior written consent; the consent it requires is ATCC's, not Corteva's. Hosack Ex. 19, JA5218-21 at JA5219 (ATCC_000127778). Nor can Corteva recall the seeds. It has conceded that "ATCC is not obligated to return or otherwise account for the seeds" and that its deposit form "contains no provision for returning or destroying seeds." Corteva Supp. Br. (D.I. 581) at 9-10 &

n.4. When Corteva asked ATCC in 2023 to require Inari Belgium and IE-SCS to destroy the seeds, ATCC declined. Hosack Ex. 16, JA11046-57 (CORTEVA_00073654-665); Hosack Ex. 17, JA11074-76 (CORTEVA_00078820-822); Hosack Dep. 129:4-19, 133:15-134:15. Those are the facts Milo & Gabby found missing when it held Amazon was not a seller: there the third-party seller retained "full ownership" and could "remove its stock at any time by requesting that Amazon return the product." 693 F. App'x at 881, 886-89. Corteva has no such rights under its deposit agreements with ATCC.

The MTA retention-of-ownership recital does not change the result. It appears in ATCC's standard form for every material ATCC distributes. In the Inari transactions, it functions as a restriction on use rather than a reservation of any interest anyone ever exercised. *Lexmark* holds that restrictions of that kind, even when "clear and enforceable under contract law," "do not entitle" the patentee "to retain patent rights in an item that it has elected to sell," 581 U.S. at 370, and that the patentee's decision to part with the article exhausts its rights "regardless of any restrictions the patentee purports to impose," *id.* at 366. The deposit agreement's "no license" language is likewise beside the point, because exhaustion is not a license but a limit on the patentee's rights. *Id.* at 374.

### D. Whether a sale occurred is one factor among several, and any dispute over those factors is for the jury

Whether ATCC "sold" the seeds is at most one factor in the exhaustion inquiry, and not the controlling one. The cases identify several: whether the patent owner authorized the disposition, *Lexmark*, 581 U.S. at 376-77; *LifeScan*, 734 F.3d at 1374; whether the article passed into the transferee's hands with the right to keep it, *id.*; whether the transferor retained any right to reclaim it, *Milo & Gabby*, 693 F. App'x at 881, 886-89; whether the transferee paid and whether the transferor kept what was paid, *id.*; whether the transferee could use, modify, and dispose of the article as an owner would, *Medicines*, 827 F.3d at 1375; and whether any restrictions the transferor

attached were conditions on the transfer itself or covenants about later use, *Lexmark*, 581 U.S. at 366, 370; *LifeScan*, 734 F.3d at 1375 n.8. Each of those factors favors Inari, and the Court can decide exhaustion now. To the extent Corteva contends that any of them is genuinely disputed, the dispute is one of fact for the jury. Corteva's own pretrial submission frames it that way: "[w]hether Inari has presented a preponderance of the evidence" that Corteva's rights in the seeds Inari obtained from ATCC "are exhausted," for the asserted patents. PTO Ex. 2 (Corteva's Statement of Issues of Fact) ¶¶ 34, 70. The verdict questions in Exhibit A put those facts, if disputed, to the jury.

### E. Corteva received its reward for making the patent seed deposits

Corteva argues that exhaustion cannot apply because it received nothing when ATCC furnished the seeds. Corteva Issues of Law ¶ 105. The meters in *LifeScan* were given away, and the court held that a patentee that "unconditionally parts with ownership of an article . . . cannot later complain that the approach that it chose results in an inadequate reward." 734 F.3d at 1375. Regardless, Corteva did receive a rich reward: in exchange for making deposits to satisfy § 112, SJ Mem. (D.I. 641) at 4, that it knew and agreed would become publicly available upon patent grant, Corteva received the patents, to license or, as here, assert and exclude others. *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 142 (2001); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1345 (Fed. Cir. 2010). Under *Masonite*, that is a disposition for which "the patentee has received his reward." 316 U.S. at 278.

### F. Common-law exhaustion applies to the PVP certificates as well

As noted, Inari's affirmative defense 41 raises exhaustion against Corteva's PVPA infringement claims. The PVPA grants a certificate holder the right to exclude others from certain acts done "without authority" of the owner. 7 U.S.C. § 2541(a). No court appears to have decided whether common-law exhaustion applies to those rights, but there is no reason it should not. The

Supreme Court has treated the PVPA as conferring a narrower set of the same exclusionary rights that a utility patent confers. *J.E.M.*, 534 U.S. at 142-44. The Federal Circuit resolves PVPA questions of first impression by analogy to patent law. *Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1275-76 (Fed. Cir. 2006) (describing the PVPA as providing "patent protection to breeders of certain plant varieties," and construing § 2567 by analogy to its Patent Act counterpart where "the federal courts have never addressed" the question). Exhaustion is "the point where patent rights yield to the common law principle against restraints on alienation," *Lexmark*, 581 U.S. at 370-71, and a PVP certificate holder's more limited statutory right to exclude is no more entitled to survive an authorized, unconditional transfer of the protected seeds than a patentee's. For the reasons set out above as to patents, *supra* III.A-E, Corteva's rights under the PVP certificates in the Exhibit A and B seeds Inari obtained from ATCC are exhausted as well, and the proposed verdict questions in Exhibit A put the same predicate facts, if disputed, to the jury as to the certificates.

### G. The exhaustion defense is confined to the particular seeds and fits the accused acts

Exhaustion "applies only to the particular item sold, and not to reproductions," *Bowman v. Monsanto Co.*, 569 U.S. 278, 287 (2013). What remains are the domestic infringing acts Corteva accuses as to the seeds ATCC furnished: the phytosanitary testing that Corteva calls a "use" under 35 U.S.C. § 271(a), SJ Mem. (D.I. 641) at 12-13, and the export of the untested ATCC seeds under 35 U.S.C. § 271(f)(2), *id.* at 18-22, and 7 U.S.C. § 2541(a)(2). If Corteva's rights in those seeds were exhausted, neither act infringes. Inari does not contend that exhaustion applies to progeny seed.

## IV. RELIEF REQUESTED

Inari respectfully requests that the Court reconsider ¶ 6 of the PTC Order and hold that Corteva's rights under the asserted patents and PVP certificates in the seeds Inari obtained from ATCC are exhausted or, if the Court concludes that material predicate facts are genuinely disputed, submit the defense to the jury under the instruction and special verdict questions in Exhibit A and reserve the legal question for decision under Rule 50. A proposed order is attached.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mdellinger@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Dimitrios T. Drivas
Raj S. Gandesha
Hallie Kiernan
Angelika Kligos
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10010
(212) 819-8200

Robert M. Isackson
Henry A. Gabathuler
Emily A. Rice
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY 10601
(914) 288-0022

September 16, 2026

**RULE 7.1.1 CERTIFICATE**

I hereby certify that the subject of the foregoing motion has been discussed with counsel for the plaintiffs and that we have not been able to reach agreement.

*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 16, 2026, upon the following in the manner indicated:

Chad S.C. Stover, Esquire — *VIA ELECTRONIC MAIL*
Brian S.S. Auerbach, Esquire
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
*Attorneys for Plaintiffs*

Todd Vare, Esquire — *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
*Attorneys for Plaintiffs*

Ronald Cahill, Esquire — *VIA ELECTRONIC MAIL*
Heather B. Repicky, Esquire
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA 02210
*Attorneys for Plaintiffs*

Lauren Baker, Esquire — *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA 30326
*Attorneys for Plaintiffs*

Peter Bicks, Esquire *VIA ELECTRONIC MAIL*
Kim B. Goldberg, Esquire
Jordan B. Fernandes, Esquire
Christine Willgoos, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
*Attorneys for Plaintiffs*

David Gindler, Esquire *VIA ELECTRONIC MAIL*
Lauren Drake, Esquire
Christopher Lynch, Esquire
Avery Cartwright, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA 90071-1596
*Attorneys for Plaintiffs*

Gary Frischling, Esquire *VIA ELECTRONIC MAIL*
Gavin McGimpsey, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
120 Broadway, 5th Floor
Santa Monica, CA 90401
*Attorneys for Plaintiffs*

Carly Romanowicz, Esquire *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA 02116
*Attorneys for Plaintiffs*

Elizabeth Moulton, Esquire *VIA ELECTRONIC MAIL*
Robert Reese Oñate, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
*Attorneys for Plaintiffs*

*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 21, 2026, upon the following in the manner indicated:

Chad S.C. Stover, Esquire *VIA ELECTRONIC MAIL*
Brian S.S. Auerbach, Esquire
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
*Attorneys for Plaintiffs*

Todd Vare, Esquire *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
*Attorneys for Plaintiffs*

Ronald Cahill, Esquire *VIA ELECTRONIC MAIL*
Heather B. Repicky, Esquire
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA 02210
*Attorneys for Plaintiffs*

Lauren Baker, Esquire *VIA ELECTRONIC MAIL*
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA 30326
*Attorneys for Plaintiffs*

Peter Bicks, Esquire
Kim B. Goldberg, Esquire
Jordan B. Fernandes, Esquire
Christine Willgoos, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

David Gindler, Esquire
Lauren Drake, Esquire
Christopher Lynch, Esquire
Avery Cartwright, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, CA 90071-1596
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Gary Frischling, Esquire
Gavin McGimpsey, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
120 Broadway, 5th Floor
Santa Monica, CA 90401
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Carly Romanowicz, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA 02116
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

Elizabeth Moulton, Esquire
Robert Reese Oñate, Esquire
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
*Attorneys for Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)