# EXHIBIT A

**INARI'S PROPOSED SUPPLEMENTAL FINAL JURY INSTRUCTION AND VERDICT FORM QUESTIONS ON EXHAUSTION**

## 1. Proposed Final Jury Instruction 2.8A: Patent Exhaustion

**Patent Exhaustion**[1]

Inari contends that Corteva's patent rights in the particular seeds that Inari obtained from ATCC were exhausted when ATCC furnished those seeds to Inari with Corteva's authority. If Inari proves that defense as to particular seeds, Corteva's patents give it no right to control what Inari did with those seeds, and Inari's use, export, or transfer of those seeds does not infringe the patents that cover them. You must decide this defense separately for the seeds Inari USA obtained under the 2017 MTA and the seeds Inari Belgium obtained under the 2019 MTA.[2]

Inari must prove by a preponderance of the evidence that:

(1) Corteva authorized ATCC to furnish the deposited seeds to members of the public after the patents covering those seeds issued;[3]

(2) ATCC furnished the seeds to Inari with that authority; and

---

1 *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 376-77 (2017); *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625, 637-38 (2008); *United States v. Univis Lens Co.*, 316 U.S. 241, 251 (1942); *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1374-75 & n.8 (Fed. Cir. 2013).

Inari's position: The Court held that ATCC's transfers to Inari "were not sales within the meaning of § 271(a)," D.I. 641 at 17. Exhaustion does not require a sale. The Supreme Court has described exhaustion as occurring when the patented article "passes to the hands" of a transferee who "legally acquires a title," including through a person "authorized [by the patentee] to convey it," and a sale limitation "would indeed be inconsistent" with *Bloomer v. McQuewan*, where the machines were never sold. *LifeScan*, 734 F.3d at 1374-75. The instruction is therefore framed around an authorized transfer of ownership rather than a sale.

2 D.I. 641 at 5-6 (describing Inari's acquisitions under the 2017 and 2019 MTAs).

3 *Lexmark*, 581 U.S. at 376-77 (an authorized transfer by a licensee is treated as if the patentee made it, and the patentee's remedy for a violation of a use restriction is in contract); *LifeScan*, 734 F.3d at 1374 (exhaustion may occur through a transfer by a person "authorized [by the patentee] to convey" the article); 37 C.F.R. § 1.808(a)(2); D.I. 641 at 4-5 (deposit terms).

Inari's position: Corteva's authorization is written. Its deposit paperwork authorizes ATCC to furnish samples "without restriction" after issuance, Hosack Ex. 7, JA5238-42 at JA5240 (ATCC_000128555) § 8(a), and federal regulation requires that all restrictions on availability be irrevocably removed upon grant, 37 C.F.R. § 1.808(a)(2).

(3) the transfer of the seeds from ATCC to Inari was unconditional as to ownership of the particular seeds transferred.[4]

A patent owner authorizes a transfer when it permits the transferor to make it, including through the terms on which the patent owner placed the article with the transferor and any legal requirements governing the article's distribution that the patent owner accepted. In deciding whether Corteva authorized ATCC to furnish the deposited seeds to Inari, you should consider the terms on which Corteva deposited the seeds with ATCC and whether Corteva placed any restriction on who could receive the seeds or on what terms. Authorization given at the time of the transfer is not withdrawn by what the recipient later does with the seeds.[5]

A transfer may exhaust patent rights even if it is not a sale, and even if neither Corteva nor ATCC received payment for the seeds or any other financial benefit directly from the transfer. Exhaustion occurs when the seeds pass into Inari's hands with Corteva's authority in a transfer that is unconditional as to ownership.[6]

In deciding whether the transfer was unconditional as to ownership of the seeds, you should consider the substance of the transaction rather than the labels the parties used. You may consider whether ATCC or Corteva kept any right to reclaim the seeds, whether Inari paid for them, whether Inari was free to keep, consume, modify, or destroy them, whether anything was expected to be returned, and how the parties treated the seeds after the transfer. A written statement that ATCC or Corteva retains ownership of the seeds is a fact you may consider, but it is not by itself conclusive if the other circumstances show that ownership of the physical seeds in fact passed to Inari.[7]

---

[4] *LifeScan*, 734 F.3d at 1375 & n.8 (exhaustion follows an unconditional transfer of ownership, as distinguished from a conditional sale or license); *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1375 (Fed. Cir. 2016) (en banc) (passage of title indicates when the patentee gives up its interest and control over the product); *United States v. Masonite Corp.*, 316 U.S. 265, 278, 280 (1942); *Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 881, 886-89 (Fed. Cir. 2017).

[5] *Lexmark*, 581 U.S. at 376-77; *LifeScan*, 734 F.3d at 1374; *Tessera, Inc. v. ITC*, 646 F.3d 1357, 1370 (Fed. Cir. 2011) (a licensee's later breach does not render an authorized sale unauthorized); *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1308 (Fed. Cir. 2011).

[6] *LifeScan*, 734 F.3d at 1374-75 (exhaustion applied to meters distributed for free); *Masonite*, 316 U.S. at 278 (the test is "whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article"); *Masonite*, 316 U.S. at 280 ("the scope of the patentee's statutory right to 'vend' cannot be determined by the private law of sales alone").

[7] *Masonite*, 316 U.S. at 278 (the Supreme Court "has quite consistently refused to allow the form into which the parties chose to cast the transaction to govern"); *Medicines*, 827 F.3d at 1375; *Milo & Gabby*, 693 F. App'x at 881, 886-89 (whether the seller could reclaim the goods at any time and whether the transferor's compensation was tied to the sale).

Inari's position: The Court read the MTA's retention-of-title recital to mean that Inari never received title, D.I. 641 at 16-17, in the course of holding that ATCC did not "sell" the seeds under § 271(a). Whether the transfer was unconditional as to ownership for purposes of exhaustion is a

Restrictions that Corteva or ATCC attempted to place on how the seeds could be used after the transfer do not prevent exhaustion. If such restrictions are enforceable at all, they are enforceable only as a matter of contract, which you will consider separately under the breach of contract instructions.[8]

Exhaustion applies only to the particular seeds that were transferred. It does not give Inari the right to make new seeds or plants that practice the patents. If you find that Corteva's rights in particular seeds were exhausted, that finding applies to those seeds and not to any new seeds or plants grown from them.[9]

**2. Proposed Final Jury Instruction 3.4A: Plant Variety Protection Infringement, Exhaustion**

**Plant Variety Protection Infringement, Exhaustion**[10]

Inari also contends that Corteva's rights under the plant variety protection certificates in the particular seeds that Inari obtained from ATCC were exhausted when ATCC furnished those seeds to Inari with Corteva's authority. The rules I have described for patent exhaustion apply in the same way to the certificates. If Inari proves that defense as to particular seeds, the certificates give Corteva no right to control what Inari did with those seeds, and Inari's use, export, or transfer of those seeds does not infringe the certificates covering them. You must decide this defense separately for the seeds of the protected varieties listed in Appendix A of your juror notebook (obtained by Inari Belgium under the 2019 MTA) and the seeds of the protected varieties listed in Appendix B of your juror notebook (obtained by Inari U.S.A. under the 2017 MTA).

---

distinct question, and the substance-over-form rule of *Masonite* and *Medicines* makes the recital one fact among several.

8 *Lexmark*, 581 U.S. at 366, 376-77 (a patentee's decision to sell a product exhausts all of its patent rights in that item "regardless of any restrictions the patentee purports to impose").

9 *Bowman v. Monsanto Co.*, 569 U.S. 278, 284, 287 (2013); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336 (Fed. Cir. 2006).

10 *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 142-44 (2001) (PVP certificates confer a narrower set of the exclusionary rights conferred by utility patents); *Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1275-76 (Fed. Cir. 2006) (resolving a PVPA question of first impression by analogy to the Patent Act); *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 370-71 (2017) (exhaustion "marks the point where patent rights yield to the common law principle against restraints on alienation").

Inari's position: No decision appears to address whether common-law exhaustion applies to rights under a plant variety protection certificate. Because the PVPA confers a subset of the exclusionary rights a utility patent confers and the Federal Circuit resolves PVPA questions of first impression by analogy to patent law, the same rule should apply, and the same predicate facts the jury finds on patent exhaustion determine the result for the certificates. This instruction and Questions 5B and 6B are proposed in the alternative to the statutory exemption in Instruction 3.4 and Questions 5A and 6A.

Inari must prove by a preponderance of the evidence that (1) Corteva authorized ATCC to furnish the seeds of the protected varieties to members of the public; (2) ATCC furnished those seeds to Inari with that authority; and (3) the transfer of the seeds from ATCC to Inari was unconditional as to ownership of the particular seeds transferred. In deciding these questions, you should apply the same considerations I described for patent exhaustion. As with patent exhaustion, this defense applies only to the particular seeds that were transferred, and not to any new seeds or plants grown from them.

**3. Proposed Verdict Form Questions**

Inari proposes that the following Question 1A be inserted in the verdict form immediately before Question 1 (Patent Infringement).

**QUESTION 1A:**

Did Inari prove by a preponderance of the evidence that Corteva's patent rights in the seeds identified below were exhausted? You have been provided with the definition of exhaustion in the Final Jury Instructions.

Check "Yes" or "No" for each part.

"**Yes**" is a finding for Inari.

"**No**" is a finding for Corteva.

| | **(a) Corteva authorized ATCC to furnish the seeds to the public after the patents issued** | **(b) ATCC furnished the seeds to Inari with Corteva's authority** | **(c) The transfer to Inari was unconditional as to ownership of the seeds** |
|---|---|---|---|
| Seeds obtained by Inari Belgium under the 2019 MTA | Yes ___ No ___ | Yes ___ No ___ | Yes ___ No ___ |

**If you answered "Yes" to parts (a), (b), and (c), do not answer Questions 1, 2, 4, and 5, and proceed to Question 3. Otherwise, proceed to Question 1.**

Inari proposes that the following Question 5A be inserted in the verdict form immediately before Question 6 (infringement of the plant variety protection certificates by Inari Belgium), and that the following Question 6A be inserted immediately before Question 7 (infringement of the plant variety protection certificates by Inari U.S.A.).

**QUESTION 5A:**

Did Inari prove by a preponderance of the evidence that Corteva's rights under the plant variety protection certificates in the seeds identified below were exhausted? You have been provided with the definition of exhaustion in the Final Jury Instructions.

Check "Yes" or "No" for each part.

"**Yes**" is a finding for Inari.

"**No**" is a finding for Corteva.

| | **(a) Corteva authorized ATCC to furnish the seeds to the public after the patents issued** | **(b) ATCC furnished the seeds to Inari with Corteva's authority** | **(c) The transfer to Inari was unconditional as to ownership of the seeds** |
|---|---|---|---|
| Seeds of the protected varieties listed in Appendix A, obtained by Inari Belgium under the 2019 MTA | Yes ___ No ___ | Yes ___ No ___ | Yes ___ No ___ |

If you answered "Yes" to parts (a), (b), and (c) of Question 5A, do not answer Question 6, and proceed to Question 6A. Otherwise, proceed to Question 6.

**QUESTION 6A:**

Did Inari prove by a preponderance of the evidence that Corteva's rights under the plant variety protection certificates in the seeds identified below were exhausted? You have been provided with the definition of exhaustion in the Final Jury Instructions.

Check "Yes" or "No" for each part.

"**Yes**" is a finding for Inari.

"**No**" is a finding for Corteva.

| | **(a) Corteva authorized ATCC to furnish the seeds to the public after the patents issued** | **(b) ATCC furnished the seeds to Inari with Corteva's authority** | **(c) The transfer to Inari was unconditional as to ownership of the seeds** |
|---|---|---|---|
| Seeds of the protected varieties listed in Appendix B, obtained by Inari U.S.A. under the 2017 MTA | Yes ___ No ___ | Yes ___ No ___ | Yes ___ No ___ |

If you answered "Yes" to parts (a), (b), and (c) of Question 6A, do not answer Question 7, and proceed to Question 8. Otherwise, proceed to Question 7.